# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | ) | |
| | ) | Case No.: 1:10-CV-03108-JOF |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | [On removal from the State |
| | ) | Court of Fulton County, |
| MORGAN STANLEY & CO., INC., *et al.*, | ) | Georgia Case No.: |
| | ) | 2008-EV-004739-B] |
| Defendants. | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND, FEES AND COSTS

John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
BONDURANT, MIXSON &
ELMORE, LLP
1201 W. Peachtree Street
3900 One Atlantic Center
Atlanta, Georgia 30309
floyd@bmelaw.com
rosenwasser@bmelaw.com
iannarone@bmelaw.com
Phone: (404) 881-4100
Facsimile:  (404) 881-4100

*Attorneys for Plaintiffs*

807182.1

## INTRODUCTION

Defendant Merrill Lynch Professional Clearing Corporation's ("ML Pro") Notice of Removal is a desperate and improper attempt to escape the jurisdiction of the state court that has been handling this complex, multi-party litigation for ***more than two years***.  Plaintiffs assert only state law claims in this action, and it is undisputed that diversity jurisdiction does not exist.  ML Pro thus resorts to the well-worn, but ***repeatedly rejected***, tactic of claiming that federal question jurisdiction exists because one of many categories of predicate acts that Plaintiffs allege in support of a ***Georgia*** Racketeer Influenced and Corrupt Organizations ("RICO") Act claim involves violations of federal law.

In case after case, this Court has rejected such attempts to federalize Georgia RICO claims.  ML Pro relies on *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), which involved a Georgia RICO claim that alleged ***only*** violations of federal law as predicate acts and that turned on a legal issue relating to a federal statute.  The Eleventh Circuit specifically stated in *Ayres* that "[t]he particular controversy in this case may very well make this case one of those exceptional cases" that supports federal jurisdiction, *id.* at 519, and this Court has recognized that *Ayres* "cabined its holding."  *Neighborhood Mortg., Inc. v. Fegans*, No. 1:06-cv-1984-JOF, 2007 WL 2479205, at *4 (N.D. Ga. Aug. 28, 2007) (Forrester, J.)

(Westlaw and unpublished cases are attached in Exhibit A).

This Court has consistently rejected the argument that *Ayres* supports federal jurisdiction over Georgia RICO claims when, as here, Plaintiffs' allegations include state law predicate acts.  *Id.* at *3 ("The court finds *Ayres* distinguishable" and orders remand where Georgia RICO claim alleges predicate acts under state statutes as well as federal statutes); *Austin v. Ameriquest Mortg. Co.*, 510 F. Supp.2d 1218, 1226 (N.D. Ga. 2007) (Carnes, J.) (ordering remand because Georgia theft by deception and theft by taking statutes could support Georgia RICO claim such that case "does not satisfy either of the [*Ayres*] prongs"); *Scouten v. Amerisave Mortg. Corp.*, Nos. 1:04-cv-1125-CAM, 2004CV83343, 2004 WL 5486512, at *2 (N.D. Ga. Dec. 16, 2004) (Moye, J.) (ordering remand where, "[u]nlike the plaintiffs in *Ayres*, Plaintiffs here alleged predicate acts under Georgia law"); *Gates Condominium Assoc., Inc. v. Arrow Exterminators, Inc.*, No. 1:04-cv-1258-CAP, slip op. at 6-7 (N.D. Ga. June 30, 2004) (Pannell, J.) (distinguishing *Ayres* and ordering remand because "only two of the twelve predicate acts alleged in the complaint involve the federal mail fraud statute; the others concern [a list of Georgia statutes and claims]"); *see Graham Commercial Realty, Inc. v. Shamsi*, 75 F. Supp. 2d 1371 (N.D. Ga. 1998) (O'Kelley, J.) (ordering remand where Georgia RICO claim alleged ten federal predicate acts and

nine state law predicate acts); *see also Coker v. DaimlerChrysler*, 220 F. Supp. 2d 1367, 1371-72 (N.D. Ga. 2002) (Story, J.) (ordering remand where "[i]n contrast" to *Ayres*, "Defendant allegedly breached warranties that its vehicles complied with 'all' applicable safety standards, of which federal regulations are only one").

The foregoing decisions, none of which ML Pro cites, establish that the attempt at removal here is baseless.  ML Pro also fails to note that Defendants, including ML Pro's parent company, Defendant Merrill Lynch Pierce Fenner & Smith ("Merrill Lynch"), tried and lost this same removal tactic in a case involving similar allegations of deceptive and manipulative conduct in the context of short sales.  *Avenius v. Banc of Am. Sec. LLC*, No. C06-04458, 2006 WL 4008711, at *4 (N.D. Cal. Dec. 30, 2006) (included in Ex. A) ("Even when a complaint repeatedly refers to federal law, it does not state a federal question where a plaintiff invokes an independent state law.") (citation omitted).  Plaintiffs' claims are based on state law, federal question jurisdiction does not exist, and the case should be remanded.

