# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)
**(Cite as: 2006 WL 4008711 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Joseph AVENIUS, Plaintiff,
v.
BANC OF AMERICA SECURITIES LLC, Defendant.
No. C06-04458 MJJ.

Dec. 30, 2006.

Ellen A. Cirangle, Theodore A. Griffinger, Jr., Tanya Herrera, Stein & Lubin, LLP, San Francisco, CA, for Plaintiff.

Christopher D. Catalano, O'Melveny & Myers LLP, San Francisco, CA, Andrew J. Frackman, Brendan Joseph Dowd, O'Melveny & Myers LLP, New York, NY, for Defendant.

## ORDER GRANTING MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447(c)

MARTIN J. JENKINS, United States District Judge.

### INTRODUCTION

*1 Before the Court is Plaintiffs' Motion to Remand Pursuant to 28 U.S.C. § 144(c). (Doc. # 31.) Defendants filed an Opposition (Doc. # 46), and Plaintiffs filed a Reply thereto. (Doc. # 50.)

For the following reasons, the Court **GRANTS** the Motion.

### FACTUAL BACKGROUND

This case arises from Defendants' purported illegal stock market manipulation scheme, which Plaintiffs claim affected the price of shares in Novastar Fin-

ancial, Inc. ("NFI"), a stock which Plaintiffs owned. The material allegations, taken from Plaintiffs' Complaint, are as follows.

Plaintiffs were all at some point owners of NFI common stock. Defendants are business entities engaged in the prime brokerage business. (Complaint ¶ 54.) As prime brokers, Defendants are responsible for assuring the proper accounting and settlement of stock trades, including short sales. As Plaintiffs describe, a short sale is when "a person sells stock that he or she does not then own, by borrowing the stock and warranting to the stock lender that the loan will be 'covered' with shares purchased at a later date. The seller speculates that the price of the stock will go down so that, when the loan is 'covered,' he or she will profit from the drop in price." (Id. ¶ 56.) In particular, in the short sale context, prime brokers are responsible for locating shares of the shorted stock, borrowing the stock, and delivering the stock to the buyer for a fee paid by the short seller. (Id. ¶ 57, ¶ 59 .) According to Plaintiffs, "[p]rime brokers are required to deliver the stock within three days of the short sale. If the prime broker fails to deliver the security to the buyer within the normal three day settlement period, the shares become 'fails to deliver' and the sale is a 'naked short sale.' " (Id. ¶ 60.)

Further, Plaintiffs allege that "[p]rime brokers are motivated to intentionally fail to deliver stocks because this removes a core cost from their securities lending business-the cost of providing the security, thus allowing them to earn more money through the charging of fees, commissions and/or interest through phantom securities transactions." (Id. ¶ 62.)

A persistent large number of fails to deliver create immense downward pressure on the price of a company's stock. (Id. ¶ 63.) Plaintiffs allege that, beginning in January 2005, large quantities of NFI stock were not properly delivered for settlements. Plaintiffs further allege that "Defendants, who control 83% of the prime brokerage market, have at all

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)
**(Cite as: 2006 WL 4008711 (N.D.Cal.))**

times alleged herein and continue to, intentionally fail to deliver NFI to buyers in short sales transactions," thereby creating "dramatic distortions with regard to the nature and amount of trading in NFI's publicly held stock." (*Id.* ¶ 67, ¶ 68.) As a result, Plaintiffs charge that "NFI's share price is depressed because of the oversupply caused by failing to settle transactions with shares issued by NFI," and that "[s]hares issued by NFI ... are not being properly valued because of the dilutive effect of the phantom shares, which were not issued by NFI." Defendants' purported acts resulted in (1) the loss of the price per share of NFI common stock, which has declined by more than 50%; and (2) an impairment of NFI's share price continued ability to grow at historic rates. (*Id.* ¶ 72.) Additionally, Plaintiffs allege that they each incurred damages, in that, each of them "sold shares of NFI during the timeframes alleged [ ] that Defendants acted wrongfully at prices that were artificially depressed due to Defendants wrongful conduct." (*Id.* ¶ 73.)

*2 Plaintiffs contend that Defendants' wrongful conduct took place either directly or indirectly in the State of California. (*Id.* ¶ 70, ¶ 75.)

Based on the foregoing allegations, Plaintiffs assert claims against Defendants for: (1) market manipulation in violation of California Corporations Code §§ 25400 et seq.; and (2) unfair business practices in violation of California Business & Professions Code §§ 17200 and 17500.

On July 21, 2006, Defendants removed this matter to Federal Court. (Doc. # 31.) Defendants assert that this Court has original jurisdiction of this action under 28 U.S.C. § 1331 because it arises under the laws of the United States. Defendants contend that Plaintiffs claims depend on the interpretation and resolution of federal securities law and regulations promulgated thereunder by the United States Securities Exchange Commission ("SEC"). (Notice of Removal at ¶ 3.) More specifically, Defendants alleged that Plaintiffs claims are premised on failures to deliver stock in connection with short sales, and such practices are directly addressed by the Se-

curities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq., (the "Exchange Act"), and/or the rules and regulations the SEC promulgates thereunder. The delivery requirements flow from the Exchange Act, and "failures to deliver are closely regulated under the Exchange Act's provision, Including Regulation SHO." (*Id.* at ¶ 4.)

Defendants also contend that this Court has diversity jurisdiction over this matter notwithstanding the fact that three of the Plaintiffs are citizens of the same state as several Defendants. Asserting fraudulent joinder, Defendants urge this Court to disregard the citizenship of the non-diverse plaintiffs because they cannot establish liability against any Defendant. (*Id.* at ¶ 7.)

On August 14, 2006, Plaintiffs filed their Motion to Remand.

### LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant in a civil action may remove a case from state court to federal district court if the district court has subject matter jurisdiction over the case. The district court has subject matter jurisdiction if there is diversity of citizenship between the parties, or if the action is founded on a claim arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1441(b); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction); *Ethridge v. Habor House Restaurant,* 861 F.2d 1389, 1393 (9th Cir.1988). As the party seeking to remove the action, the defendant bears the burden of establishing that subject matter jurisdiction exists. *Id.* at 1393. Because the Court strictly construes the removal statute against removal, if there is any doubt as to the existence of federal jurisdiction, the Court should remand the matter to state court. See *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).

