# EXHIBIT B



2 of 15 DOCUMENTS

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright © 2003 by The State of Georgia
All rights reserved.

\*\*\* ARCHIVE \*\*\*

\*\*\* CURRENT THROUGH THE 2003 SESSION \*\*\*
\*\*\* ANNOTATIONS CURRENT THROUGH SEPTEMBER 22, 2003 \*\*\*

TITLE 10.  COMMERCE AND TRADE
CHAPTER 5.  SECURITIES

O.C.G.A. § 10-5-5  (2003)

§ 10-5-5.  Registration of securities -- When and how required; delivery of prospectus; purchasers' right of rescission

(a) *Generally.* It shall be unlawful for any person to offer for sale or to sell any securities to any person in this state unless:

(1) They are subject to an effective registration statement under this chapter;

(2) The security or transaction is exempt under Code Section 10-5-8 or Code Section 10-5-9, respectively; or

(3) The security is a federal covered security.

(b) *Registration by qualification.*

(1) Any security may be registered by qualification under the terms and conditions provided in this subsection by filing a registration statement which shall be signed by the issuer, its chief executive officer, its principal financial officer, its comptroller or principal accounting officer, and the majority of its board of directors or persons performing similar functions (or, if there is no board of directors or persons performing similar functions, by the majority of the persons or board having the power of management of the issuer). A registration statement shall be deemed effective only as to the securities specified therein as proposed to be offered.

(2) The registration statement shall contain the information specified in paragraph (1) of subsection (c) of this Code section and shall be accompanied by the documents specified in paragraph (2) of subsection (c) of this Code section except that the commissioner may by rules or regulations provide that any such information or document (other than the requirements with respect to financial statements provided for in paragraph (1) of subsection (c) of this Code section) need not be included with respect to any class of issuers or securities if he finds that the requirement of such information or document is inapplicable to such class and that disclosure fully adequate for the protection of investors is otherwise required to be included within the registration statement. If any accountant, attorney, engineer, or appraiser or any person whose profession gives authority to a statement made by him is named in the registration statement as

O.C.G.A. § 10-5-5

having prepared an opinion referred to in the registration statement or as having certified any part of the registration statement or is named as having prepared or certified a report of valuation for use in connection with the registration statement, the written consent of such person to the references to him in the registration statement shall be filed with the commissioner prior to the effectiveness of the registration statement. Any such registration statement shall contain such other information and be accompanied by such other documents as the commissioner may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of investors. Each registration statement which is filed under this subsection shall be accompanied by the payment of the filing fee prescribed in subsection (a) of Code Section 10-5-6, an issuer's bond required by subsection (b) of Code Section 10-5-6 and, if required under subsection (c) of Code Section 10-5-6, a consent to service of process meeting the requirements of Code Section 10-5-18.

(3) A prospectus which is part of a registration statement effective under this subsection and which contains the information specified in paragraph (1) of subsection (c) of this Code section, except to the extent modified by rules or regulations promulgated by the commissioner as provided in paragraph (2) of this subsection, shall be delivered to any purchaser prior to or simultaneously with the execution by the purchaser of a written agreement to purchase, the delivery of a confirmation of sale, or the payment for securities offered by means of such prospectus, whichever occurs first.

(4) (A) Any person who purchases securities registered under this subsection from the issuer, any affiliate of such issuer, or underwriter shall have the unqualified and unwaivable right to rescind such purchase within 72 hours of the execution by such person of a written agreement to purchase, the delivery of a confirmation of sale, or the payment for such securities, whichever shall occur first. Such rescission shall be effective upon actual delivery or mailing of notice of rescission to the person specified in subparagraph (c)(1)(P) of this Code section.

(B) It shall be unlawful for any person specified in subparagraph (c)(1)(P) of this Code section as the person responsible for making any repayment required in this subparagraph to fail to return within seven days of receipt of notice of rescission any consideration received from a person exercising the right of rescission specified in subparagraph (A) of this paragraph. Any part of such consideration which consists of an obligation on the part of a person exercising said right of rescission which was entered into in connection with the transaction rescinded and which requires such person to make future payments to the issuer, affiliate of the issuer, or underwriter shall be marked canceled and shall be returned to such person exercising the right of rescission. Within seven days of receipt by the person exercising the right of rescission of all consideration given to the issuer, affiliate of such issuer, or underwriter in connection with the transaction rescinded, the person exercising the right of rescission shall deliver to the person specified in subparagraph (c)(1)(P) of this Code section any securities issued in connection with the transaction rescinded.

(C) Following receipt of notice of rescission by the person specified in subparagraph (c)(1)(P) of this Code section as the person responsible for making any repayment required in subparagraph (B) of this paragraph, it shall be unlawful for any agent of the issuer, of an affiliate of such issuer, or of an underwriter to contact such person exercising the right of rescission specified in subparagraph (A) of this paragraph for the purpose of influencing the person exercising the right of rescission to withdraw any notice of rescission or for the purpose of making further sales of any securities of such issuer until all consideration given to the issuer, affiliate of such issuer, or underwriter has been returned to such person exercising the right of rescission, as provided in subparagraph (B) of this paragraph.

(5) A registration statement under this subsection becomes effective when the commissioner so orders.

(c) *Registration statement.*

(1) Every registration statement filed under subsection (b) of this Code section shall contain the following information:



O.C.G.A. § 10-5-5

(A) With respect to the issuer: its name, street address, form of organization and its telephone number; the state or foreign jurisdiction and date of its organization; the general character and location of its business; a description of its physical properties and equipment; and a statement of the general competitive conditions in the industry or business in which it is or will be engaged;

(B) With respect to every director and officer of the issuer or person occupying a similar status or performing similar functions: his name, address, and principal occupation for the past five years; any criminal convictions or pending criminal proceedings involving the sale of securities of any such person or any disciplinary action taken or pending against any such person by the Securities and Exchange Commission, the National Association of Securities Dealers, the commissioner, or any state securities regulatory authority; the amount of securities of the issuer beneficially owned by him as of a specified date within 30 days of the filing of the registration statement; and a statement (including price information) of all transactions by such person in securities of the issuer beneficially owned by him during the two years preceding such date; the amount of the securities covered by the registration statement to which he has indicated his intention to subscribe; and with respect to each such person and any affiliate of such person or affiliate of a person specified in subparagraph (E) or (F) of this paragraph, a description of any material interest in any material transaction with the issuer or any significant subsidiary effected within the past three years or proposed to be effected;

(C) With respect to any person named as serving or as having agreed to serve as an advisory director of the issuer or in a similar capacity: a description of the exact relationship that will exist between the issuer and such person; the compensation paid or to be paid to such person to serve in such capacity; the amount of time that such person will actually spend on the affairs of the issuer; and each such person shall file with the commissioner a written consent to the use of his name in the prospectus prior to the effectiveness of the registration statement;

(D) The remuneration paid during the past 12 months and estimated to be paid during the next 12 months, directly or indirectly, by the issuer (together with all predecessors, subsidiaries, and affiliates) to each of the three highest paid officers or directors of the issuer and to all those persons covered by subparagraph (B) of this paragraph in the aggregate;

(E) With respect to any person owning of record or beneficially, if known, 10 percent or more of the outstanding shares of any class of equity security of the issuer: the information specified in subparagraph (B) of this paragraph other than his occupation;

