# EXHIBIT  C

138129.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

RICHARD M. KIPPERMAN,                      :
not individually but solely in his          :
capacity as Trustee for the                 :
Magnatrax Litigation Trust,                 :
                                            :      CIVIL ACTION NO.
        Plaintiff,                          :      1:05-CV-1242-JOF
                                            :
    v.                                      :
                                            :
ONEX CORPORATION, et al.,                   :
                                            :
        Defendants.                         :

## OPINION AND ORDER

This matter is before the court on Plaintiff, Richard M. Kipperman, not individually but solely in his capacity as Trustee for the Magnatrax Litigation Trust's, Motion for Protective Order [285], Motion to Seal Document [305], Motion to Compel [312], and Cross Motion for Protective Order [330], Defendants, Onex Corporation, Onex ABCO Limited Partnership, Onex ABCO Finance, LLC, Onex ABCO Finance II, LLC, Onex American Holdings, LLC, 1354495 Ontario, Inc., 302733 Nova Scotia, Inc., OMI Partnership Holdings, LTD, Gerald W. Schwartz, Mark Hilson, Nigel Wright, Christopher Govan, Robert T. Ammerman, and R Charles Blackmon's, Motion for Protective Order [324] and Motion to Compel [326].

## I.      Motion for Protective Order [285]

On September 4, 2007, Plaintiff filed a "Motion for Protective Order Regarding Documents Subpoenaed by Defendant Onex Corporation from Huron Consulting Services LLC that are Protected by the Attorney-Client Privilege and/or Work Product Doctrine," which the parties have fully briefed.  Huron Consulting Services, LLC ("Huron"), provided financial consulting and analysis to the Creditors' Committee ("the Committee") during the Magnatrax bankruptcy proceeding which precipitated this case.   The monthly fee applications submitted to the bankruptcy court indicate that Huron reviewed financial information prepared by the Debtors or their accountants or other financial advisors, reviewed and evaluated the Debtors' revised financial model and DIP forecast, monitored the Debtors' activities regarding cash expenditures and projected cash requirements, evaluated the Debtors' proposed cost reduction activities, reviewed the Debtors' plan or reorganization, researched industry and market data relating to the steel and metal industry, reviewed historical and prospective financial information, preformed an enterprise evaluation, and met with the Debtors and other parties. (D. Resp., at 6).  Huron also worked with the Committee's counsel, Peter Ito, of Foley and Lardner.  Huron assisted counsel in forming and providing advice to the Creditors' Committee, and Huron prepared documents to assist counsel and the Committee to assess potential claims arising from the bankruptcy proceeding.  Many of the claims that Huron investigated are now the claims being pursued

2

by Peter Ito and others as counsel for the Magnatrax Litigation Trust and its trustee, Kipperman.

On March 8, 2007, the Defendants served a third-party subpoena upon Huron. Huron objected to the subpoena, in part because it believed that the subpoena implicated documents that were protected by attorney-client privilege and the work product doctrine. Huron identified 36,600 pages of documents related to the subpoena and turned them over to Ito and his current law firm to be reviewed for privilege and work product protection. The Ito review identified 672 protected documents. These documents related to:

> (1) communications made for a legal purpose between or among counsel to the Creditors' Committee, Huron, and/or the Creditors' Committee; (2) work product created by counsel that was shared with Huron and/or the Creditors' Committee, including draft pleadings, memoranda and presentations; and (3) work product created by Huron.

(Ito Dec., ¶ 15). On August 15, 2007, Huron produced roughly 32,000 pages of documents to Defendants, and a week later, Plaintiff provided a privilege log to Defendants explaining the absence of the remaining documents.

Plaintiff asserts that he now holds the privilege and work product rights originally held by the Committee because he is now managing the business of the Committee and pursuing claims that originally belonged to the unsecured creditors. Plaintiff contends that the court should enter a protective order releasing Huron from turning over the relevant 672 documents because (1) Huron acted as agent of counsel, Ito, with respect to these

AO 72A
(Rev.8/82)

communications; (2) many of these documents were prepared by Huron at the instruction of counsel in anticipation of litigation; and (3) Defendants cannot show sufficient need or undue hardship to overcome Plaintiff's claim of privilege and work product. Although Huron was hired directly by the Creditors' Committee, Plaintiff contends that counsel directed Huron's activities.