<u>**NATURE OF THE CASE AND PROCEDURAL BACKGROUND**</u>

**I.      PLAINTIFFS' ALLEGATIONS**

This case arises out of Defendants' efforts to reap profits by creating, facilitating and trading in unauthorized, artificial shares of the common stock of TASER International ("TASER").  Seventh Amended Complaint ("Complaint")

¶ 1 (Dkt. No. 1-1, Ex. A to Notice of Removal).  Defendants are eleven Wall Street institutions.  *Id.* ¶¶ 45-53.  Their illegal conduct occurs in the context of short sales of TASER stock.  In a typical legal short sale, a seller who expects the price of a company's stock to decline borrows shares of that stock and sells the borrowed shares at the existing stock price; the seller then replaces the borrowed shares with shares purchased at a later date and, hopefully, at a lower price.  *Id.* ¶ 2.

Defendants have devised and engaged in numerous deceptive, manipulative and illegal short selling practices.  *Id.* ¶¶ 5, 8.  For example, Defendants engage in and facilitate short sales of TASER stock (and other companies' stock) without actually borrowing the shares they purport to sell and without any intention of ever borrowing or delivering those shares.  In essence, Defendants, for themselves and/or their clients, sell shares that they neither own nor intend to possess.  Yet, Defendants falsely represent that they have borrowed (or will borrow) and will deliver shares of the shorted stock.  *Id.* ¶ 8.

When Defendants engage in illegal short sales of TASER stock, they intentionally create unauthorized, artificial shares of that stock.[1]  As set forth in the Complaint, to protect *bona fide* purchasers of stock, when parties engage in short sales, electronic book entries are made that reflect a transfer of shares to the

---

[1] As used in this brief, the terms "shares" and "stock" refer to shares of common stock and/or security entitlements to that stock.

purchaser, ***even if the shares are not actually delivered***.  *Id.* ¶ 4.  Thus, when

Defendants fail to deliver shares reflected in transfer entries, which they do

intentionally, they have sold shares that they never owned or intended to possess,

and effectively created artificial shares of TASER stock.  *Id.* ¶ 5 (former SEC

Chairman states, "'Phantom shares created by naked shorting are analogous to

counterfeit money'") (citation omitted).  Those artificial "shares," which were not

authorized or issued by Plaintiff TASER (and for which TASER was never paid in

a public offering), are then traded and re-traded, often by Defendants.  Defendants

reap profits from virtually every aspect of their misconduct, even charging interest

on non-existent loans and commissions on short sales of never-delivered stock.

Defendants' practices, which are known as abusive naked short selling,

injure TASER and its shareholders in many ways, including by flooding the market

with unauthorized, artificial TASER "shares" that dilute the value of legitimate

TASER shares.  *Id.* ¶ 6 (former SEC Chairman states that artificial shares

"'devalue an issuer's shares to the detriment of investors and [legitimate] issuers

alike'") (citation omitted).  Defendants have been repeatedly fined by securities

regulators for engaging in the conduct alleged in the Complaint.  *Id.* ¶ 8 (five-page

list of sanctions issued against Defendants).

## II.    PLAINTIFFS' LEGAL CLAIMS

Defendants' misconduct violates both Georgia law and federal law.  It is well-established that "'the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law,' even where a federal claim is also available."  *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (*quoting Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).[2]  Plaintiffs here assert only state law claims.  Specifically, Plaintiffs assert claims for:  (1) violation of the *Georgia* RICO Act, O.C.G.A. § 16-14-4 (Count One); (2) violation of the former *Georgia* Securities Act ("GSA") (Count Two);[3] (3) violation of the *Georgia* Computer Systems Protection Act ("CSPA"), O.C.G.A. § 16-9-93 (Count Three); (4) conversion under *Georgia* law (Count Four); and (5) money had and received under *Georgia* law (Count Five).

With respect to the Georgia RICO claim, Plaintiffs have identified six categories of predicate acts, five of which consist of violations of Georgia law and only one of which consists of violations of federal law.  Those six sets are:  (a) securities fraud in violation of the *Georgia* Securities Act, including former O.C.G.A. §§ 10-5-5, 10-5-12 and 10-5-24; (b) securities fraud in violation of 15 U.S.C. § 78j, Regulation SHO (17 C.F.R. § 242.203), Rule 15c3-3 (17 C.F.R.

---

[2] As set forth, *infra*, neither of the limited exceptions to this rule applies here.

[3] The Georgia Securities Act of 1973 was in effect when Defendants engaged in the conduct at issue.  Thus, the Complaint and this brief cite to that statute, rather than the Georgia Uniform Securities Act of 2008.  Ex. B (compiling cited provisions).

§ 240.15c3-3) and Rule 10b-5 (17 C.F.R. § 240.10b-5); (c) theft by taking in violation of *Georgia* Code Section § 16-8-2; (d) theft by deception in violation of *Georgia* Code Section § 16-8-3; (e) violation of the *Georgia* CSPA; and (f) perjury in violation of *Georgia* Code Section § 16-10-70.  Complaint ¶¶ 99-163.