### ANALYSIS

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)
**(Cite as: 2006 WL 4008711 (N.D.Cal.))**

## I. Federal Question Jurisdiction, 28 U.S.C. § 1331

**\*3** Defendants, contend that this Court has original jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States. "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). An action raising a defense based on federal law does not create federal question jurisdiction "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Plaintiff "is master of ... her complaint and may avoid federal jurisdiction by exclusive reliance on state law." *Easton v. Crossland Mortgage Corp.,* 114 F.3d 979, 982 (9th Cir.1997). However, "a plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law." *Id.*

### A. The Face of the Complaint

Generally, federal jurisdiction must appear on the face of plaintiff's properly-pleaded complaint. See *Caterpillar,* 482 U.S. at 392. Here, it is undisputed that Plaintiffs' Complaint asserts two claims arising under California's statutory law. Thus, there is no federal question presented on the face of Plaintiffs' complaint.

### B. The Artful Pleading Doctrine

The Court's inquiry, however, does not end there. Defendants contend that, despite the absence of a federal question on the face of the Complaint, fed-

eral question jurisdiction exists because "Plaintiffs' claims depend on resolution of a substantial question of federal law-whether the purported failures to 'locate,' 'borrow,' and 'deliver' violated Defendants' obligations arising under the SEC's Regulation SHO and the predecessor SRO rules governing short selling." As such, Defendants maintain that the district court has exclusive jurisdiction over Plaintiffs' claims under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which states:

> The district courts of the United States and the United States Court of any territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter, or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter, or the rules and regulations thereunder.

Plaintiffs counter that they do not assert, rely on, or attempt to enforce any such laws or regulations; instead, "Plaintiffs will be asking the jury to find that Defendants' intentional failures to deliver NFI stock resulted in manipulation of the market as defined in California's securities statutes, and that such actions by Defendants amounted to unfair business practices as such practices are defined under California's UCL." Because they do not seek to enforce any right or liability created by the Exchange Act, Plaintiffs argue that their claims fall within 15 U.S.C. § 78bb, which preserves both common law and state authority over securities matters. See *Matsushita Elec. v. Indus. Co. v. Epstein,* 516 U.S. 367, 383, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).

**\*4** The Court must determine whether Plaintiffs have artfully plead claims that, although couched in terms of state law, necessarily arise under federal law. *See Franchise Tax Bd., 463 U.S.* at 22. The artful pleading doctrine prevents a plaintiff from avoiding federal jurisdiction "by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law." *Easton,* 114 F.3d at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)
**(Cite as: 2006 WL 4008711 (N.D.Cal.))**

982. This Court may re-characterize such "artfully pleaded" state law claims as federal claims. *See Lippitt v. Raymond James Financial Svcs. Inc.,* 340 F.3d 1033, 1041 (9th Cir.2003).[FN1] A state claim can be deemed to arise under federal law where the right to relief depends on the resolution of a substantial, disputed federal question. *See ARCO Envtl. Remediation, LLC v. Dep't of Health and Envtl. Quality of the State of Montana,* 213 F.3d 1108, 1114 (9th Cir.2000), *Grable & Sons Metal Products v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 2367, 162 L.Ed.2d 257 (2005).

> FN1. However, the Ninth Circuit has called the doctrine a "minefield" and cautioned that "[c]ourts should invoke the doctrine only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Lippett,* 340 F.3d at 1041.

For example, in *Sparta Surgical Court v. NASD,* 159 F.3d 1209 (9th Cir.1988), the plaintiff filed suit in state court alleging various state law claims after defendant temporarily de-listed and suspended trading of the plaintiff's stock on the opening day of a public offering. *Id.* at 1210-1211. The defendants removed to federal court, and the Ninth Circuit held that the district court properly denied the plaintiff's motion to remand. *Id.* at 1211. Because the viability of any cause of action founded upon NASD's conduct in de-listing the stock or suspending trading depended on whether NASD followed its own rules, the federal court had jurisdiction to enforce such rights or liabilities created by the Exchange Act. *Id.* at 1212.

Similarly, in *D'Alessio v. NYSE,* 258 F.3d 93 (9th Cir.2001), the court found that, although the plaintiff plead only state law claims, the gravaman of the complaint was that the defendant conspired to violate federal securities laws and rules, and failed to perform its statutory duty-created by federal law-to enforce its members' compliance with those laws. *Id.* at 101-102. Since the defendant's violations of federal law and its improper interpreta-

tion of federal law formed the basis for the plaintiff's claims, the federal question was substantial enough to confer federal question jurisdiction. *Id.* at 102-103.

However, "not every question of federal law emerging from a suit is proof that a federal law is the basis for the suit." *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 115, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Even when a complaint repeatedly refers to federal law, it does not state a federal question where a plaintiff invokes an independent state law. *ARCO,* 213 F.3d at 1113.

In *Lippitt, supra,* the plaintiff alleged a claim in state court for violation of California's Unfair Competition Law related to defendant's marketing of "callable CDs." The misconduct alleged by the plaintiff overlapped with conduct proscribed by NYSE rules, and the complaint tracked "almost verbatim the misdeeds proscribed by NYSE rules." *Lippitt,* 340 F.3d at 1037. Nevertheless, the court held that the complaint did not raise a substantial federal question because plaintiff did not challenge any right or liability created by the Exchange Act. Rather, the plaintiff challenged the defendant's allegedly deceptive marketing practices under California law, irrespective of whether the tactics also violated federal law. *Id.* at 1044.

## 1. The California Corporations Code § 25400 Claim

*5 Contrary to cases where federal jurisdiction was found to exist, Plaintiffs' Section 254000 claim does not assert a right or liability created by federal statute. In *Sparta,* federal subject matter jurisdiction existed because the disputed issue was whether the NASD had followed its own rules in delisting the plaintiff's stock; this issue was central to the proof of the plaintiff's claims. *Sparta* 159 F.3d at 1209. In other words, since the *only* basis for the plaintiffs claims was NASD's rules and regulations, a substantial federal question existed. *Lippitt,* 340 F.3d at 1044 (interpreting *Sparta* ). In *D'Alessio,* the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)
(Cite as: 2006 WL 4008711 (N.D.Cal.))

plaintiff's claim turned on a finding that the NYSE failed to enforce duties *created by* federal law. *D'Allesio,* 258 F.3d at 93; *Lippit* 340 F.3d. at 1045 (interpreting *D'Allesio* ).