(F) With respect to every promoter if the issuer was organized within the past three years: the information specified in subparagraph (B) of this paragraph; any amount paid to him within that period or intended to be paid to him; and the consideration for any such payment;

(G) With respect to any person other than an issuer on whose behalf any part of the offering is to be made: his name and address; the amount of securities of the issuer beneficially owned by him as of the date of the filing of the registration statement; and a description of any material interest in any material transaction with the issuer or any significant subsidiary effected within the past three years or proposed to be effected;

(H) The capitalization (including short-term debt and long-term debt), both as of the latest practicable date within 90 days and as adjusted to give effect to the proposed offering, of the issuer and all subsidiaries whose financial statements are filed with the registration statement on either a consolidated or an individual basis, including a description of each security outstanding or being registered or otherwise offered, and a statement of the amount and kind of consideration (whether in the form of cash, physical assets, services, patents, good will, or anything else) for which the issuer or any subsidiary has issued any of its securities within the past two years or is obligated to issue any of its securities;

(I) The kind and amount of securities to be offered; the proposed offering price or the method by which it is to be computed; any variation therefrom at which any portion of the offering is to be made to any person or class of

EXHIBIT B-3

persons other than the underwriters, with a specification of any such person or class; the basis upon which the offering is to be made if otherwise than for cash; the estimated aggregate underwriting and selling discounts or commissions and finders' fees (including separately, costs, securities, contracts, or anything else of value to accrue to the underwriters or finders in connection with the offering) or, if the selling discounts or commissions are variable, the basis of determining them and their maximum and minimum amounts; the estimated aggregate amounts of other selling expenses, including legal, engineering, printing, and accounting charges; the name and address of every underwriter and every recipient of a finder's fee; and a description of the plan of distribution of the securities which are to be offered;

(J) The net estimated cash proceeds to be received by the issuer from the offering after deducting all estimated expenses of the offering; the purposes for which the proceeds are to be used by the issuer; the amount proposed to be used for each purpose; the proposed order of priority in which the proceeds will be used for the purposes stated in the event the offering is not pursuant to an underwriting agreement under which no securities will be sold unless all securities to be offered are sold; the amounts of any funds to be raised from other sources to achieve the purposes stated; and the nature of the sources of any such funds;

(K) In any case where the securities to be offered are to be sold in any manner except an underwriting agreement under which no securities will be sold unless all securities to be offered are sold and where the issuer of such securities:

(i) Has not had any substantial gross revenues from the sale of products or services or any substantial net income from any source for any fiscal year ended during the past three years; and

(ii) Has not succeeded and does not intend to succeed to any business which has had any substantial gross revenues from the sale of products or services or any substantial net income from any source for any fiscal year ended during the past three years,

the minimum amount of funds to be derived from the offering after expenses of the offering which the issuer reasonably believes to be necessary to enable the issuer to operate the business it proposes to conduct;

(L) A description of any stock options or other security options outstanding or to be created in connection with the offering, together with the amount of any such options held or to be held by every person required to be named in subparagraph (B), (E), (F), (G), or (I) of this paragraph and by any person who holds or will hold, after giving effect to the proposed offering, 10 percent or more of the securities subject to such options;

(M) The dates of, parties to, and general description concisely stated of every management or other material contract made or to be made otherwise than in the ordinary course of business if it is to be performed in whole or in part at or after the filing of the registration statement;

(N) A description of any pending litigation or proceeding to which the issuer is a party and which could materially adversely affect its business or assets (including any such litigation or proceeding known to be contemplated by governmental authorities);

(O) The following financial statements:

(i) A balance sheet of the issuer or a consolidated balance sheet of the issuer and its subsidiaries prepared in accordance with generally accepted accounting principles as of a date within 90 days prior to the filing of the registration statement and, if such balance sheet is not certified, also a certified balance sheet of the issuer or a certified consolidated balance sheet of the issuer and its subsidiaries prepared in accordance with generally accepted accounting principles as of a date not more than one year prior to the date of filing unless the last fiscal year of the issuer has ended within 90 days prior to the date of filing, in which case such certified balance sheet may be as of the end of the fiscal year preceding such last fiscal year;

O.C.G.A. § 10-5-5

(ii) A profit and loss statement, analysis of surplus, and a statement of source and application of funds of the issuer or consolidated statements of the issuer and its subsidiaries, all of which statements shall be certified and prepared in accordance with generally accepted accounting principles for each of the three fiscal years preceding the date of the most recent certified balance sheet filed and for the interim period, if any, between the close of the most recent of such fiscal years and the date of the most recent balance sheet filed and, with respect to the profit and loss statement, for the corresponding period of the preceding year, but statements for such interim and corresponding periods need not be certified; or, if the issuer and its predecessors have been in existence for less than three fiscal years, the profit and loss and other required statements for the periods for which it has been in existence; and

(iii) If a substantial part of the proceeds of the offering is to be applied to the purchase of any business, the same financial statements which would be required if that business were the registrant;

provided, however, if the issuer does not report its accounts in the normal course of its business on a consolidated basis, then it may furnish, in lieu of consolidated statements, individual statements for it and its majority owned subsidiaries, provided that, if any such financial statements are required to be certified, they shall be certified by an independent public accountant duly registered and in good standing as such under the laws of the place of his residence or principal office;

(P) On the inside back cover page in the case of a printed prospectus or the final page in the case of a prospectus reproduced by any other means, notices in a form satisfactory to the commissioner which shall provide a means of exercising the right of rescission provided in paragraph (4) of subsection (b) of this Code section and which shall be addressed to the commissioner and to the person responsible for making any repayment specified in subparagraph (b)(4)(B) of this Code section; and on the inside front cover page of the prospectus in the case of a printed prospectus or on the second page of the prospectus in the case of a prospectus reproduced by any other means, in boldface print or capital type the following legend:

*ANY PERSON WHO PURCHASES THE SECURITIES OFFERED HEREBY SHALL HAVE THE UNQUALIFIED AND UNWAIVABLE RIGHT TO RESCIND SUCH PURCHASE WITHIN 72 HOURS OF THE EXECUTION OF A WRITTEN AGREEMENT TO PURCHASE ANY SECURITIES OFFERED HEREBY, THE DELIVERY OF A CONFIRMATION OF SALE, OR THE PAYMENT FOR ANY SECURITIES OFFERED HEREBY, WHICHEVER SHALL OCCUR FIRST.*

*RESCISSION MAY BE ACCOMPLISHED BY COMPLETING AND MAILING THE FORMS PROVIDED ON PAGE ... OF THIS PROSPECTUS.*

(2) Every registration statement filed under subsection (b) of this Code section shall be accompanied by the following documents:

(A) A copy of the prospectus proposed to be used in complying with the requirements of paragraph (3) of subsection (b) of this Code section;

(B) A copy of any notice, circular, advertisement, sales literature, letter, or communication (if any such notice, circular, advertisement, sales literature, letter, or communication is to be used in connection with the offering) in respect of a security which states from whom a written prospectus meeting the requirements of paragraph (3) of subsection (b) of this Code section may be obtained and which does no more than identify the security, state the price thereof, state by whom orders will be executed, and contain such other information as the commissioner, by rules or regulations, deemed necessary or appropriate in the public interest and for the protection of investors and subject to such terms and conditions as may be prescribed therein, may permit;

(C) A specimen or copy of the security being registered; a copy of the issuer's articles of incorporation and bylaws or their substantial equivalents, as currently in effect; and a copy of any indenture or other instrument relating to the security to be registered;

EXHIBIT B-5

O.C.G.A. § 10-5-5

(D) A signed opinion of legal counsel which shall state whether or not the security, when sold, will be legally issued, fully paid, and nonassessable and, if a debt security, a binding obligation of the issuer;

(E) A copy of any underwriting or selling group agreement pursuant to which the distribution is to be made;

(F) A copy of every management or other material contract referred to in subparagraph (c)(1)(H) of this Code section;

(G) A signed copy of any professional opinions or any reports or certifications specifically referred to in the prospectus;

(H) A copy of any literature concerning the issuer or the offering given to any persons directly engaged in the sale of the securities; and

(I) A written consent of each director of the issuer or of any person occupying a similar status or performing a similar function to the use of his name in the prospectus unless such director or person has signed the registration statement.