Defendants submit that (1) Plaintiff did not succeed to the Committee's privilege; (2) any privilege that might have existed has been waived because neither the Committee nor the Plaintiff asserted it at the time of the Huron subpoena; and (3) Plaintiff's position here is inconsistent with his position earlier in this litigation that no privilege applied to the documents of FTI Consulting, Inc., as a financial advisor to third party Canadian Imperial Bank of Commerce ("CIBC"); (4) Huron was not an agent of counsel because it was hired by the Committee, was paid out of the Debtors' estate, and provided services directly to the Committee; and (5) many of Huron's documents were not prepared in anticipation of litigation but would have been prepared anyway as part of the restructuring.

Neither of the parties has objected to the relevance of the information sought in the Huron subpoena. The determination of the relevance of this evidence, regardless, is within the broad discretion of the district court. *See United States v. Nabors*, 707 F.2d 1294, 1298 (11th Cir. 1983). The court has reviewed the Huron subpoena. It appears to the court that a large portion of the information that Defendants seek, for example requests 10- 21 and 26-

4

28, relate directly to the Committee and its counsel's evaluation of possible claims against the Defendants. The court has determined that the Plaintiff's actions, or those of the Creditors' Committee, in determining whether there were causes of action against the Defendants are irrelevant to the current matter before the court, whether the Defendants have engaged in improper transfers under Georgia and federal law. To the extent that Plaintiff's thoughts about his claims are relevant, Defendants can obtain such information through contention interrogatories, as the court will discuss in Part V below. For this reason, the court is disinclined even to reach the issues of privilege and work product briefed by the parties. District courts are well within their discretion to exclude even relevant evidence for undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Dohan*, 2007 U.S. App. LEXIS 27406, *5 (11th Cir. 2007). With this in mind, the court will not address the privilege issues unless the parties explain to the court how the information contained in the 672 documents in dispute is relevant and necessary to the ultimate adjudication of the Plaintiff's claims.

To the extent that the court must reach the issue of privilege in the future, it notes the following. First, the Magnatrax Litigation Trust is a subset and residual of the Creditors' Committee as it existed during the bankruptcy. Therefore, it would defy the public policy objective behind attorney-client privilege and the work product doctrine to deny Plaintiff the right to assert privilege over the communications made between the Creditors' Committee

AO 72A
(Rev.8/82)

and its counsel and to claim as work product those documents produced by and for the Creditors' Committee in anticipation of any litigation regarding their claims. Second, the court will not place an undue emphasis on the fact that Huron was employed directly by the Creditors' Committee, but the court will likewise not allow every action taken by Huron to be presumed protected merely because some of Huron's actions were taken at the direction of the Creditors' Committee counsel. For the reasons stated above, the court DENIES Plaintiff's Motion for Protective Order.

## II.    Motion to Seal Document [305]

On September 20, 2007, Plaintiff filed a Motion to Designate as Sealed "the Huron Document," which the parties have fully briefed. The Huron Document was filed as Exhibit H to the Affirmation of Stacey A. Shortall in Opposition to Plaintiff's Motion for Protective Order [297-6]. This document is a copy of a presentation made by Huron to the unsecured Creditors' Committee of Magnatrax on July 28, 2003. The document relies upon unaudited, unverified financial records and the Debtor's records and forecast information prepared by and discussed with the Debtor's management to provide highlights, operating results, cash flow and accounts receivable and valuation analyses of the Debtors. This document was intended to be confidential at the time it was presented.

Plaintiff contends that there is good cause to seal this document because it is protected by work product, contains confidential information, and was inadvertently

produced to the Defendants. Plaintiff states that it has asserted privilege over this document and explained its inadvertent disclosure pursuant to the parties' joint protective order and has requested that all copies of it be returned. Defendants maintain that this document should not be designated as sealed because (1) it was originally in the files of the Debtors and was produced by the Debtors in the bankruptcy proceeding before the instant lawsuit was filed; (2) the document was not "inadvertently produced" as two copies of it were produced more than eight months ago and were not stamped as confidential pursuant to the joint protective order, as other documents in the same production were; and (3) the Plaintiff cannot assert privilege, as explained in Defendants' response to Plaintiff's protective order discussed in Part I, because this is a business document prepared by Huron and presented directly to the Committee.