## III.   PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint on May 27, 2008.  The original complaint named eight defendants, including Merrill Lynch.  Merrill Lynch has thus been litigating in state court for over two years and is the 100% owner of ML Pro.  Both entities are represented by the same counsel.

All eight initial Defendants (and two more added by amendment) moved to dismiss based on the argument that federal securities laws and regulations preempt all of Plaintiffs' state law claims.  After briefing and oral argument, the state court denied Defendants' motion, holding, "[T]he Court finds that the Plaintiffs have alleged intentional market manipulation by the Defendants and that the Plaintiffs['] State law claims do not conflict with the Federal securities laws as Federal law allows State regulation of securities."  Ex. C.  Defendants also moved to dismiss based on the argument that every count Plaintiffs assert fails to state a claim for relief.  The State Court denied that motion on July 29, 2009.  Ex. D.

The parties have engaged in extensive discovery in the 14 months since the

denial of Defendants' motions to dismiss.  A great deal of discovery remains to be

conducted, however, and there are 21 outstanding motions in the case.  Ex. E (list

of pending motions).  On September 15, 2010, the State Court appointed Henry D.

Fellows, Jr., as a Special Master to address those motions.

Also on that date, Plaintiffs filed a Seventh Amended Complaint, naming

ML Pro as one of the John Doe defendants because it is clear that ML Pro

participated in the misconduct at issue.  Dissatisfied with the rulings in the state

court, Merrill Lynch seized on this amended complaint to have its wholly-owned

subsidiary attempt a gambit to avoid state court jurisdiction.

## ARGUMENT AND CITATION OF AUTHORITY

## I.   ML PRO BEARS THE BURDEN OF PROVING THE EXISTENCE OF FEDERAL QUESTION JURISDICTION.

This Court has set forth the standards governing a motion to remand:

> On a motion to remand, the party that removed the action to federal court
> bears the burden of proving the existence of federal jurisdiction.  *See
> Leonard v. Enterprise Rent-a-Car*, 279 F.3d 967, 972 (11th Cir. 2002).  All
> doubts with respect to federal jurisdiction should be resolved against
> removal and in favor of remand to state court.  *See Diaz v. Sheppard*, 85
> F.3d 1502, 1505 (11th Cir. 1996).

*Neighborhood Mortg.*, 2007 WL 2479205, at *2 (Forrester, J.); *Austin*, 510

F. Supp. 2d at 1221 ("The Eleventh Circuit favors remand where jurisdiction is not

clear.") (citation omitted); *Graham*, 75 F. Supp. 2d at 1373 ("Removal statutes are

807182.1

8

construed narrowly.") (citation omitted).

More specifically, ML Pro must prove that Plaintiffs cannot prevail on their Georgia RICO claim without prevailing on a substantial, disputed issue of federal law – a burden it cannot possibly meet given that Plaintiffs can prevail on their Georgia RICO claim based on any one of five categories of **state law** predicate acts (in addition to the one category of federal predicates alleged).  There are only two, limited exceptions to the rule that a plaintiff may avoid federal jurisdiction by pleading state law claims:  "(1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state law claims."  *Dunlap*, 381 F.3d at 1290.  ML Pro does not and cannot invoke the second exception, the doctrine of complete preemption.[4]  With respect to the first exception:

> In order for a state-law claim to raise substantial questions of federal law, "federal law must be an ***essential element*** of [the plaintiff's] claim [and,] the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another."

*Id.* (*quoting Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th

---

[4] As the Eleventh Circuit has observed, "To date, the Supreme Court has identified only three statutes that completely preempt related state-law claims:  (1) § 301 of the Labor Management Relations Act [ ], (2) § 1132 of the Employee Retirement Income Security Act of 1974 [ ], and (3) §§ 85 and 86 of the National Bank Act." *Dunlap*, 381 F.3d at 1291; *see also* Pub. L. 91-452 § 904(b) (Oct. 15, 1970) ("Nothing in this title [the federal RICO statute] shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title.").

Cir. 1982)) (emphasis added).  In other words, "in *limited circumstances*, federal-question jurisdiction may also be available if a substantial, disputed question of federal law is a *necessary element* of a state cause of action."  *Neighborhood Mortg.*, 2007 WL 2479205, at *2 (*quoting Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998)) (emphasis added).

## II.     FEDERAL QUESTION JURISDICTION DOES NOT EXIST HERE.

### A.     *Ayres* Is a Narrow Decision in a Unique Set of Circumstances.

ML Pro erroneously argues that under *Ayres*, a substantial, disputed question of federal law exists in this case.  ML Pro ignores the narrow scope of that decision, which the Eleventh Circuit and this Court have expressly recognized.