Here, Plaintiffs assert, *inter alia,* that Defendants never intended to make a timely delivery of the stock, and therefore, they engaged in deceptive conduct. As importantly, Plaintiffs argue that there is no substantial disputed question of federal law because there is no dispute as to the time frame, set forth in the federal regulations, for delivery. Unlike *Sparta* or *D'Alessio,* the central issue is not whether Defendants complied with the federal rules or regulations. Rather, Defendants' intent with respect to delivery is central to the proof of Plaintiffs' claims. In that regard, the duty or liability is not created by federal law; rather it is created by state statute. Nor is a substantial disputed question of federal law a necessary element of the Section 25400 claim. *See ARCO,* 213 F.3d at 1116. Accordingly, this matter is more like *Lippit,* wherein the challenge to defendants' marketing practices were the gravamen of the plaintiff's complaint, irrespective of whether the tactics also violated federal law.[FN2]

> FN2. That Defendants may try to argue in their defense that there was no wrongdoing because their actions were consistent with federal law does not create federal question jurisdiction. *See Franchise Tax Bd. of Cal.,* 463 U.S. at 14.

For these reasons, the Court finds that the Section 25400 claim does raise a substantial federal question.

## 2. The Unfair Competition Law Claim

California's Unfair Competition Law ("UCL") establishes three types of unfair competition-unlawful, unfair, or fraudulent acts or practices. *Cel-tech Communications, Inc. v. Los Angeles Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Plaintiffs argue that their UCL

claim does not depend on a finding that Defendants violated federal securities laws, rules, or regulations because they can prove this claim by showing that Defendants acted unfairly or fraudulently. Citing *California ex rel. Lockyer v. Dynergy, Inc.,* 375 F.3d 831 (9th Cir.2004), Defendants argue that regardless of particular prong of § 17200 at issue, federal law governs the propriety of Defendants' conduct. Thus, this claim turns on a substantial issue of federal law, and the Court has removal jurisdiction.

In *Dynergy,* the plaintiff filed a UCL claim in state court predicated solely on the defendants' failure to comply with a tariff filed pursuant to the Federal Power Act ("FPA"). Because, the viability of the claim depended entirely on a violation of the tariff, the district court had removal jurisdiction under 16 U.S.C. § 825p of the FPA, which affords the district courts exclusive jurisdiction over violations or suits brought to enforce any right or liability created by the FPA. *Id.* at 840-841. The court also stated, without explanation, that whether the defendants' practices were unfair or fraudulent also depended entirely on the tariff. *Id.* at 841, n. 6.

**\*6** *Dynergy* is distinguishable from this matter. Here, Plaintiff's UCL claim is not predicated solely on a violation of federal law. Indeed, the "unlawful" prong of Plaintiff's UCL claim may be predicated on a violation of California Corporations Code § 25400, which plaintiffs also allege. As described above, unlawful conduct in violation of § 25400 does not hinge on a violation of federal law. In addition, because Plaintiff's claims are not predicated entirely on rights or obligations created by federal law, a court need not refer only to federal law to determine whether Defendants' conduct was unfair or fraudulent. As such, the Court finds that Plaintiff UCL claim does not raise a substantial federal question.[FN3]

> FN3. The present case is similar to *California ex rel. Lockyer v. Powerex Corp.,* 2005 WL 2030718 (E.D.Cal.). There, plaintiff filed a UCL claim alleging that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)
**(Cite as: 2006 WL 4008711 (N.D.Cal.))**

defendant engaged in unlawful, unfair, and fraudulent tactics in the provision of electricity. *Id.* at *1. Plaintiff predicated its UCL claim on violations of the California Corporations Code and California Commodity law. *Id.* at *2. The court distinguished *Dynergy* and remanded the case, holding that plaintiff did not seek to enforce any liability or duty created by the FPA, and plaintiff alleged that it could prove violations of the California statutes without resort to federal law. *Id.* at *7. That is exactly the situation here.

In light of the above, the Court does not have federal question jurisdiction under 28 U.S.C. § 1331.

## II. Diversity Jurisdiction

Alternatively, Defendants assert that removal to district court is proper because diversity jurisdiction exists in this matter. Recognizing that at least three of the named Plaintiffs are citizens of New York (the "New York Plaintiffs"), Defendants argue that, "because there is no possibility that these non-California Plaintiffs will be able to establish liability against any Defendant," they have been fraudulently joined. As such, Defendants urge the Court to disregard the New York Plaintiffs for purposes of determining jurisdiction.

Plaintiffs contend that Defendants have not fulfilled the heavy burden of persuasion to justify a finding of fraudulent joinder, and assert that the New York Plaintiffs have sufficiently alleged that the conduct at issue occurred in California. Namely, paragraph 70 Plaintiffs' Complaint alleges: "Upon information and belief, Defendants' market manipulation took place in the state of California." Additionally, Plaintiffs point to paragraph 75 of their Complaint, which alleges, in pertinent part, that "Defendants' violations were committed either directly or indirectly within California."

Federal diversity jurisdiction under 28 U.S.C. §

1332(a) requires that all defendants be diverse from all plaintiffs. *Exxon Mobile Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 2617, 162 L.Ed.2d 502 (2005). The court may properly disregard the citizenship of fraudulently joined parties. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).[FN4] "If a plaintiff fails to state a cause of action[,] ... and the failure is obvious according to the well settled rules of the state, the joinder is fraudulent." *United Computer Syst., Inc. v. AT & T Corp.,* 298 F.3d 756. The defendant must show that there is no possibility that the alleged sham party can establish a cause of action. *Good v. Prudential Ins. Co. Of Am.,* 5 F.Supp.2d 804, 807 (N.D.Cal.1998). The party asserting diversity jurisdiction may present facts establishing fraudulent joinder. *McCabe,* 811 F.2d at 1340.

> FN4. The doctrine of fraudulent joinder typically applies to defendants. The parties debate at length whether the doctrine likewise applies to plaintiffs. The Court finds it unnecessary to rule on this issue.