(d) *Registration by notification.*

(1) Any security whose issuer or any predecessors have been in continuous operation for at least five years may be registered by notification, whether or not it is also eligible for registration by qualification under subsection (b) of this Code section, if:

(A) There has been no default during the current fiscal year nor within three preceding fiscal years in the payment of principal, interest, or dividends on any security of the issuer (or any predecessor) with a fixed maturity or a fixed interest or dividend provision; and

(B) The issuer and any predecessors during the past three fiscal years have had average net earnings, determined in accordance with generally accepted accounting principles, which are applicable to all securities without a fixed maturity or a fixed interest or dividend provision and which:

(i) Equal at least 5 percent of the amount of securities without a fixed maturity or a fixed interest or dividend provision outstanding at the date the registration statement is filed (as measured by the maximum offering price or the market price on a day selected by the registrant within 30 days before the date of filing the registration statement, whichever is higher or, if there is neither a readily determinable market price nor an offering price, as measured by book value on a day selected by the registrant and within 90 days of the date of filing the registration statement); or

(ii) If the issuer and any predecessors have not had any securities without a fixed maturity or a fixed interest or dividend provision outstanding for three full fiscal years, equal at least 5 percent of the amount (as measured by the maximum public offering price) of such securities which will be outstanding if all the securities being offered or proposed to be offered (whether or not they are proposed to be registered or offered in this state) are issued.

(2) A registration statement under this subsection shall be signed by the issuer, any other person on whose behalf the offering is to be made, any registered dealer, limited dealer, or by any duly authorized agent of any such person and shall contain the following information or documents, in addition to payment of the filing fee prescribed in subsection (a) of Code Section 10-5-6, and, if required under subsection (c) of Code Section 10-5-6, a consent to service of process meeting the requirements of Code Section 10-5-18:

(A) A statement demonstrating eligibility for registration by notification;

(B) The issuer's name, address, and form of organization; the state (or foreign jurisdiction) and the date of its organization; and the general character and location of its business;

EXHIBIT B-6

(C) With respect to any person on whose behalf any part of the offering is to be made in a nonissuer distribution: his name and address and the amount of securities of the issuer held by him as of the date of the filing of the registration statement;

(D) The information specified in subparagraph (c)(1)(H) of this Code section; and

(E) Any prospectus proposed to be used in offering the securities in this state and a copy of any underwriting or selling agreement relating to the offering.

(3) If no stop order is in effect and no proceeding is pending under Code Section 10-5-16, a registration statement under this subsection automatically becomes effective at 3:00 P.M. eastern standard time or eastern daylight time, whichever is applicable, of the fifth full business day after the filing of the registration statement, or at such earlier time as the commissioner determines.

(e) *Small issue registration.*

(1) The sale of securities of an issuer by or on behalf of such issuer or an affiliate of such issuer may be made pursuant to a registration statement filed under this subsection if:

(A) The aggregate amount of the total offering, within or outside this state, shall not exceed $1 million, less the aggregate offering price for all securities sold within the 12 months before the start of and during the offering of securities under this subsection in reliance on the exemption in paragraph (13) of Code Section 10-5-9 or in violation of this Code section; provided, however, that the commissioners shall have authority to increase, by rule or regulation, the limitation on the aggregate offering amount in order to further the objectives of compatibility with federal exemptions and uniformity among states; or

(B) The aggregate number of persons in this state purchasing securities registered under this subsection from the issuer and all affiliates of the issuer during any 12 month period shall not exceed 50 persons, including persons who acquire such securities in transactions which are otherwise exempt from registration in paragraph (13) of Code Section 10-5-9; however, any certificate or certificates representing securities issued in a transaction subject to the numerical limitation on the number of investors pursuant to this paragraph shall be marked for a period of one year from the date of their issuance or sale to indicate clearly that they were registered pursuant to this subsection and that they may not be sold or transferred except in a transaction which is exempt under this chapter or pursuant to an effective registration statement under this chapter or in a transaction which is otherwise in compliance with this chapter and shall be executed with a statement to the effect that such securities have been purchased for investment, as such phrase is defined in paragraph (13) of Code Section 10-5-9, for his own account.

(2) A registration statement under this subsection shall be signed by the issuer, its chief executive officer, its principal financial officer, its comptroller or principal accounting officer, and a majority of the board of directors or persons performing similar functions (or, if there is no board of directors or persons performing similar functions, by the majority of the persons or board having the power of management of the issuer). If the issuer is not a corporation registered with the Secretary of State, the registration statement shall also include a copy of the issuer's articles of incorporation and bylaws or their substantial equivalents, as currently in effect, and a copy of any indenture or similar instrument relating to the security to be registered.

(3) A prospectus, a copy of which shall be contained in the registration statement, shall be delivered to any purchaser of securities registered pursuant to this subsection prior to or simultaneously with the execution by the purchaser of a written agreement to purchase, the delivery of a confirmation of sale, or the payment for securities offered by means of such prospectus, whichever occurs first. The prospectus under which securities registered pursuant to this subsection are sold shall contain the following:

(A) With respect to the issuer: its name, street address, form of organization, and its telephone number; the state

O.C.G.A. § 10-5-5

or foreign jurisdiction and date of its organization; a brief description of the type and location of its business;

(B) The following financial statements which may, but need not, be certified:

(i) A balance sheet of the issuer or a consolidated balance sheet of the issuer and its subsidiaries prepared in accordance with generally accepted accounting principles as of a date within 90 days prior to the filing of the registration statement; and

(ii) A profit and loss statement of the issuer or consolidated statements of the issuer and its subsidiaries prepared in accordance with generally accepted accounting principles for each of the two fiscal years preceding the date of the balance sheet filed and for the interim period, if any, between the close of the most recent of such fiscal years and the date of the balance sheet filed and for the corresponding period of the preceding year or, if the issuer and its predecessors have been in existence for less than two fiscal years, the profit and loss statement for the periods for which it has been in existence; provided, however, if the issuer does not report its accounts in the normal course of its business on a consolidated basis, then it may furnish, in lieu of consolidated statements, individual statements for it and its majority owned subsidiaries;

(C) The information set forth in subparagraphs (c)(1)(I), (c)(1)(J), and (c)(1)(P) of this Code section;

(D) With respect to every officer and director of the issuer or person occupying a similar status or performing similar functions and with respect to every affiliate of the issuer, a description of: all securities of the issuer and its subsidiaries which are beneficially owned or expected to be beneficially owned, and the amount and type of consideration which was or will be given for such securities, and any material interest in any other material transactions with the issuer or any significant subsidiary of the issuer effected within the past three years or expected to be effected; and

(E) Any additional information which is needed to comply with Code Section 10-5-12 and which is not otherwise disclosed to the purchaser.