First, the court notes that this motion in not in accordance with this court's seal process as described in its discovery order of December 14, 2007, and the court could deny it on that basis alone and request that Plaintiff renew its request via the appropriate process. The court further notes that it will not address the issue of whether Plaintiff can assert privilege over Huron documents for the reasons stated above in Part I. All that aside, the court cannot accept Plaintiff's argument or grant its motion. The Huron Document originally came from the Debtors, and thus Plaintiff's production of it cannot have been "inadvertent." Therefore, the court DENIES Plaintiff's Motion to Seal.

AO 72A
(Rev.8/82)

### III.   Motion to Compel [312]

On October 2, 2007, the Plaintiff filed a "Motion to Compel the Onex Defendants to Fully Respond to Plaintiff's Document Requests," which the parties have fully briefed. Plaintiff asserts five primary complaints in his motion. First, Plaintiff contends that the Onex Defendants have produced documents in a piecemeal fashion in the last year, and that they refuse to state whether their document production is complete. Plaintiff requests that the court order the Onex Defendants to complete their document production and provide a certification that their production is complete. Second, Plaintiff contends that the Onex Defendants' responses to document requests 1-4 and second request 9 are insufficient. Plaintiff presented these insufficiencies using the court's requested format under L.R. 37.1. Third, Plaintiff argues that the Onex Defendants have not produced electronic documents, including e-mails from 1999-2003, that are responsive to the Plaintiff's requests, and that the Onex Defendants have not made an adequate showing under Fed. R. Civ. P. 26(b)(2)(B) why they cannot provide this information. Fourth, Plaintiff avers that Onex has failed to produce a complete version of all the documents responsive to their requests and that Onex has instead produced a significant number of highly relevant documents with heavy redactions. Finally, Plaintiff opines that Onex has failed to produce an adequate privilege log because its privilege log does not identify what law firms the attorneys copied on the purportedly privileged documents worked for, or whom those attorneys represented at the

8

time the documents were created.  Plaintiff reveals to the court that the Onex Defendants have conditioned their agreement to produce supplemental privilege logs and to provide details concerning the e-mails they have thus far refused to produce as being inaccessible, on Plaintiff agreeing to specific deposition dates for CIBC and Magnatrax witnesses.

The Onex Defendants contend that (1) they have adequately responded to requests 1-4; (2) they are preparing supplemental privilege logs despite Plaintiff's unwillingness to do the same; (3) to the extent they redacted any information it was because that information related to investments other than Magnatrax and was therefore irrelevant; (4) the electronic data Plaintiff seeks is on backup tapes and is therefore inaccessible; and (5) Plaintiff's request for a certification is baseless because as in any case where depositions have not even proceeded, a party cannot possibly be required to certify that no additional documents will be located.

With regard to Plaintiff's request for a certification, the court directs the parties to Fed. R. Civ. P. 26(g), which states:

> (1) Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name – or by the party personally, if unrepresented – and must state the signer's address, e-mail address, and telephone number.  By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>> (A) with respect to a disclosure, **it is complete and correct as of the time it is made**; and
>> (B) with respect to a discovery request, response, or objection, it is:

9

(i) consistent with these rules and warranted by existing law or by a non frivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(2) Failure to Sign.   Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

(3) Sanction for Improper Certification.  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

The court reminds the parties that they are subject to this provision and cautions counsel to the parties against violating it.  The court will presume that Defendants have not violated Rule 26 in responding to Plaintiff's document requests, but the court recognizes that circumstances may have arisen which have made disclosures, that were complete at the time filed, no longer complete.  The court finds it reasonable for Plaintiff to want to be certain that Defendants' document production is complete at present.  Therefore, the court, pursuant to Rule 26(g), GRANTS Plaintiff's request for a certification.   The court DIRECTS Defendants to complete their document production and to certify that their production is

10

AO 72A
(Rev.8/82)

complete within thirty (30) days from the January 9, 2008 hearing or provide Plaintiff and the court with an explanation as to why production is not complete.