The plaintiffs in *Ayres* asserted a Georgia RICO claim against two manufacturers who had allegedly failed to disclose a defect in cars the plaintiffs purchased.  The Georgia RICO claim was the plaintiffs' sole remaining claim on appeal.  Allegations of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 "form[ed] the basis of the Georgia civil RICO claim."  234 F.3d at 517.  Thus, the Georgia RICO claim was based on the "federal right, enforceable through the federal RICO statute, to be free from violations of the federal mail and wire fraud statutes," not on any state law predicate.  *Id.* at 518-19 (footnote omitted).  Further, whether the defendants had violated the federal mail and wire fraud statutes turned

"entirely" on a legal question regarding another federal statute, the National Traffic

and Motor Vehicle Safety Act ("Safety Act").  *Id.*  Thus, the Eleventh Circuit was

addressing a "situation [ ] in which Plaintiffs ***must*** ***prove federal crimes involving***

***a violation of the federal mail and wire fraud statutes to satisfy the necessary***

***predicate acts of their Georgia RICO cause of action***," *id.* at 519 (emphasis

added), and in which "***resolution of this case depends*** ***entirely*** ***on interpretation of***

***the federal mail and wire fraud statutes and their interaction with the Safety***

***Act***."  *Id.* at 518 (emphasis added).

The Eleventh Circuit held that federal question jurisdiction existed and set

forth two requisites for its decision:

> We find federal question jurisdiction in this case because the case involves
> both (1) the necessity for Plaintiffs to prove, as an essential element of their
> state law cause of action, the existence of federal mail and wire fraud crimes
> as predicate acts, which crimes would be enforceable in a federal civil RICO
> cause of action; and (2) the fact that proof of the alleged federal mail and
> wire fraud crimes involves a very substantial federal question.  *Id.* at 520.

The Eleventh Circuit specifically noted the narrow scope of its decision,

stating that "[t]he particular controversy in this case may very well make this case

one of those exceptional cases" that supports federal jurisdiction.  *Id.* at 519.  The

Court of Appeals did not remotely suggest that federal jurisdiction exists over all

state law RICO actions that allege federal predicates.  To the contrary, the Court

stated that "'the mere presence of a federal issue in a state cause of action does not

807182.1

11

automatically confer federal question jurisdiction.'"  *Id.* at 518 (*quoting Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  Indeed, *Ayres* took pains to note that "in this case, we need not go so far as to hold that *every* state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statutes establishes federal question jurisdiction."  *Id.* at 519 (emphasis in original) (footnote omitted).  Further, *Ayres* expressly left in place district court decisions, including this Court's ruling in *Graham*, holding that federal jurisdiction did not exist over Georgia RICO actions that included federal mail and wire fraud as predicates.  *Id.* at 520 n.12.

This Court has repeatedly noted that *Ayres* "cabined its holding." *Neighborhood Mortg.*, 2007 WL 2479205, at *4; *Austin*, 510 F. Supp. 2d at 1226 (discussing limitations above and stating that in *Ayres*, "[t]he Eleventh Circuit noted that its holding was narrow"); *Scouten*, 2004 WL 5486512, at *2 (discussing limitations in *Ayres*); *Gates*, slip op. at 5-6 (same).

### B. Because Proof of a Violation of Federal Law Is Not an Essential Element of Plaintiffs' Georgia RICO Claims, *Ayres* Does Not Apply, and There Is No Federal Jurisdiction Here.

This Court has also repeatedly held that *Ayres* does not apply and federal question jurisdiction does not exist when a Georgia RICO claim is based on ***both*** state law and federal law predicate acts.  In such circumstances, a violation of

federal law is not an "essential element" of the claim.  *Ayres*, 234 F.3d at 520.

This Court's decision in *Neighborhood Mortgage* is on point.  There, the plaintiff alleged ten state law claims and two federal claims.  2007 WL 2479205, at *1.  One of the state law claims was for violation of the Georgia RICO Act.  The defendant argued that federal jurisdiction existed "because the adjudication of Plaintiff's complaint turns on a substantive question of federal law in the federal mail and wire fraud predicate acts."  *Id.* at *2.  The plaintiff countered that two of the state statutes cited in its complaint could serve as predicate acts for the Georgia RICO claim.  *Id.*  This Court "[found] *Ayres* distinguishable" in such circumstances and held that federal jurisdiction did not exist.  *Id.* at *3.

In ordering remand, this Court followed *Graham*, in which "Judge O'Kelley determined that even though the ten predicate acts cited in the plaintiff's Georgia RICO count were federal criminal offenses, there was no federal question jurisdiction."  *Id.* at *4.  In *Graham*, the plaintiff had amended its original complaint for breach of contract to add a Georgia RICO count.  The defendant, like ML Pro, "argue[d] that federal question jurisdiction exists because plaintiff has pled violations of ten federal criminal statutes as predicate acts under Georgia's RICO statute."  75 F. Supp. 2d at 1373.  The Court noted, however, that "Plaintiff has also alleged nine predicate acts under Georgia law," found that federal question