Defendants are correct that to state actionable claims under the relevant California statutes, the New York Plaintiffs must adequately allege that Defendants' wrongdoing occurred in California. See *Diamond Multimedia v. Sup.Ct.,* 19 Cal.4th 1036, 1053, 80 Cal.Rptr.2d 828, 968 P.2d 539 (1999), *Norwest Mortgage v. Sup.Ct.,* 72 Cal.App.4th 214, 225, 85 Cal.Rptr.2d 18 (1999). Defendants contend that the New York Plaintiffs have failed to do so because the Complaint "does not come close to alleging acts of market manipulation in California, and, instead, simply asserts upon information and belief-without any supporting factual allegations-that 'Defendants' market manipulation took place in the State of California." Defendants assert that these allegations are conclusory and inadequate.

*7 The Court, however, disagrees. According to the "well settled rules of the state," Plaintiffs' allegations are sufficient to state claims on behalf of the New York Plaintiffs. The Complaint sets forth in detail the purported wrongful conduct and alleges

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)
**(Cite as: 2006 WL 4008711 (N.D.Cal.))**

that such conduct occurred in California. Absent some argument that Plaintiffs lack any basis for making such allegations, the Court finds these allegations sufficient to state a viable claim under California Corporations Code § 25400 and Business and Professions Code § 17200 and § 17500. Indeed, the Court notes that Defendants could have submitted evidence showing that none of the alleged wrongdoing occurred in California, but did not. See *McCabe,* 811 F.2d at 1340.

Accordingly, assuming *arguendo* that the doctrine of fraudulent joinder applies to Plaintiffs, the Court denies Defendants' request that the Court disregard the New York Plaintiffs for the purposes of determining whether complete diversity of citizenship exists. Because complete diversity does not exist, the Court does not have jurisdiction under 28 U.S.C. § 1332(a).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Remand.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Avenius v. Banc of America Securities LLC
Not Reported in F.Supp.2d, 2006 WL 4008711 (N.D.Cal.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT A-7

EXHIBIT A-8

FILED IN CHAMBERS
6-30-04
Luther D. Thomas, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT
**NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

THE GATES CONDOMINIUM
HOMEOWNERS' ASSOCIATION, INC.;
GARLAND DAVIES; JOE THOMPSON;
DANIEL and VIRGINIA RATHER;
and JOHN DOES 1-40,

        Plaintiffs,

      v.

ARROW EXTERMINATORS, INC.,

        Defendant.

CIVIL ACTION

NO. 1:04-CV-1258-CAP

## O R D E R

This matter is now before the court on the plaintiffs' motion to remand [Doc. No. 2-1] and the defendant's motion to reassign this matter to Judge Thrash [Doc. No. 6-1]. For the reasons set forth below, the plaintiffs' motion to remand is GRANTED, and the defendant's motion to reassign is DENIED as moot.

### Factual Background

The plaintiffs filed the instant action on April 5, 2004, in the State Court of Fulton County, Georgia. The complaint raises a number of state law claims, including claims for fraud, constructive fraud, breach of contract, negligent inspection, negligent treatment, breach of a settlement agreement, and violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"). On May 6, 2004, the defendant, Arrow



Exterminators, Inc. ("Arrow"), removed the action, invoking this court's jurisdiction under 28 U.S.C. § 1331.

The plaintiffs allege that Arrow provided termite treatments and inspections to the Gates community pursuant to an agreement originally entered in January of 1981, whereby the Gates Condominium Homeowners' Association, Inc. ("the Association") paid Arrow on an annual basis for its services. They further allege that under this agreement, Arrow's responsibilities included inspecting the Gates community annually, re-treating homes when necessary, and responding to the needs of individual homeowners, including but not limited to providing written inspection reports.

According to the plaintiffs, homeowners in the Gates community began to discover extensive active termite infestations beginning in late 1996 and 1997. The plaintiffs contend that these infestations and the severe damages they caused were the result of Arrow's failure to adequately treat and inspect the homes in the Gates community, its failure to inform the Association and the homeowners of the true condition of their dwellings, and its purposeful and willful concealment of the presence and extent of active termite infestation within the Gates community. The plaintiffs submit that every home in the Gates community has had to undergo extensive repairs, at a total cost of approximately $7,800,000, and that the infestation caused the value of homes in

2

EXHIBIT A-10

the community to decline, even after they were completely repaired. Based on these allegations, the plaintiffs are seeking general, compensatory, treble, and punitive damages, as well as attorneys' fees and other litigation expenses.

## Legal Analysis

### I.    The plaintiffs' motion to remand

The removal statute, 28 U.S.C. § 1441(a), provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ."  Thus, removal is proper when a federal court would have original jurisdiction over the case.  See id.; Ayres v. General Motors Corp., 234 F.3d 514, 517 (11th Cir. 2000). Jurisdiction in this case is premised on the federal-question jurisdiction statute, 28 U.S.C. § 1331, which gives the district courts subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[1]

Whether a claim arises under federal law for purposes of the statute is generally determined by the well-pleaded complaint rule,

---

[1] According to the pleadings, Arrow is a citizen of the State of Georgia, and at least some of the plaintiffs are also citizens of Georgia.  Therefore, the court may not exercise jurisdiction based on diversity of citizenship.  See generally 28 U.S.C. § 1332.

3

EXHIBIT A-11

which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987).   A well-pleaded complaint presents a federal question only where it establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.   Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28, 103 S. Ct. 2840, 2856 (1983).   Thus, a plaintiff may generally avoid federal jurisdiction by asserting claims based exclusively on state law. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987).

The party seeking removal--in this case, Arrow--has the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence. See Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1242 (11th Cir. 2001).   Courts construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).