(4) The commissioner shall be authorized to accept a prospectus prepared by the issuer if the prospectus has been subjected to an examination which, in the discretion of the commissioner, is equal to or greater than the examination provided by the commissioner.

(5) Registration statements filed pursuant to this subsection will become effective if no stop order is in effect and no proceeding is pending under Code Section 10-5-16, at 3:00 P.M. eastern standard time or eastern daylight time, whichever is applicable, of the tenth full business day after the filing of the registration statement or at such earlier time as the commissioner orders.

(6) Preliminary negotiations and agreements in contemplation of a registration and sale of a security pursuant to this subsection shall not constitute an "offer to sell," "offer for sale," "offer," or "sale" of a security for the purposes of this Code section unless, before a registration statement relating thereto is effective, the seller receives some consideration for such security, a contract for sale of such security is executed, or the security is sold. Purchasers of securities registered pursuant to this subsection shall have the right to rescind such purchases on the terms and conditions set forth in paragraph (4) of subsection (b) of this Code section.

(7) In case any of the financial statements contained in the registration statement filed under this subsection are certified, they shall be certified by an independent public accountant duly registered and in good standing as such under the laws of the place of his residence or principal office.

(8) If any accountant, attorney, engineer, or appraiser or any person whose profession gives authority to a statement made by him is named in the registration statement as having prepared an opinion referred to in the registration statement or as having certified any part of the registration statement or is named as having prepared or

O.C.G.A. § 10-5-5

certified a report of valuation for use in connection with the registration statement, the written consent of such person to the references to him in the registration statement shall be filed with the commissioner prior to the effectiveness of the registration statement.

(9) The commissioner shall be authorized to participate in any program designed to promote and achieve compatibility with federal law and uniformity among the states and to promulgate such rules and regulations as may be necessary to achieve such compatibility and uniformity.

(10) The commissioner shall treat as confidential and not subject to public inspection all material filed by or on behalf of the issuer pursuant to this subsection unless he shall determine that such treatment is not consistent with the public interest, in which case he may make public such of the filed information as he may deem necessary for protection of the public interest.

(11) The commissioner may modify any legend required by this subsection to conform to standardized legends, but any modification shall ensure that the legend contains substantially the same information required by this chapter.

(f) *Nonprofit issuer registration.*

(1) Sales of securities issued by any person organized and operated:

(A) Not for private profit; and

(B) No part of the net earnings of which inures to the benefit of any person, private stockholder, or individual

made by or on behalf of such issuer may be made pursuant to a registration statement filed pursuant to this subsection.

(2) A registration statement under this subsection shall be signed by the issuer, its chief executive officer, its principal financial officer, its comptroller or principal accounting officer, and the majority of its board of directors or persons performing similar functions (or, if there is no board of directors or persons performing similar functions, by the majority of the persons or board having the power of management of the issuer) and shall contain the following documents:

(A) A copy of the prospectus proposed to be used in complying with the requirements of paragraph (4) of this subsection;

(B) A copy of any notice, circular, advertisement, sales literature, letter, or communication (if any such notice, circular, advertisement, sales literature, letter, or communication is to be used in connection with the offering) in respect of a security which states from whom a written prospectus meeting the requirements of paragraph (4) of this subsection may be obtained and which does no more than identify the security, state the price thereof, state by whom orders will be executed, and contain such other information as the commissioner, by rules or regulations, deemed necessary or appropriate in the public interest and for the protection of investors and subject to such terms and conditions as may be prescribed therein, may permit;

(C) A specimen or copy of the securities being registered and a copy of the issuer's articles of incorporation and bylaws or their substantial equivalents, as currently in effect;

(D) If the securities described in the prospectus forming a part of the registration statement are to be secured by any interest in or lien upon any real or personal property, a signed opinion of legal counsel which states that such interest or lien will be as described in such prospectus and that such interest or lien has been filed of record and otherwise perfected under applicable law;

(E) A copy of any underwriting or selling group agreement pursuant to which the distribution is to be made;

O.C.G.A. § 10-5-5

(F) A copy of every management or other material contract referred to in the prospectus;

(G) A signed copy of any professional opinion or any reports or certifications specifically referred to in the prospectus;

(H) A copy of any literature concerning the issuer or the offering given to any person directly engaged in the sale of securities;

(I) A written consent of each director of the issuer or any person occupying a similar status or performing a similar function to the use of his name in the prospectus unless such director or person has signed the registration statement;

(J) If any accountant, attorney, engineer, or appraiser or any person whose profession gives authority to a statement made by him is named in the registration statement as having prepared an opinion referred to in the registration statement or as having certified any part of the registration statement or is named as having prepared or certified a report of valuation for use in connection with the registration statement, the written consent of such person to the references to him in the registration statement; and

(K) A copy of any trust indenture required by paragraph (3) of this subsection.

(3) (A) If the securities to be registered are bonds, notes, debentures, evidences of indebtedness, or any interest in such securities, the provisions for disbursing the proceeds of such securities, for collecting and disbursing funds for the payment of principal of and interest on such securities, and for governing the rights of the trustee and the holders of such securities with respect to any collateral or other security therefor shall be governed by an indenture between the issuer of such securities and a trustee or trustees.

(B) Each such trustee shall be an attorney duly admitted to practice before the highest court of any state who is not regularly employed by the issuer or underwriter of the securities subject to the indenture or a corporation which is organized and doing business under the laws of the United States or any state, which is qualified to do business in Georgia, which is authorized to exercise corporate trust powers, and which is subject to supervision or examination by an agency or authority of the United States or the state of its incorporation or principal place of business:

(i) Provided that no such attorney or corporation may serve as trustee if such attorney or corporation:

(I) Serves as trustee under an indenture covering any other securities of the issuer of the securities subject to the indenture;

(II) Is an affiliate of the issuer or underwriter of the securities subject to the indenture;

(III) Is a guarantor of or an affiliate of an obligor upon or a guarantor of the securities subject to the indenture;

(IV) Is the beneficial owner of, or holds as collateral security for an obligation which is in default, 5 percent or more of the voting securities of, or 10 percent or more of any other class of security of the issuer of the securities subject to the indenture; or

(V) Is the beneficial owner of, or holds as collateral security for an obligation which is in default, 10 percent or more of any class of security of any person who, to the knowledge of such attorney or corporation, owns 50 percent or more of the voting securities of the issuer or any guarantor of the securities subject to the indenture; and

(ii) Provided, further, that no such attorney nor any director or executive officer (or persons performing similar functions) of such corporation:

EXHIBIT B-10

(I) Is a director, officer, partner, employee, appointee, or representative of the issuer, any guarantor, or any underwriter of the securities subject to the indenture; or

(II) Is a guarantor or underwriter of or an obligor upon the securities subject to the indenture.