As to Plaintiff's concerns about the document requests 1-4 and 9, the court notes that Plaintiff has presented his motion to compel responses to document requests 1-4 and 9 in the correct L.R. 37.1 format. As such, the court will allow the parties to argue this portion of the motion at the discovery hearing on January 9, 2008, and will not address this portion of the motion today. The court will also hear arguments regarding the Onex Defendants' refusal to produce e-mail on January 9, 2008.

Moving on to Plaintiff's complaint about redacted documents, the court recognizes that the Onex entities are involved in numerous business ventures, many of which have nothing to do with the present action and that all of the Onex Corporation's Board Meeting Minutes are likely not relevant to Plaintiff's document requests. However, Plaintiff has identified several categories of documents that he believes the Onex Defendants have redacted that the court finds highly relevant and believes Plaintiff should be able to read in context without redactions. The court refers particularly to minutes from Onex Corporation Board of Directors meetings, Onex Compensation Committee meetings, Executive Committee meetings, and Audit Committee meetings which concern the acquisitions of ABCO, Republic, and Jannock, the financial condition of Magnatrax, the payment of management fees by Magnatrax, and then expenses incurred by Onex as part of the

11

acquisitions which were later charged to Magnatrax under the Management Agreement.[1] Documents that touch and concern these topics should be produced in unredacted form. The Onex Defendants may bring the unredacted version of any documents that they have produced in redacted form that they believe do not directly touch and concern these topics to chambers for review prior to the January 9, 2008 hearing. The court warns the Onex Defendants, however, that if the court finds upon review that they have improperly redacted these documents, the court will award sanctions.

Lastly, the court addresses the privilege logs. The court ORDERS the Onex Defendants to produce supplemental privilege logs which identify what law firms the attorneys copied on the purportedly privileged documents, currently designated only as "ESQ," worked for and whom these attorneys represented at the time the documents were created. Further, the court is sympathetic to the Onex Defendants' desire to schedule depositions or to have the Plaintiff's privilege logs supplemented, but the court notes that production of requested and required discovery can never be contingent. If Defendants have concerns with Plaintiff's behavior, they can petition the court for relief. The court will allow the parties to argue Plaintiff's contention that the Onex Defendants have taken an overly broad view of privilege at the hearing on January 9. Therefore, this motion is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART to the January 9, 2008 hearing.

---

[1] The court refers particularly to page 21 of Plaintiff's Motion [312].

12

IV.   **Motion for Protective Order [324]**

On October 22, 2007, the Defendants filed a Motion for Protective Order, which the parties have fully briefed. Defendants' motion relates to 1,255 separate requests for admission ("RFAs"), set forth in 249 pages, which Plaintiff submitted to Defendants on October 15, 2007. These RFAs largely concern purported transfers from ABCO to its banks, actions taken by Magnatrax, and actions taken by the banks to which ABCO allegedly sent funds. The RFAs relate to documents produced by Magnatrax rather than Defendants. Specifically, the RFAs fall into sixteen categories: (1) admit ABCO issued certain checks or wire transfers payable to Southern Bank of Commerce; (2) admit certain checks issued by ABCO were cashed by ABCO's banks; (3) admit ABCO instructed the Southern Bank of Commerce to transmit the proceeds of certain checks by wiring funds; (4) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of a bank fee or wire transfer; (5) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "Tranche A Principal"; (6) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "Tranche A Interest"; (7) admit certain funds transferred by ABCO banks at ABCO's instruction comprised the payment of "Tranche B Principal"; (8) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "Tranche B Interest"; (9) admit certain funds transferred by ABCO's banks at ABCO's instruction

AO 72A
(Rev.8/82)

comprised the payment of "Credit Agreement Fees"; (10) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "Management Agreement Fees"; (11) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "Revolver Principal"; (12) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "Revolver Interest"; (13) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "Swing Line Principal"; (14) admit certain funds transferred by ABCO's banks at ABCO's instruction comprised the payment of "L/C Principal"; (15) admit certain funds transferred by ABCO's banks at ABCO's instruction were a payment of Vicwest Corporation to provide Vicwest Corporation with sufficient funds to pay interest on a "Senior Subordinated Note"; and (16) admit certain documents were "created by or at the direction of Magnatrax and produced by Magnatrax" in this case and are "true and correct copies of business records of Magnatrax." (D. Mot for P. Order, at 6-10).