jurisdiction did not exist and ordered remand.  *Id.*

In addition, *Scouten*, *Austin* and *Gates* all hold that when a plaintiff alleges state law predicate acts, federal law predicate acts are not an essential element of a Georgia RICO claim.  In *Scouten*, the plaintiffs alleged three state law predicate acts, including (like Plaintiffs here) theft, and two federal law predicate acts in support of a Georgia RICO claim.  The Court held, "***Unlike the plaintiffs in Ayres, Plaintiffs here alleged predicate acts under Georgia law such that the alleged predicate acts under federal law are not 'an essential element of the Plaintiffs' cause of action.'***"  2004 WL 5486512, at *2 (emphasis added).  Similarly, in *Austin*, the Court held, "In addition, ***the Court does not find that this case raises a substantial federal question because plaintiff's RICO allegations do not rest solely on federal law.  Rather, plaintiff's allegations of violations of Georgia's theft by deception and theft by taking statutes could serve as plaintiff's predicate acts*** under Georgia's RICO statute."  510 F. Supp. 2d at 1227 (emphasis added). The Court reached the same conclusion in *Gates*, stating that "only two of the twelve predicate acts alleged in the complaint involve the federal mail fraud statute; the others concern theft by deception, theft by taking, the making of false, fictitious, and fraudulent statements, and other similar activities constituting acts of racketeering under O.C.G.A. § 16-14-3(9)(A)."  *Gates*, slip op. at 7.  In short, in

case after case, this Court has rejected the argument made by ML Pro.  *See Meinders v. Refco Sec., Inc.*, 865 F. Supp. 721, 723 (D. Colo. 1994) (ordering remand because assertion of federal securities violations as predicate acts under state RICO statute does not establish federal question jurisdiction).

### C.    Asserting Violations of Federal Law in a State Law Claim Is Insufficient to Confer Federal Question Jurisdiction.

Plaintiffs' Complaint alleges violations of federal law as part of a claim for relief under the Georgia RICO Act, not as a claim for relief under any federal statute.  Complaint ¶¶ 112-20.  ML Pro appears to proceed from the erroneous assumption that if a plaintiff alleges violations of federal law in a complaint, then federal jurisdiction exists.  The Eleventh Circuit, however, has held that "it is now well established that federal jurisdiction is not created by the mere fact that proof of violation of a federal statute is an element of a plaintiff's state law cause of action."  *Dunlap*, 381 F.3d at 1292.

This Court has repeatedly set forth the same holding.  In *Graham*, the Court stated, "After careful consideration, this court finds that asserting violations of federal criminal law as predicate acts to Georgia's RICO act is not sufficiently substantial to confer federal question jurisdiction."  75 F. Supp. 2d at 1373; *Scouten*, 2004 WL 5486512, at *2 (same).  In *Austin*, the Court "noted that other courts in and outside of this circuit have held that a plaintiff's allegations of

violations of federal law as predicate acts under a state RICO act is not sufficiently substantial to confer federal question jurisdiction."  510 F. Supp. 2d at 1227 (citations omitted); *id.* at 1226 ("The mere fact that a court must apply or interpret federal law to determine whether plaintiff is entitled to relief is not sufficient to confer federal question jurisdiction.").  As in *Austin*, "At most, the Court [here] must determine whether defendant committed a federal violation, which may serve as a predicate act under Georgia's RICO statute."  *Id.* at 1226-27; *Gates*, slip op. at 7 ("this case involves the issue as to whether [defendant's] alleged acts of sending certain documents through the mail for the purpose of perpetrating fraud constitutes a violation of the federal mail fraud statute").  As set forth above, that determination is insufficient to confer federal question jurisdiction.

> ### D.    Proof of a Violation of Federal Law Is Not an Element of Any of the State Law Predicate Acts or Non-RICO State Law Claims.

Plaintiffs do not have to prove that Defendants violated federal securities laws or regulations to prove the state law predicate acts of theft by taking, theft by deception, perjury, violation of the former Georgia Securities Act ("GSA") or violation of the Georgia Computer Systems Protection Act ("CSPA"), or to prove their state law claims for conversion, money had and received, violation of the GSA or violation of the CSPA.  Defendants engaged in a set of misconduct that includes fraud, deception, material misrepresentations and omissions, market

807182.1

manipulation, misappropriation, conversion, theft and false statements.  This panoply of misconduct violates *Georgia* law, and Plaintiffs' task in this case is to prove the specific elements of the state law predicate acts and state law claims alleged in the Complaint.  None of the state law predicates or state law claims includes violation of federal law as an element.  Thus, while Defendants' misconduct does violate federal law, proof of that fact is not necessary for Plaintiffs to prevail on their state law predicates or claims.

ML Pro is simply wrong, and ignores the applicable legal standard, when it asserts that all of Plaintiffs' claims are premised on violations of federal securities laws.  Plaintiffs expressly allege, for example, that Defendants' conduct violates the *Georgia* Securities Act by:  employing a "device, scheme or artifice to defraud" in connection with sales of securities, Complaint ¶¶ 110-11, in violation of O.C.G.A. § 10-5-12(a)(2)(A); making "untrue statement[s] of a material fact" and "omittingto state [ ] material fact[s]" in connection with sales of securities, Complaint ¶ 108, in violation of O.C.G.A. § 10-5-12(a)(2)(B); engaging in "an act, practice or course of business that operates or would operate as a fraud or deceit" in connection with sales of securities, Complaint ¶¶ 110-11, in violation of O.C.G.A. § 10-5-12(a)(2)(C); "misappropriating" or "converting" property in connection with sales of securities, Complaint ¶ 111, in violation of O.C.G.A.