Arrow contends that jurisdiction in this court is proper because the plaintiffs' state RICO claim "has as an essential

EXHIBIT A-12

element the existence of a right under federal law." Def.'s Resp.
to Pl.'s Mot. to Remand, at 2.  In support of this argument, Arrow
points to the Eleventh Circuit's decision in Ayres that federal
question jurisdiction was available for a state RICO claim because
"a violation of the federal mail and wire fraud statutes is an
essential element of the Plaintiffs' cause of action, the proof of
which involves resolution of a substantial, disputed question of
federal law."   234 F.3d at 518.   The Ayres court noted that
resolution of the state RICO claim in that case depended entirely
on interpretation of the federal mail and wire fraud statutes and
their interaction with the National Traffic and Motor Vehicle
Safety Act ("Safety Act") and, more specifically, on resolution of
the question of whether a breach of the disclosure duty under the
Safety Act constitutes a federal mail and wire fraud crime.  Id. at
518-19.   Ultimately, the court found that there was federal
question jurisdiction because not only did the case involve the
necessity for the plaintiffs to prove, as an essential element of
their state law cause of action, the existence of federal mail and
wire fraud crimes as predicate acts, but it also presented a "very
substantial federal question" in the proof of the alleged mail and
wire fraud crimes, namely, whether the alleged violations of the
Safety Act constitute federal mail and wire fraud crimes.  Id. at
520.

5

EXHIBIT A-13

The Ayres court warned, however, that it was not holding that every state RICO claim that depends on proof of federal mail or wire fraud as predicate acts establishes federal subject matter jurisdiction:

> [T]o find federal jurisdiction in this case, we need not go so far as to hold that *every* state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statutes establishes federal question jurisdiction.[10] The particular controversy in this case may very well make this case one of those exceptional cases requiring that we decide "a federal question substantial enough to confer federal question jurisdiction." City of Huntsville [v. City of Madison], 24 F.3d [169,] 174 [(11th Cir. 1994)].
>
> [10] Thus, we do not so hold.

Id. at 519 (emphasis in original). The court also indicated that its decision did not necessarily overrule those district court cases that have held that a complaint asserting violations of the federal mail and wire fraud statutes as predicate acts to a state RICO statute is not sufficiently substantial to confer federal jurisdiction, as "[n]othing in those cases suggests a federal question of the magnitude involved here, and thus they are distinguishable." Id. at 520 n.12.

In this case, unlike Ayres, the plaintiffs' state RICO claim does not present a substantial question of federal statutory interpretation. Whereas Ayres required resolution of the issue as to whether breach of the disclosure duty under the Safety Act

6

EXHIBIT A-14

constitutes a federal mail and wire fraud crime, this case simply involves the issue as to whether Arrow's alleged acts of sending certain documents through the mail for the purpose of perpetrating fraud constitutes a violation of the federal mail fraud statute. See Complaint at ¶ 143.  Moreover, the court need not necessarily reach this issue, as only two of the twelve predicate acts alleged in the complaint involve the federal mail fraud statute; the others concern theft by deception, theft by taking, the making of false, fictitious, and fraudulent statements, and other similar activities constituting acts of racketeering activity under O.C.G.A. § 16-14-3(9)(A).  See Complaint at ¶¶ 133-142.  Compare Ayres, 234 F.3d at 519 (noting that "establishing a violation of the federal mail and wire fraud statutes is an essential element of Plaintiffs' cause of action").

Therefore, the court concludes that the plaintiffs' state RICO claim does not present such a substantial issue of federal law as to confer federal subject matter jurisdiction in this court.  See also Greaves v. McAuley, 264 F. Supp. 2d 1078, 1087 (N.D. Ga. 2003) (holding that the complaint's reference to federal securities regulations did not create federal question jurisdiction because "[u]nlike Ayres . . . , the resolution of [the plaintiff's] right to relief does not depend entirely on the interpretation of federal securities regulations"); Coker v. DaimlerChrysler Corp., 220 F.

7

Supp. 2d 1367, 1371-72 (N.D. Ga. 2002) (holding that the plaintiffs' state law claims concerning compliance with federal safety standards did not create federal question jurisdiction because "here, Defendant allegedly breached warranties that its vehicles complied with 'all' applicable safety standards, of which federal regulations are only one" and, thus, "[u]nlike Ayres, whether the Defendants violated federal regulations is not so essential to Plaintiffs' cause of action that Plaintiffs cannot prevail without such showing"); Jimenez v. Gregorio et al., Civil Action No. 1:03-CV-1638-BBM, at 17 (N.D. Ga. August 12, 2003) (declining to extend Ayres to a state RICO claim in which the federal question is less substantial than the one presented in that case and, therefore, holding that "[the plaintiff's] allegations of federal wire fraud as predicate acts in her Georgia RICO cause of action are insufficient to confer federal subject matter jurisdiction on this court").

Accordingly, the plaintiffs' motion to remand is GRANTED. However, the court denies the plaintiffs' request that they be awarded their expenses and fees associated with the removal of this action. Although 28 U.S.C. § 1447(c) allows a district court remanding an action to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," the decision of whether to grant such an award is

8

EXHIBIT A-16

within the court's discretion.  See Garcia v. Amfels, Inc., 254
F.3d 585, 587 (5th Cir. 2001); Gray v. New York Life Ins. Co., 906
F. Supp. 628, 631 (N.D. Ala. 1995).  In this case, the court finds
that such an award would not be appropriate, as Arrow's position
and its reliance on Ayres were not clearly unfounded.

## II.   The defendant's motion to reassign

Because the court has determined that it lacks subject matter
jurisdiction over this action and, therefore, that the case must be
remanded, it does not consider Arrow's motion that the case be
reassigned to another judge of this court.

### Conclusion

For the foregoing reasons, the plaintiffs' motion to remand
[Doc. No. 2-1] is GRANTED and the defendant's motion to reassign
[Doc. No. 6-1] is DENIED as moot.

SO ORDERED, this _30_ day of June, 2004.

CHARLES A. PANNELL, JR.
United States District Judge

9

Westlaw.

Not Reported in F.Supp.2d, 2007 WL 2479205 (N.D.Ga.)
**(Cite as: 2007 WL 2479205 (N.D.Ga.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. Georgia,
Atlanta Division.
NEIGHBORHOOD MORTGAGE, INC., Plaintiff,
v.
Anthony FEGANS, et al., Defendants.
**Civil Action No. 1:06-CV-1984-JOF.**

Aug. 28, 2007.

John Taylor Hopkins, IV, John A. Roberts, Melanie
Annette Webre, The Roberts Law Firm, Atlanta,
GA, for Plaintiff.