(C) Such indenture shall in addition to the provisions specified in subparagraph (A) of this paragraph contain:

(i) A provision requiring the trustee to maintain a current list of the names and addresses of the holders of the securities subject to the indenture; and

(ii) A provision that the trustee, in case of any failure to make, when due, any payment into any sinking fund for the repayment of the securities subject to the indenture or any payment of the principal of or interest on the securities subject to the indenture, which failure is not corrected within 30 days of the date such payment was due, shall have the authority to commence a civil action to recover on behalf of the holders of the securities subject to the indenture all payments of principal and interest which are due and have not been paid; to declare the entire outstanding principal balance of and accrued but unpaid interest on such securities to be immediately due and payable and to commence a civil action to recover such principal and interest on behalf of the holders of the securities subject to the indenture; to take possession of and dispose of any collateral security subject to the indenture; and to secure such additional relief as the parties to the indenture shall provide; and a provision that, upon occurrence of any such failure, the trustee shall notify, to the extent that it can identify them, the holders of such securities of the occurrence of such failure and of its intentions with respect thereto.

(4) The prospectus required in this paragraph shall be delivered to any purchaser of securities registered pursuant to this subsection prior to or simultaneously with the execution by the purchaser of a written agreement to purchase, the delivery of a confirmation of sale, or the payment for securities offered by means of such prospectus, whichever occurs first. The prospectus under which securities registered pursuant to this subsection are sold shall contain the following:

(A) With respect to the issuer: its name, street address, form of organization, and telephone number; the state or foreign jurisdiction and date of its organization; and a brief description of the type of business or other endeavors it conducts;

(B) The following financial statements:

(i) A balance sheet of the issuer or a consolidated balance sheet of the issuer and its subsidiaries prepared in accordance with generally accepted accounting principles as of the date within 90 days prior to the filing of the registration statement; and

(ii) A statement of source and application of funds of the issuer or consolidated statements of the issuer and its subsidiaries prepared in accordance with generally accepted accounting principles for each of the two fiscal years preceding the date of the balance sheet filed and for the interim period, if any, between the close of the most recent of such fiscal years and the date of the balance sheet filed and for the corresponding period of the preceding year or, if the issuer and its predecessors have been in existence for less than two fiscal years, the statement of source and application of funds for the periods for which it has been in existence; provided, however, if the issuer does not report its accounts in the normal course of its business on a consolidated basis, then it may furnish, in lieu of consolidated statements, individual statements for it and its majority owned subsidiaries;

(C) The information set forth in subparagraphs (c)(1)(I), (c)(1)(J), and (c)(1)(P) of this Code section;

(D) A summary of special risk factors, if any, involved in the purchase of such securities;

(E) With respect to any underwriter of the securities being registered: a description of all fees, commissions, expenses, and other payments and remunerations received or to be received directly or indirectly by such underwriter

O.C.G.A. § 10-5-5

and its affiliates in connection with the sale of the securities being registered and a description of any affiliation, interest, or arrangement such underwriter may have with any building contractor, supplier, paying agent, or other person who may receive any proceeds from the sale of the securities being registered;

(F) A description of the material terms of the securities to be registered and, if such securities are bonds, notes, debentures, evidences of indebtedness, or any interest in such securities, a description of the material terms of the indenture under which the securities are to be issued; and

(G) Any additional information needed to comply with paragraph (2) of subsection (a) of Code Section 10-5-12.

(5) In case any of the financial statements contained in the registration statement filed under this subsection are certified, they shall be certified by an independent public accountant duly registered and in good standing as such under the laws of the place of his residence or principal office.

(6) Registration statements filed pursuant to this subsection will become effective if no stop order is in effect and no proceeding is pending under Code Section 10-5-16 at 3:00 P.M. eastern standard time or eastern daylight time, whichever is applicable, on the fifth full business day after the filing of the registration statement or at such earlier time as the commissioner orders.

(g) *Notice filings by issuers of federal covered securities.*

(1) Any security that is a federal covered security under Section 18(b)(2) of the Securities Act of 1933 may be offered for sale and sold into, from, or within this state only upon the commissioner's receipt of a copy of the registration statement and all other documents filed by the issuer with the Securities and Exchange Commission or, in lieu of filing such registration statement and other documents, a notice as prescribed by the commissioner by rule or regulation; a consent to service of process; and payment of a fee of $250.00 for each fund or unit investment trust. Such notice filing shall meet the following conditions:

(A) Unless otherwise extended by the commissioner, an initial notice filing under this paragraph shall be effective for a period of 14 months commencing upon the later of the date the notice or registration statement, as applicable, is received by the commissioner or the date the offering is effective with the Securities and Exchange Commission. A notice filing may be renewed by filing, prior to its expiration, a renewal notice as prescribed by the commissioner together with a renewal fee of $100.00 for each fund or unit investment trust renewed. A renewal notice filing shall be effective upon expiration of the previous notice filing.

(B) A notice filing may be amended as provided by the commissioner by rule or regulation.

(C) A notice filing may be terminated by an issuer upon providing notice to the commissioner.

(2) The commissioner, by rule or regulation, may require the filing of any document filed with the Securities and Exchange Commission under the Securities Act of 1933 for any security that is a federal covered security under Section 18(b)(3) or (4) of the Securities Act of 1933, together with any fees required under this chapter and a consent to service of process.

(3) The commissioner may issue a stop order suspending the offer or sale of a federal covered security in this state if the commissioner reasonably believes there has been a violation of the provisions of this Code section.

(4) The commissioner, by rule or regulation, may, if he or she deems it to be in the best interests of the public, waive any or all of the provisions of this Code section.

**HISTORY:** Code 1933, § 97-105, enacted by Ga. L. 1973, p. 1202, § 5; Ga. L. 1974, p. 284, §§ 4-6; Ga. L. 1975, p. 928, §§ 9-11; Ga. L. 1979, p. 1296, § 3; Ga. L. 1982, p. 3, § 10; Ga. L. 1984, p. 529, § 3; Ga. L. 1989, p. 14, § 10; Ga.

EXHIBIT B-13



3 of 4 DOCUMENTS

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright © 2003 by The State of Georgia
All rights reserved.

*** ARCHIVE ***

*** CURRENT THROUGH THE 2003 SESSION ***
*** ANNOTATIONS CURRENT THROUGH SEPTEMBER 22, 2003 ***

TITLE 10.  COMMERCE AND TRADE
CHAPTER 5.  SECURITIES

O.C.G.A. § 10-5-12  (2003)

§ 10-5-12.  Unlawful practices

(a) It shall be unlawful for any person:

(1) To offer to sell or to sell any security in violation of Code Section 10-5-3, 10-5-5, or 10-5-19 or any rule, regulation, or order promulgated or issued by the commissioner under this chapter;

(2) In connection with an offer to sell, sale, offer to purchase, or purchase of any security, directly or indirectly:

(A) To employ a device, scheme, or artifice to defraud;

(B) To make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(C) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person;

(3) To offer or sell any security:

(A) Registered under subsection (b) of Code Section 10-5-5 by means of any prospectus except a prospectus which complies with paragraph (3) of subsection (b) of Code Section 10-5-5;

(B) Registered under subsection (e) of Code Section 10-5-5 by means of any prospectus except a prospectus which complies with paragraph (3) of subsection (e) of Code Section 10-5-5; or

(C) Registered under subsection (f) of Code Section 10-5-5 by means of any prospectus except a prospectus which complies with paragraph (4) of subsection (f) of Code Section 10-5-5; or

(4) In connection with the sale of any securities registered under this chapter:

O.C.G.A. § 10-5-12

(A) To make any representation concerning any future sales of securities of the same class by the issuer at a price higher than the current offering price; or

(B) To make any representations as to the future existence of any public market for the securities offered for sale.