Defendants contend that these requests are overly burdensome on the basis of sheer volume and that Magnatrax and CIBC witnesses, whose depositions Plaintiff has refused to schedule, are the appropriate parties to answer Plaintiff's questions. Defendants state that neither ABCO nor the relevant banks are within the control of the Onex Defendants. The Onex Defendants further opine that they are in no better position than Plaintiff and his counsel to review Magnatrax documents and that even if such a review were taken, the Onex

14

Defendants should not be required to admit or deny things of which they have no knowledge. Defendants request that the court enter a protective order striking Plaintiff's RFAs in their entirety.

Plaintiff avers that his RFAs serve the purposes of Fed. R. Civ. P. 36, expediting trials by removing essentially undisputed issues which would require time, trouble, and expense to prove. Plaintiff further argues that it has directed the Onex Defendants to the documents in their possession necessary to complete the RFAs, and thus the requests are not unduly burdensome.

The parties' dispute is essentially over the meaning of Fed. R. Civ. P. 36(a)(4) concerning when a party may assert lack of knowledge or information as a reason for failing to admit or deny a RAF. The Eleventh Circuit has not fully addressed the issue of RFAs and notably RFAs which require that a litigating party admit the actions of a non-litigating third party. However, case law has developed in this area, notably in the district courts of the Second Circuit. *See A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 254 (C.D. Cal. 2006) (holding that a party must make inquiry of a third party where there is identity of interest, such as both being parties to the litigation, a present or prior relationship of mutual concerns, or their active cooperation in litigation, and when there is no manifest or potential conflict between party and third party); *Concerned Citizens v. Belle Haven Club*, 223 F.R.D. 39, 44 (D. Conn. 2004) (noting that a reasonable inquiry may include approaching non-

parties to the litigation but not strangers); *Henry v. Champlain Enters.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003) (holding that responding party must "make reasonable inquiry and reasonable effort to secure information that is readily available from persons and documents within [its] relative control"); *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) (noting that a party may not refuse to answer a request for admission by claiming lack of personal knowledge if the information necessary to answer the request is readily available to it); *Hans v. Food and Nutrition Serv.*, 580 F. Supp. 1564, 1566 (D.N.J. 1984) (a party cannot claim insufficient information to admit or deny without specifying how it made a reasonable inquiry to obtain the information).

The court is particularly informed by *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.,* 174 F.R.D. 38 (S.D.N.Y. 1997).  This case involved allegedly misleading statements in, or omissions from, a registration statement filed with the Securities and Exchange Commission. *T. Rowe Price*, 174 F.R.D. at *40-41.  The plaintiff was the stand-by purchaser of a third-party bank's securities in an offering. *Id.*  The defendant acted as the dealer-manager with respect to the offering. *Id.*  The plaintiff submitted 124 separate RFAs, a substantial number of which related to the activities of the third-party bank, including their actions that might have led to alleged misrepresentations during the offering and the manner in which they handled their problem assets. *Id.*  The RFAs specifically asked the defendant to admit or deny actions or inactions taken by the third-party bank's

16

Asset Department and various officers. *Id.* At the time the RFAs were issued, the bank's

records were in the hands of the FDIC, which had become the bank's receiver. *Id.* Neither

party had examined these records. *Id.* The plaintiff based its RFAs on depositions it had

taken of the bank's employees. *Id.* The defendant responded to these RFAs by saying that

it had made a reasonable inquiry but that it was unable to admit or deny because (1) it lacked

firsthand knowledge of necessary matters at the bank; (2) the documents necessary to enable

it to admit or deny were in the custody of the FDIC and thus were not "readily obtainable"

under Rule 36; (3) it was not required to adopt the deposition testimony of former bank

employees hostile to the bank when it did not know what occurred at the bank and was not

in the position to assess their credibility; and (4) to the extent that the RFAs required it to

admit or deny what various deponents believed occurred or thought about what occurred,

it could not do so because only the deponents themselves would have that information. *Id.*

at *41-42.