§ 10-5-12(d)(5); employing a "deceptive or fraudulent device, scheme or artifice to

manipulate the market in a security," Complaint ¶ 109, in violation of O.C.G.A.

§ 10-5-12(d)(6); and selling unregistered securities, Complaint ¶ 107, in violation

of O.C.G.A. §§ 10-5-5, 10-5-12.

Plaintiffs can prevail on these allegations under the GSA without showing a

violation of federal law. *Avenius* is on point:

> Here, Plaintiffs assert, *inter alia*, that Defendants never intended to make a
> timely delivery of the stock, and therefore, they engaged in deceptive
> conduct….[D]efendants' intent with respect to delivery is central to the
> proof of Plaintiffs' claims.  In that regard, the duty or liability is not created
> by federal law; rather, it is created by state statute.  Nor is a substantial
> disputed question of federal law a necessary element of the [California
> Corporations Code] Section 25400 claim….In addition, because Plaintiff's
> claims are not predicated entirely on rights or obligations created by federal
> law, a court need not refer only to federal law to determine whether
> Defendants' conduct was unfair or fraudulent.

2006 WL 4008711, at *5; *Beechwood Dev. Group, Inc. v. Konersman*, 517 F.

Supp. 2d 770, 774-75 (D.S.C. 2007) (remanding for lack of federal jurisdiction in

action alleging misrepresentations or omissions under state securities law despite

alternate theory of liability under federal securities laws).

The same is true for Plaintiffs' other state law predicate acts and claims:

-       Plaintiffs can prevail on the predicate act of theft by taking, O.C.G.A. § 16-

8-2, and the claim of conversion by showing that Defendants unlawfully

took or appropriated Plaintiffs' property rights in TASER stock by creating

and trading in unauthorized, artificial shares of TASER, without also

showing a violation of federal law;

- Plaintiffs can prevail on the predicate act and claim of violation of the

Georgia CSPA, O.C.G.A. § 16-9-93, by showing that Defendants engaged in

such taking or misappropriation through the use of computers or by affecting

computer data, without also showing a violation of federal law;

- Plaintiffs can prevail on the predicate act of theft by deception by showing

that Defendants used "any deceitful means or artful practice," O.C.G.A.

§ 16-8-3(a), to obtain Plaintiffs' property rights in TASER stock, without

also showing a violation of federal law;

- Plaintiffs can prevail on the predicate act of perjury, O.C.G.A. § 16-10-70,

by showing that Defendants knowingly made false statements in this action,

including by signing false interrogatory verifications, without also showing a

violation of federal law, Complaint ¶ 150; and

- Plaintiffs can prevail on the claim of money had and received by showing

that Defendants received monies or stocks of which they are not the true

owners and which, in equity and good conscience, they should not be

permitted to keep, without also showing a violation of federal law, *id.* ¶ 176.

With regard to the applicable legal standard, ML Pro's own authority, *Ayres*,

states that federal jurisdiction requires proof of "the necessity for Plaintiffs to prove, as an *essential element of their state law cause of action*, the existence of federal" law violations.  234 F.3d at 520 (emphasis added); *id.* at 517 ("'To bring a case within the [removal] statute, a right or immunity created by the Constitution or laws of the United States *must be an element, and an essential one, of the plaintiff's cause of action*.") (*quoting Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936) (Cardozo, J.)) (emphasis added); *Dunlap*, 381 F.3d at 1290 ("for a state-law claim to raise substantial questions of federal law, 'federal law must be an *essential element of [the plaintiff's] claim*'") (citation omitted) (emphasis added); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008) (requiring proof that "plaintiffs' state-law tort claims '*necessarily* raise a stated federal issue'") (emphasis added) (citations omitted).[5]  ML Pro cannot meet this standard for the simple reason that violations of federal law are not an essential element of Plaintiffs' state law predicates or state law claims.

There is no issue of "artful pleading" around federal law here; Plaintiffs' state law predicates and claims simply do not require proof of violations of federal law.  Plaintiffs' claims arise out of *state law* rights and duties.  Plaintiffs have *state*

---

[5] *Adventure Outdoors* supports Plaintiffs.  There, the Eleventh Circuit ordered remand of a state law defamation action even though the plaintiffs' claims were premised on the defendants' statements that the plaintiffs had violated federal law.