Nancy H. Baughan, Trishanda L. Treadwell, Parker
Hudson Rainer & Dobbs, Teddy Lee Sutherland,
William W. Horlock, Jr., Sommers Scrudder &
Bass, James Thompson McDonald, Jr., Susan
Deann Bomar, Kenneth Marc Barre, Jr., Swift Cur-
rie McGhee & Hiers, Atlanta, GA, for Defendants.

***OPINION AND ORDER***

J. OWEN FORRESTER, United States Senior Dis-
trict Judge.

*1 This matter is before the court on Plaintiff's mo-
tion to remand [6-1]; motion to withdraw attorney
[20-1]; Defendant Bank of America's motion for
summary judgment [24-1]; and Plaintiff's motion to
withdraw admissions [30-1].

**I. Background**

**A. Procedural History**

On July 18, 2006, Plaintiff, Neighborhood Mort-
gage, Inc., filed suit against Defendants, Anthony
Fegans, Lawrence Baker, Bank of America, Connie
Iverson, BGI Development, LLC, Dwayne

Thompson, Thompson Firm, LLC, and various John
Does, in the Superior Court of DeKalb County. De-
fendants Dwayne Thompson, The Thompson Firm,
LLC, and Bank of America, N.A., removed the suit
to this court on August 23, 2006. These Defendants
asserted that the court had original jurisdiction pur-
suant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(c)
because Plaintiff alleged that Defendants violated
statutes of the United States, including 18 U.S.C.
§§ 1001, 1341, 1343, and 1344.

Plaintiff's complaint alleges: (1) conspiracy, (2)
mortgage fraud pursuant to O.C.G.A. § 16-8-102,
(3) theft by deception pursuant to O.C.G.A. §
16-8-3, (4) conspiracy to commit a crime pursuant
to O.C.G.A. § 16-4-8, (5) fraud and false state-
ments, 18 U.S.C. § 1001, (6) mail fraud, 18 U.S.C.
§ 1341, wire fraud, 18 U.S.C. § 1343, and bank
fraud, 18 U.S.C. § 1344, (7) Georgia RICO,
O.C.G.A. §§ 16-14-1, *et seq.*, (8) unjust enrich-
ment, (9) imputed liability/respondeat superior,
(10) joint and several liability, (11) punitive dam-
ages, and (12) attorney's fees and costs of litigation.

Plaintiff contends that the seven defendants con-
spired so that Defendant Anthony Fegans could ob-
tain two residential mortgage loans from Neighbor-
hood Mortgage. Plaintiff alleges that Defendant
Connie Iverson intentionally overstated the ap-
praised value of the two properties and that Defend-
ants Dwayne Thompson and Thompson Law Firm,
LLC, intentionally submitted false information on
the HUD-1 statements made in connection with the
two loans. Plaintiff also contends that Defendant
BGI Development, LLC, which Plaintiff alleges
that Defendant Fegans owns at least in part, im-
properly received a $105,000 payout at one of the
loan closings for "property repairs" which Plaintiff
avers never occurred. Plaintiff also alleges that it
requested information about Fegans' checking ac-
count from Defendant Bank of America and that a
Bank of America employee, Defendant Lawrence
Baker, intentionally and fraudulently provided
Plaintiff with incorrect amounts of funds in two

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2007 WL 2479205 (N.D.Ga.)
(Cite as: 2007 WL 2479205 (N.D.Ga.))

verification of deposit forms.

After the complaint had been filed, Plaintiff's counsel filed a motion to withdraw citing failure to pay legal fees. Plaintiff responded that there was a communication problem between Plaintiff and its counsel. It would not be appropriate, however, for the court to intervene in this relationship. Plaintiff's counsel filed a motion to withdraw that complies with this court's local rules. For that reason, the court GRANTS the motion to withdraw attorney [20-1].

**B. Contentions**

**\*2** Plaintiff contends that Defendants' removal is improper both procedurally and substantively. As to substance, Plaintiff argues that the court does not have original jurisdiction because the federal statutes cited in the complaint are only to show predicate acts for Plaintiff's state law RICO cause of action and further are not necessary to the complaint because Plaintiff cited two other state statutes that can stand as predicate acts. On the matter of procedure, Plaintiff contends that not all Defendants consented to the removal.

Defendants aver that this court has original jurisdiction because the adjudication of Plaintiff's complaint turns on a substantive question of federal law in the federal mail and wire fraud predicate acts. Defendants further contend that the removal was procedurally correct because all Defendants who had been served with the complaint at the time of removal consented to the removal. Finally, Defendant Bank of America files a motion for summary judgment based on Plaintiff's failure to respond to its Request for Admission.

**II. Discussion**

On a motion to remand, the party that removed the action to federal court bears the burden of proving the existence of federal jurisdiction. *See Leonard v. Enterprise Rent-A-Car,* 279 F.3d 967, 972 (11th

Cir.2002). All doubts with respect to federal jurisdiction should be resolved against removal and in favor of remand to state court. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996).

"Although the vast majority of cases that fall within such federal-question jurisdiction are cases that arise under federal law that creates a cause of action, in limited circumstances, federal-question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action." *Jairath v. Dyer,* 154 F.3d 1280, 1282 (11th Cir.1998) (citing *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808 (1986)). In *Jairath,* the plaintiff alleged a state law cause of action based on a breach of duty created by the Americans with Disabilities Act. The Eleventh Circuit applied *Merrell Dow* and found that plaintiff's claims did not arise under federal law because there was no private right of action for damages under the ADA. *Id.* at 1282.

In *Merrell Dow,* the plaintiff alleged that the defendant drug company was negligent, and that its violation of the Federal Food, Drug and Cosmetic Act constituted a rebuttable presumption of negligence. The Court noted the fact that a federal question was an element of a state law cause of action did not "automatically confer federal-question jurisdiction." 478 U.S. at 813. The Court found significant that the Food, Drug and Cosmetic Act itself did not create a private remedy for a violation of branding requirements. Ultimately, the Court held:

> We conclude that a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

**\*3** *Id.* at 817. This is true even where the violation of the statute is a necessary element of a state law cause of action. *See id.* at 813-14.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2479205 (N.D.Ga.)
**(Cite as: 2007 WL 2479205 (N.D.Ga.))**

The Supreme Court again addressed the issue of jurisdiction when a state law claim poses a substantial question of federal law in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005). There, the Internal Revenue Service seized real property owned by Grable to satisfy a federal tax delinquency and gave Grable notice by certified mail before selling the property to Darue. *Id.* at 311. Grable did not take any action at that time, and the IRS gave Darue a quitclaim deed to the property. Five years later, Grable filed a quiet title action in state court asserting that Darue's record title was invalid because the IRS failed to notify Grable of its seizure in the manner specified in 26 U.S.C. § 6335(a). Darue removed the suit to federal district court under federal question jurisdiction "because the claim of title depended on the interpretation of the notice statute in the federal tax law." *Id.* The Court ultimately held that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress." *Id.* at 310.