(b) It shall be unlawful for any person to make to any prospective purchaser, customer, or client any representation that the filing or effectiveness of a registration statement or the registration of any security under Code Section 10-5-5 or the existence of any exemption for any security or transaction means that the commissioner has passed in any way upon the truth, completeness, or accuracy of such registration statement or the merits of such security or has recommended or given approval to such security or transaction.

(c) It shall be unlawful for any person who:

(1) Is a dealer, limited dealer, salesperson, limited salesperson, investment adviser, federal covered adviser, or investment adviser representative under this chapter;

(2) Is making a notice filing or filing an application for registration as a dealer, limited dealer, salesperson, limited salesperson, investment adviser, or investment adviser representative under this chapter;

(3) Is an issuer which has filed a registration statement or notice filing with respect to securities it intends to issue; or

(4) Is an affiliate of any of the persons described in paragraph (1), (2), or (3) of this subsection

knowingly to cause to be made, in any document filed with the commissioner or in any proceeding under this chapter, any statement which is, at the time it is made and in light of the circumstances under which it is made, false or misleading in any material respect.

(d) Without limiting the general applicability of subsections (a), (b), and (c) of this Code section, it shall be unlawful to:

(1) Quote a fictitious price with respect to a security;

(2) Effect a transaction in a security which involves no change in the beneficial ownership of the security for the purpose of creating a false or misleading appearance of active trading in a security or with respect to the market for the security;

(3) Enter an order for the purchase of a security with the knowledge that an order of substantially the same size and at substantially the same time and price for the sale of the security has been, or will be, entered by or for the same, or affiliated, person for the purpose of creating a false or misleading appearance of active trading in a security or with respect to the market for the security;

(4) Enter an order for the sale of a security with the knowledge that an order at substantially the same time and price for the purchase of the security has been, or will be, entered by or for the same, or affiliated, person for the purpose of creating a false or misleading appearance of active trading in a security or with respect to the market for the security;

(5) Misappropriate, convert, or improperly withhold any funds or other property in connection with an offer or sale of any security; or

(6) Employ any other deceptive or fraudulent device, scheme, or artifice to manipulate the market in a security.

(e) Transactions effected in compliance with the applicable provisions of the Securities Exchange Act of 1934 and the rules and regulations of the Securities and Exchange Commission thereunder shall not be deemed to constitute market manipulation under subsection (d) of this Code section.

(f) It shall be unlawful for any person to transact business within or from this state as an investment adviser or investment adviser representative in violation of Code Section 10-5-3 or any rule, regulation, or order promulgated or issued by the commissioner under this chapter.

(g) It shall be unlawful for any person to hold himself or herself out as, or otherwise represent that he or she is, a "financial planner" or "investment adviser" or use as descriptive of his or her business the term "financial planner" or "investment adviser" or such similar term as may be specified in rules and regulations promulgated by the commissioner unless said person is a certified public accountant, is registered as an investment adviser or investment adviser representative under this chapter, or is a federal covered adviser who has made a notice filing under this chapter. The use of the term "financial planner" or "investment adviser" or a similar term to describe a person's business shall not be used in such a way so as to be deceptive, as that term may be defined in the rules and regulations promulgated by the commissioner.

(h)(1) It shall be unlawful for any investment adviser, federal covered adviser, or investment adviser representative in the course of his or her business as such:

(A) To employ any device, scheme, or artifice to defraud;

(B) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit.

(2) It shall be unlawful for any investment adviser, federal covered adviser, or investment adviser representative in the course of business to engage in dishonest or unethical practices, as the commissioner may define by rule.

(i) It shall be unlawful for any person registered as an investment adviser or investment adviser representative under this chapter or for any federal covered adviser who has made a notice filing under this chapter to represent or imply in any manner whatsoever that such person has been sponsored, recommended, or approved or that his or her abilities or qualifications have in any respect been passed upon by the State of Georgia or any agency or any officer thereof; provided, however, that this provision shall not be construed to prohibit a statement that a person is so registered under this chapter if such statement is true in fact and if the effect of such registration is not misrepresented.

(j) Except as may be permitted by rule or order of the commissioner, it shall be unlawful for any investment adviser to enter into, extend, or renew any investment advisory contract unless it provides in writing:

(1) That the investment adviser shall not be compensated on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client; provided, however, that the prohibitions of this paragraph shall not prohibit an investment advisory contract which provides for compensation based on the total value of a fund averaged over a definite period, as of definite dates, or taken as of definite date;

(2) That no assignment of the contract may be made by the investment adviser without the consent of the other party to the contract; and

(3) That the investment adviser, if a partnership, shall notify the other party to the contract of any change in the membership of the partnership within a reasonable time after the change.

(k) The provisions of subsections (h) and (i) of this Code section and paragraph (1) of subsection (j) of this Code section shall be applicable to any certified public accountant who holds himself out as a "financial planner" or "investment adviser."

O.C.G.A. § 10-5-12

(l) All records relating to the preparation of financial plans and the giving of investment advice prepared and maintained by a certified public accountant who holds himself out as a "financial planner" or "investment adviser" are subject to reasonable examination by representatives of the commissioner, within or outside this state, as the commissioner deems necessary or appropriate to determine whether any person has violated or is about to violate this chapter or any rule, regulation, or order under this chapter. This provision shall not be construed to require, or authorize the commissioner to require, such certified public accountant to disclose the identity, investments, or affairs of any client of such certified public accountant, except insofar as such disclosure may be necessary or appropriate in a particular proceeding or investigation having as its object the enforcement of this chapter.

(m)(1) In order to prevent fraudulent, deceptive, or manipulative acts or practices, it shall be unlawful for any designated dealer or designated salesman to sell a designated security to, or to effect the purchase of a designated security by, any person unless the transaction is exempt under paragraph (6) of this subsection or, prior to the transaction, (A) the designated dealer and designated salesman, if involved, have approved the person's account for transactions in designated securities in accordance with the procedures set forth in paragraph (2) of this subsection and (B) the designated dealer and designated salesman, if involved, have submitted to the person a risk disclosure document in a form approved by the commissioner and have thereafter received from the person a written agreement to the transaction in compliance with the requirements of paragraph (3) of this subsection.