The court agreed with the defendant's arguments. The court noted that Rule 36 is not

a discovery device, that its purpose is to reduce the costs of litigation by eliminating the

necessity of proving undisputed facts, to narrow the issues, and to speed up the resolution

of claims. *Id.* at *42. The court stated that under Rule 36 a party may not give lack of

information or knowledge as a reason for failure to admit or deny without making an

inquiry, but that what constitutes "reasonable inquiry" and "readily obtainable" are relative

matters that depend upon the facts of each case. *Id.* at *43. The court pragmatically explained the strong disincentive for courts to find an undue burden where a party could make the necessary inquiries to respond without extraordinary expense or effort. *Id.*

Having laid out the law, the court found that the defendant, while it might be obligated to inquire of third parties, along with its own agents and employees, was not obligated to subpoena third party records. *Id.* at *43-44. The court, in a footnote, indicated that it might feel differently if the defendant had access to the FDIC documents. *Id.* at *43 n.3. The court further found that the defendant was required to consider the relevant information of a non-hostile third party where it was available, including deposition testimony, but that the defendant was not compelled to be bound by a version of events presented by a third party witness, particularly where it had reason to believe that the witness had interest hostile or adverse to it or the third party and where there remained the possibility that other third party witnesses with relevant information and who were not adverse might choose to testify at trial. *Id.* at 43.

Here, the Onex Defendants have not responded to Plaintiff's RFAs using the mechanism of Rule 36. Instead they have requested that the court strike Plaintiff's RFAs. The nature of this litigation requires that the court authenticate a large number of documents and that Plaintiff prove the financial intricacies of a number of monetary transfers. The outcome of this case will not turn on whether a check was actually sent from point A to

point B and subsequently cashed. These matters are not in dispute; the ultimate outcome will depend upon the motivations and activities surrounding the movement of that check. However, that does not alter the fact that each point A to point B transfer must be proven, either through an admission or through the submission of documents and written or oral testimony. As such, the court finds that many of Plaintiff's RFAs are precisely of the nature that Rule 36 contemplates. It is true that Plaintiff's RFAs are particularly and unusually extensive. In fact, the court, in its research of this matter, has not uncovered any proceeding with such a volume of RFAs. The court finds, however, that a significant portion of this volume is the result of the particular circumstances of this matter and not the discovery tactics of Plaintiff. As such, the court will not make a blanket ruling that Defendants need not respond to any of Plaintiff's RFAs.

That leaves the court in the position of determining which RFAs are useful and which are not. The court could have Defendants present to the court, either via motion or oral argument, each RAF that it objects to and why in order to make its ruling, but this would be no less burdensome on Defendants than actually responding to the RFAs under Rule 36. Defendants' burden is further lessened by the fact that all 1,255 RFAs essentially fall into sixteen categories and will likely only generate sixteen types of objections. Rule 36 gives Defendants the opportunity to set forth in detail the reasons why it cannot truthfully admit or deny a RAF, or a set of RAFs. If Defendants choose to respond that they lack the

19

information or knowledge to admit or deny any group of RFAs, they must state that they have made a reasonable inquiry and that there is no information known or readily available which would allow them to respond. The Onex Defendants are in possession of all of the Magnatrax documents and do not have to subpoena them from a third party. Therefore, the court finds that these documents are "readily available," and reviewing them is part of a "reasonable inquiry." Therefore, the court will not allow the Onex Defendants to assert a lack of knowledge or information if the information necessary to admit or deny is in the Magnatrax documents. Likewise, the court will not allow the Onex Defendants to assert a lack of knowledge, merely because the action they are being asked to admit or deny was performed by a third party, such as ABCO, which is not a party to this litigation. The case law clearly indicates that a party need not have firsthand knowledge to admit or deny. *Garber* defines what kinds of third parties answering litigants may be required to inquire of, among them third parties with whom they are actively cooperating in the litigation and third parties with an identity of interest. The court is prepared to entertain the notion that ABCO and CIBC fall within this list or may be classified as agents of the Onex Defendants. If the Defendants want to assert that these are not third parties of which they must inquire, then Defendants must indicate in their Rule 36 response why these parties do not fall within the *Garber* list. The court therefore DENIES the Onex Defendants' Motion for Protective Order

and DIRECTS the Onex Defendants to respond, in the manner outlined by Rule 36 and the case law cited above, to the Plantiff's RFAs by the end of January 2008.