*law* rights to be free from fraud, misrepresentations and material omissions in the sale of securities, ***state law*** rights to be free from market manipulation and ***state law*** rights to be free from deceit, theft and misappropriation.[6]

ML Pro's ploy here is obvious:  it attempts to suggest that because the federal government regulates securities, federal law must be the source of Plaintiffs' claims.  That suggestion is nonsense.  It has been settled for decades that states have the power, through state statutes and state common law, to punish abuses in the securities field – even though the federal government also regulates securities.  States passed comprehensive securities laws long before the federal government passed the Securities Act of 1933.[7]  Indeed, by 1929, "virtually all the states had some sort of securities act."  Long, 12 Blue Sky Law § 1:1.  The National Conference of Commissioners on Uniform State laws later passed the Uniform Securities Act of 1956.[8]  That Act has been adopted by 37 states and

---

[6] *Kahn v. Salomon Bros., Inc.*, 813 F. Supp. 191, 195 (E.D.N.Y. 1993), cited by ML Pro, is inapposite because the court there held that the plaintiff had "not alleged the necessary elements for a state tort claim against defendants," *i.e.*, there was no state law claim, and was only a federal claim, in the case.  *Kahn* does not hold that where a plaintiff alleges state law claims, those claims are converted into federal claims because the conduct at issue also violates federal law.

[7] *See* 12 Joseph C. Long, Blue Sky Law § 1:1 (2008); 1 Thomas Hazen, Law Sec. Reg. § 1.2 (5th ed. 2005).

[8] Richard W. Jennings, The Role of States in Corporate Regulation and Investor Protection, 23 Law and Contemporary Problems 193, 221 n.168 (Spring 1958).

regulates broker-dealers, securities fraud, and market manipulation.[9]

Congress has expressly **approved** and codified States' role in the regulation of securities.  Both the federal Securities Act of 1933 and the federal Securities Act of 1934 contain clauses that expressly preserve the role of state law remedies in the securities field.  Under Section 16 of the 1933 Act, "the rights and remedies provided by this title shall be **in addition to** any and all other rights and remedies that may exist at law or in equity."  15 U.S.C. § 77p(a) (emphasis added).  Section 28 of the 1934 Act incorporates an identical clause and provides that "nothing in this title shall affect the jurisdiction of the securities commission…. of any state over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder."  15 U.S.C. § 78bb(a).  ML Pro inexplicably fails to mention these statutes.[10]

The bottom line is that States may provide claims for relief from abuses in the securities field that are independent of, and in addition to, federal claims for

---

[9] A. Rachelson, Corporate Acquisitions, Mergers and Divestitures § 4:79 (2008).

[10] Consistent with Congress's express approval of the States' role in combating securities abuses, Georgia courts routinely hear and decide state law claims alleging misconduct in the sale of securities.  *See, e.g.*, *Cohen v. William Goldberg & Co.*, 262 Ga. 606 (1992) (state and federal securities law claims); *Dehler v. Setliff*, 239 Ga. 19 (1977) (claims of fraud and violation of Georgia Securities Act); *Felton v. Highlands Hotel Co.*, 165 Ga. 598, 608 (1928) (claims under older version of Georgia Securities Act); *Cox v. Edelson*, 243 Ga. App. 5 (2000) (claims of fraud, misrepresentation and violation of Georgia Securities Act).

807182.1

relief.[11]  When, as here, a plaintiff chooses to pursue only state law claims for

relief, federal question jurisdiction does not exist.[12]

ML Pro will no doubt attempt to argue that Plaintiffs' state law claims would

conflict with federal securities regulations.  First, as set forth, *supra*, at 7, the state

court rejected this very argument when it denied Defendants' motion to dismiss

based on federal preemption.  Ex. C ("Plaintiffs['] State law claims do not conflict

with the Federal securities laws").  Second, ML Pro is dead wrong – federal

securities laws and regulations prohibit the misconduct alleged in the Complaint.[13]

Third, and most importantly for present purposes, the argument that a state

---

[11] It is irrelevant that Congress removed federal securities violations as predicate acts under the ***federal*** RICO statute; states retain the right to permit federal securities violations to be used as predicate acts under ***state*** RICO statutes.  *Supra n.4*; *Metz v. United Counties Bancorp.*, 61 F. Supp. 2d 364, 371 (D.N.J. 1999).

[12] ML Pro's argument that federal courts have exclusive jurisdiction over claims for relief under the Securities Exchange Act of 1934 is also irrelevant.  Notice of Removal (Dkt. No. 1) ¶ 9.  As set forth above, Plaintiffs are asserting claims for relief under state law based on duties created by state law.  *Cf. Hawkins v. NASD*, 149 F.3d 330, 331 (5th Cir. 1998) (case cited by defendants in which all of plaintiff's claims against NASD were based on duties "created by relevant federal securities laws and regulations"); *Whitehall Wellington Invs., Inc. v. NASD*, No. 00-3899, 2000 WL 1846129 (S.D. Fla. Dec. 7, 2000) (case cited by defendants in which court held that claims challenging the NASD's application, in its regulatory capacity, of an internal NASD rule were based on a duty under the Exchange Act).