In *Ayres v. General Motors Corp.,* 234 F.3d 514 (11th Cir.2000), the plaintiff alleged that General Motors had violated the Vehicle Safety Act and by doing so had committed federal mail and wire fraud. The court found that establishing the violation of the federal mail and wire fraud statutes would be an essential element of the plaintiff's claims. The court held that federal jurisdiction was proper because "plaintiff's cause of action has as an essential element the existence of a right under federal law which will be supported by a construction of federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite." *Id.* at 519.

The court finds *Ayres* distinguishable from the instant case. There, the court stated that such

federal-question jurisdiction is available here because, as this opinion makes clear below, a violation of the federal mail and wire fraud statutes is an essential element of the Plaintiffs' cause of action, the proof of which involves resolution of a substantial, disputed question of federal law. Again, as made clear below, resolution of this case depends entirely on interpretation of the federal mail and wire fraud statutes and their interaction with the Safety Act.

*Id.* at 518.

The court noted that the plaintiffs' RICO complaint pointed to federal mail and wire fraud statutes as the predicate acts for the RICO cause of action. As a result, the court stated "in a well-pleaded complaint, Plaintiffs' cause of action contains, as an essential element, a federal issue, i.e., whether the Defendants violated the federal mail and wire fraud statutes." *Id.* at 518 n. 7.

*4 The court cabined its holding, however, by emphasizing that it found federal question jurisdiction because the case involved both (1) the need for plaintiffs to prove the existence of federal mail and wire fraud crimes as predicate acts, and (2) the fact that proof of the alleged federal mail and wire fraud crimes involved a very substantial federal question. *See id.* at 520. The court went on to state, "[b]ecause we rely on *both* of the facts mentioned [ ], we need not in this case decide whether either, by itself, is sufficient to confer federal question jurisdiction." *See id.* at 520 n. 11 (emphasis in original).

We recognize that there are district court cases which suggest that a complaint asserting violations of the federal mail and wire fraud statutes as predicate acts to Georgia's RICO statute is not sufficiently substantial to confer federal question jurisdiction. *See Graham Commercial Realty, Inc. v. Shamsi,* 75 F.Supp.2d 1371 (N.D.Ga.1998) ; *Patterman v. Travelers, Inc.,* 11 F.Supp.2d 1382 (S.D.Ga.1997). Nothing in those cases suggests a federal question of the magnitude involved here, and thus they are distinguishable. We express no opinion as to their correctness.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT A-21

Not Reported in F.Supp.2d, 2007 WL 2479205 (N.D.Ga.)
**(Cite as: 2007 WL 2479205 (N.D.Ga.))**

*Id.* at 520 n. 12.

The court finds that the allegations raised in this complaint are more similar to those in *Graham* and *Patterman.* In *Graham,* Judge O'Kelley determined that even though the ten predicate acts cited in the plaintiff's Georgia RICO count were federal criminal offenses, there was no federal question jurisdiction. *See* 75 F.Supp.2d at 1373. In *Patterman,* where the plaintiff raised claims of federal mail and wire fraud statutes as elements of a Georgia RICO claim, Judge Alaimo held that it was "not sufficiently substantial to confer federal question jurisdiction." *See* 11 F.Supp.2d at 1388-89. Unlike *Ayres* where the court had to decide whether the federal mail and wire fraud statutes would also constitute a breach of the National Traffic and Motor Vehicle Safety Act, where there is no other federal question, courts have held that the mere citation of federal mail and wire fraud as predicate acts to a state RICO action is not sufficiently substantial to confer federal jurisdiction. *See also Austin v. Ameriquest Mortgage Co.,* 2007 WL 656556 (N.D.Ga. Feb. 27, 2007) (Carnes, J.) (rejecting defendant's reliance on *Ayres* and holding no federal question jurisdiction where plaintiff alleged federal mail and wire fraud violations as predicate acts to Georgia RICO claim). This case is also unlike *Grables* where the underlying issue was one unique to federal taxation.

For the foregoing reasons, the court finds that under these circumstances, the assertion of violations of federal criminal law as predicate acts to a Georgia RICO claim are not sufficiently substantial to confer federal question jurisdiction. The court declines to award costs under 28 U.S.C. § 1447(c). As a result of this ruling, the court need not reach the issue of whether Defendants' removal notice was procedurally valid. Because the court determines that it does not have jurisdiction over Plaintiff's complaint, the court DENIES WITH LEAVE TO RENEW Defendant Bank of America's motion for summary judgment [24-1] and DENIES WITH LEAVE TO RENEW Plaintiff's motion to withdraw

admissions [30-1].

**III. Conclusion**

*5 The court GRANTS Plaintiff's motion to remand [6-1]; GRANTS motion to withdraw attorney [20-1]; DENIES WITH LEAVE TO RENEW Defendant Bank of America's motion for summary judgment [24-1]; and DENIES WITH LEAVE TO RENEW Plaintiff's motion to withdraw admissions [30-1].

The Clerk of the Court is DIRECTED to REMAND this case to the Superior Court of DeKalb County.

**IT IS SO ORDERED.**

N.D.Ga.,2007.
Neighborhood Mortg., Inc. v. Fegans
Not Reported in F.Supp.2d, 2007 WL 2479205 (N.D.Ga.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT A-23

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 5486512 (N.D.Ga.)
**(Cite as: 2004 WL 5486512 (N.D.Ga.))**

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. Georgia,
Atlanta Division.
Stephen SCOUTEN, Plaintiff,
v.
AMERISAVE MORTGAGE, et al., Defendants.
**Nos. 1:04-CV-1125-CAM, 2004CV83343.**

Dec. 16, 2004.