(2) In order to approve a person's account for transactions in designated securities, the designated dealer or designated salesman must:

(A) Obtain from the person information concerning the person's financial situation (including but not limited to net worth and annual income), investment experience, and investment objectives;

(B) Reasonably determine, based on the information required by subparagraph (A) of this paragraph and any other information known by the dealer or salesman, that transactions in designated securities are suitable for the person and that the person (or the person's independent adviser in these transactions) has sufficient knowledge and experience in financial matters, such that the person (or adviser) reasonably may be expected to be capable of evaluating the risks of transactions in designated securities;

(C) Deliver to the person a written statement:

(i) Setting forth the basis on which the dealer and salesman made the determination required by subparagraph (B) of this paragraph;

(ii) Stating in a highlighted format that it is unlawful for the dealer or salesman to effect a transaction in a designated security subject to the provisions of subparagraph (B) of paragraph (1) of this subsection unless the dealer and salesman have received, prior to the transaction, a written agreement to the transaction from the person; and

(iii) Stating in a highlighted format immediately preceding the customer's signature line that:

(I) The dealer and salesman are required by this subsection to provide the person with the written statement; and

(II) The person should not sign and return the written statement to the dealer or salesman if it does not accurately reflect the person's financial situation, investment experience, and investment objectives; and

(D) Obtain from the person a manually signed and dated copy of the written statement required by subparagraph (C) of this paragraph.

(3) The written agreement to the transaction required by subparagraph (B) of paragraph (1) of this subsection shall:

EXHIBIT B-17

O.C.G.A. § 10-5-12

(A) Be signed by the purchaser and dated;

(B) Set forth the identity and quantity of the designated security to be purchased;

(C) Prominently disclose, in close proximity to the signature lines of the agreement, that the purchaser has a right to rescind the agreement, in accordance with paragraph (4) of this subsection;

(D) Disclose all commissions, fees, bonuses, or other compensation payable to the dealer and salesman as a result of the transaction; and

(E) Disclose the price at which the dealer is currently selling or offering to sell the security and the price at which the dealer is currently buying or offering to buy the security.

(4)(A) Any person purchasing a designated security from a designated dealer or designated salesman shall have an unqualified right to rescind the transaction within three business days of receipt of the confirmation of the transaction.

(B) To exercise the right to rescind, the purchaser shall notify the designated dealer in writing and shall send the notice by mail or other means to the designated dealer's place of business by midnight of the third business day following receipt of the confirmation of the transaction.

(C) If the designated dealer does not send a confirmation as required by paragraph (2) of subsection (p) of Code Section 10-5-3, the right to rescind under this subsection shall expire two years after the purchase of securities or upon the purchaser's sale of the security, whichever occurs first.

(D) In a transaction subject to rescission under this paragraph, the designated dealer shall send to the purchaser a written notice of the right to rescind. Such notice shall be included in or accompany the confirmation of the transaction and shall include:

(i) A disclosure of the purchaser's right to rescind under subparagraphs (A) and (B) of this paragraph;

(ii) A description of how to exercise the right to rescind; and

(iii) A form which may be used to effect a rescission and which sets forth the dealer's address to which such form may be delivered.

(5) A designated dealer, or another dealer on behalf of such designated dealer, shall disclose, on each statement of account sent to account holders having a designated security shown as a "long" position in the person's account as of the statement date, the price at which the designated dealer is offering to buy such security or, if no such price is available, the average of the bid prices by other dealers and the date of the most recent bid available from the designated dealer and the amount of money represented by the long position, if it were to be sold at the bid price shown on the statement.

(6) The requirements of paragraph (1) of this subsection do not apply to:

(A) Transactions in which the purchaser is an accredited investor of the dealer or salesman;

(B) Transactions that are not recommended by the dealer or salesman;

(C) Transactions by a dealer or salesman who is not and has not been a market maker in the designated security that is the subject of the transaction in the immediately preceding 12 months;

(D) Transactions in which the purchaser is an established customer of the dealer or salesman; or

(E) Any transaction or transactions that, upon prior written request or upon his own motion, the commissioner conditionally or unconditionally exempts as not encompassed within the purposes of this subsection.

O.C.G.A. § 10-5-12

(7) The requirements of paragraph (4) of this subsection do not apply to:

(A) Transactions in which the purchaser is an accredited investor of the dealer or salesman;

(B) Transactions that are not recommended by the dealer or salesman;

(C) Any transaction or transactions that, upon prior written request or upon his own motion, the commissioner conditionally or unconditionally exempts as not encompassed within the purposes of this subsection.

(8) Compliance with SEC Rule 15c2-6 (17 CFR .240.15c2-6, as amended) shall be deemed to be compliance with paragraph (2) of this subsection.

(n) It shall be unlawful for any designated dealer or designated salesman to charge or receive any commission, fee, bonus, markup, or other compensation with respect to a transaction involving the purchase or sale of designated securities which, singly or in combination, exceeds 10 percent of the purchase or sales price of the securities involved in the transaction.

(o) It shall be unlawful for any dealer, limited dealer, salesman, or limited salesman who is participating or otherwise financially interested in the primary or secondary distribution of any security which is not admitted to trading on a national securities exchange to represent to a customer that any security is being offered to such customer "at the market" or at a price related to the market price unless such dealer, limited dealer, salesman, or limited salesman knows or has reasonable grounds to believe that a market for such security exists other than that made, created, or controlled by him, or by any person for whom he is acting or with whom he is associated in such distribution, or by any person controlled by, controlling, or under common control with him.

(p) It shall be unlawful for any designated dealer to offer or sell in or from the State of Georgia a designated security unless the designated dealer:

(1) At the time of the offer and sale has entered upon a quotation system approved by the commissioner, a firm bid to purchase at least 100 shares of the stock sold at a firm price; and

(2) Actually intends to purchase and, when called upon to do so by any person, actually will purchase at least 100 shares at such price, and does not intend to reduce, and does not reduce below the quoted bid price, the price for which it actually purchases additional shares, except in reasonable response to market or economic circumstances or conditions.

(q) It shall be unlawful for any person to offer for sale or to sell viatical investments in or from this state unless the following requirements are met:

(1) The viatical issuer first files with the commissioner a statement which provides the following information:

(A) A full description of the types of viatical investments to be offered or sold, including without limitation statements as to whether the underlying policies or certificates will be whole, fractionalized, or pooled, whether the underlying policies are currently owned by the viatical issuer or will be acquired in the future, and whether the investors will be sold only policies or certificates owned by the viatical issuer at the time of the investment or will have their investments matched to policies that may be acquired after the date of the investment;

(B) The financial statements of the viatical issuer, prepared in conformity with generally accepted accounting principles;

(C) A list of all dealers, salespersons, and agents authorized by the viatical issuer to sell in this state, together with their securities registration numbers;

O.C.G.A. § 10-5-12

(D) A list of all states in which the viatical issuer is licensed to purchase viatical settlement contracts, has an application pending, or has been denied exemption or registration;

(E) A list of all states in which the viatical issuer sells viatical investments pursuant to exemption, is licensed to sell viatical investments, has an application pending, or has been denied exemption or registration;

(F) A copy of any escrow agreements for the escrow of proceeds or for the escrow of funds for the payment of premiums;

(G) A copy of all advertisements or sales literature and the text of any script to be used in conjunction with the solicitation, offer, or sale of a viatical investment;

(H) A copy of all documents to be used to disclose the risk factors associated with the sale of a viatical investment; and

(I) A copy of all documents to be used to conduct any determination of suitability of a viatical investment to the particular investor.