## V.     Motion to Compel [326] and Cross Motion for Protective Order [330]

On October 25, 2007, Defendants filed a "Motion to Compel Plaintiff to Produce a Witness to Testify in Response to the Rule 30(b)(6) Deposition Notice served upon the Magnatrax Litigation Trust," which the parties have fully briefed.  The Defendants propose to ask questions regarding (1) the Trust, including Mr. Kipperman's appointment as Trustee, (2) the factual basis for the Trustee's claims in this case, (3) communications between the Trust and the Creditors' Committee, (4) the solvency of the Debtors, (5) the value of ABCO, Republic and Jannock at the time of their acquisition, (6) the identity of all persons who could receive any recovery in this action, and the basis for each person receiving such recovery, (7) communications between the Trust and the Trust beneficiaries, and (8) the Trustee's responses to the Onex Defendants' discovery requests.  (D. Mot., at 4).  The Plaintiff filed his response opposing the motion and filed a Cross Motion for Protective Order on October 30, 2007.

Defendants served a Rule 30(b)(6) Notice on the Magnatrax Litigation Trust on June 21, 2007.  The parties engaged in numerous calls and negotiations.  On August 1, 2007, Plaintiff agreed to produce a witness in early September to discuss (a) the factual basis for Plaintiff's claims, (b) the amount of Plaintiff's alleged damage and method for calculating

21

such damages, and (c) the identity of all persons with knowledge of the facts relevant to Plaintiff's allegations. Plaintiff designated Steve Tobin as its witness on September 10 for a deposition to be held October 12, 2007. Plaintiff removed Mr. Tobin on October 2 and indicated to Defendants that he would not produce a 30(b)(6) witness.

Defendants contend that they have a right to a 30(b)(6) deposition and that they seek relevant information. They request the court compel Plaintiff to designate a witness and that the court award costs. Plaintiff contends that of the seven Rule 30(b)(6) topics that Defendants would like to discuss, four (1, 3, 6, and 7) are of questionable relevance, two (4 and 5) will be the subject of expert testimony to be provided at a later date, and one (2) has already been resolved through the Plaintiff's initial deposition and the Plaintiff's responses to Defendants' contention interrogatories.

This court is sympathetic to Plaintiff's arguments as it made clear in its April 23, 2007 hearing that the Trustee was unlikely to have any personal knowledge about the basis of the lawsuit and that contention interrogatories were a more appropriate method for the Defendants to ferret out the factual basis for Plaintiff's claims. The court did, however, indicate to the Defendants that if they did not receive complete answers to their contention interrogatories, the court would revisit the issue. Defendants indicate in their motion that Plaintiff's responses are inadequate. (Motion to Compel, at 15). However, Defendants do not tell the court exactly how Plaintiff's answers are inadequate. The court will not reach

22

the issue of a 30(b)(6) deposition until it determines the adequacy of Plaintiff's responses and supplemental responses to Defendants' contention interrogatories. Defendant is DIRECTED to submit its objections to Plaintiff's contention interrogatory responses in Rule 37.1 format prior to the hearing on January 9, 2008. As such, the court DENIES Defendants' motion to compel and GRANTS Plaintiff's cross motion for protective order.

## VI.    Conclusion

The court DENIES Plaintiff's Motion for Protective Order [285].

The court DENIES Plaintiff's Motion to Seal [305].

The court GRANTS IN PART, DENIES IN PART, and DEFERS IN PART until the January 8, 2008 hearing, Plaintiff's Motion to Compel [312].

The court DENIES Defendants' Motion for Protective Order [324].

The court DENIES Defendants' Motion to Compel [326].

The court GRANTS Plaintiff's Cross Motion for Protective Order [330].


**IT IS SO ORDERED** this 21st day of December 2007.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

23