[13] *See, e.g.*, Complaint ¶ 5 ("the SEC stated that abusive naked short selling refers to 'selling short without having stock available for delivery and intentionally failing to deliver stock within the standard three-day settlement cycle,' and that such short selling 'as part of a manipulative scheme is always illegal under the general anti-fraud provisions of the federal securities laws'") (citation omitted).

law cause of action conflicts with and is preempted by federal law is **not** a basis for federal question jurisdiction.  Rather, such an argument is a claim of "ordinary preemption" that can be asserted in state court and is not a basis for removal.  "So-called 'ordinary preemption' which is raised as a defense based on the preemptive effect of a federal statute, will not provide a basis for removal."  *Dunlap*, 381 F.3d at 1290 n.8.  It is only "complete preemption," which "occurs when federal law so occupies a given field that a state-law claim is transformed into a claim 'arising under' federal law," that permits removal.  *Id.* (footnote omitted).  Complete preemption obviously does not exist here (and ML Pro makes no such claim) given the long history of federal approval of state law claims in the securities field.

To put it in more concrete terms, any argument by ML Pro that federal regulations somehow permit its conduct is (in addition to being rejected and erroneous) not a basis for federal question jurisdiction.  As the Supreme Court has stated, "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.  ***Congress has long since decided that federal defenses do not provide a basis for removal***." *Caterpillar*, 482 U.S. at 399 (footnotes omitted) (emphasis added).

807182.1

### III.   PLAINTIFFS SHOULD BE AWARDED THEIR COSTS AND FEES.

ML Pro removed this case without citing extensive authority rejecting its argument, including numerous cases from this Court and a decision (*Avenius*) denying a bid by Merrill Lynch (ML Pro's parent and co-defendant) to remove a similar short selling case on similar grounds.  ML Pro knows that there is no legitimate basis for federal question jurisdiction here.  In such circumstances, an award of costs and attorneys fees under 28 U.S.C. § 1447(c) is proper.  *Graham*, 75 F. Supp.2d at 1373-74 (awarding fees where "defendant asserts without authority that plaintiff's Georgia RICO claim is, in fact, a claim under the federal RICO Act because plaintiff has set forth various federal crimes as predicate acts").

Even putting aside bad faith, an award of costs and fees is proper.  As Judge Story stated in *Coker*, "the purpose of § 1447(c) is not to punish defendants for improper removal, but to compensate plaintiffs for expenses associated with obtaining a remand order….Here, this case was improperly removed by Defendant, and the Court determines that Plaintiffs should be compensated for their expenses in obtaining this remand."  220 F. Supp. 2d at 1372-73.  Plaintiffs have borne significant expense to deal with this improper removal and should be compensated.

Plaintiffs respectfully request that the Court remand this action and award Plaintiffs' all costs and fees they incur in connection with obtaining remand.

Respectfully submitted, this 6th day of October, 2010.

/s/ Steven J. Rosenwasser
John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
BONDURANT, MIXSON &
ELMORE, LLP
1201 W. Peachtree Street
3900 One Atlantic Center
Atlanta, Georgia 30309
floyd@bmelaw.com
rosenwasser@bmelaw.com
iannarone@bmelaw.com
Phone: (404) 881-4100
Facsimile:  (404) 881-4100

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the District Court for the

Northern District of Georgia, I hereby certify that the foregoing pleading and the

Brief in Support of Plaintiffs' Motion for Remand, Fees and Costs have been

prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

Respectfully submitted this 6th day of October, 2010.

/s/ Steven J. Rosenwasser
Steven J. Rosenwasser
Georgia Bar No. 614908

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND, FEES**

**AND COSTS** was electronically filed with the Clerk of Court using the Court's

electronic filing system which will automatically send an email notification of such

filing to the following attorneys of record who are registered participants in the

Court's electronic notice and filing system:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Dan F. Laney, III, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601
> rsinkfield@rh-law.com

Further, I hereby certify that on this day, I caused a true and correct copy of

the foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR**

**REMAND, FEES AND COSTS** to be served by Email and U.S. Mail on:

> **Attorneys for Banc of America Securities, LLC and**
> **Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
> Andrew J. Frackman, Esq.
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY  10036

807182.1

28

**Attorneys for Morgan Stanley & Co. Incorporated:**
Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa T. Aoyagi, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**

Andrew B. Clubok, Esq.

Jeffrey G. Landis, Esq.

Daniel Gomez, Esq.

Kirkland & Ellis LLP

655 Fifteenth Street, N.W., Suite 1200

Washington, DC  20005-5793

Maria Ginzburg, Esq.

Kirkland & Ellis LLP

Citigroup Center

153 East 53rd Street

New York, NY  10022-4611

**Attorneys for Credit Suisse USA, Inc.:**

Fraser L. Hunter, Jr., Esq.

Wilmer Cutler Pickering Hale & Dorr LLP

399 Park Avenue

New York, NY  10022

This the 6th day of October, 2010.

<u>/s/ Steven J. Rosenwasser</u>

Steven J. Rosenwasser

Georgia Bar No. 614908

807182.1