David Edward Betts, Betts & Associates, Atlanta, GA, for Plaintiff.

John F. Scalia, PHV, Greenberg Traurig, McLean, VA, David W. Long-Daniels, NAM, Charles Matthew Smith, Greenberg Traurig, Atlanta, GA, for Defendants.

**ORDER**

CHARLES A. MOYE, JR., District Judge.

**\*1** Plaintiff, Stephen Scouten, filed this action against Defendants, Amerisave Mortgage Corporation (Plaintiff's former employer), Information Technology Force, Inc., Patrick Markert, Andrea Markert, David Herpers, and Davida Moore, in the Superior Court of Fulton County. Defendants removed the action based on federal question jurisdiction. Plaintiff asserted only claims based on Georgia law: violation of the Georgia RICO Act, defamation, and intentional infliction of emotional distress. Nevertheless, among the RICO predicate acts, he alleged two based on violations of federal statutes, 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 2314 (transportation in interstate commerce of money knowingly taken by fraud). The case is before the Court on Defendants' Motion to Dismiss and on Plaintiff's Motion to Remand and request for attorneys' fees.

"Removal is proper when a federal court would have original jurisdiction." *Ayres v. General Motors Corp.,* 234 F.3d 514, 517 (11th Cir.2000) (citing 28 U.S.C. § 1441(a)). "In particular, 28 U.S.C. § 1441(b) provides removal jurisdiction for 'any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States.' " *Id.* "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Id.* (quoting *Gully v. First National Bank in Meridian,* 299 U.S. 109 (1936)).

"[A] case may arise under federal law 'where the vindication of a right under state law *necessarily* turn[s] on some construction of federal law.' " *Id.* at 517-18 (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9 (1983)) (emphasis added). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 518 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 813 (1986)).

In *Ayers,* the Eleventh Circuit held that federal-question jurisdiction was available because "a violation of the federal mail and wire fraud statutes [was] an *essential* element of the Plaintiffs' cause of action, the proof of which involve[d] resolution of a substantial, disputed question of federal law." *Id.* at 518(emphasis). The court explained that "resolution of this case depends *entirely* on interpretation of the federal mail and wire fraud statutes *and* their interaction with the Safety Act,"^FN1 *id.* (emphasis added), and that the plaintiffs had to "prove federal crimes involving a violation of the federal mail and wire fraud statutes to satisfy the necessary predicate acts of their Georgia RICO cause of action," *id.* at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2004 WL 5486512 (N.D.Ga.)
(Cite as: 2004 WL 5486512 (N.D.Ga.))

519. The court found that *Ayers* fell

> FN1. "[T]his case requires that we decide whether or not a breach of the disclosure duty under the Safety Act constitutes a federal mail and wire fraud crime." *Id.* at 519. This issue "is a matter of considerable magnitude and substantial federal interest." *Id.* at 520.

**\*2** squarely within the language of *Gully* and *Franchise Tax Board,* in which the Supreme Court indicated that it was well established that federal question jurisdiction exists where a plaintiff's cause of action has as an essential element the existence of a right under federal law which will be supported by a construction of the federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite.
*Id.* The court specifically added, however:

[T]o find federal question jurisdiction in this case, we need not go so far as to hold that *every* state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statutes establishes federal question jurisdiction. The particular controversy in this case may very well make this case one of those exceptional cases requiring that we decide "a federal question substantial enough to confer federal question jurisdiction."

*Id.* at 519 (emphasis in original). Reiterating, the Eleventh Circuit found federal question jurisdiction in *Ayres*

because the case involved both (1) the necessity for Plaintiffs to prove, as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action; and (2)the fact that proof of the alleged federal mail and wire fraud crimes involves a very substantial federal question.

*Id.* at 520.

In this case, Plaintiffs allege as predicate acts for their Georgia RICO claim: (1) acts of theft in violation of Georgia law; (2) "falsifications in connection with matters within the jurisdiction of an agency of state government" in violation of O.C.G.A. § 16-10-20; (3) "influencing witnesses" in violation of O .C.G.A. § 16-10-93(a) and (b); (4) wire fraud in violation of 18 U.S.C. § 1343; and (5) "transportation in interstate commerce of money of the value of $5,000 or more knowing the same to have been taken by fraud" in violation of 18 U.S.C. § 2314. Unlike the plaintiffs in *Ayres,* Plaintiffs here alleged predicate acts under Georgia law such that the alleged predicate acts under federal law are not "an essential element of the Plaintiffs' cause of action." Ayres, 234 F.3d at 518. Likewise, Plaintiffs allege no matters "of considerable magnitude and substantial federal interest ." *Id.* at 520.

As did the court in *Graham Commercial Realty, Inc. v. Shamsi,* 75 F.Supp.2d 1371 (N.D.Ga.1998),[FN2] this Court "finds that asserting violations of federal criminal law as predicate acts to Georgia's RICO act is not sufficiently substantial to confer federal question jurisdiction." *Id.* at 1373. *See also, Patterman v. Travelers, Inc.,* 11 F.Supp.2d 1382, 1389 (S.D.Ga.1997) (holding "the claimed violations of federal mail and wire fraud statutes as elements of Plaintiffs' Georgia RICO action is not sufficiently substantial to confer federal question.").

> FN2. Plaintiffs asserted a Georgia RICO claim, alleging "violations of ten federal criminal statutes as predicate acts," but also alleging "nine predicate acts under Georgia law." *Graham Commercial Realty, Inc.,* 75 F.Supp.2d at 1373.

**\*3** For the reasons stated herein, the Court GRANTS Plaintiffs' motion to remand [8-1], but DENIES their request for attorneys' fees [8-2].[FN3] The case is hereby remanded to the Superior Court of Fulton County, Georgia. All other outstanding motions must be addressed by that court. This

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 5486512 (N.D.Ga.)
**(Cite as: 2004 WL 5486512 (N.D.Ga.))**

closes the case.

> FN3. "An award of attorneys' fees is solely in the discretion of the court." *Graham Commercial Reality, Inc.,* 75 F. Supp 2d at 1373.

SO ORDERED,

N.D.Ga.,2004.
Scouten v. Amerisave Mortg. Corp.
Not Reported in F.Supp.2d, 2004 WL 5486512 (N.D.Ga.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT A-26