The viatical issuer shall have an affirmative duty to file with the commissioner a supplemental or amended statement if at any time there is a material change to any of the information provided in the statement;

(2) The viatical issuer files an annual report that shall include such information pertaining to the offer, sale, or status of any viatical investment as the commissioner may by rule require;

(3) In connection with the offer or sale of any viatical investment, the viatical issuer, dealer, salesperson, and agent offering or selling the viatical investment shall not make any projections or representations regarding rates of return of any investment or prospective investment other than a rate of return expressed on an annual basis. Such projection or representation must be based upon a written opinion of life expectancy by a qualified physician;

(4) The viatical issuer, dealer, salesperson, and agent shall, for a minimum of five years after the date of maturity of any policy that is the subject of a viatical investment, retain and provide to the commissioner upon request copies of documents relating to the offer or sale of viatical investments that the commissioner may by rule require and shall make said documents available for inspection by the commissioner upon request; and

(5) Neither the viatical issuer nor any of its officers, directors, partners, 10 percent or greater stockholders, promoters, affiliates, nor the escrow agent nor any selling agent of the viatical investment being offered, nor any officer, director, or partner of the selling agent shall have:

(A) Within the last five years filed a registration statement which is the subject of a currently effective stop order entered by any state securities administrator or the United States Securities and Exchange Commission;

(B) Within the last five years been convicted of any felony or misdemeanor in connection with the purchase or sale of any security or any felony involving fraud or deceit, including, but not limited to, forgery, embezzlement, obtaining money under false pretenses, larceny, or conspiracy to defraud;

(C) Within the last five years been subject to an administrative order or decision issued by any state securities or insurance administrator or the United States Securities and Exchange Commission which administrative order or decision has not been vacated;

(D) Within the last five years been subject to any administrative order or decision issued by any state or federal regulatory authority or any financial services self-regulatory organization in which fraud or deceit was found, which administrative order or decision has not been vacated;

EXHIBIT B-20

O.C.G.A. § 10-5-12

(E) Within the last five years been subject to an order or decision issued by any state securities administrator, which order or decision has not been vacated and prohibits the use of any exemption from registration in connection with the purchase or sale of securities; or

(F) Within the last five years been subject to any order, judgment, or decree of any court of competent jurisdiction temporarily, preliminarily, or permanently restraining or enjoining the person from engaging in or continuing any conduct or practice in connection with the purchase or sale of any security or involving the making of any false filing with any state.

**HISTORY:** Code 1933, § 97-112, enacted by Ga. L. 1973, p. 1202, § 12; Ga. L. 1975, p. 928, §§ 23, 24; Ga. L. 1979, p. 1296, § 8; Ga. L. 1986, p. 1559, § 5; Ga. L. 1988, p. 1290, § 6; Ga. L. 1990, p. 1332, §§ 3, 4; Ga. L. 1990, p. 1534, § 10; Ga. L. 1998, p. 1617, § 7; Ga. L. 2002, p. 792, § 4.

**NOTES:** THE 1998 AMENDMENT, effective July 1, 1998, throughout this Code section, substituted "salesperson" for "salesman" and inserted "or her" and "or she"; in subsection (c), inserted "federal covered adviser," in paragraph (1), inserted "a notice filing or filing" in paragraph (2), and inserted "or notice filing" in paragraph (3); in subsection (d), deleted "or" at the end of paragraph (4), redesignated former paragraph (5) as present paragraph (6), and added present paragraph (5); in the first sentence of subsection (g), inserted "or herself" near the beginning, deleted "either" following "person is", substituted a comma for "or", and added ", or is a federal covered adviser who has made a notice filing under this chapter" at the end; in subsection (h), inserted the paragraph (1) designation at the beginning of the existing introductory language, redesignated former paragraphs (1) and (2) as present subparagraphs (h)(1)(A) and (h)(1)(B), respectively, inserted ", federal covered adviser," in the introductory language in paragraph (1), substituted a period for "; or" at the end of subparagraph (h)(1)(B), redesignated former paragraph (3) as present paragraph (2), and substituted "It shall be unlawful for any investment adviser, federal covered adviser, or investment adviser representative in the course of business to" for "To" at the beginning of paragraph (2); and inserted "or for any federal covered adviser who has made a notice filing under this chapter" near the middle of subsection (i).

THE 2002 AMENDMENT, effective July 1, 2002, added subsection (q).

CODE COMMISSION NOTES. --Pursuant to Code Section 28-9-5, in 1990, subsections (k) through (n) as added by Ga. L. 1990, p. 1534, § 10 were redesignated as subsections (m) through (p) as Ga. L. 1990, p. 1332, § 4 already added subsections designated as (k) and (l).

Pursuant to Code Section 28-9-5, in 2002, "deceit, including, but not limited to," was substituted for "deceit including but not limited to" in subparagraph (q)(5)(B) and a comma was inserted following "deceit was found" in subparagraph (q)(5)(D).

U.S. CODE. --The Securities Exchange Act of 1934, referred to in subsection (e), is codified at 15 U.S.C. § 78a, et seq.

LAW REVIEWS. --For article examining interface between law and business in regards to marketing of thrift notes, see 26 Mercer L. Rev. 311 (1974). For article, uniformity under the securities laws: regulation D and the new Georgia uniform limited offering exemption, see 19 Ga. St. B.J. 74 (1982). For article, "Start Making Sense: An Analysis and Proposal for Insider Trading Regulation," see 26 Ga. L. Rev. 179 (1992). For article, "Common Fact Patterns of Stock Broker Fraud and Misconduct," see 7 Ga. St. B.J. 14 (2002).

JUDICIAL DECISIONS

ANALYSIS
General Consideration
Schemes to Defraud

EXHIBIT B-22



1 of 2 DOCUMENTS

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright © 2003 by The State of Georgia
All rights reserved.

*** ARCHIVE ***

*** CURRENT THROUGH THE 2003 SESSION ***
*** ANNOTATIONS CURRENT THROUGH SEPTEMBER 22, 2003 ***

TITLE 10.  COMMERCE AND TRADE
CHAPTER 5.  SECURITIES

O.C.G.A. § 10-5-24  (2003)

§ 10-5-24.  Criminal penalties for violating chapter; penalties for violating other laws not affected


  (a) Any person who shall willfully violate any provision of this chapter shall be guilty of a felony and, upon conviction thereof, shall be punished by a fine of not more than $500,000.00 or imprisonment for not less than one and not more than five years, or both.

    (b) Nothing in this chapter shall limit any statutory or common-law right of the state to punish any person for violation of any law.

**HISTORY:** Code 1933, § 97-9901, enacted by Ga. L. 1973, p. 1202, § 14; Ga. L. 1974, p. 284, § 15; Ga. L. 1990, p. 1534, § 16.

JUDICIAL DECISIONS

PUNISHMENT NOT JURY ISSUE. --The trial court's failure to submit the issue of punishment to the jury does not deny the defendant of a substantial right. Bowler v. State, 145 Ga. App. 633, 244 S.E.2d 142 (1978) (decided under former Ga. L. 1957, p. 134, as amended).

CITED in Mills v. Fitzgerald, 668 F. Supp. 1554 (N.D. Ga. 1987); Greenhill v. State, 199 Ga. App. 218, 404 S.E.2d 577 (1991).

RESEARCH REFERENCES

AM. JUR. 2D. --69 Am. Jur. 2d, Securities Regulation--State, § 110.

C.J.S. --79A C.J.S., Securities Regulation and Commodity Futures Trading Regulation, §§ 445, 448.

USER NOTE: For more generally applicable notes, see notes under the first section of this subpart, part, article, chapter