Entry 5 - see entry 4.

Entry 6 - Please identify the counsel who provided the advice that is being reflected, and indicate when the advice was provided and who was present. With respect to the regulatory request, please provide the information requested in the "General Matter" section. Finally, please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information).

Entry 7 - With respect to the regulatory request, please provide the information requested in the "General Matter" section. Further, please explain how the email requests legal advice, when the direct recipients are not lawyers. Finally, please confirm that the redacted part of the email/ attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information).

Entry 8 - Please explain how an email between two non-lawyers can "request [] advice of counsel." Also, please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information).

Entry 9 - Please identify the persons who receive emails at "gs-microtraders." Please explain how Mr. Rusoff was asked legal advice when he is not a receipient of the email. Please explain why each of the receipients needed to be on this email purporting seeking legal advice.

Entry 10 - Please identify when Mr. Breckenride provided the legal advice, and who was present.

Entry 11 - Please identify who in the GS legal department provided the advice. Please identify who the gss-compliance-ny authors were of this email. Please identify who receives email at eq-gss-crc. Finally, please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions

with third parties, business operations information, or policies/procedures information).

Entry 12 - See entry 11. Further, please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged.

Entry 13 - See entry 11. Further, please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged.

Entry 14 - Please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged. With respect to the regulatory request, please provide the information requested in the "General Matter" section. Finally, please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information). Please provide the title of each of the receipients at the time they received the email and explain why they needed to know the information.

Entry 15 - Please see entry 14.

Entry 16 - Please identify when Mr. Breckenride provided the legal advice, and who was present.

Entry 17 - See entry 11. Further, please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged.

Entry 19 - Please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged. With respect to the regulatory request, please provide the information requested in the "General Matter" section. Please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information). Please provide the title of each of the receipients at the time they received the email and explain why

they needed to know the information.   Confirm that none of the redacted information was later provided to or disclosed to the regulatory agency, in whole or in part. Please state whether you were required to obtain the some or all of the information in the email/attachment by law, rule, regulation, subpoena or other agency regulation.

Entries 20 through 40 - See Entry 19

Entries 40 and 41 - Please explain how this email reflects the advice of counsel when counsel was not a direct recipient.  Please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information).  With respect to the regulatory request, please provide the information requested in the "General Matter" section.

Entries 43 through 82 - See Entry 19.

Entry 83 - Please explain how this reflects a request to counsel, when no counsel are listed on the email.  Please explain how an information request is privileged.

Entry 84 - Please see Entry 83.

Entry 85 - Please explain how this reflects information provided to counsel when no attorney is listed on the email.  Please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information).

Entry 86 - Please explain when Mr. Breckenridge provided the advice and who was present at the time.

Entry 87 - Please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged.  Please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures

information).  Please provide the title of each of the receipients at the time they received the email and explain why they needed to know the information.   Please explain whether this request was done pursuant to normal compliance monitoring policies and practices.

Entry 88 - Please explain when Mr. Schell provided the advice and who was present at the time.

Entry 89 - Please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged.  Please state whether you were required to obtain the some or all of the information in the email/attachment by law, rule, regulation, subpoena or other agency regulation.

Entry 90 - Please explain when Mr. Breckenridge provided the advice and who was present at the time.

Entry 91 - Please see Entry 19.

Entry 92 - Please see Entry 19.

Entry 93 - Please identify which counsel's advice is reflected in the redacted portion, and who was present when the advice was given.  With respect to the regulatory request, please provide the information requested in the "General Matter" section.  Please confirm that the redacted part of the email/ attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information).  Please provide the title of each of the receipients at the time they received the email and explain why they needed to know the information.   Confirm that none of the redacted information was later provided to or disclosed to the regulatory agency, in whole or in part. Please state whether you were required to obtain the some or all of the information in the email/attachment by law, rule, regulation, subpoena or other agency regulation.  Please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged.

Entries 94 and 95 - Please see Entry 19.

Entry 96 - Please see Entry 93.

Entries 97 and 98 - Please see Entry 19.

Entries 99 and 100 - Please see Entry 93.

Entries 101 through 115 - Please see Entry 19.

Entry 116 - Please see Entry 93

Entries 117 through 183 - Please see Entry 19.

Entry 186 - Please see Entry 19

Entry 187 - Please see Entry 93.

Entries 188 and 189 - Please see Entry 19

Entry 190 - Please see Entry 93.

Entry 191 - Please see Entry 19.

Entry 192 - Please see Entry 93.

Entries 193 through 197 - Please see Entry 19.

Entry 199 - Please see Entry 19.

Entry 200 - Please explain how this reflects a request of advice from counsel, when counsel is not a direct recipient.  Please confirm that the redacted part of the email/attachment contains nothing but legal advice (i.e., there is no trading data, comments relating to discussions with third parties, business operations information, or policies/procedures information).

Entries 201 through 205 - Please see Entry 19

Entry 206 - Please see Entry 200.

Thank you for your cooperation,

Steven

| From: | Steven J. Rosenwasser |
|---|---|
| To: | "Eckles, Paul M"; |
| | "Horvath, Jr., Richard S"; |
| cc: | Elizabeth G. Eager; Nicole G. Iannarone; |
| Subject: | Privilege Log Conferral |
| Date: | Tuesday, April 20, 2010 10:13:13 AM |

Paul and Richard,

Good morning.  I am writing as a follow up to our recent conversations regarding the Defendants' privilege logs.  Per the Defendants' request, rather than seeking a Special Master at this time, we are willing to endeavor to try and narrow the documents at issue.   To that end, below please find our follow up conferral on Merrill Lynch's original and supplemental privilege logs.  The number on the left refers to the privilege log entry, and the description thereafter is our conferral.

General Matter

In many instances, you refer to a NASD, FINRA, SEC or other regulatory inquiry or investigation.  In order to determine whether the privilege applies to any such inquiries, we need the following information for each entry referring to an inquiry: (a) name of agency involved; (b) dates of investigation/inquiry; (c) stocks involved in inquiry; (d) matter being investigated and (e) whether any of the information in the email was disclosed to the agency.

Original Privilege Log

1.        The description in the "subject matter" column is insufficient to permit us to ascertain whether the privilege was properly invoked.  Please provide additional information.   Among other things please indicate: (a) why each of the recipients needed to know the information; (b) whether the email contains any information that is not privileged, such as business advice or trading data; (c) the name(s) of each Merrill Lynch affiliate or subsidiary that received this email through one of its employees or representatives (e.g., Broadcort); (d) whether any of the information contained within the email was ever disseminated to a third party, including the SEC, FINRA, NYSE or NASDAQ; (e) whether any of the information in the email was ever used in

training employees; (f) whether, as part of Merrill Lynch's internal rules, regulations or procedures, it evaluates compliance with Reg. SHO; (g) whether litigation that was anticipated at the time this communication was sent and, if so, what litigation.

In addition, please provide information on the attachments, including all recipients, a description of their subject matter and your bases for contending they are privileged.   Also, is it your contention that all of the information on the attachments is privileged?

2.      The description in the "subject matter" column is insufficient to permit us to ascertain whether the privilege was properly invoked.  Please provide additional information.    In particular, please describe why Merrill Lynch did not have to send this communication as part of its normal, routine business operations.  Further, please provide the information requested for entry number 1.

3.      The description in the "subject matter" column is insufficient to permit us to ascertain whether the privilege was properly invoked.  Please provide additional information.  Among other things please indicate: (a) whether any of the information contained in this email OR the attachment was ever sent to a regulatory agency or other third party; (b) the potential Regulation SHO inquiry (including the stock and agency involved); (c) whether these communications included any business advice or trading data.

4.      See entry 3.

5.      You claim that this email is between client and attorneys, but attorneys are only listed as a cc.  Please explain why copying a single attorney in  a correspondence within over 10 people makes this email privileged.  Also please indicate: (a) why each of the recipients needed to know the information; (b) whether the email contains any information that is not privileged, such as business advice or trading data; (c) whether any of the information contained within the email was ever disseminated to a third party, including the SEC, FINRA, NYSE or NASDAQ; (d) whether any of the information in the email was ever used in training employees.

11.     You state that this document involves an attorney, but no counsel

appears on the privilege log.

12.     Please confirm that the <u>entire</u> email is privileged, as opposed to only portions thereof.  Further, please explain whether each of the recipients needed to know the alleged legal advice that was conveyed, and the name of the attorney(s) who initially provided the legal advice and when.  Further, please explain why the attachments are privileged.

13.     Please explain why information relating to fee structures and borrow rates constitutes legal, as opposed to business advice.   Further, please explain why each of the recipients to the email needed to know legal advice relating to those issues.   Finally, please explain what the attachments are, who received them and why they are privileged.

14.     Please provide more information to allow us to ascertain whether a privilege applies.  Among other things, please explain: (a) whether <u>all</u> of the information in this email constitutes legal advice, as opposed to including some business or trade information; (b) has any of the information or positions provided in this email ever been disclosed outside of the firm; e.g., to any regulatory agency; (c) please explain what the attachments are, who received them and why they are privileged.

15.     See entry 14.

16.     Please provide the following information: (a) what attorney(s) provided the initial legal advice and when; (b) is the "legal" advice in this email in any way different than what was indicated by counsel, and, if so, how; (c) why did each of the people receiving this email need to have this legal advice; (d) s any business or policy information contained in this email; (d) please explain what the attachments are, who received them and why they are privileged.

17 through 20.   See entry 16.

21.     Please: (a) explain how one non-attorney can send another non-attorney information "necessary to provide legal advice"; (b) identify the attorney(s) from whom the legal advice was requested and when; (c) identify the Reg. SHO investigation (including date, agency and stock(s) involved);

(d) state whether all of the information in this email privileged, or is there business or policy/procedure information as well; (e) answer whether there is any trading, loan, borrow or fail data in this email?; (f) explain whether the information in this email was provided, in any way, while fulfilling normal/routine compliance procedures or processes?; (g) explain what the attachments are, who received them and why they are privileged.

22.     See entry 21.

23.     See entry 21.

24.     Please: (a) state whether the entire email contains legal advice; (b) state whether the meeting to discuss compliance with Reg. SHO was done in the course of routine compliance or in anticipation of litigation; (c) state whether the matters discussed were company policies and procedures; (d) identify who provided the initial legal advice and when; (e) was the information conveyed in this email distributed outside of the receipients and, if so, to whom?; and (f) please explain what the attachments are, who received them and why they are privileged.

25.     See entry 24.

26.     See entry 21.

27.     Was the information requested part of the firm's routine compliance procedures? If not, please identify the anticipated litigation.

28.     Please state who initially provided the legal advice that is being conveyed and when.  Also, is the entire email privileged? Is there any business advice? Does this email pertain to the development or implementation of firm policies and procedures?

29.     Please state who initially provided the legal advice that is being conveyed and when.  Please state why each recipient needed to know the legal advice.  Is the legal advice conveyed part of the firm's policies and procedures? Was it conveyed to only the recipients of this emai or on a broader basis? If broader, who received it.  Also, please explain what the attachments are, who received them and why they are privileged.

30.      See entry 21.

31.      See entry 24.

33.      Does the email or its attachments contain any non-privileged information, including underlying facts or trading data.  Please explain what the attachments are, who received them and why they are privileged. Further, please explain the NASD inquiry, including the stock involved and the issues involved.  Was any of the information in the email or attachment told or sent to NASD or any other agency?

34.      See entry 33.

35.      See entry 33.  Also, please identify the anticipated litigation, including who you anticipated bringing suit, when you anticipated the suit and the nature of the suit.

36.      Please identify the persons who make up "Reg. SHO Buys Ins." Was the information provided in response to any inquiry or was it part of ordinary monitoring/compliance? See also entry 24.

37.      Please state whether all of the information in this email is privileged, or whether it also includes business advice, communications with third parties or trading data.  Further, please identify the Reg. SHO inquiry, including who  made the inquiry, when the inquiry was made and what stock (s) it involved.  Please confirm that none of the information contained in the email was sent or otherwise disclosed to the regulatory agency or other party making the inquiry.  Please explain what the attachments are, who received them and why they are privileged.

38.      See entry 37.

39.      See entry 37.

40.      See entry 37.

41.      See entry 37.

44.     Was any of the information contained in this email non-legal advice, such as business or trading data.  Please explain what the attachments are, who received them and why they are privileged.

46.     Please state who initially provided the legal advice that is being conveyed and when.  Please state why each recipient needed to know the legal advice.  Please describe the FINRA filing you are referring to.

47.     Is any of the information contained within the email business information or trading data? Please describe the regulatory filing, including which agency and the type of filing.  Please explain what the attachments are, who received them and why they are privileged.

48.     Is any of the information contained within the email business information or trading data? Please describe the SEC inquiry, including the subject matter and stock(s) involved.  Was any of the information contained in the email or attachment given to the SEC at any point in time? Please explain what the attachments are, who received them and why they are privileged.

49.     Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data? Please describe the SEC inquiry, including the subject matter and stock(s) involved.  Was any of the information contained in the email or attachment given to the SEC at any point in time? Please explain what the attachments are, who received them and why they are privileged.

50 through 52.   See entry 48.

53 through 55.   See entry 49.

56, 57.   Please identify the SEC inquiry by number, stock(s) and basis of inquiry.  Please confirm that none of the information contained in the emails or attachments was ever provided to the SEC.  Please explain what the attachments are, who received them and why they are privileged.

58.     Please state which attorney(s) initially provided legal advice and

when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data? Please describe the SEC inquiry, including the subject matter and stock(s) involved.  Was any of the information contained in the email or attachment given to the SEC at any point in time? Please explain what the attachments are, who received them and why they are privileged.

59.        See entry 59.  Also, please describe the litigation that was anticipated, when you anticipated litigation and your bases for claiming that litigation was anticipated.

62.        Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Further, please identify the SEC and other regulatory inquiries referred to.  .  Also, please describe the litigation that was anticipated, when you anticipated litigation and your bases for claiming that litigation was anticipated.  Please explain what the attachments are, who received them and why they are privileged.

63 through 70.   Please explain what SEC meeting is referred to, including who was at the meeting, when it took place and reason for meeting.  Further, please confirm that none of the information contained in the email was disclosed or provided to the SEC.  Also, please confirm that the email contains only legal advice, and does not have business information, trading data or discussions of what took place in SEC meeting.

71 through 73 - Please identify the litigation, and confirm that the information in these emails and attachments were never disclosed outside of the firm.

74 through 77.  Please confirm that these emails and attachments contain only legal advice, and not business information or trading data.  Please explain what the attachments are, who received them and why they are privileged.

78.        Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data? Please identify the regulatory inquiry by agency, stock (s) involved, issues and inquiry number.  Please confirm that none of the information contained in the email or attachment was disclosed to the

agency.  Please explain what the attachments are, who received them and why they are privileged.

80 through 81.  Please confirm that these emails and attachments contain only legal advice, and not business information or trading data.  Please explain what the attachments are, who received them and why they are privileged.

83.     Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Further, please identify the inquiry, including agency, inquiry number, stock(s) involved and issues involved.  Please explain what the attachments are, who received them and why they are privileged.  Please explain why all the recipients needed to know the legal advice.

84.     Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data? Further, please identify the inquiry, including agency, inquiry number, stock(s) involved and issues involved.  Please explain what the attachments are, who received them and why they are privileged.  Please explain why all the recipients needed to know the legal advice.

86.     See entry 84.

87 through 96.  Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Please explain what the attachments are, who received them and why they are privileged.

97 through 100. See entry 84.

101 through 104.       Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Please explain what the attachments are, who received them and why they are privileged.

108.     Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Please explain what the attachments are, who received them and why they are privileged.

109.    Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Please explain what the attachments are, who received them and why they are privileged.   Further, please identify the inquiry, including agency, inquiry number, stock(s) involved and issues involved.  Finally, confirm that none of the information in the emails or attachments was disclosed to the SEC.

110.    Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Please explain what the attachments are, who received them and why they are privileged.

111.    See entry 109.

112.    See entry 109.

113.    Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data? Please explain what the attachments are, who received them and why they are privileged.

114.    Please state whether this email was generated as part of normal compliance and business operations.  If not, please identify why the document was created.  Please explain why the document was "necessary to provide legal advice."  Please explain what the attachments are, who received them and why they are privileged.

115.    Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data or a discussion of the business project?  Please explain why each of the recipients needed to know the legal advice.  Please explain what the attachments are, who received them and why they are privileged.

116 through 119 -  Please state whether this email was generated as part of normal compliance and business operations.  If not, please identify why the document was created.   Please state why each of the recipients needed to know the legal advice.  Please confirm that the email and attachments contain only legal advice, and no business or trading information.   Please

confirm that the information provided was never conveyed on a broader scale. Please explain what the attachments are, who received them and why they are privileged.

125.    Please explain why the information itself is privileged (i.e., the non-legal advice). Please state whether the information requested was part of normal compliance and business operations. If it was created for a unique purpose, please explain what that was. Please explain what the attachments are, who received them and why they are privileged.

126.    See entry 125.

128.    Please explain how the "client" conveyed legal advice, and from who the client obtained the advice and when. Please explain why the substantive information (as opposed the legal advice) is privileged. Please state whether the information requested was part of normal compliance and business operations. If it was created for a unique purpose, please explain what that was. Please explain what the attachments are, who received them and why they are privileged.

129.·    See entry 128.

130.    Please state which attorney(s) initially provided legal advice and when. Is any of the information in this email non-legal advice; e.g., does it involve trading data? Please explain what the attachments are, who received them and why they are privileged. Please state whether the information requested was part of normal compliance and business operations. If it was created for a unique purpose, please explain what that was.

131.    See entry 130.

132.    Please identify the FINRA inquiry by inquiry number, stock(s) involved and substance of inquiry. Please confirm that none of the information in the emails and attachments were disclosed to FINRA. Please explain what the attachments are, who received them and why they are privileged.

133.    Please explain why the underlying information provided is

privileged.   Please identify the NASD inquiry by inquiry number, stock(s) involved and substance of inquiry.  Please confirm that none of the information in the emails and attachments were disclosed to NASD.  Please explain what the attachments are, who received them and why they are privileged.

134.   See entry 133.

135.   Please explain why the information itself is privileged (i.e., the non-legal advice).  Please state whether the information requested was part of normal compliance and business operations.  If it was created for a unique purpose, please explain what that was.  Please explain what the attachments are, who received them and why they are privileged.

136 and 137.   Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e. g., does it involve trading data or a discussion of business matters?  Please explain what the attachments are, who received them and why they are privileged.   Please explain how this differs from routine compliance matters.

138 and 139.   Please identify the anticipated litigation, including who you anticipated bringing litigation, when and why.

140.   Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data or a discussion of business matters?  Please identify the SEC inquiry by inquiry number, stock(s) involved and substance of inquiry.  Please confirm that none of the information in the emails and attachments was disclosed to SEC.   Please explain what the attachments are, who received them and why they are privileged.

141.   Please explain why the information provided, which are just facts, is privileged.  Please identify the NASD inquiry by inquiry number, stock(s) involved and substance of inquiry.  Please confirm that none of the information in the emails and attachments were disclosed to NASD.  Please explain what the attachments are, who received them and why they are privileged.

142.    Please state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data or a discussion of business matters?  Please identify the FINRA/CBOE inquiry by inquiry number, stock(s) involved and substance of inquiry.  Please confirm that none of the information in the emails and attachments was disclosed to FINRA/CBOE.    Please explain what the attachments are, who received them and why they are privileged.

143.    Please explain why the information provided, which are just facts, is privileged.  Please identify the regulatory inquiries by agency, inquiry number, date, stock(s) involved and substance of inquiry.  Please confirm that none of the information in the email or attachments were disclosed to any regulatory agency.  Please explain what the attachments are, who received them and why they are privileged.

144.    Please explain why the information provided, which are just facts, is privileged.  Please identify the regulatory inquiries by agency, inquiry number, date, stock(s) involved and substance of inquiry.  Please confirm that none of the information in the email or attachments were disclosed to any regulatory agency.  Please explain what the attachments are, who received them and why they are privileged.

145.    Please explain why the information provided, which are just facts, is privileged.  Please identify the regulatory inquiries by agency, inquiry number, date, stock(s) involved and substance of inquiry.  Please confirm that none of the information in the email or attachments were disclosed to any regulatory agency.  Please explain what the attachments are, who received them and why they are privileged.  Please explain why you contend responding to a Blue Sheet request is privileged, when you have previously contended they are routine, non-legal and administrative matters.

146.    See entry 145.

148.    See entry 145.

149.    Please explain why the information provided, which are just facts, is privileged.  Please identify the SEC inquiry by inquiry number, stock(s) involved, date of inquiry and substance of inquiry.  Please confirm that none

of the information in the emails and attachments were disclosed to SEC. Please explain what the attachments are, who received them and why they are privileged.

150.    Please describe what you mean by error accounts. state which attorney(s) initially provided legal advice and when.  Is any of the information in this email non-legal advice; e.g., does it involve trading data or a discussion of business matters?  Please explain what the attachments are, who received them and why they are privileged.

153.    Please explain why the information provided, which are just facts, is privileged.  Please state whether the information requested was part of normal compliance and business operations.  If it was created for a unique purpose, please explain what that was.  Please explain what the attachments are, who received them and why they are privileged.

Supplemental Privilege Log

1.    Please identify the attorney(s) who initially provided the legal advice and when it was conveyed.   Please state whether the conveying of legal advice was done pursuant to routine compliance or monitoring.   Please confirm that the email contains only legal advice, and no business information or trading data.

2.    See entry 1.

3.    Please state why the information itself is privileged; that is, why information constitutes legal advice.  Please identify to whom the legal advice was given.  Please identify the regulatory inquiry, including the agency involved, stock(s) involved and date of inquiry.  Please confirm that none of the information contained in the email or attachment was disclosed to the agency.  Please explain what the attachments are, who received them and why they are privileged.   Please confirm that the email contains only legal advice, and no business information or trading data.

4.    See entry 3.

5.    See entry 3.

6.      Please explain what the attachments are, who received them and why they are privileged.   Please confirm that the email contains only legal advice, and no business information or trading data.

7.      See entry 6.

20.     Please confirm that the email contains only legal advice, and no business information or trading data.  Please explain why each of the receipients needed to know the legal advice.

21.     Please state why the information itself is privileged; that is, why information constitutes legal advice.  Or, please confirm that the email contains only legal advice, and no business information or trading data.

22.     Please state why the information itself is privileged; that is, why information constitutes legal advice.  Or, please confirm that the email contains only legal advice, and no business information or trading data. Please explain what the attachments are, who received them and why they are privileged.

23.     Please identify the SEC investigation by date, investigation number, stock(s) involved and substance of investigation.  Please confirm that none of the information contained in the email was disclosed to the SEC.  Please explain what the attachments are, who received them and why they are privileged.

28.     Please identify the NASD investigation by date, investigation number, stock(s) involved and substance of investigation.  Please confirm that none of the information contained in the email was disclosed to the NASD.  Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.

31.     Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.

32.     Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.

33.     See entry 32.

34 through 39.          Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.

42.     Please identify the FINRA investigation by date, investigation number, stock(s) involved and substance of investigation.  Please confirm that none of the information contained in the email was disclosed to the FIRNA.  Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.

45.     Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.  Please explain how this email differs from routine and normal compliance matters.

48 through 51.          Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.

54.     Please explain what the attachments are, who received them and why they are privileged.  Please confirm that the email contains only legal advice, and no business information or trading data.

We appreciate your cooperation,

Steven

| From: | Steven J. Rosenwasser |
|---|---|
| To: | "Wise, Jr., Robert F.";  |
| | "Aoyagi, Melissa T.";  |
| cc: | Nicole G. Iannarone; Elizabeth G. Eager;  |
| Subject: | Privilege Log Conferral |
| Date: | Tuesday, April 20, 2010 12:52:08 PM |

Bob and Melissa,

Good morning.  I am writing as a follow up to our recent conversations regarding the Defendants' privilege logs.  Per the Defendants' request, rather than seeking a Special Master at this time, we are willing to endeavor to try and narrow the documents at issue.   To that end, below please find our follow up conferral on Morgan Stanley's privilege log.  The number on the left refers to the privilege log entry, and the description thereafter is our conferral.

General Matter

In many instances, you refer to a NASD, FINRA, SEC or other regulatory inquiry or investigation.  In order to determine whether the privilege applies to any such inquiries, we need the following information for each entry referring to an inquiry: (a) name of agency involved; (b) dates of investigation/inquiry; (c) stocks involved in inquiry; (d) subject matter being investigated and (e) whether any of the information in the email or attachment was disclosed to the agency at any point in time.

Individual Entries:

Entry 1 - With respect to the regulatory matter, please provide the information requested in the "General Matter" section above.  Further, can you please explain why the underlying information (e.g., trade data, business information, conveying of communications with third parties) is privileged?  Also, please indicate whether you contend that all of the email and the attachment contains legal advice and is privileged (i.e., is it your position that this email includes no business information, trade data or other non-legal matters).  Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged.  As to your claim of work product, please state: (a) when you first anticipated

litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation. Finally, please identify the titles of each of the receipients at the time they sent/received the email.

Entry 2 - Please see entry 1.

Entry 3 - Please see entry 1.

Entry 4 - Please see entry 1.

Entry 5 - Please see entry 1.

Entry 6 - Please see entry 1.

Entry 7 - Please see entry 1.

Entry 8 - Please see entry 1.

Entry 9 - Please see entry 1.

Entry 10 - Please see entry 1.

Entry 11 - Please see entry 1.

Entry 12 - Please see entry 1.

Entry 13 - Please see entry 1.

Entry 14 - Please see entry 1.

Entry 15 - Please explain why the redacted material constitutes privileged information, as opposed to information provided in the normal course of business or in accordance with the company's compliance policies and procedures. Also, please indicate why Mr. Schiavo needed to know the information, and when the legal advice was first conveyed by counsel.

Entry 16 - Please indicate whether all of this document, including the

attachment, contains legal advice. If not, it should be redacted to conceal only the privileged information. Further, please identify, by title at the time, each of the receipients of the email and explain why they needed to know the alleged legal advice. Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged.

Entry 18 - See entry 16.

Entry 19 - Please see entry 1.

Entry 20 - Can you please explain why the underlying information (e.g., trade data, business information, conveying of communications with third parties) is privileged? Also, please indicate whether you contend that all of the email and the attachment contains legal advice and is privileged. Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged. As to your claim of work product, please state: (a) when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 21 - Please see entry 21.

Entry 22 - Please state whether all of the information contained in this email is legal advice. Also, please indicate whether any of the information contained within this email was at any time disclosed to the SEC, Dept. of Treasury or any other third party. Similarly, state whether any part of this communication reveals or discusses communications with any third party. Further, is it your contention that this email contains no business advice or business-related information, but only legal matters? Also, please state to whom the legal advice was provided and for what purpose? Finally, have all the receipients of the email (and the entire thread) been listed?

Entry 23 - Please explain why the first email in the time period (from Kevin O'Conner at 11:36am) was redacted. As for the remaining entries, please explain how they are privileged communications seeking advice of counsel when counsel never provides a response. Rather, all of the exchanges are between lawyers. The fact that an attorney was cc'ed on the email is

insufficient grounds, standing alone, to claim privilege. Further, please confirm that the emails do not contain any trading data or business information, as opposed to legal advice. Also, were these emails sent as part of routine compliance matters or for some other reason. If some other reason, please state what it is.

Entry 24 - Please see entry 1.

Entry 25 - Please see entry 1.

Entry 26 - Please see entry 1.

Entry 27 - Please see entry 1.

Entry 28 - Please see entry 1.

Entry 29 - Please see entry 1.

Entry 30 - Please see entry 1.

Entry 31 - Please see entry 1.

Entry 32 - Please see entry 1.

Entry 33 - Please see entry 1.

Entry 34 - Please see entry 1.

Entry 35 - Please see entry 1.

Entry 36 - Please see entry 1.

Entry 37 - Please see entry 1.

We appreciate your cooperation.

Steven

| From: | Steven J. Rosenwasser |
|---|---|
| To: | "Jeffrey Landis"; "Andrew Clubok"; |
| cc: | Nicole G. Iannarone; |
| | Elizabeth G. Eager; |
| Subject: | Privilege Log Conferral |
| Date: | Wednesday, April 21, 2010 8:14:36 AM |

Andy and Jeff,

Good morning. I am writing as a follow up to our recent conversations regarding the Defendants' privilege logs. Per the Defendants' request, rather than seeking a Special Master at this time, we are willing to endeavor to try and narrow the documents at issue. To that end, below please find our follow up conferral on UBS's privilege log. The number on the left refers to the privilege log entry, and the description thereafter is our conferral.

General Matter

In many instances, you refer to a NASD, FINRA, SEC or other regulatory inquiry or investigation. In order to determine whether the privilege applies to any such inquiries, we need the following information for each entry referring to an inquiry: (a) name of agency involved; (b) dates of investigation/inquiry; (c) stocks involved in inquiry; (d) subject matter being investigated and (e) whether any of the information in the email or attachment was disclosed to the agency at any point in time.

Individual Entries

Entry 1 - Your description of the document describes this as an email chain, yet you only list one person. Please identify all persons on the email chain. Further, you reference an attachment stating that it is "providing information to counsel." Please state who prepared the attachment, identify the type of information it contained and name all persons who reviewed the information on the attachment. Further, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Also, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. If not, please explain why the non-legal advice is privileged. Finally, with respect to your claim of work product, please: (a) state when

you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 2 - Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged. Also, please confirm that the email and the attachments contain nothing but legal advice (i.e., there is no trading data, references to comments by third parties, general business information or business advice).

Entry 3 -  Please identify the amendment you are referring to, including whether it had passed as of the date of the email.   If the amendment had not passed, please explain how this email constitutes legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Also, please confirm that the email and the attachments contain nothing but legal advice (i.e., there is no trading data, references to comments by third parties, general business information or business advice).

Entry 4 - Please see entry 3.

Entry 5 - Please indicate when S. Anderson gave the purported legal advice, and who was present when it was given (or received the earlier email containing that advice).  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Also, please confirm that the email and the attachments contain nothing but legal advice (i.e., there is no trading data, references to comments by third parties, general business information or business advice).

Entry 6 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.

Entry 7 - Please see entry 6.

Entries 8 through 13 - Please explain the context of the "representation" relating to stock lending.  Was there pending litigation or a regulatory inquiry? If so, please identify it.  Further, please explain why the

"information" provided (particularly facts such as trading data, communications with third parties, business matters) are privileged. Or, alternatively, confirm that the email and attachments contain only legal advice and no underlying facts. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 14 - You reference an attachment stating that it is "providing information to counsel." Please state who prepared the attachment, identify the type of information it contained and name all persons who reviewed the information on the attachment. Further, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Also, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. If not, please explain why the non-legal advice is privileged. Finally, with respect to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 15 - Please identify all persons who receive email at "DL-TPRA-Stamford." With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason. Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged. Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 16 - See Entry 15.

Entry 17 - See Entry 15.

Entry 18 - With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged. Further, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business

operations information) are privileged.  Also, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  If not, please explain why the non-legal advice is privileged. Please provide the titles of each person who received the email (the title should be at the time they received the email).  If the title is not available, please describe the person's position so we can determine whether they needed to know the purported legal advice.

Entry 19 - See Entry 18.

Entry 20 - Please see Entry 14.

Entry 21 - With respect to the regulatory inquiry, please provide the information requested under "General Matter" above.  Further, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Also, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  If not, please explain why the non-legal advice is privileged.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.   Please confirm that none of the information in the email or attachment was disclosed to the regulatory agency or any other third party at any time.  As to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.  Finally, please identify the title (or, if not available, general job duties) of each of the receipients so we can ascertain whether they needed to know the contents of the email.

Entry 22 - Please explain how an email between two attorneys is entirely privileged.  Is it your position that Mr. Moskowitz's statements exactly mirror counsel's statements and that his email contains none of his own opinions, impressions or thoughts? Also, does the email and attachment contain no underlying facts.  As to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.   Finally, please indicate when Mr. Anders and Edwards provided the legal advice that you claim is privileged, and who was

present when that advice was given (or cc'ed on the email in which it was given).

Entry 25 - Please see entry 21.

Entry 28 - Please see entry 21.

Entry 29 - Please see entry 14.

Entry 30 - Please see entry 14.

Entry 31 - Please see entry 21.

Entry 32 - Please see entry 21.

Entry 34 - Please explain how an email from Ed Buscemi to Citera contains mental impressions of Citera? Further, you indicate that this email provides information to J. Cohn, but he is not listed as a recipient.  Further, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Also, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  Please identify the amendment you are referring to, including whether it had passed as of the date of the email.   If the amendment had not passed, please explain how this email constitutes legal advice.

Entry 36 - Please see entry 21.  Also, please identify all receipients of email at "SH-ETD-DCG-NA", including their titles and why they needed to know the information.

Entry 37 - Please see entry 21.

Entry 38 - Please see entry 21.

Entry 39 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.   Please explain whether the audit was a routine audit or for some other reason.  With respect to the

attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 40 - Please see entry 14.

Entry 41 - Please see entry 21.

Entry 42 - You reference an attachment stating that it is "providing information to counsel." Please state who prepared the attachment, identify the type of information it contained and name all persons who reviewed the information on the attachment. Further, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Also, please indicate whether it is UBS's position that <u>all</u> of the email and the attachment contains legal advice (i.e., there is no trade data, references to communications with third parties, business advice or business matters). If not, please explain why the non-legal advice is privileged.

Entry 43 - Please see entry 21.

Entry 44 - Please see entry 42. Also, you reference an email chain - are all participants in the chain listed?

Entry 45 - Please see entry 42.

Entry 46 - Please see entry 42.

Entry 47 - Please see entry 21.

Entry 48 - Please explain how this email and attachment provide information to an attorney, when no attorey is listed on the log. Further, with respect to the purported advice from Pearle, please identify when it was given and who was present when it was given. Also, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that <u>all</u> of the email and the attachment contains legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and

why it is privileged.

Entry 49 - Please see entry 21.

Entry 50 - Please see entry 21.

Entry 51 - Please see entry 21.

Entry 52 - Please see entry 34.

Entry 53 - Please see entry 3.

Entry 54 - Please see entry 21.

Entry 55 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 56 - Please explain how this email provides information to Romaine when he is not listed as a recipient.  Please see entry 21.

Entry 57 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 58 - Please see entry 57.

Entry 60 - Please see entry 21.

Entry 61 - Please explain why the underlying information and facts (e.g.,

trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 62 - Please see entry 21.

Entry 63 - Please see entry 21.

Entry 65 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  As to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 66 - Please see entry 21.

Entry 67 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please identify who requested that the information be prepared.

Entry 68 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is

privileged.

Entry 69 - Please explain how requested the legal advice and for what purpose.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.

Entry 70 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 71 - Please see entry 21.

Entry 72 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged

Entry 73 - Please explain how this email and attachment were providing information to Cohn and Munro when they are not listed as recipients.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.   Please explain in what capacity Cohn and Munro were providing representation (e. g., in preparation for litigation, routine compliance, regulatory inquiry).

Entry 75 - Please see entry 21. Further, please explain how this email requests legal advice when the direct receipients (i.e., not the cc's) are not attorneys.

Entry 76 - Please explain how this email and attachment are meant to provide information to Aluise, when Aluise is not listed as a recipient of the email or attachment. Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 77 -  Please explain how this email and attachment are meant to provide information to counsel, when counsel is not listed as a recipient of the email or attachment.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 79 - Please explain how the email chain and attachment provides information to Wendell, when Wendell is not listed on the chain. Further, please state whether it is UBS's position that all of the information on each of the emails and attachments contains legal advice (i.e., there is no trade data, business information or referrals to outside communications).  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 80 - Please indicate when Pearle provided the legal advice, and who was present or received the advice at that time. Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. With respect to the attachment, please

identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 81 - Please see entry 80.

Entry 82 - Please see entry 21.

Entry 83 - Please see entry 21.

Entry 85 - Please see entry 80.

Entry 86 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please explain how the email was for the purpose of providing Citera information, when he is not listed as a recipient.

Entry 87 - Please identify all persons who receive email at "DL-RCG-email-list."  Please provide their titles (or, if not available, job duties) and explain why they needed to know the information in the email and attachments.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 88 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  With respect to the "representation," please indicate whether it was particularly with respect to a potential lawsuit, regulatory inquiry or

routine compliance.

Entry 89 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 90 - Please identify all persons who receive email at "DL-RCG-email-list."  Please provide their titles (or, if not available, job duties) and explain why they needed to know the information in the email and attachments.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 91 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 92 -  Please see entry 21.  Also, please identify all persons who receive email at "DL-SKE-GSD-NA."  Please provide their titles (or, if not available, job duties) and explain why they needed to know the information in the email and attachments.

Entry 93 - Please explain what you mean by "representation regarding securities regulations."  Was there a potential or actual regulatory inquiry? If so, please see entry 21.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate

whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  As to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 94 - Please see entry 21.

Entry 95 - Please identify all persons who receive email at "DL-RCG-email-list."  Please provide their titles (or, if not available, job duties) and explain why they needed to know the information in the email and attachments. Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please explain what you mean by "representation regarding the booking or execution of trades." Was there a potential or actual regulatory inquiry? If so, please see entry 21.

Entry 96 - Please see entry 21.

Entry 97 - Please see entry 21.

Entry 100 - Please identify the amendment you are referring to, including whether it had passed as of the date of the email.   If the amendment had not passed, please explain how this email constitutes legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Also, please confirm that the email and the attachments contain nothing but legal advice (i.e., there is no trading data, references to comments by third parties, general business information or business advice).
Please explain what you mean by "representation regarding amendment to securities regulation."  What was counsel's role?

Entry 104 - Please see entry 21.

Entries 105 through 115 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 116 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged. As to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 118 - Please identify the amendment you are referring to, including whether it had passed as of the date of the email. If the amendment had not passed, please explain how this email constitutes legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged. Also, please confirm that the email and the attachments contain nothing but legal advice (i.e., there is no trading data, references to comments by third parties, general business information or business advice).
Please explain what you mean by "representation regarding amendment to securities regulation." What was counsel's role?

Entry 121 - Please see entry 21.

Entry 122 - Please see entry 21.

Entry 123 - Please identify the amendment you are referring to, including whether it had passed as of the date of the email. If the amendment had not

passed, please explain how this email constitutes legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged. Also, please confirm that the email and the attachments contain nothing but legal advice (i.e., there is no trading data, references to comments by third parties, general business information or business advice).

Please explain what you mean by "representation regarding amendment to securities regulation." What was counsel's role?

Entry 124 - Please identify all persons who receive email at "DL-TPRA-Stamford." With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason. Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged. Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 125 - Please explain how this email was for the purpose of providing information to counsel, when counsel is not listed as a recipient. Please explain what you mean by "representation regarding regulatory compliance." What was counsel's role? Was there an inquiry or investigation? With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 126 - With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged. Also, please confirm that the email and the attachments contain nothing but legal advice (i.e., there is no trading data, references to comments by third parties, general business information or business advice).

Entry 128 - Please see entry 125.

Entry 129 - Please see entry 21.

Entry 130 - With respect to the audit, please state whether it was a routine

audit done in the ordinary course of business or for some other reason. Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged. Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 131 - See entry 21.

Entry 132 - See entry 21.

Entries 133 through 141 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged. As to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 142 - See entry 21.

Entry 143 and 144 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice. With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged. Please explain what you mean by "representation regarding the booking or execution of trades." What was counsel's role? Was this routine compliance or in response to a potential or actual regulatory inquiry?

Entry 145 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason. Also, please explain why the underlying information (i.e., facts such as p&l,

trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entries 146 through 149 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that <u>all</u> of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please explain what you mean by "representation regarding the booking or execution of trades."  What was counsel's role? Was this routine compliance or in response to a potential or actual regulatory inquiry?

Entries 150 and 151 - Please see entry 21.

Entry 152 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason.  Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entries 153, 154 and 155 - Please see entry 21.

Entry 156 -  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that <u>all</u> of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please explain what you mean by "representation regarding the booking or execution of trades."  What was counsel's role? Was this routine compliance or in response to a potential or actual regulatory inquiry?

Entry 157 - Please see entry 21.

Entry 158 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please explain what you mean by "representation regarding the booking or execution of trades."  What was counsel's role? Was this routine compliance or in response to a potential or actual regulatory inquiry?

Entry 159 - Please identify the audit, including who conducted it, why it was conducted and whether any of the information contained in the email or attachment was disclosed to any third party.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 160 - Please explain how a non-lawyer (Capello) can transmit legal advice? Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please explain what you mean by "representation regarding securities regulation." What was counsel's role? Was this routine compliance or in response to a potential or actual regulatory inquiry?

Entry 161 - Please see entry 160.

Entry 163 - Please explain how Mr. Monteiro's email is "providing information to counsel" when counsel is not one of the 5 persons to whom

the email was sent, but rather was only cc'ed.  Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged. Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 164 - Please see entry 21.

Entry 167 - Please indicate when Mr. Citera provided the legal advice, and who was present when it was provided (or received the email containing it). Further, confirm that Mr. Capello's email does not contain any of his own opinions, conclusions, impressions or thoughts.  Also, confirm that the email does not contain any facts such as trading data or business advice.

Entries 169, 170 and 171 - Please see entry 21.

Entry 172 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason.  Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged.   With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 173 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason.  Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged.   With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entries 174, 175 and 176 - Please see entry 21.

Entry 177 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  Please explain how this was for the purpose of legal advice, when counsel was only a  cc, not a direct recipient.

Entries 178 and 179 - Please see entry 21.

Entries 180, 181, 182 and 184 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason.  Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged.   With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 183 - Please see entry 21.

Entry 184 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason.  Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged.   With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 185 -Please see entry 21.

Entry 186 and 187 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason.  Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is

privileged.   With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 193 - Please see entry 21.

Entry 194 - Please see entry 21.

Entry 195 - With respect to the audit, please state whether it was a routine audit done in the ordinary course of business or for some other reason.  Also, please explain why the underlying information (i.e., facts such as p&l, trading data, etc..) are privileged.  Please identify, by title, all the cc's and explain why they needed the know the information that you contend is privileged.   With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

Entry 196 - Please see entry 21.

Entries 199 and 200 - Please see entry 21.

Entry 203 - Please see entry 21.

Entries 207, 208 and 209 - Please see entry 21.

Entry 213 - Please see entry 21.

Entry 214, 215 and 216  - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that all of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.  As to your claim of work product, please: (a) state when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.

Entry 219 - Please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Further, please indicate whether it is UBS's position that <u>all</u> of the email and the attachment contains legal advice.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and why it is privileged.

We appreciate your cooperation.

Steven

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

0

# C A D W A L A D E R

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel +1 212 504 6000 Fax +1 212 504 6666
www.cadwalader.com

June 21, 2010

**VIA FEDEX AND E-MAIL**

Steven J. Rosenwasser
Bondurant Mixson & Elmore LLP
3900 One Atlantic Center
1201 W. Peachtree Street NW
Atlanta, GA  30309

Re:   TASER International Inc., et al. v. Morgan Stanley & Co., Inc., et al., Civil
       Case No. 2008-EV-004739-B

Dear Steven:

We write concerning Plaintiffs' May 24, 2010 Motion (i) for Relief Concerning Defendants'
Violation of the Court's Protective Order and (ii) to Compel Production of Documents
Improperly Withheld as Privileged or, Alternatively, to Appoint Special Master to Conduct an
*In Camera* Review.  We request that Plaintiffs withdraw the Motion at least with respect to
Defendant Deutsche Bank Securities Inc. ("DBSI") to avoid burdening the Court with this
matter.

<u>Confidentiality Designations</u>

In their Motion, Plaintiffs contend that DBSI "willfully abused" the Protective Order entered
by the Court on April 15, 2010, by designating certain documents Plaintiffs believe are non-
confidential as "Confidential" or "Highly Confidential."  In footnotes 16 through 18 of their
Motion, Plaintiffs identify 29 such DBSI documents, out of approximately 585,000 documents
produced by DBSI to date.  As a remedy for the alleged mis-designations of a small fraction of
the documents DBSI has produced, Plaintiffs contend that DBSI should engage in a wholesale,
costly and burdensome re-review of its entire production of over 6.8 million pages of
documents.   Plaintiffs' request is both unreasonable and inconsistent with the heavily
negotiated terms of the Protective Order.

The Protective Order provides a process for resolving disagreements with respect to
confidentiality designations.  Specifically, Paragraph 11 states that:

> A party may challenge any other party's designation of
> Discovery  Material  as  CONFIDENTIAL  or  HIGHLY

CADWALADER

Steven J. Rosenwasser
June 21, 2010

> **CONFIDENTIAL information by serving a written objection upon the Designating Party. The parties shall confer in good faith as to the validity of the designation. To the extent the parties are unable to reach an agreement as to the designation,** the objecting party may file an appropriate application or motion with this Court, with the portions constituting CONFIDENTIAL or HIGHLY CONFIDENTIAL information to be kept under seal. [emphasis added].

Paragraph 11 is clear that before a party can file a motion challenging confidentiality designations, it must first serve a written objection on and engage in a meet-and-confer with the party whose confidentiality designations are being challenged. Plaintiffs have not followed any of these required procedures. Indeed, the DBSI documents referenced in Plaintiffs' Motion were never brought to DBSI's attention prior to the filing of the Motion. Thus, if any party is in violation of the Court's Protective Order, it is Plaintiffs.

It appears that you are acting for tactical reasons rather than pursuing legitimate discovery as strongly suggested by the contrast of making this motion compared with Plaintiffs' past practice. Notably, Plaintiffs adhered to the foregoing conferral process with respect to confidentiality designation issues they previously raised with DBSI. On May 14, 2010, Plaintiffs requested in writing that each of the Defendants de-designate certain documents within a 10 hour time period. DBSI conducted a review of the documents questioned by Plaintiffs and agreed to de-designate certain of the documents within Plaintiffs' requested time-period.

Notwithstanding Plaintiffs' disregard for the Court-ordered process, set forth in the Protective Order, DBSI has reviewed the documents identified in the Motion and, based on such review, is modifying the confidentiality designations with respect to those documents (as well as any attachments thereto) as indicated in Exhibit A attached hereto. In light of the foregoing and DBSI's consistent efforts to work with Plaintiffs to efficiently and reasonably resolve discovery disputes, Plaintiffs' Motion for Relief Concerning Defendants' Violation of the Court's Protective Order is unwarranted and should be withdrawn.

## Privilege Designations

Plaintiffs contend that DBSI has overly designated documents as privileged and, therefore, the Court should appoint a Special Master to conduct an *in camera* review of DBSI's privileged documents. As you are aware, DBSI produced more than 220,000 documents in Phase I discovery. Only 24 of those 220,000 documents have been withheld as privileged. These figures indicate that DBSI has been extremely judicious in its privilege designations.

C A D W A L A D E R

Steven J. Rosenwasser
June 21, 2010

Although DBSI believes its privilege designations are appropriate, and notwithstanding the unfounded allegations made in Plaintiffs' Motion, DBSI will engage in a good faith re-review of each of the documents appearing on its privilege log.  In the event any responsive, non-privileged documents were inadvertently included on DBSI's privilege logs, we will produce those documents as appropriate.  In light of the foregoing, we see no reason for Plaintiffs to proceed with their Motion to Compel Production of Documents Improperly Withheld as Privileged or, Alternatively, to Appoint Special Master to Conduct an *In Camera* Review. Moreover, DBSI's willingness to re-review the documents withheld as privileged in connection with its Phase I production is not intended and should not be construed as a concession that such a review is required or that DBSI will undertake such a review with regard to privilege logs created for other productions.

Accordingly, we request that Plaintiffs withdraw the above-referenced Motion as it relates to DBSI.  If Plaintiffs refuse to withdraw the Motion, DBSI will seek appropriate relief from the Court, including DBSI's costs and expenses incurred in opposing the Motion.

Very truly yours,

Gregory A. Markel /RA

## EXHIBIT A

### Removing Confidentiality Designation

DBSI-T 72025 -72041, DBSI-T 874499 – 874502, DBSI-T 281278 – 281281, DBSI-T 1038944 – 1038956, DBSI-T 1038957 – 1038973, DBSI-T 535416, DBSI-T 535417 - 535451, DBSI-T 282090 – 282092, DBSI-T 1055180 - 1055187, DBSI-T 1178209, DBSI-T 546264, DBSI-T 546265, DBSI-T 546266 - 546358, DBSI-T 546359, DBSI-T 546360 – 546400, DBSI-T 1178252 – 1178255, DBSI-T 1178459 – 1178463, DBSI-T 1388715 – 1388717, DBSI-T 1389474 – 1389477, DBSI-T 1362550, DBSI-T 1362551, DBSI-T 1391571 – 1391574, DBSI -T 1391575 – 1391579, DBSI-T 1481334, DBSI-T 1481335, DBSI-T 1332884 – 1332887, DBSI-T 1332888 – 1332892, DBSI-T 1332893 - 1332896, DBSI-T 1332897 – 1332900, DBSI-T 1333305 – 1333308, DBSI-T 1333309 – 1333311, DBSI-T 1333324, DBSI-T 1333325 – 1333327, DBSI-T 1333328 - 1333331, DBSI-T 1539358

### Changing Designating From "Highly-Confidential" to "Confidential"

DBSI-T 1178256 -117257

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32089722
Date:  Jul 12 2010  6:41PM
Mark Harper, Clerk

P



Proskauer Rose LLP   1585 Broadway   New York, NY 10036-8299

Brian L. Friedman
Attorney at Law
d 212.969.3256
f 212.969.2900
blfriedman@proskauer.com
www.proskauer.com

June 8, 2010

**BY EMAIL**

Steven J. Rosenwasser, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3400

Re:     *Taser International, et al. v. Morgan Stanley & Co., Inc., et al*

Dear Steven:

We represent Bear, Stearns & Co. Inc. ("BSCO") and Bear, Stearns Securities Corp. ("BSSC") (collectively, "Bear Stearns") and I write in response to your emails dated April 19, 2010 and May 11, 2010 concerning Bear Stearns' privilege log, and further to our discussions. Although I told you that we would respond shortly to your emails, you chose to file your motion to compel before receiving our response. We will respond to the issues raised in your motion and the disagreement we appear to have over the scope of the attorney-client privilege and attorney work product doctrine in Bear Stearns' response to the motion to compel. However, we believe it is beneficial to address certain issues raised by your email now and to provide additional information about Bear Stearns' privilege log in an effort to resolve, or at least narrow, our disagreements.

First, instead of identifying specific entries you contend may not be privileged, you have turned things on their head by asking us to provide numerous additional details regarding each entry on Bear Stearns' privilege log. This belies your claim that you have attempted to "narrow the documents at issue." In addition, much of the information you request is irrelevant to determining whether the underlying documents are privileged. For example, you request that Bear Stearns identify the issue and security or securities involved in the inquiry. This information has no bearing on whether the email contains legal advice or information gathered at the request of counsel. In any event, you already have the underlying letters regarding these regulatory inquiries involving Taser and thus you already have this information.

Further, your request that Bear Stearns state whether "the substance of the communications or any information contained in the email later provided, in whole or in part, to the regulatory

Proskauer≫

Steven J. Rosenwasser, Esq.
June 8, 2010
Page 2

agency" is similarly irrelevant and unreasonable.  Any information disclosed to regulators in
connection with these inquiries was or will be provided to you, either in the form of Bear
Stearns' official responses to the regulatory inquiries or in the form of email communications
with the regulators.  That is all that the law requires.  *See McKesson HBOC, Inc. v. Adler*, 562
S.E.2d 809, 812-13 (Ga. Ct. App. 2002).  The mere fact that information was ultimately
provided to the regulators does not constitute a waiver of the attorney-client privilege applicable
to internal privileged discussions leading up to the provision of that information.  In addition,
we know of no case law that supports your apparent position that internal privileged discussions
concerning *what* communications will ultimately be made to regulators are statements made
"for the purpose of having the attorney impart them to others." *See Brenneman* v. *State*, 200 Ga.
App. 111, 114 (1991).

Notwithstanding your overbroad requests, we have engaged in a good faith re-review of each
document appearing on our privilege log.  Upon further review, there is a group of documents
that are not responsive, but also may have been incorrectly classified as privileged.  Those
documents, listed on entries 3, 6, 9, 18, 47-48, 50-51, 54, 61, consist of emails from Bear
Stearns attorneys to other Bear Stearns employees and attorneys that forwarded NASD letters
regarding regulatory inquiries.  The letters from NASD have already been produced and, in an
effort to avoid needless disputes, we will produce the cover emails as well even though they are
not responsive to Plaintiffs' document requests concerning communications with regulators
regarding TASER.  (*See* Plaintiffs' First Request For Documents No. 38.)  Such production,
however, shall not be deemed a waiver of the attorney-client privilege, the attorney work
product doctrine, or any of Bear Stearns' objections to Plaintiffs' discovery requests.

As discussed below, the remaining documents on the privilege log are privileged on their face
and, for ease of discussion, we have grouped those entries into three categories:

   (i)      Emails between Bear Stearns attorneys regarding the response to various
            regulatory inquiries involving TASER.  *See* Entries 13-16, 19-28, 31-37, 43-
            46, 53, 55-56.  Clearly these documents containing legal advice and/or
            attorney work product are privileged and no further inquiry is needed or
            warranted.

   (ii)     Emails from or between Bear Stearns attorneys providing legal advice and
            attaching work product, specifically draft responses to regulatory inquiries.
            *See* Entries 1, 10, 29, 30, 38-40, 49.  Again, such communications are clearly
            privileged and the information provided on the privilege log is sufficient to
            understand the nature of the communication.

   (iii)    Emails reflecting communications involving counsel or at the request of
            counsel to gather or analyze information necessary to provide legal advice in
            connection with the response to the regulatory inquiries.  *See* Entries 2, 4, 5,

Proskauer≫

Steven J. Rosenwasser, Esq.
June 8, 2010
Page 3

        7, 8, 11, 12, 17, 41, 52, 57-60.  As discussed above, such internal communications and activities are protected by the attorney-client privilege and/or the attorney work product doctrine.

As always, we remain willing to meet and confer with you about any of these issues.

Very truly yours,

Brian L. Friedman

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

Q

## Steven J. Rosenwasser

| | |
|---|---|
| **From:** | Jeffrey Landis [JLandis@kirkland.com] |
| **Sent:** | Wednesday, June 30, 2010 4:06 PM |
| **To:** | Steven J. Rosenwasser |
| **Cc:** | Andrew Clubok; Daniel Gomez; Elizabeth G. Eager; Nicole G. Iannarone; Jeffrey Gould |
| **Subject:** | Summary of 6/29/10 Call |

Steven,

I am writing to memorialize our conversation from yesterday afternoon regarding various discovery issues. For ease of reference I am using the labels used in Liz's 6/16/10 Email re "UBS Outstanding Issues" where applicable.

Steven's 5/6/10 email re data questions

First, you noted that with respect to the issues raised in your May 6, 2010 e-mail, you still need to provide us with information related to your requests for the "July 2006 Locate Report" and information from UBS Zurich so that we can fully evaluate your request. You also asked us to identify which portions of NASD Notice to Members 06-33 would help you in interpreting blank entries in the "contra_broker_num" column in the blue sheets. We replied that we understand that Questions 1 and 3 on page 4 would help you interpret that data, and you agreed that you would look at that information and let us know if you had any additional questions.

Next, we discussed your request that UBS confirm that it did not utilize certain reports that you identified from other Defendants' productions. You noted that you wanted to see if UBS maintained reports that were similar to what the other Defendants produced. We explained that the report titles you cited are not familiar to us, and that we did not believe we should be required to engage in a fishing expedition given the fact that we've already produced hundreds of thousands of pages of documents (including thousands of reports) pursuant to our discovery agreements thus far. You said that you understood our position. If there is anything further to discuss on this, please let us know.

6/14/10 Email re reports

_____We next discussed the reports you identified in your June 14, 2010 email. Andy explained that based on our review thus far it appears that a substantial number of additional copies of many of the reports that you identified were included in our production. We also agreed that it is certainly possible (and probably likely given the volume of materials that were reviewed) that in performing our document review and production certain versions of these reports could have been inadvertently coded as non-responsive. We will double check this universe of documents to see if that occurred, and if so (and if the documents are actually responsive), we will supplement our production. We then discussed the specific reports referenced in your email:

- We said that we needed to do some further investigation of the "Delivery Client List."
- We explained that the information contained in the "T+13 reports" would be contained in the "T+N reports" which were produced to you in November 2009. While not discussed in the call, I would note that those reports were produced at UBS_TASER-0021368 to UBS_TASER-0021438. We believe that this resolves this issue.
- We said that we were able to find at least 10-12 produced versions of the Missing Locates in Pinpoint Report, but that there may have been some that were withheld as non-responsive. We will go back and check those that were withheld to see if they should be produced.
- With regard to the "Reg SHO Committee's Findings" we stated that we haven't heard of them, but we will conduct further investigation to see what we can find out.
- With regard to the "A4 Reports," we stated that we hadn't specifically agreed to produce that document and we're not sure if there's a central way to search for those reports. You stated that you only wanted the ones that contained information on Taser, and we agreed that we would go back to see if we can find any additional reports involving Taser that for some reason were not included in our production.
- With regard to the "Unauthorized Short Sale Report" your initial email on this topic noted that you were only able to find a "handful" of these reports in our production. On our call we pointed out that you reference more than 40 of these reports in your most recent interrogatory responses, and you agreed that you had seen a "bunch" of these. We also noted that we were able to find over one thousand instances of that report in the production using relatively simple key word searches based on the reports you identified to us. Accordingly, you agreed that you would double check the documents that we have produced to you again. We did not discuss this on the call, but

1

my understanding is that one good way to search for these documents is by searching for the code "SL023A" which seems to appear on many of these reports.

_Steven's 5/26/10 email re confirmation re production of AWCs, admission letters and internal correspondence and 5/17/10 email re production of documents._

With regard to Plaintiffs' Fourth Requests for Production, we told you that our production was complete based on our reasonable inquiries to date, and that we don't anticipate producing additional materials. We believe that resolves this issue  We next talked about Plaintiffs' Fourth Interrogatories. You stated that the only "sticking point" was the issue of identifying people who were involved in the process of responding to the identified regulatory investigations. You also noted that you are not interested in us identifying those individuals who may have been involved in a "minor or insubstantial" way, but rather you were interested in people "actively involved in heading up the investigation."  We will confer with our client about this clarification and see if we can work this out.  You also stated that you had reviewed some of the documents UBS produced on these matters on June 25.  We suggested that you review the remainder of those documents, which may inform your view on this issue.

Steven's 6/15/10 email re confirmation regarding Defendants' Position documents

With regard to Defendants' "Position Documents," we stated that we have produced files from the people that are reasonably likely to have information on that issue. We believe that this fully resolves this issue.

June 26 Email re Exiting From CNS

You asked about your June 26, 2010 e-mail asking us whether UBS "exited from CNS." (although you noted that because that request had just come to us, you expected that we would need more time to investigate the issue).  As you expected, given that we just received this email we did not yet have any information on that topic but we will evaluate your request.

Steven's 4/26/10 email re UBS_TSR61010

We discussed your April 26, 2010 e-mail regarding TSR-061010, which you identified as a "monthly risk assessment." We noted that you should have dozens of them that we produced to you (and I think you were going to look into that on your end), but we will also perform some additional reviews to determine whether there are any additional documents that should be produced.

Steven's 6/3/10 email re traders

With regard to the six digit numbers that you suspected identified traders, we stated that we were still looking into the issue, but that based on our inquiries thus far, we don't believe that those numbers are used anymore and that it may be that they have not been used since 2004 or 2005.  And that even when they were used, they may not have been related to identifying individual traders or trading desks.   Nevertheless, we will continue to try to determine what these numbers mean, and will let you know if we can gather that information.

That led to a discussion of trader e-mail discovery.  We noted that we believe that e-mail discovery related to traders should be narrowed to certain time periods during which you have a good faith basis (after having reviewed our data and document productions) to believe that abusive naked short selling actually occurred. At this point, the closest you have come to identifying any such instances are the documents you have referred us to in your response to Defendants' Second Interrogatories, although we do not agree that those items could constitute "abusive naked short selling" as a matter of law or fact.  The bottom line here is that our expectation on trader email discovery had always been that it would be staged to follow the rest of discovery because by this point it was expected that you would have actually identified concrete instances of alleged "abusive naked short selling."  As set forth in our motion, we do not believe that plaintiffs have yet done that, at least with respect to UBS.  You stated that you would be willing to suggest very narrow discovery on a few traders, during the times those traders actually traded in Taser, using search terms limited to TASR, the cusip and "maybe three or four other terms." We then asked you to make a concrete proposal including a specific identification of the keywords that you would propose, and you agreed to present us with a proposal.

Profit & Loss Data

_____On the issue of profit and loss data, we first discussed your request for profit and loss data from stock lending.  We noted Plaintiffs already have Loanet data which supplies such information.  You stated that while the information provided in Loanet reports was sufficient, it required manual calculation to determine profits/losses, and you were asking us to see if our client had any documents that performed those calculations.  You emphasized that you were not asking us to create any new documents, rather you just wanted to know whether UBS maintains a document calculating loan profits on an individual stock basis in the ordinary course.  We agreed that we would ask our client if such a document exists.  You also noted that with regard to repurchases and rehypothecations, it was originally your understanding that defendants did not engage in those practices in equities.  But that upon a review of the data that has been produced to you, you found that at least two Defendants did in fact use repurchases or rehypothications (but not UBS to your knowledge).  You agreed that you would see if there is anything in UBS's production to suggest that UBS used repurchases and rehypothecations with respect to TASER.  Finally, we agreed that with regard to the remaining categories of alleged profit and loss data you identify on the word document you sent defendants, we would check to see how burdensome it would be to determine if that sort of information was kept in the ordinary course of business.

Privilege Log

On the topic of privilege logs, we reiterated that  we are happy to produce what we have completed by July 2.  (Note: Andy may have inadvertently stated we would do so "by the end of the month," but he meant "end of this week" as he advised you in his original email on that subject.)  We hoped to be finished with the rest of our privilege log by approximately the end of July.  You asked us approximately how many entries we would have, we stated that it would probably be in the thousands, but we are not yet certain.  We also noted that we will produce any responsive documents that we determine are not actually privileged during our privilege logging process.  You agreed that this was acceptable.

Plaintiffs 30(b)(6) Notice re Blue Sheets

We next discussed the 30(b)(6) on blue sheet issues that is currently in abeyance.  You stated that you are not anticipating that 30(b)(6) occurring, but cannot make any representations until you review the trade blotters and documents that UBS produced on June 25.  We noted that we were hopeful that plaintiffs would not seek the 30(b)(6) which we do not believe is necessary or relevant, but that should you do so we would attempt to work in good faith with plaintiffs to hopefully reach some compromise with respect to scope etc.  But that if we were unable to do so, we would seek the Court's intervention.  We explained that if we needed to seek Court intervention, we should set up a process to present the issue to the Court without forcing the Court to make a decision on an accelerated deadline as would be required if plaintiffs gave 30 days notice for the deposition when reasserting it.  We suggested that the parties simply fully brief the issue to the Court and wait for the Court's decision before going forward with the deposition.  You did not agree to that approach, but did agree that to the extent plaintiffs do decide to move forward with a 30(b)(6) on these topics, plaintiffs would give UBS a minimum of 40 days notice of such deposition.

2nd/3rd RFAs

The conferral on Plaintiffs' RFAs was adjourned until Friday, July 2 at 1:30 p.m.  The parties may reschedule depending on potential discussions among the joint defense group as a whole.

Thanks,
Jeff

Jeffrey Landis
Kirkland & Ellis LLP
202-879-5984
202-879-5200
655 Fifteenth Street, N.W.
Washington, D.C. 20005
***************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this

communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments. .
**************************************************************

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

R

## Steven J. Rosenwasser

| | |
|---|---|
| **From:** | Konstandt, Brad [Brad.Konstandt@wilmerhale.com] |
| **Sent:** | Tuesday, July 06, 2010 8:50 PM |
| **To:** | Steven J. Rosenwasser; Elizabeth G. Eager |
| **Cc:** | Hunter, Fraser; Raisner, Sara |
| **Subject:** | FW: Confirmation of Call |

Steven,

To keep the process moving, below are reactions to most of the issues, many of which confirm agreement. We are still working through a few of them. Fraser is traveling through Friday, so perhaps we should aim for a call on Monday afternoon or Tuesday morning to address the remaining issues? Thanks.

Brad

> **From:** Steven J. Rosenwasser <rosenwasser@bmelaw.com>
> **To:** Hunter, Fraser; Konstandt, Brad
> **Cc:** Elizabeth G. Eager <eager@bmelaw.com>
> **Sent:** Mon Jun 28 12:18:22 2010
> **Subject:** Confirmation of Call

Fraser and Brad,

Good afternoon. I am writing to confirm our call of earlier today. We discussed the following:

1.      Privilege Log - You indicated that because of the extension, you anticipate producing a privilege log for the Non-TASER Documents within the 30 days. You indicated that if you expect that date to change, you will let us know. You also indicated that you are currently withholding "thousands" of documents on privilege grounds, but you expected to undesignate a good number of them.

It is likely that we will need more time than initially expected, given the volume and nature of the documents, many of which will require further inquiry. We will, however, provide a rolling production of documents removed from the log, likely beginning next week. We will also endeavor to provide you with a "rolling" privilege log. We are comfortable beginning that rolling process by August 1. At this point, however, we cannot commit to a completion date.

2.      Vacation - Fraser indicated that he will be on vacation from August 20 to Sept 3. He agreed that matters in the case can move forward at that time, except for his request that the 30b6 deposition not take place during that time period. We agreed.

3.      RFAs - You indicated that the defense group is reconvening to decide how to handle this issue, and you will follow up after a decision is reached. As for issues individual to Credit Suisse, you indicated that you would respond to our prior confirming email on this topic.

Agree

4.      Traders - You indicated that you will review your position and let us know your thoughts. I noted that we are willing to limit the keywords for these searches to minimize any claim of burden.

We are willing to apply the keywords TASER, TASR and 87651B104 to the time frames when the identified traders engaged in substantial short sales of TASER (proposal below). With respect to the non-TASER keywords, we continue to believe that it is plaintiffs' burden to identify specific relevant periods based upon particular transactions or activity. Subject to plaintiffs identifying such periods, Credit Suisse would agree to the application of following keywords: fail*, "reg sho", "regulation sho", "regulation short", violat*, "compliance issue", "stock loan", locate, "impossible to borrow", "hard to borrow", "super hot".

-- Mike Covelli:  December 2005 through February 2006; August 2006 through September 2008; and January 2009 through May 2009

-- Nicole Douillet:  March 2004 through December 2005; February 2007 through June 2007; and August 2008 through May 2009

-- Michael Scali:  October 2005 through May 2009

-- Kevin Ara:  February 2007 through August 2007; and July 2008 through February 2009

-- James Wu:  March 2004 through April 2004; November 2004 through April 2007; and July 2008 through April 2009

-- Jon McConaughy:  October 2005 through May 2009 (based upon supervision of the traders)

-- Nicolas Branca:  March 2004 through May 2009 (based upon supervision of the traders)

*Joseph Stehr is not a proprietary trader and there are only a very limited number of TASER trades related to Mr. Stehr.

Credit Suisse Securities reserves all rights to further meet and confer on the TASER search terms based upon the number of hits generated.


5.      30b6 - We agreed as follows (taken from my June 21 email and attachment):

        a.      Section II(A)(2) - you agreed to my proposed language  Agree, subject to plaintiffs' agreement to Credit Suisse's language in II(A)(3)

        b.      Section II(B)(2) - you agreed to my proposed language  Agree

        c.      Section II(B)(3) - you agreed to my proposed language  Agree, subject to plaintiffs' agreement to Credit Suisse's language in II(B)(4)

        d.      footnote 1- you are going to make some additions for our review.  We agreed to accept your language, so long as plaintiffs understand that it is Credit Suisse's position that persons in the compliance department are the persons most reasonably likely to possess the relevant information.  Thus, the standard set forth by plaintiffs is satisfied by the documents and information collected from those persons.

        e.      Section II(H)(2) - you agreed to my proposed language  Agree, subject to plaintiffs' agreement to Credit Suisse's language in II(H)(4)

        f.      Section II(i)(2) - you asked us to also consider taking out paragraphs 4 and 17, we agreed to look into it.  Correct; if plaintiffs agree to omit paragraphs 4 and 17, we have an agreement on Investigation i

g.      Section III(b)(4) - you will get back to us on our proposal  We are still looking into your proposal, but will provide a response shortly

h.      Section III(i)(4) - you agreed to withdraw your objections to this topic, subject to your right to reraise a timely objection  We have not yet agreed to withdraw our objection, but will provide a response shortly

i.      Section III(j)(2) - you will propose language  Agreed, subject to changing the highlighted language to "facts sufficient to explain Credit Suisse's position as to why there was no violation"

j.      Section III(m)(3) - you agreed to my proposed language  Agreed

k.      Section III(n)(3) - you agreed to my proposed language  We agreed subject to plaintiffs' agreement that they will not ask a deponent questions regarding what particular rules mean; in other words, plaintiffs' questions would be limited to general questions regarding Credit Suisse's options with respect to regulatory dispositions generally as addressed in the FINRA or NYSE rules.  In order to reach final agreement, we would like to discuss this topic further since we do not think it is appropriate to ask for a 30(b)(6) from Credit Suisse to address published rules of a regulator.  However, your intended line of questioning may be narrow enough that we can find common ground.

l.      Section III(q)(3) you will get back to us  We are still looking into your proposal, but will provide a response shortly

m.      Section III(s)(3) - we agreed to limit this subtopic to meetings with regulators if you agreed to remove your objections.  you will confirm if you agree.  Agree, subject to the general limitation regarding the scope of a reasonable investigation

n.      Section V(a)(3) - you agreed to our proposed language  Agreed

o.      Section V(b)(2) - we agreed  Agreed

p.      Section VI - you will get back to us on all of the proposal in this section  We will provide a proposal shortly

Thanks,

Steven

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32089722
Date:  Jul 12 2010  6:41PM
Mark Harper, Clerk

S

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York  London  Charlotte  Washington  Beijing

One World Financial Center, New York, NY 10281
Tel +1 212 504 6000  Fax +1 212 504 6666
www.cadwalader.com

July 1, 2010

**VIA FEDEX AND E-MAIL**

Steven J. Rosenwasser
Bondurant Mixson & Elmore LLP
3900 One Atlantic Center
1201 W. Peachtree Street NW
Atlanta, GA  30309

Re:   TASER International Inc., et al. v. Morgan Stanley & Co., Inc., et al., Civil
Case No. 2008-EV-004739-B

Dear Steven:

We write on behalf of defendant Deutsche Bank Securities Inc. ("DBSI") and concerning the
privilege log issue.  While we understand that you intend to provide Plaintiffs' privilege log by
July 2, 2010, for the reasons set forth below, we will not be in a similar position to provide by
that date DBSI's privilege log with respect to all productions made through June 11, 2010.

First, Plaintiffs' Motion to Compel Production of Documents Improperly Withheld as
Privileged or, Alternatively, to Appoint Special Master to Conduct an In Camera Review is
presently pending before the Court.  As part of that Motion, Plaintiffs challenge the content
and form of DBSI's prior privilege logs.  Given your recent request for a hearing on
the Motion, it is unlikely that this issue concerning the appropriate form and content of the
privilege logs in this case will be resolved by July 2.  We do not believe it makes sense to
create on an unnecessarily expedited basis privilege logs that you will again challenge and
which could end up being inconsistent with the Court's decision on the Motion.  We are
proceeding diligently with our privilege review which obviously must be done prior to
completion of privilege logs.  While we have also commenced work on logs, completion of
logs will be expedited if we can agree on the form and content thereof.

Second, as you can appreciate, Plaintiffs and DBSI are not similarly situated in terms of their
privilege review obligations in this case.  Plaintiffs' broad document requests seek information
related to legal, regulatory and compliance matters concerning any of the tens of thousands of
securities traded over a time period spanning more than six years.  Not surprisingly, these
requests create a substantial and complex privilege review.  We do not believe
that DBSI's document requests to TASER or the individual Plaintiffs raise such complex

# C A D W A L A D E R

Steven J. Rosenwasser
July 1, 2010

privileged concerns, but if we are incorrect in that assumption, we remain willing to discuss any need for more time that you may encounter.

Finally, although we appreciate your providing your expected timing for the production of privilege logs, we note that Georgia law does not provide any specific time requirement for the production of privilege logs following document production. Accordingly, we have not asked you to commit to a date for production of your privilege log and we are willing to allow you more time to complete your log, if needed. We expect nothing more than a good faith effort on your part to complete the log in a time frame that is reasonable based on the number of potentially privileged documents you need to review and we will do the same.

As always, we remain willing to further meet and confer on this issue.

Very truly yours,

Gregory A. Markel

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

T

## Steven J. Rosenwasser

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Wednesday, April 28, 2010 11:33 AM |
| **To:** | 'rsinkfield@rh-law.com'; 'Friedman, Brian L.'; 'belias@omm.com'; 'Hunter, Fraser'; 'Pepperman, Richard'; 'Seidel, Martin'; 'Jeffrey Landis'; 'Eckles, Paul M' |
| **Cc:** | Nicole G. Iannarone; Elizabeth G. Eager |
| **Subject:** | Conferral Re: Confidentiality |

All:

Good morning. As you may recall, shortly after receiving the first set of documents from the defendants, I expressed my concern that the defendants were ubiquitously and improperly designating nearly every, if not every, document as confidential or highly confidential in violation of the Protective Order. As I indicated at that time, I raised the issue early on so that the Defendants could be mindful of their confidentiality designations, and not create a situation where they need to go back and re-review a potentially large number of documents to determine whether they are, in fact, confidential.

Unfortunately, despite my request and notice, the Defendants have continued and still continue to improperly designate documents as confidential and highly confidential. Indeed, while the Protective Order indicates that a document should only be designated as confidential if it includes such things as "trade secrets", "commercially sensitive information" or "private personal information," Defendants have designated every document as confidential or highly confidential even if it does not meet those requirements. Indeed, each of the defendants have designated as confidential such documents as: (1) SEC releases; (2) newspaper articles; and/or (3) commentary from third parties. Of course, that information is not confidential.

Given the broad and far-reaching improper designations of confidentiality, we are now conferring with respect to all of the defendants' production. We ask that, within the next 10 days, you agree that you will remove all improper confidentiality designations and will complete that process in the next 30 days. Please note that if you do not agree to remove the designations, or fail to properly do so, we will ask the Court to amend the protective order to allow you to designate as confidential or highly confidential only trade secrets (as defined under Georgia law), social security numbers, account names and account numbers.

We appreciate your cooperation,

Steven

## Steven J. Rosenwasser

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Monday, May 17, 2010 2:14 PM |
| **To:** | 'Friedman, Brian L.'; 'Elias, Brad'; 'Hunter, Fraser'; 'Seidel, Martin'; 'Pepperman, Richard'; 'Eckles, Paul M'; 'Jeffrey Landis'; 'Wise, Jr., Robert F.'; 'rsinkfield@rh-law.com' |
| **Cc:** | Nicole G. Iannarone; Elizabeth G. Eager |
| **Subject:** | Confidentiality |

All:

Good afternoon. Last week, I conferred with Defendants regarding confidentiality designations, including designations on AWCs, censures, Letters of Caution, etc. In response, many Defendants amended their confidentiality designations on those documents from "highly confidential" to "confidential." While we appreciate the change, it unfortunately continues to violate the Protective Order.

Specifically, the Protective Order provides that a document can be designated as confidential if it contains: "trade secrets, non-public financial information, non-public information concerning ongoing business activities, non-public personnel or customer-related inforamtion, private personal information or other proprietary or competitively sensitive information." The documents at issue do not fall into any of those categories.

To ensure no miscommunication, I will demonstrate the point by example using BAS TSINTL28-30 (a Cautionary Action by FINRA), which BAS continues to designate as confidential. The letter does not identify a single person's name (other than the recipient), includes no account numbers, does not identify a single stock and contains no financial information whatsoever. Walking through the definition of confidential:

trade secret - Of course, a cautionary letter from a third party is not a trade secret. Moreover, we assume BAS is not contending that the manner in which it violated the law is a trade secret. If that is incorrect, please let me know.

non-public financial information - The letter contains no financial information.

non-public information concerning ongoing business activities - As part of the investigation, BAS represented to FINRA that it would cease the unlawful activities cited in the letter. Did BAS abide by that representation? Regardless, is it BAS's position that the conduct referenced in the letter is "ongoing"? If so, please let us know.

non-public personnel or customer-related information - The letter does not mention any personnel, nor does it mention any customers.

private personal information - Again, no personal information is revealed.

proprietary or other competitively sensitive information - Does BAS contend that the conduct listed in the letter is proprietary or is competitively sensitive? If so, please let us know.

As the above shows, nothing in the Cautionary Letter meets the definition of confidential in the Protective Order, and thus the document is improperly designated. The same holds true for each of the letters of caution, censures, AWCs that the defendants are continuing to designate as confidential.

In light of the above, we once again ask in a good faith effort to avoid motion practice that you withdraw the improper confidentiality designations. If you refuse, we will unfortunately have no choice but to ask the Court to do so, and seek all other appropriate relief on this issue.

Thanks,

Steven

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32089722
Date:  Jul 12 2010  6:41PM
Mark Harper, Clerk

5

**Documents Improperly Designated By Defendants**

BAS TSINTL ESI 0045938 - BAS TSINTL ESI 0045944;
BAS TSINTL ESI 0049519 - BAS TSINTL ESI 0049520;
BAS TSINTL ESI 0050756 - BAS TSINTL ESI 0050759;
BAS TSINTL ESI 0214516 - BAS TSINTL ESI 0214540;
BAS TSINTL ESI 0214834 - BAS TSINTL ESI 0214858;
BAS TSINTL ESI 0214864 - BAS TSINTL ESI 0214888;
BAS TSINTL ESI 0215462 - BAS TSINTL ESI 0215466;
BAS TSINTL ESI 3168929 - BAS TSINTL ESI 3168963;
BAS TSINTL ESI 3272091 - BAS TSINTL ESI 3272094;
BAS TSINTL ESI 3272202 - BAS TSINTL ESI 3272205;
BAS TSINTL ESI 3351130 - BAS TSINTL ESI 3351133;
BAS TSINTL ESI 3354120 - BAS TSINTL ESI 3354123;
BAS TSINTL ESI 3354231 - BAS TSINTL ESI 3354234;
BAS TSINTL ESI 3354971 - BAS TSINTL ESI 3354974;
BAS TSINTL ESI 3355088 - BAS TSINTL ESI 3355091;
BAS TSINTL ESI 3355828 - BAS TSINTL ESI 3355831;
BAS TSINTL ESI 3355943 - BAS TSINTL ESI 3355946;
BAS TSINTL ESI 4393089 - BAS TSINTL ESI 4393092;
BAS TSINTL ESI 4470256 - BAS TSINTL ESI 4470259;
BAS TSINTL ESI 4730388 - BAS TSINTL ESI 4730391;
BAS TSINTL ESI 4730499 - BAS TSINTL ESI 4730502;
BAS TSINTL ESI 5709006 - BAS TSINTL ESI 5709012;
BAS TSINTL ESI 6679649 - BAS TSINTL ESI 6679650;
BAS TSINTL ESI 6679723 - BAS TSINTL ESI 6679724;
BAS TSINTL ESI 6679725 - BAS TSINTL ESI 6679726;
BAS TSINTL ESI 6679732 - BAS TSINTL ESI 6679733;
BAS TSINTL ESI 6679745 - BAS TSINTL ESI 6679746;
BAS TSINTL ESI 6679747 - BAS TSINTL ESI 6679748;
BAS TSINTL ESI 6679818 - BAS TSINTL ESI 6679819;
BAS TSINTL ESI 6679820 - BAS TSINTL ESI 6679821;
BAS TSINTL ESI 6679922 - BAS TSINTL ESI 6679923;
BAS TSINTL ESI 6679944 - BAS TSINTL ESI 6679945;
BAS TSINTL ESI 6679980 - BAS TSINTL ESI 6679981;
BAS TSINTL ESI 6679982 - BAS TSINTL ESI 6679983;
BAS TSINTL ESI 6679984 - BAS TSINTL ESI 6679985;
BAS TSINTL ESI 6679986 - BAS TSINTL ESI 6679987;
BAS TSINTL ESI 6680276 - BAS TSINTL ESI 6680277;
BAS TSINTL ESI 6681116 - BAS TSINTL ESI 6681117;
BAS TSINTL ESI 6681125 - BAS TSINTL ESI 6681126;
BAS TSINTL ESI 6681132 - BAS TSINTL ESI 6681133;
BAS TSINTL ESI 6681139 - BAS TSINTL ESI 6681140;
BAS TSINTL ESI 6681141 - BAS TSINTL ESI 6681142;
BAS TSINTL ESI 6682387 - BAS TSINTL ESI 6682388;
BAS TSINTL ESI 6682389 - BAS TSINTL ESI 6682390;

BAS TSINTL ESI 6682391 - BAS TSINTL ESI 6682392;
BAS TSINTL ESI 6682414 - BAS TSINTL ESI 6682415;
BAS TSINTL ESI 6682418 - BAS TSINTL ESI 6682419;
BAS TSINTL ESI 6682427 - BAS TSINTL ESI 6682428;
BAS TSINTL ESI 6682429 - BAS TSINTL ESI 6682430;
BAS TSINTL ESI 6682432 - BAS TSINTL ESI 6682433;
BAS TSINTL ESI 6682447 - BAS TSINTL ESI 6682448;
BAS TSINTL ESI 6682451 - BAS TSINTL ESI 6682452;
BAS TSINTL ESI 6684881 - BAS TSINTL ESI 6684882;
BAS TSINTL ESI 6685320 - BAS TSINTL ESI 6685321;
BAS TSINTL ESI 6685326 - BAS TSINTL ESI 6685327;
BAS TSINTL ESI 6685380 - BAS TSINTL ESI 6685381;
BAS TSINTL ESI 6685382 - BAS TSINTL ESI 6685383;
BAS TSINTL ESI 6685987 - BAS TSINTL ESI 6685988;
BAS TSINTL ESI 6686017 - BAS TSINTL ESI 6686018;
BAS TSINTL ESI 6686080 - BAS TSINTL ESI 6686081;
BAS TSINTL ESI 6690450 - BAS TSINTL ESI 6690451;
BAS TSINTL ESI 6690479 - BAS TSINTL ESI 6690480;
BAS TSINTL ESI 6690647 - BAS TSINTL ESI 6690648;
BAS TSINTL ESI 6690652 - BAS TSINTL ESI 6690653;
BAS TSINTL ESI 6690687 - BAS TSINTL ESI 6690688;
BAS TSINTL ESI 6690789 - BAS TSINTL ESI 6690790;
BAS TSINTL ESI 6690986 - BAS TSINTL ESI 6690987;
BAS TSINTL ESI 6691018 - BAS TSINTL ESI 6691019;
BAS TSINTL ESI 6691022 - BAS TSINTL ESI 6691023;
BAS TSINTL ESI 6691124 - BAS TSINTL ESI 6691125;
BAS TSINTL ESI 6691214 - BAS TSINTL ESI 6691215;
BAS TSINTL ESI 6692015 - BAS TSINTL ESI 6692016;
BAS TSINTL ESI 6692101 - BAS TSINTL ESI 6692102;
BAS TSINTL ESI 6692253 - BAS TSINTL ESI 6692254;
BAS TSINTL ESI 6695321 - BAS TSINTL ESI 6695322;
BAS TSINTL ESI 6695344 - BAS TSINTL ESI 6695345;
BAS TSINTL ESI 6696148 - BAS TSINTL ESI 6696149;
BAS TSINTL ESI 6696150 - BAS TSINTL ESI 6696151;
BAS TSINTL ESI 6696278 - BAS TSINTL ESI 6696279;
BAS TSINTL ESI 6696365 - BAS TSINTL ESI 6696366;
BAS TSINTL ESI 6697450 - BAS TSINTL ESI 6697451;
BAS TSINTL ESI 6697455 - BAS TSINTL ESI 6697456;
BAS TSINTL ESI 6716286 - BAS TSINTL ESI 6716287;
BAS TSINTL ESI 6716491 - BAS TSINTL ESI 6716492;
BAS TSINTL ESI 6716493 - BAS TSINTL ESI 6716494;
BAS TSINTL ESI 6716814 - BAS TSINTL ESI 6716815;
BAS TSINTL ESI 6716830 - BAS TSINTL ESI 6716831;
BAS TSINTL ESI 6716881 - BAS TSINTL ESI 6716882;
BAS TSINTL ESI 6716991 - BAS TSINTL ESI 6716992;
BAS TSINTL ESI 6717065 - BAS TSINTL ESI 6717066;

BAS TSINTL ESI 6717094 - BAS TSINTL ESI 6717095;
BAS TSINTL ESI 6718620 - BAS TSINTL ESI 6718621;
BAS TSINTL ESI 6718850 - BAS TSINTL ESI 6718851;
BAS TSINTL ESI 6719086 - BAS TSINTL ESI 6719087;
BAS TSINTL ESI 6719133 - BAS TSINTL ESI 6719134;
BAS TSINTL ESI 6719369 - BAS TSINTL ESI 6719370;
BAS TSINTL ESI 6719383 - BAS TSINTL ESI 6719384;
BAS TSINTL ESI 6719733 - BAS TSINTL ESI 6719734;
BAS TSINTL ESI 6719872 - BAS TSINTL ESI 6719873;
BAS TSINTL ESI 6719923 - BAS TSINTL ESI 6719924;
BAS TSINTL ESI 6719933 - BAS TSINTL ESI 6719934;
BAS TSINTL ESI 6719936 - BAS TSINTL ESI 6719937;
BAS TSINTL ESI 6719948 - BAS TSINTL ESI 6719949;
BAS TSINTL ESI 6720739 - BAS TSINTL ESI 6720740;
BAS TSINTL ESI 6721457 - BAS TSINTL ESI 6721458;
BAS TSINTL ESI 6721491 - BAS TSINTL ESI 6721492;
BAS TSINTL ESI 6721536 - BAS TSINTL ESI 6721537;
BAS TSINTL ESI 6722010 - BAS TSINTL ESI 6722011;
BAS TSINTL ESI 6722212 - BAS TSINTL ESI 6722213;
BAS TSINTL ESI 6722226 - BAS TSINTL ESI 6722227;
BAS TSINTL ESI 6722258 - BAS TSINTL ESI 6722259;
BAS TSINTL ESI 6722282 - BAS TSINTL ESI 6722283;
BAS TSINTL ESI 6722468 - BAS TSINTL ESI 6722469;
BAS TSINTL ESI 6722506 - BAS TSINTL ESI 6722507;
BAS TSINTL ESI 6904211 - BAS TSINTL ESI 6904217;
BAS TSINTL ESI 6909029 - BAS TSINTL ESI 6909032;
BAS TSINTL ESI 6952888 - BAS TSINTL ESI 6952888;
BAS TSINTL ESI 6953323 - BAS TSINTL ESI 6953323;
BAS TSINTL ESI 6954765 - BAS TSINTL ESI 6954765;
BAS TSINTL ESI 6961625 - BAS TSINTL ESI 6961625;
BAS TSINTL ESI 6961872 - BAS TSINTL ESI 6961872;
BAS TSINTL ESI 6961874 - BAS TSINTL ESI 6961874;
BAS TSINTL ESI 6961970 - BAS TSINTL ESI 6961970;
BAS TSINTL ESI 6964750 - BAS TSINTL ESI 6964750;
BAS TSINTL ESI 6965568 - BAS TSINTL ESI 6965568;
BAS TSINTL ESI 6965619 - BAS TSINTL ESI 6965619;
BAS TSINTL ESI 6965623 - BAS TSINTL ESI 6965623;
BAS TSINTL ESI 6965629 - BAS TSINTL ESI 6965629;
BAS TSINTL ESI 6965659 - BAS TSINTL ESI 6965659;
BAS TSINTL ESI 6965756 - BAS TSINTL ESI 6965756;
BAS TSINTL ESI 6965759 - BAS TSINTL ESI 6965759;
BAS TSINTL ESI 6965760 - BAS TSINTL ESI 6965760;
BAS TSINTL ESI 6965788 - BAS TSINTL ESI 6965788;
BAS TSINTL ESI 6965795 - BAS TSINTL ESI 6965795;
BAS TSINTL ESI 6965798 - BAS TSINTL ESI 6965798;
BAS TSINTL ESI 6965801 - BAS TSINTL ESI 6965801;

782228.1

BAS TSINTL ESI 6965810 - BAS TSINTL ESI 6965810;
BAS TSINTL ESI 6965813 - BAS TSINTL ESI 6965813;
BAS TSINTL ESI 6965818 - BAS TSINTL ESI 6965818;
BAS TSINTL ESI 6965826 - BAS TSINTL ESI 6965826;
BAS TSINTL ESI 6965827 - BAS TSINTL ESI 6965827;
BAS TSINTL ESI 6965830 - BAS TSINTL ESI 6965830;
BAS TSINTL ESI 6965832 - BAS TSINTL ESI 6965832;
BAS TSINTL ESI 6965866 - BAS TSINTL ESI 6965866;
BAS TSINTL ESI 6965875 - BAS TSINTL ESI 6965875;
BAS TSINTL ESI 6965876 - BAS TSINTL ESI 6965876;
BAS TSINTL ESI 6965891 - BAS TSINTL ESI 6965891;
BAS TSINTL ESI 6965895 - BAS TSINTL ESI 6965895;
BAS TSINTL ESI 6965906 - BAS TSINTL ESI 6965906;
BAS TSINTL ESI 6965908 - BAS TSINTL ESI 6965908;
BAS TSINTL ESI 6965909 - BAS TSINTL ESI 6965909;
BAS TSINTL ESI 6966571 - BAS TSINTL ESI 6966571;
BAS TSINTL ESI 6966574 - BAS TSINTL ESI 6966574;
BAS TSINTL ESI 6966577 - BAS TSINTL ESI 6966577;
BAS TSINTL ESI 6966580 - BAS TSINTL ESI 6966580;
BAS TSINTL ESI 6967491 - BAS TSINTL ESI 6967491;
BAS TSINTL ESI 6967494 - BAS TSINTL ESI 6967494;
BAS TSINTL ESI 6967561 - BAS TSINTL ESI 6967561;
BAS TSINTL ESI 6967790 - BAS TSINTL ESI 6967790;
BAS TSINTL ESI 6967814 - BAS TSINTL ESI 6967814;
BAS TSINTL ESI 6967902 - BAS TSINTL ESI 6967902;
BAS TSINTL ESI 6967907 - BAS TSINTL ESI 6967907;
BAS TSINTL ESI 6968195 - BAS TSINTL ESI 6968195;
BAS TSINTL ESI 6968307 - BAS TSINTL ESI 6968307;
BAS TSINTL ESI 6968311 - BAS TSINTL ESI 6968311;
BAS TSINTL ESI 6968312 - BAS TSINTL ESI 6968312;
BAS TSINTL ESI 6968319 - BAS TSINTL ESI 6968319;
BAS TSINTL ESI 6968347 - BAS TSINTL ESI 6968347;
BAS TSINTL ESI 6968496 - BAS TSINTL ESI 6968496;
BAS TSINTL ESI 6968746 - BAS TSINTL ESI 6968746;
BAS TSINTL ESI 6968800 - BAS TSINTL ESI 6968800;
BAS TSINTL ESI 6968914 - BAS TSINTL ESI 6968914;
BAS TSINTL ESI 6969057 - BAS TSINTL ESI 6969057;
BAS TSINTL ESI 6969122 - BAS TSINTL ESI 6969122;
BAS TSINTL ESI 6969128 - BAS TSINTL ESI 6969128;
BAS TSINTL ESI 6969157 - BAS TSINTL ESI 6969157;
BAS TSINTL ESI 6969168 - BAS TSINTL ESI 6969168;
BAS TSINTL ESI 6969293 - BAS TSINTL ESI 6969293;
BAS TSINTL ESI 6969315 - BAS TSINTL ESI 6969315;
BAS TSINTL ESI 6969324 - BAS TSINTL ESI 6969324;
BAS TSINTL ESI 6969331 - BAS TSINTL ESI 6969331;
BAS TSINTL ESI 6969342 - BAS TSINTL ESI 6969342;

BAS TSINTL ESI 6969380 - BAS TSINTL ESI 6969380;
BAS TSINTL ESI 6969433 - BAS TSINTL ESI 6969433;
BAS TSINTL ESI 6969501 - BAS TSINTL ESI 6969501;
BAS TSINTL ESI 6969607 - BAS TSINTL ESI 6969607;
BAS TSINTL ESI 6969609 - BAS TSINTL ESI 6969609;
BAS TSINTL ESI 6969663 - BAS TSINTL ESI 6969663;
BAS TSINTL ESI 6969710 - BAS TSINTL ESI 6969710;
BAS TSINTL ESI 6969781 - BAS TSINTL ESI 6969781;
BAS TSINTL ESI 6969794 - BAS TSINTL ESI 6969794;
BAS TSINTL ESI 6969795 - BAS TSINTL ESI 6969795;
BAS TSINTL ESI 6969799 - BAS TSINTL ESI 6969799;
BAS TSINTL ESI 6969848 - BAS TSINTL ESI 6969848;
BAS TSINTL ESI 6969952 - BAS TSINTL ESI 6969952;
BAS TSINTL ESI 6969955 - BAS TSINTL ESI 6969955;
BAS TSINTL ESI 6970267 - BAS TSINTL ESI 6970267;
BAS TSINTL ESI 6970268 - BAS TSINTL ESI 6970268;
BAS TSINTL ESI 6970522 - BAS TSINTL ESI 6970522;
BAS TSINTL ESI 6975017 - BAS TSINTL ESI 6975017;
BAS TSINTL ESI 6975183 - BAS TSINTL ESI 6975183;
BAS TSINTL ESI 6975196 - BAS TSINTL ESI 6975196;
BAS TSINTL ESI 6975224 - BAS TSINTL ESI 6975224;
BAS TSINTL ESI 6975267 - BAS TSINTL ESI 6975267;
BAS TSINTL ESI 6975276 - BAS TSINTL ESI 6975276;
BAS TSINTL ESI 6975285 - BAS TSINTL ESI 6975285;
BAS TSINTL ESI 6975298 - BAS TSINTL ESI 6975298;
BAS TSINTL ESI 6975403 - BAS TSINTL ESI 6975403;
BAS TSINTL ESI 6975532 - BAS TSINTL ESI 6975532;
BAS TSINTL ESI 6975553 - BAS TSINTL ESI 6975553;
BAS TSINTL ESI 6975603 - BAS TSINTL ESI 6975603;
BAS TSINTL ESI 6975669 - BAS TSINTL ESI 6975669;
BAS TSINTL ESI 6976119 - BAS TSINTL ESI 6976119;
BAS TSINTL ESI 6976127 - BAS TSINTL ESI 6976127;
BAS TSINTL ESI 6976130 - BAS TSINTL ESI 6976130;
BAS TSINTL ESI 6976156 - BAS TSINTL ESI 6976156;
BAS TSINTL ESI 6976224 - BAS TSINTL ESI 6976224;
BAS TSINTL ESI 6976229 - BAS TSINTL ESI 6976229;
BAS TSINTL ESI 6976387 - BAS TSINTL ESI 6976387;
BAS TSINTL ESI 6976452 - BAS TSINTL ESI 6976452;
BAS TSINTL ESI 6978083 - BAS TSINTL ESI 6978083;
BAS TSINTL ESI 6978157 - BAS TSINTL ESI 6978157;
BAS TSINTL ESI 6978177 - BAS TSINTL ESI 6978177;
BAS TSINTL ESI 6978211 - BAS TSINTL ESI 6978211;
BAS TSINTL ESI 6978277 - BAS TSINTL ESI 6978277;
BAS TSINTL ESI 6978594 - BAS TSINTL ESI 6978594;
BAS TSINTL ESI 6978670 - BAS TSINTL ESI 6978670;
BAS TSINTL ESI 6978687 - BAS TSINTL ESI 6978687;

BAS TSINTL ESI 6978804 - BAS TSINTL ESI 6978804;
BAS TSINTL ESI 6978824 - BAS TSINTL ESI 6978824;
BAS TSINTL ESI 6978825  - BAS TSINTL ESI 6978825;
BAS TSINTL ESI 6978913 - BAS TSINTL ESI 6978913;
BAS TSINTL ESI 6979022 - BAS TSINTL ESI 6979022;
BAS TSINTL ESI 6979023 - BAS TSINTL ESI 6979023;
BAS TSINTL ESI 6980081 - BAS TSINTL ESI 6980081;
BAS TSINTL ESI 6980199 - BAS TSINTL ESI 6980199;
BAS TSINTL ESI 6980206 - BAS TSINTL ESI 6980206;
BAS TSINTL ESI 6980816 - BAS TSINTL ESI 6980816;
BAS TSINTL ESI 6980856 - BAS TSINTL ESI 6980856;
BAS TSINTL ESI 6980912 - BAS TSINTL ESI 6980912;
BAS TSINTL ESI 6980939 - BAS TSINTL ESI 6980939;
BAS TSINTL ESI 6981072 - BAS TSINTL ESI 6981072;
BAS TSINTL ESI 6981105 - BAS TSINTL ESI 6981105;
BAS TSINTL ESI 6981197 - BAS TSINTL ESI 6981197;
BAS TSINTL ESI 6981203 - BAS TSINTL ESI 6981203;
BAS TSINTL ESI 6981307 - BAS TSINTL ESI 6981307;
BAS TSINTL ESI 6981318 - BAS TSINTL ESI 6981318;
BAS TSINTL ESI 6982014 - BAS TSINTL ESI 6982014;
BAS TSINTL ESI 6982222 - BAS TSINTL ESI 6982222;
BAS TSINTL ESI 6982441 - BAS TSINTL ESI 6982441;
BAS TSINTL ESI 6982577 - BAS TSINTL ESI 6982577;
BAS TSINTL ESI 6982585 - BAS TSINTL ESI 6982585;
BAS TSINTL ESI 6982587 - BAS TSINTL ESI 6982587;
BAS TSINTL ESI 6982779 - BAS TSINTL ESI 6982779;
BAS TSINTL ESI 6982947 - BAS TSINTL ESI 6982947;
BAS TSINTL ESI 6982951 - BAS TSINTL ESI 6982951;
BAS TSINTL ESI 6982952 - BAS TSINTL ESI 6982952;
BAS TSINTL ESI 6982955 - BAS TSINTL ESI 6982955;
BAS TSINTL ESI 6982958 - BAS TSINTL ESI 6982958;
BAS TSINTL ESI 6983545 - BAS TSINTL ESI 6983545;
BAS TSINTL ESI 6983547 - BAS TSINTL ESI 6983547;
BAS TSINTL ESI 6983552 - BAS TSINTL ESI 6983552;
BAS TSINTL ESI 6983558 - BAS TSINTL ESI 6983558;
BAS TSINTL ESI 6983582 - BAS TSINTL ESI 6983582;
BAS TSINTL ESI 6983590 - BAS TSINTL ESI 6983590;
BAS TSINTL ESI 6983596 - BAS TSINTL ESI 6983596;
BAS TSINTL ESI 6983608 - BAS TSINTL ESI 6983608;
BAS TSINTL ESI 6983613 - BAS TSINTL ESI 6983613;
BAS TSINTL ESI 6983643 - BAS TSINTL ESI 6983643;
BAS TSINTL ESI 6983646 - BAS TSINTL ESI 6983646;
BAS TSINTL ESI 6983651 - BAS TSINTL ESI 6983651;
BAS TSINTL ESI 6983654 - BAS TSINTL ESI 6983654;
BAS TSINTL ESI 6983655 - BAS TSINTL ESI 6983655;
BAS TSINTL ESI 6983657 - BAS TSINTL ESI 6983657;

BAS TSINTL ESI 6983658 - BAS TSINTL ESI 6983658;
BAS TSINTL ESI 6983688 - BAS TSINTL ESI 6983688;
BAS TSINTL ESI 6983692 - BAS TSINTL ESI 6983692;
BAS TSINTL ESI 6983695 - BAS TSINTL ESI 6983695;
BAS TSINTL ESI 6983696 - BAS TSINTL ESI 6983696;
BAS TSINTL ESI 6983700 - BAS TSINTL ESI 6983700;
BAS TSINTL ESI 6985977 - BAS TSINTL ESI 6985977;
BAS TSINTL ESI 6988399 - BAS TSINTL ESI 6988399;
BAS TSINTL ESI 6989312 - BAS TSINTL ESI 6989312;
BAS TSINTL ESI 6989454 - BAS TSINTL ESI 6989454;
BAS TSINTL ESI 6989944 - BAS TSINTL ESI 6989944;
BAS TSINTL ESI 6992106 - BAS TSINTL ESI 6992106;
BAS TSINTL ESI 6992107 - BAS TSINTL ESI 6992107;
BAS TSINTL ESI 6992131 - BAS TSINTL ESI 6992131;
BAS TSINTL ESI 6992181 - BAS TSINTL ESI 6992181;
BAS TSINTL ESI 6992431 - BAS TSINTL ESI 6992431;
BAS TSINTL ESI 6992438 - BAS TSINTL ESI 6992438;
BAS TSINTL ESI 6992448 - BAS TSINTL ESI 6992448;
BAS TSINTL ESI 6993296 - BAS TSINTL ESI 6993296;
BAS TSINTL ESI 6993556 - BAS TSINTL ESI 6993556;
BAS TSINTL ESI 6993559 - BAS TSINTL ESI 6993559;
BAS TSINTL ESI 6994334 - BAS TSINTL ESI 6994334;
BAS TSINTL ESI 6994335 - BAS TSINTL ESI 6994335;
BAS TSINTL ESI 6994340 - BAS TSINTL ESI 6994340;
BAS TSINTL ESI 6994468 - BAS TSINTL ESI 6994468;
BAS TSINTL ESI 6994481 - BAS TSINTL ESI 6994481;
BAS TSINTL ESI 6994483 - BAS TSINTL ESI 6994483;
BAS TSINTL ESI 6994503 - BAS TSINTL ESI 6994503;
BAS TSINTL ESI 6994504 - BAS TSINTL ESI 6994504;
BAS TSINTL ESI 6994566 - BAS TSINTL ESI 6994566;
BAS TSINTL ESI 6994582 - BAS TSINTL ESI 6994582;
BAS TSINTL ESI 6994583 - BAS TSINTL ESI 6994583;
BAS TSINTL ESI 6994588 - BAS TSINTL ESI 6994588;
BAS TSINTL ESI 6994589 - BAS TSINTL ESI 6994589;
BAS TSINTL ESI 6995352 - BAS TSINTL ESI 6995352;
BAS TSINTL ESI 6995420 - BAS TSINTL ESI 6995420;
BAS TSINTL ESI 6997912 - BAS TSINTL ESI 6997912;
BAS TSINTL ESI 6998149 - BAS TSINTL ESI 6998149;
BAS TSINTL ESI 6998311 - BAS TSINTL ESI 6998311;
BAS TSINTL ESI 6998977 - BAS TSINTL ESI 6998977;
BAS TSINTL ESI 6999521 - BAS TSINTL ESI 6999521;
BAS TSINTL ESI 6999624 - BAS TSINTL ESI 6999624;
BAS TSINTL ESI 6999637 - BAS TSINTL ESI 6999637;
BAS TSINTL ESI 6999710 - BAS TSINTL ESI 6999710;
BAS TSINTL ESI 6999728 - BAS TSINTL ESI 6999728;
BAS TSINTL ESI 6999884 - BAS TSINTL ESI 6999884;

BAS TSINTL ESI 6999886 - BAS TSINTL ESI 6999886;
BAS TSINTL ESI 6999903 - BAS TSINTL ESI 6999903;
BAS TSINTL ESI 6999972 - BAS TSINTL ESI 6999972;
BAS TSINTL ESI 7000988 - BAS TSINTL ESI 7000988;
BAS TSINTL ESI 7001075 - BAS TSINTL ESI 7001075;
BAS TSINTL ESI 7001100 - BAS TSINTL ESI 7001100;
BAS TSINTL ESI 7001111 - BAS TSINTL ESI 7001111;
BAS TSINTL ESI 7001210 - BAS TSINTL ESI 7001210;
BAS TSINTL ESI 7001212 - BAS TSINTL ESI 7001212;
BAS TSINTL ESI 7001301 - BAS TSINTL ESI 7001301;
BAS TSINTL ESI 7001308 - BAS TSINTL ESI 7001308;
BAS TSINTL ESI 7001309 - BAS TSINTL ESI 7001309;
BAS TSINTL ESI 7001315 - BAS TSINTL ESI 7001315;
BAS TSINTL ESI 7001318 - BAS TSINTL ESI 7001318;
BAS TSINTL ESI 7001334 - BAS TSINTL ESI 7001334;
BAS TSINTL ESI 7001338 - BAS TSINTL ESI 7001338;
BAS TSINTL ESI 7001453 - BAS TSINTL ESI 7001453;
BAS TSINTL ESI 7001454 - BAS TSINTL ESI 7001454;
BAS TSINTL ESI 7001455 - BAS TSINTL ESI 7001455;
BAS TSINTL ESI 7001505 - BAS TSINTL ESI 7001505;
BAS TSINTL ESI 7001509 - BAS TSINTL ESI 7001509;
BAS TSINTL ESI 7001520 - BAS TSINTL ESI 7001520;
BAS TSINTL ESI 7001531 - BAS TSINTL ESI 7001531;
BAS TSINTL ESI 7001534 - BAS TSINTL ESI 7001534;
BAS TSINTL ESI 7001590 - BAS TSINTL ESI 7001590;
BAS TSINTL ESI 7001622 - BAS TSINTL ESI 7001622;
BAS TSINTL ESI 7001634 - BAS TSINTL ESI 7001634;
BAS TSINTL ESI 7001635 - BAS TSINTL ESI 7001635;
BAS TSINTL ESI 7001637 - BAS TSINTL ESI 7001637;
BAS TSINTL ESI 7001642 - BAS TSINTL ESI 7001642;
BAS TSINTL ESI 7001643 - BAS TSINTL ESI 7001643;
BAS TSINTL ESI 7001669 - BAS TSINTL ESI 7001669;
BAS TSINTL ESI 7001676 - BAS TSINTL ESI 7001676;
BAS TSINTL ESI 7001681 - BAS TSINTL ESI 7001681;
BAS TSINTL ESI 7001810 - BAS TSINTL ESI 7001810;
BAS TSINTL ESI 7001857 - BAS TSINTL ESI 7001857;
BAS TSINTL ESI 7001859 - BAS TSINTL ESI 7001859;
BAS TSINTL ESI 7001910 - BAS TSINTL ESI 7001910;
BAS TSINTL ESI 7001956 - BAS TSINTL ESI 7001956;
BAS TSINTL ESI 7001988 - BAS TSINTL ESI 7001988;
BAS TSINTL ESI 7001992 - BAS TSINTL ESI 7001992;
BAS TSINTL ESI 7001994 - BAS TSINTL ESI 7001994;
BAS TSINTL ESI 7001995 - BAS TSINTL ESI 7001995;
BAS TSINTL ESI 7002008 - BAS TSINTL ESI 7002008;
BAS TSINTL ESI 7002020 - BAS TSINTL ESI 7002020;
BAS TSINTL ESI 7002023 - BAS TSINTL ESI 7002023;

BAS TSINTL ESI 7002035 - BAS TSINTL ESI 7002035;
BAS TSINTL ESI 7002044 - BAS TSINTL ESI 7002044;
BAS TSINTL ESI 7002063 - BAS TSINTL ESI 7002063;
BAS TSINTL ESI 7002069 - BAS TSINTL ESI 7002069;
BAS TSINTL ESI 7002070 - BAS TSINTL ESI 7002070;
BAS TSINTL ESI 7002071 - BAS TSINTL ESI 7002071;
BAS TSINTL ESI 7002122 - BAS TSINTL ESI 7002122;
BAS TSINTL ESI 7002166 - BAS TSINTL ESI 7002166;
BAS TSINTL ESI 7002234 - BAS TSINTL ESI 7002234;
BAS TSINTL ESI 7002363 - BAS TSINTL ESI 7002363;
BAS TSINTL ESI 7002383 - BAS TSINTL ESI 7002383;
BAS TSINTL ESI 7002421 - BAS TSINTL ESI 7002421;
BAS TSINTL ESI 7002458 - BAS TSINTL ESI 7002458;
BAS TSINTL ESI 7002490 - BAS TSINTL ESI 7002490;
BAS TSINTL ESI 7004784 - BAS TSINTL ESI 7004784;
BAS TSINTL ESI 7004804 - BAS TSINTL ESI 7004804;
BAS TSINTL ESI 7005333 - BAS TSINTL ESI 7005333;
BAS TSINTL ESI 7005343 - BAS TSINTL ESI 7005343;
BAS TSINTL ESI 7006165 - BAS TSINTL ESI 7006165;
BAS TSINTL ESI 7006168 - BAS TSINTL ESI 7006168;
BAS TSINTL ESI 7006216  - BAS TSINTL ESI 7006216;
BAS TSINTL ESI 7006217 - BAS TSINTL ESI 7006217;
BAS TSINTL ESI 7006223 - BAS TSINTL ESI 7006223;
BAS TSINTL ESI 7006224 - BAS TSINTL ESI 7006224;
BAS TSINTL ESI 7006280 - BAS TSINTL ESI 7006280;
BAS TSINTL ESI 7006282 - BAS TSINTL ESI 7006282;
BAS TSINTL ESI 7006286 - BAS TSINTL ESI 7006286;
BAS TSINTL ESI 7006291 - BAS TSINTL ESI 7006291;
BAS TSINTL ESI 7006295 - BAS TSINTL ESI 7006295;
BAS TSINTL ESI 7006350 - BAS TSINTL ESI 7006350;
BAS TSINTL ESI 7006352 - BAS TSINTL ESI 7006352;
BAS TSINTL ESI 7006397 - BAS TSINTL ESI 7006397;
BAS TSINTL ESI 7006442 - BAS TSINTL ESI 7006442;
BAS TSINTL ESI 7006908 - BAS TSINTL ESI 7006908;
BAS TSINTL ESI 7007545 - BAS TSINTL ESI 7007545;
BAS TSINTL ESI 7007890 - BAS TSINTL ESI 7007890;
BAS TSINTL ESI 7007891 - BAS TSINTL ESI 7007891;
BAS TSINTL ESI 7007909 - BAS TSINTL ESI 7007909;
BAS TSINTL ESI 7007942 - BAS TSINTL ESI 7007942;
BAS TSINTL ESI 7007949 - BAS TSINTL ESI 7007949;
BAS TSINTL ESI 7007952 - BAS TSINTL ESI 7007952;
BAS TSINTL ESI 7007981 - BAS TSINTL ESI 7007981;
BAS TSINTL ESI 7007983 - BAS TSINTL ESI 7007983;
BAS TSINTL ESI 7007990 - BAS TSINTL ESI 7007990;
BAS TSINTL ESI 7008010 - BAS TSINTL ESI 7008010;
BAS TSINTL ESI 7008018 - BAS TSINTL ESI 7008018;

BAS TSINTL ESI 7008036 - BAS TSINTL ESI 7008036;
BAS TSINTL ESI 7008039 - BAS TSINTL ESI 7008039;
BAS TSINTL ESI 7008129 - BAS TSINTL ESI 7008129;
BAS TSINTL ESI 7008177 - BAS TSINTL ESI 7008177;
BAS TSINTL ESI 7008303 - BAS TSINTL ESI 7008303;
BAS TSINTL ESI 7008311 - BAS TSINTL ESI 7008311;
BAS TSINTL ESI 7008324 - BAS TSINTL ESI 7008324;
BAS TSINTL ESI 7008337 - BAS TSINTL ESI 7008337;
BAS TSINTL ESI 7008386 - BAS TSINTL ESI 7008386;
BAS TSINTL ESI 7008387 - BAS TSINTL ESI 7008387;
BAS TSINTL ESI 7008388 - BAS TSINTL ESI 7008388;
BAS TSINTL ESI 7008403 - BAS TSINTL ESI 7008403;
BAS TSINTL ESI 7008404 - BAS TSINTL ESI 7008404;
BAS TSINTL ESI 7008579 - BAS TSINTL ESI 7008579;
BAS TSINTL ESI 7008586 - BAS TSINTL ESI 7008586;
BAS TSINTL ESI 7014161 - BAS TSINTL ESI 7014161;
BAS TSINTL ESI 7015662 - BAS TSINTL ESI 7015662;
BAS TSINTL ESI 7015819 - BAS TSINTL ESI 7015819;
BAS TSINTL ESI 7015820 - BAS TSINTL ESI 7015820;
BAS TSINTL ESI 7015821 - BAS TSINTL ESI 7015821;
BAS TSINTL ESI 7015836 - BAS TSINTL ESI 7015836;
BAS TSINTL ESI 7015837 - BAS TSINTL ESI 7015837;
BAS TSINTL ESI 7015838 - BAS TSINTL ESI 7015838;
BAS TSINTL ESI 7015839 - BAS TSINTL ESI 7015839;
BAS TSINTL ESI 7015840 - BAS TSINTL ESI 7015840;
BAS TSINTL ESI 7015841 - BAS TSINTL ESI 7015841;
BAS TSINTL ESI 7015842 - BAS TSINTL ESI 7015842;
BAS TSINTL ESI 7015844 - BAS TSINTL ESI 7015844;
BAS TSINTL ESI 7015869 - BAS TSINTL ESI 7015869;
BAS TSINTL ESI 7015871 - BAS TSINTL ESI 7015871;
BAS TSINTL ESI 7015872 - BAS TSINTL ESI 7015872;
BAS TSINTL ESI 7015873 - BAS TSINTL ESI 7015873;
BAS TSINTL ESI 7015874 - BAS TSINTL ESI 7015874;
BAS TSINTL ESI 7015876 - BAS TSINTL ESI 7015876;
BAS TSINTL ESI 7015878 - BAS TSINTL ESI 7015878;
BAS TSINTL ESI 7015879 - BAS TSINTL ESI 7015879;
BAS TSINTL ESI 7015880 - BAS TSINTL ESI 7015880;
BAS TSINTL ESI 7015882 - BAS TSINTL ESI 7015882;
BAS TSINTL ESI 7015883 - BAS TSINTL ESI 7015883;
BAS TSINTL ESI 7015884 - BAS TSINTL ESI 7015884;
BAS TSINTL ESI 7015885 - BAS TSINTL ESI 7015885;
BAS TSINTL ESI 7015919 - BAS TSINTL ESI 7015919;
BAS TSINTL ESI 7015951 - BAS TSINTL ESI 7015951;
BAS TSINTL ESI 7016075 - BAS TSINTL ESI 7016075;
BAS TSINTL ESI 7016078 - BAS TSINTL ESI 7016078;
BAS TSINTL ESI 7016119 - BAS TSINTL ESI 7016119;

BAS TSINTL ESI 7016382 - BAS TSINTL ESI 7016382;
BAS TSINTL ESI 7016392 - BAS TSINTL ESI 7016392;
BAS TSINTL ESI 7017875 - BAS TSINTL ESI 7017875;
BAS TSINTL ESI 7017887 - BAS TSINTL ESI 7017887;
BAS TSINTL ESI 7018675 - BAS TSINTL ESI 7018675;
BAS TSINTL ESI 7018945 - BAS TSINTL ESI 7018945;
BAS TSINTL ESI 7019222 - BAS TSINTL ESI 7019222;
BAS TSINTL ESI 7019272 - BAS TSINTL ESI 7019272;
BAS TSINTL ESI 7019290 - BAS TSINTL ESI 7019290;
BAS TSINTL ESI 7019298 - BAS TSINTL ESI 7019298;
Bear-T00030926 - Bear-T00030936;
Bear-T00030937 - Bear-T00030947;
Bear-T00030948 - Bear-T00030949;
Bear-T00048200 - Bear-T00048202;
Bear-T00048317 - Bear-T00048327;
Bear-T00048328 - Bear-T00048338;
Bear-T00048339 - Bear-T00048340;
Bear-T00091624 - Bear-T00091625;
Bear-T00395600 - Bear-T00395610;
Bear-T00395611 - Bear-T00395621;
Bear-T00395622 - Bear-T00395623;
Bear-T00546576 - Bear-T00546580;
Bear-T00701996 - Bear-T00702002;
Bear-T00702006 - Bear-T00702012;
Bear-T01219583 - Bear-T01219586;
Bear-T01219587 - Bear-T01219597;
Bear-T01219690 - Bear-T01219700;
Bear-T01219701 - Bear-T01219711;
Bear-T01219712 - Bear-T01219713;
Bear-T01219717 - Bear-T01219727;
Bear-T01219728 - Bear-T01219738;
Bear-T01219739 - Bear-T01219740;
Bear-T01219744 - Bear-T01219754;
Bear-T01219755 - Bear-T01219765;
Bear-T01219766 - Bear-T01219767;
Bear-T01222654 - Bear-T01222661;
Bear-T01228550 - Bear-T01228551;
Bear-T01228895 - Bear-T01228902;
Bear-T01229007 - Bear-T01229008;
Bear-T01236367 - Bear-T01236371;
Bear-T01236373 - Bear-T01236377;
Bear-T01236379 - Bear-T01236383;
Bear-T01236387 - Bear-T01236391;
Bear-T01236393 - Bear-T01236397;
Bear-T01236399 - Bear-T01236403;
Bear-T01236405 - Bear-T01236409;

Bear-T01237571 - Bear-T01237572;
Bear-T01243182 - Bear-T01243186;
Bear-T01243642 - Bear-T01243644;
Bear-T01243646 - Bear-T01243648;
Bear-T01243650 - Bear-T01243652;
Bear-T01245604 - Bear-T01245607;
Bear-T01245608 - Bear-T01245608;
Bear-T01245832 - Bear-T01245848;
Bear-T01245853 - Bear-T01245869;
Bear-T01249961 - Bear-T01249963;
Bear-T01249964 - Bear-T01249964;
Bear-T01252856 - Bear-T01252861;
Bear-T01252862 - Bear-T01252862;
Bear-T01253607 - Bear-T01253607;
Bear-T01253620 - Bear-T01253621;
Bear-T01253622 - Bear-T01253623;
Bear-T01253642 - Bear-T01253642;
Bear-T01253643 - Bear-T01253643;
Bear-T01253649 - Bear-T01253649;
Bear-T01253650 - Bear-T01253650;
Bear-T01253651 - Bear-T01253652;
Bear-T01255231 - Bear-T01255232;
Bear-T01224877 - Bear-T01224884;
Bear-T01224927 - Bear-T01224977;
Bear-T01224997 - Bear-T01225001;
Bear-T01225116 - Bear-T01225116;
Bear-T01225117 - Bear-T01225122;
Bear-T01225528 - Bear-T01225528;
Bear-T01225531 - Bear-T01225535;
Bear-T01227618 - Bear-T01227622;
Bear-T01227947 - Bear-T01227997;
Bear-T01228027 - Bear-T01228028;
Bear-T01407832 - Bear-T01407834;
Bear-T01414582 - Bear-T01414583;
Bear-T01414594 - Bear-T01414608;
Bear-T01418152 - Bear-T01418157;
Bear-T01418158 - Bear-T01418171;
Bear-T01419804 - Bear-T01419806;
Bear-T01439180 - Bear-T01439182;
Bear-T01441585 - Bear-T01441586;
Bear-T01441597 - Bear-T01441611;
Bear-T01441859 - Bear-T01441864;
Bear-T01441865 - Bear-T01441878;
Bear-T01442726 - Bear-T01442728;
CSS-TASER-E 00038395 - CSS-TASER-E 00038395;
CSS-TASER-E 00050251 - CSS-TASER-E 00050251;

CSS-TASER-E 00153921 - CSS-TASER-E 00153922;
CSS-TASER-E 00153961 - CSS-TASER-E 00153963;
CSS-TASER-E 00153965 - CSS-TASER-E 00153967;
CSS-TSRGA-E 00303179 - CSS-TSRGA-E 00303180;
CSS-TSRGA-E 00308373 - CSS-TSRGA-E 00308374;
CSS-TSRGA-E 00311846 - CSS-TSRGA-E 00311857;
CSS-TSRGA-E 00325451 - CSS-TSRGA-E 00325458;
CSS-TSRGA-E 00362876 - CSS-TSRGA-E 00362878;
CSS-TSRGA-E 00437622 - CSS-TSRGA-E 00437623;
CSS-TSRGA-E 00437633 - CSS-TSRGA-E 00437634;
CSS-TSRGA-E 00503548 - CSS-TSRGA-E 00503548;
CSS-TSRGA-E 00581112 - CSS-TSRGA-E 00581123;
CSS-TSRGA-E 00586405 - CSS-TSRGA-E 00586408;
CSS-TSRGA-E 00612480 - CSS-TSRGA-E 00612514;
CSS-TSRGA-E 00625439 - CSS-TSRGA-E 00625442;
CSS-TSRGA-E 00637923 - CSS-TSRGA-E 00637926;
CSS-TSRGA-E 00645021 - CSS-TSRGA-E 00645021;
CSS-TSRGA-E 00768435 - CSS-TSRGA-E 00768437;
CSS-TSRGA-E 00768438 - CSS-TSRGA-E 00768440;
CSS-TSRGA-E 00768560 - CSS-TSRGA-E 00768567;
CSS-TSRGA-E 00768604 - CSS-TSRGA-E 00768608;
CSS-TSRGA-E 00768623 - CSS-TSRGA-E 00768627;
CSS-TSRGA-E 00768639 - CSS-TSRGA-E 00768645;
CSS-TSRGA-E 00768693 - CSS-TSRGA-E 00768699;
CSS-TSRGA-E 00768700 - CSS-TSRGA-E 00768703;
CSS-TSRGA-E 00768724 - CSS-TSRGA-E 00768728;
CSS-TSRGA-E 00768949 - CSS-TSRGA-E 00768960;
CSS-TSRGA-E 00801664 - CSS-TSRGA-E 00801669;
CSS-TSRGA-E 00801670 - CSS-TSRGA-E 00801677;
CSS-TSRGA-E 00801678 - CSS-TSRGA-E 00801681;
CSS-TSRGA-E 00801994 - CSS-TSRGA-E 00801998;
CSS-TSRGA-E 00801999 - CSS-TSRGA-E 00802003;
CSS-TSRGA-E 00802004 - CSS-TSRGA-E 00802038;
CSS-TSRGA-E 03394996 - CSS-TSRGA-E 03394996;
CSS-TSRGA-E 03394997 - CSS-TSRGA-E 03394997;
CSS-TSRGA-E 03394998 - CSS-TSRGA-E 03394998;
CSS-TSRGA-E 03394999 - CSS-TSRGA-E 03394999;
CSS-TSRGA-E 03395000 - CSS-TSRGA-E 03395000;
CSS-TSRGA-E 03395001 - CSS-TSRGA-E 03395001;
CSS-TSRGA-E 03395002 - CSS-TSRGA-E 03395002;
CSS-TSRGA-E 03395003 - CSS-TSRGA-E 03395003;
CSS-TSRGA-E 03395004 - CSS-TSRGA-E 03395004;
CSS-TSRGA-E 03395005 - CSS-TSRGA-E 03395005;
CSS-TSRGA-E 03395006 - CSS-TSRGA-E 03395006;
CSS-TSRGA-E 03395008 - CSS-TSRGA-E 03395008;
CSS-TSRGA-E 03395009 - CSS-TSRGA-E 03395009;

CSS-TSRGA-E 03395010 - CSS-TSRGA-E 03395010;
CSS-TSRGA-E 03395011 - CSS-TSRGA-E 03395011;
CSS-TSRGA-E 04138041 - CSS-TSRGA-E 04138052;
CSS-TSRGA-E 06408805 - CSS-TSRGA-E 06408808;
CSS-TSRGA-E 06409134 - CSS-TSRGA-E 06409136;
CSS-TSRGA-E 06409669 - CSS-TSRGA-E 06409677;
CSS-TSRGA-E 06442643 - CSS-TSRGA-E 06442645;
CSS-TSRGA-E 06475094 - CSS-TSRGA-E 06475186;
CSS-TSRGA-E 06475188 - CSS-TSRGA-E 06475190;
CSS-TSRGA-E 08293441 - CSS-TSRGA-E 08293442;
CSS-TSRGA-E 08293448 - CSS-TSRGA-E 08293450;
CSS-TSRGA-E 08293451 - CSS-TSRGA-E 08293453;
CSS-TSRGA-E 08294314 - CSS-TSRGA-E 08294315;
CSS-TSRGA-E 08294388 - CSS-TSRGA-E 08294395;
CSS-TSRGA-E 08294654 - CSS-TSRGA-E 08294654;
CSS-TSRGA-E 08294656 - CSS-TSRGA-E 08294656;
CSS-TSRGA-E 08294658 - CSS-TSRGA-E 08294658;
CSS-TSRGA-E 08294660 - CSS-TSRGA-E 08294660;
CSS-TSRGA-E 08294662 - CSS-TSRGA-E 08294662;
CSS-TSRGA-E 08294664 - CSS-TSRGA-E 08294664;
CSS-TSRGA-E 08294695 - CSS-TSRGA-E 08294729;
CSS-TSRGA-E 08295040 - CSS-TSRGA-E 08295041;
CSS-TSRGA-E 08295063 - CSS-TSRGA-E 08295064;
CSS-TSRGA-E 08296915 - CSS-TSRGA-E 08296915;
CSS-TSRGA-E 08296916 - CSS-TSRGA-E 08296916;
CSS-TSRGA-E 08296934 - CSS-TSRGA-E 08296934;
CSS-TSRGA-E 08316280 - CSS-TSRGA-E 08316281;
CSS-TSRGA-E 08316381 - CSS-TSRGA-E 08316482;
CSS-TSRGA-E 08316569 - CSS-TSRGA-E 08316670;
CSS-TSRGA-E 08320951 - CSS-TSRGA-E 08320952;
CSS-TSRGA-E 08320963 - CSS-TSRGA-E 08320963;
CSS-TSRGA-E 08320966 - CSS-TSRGA-E 08320966;
CSS-TSRGA-E 08320967 - CSS-TSRGA-E 08320973;
CSS-TSRGA-E 08322653 - CSS-TSRGA-E 08322654;
CSS-TSRGA-E 08323602 - CSS-TSRGA-E 08323603;
CSS-TSRGA-E 08324418 - CSS-TSRGA-E 08324420;
CSS-TSRGA-E 08324425 - CSS-TSRGA-E 08324427;
CSS-TSRGA-E 08324976 - CSS-TSRGA-E 08324977;
CSS-TSRGA-E 08327999 - CSS-TSRGA-E 08328004;
CSS-TSRGA-E 08328265 - CSS-TSRGA-E 08328272;
CSS-TSRGA-E 08330851 - CSS-TSRGA-E 08330853;
CSS-TSRGA-E 08330855 - CSS-TSRGA-E 08330857;
CSS-TSRGA-E 08331692 - CSS-TSRGA-E 08331698;
CSS-TSRGA-E 08338797 - CSS-TSRGA-E 08338817;
CSS-TSRGA-E 08342028 - CSS-TSRGA-E 08342039;
CSS-TSRGA-E 08342041 - CSS-TSRGA-E 08342058;

CSS-TSRGA-E 08348481 - CSS-TSRGA-E 08348485;
CSS-TSRGA-E 08348526 - CSS-TSRGA-E 08348531;
CSS-TSRGA-E 08349110 - CSS-TSRGA-E 08349115;
CSS-TSRGA-E 08349270 - CSS-TSRGA-E 08349275;
CSS-TSRGA-E 08349377 - CSS-TSRGA-E 08349384;
CSS-TSRGA-E 08366481 - CSS-TSRGA-E 08366486;
CSS-TSRGA-E 08366487 - CSS-TSRGA-E 08366493;
CSS-TSRGA-E 08366495 - CSS-TSRGA-E 08366507;
CSS-TSRGA-E 08366513 - CSS-TSRGA-E 08366525;
CSS-TSRGA-E 08366621 - CSS-TSRGA-E 08366627;
CSS-TSRGA-E 08366638 - CSS-TSRGA-E 08366644;
CSS-TSRGA-E 08366689 - CSS-TSRGA-E 08366695;
CSS-TSRGA-E 08374531 - CSS-TSRGA-E 08374535;
CSS-TSRGA-E 08374747 - CSS-TSRGA-E 08374752;
CSS-TSRGA-E 08377608 - CSS-TSRGA-E 08377609;
CSS-TSRGA-E 08378025 - CSS-TSRGA-E 08378026;
CSS-TSRGA-E 08378033 - CSS-TSRGA-E 08378034;
CSS-TSRGA-E 08378051 - CSS-TSRGA-E 08378052;
CSS-TSRGA-E 08378404 - CSS-TSRGA-E 08378410;
CSS-TSRGA-E 08378921 - CSS-TSRGA-E 08378921;
CSS-TSRGA-E 08378923 - CSS-TSRGA-E 08378923;
CSS-TSRGA-E 08378926 - CSS-TSRGA-E 08378930;
CSS-TSRGA-E 08378948 - CSS-TSRGA-E 08378948;
CSS-TSRGA-E 08378963 - CSS-TSRGA-E 08378963;
CSS-TSRGA-E 08378993 - CSS-TSRGA-E 08378995;
CSS-TSRGA-E 08379008 - CSS-TSRGA-E 08379018;
CSS-TSRGA-E 08379019 - CSS-TSRGA-E 08379019;
CSS-TSRGA-E 08379020 - CSS-TSRGA-E 08379030;
CSS-TSRGA-E 08379031 - CSS-TSRGA-E 08379031;
CSS-TSRGA-E 08379086 - CSS-TSRGA-E 08379087;
CSS-TSRGA-E 08382119 - CSS-TSRGA-E 08382123;
CSS-TSRGA-E 08382134 - CSS-TSRGA-E 08382139;
CSS-TSRGA-E 08382140 - CSS-TSRGA-E 08382145;
CSS-TSRGA-E 08382152 - CSS-TSRGA-E 08382158;
CSS-TSRGA-E 08382167 - CSS-TSRGA-E 08382172;
CSS-TSRGA-E 08382177 - CSS-TSRGA-E 08382183;
CSS-TSRGA-E 08382184 - CSS-TSRGA-E 08382190;
CSS-TSRGA-E 08382191 - CSS-TSRGA-E 08382197;
CSS-TSRGA-E 08382198 - CSS-TSRGA-E 08382203;
CSS-TSRGA-E 08382204 – CSS-TSRGA-E 08382209;
CSS-TSRGA-E 08382210 - CSS-TSRGA-E 08382217;
CSS-TSRGA-E 08382218 - CSS-TSRGA-E 08382223;
CSS-TSRGA-E 08382224 - CSS-TSRGA-E 08382229;
CSS-TSRGA-E 08382230 - CSS-TSRGA-E 08382233;
CSS-TSRGA-E 08382234 - CSS-TSRGA-E 08382240;
CSS-TSRGA-E 08382241 - CSS-TSRGA-E 08382248;

782228.1

CSS-TSRGA-E 08382249 - CSS-TSRGA-E 08382255;
CSS-TSRGA-E 08385341 - CSS-TSRGA-E 08385346;
CSS-TSRGA-E 08385774 - CSS-TSRGA-E 08385780;
CSS-TSRGA-E 08385976 - CSS-TSRGA-E 08385981;
CSS-TSRGA-E 08385991 - CSS-TSRGA-E 08385997;
CSS-TSRGA-E 08397372 - CSS-TSRGA-E 08397378;
CSS-TSRGA-E 08397746 - CSS-TSRGA-E 08397752;
CSS-TSRGA-E 08397753 - CSS-TSRGA-E 08397758;
CSS-TSRGA-E 08402947 - CSS-TSRGA-E 08402948;
CSS-TSRGA-E 08403023 - CSS-TSRGA-E 08403034;
CSS-TSRGA-E 08403037 - CSS-TSRGA-E 08403048;
CSS-TSRGA-E 08403066 - CSS-TSRGA-E 08403072;
CSS-TSRGA-E 08403076 - CSS-TSRGA-E 08403082;
CSS-TSRGA-E 08406879 - CSS-TSRGA-E 08406881;
CSS-TSRGA-E 08409222 - CSS-TSRGA-E 08409224;
CSS-TSRGA-E 08409226 - CSS-TSRGA-E 08409228;
CSS-TSRGA-E 08409387 - CSS-TSRGA-E 08409387;
CSS-TSRGA-E 08514316 - CSS-TSRGA-E 08514317;
CSS-TSRGA-E 08514709 - CSS-TSRGA-E 08514712;
CSS-TSRGA-E 08522092 - CSS-TSRGA-E 08522092;
CSS-TSRGA-E 08523914 - CSS-TSRGA-E 08523924;
CSS-TSRGA-E 08523939 - CSS-TSRGA-E 08523949;
CSS-TSRGA-E 08525843 - CSS-TSRGA-E 08525850;
CSS-TSRGA-E 08525876 - CSS-TSRGA-E 08525877;
CSS-TSRGA-E 08525879 - CSS-TSRGA-E 08525880;
CSS-TSRGA-E 08525942 - CSS-TSRGA-E 08525945;
CSS-TSRGA-E 08525985 - CSS-TSRGA-E 08525986;
CSS-TSRGA-E 08525987 - CSS-TSRGA-E 08525988;
CSS-TSRGA-E 08525997 - CSS-TSRGA-E 08526001;
CSS-TSRGA-E 08526002 - CSS-TSRGA-E 08526004;
CSS-TSRGA-E 08526005 - CSS-TSRGA-E 08526007;
CSS-TSRGA-E 08526008 - CSS-TSRGA-E 08526010;
CSS-TSRGA-E 08526011 - CSS-TSRGA-E 08526013;
CSS-TSRGA-E 08526014 - CSS-TSRGA-E 08526017;
CSS-TSRGA-E 08526059 - CSS-TSRGA-E 08526065;
CSS-TSRGA-E 08526066 - CSS-TSRGA-E 08526072;
CSS-TSRGA-E 08527167 - CSS-TSRGA-E 08527168;
CSS-TSRGA-E 08527202 - CSS-TSRGA-E 08527207;
CSS-TSRGA-E 08527208 - CSS-TSRGA-E 08527213;
CSS-TSRGA-E 08527214 - CSS-TSRGA-E 08527219;
CSS-TSRGA-E 08527220 - CSS-TSRGA-E 08527225;
CSS-TSRGA-E 08527324 - CSS-TSRGA-E 08527326;
CSS-TSRGA-E 08527329 - CSS-TSRGA-E 08527331;
CSS-TSRGA-E 08527491 - CSS-TSRGA-E 08527491;
CSS-TSRGA-E 08532989 - CSS-TSRGA-E 08532990;
CSS-TSRGA-E 08543644 - CSS-TSRGA-E 08543645;

CSS-TSRGA-E 08543646 - CSS-TSRGA-E 08543647;
CSS-TSRGA-E 08543829 - CSS-TSRGA-E 08543834;
CSS-TSRGA-E 08543835 - CSS-TSRGA-E 08543850;
CSS-TSRGA-E 08544022 - CSS-TSRGA-E 08544027;
CSS-TSRGA-E 08544028 - CSS-TSRGA-E 08544043;
CSS-TSRGA-E 08545165 - CSS-TSRGA-E 08545166;
CSS-TSRGA-E 08547706 - CSS-TSRGA-E 08547854;
CSS-TSRGA-E 08547856 - CSS-TSRGA-E 08547864;
CSS-TSRGA-E 08547865 - CSS-TSRGA-E 08547902;
CSS-TSRGA-E 08547913 - CSS-TSRGA-E 08547950;
CSS-TSRGA-E 08547961 - CSS-TSRGA-E 08547998;
CSS-TSRGA-E 08548145 - CSS-TSRGA-E 08548145;
CSS-TSRGA-E 08548146 - CSS-TSRGA-E 08548155;
CSS-TSRGA-E 08548156 - CSS-TSRGA-E 08548158;
CSS-TSRGA-E 08548159 - CSS-TSRGA-E 08548160;
CSS-TSRGA-E 08548161 - CSS-TSRGA-E 08548162;
CSS-TSRGA-E 08554576 - CSS-TSRGA-E 08554576;
CSS-TSRGA-E 08554624 - CSS-TSRGA-E 08554691;
CSS-TSRGA-E 08555961 - CSS-TSRGA-E 08556011;
CSS-TSRGA-E 08557667 - CSS-TSRGA-E 08557667;
DBSI-T 000071011 - DBSI-T 000071011;
DBSI-T 000071990 - DBSI-T 000072011;
DBSI-T 000072012 - DBSI-T 000072024;
DBSI-T 000072160 - DBSI-T 000072161;
DBSI-T 000072162 - DBSI-T 000072162;
DBSI-T 000072163 - DBSI-T 000072163;
DBSI-T 000510344 - DBSI-T 000510345;
DBSI-T 000510836 - DBSI-T 000510837;
DBSI-T 000745322 - DBSI-T 000745323;
DBSI-T 001055179 - DBSI-T 001055179;
DBSI-T 001055224 - DBSI-T 001055267;
DBSI-T 001055268 - DBSI-T 001055269;
DBSI-T 001178192 - DBSI-T 001178195;
DBSI-T 001187133 - DBSI-T 001187134;
DBSI-T 001188436 - DBSI-T 001188439;
DBSI-T 001189040 - DBSI-T 001189043;
DBSI-T 001219457 - DBSI-T 001219460;
DBSI-T 001219468 - DBSI-T 001219471;
DBSI-T 001226855 - DBSI-T 001226858;
DBSI-T 001226866 - DBSI-T 001226869;
DBSI-T 001241441 - DBSI-T 001241444;
DBSI-T 001241451 - DBSI-T 001241454;
DBSI-T 001259745 - DBSI-T 001259748;
DBSI-T 001259755 - DBSI-T 001259758;
DBSI-T 001259770 - DBSI-T 001259773;
DBSI-T 001273459 - DBSI-T 001273462;

DBSI-T 001273470 - DBSI-T 001273473;
DBSI-T 001323122 - DBSI-T 001323125;
DBSI-T 001323137 - DBSI-T 001323140;
DBSI-T 001323156 - DBSI-T 001323159;
DBSI-T 001331202 - DBSI-T 001331205;
DBSI-T 001331213 - DBSI-T 001331216;
DBSI-T 001341199 - DBSI-T 001341202;
DBSI-T 001341210 - DBSI-T 001341213;
DBSI-T 001341225 - DBSI-T 001341228;
DBSI-T 001344180 - DBSI-T 001344183;
DBSI-T 001344191 - DBSI-T 001344194;
DBSI-T 001359347 - DBSI-T 001359350;
DBSI-T 001359395 - DBSI-T 001359398;
DBSI-T 001359405 - DBSI-T 001359408;
DBSI-T 001359415 - DBSI-T 001359418;
DBSI-T 001359634 - DBSI-T 001359637;
DBSI-T 001359649 - DBSI-T 001359652;
DBSI-T 001359668 - DBSI-T 001359671;
DBSI-T 001359765 - DBSI-T 001359768;
DBSI-T 001361279 - DBSI-T 001361282;
DBSI-T 001362255 - DBSI-T 001362258;
DBSI-T 001362265 - DBSI-T 001362268;
DBSI-T 001375199 - DBSI-T 001375202;
DBSI-T 001375210 - DBSI-T 001375213;
DBSI-T 001375225 - DBSI-T 001375228;
DBSI-T 001390680 - DBSI-T 001390683;
DBSI-T 001390695 - DBSI-T 001390698;
DBSI-T 001390714 - DBSI-T 001390717;
DBSI-T 001392017 - DBSI-T 001392019;
DBSI-T 001392020 - DBSI-T 001392024;
DBSI-T 001400853 - DBSI-T 001400856;
DBSI-T 001416429 - DBSI-T 001416432;
DBSI-T 001427221 - DBSI-T 001427224;
DBSI-T 001429378 - DBSI-T 001429381;
DBSI-T 001477375 - DBSI-T 001477378;
DBSI-T 001477689 - DBSI-T 001477692;
DBSI-T 001479758 - DBSI-T 001479761;
DBSI-T 001481081 - DBSI-T 001481084;
DBSI-T 001498450 - DBSI-T 001498453;
DBSI-T 001539533 - DBSI-T 001539536;
DBSI-T 001539547 - DBSI-T 001539550;
DBSI-T 001541778 - DBSI-T 001541781;
DBSI-T 001818818 - DBSI-T 001818819;
DBSI-T 001818952 - DBSI-T 001818953;
DBSI-T 001819104 - DBSI-T 001819106;
DBSI-T 001821151 - DBSI-T 001821155;

DBSI-T 001821156 - DBSI-T 001821161;
DBSI-T 001821174 - DBSI-T 001821174;
DBSI-T 001821189 - DBSI-T 001821189;
DBSI-T 001821223 - DBSI-T 001821223;
DBSI-T 001821230 - DBSI-T 001821232;
DBSI-T 001821236 - DBSI-T 001821238;
DBSI-T 001821240 - DBSI-T 001821245;
DBSI-T 001821256 - DBSI-T 001821260;
DBSI-T 001821312 - DBSI-T 001821313;
DBSI-T 001903071 - DBSI-T 001903072;
DBSI-T 001903077 - DBSI-T 001903078;
DBSI-T 001914774 - DBSI-T 001914779;
DBSI-T 001914866 - DBSI-T 001914870;
DBSI-T 001914885 - DBSI-T 001914888;
DBSI-T 001914889 - DBSI-T 001914896;
DBSI-T 001914916 - DBSI-T 001914925;
DBSI-T 001928169 - DBSI-T 001928169;
DBSI-T 001928172 - DBSI-T 001928177;
DBSI-T 001931505 - DBSI-T 001931513;
DBSI-T 001931536 - DBSI-T 001931540;
DBSI-T 001935984 - DBSI-T 001935984;
DBSI-T 001935986 - DBSI-T 001935988;
DBSI-T 001936097 - DBSI-T 001936098;
DBSI-T 001936099 - DBSI-T 001936103;
DBSI-T 001936116 - DBSI-T 001936117;
DBSI-T 001936120 - DBSI-T 001936121;
DBSI-T 001936143 - DBSI-T 001936143;
DBSI-T 001936145 - DBSI-T 001936146;
DBSI-T 001936225 - DBSI-T 001936226;
DBSI-T 001936227 - DBSI-T 001936228;
DBSI-T 001936399 - DBSI-T 001936401;
DBSI-T 001936444 - DBSI-T 001936446;
DBSI-T 001951582 - DBSI-T 001951584;
DBSI-T 001951935 - DBSI-T 001951937;
DBSI-T 001952916 - DBSI-T 001952918;
DBSI-T 001953180 - DBSI-T 001953184;
DBSI-T 001954395 - DBSI-T 001954396;
DBSI-T 001964231 - DBSI-T 001964277;
DBSI-T 002146966 - DBSI-T 002147012;
DBSI-T 002950948 - DBSI-T 002950953;
DBSI-T 002964270 - DBSI-T 002964272;
DBSI-T 002966351 - DBSI-T 002966351;
DBSI-T 003132109 - DBSI-T 003132109;
DBSI-T 003233608 - DBSI-T 003233609;
DBSI-T 003233610 - DBSI-T 003233611;
DBSI-T 003233612 - DBSI-T 003233613;

DBSI-T 003233635 - DBSI-T 003233636;
DBSI-T 003233637 - DBSI-T 003233638;
DBSI-T 003242504 - DBSI-T 003242505;
DBSI-T 003243441 - DBSI-T 003243443;
DBSI-T 003803442 - DBSI-T 003803443;
DBSI-T 003994040 - DBSI-T 003994051;
DBSI-T 004290822 - DBSI-T 004290822;
DBSI-T 004290823 - DBSI-T 004290823;
DBSI-T 004293713 - DBSI-T 004293714;
DBSI-T 005255369 - DBSI-T 005255371;
DBSI-T 005255372 - DBSI-T 005255374;
DBSI-T 005255657 - DBSI-T 005255658;
DBSI-T 005255664 - DBSI-T 005255665;
DBSI-T 005255673 - DBSI-T 005255675;
DBSI-T 005255676 - DBSI-T 005255677;
DBSI-T 005255678 - DBSI-T 005255680;
DBSI-T 005255681 - DBSI-T 005255683;
DBSI-T 005256156 - DBSI-T 005256158;
DBSI-T 005256159 - DBSI-T 005256161;
DBSI-T 005256168 - DBSI-T 005256170;
DBSI-T 005256508 - DBSI-T 005256510;
DBSI-T 005256511 - DBSI-T 005256513;
DBSI-T 005256520 - DBSI-T 005256522;
DBSI-T 005257130 - DBSI-T 005257132;
DBSI-T 005257136 - DBSI-T 005257138;
DBSI-T 005257143 - DBSI-T 005257145;
DBSI-T 005257146 - DBSI-T 005257147;
DBSI-T 005257343 - DBSI-T 005257343;
DBSI-T 005257356 - DBSI-T 005257357;
DBSI-T 005257962 - DBSI-T 005257964;
DBSI-T 005257993 - DBSI-T 005257996;
DBSI-T 005257999 - DBSI-T 005258000;
DBSI-T 005258017 - DBSI-T 005258019;
DBSI-T 005258020 - DBSI-T 005258020;
DBSI-T 005258021 - DBSI-T 005258022;
DBSI-T 005258023 - DBSI-T 005258025;
DBSI-T 005258031 - DBSI-T 005258033;
DBSI-T 005258037 - DBSI-T 005258039;
DBSI-T 005258040 - DBSI-T 005258042;
DBSI-T 005258043 - DBSI-T 005258045;
DBSI-T 005258059 - DBSI-T 005258060;
DBSI-T 005258067 - DBSI-T 005258069;
DBSI-T 005258076 - DBSI-T 005258078;
DBSI-T 005258082 - DBSI-T 005258084;
DBSI-T 005258104 - DBSI-T 005258105;
DBSI-T 005258106 - DBSI-T 005258108;

782228.1

DBSI-T 005258111 - DBSI-T 005258113;
DBSI-T 005258117 - DBSI-T 005258119;
DBSI-T 005258120 - DBSI-T 005258122;
DBSI-T 005258126 - DBSI-T 005258128;
DBSI-T 005258129 - DBSI-T 005258130;
DBSI-T 005258133 - DBSI-T 005258135;
DBSI-T 005258154 - DBSI-T 005258156;
DBSI-T 005258160 - DBSI-T 005258161;
DBSI-T 005258162 - DBSI-T 005258163;
DBSI-T 005258170 - DBSI-T 005258172;
DBSI-T 005258173 - DBSI-T 005258175;
DBSI-T 005258177 - DBSI-T 005258179;
DBSI-T 005258180 - DBSI-T 005258181;
DBSI-T 005258191 - DBSI-T 005258192;
DBSI-T 005258193 - DBSI-T 005258194;
DBSI-T 005258210 - DBSI-T 005258212;
DBSI-T 005258222 - DBSI-T 005258224;
DBSI-T 005258225 - DBSI-T 005258226;
DBSI-T 005258237 - DBSI-T 005258238;
DBSI-T 005258250 - DBSI-T 005258252;
DBSI-T 005258253 - DBSI-T 005258255;
DBSI-T 005258256 - DBSI-T 005258256;
DBSI-T 005258265 - DBSI-T 005258267;
DBSI-T 005258273 - DBSI-T 005258275;
DBSI-T 005258276 - DBSI-T 005258278;
DBSI-T 005258293 - DBSI-T 005258294;
DBSI-T 005258295 - DBSI-T 005258297;
DBSI-T 005258301 - DBSI-T 005258303;
DBSI-T 005258334 - DBSI-T 005258336;
DBSI-T 005258354 - DBSI-T 005258356;
DBSI-T 005258357 - DBSI-T 005258359;
DBSI-T 005258363 - DBSI-T 005258365;
DBSI-T 005258388 - DBSI-T 005258390;
DBSI-T 005258398 - DBSI-T 005258399;
DBSI-T 005258400 - DBSI-T 005258402;
DBSI-T 005258403 - DBSI-T 005258404;
DBSI-T 005258409 - DBSI-T 005258411;
DBSI-T 005258418 - DBSI-T 005258419;
DBSI-T 005258422 - DBSI-T 005258423;
DBSI-T 005258426 - DBSI-T 005258428;
DBSI-T 005258429 - DBSI-T 005258430;
DBSI-T 005258433 - DBSI-T 005258434;
DBSI-T 005258438 - DBSI-T 005258440;
DBSI-T 005258463 - DBSI-T 005258464;
DBSI-T 005258472 - DBSI-T 005258473;
DBSI-T 005258474 - DBSI-T 005258475;

DBSI-T 005258489 - DBSI-T 005258490;
DBSI-T 005258494 - DBSI-T 005258496;
DBSI-T 005258497 - DBSI-T 005258498;
DBSI-T 005258501 - DBSI-T 005258502;
DBSI-T 005258531 - DBSI-T 005258532;
DBSI-T 005258533 - DBSI-T 005258534;
DBSI-T 005258537 - DBSI-T 005258538;
DBSI-T 005258548 - DBSI-T 005258549;
DBSI-T 005258553 - DBSI-T 005258554;
DBSI-T 005258555 - DBSI-T 005258556;
DBSI-T 005258559 - DBSI-T 005258561;
DBSI-T 005258562 - DBSI-T 005258563;
DBSI-T 005258564 - DBSI-T 005258566;
DBSI-T 005258567 - DBSI-T 005258568;
DBSI-T 005258569 - DBSI-T 005258570;
DBSI-T 005258603 - DBSI-T 005258605;
DBSI-T 005258606 - DBSI-T 005258607;
DBSI-T 005258608 - DBSI-T 005258610;
DBSI-T 005258611 - DBSI-T 005258613;
DBSI-T 005258633 - DBSI-T 005258634;
DBSI-T 005258635 - DBSI-T 005258637;
DBSI-T 005258638 - DBSI-T 005258639;
DBSI-T 005258645 - DBSI-T 005258645;
DBSI-T 005258646 - DBSI-T 005258648;
DBSI-T 005258652 - DBSI-T 005258654;
DBSI-T 005258662 - DBSI-T 005258664;
DBSI-T 005258706 - DBSI-T 005258707;
DBSI-T 005258708 - DBSI-T 005258710;
DBSI-T 005258765 - DBSI-T 005258767;
DBSI-T 005395311 - DBSI-T 005395315;
DBSI-T 005395319 - DBSI-T 005395324;
DBSI-T 005395330 - DBSI-T 005395335;
DBSI-T 005395336 - DBSI-T 005395338;
DBSI-T 005395368 - DBSI-T 005395368;
DBSI-T 005395369 - DBSI-T 005395371;
DBSI-T 005397038 - DBSI-T 005397039;
DBSI-T 005404549 - DBSI-T 005404550;
DBSI-T 005404552 - DBSI-T 005404553;
DBSI-T 005404555 - DBSI-T 005404555;
DBSI-T 005404556 - DBSI-T 005404556;
DBSI-T 005404557 - DBSI-T 005404557;
DBSI-T 005404558 - DBSI-T 005404558;
DBSI-T 005404567 - DBSI-T 005404567;
DBSI-T 005404575 - DBSI-T 005404576;
DBSI-T 005404584 - DBSI-T 005404585;
DBSI-T 005404588 - DBSI-T 005404588;

DBSI-T 005438067 - DBSI-T 005438067;
DBSI-T 005450419 - DBSI-T 005450465;
DBSI-T 005593505 - DBSI-T 005593506;
DBSI-T 005595170 - DBSI-T 005595172;
DBSI-T 005609591 - DBSI-T 005609591;
DBSI-T 005609592 - DBSI-T 005609592;
DBSI-T 005610147 - DBSI-T 005610286;
DBSI-T 005610657 - DBSI-T 005610658;
DBSI-T 005610661 - DBSI-T 005610666;
DBSI-T 005610667 - DBSI-T 005610671;
DBSI-T 005618021 - DBSI-T 005618021;
DBSI-T 005618025 - DBSI-T 005618025;
DBSI-T 005672728 - DBSI-T 005672867;
DBSI-T 005672895 - DBSI-T 005672896;
DBSI-T 005676276 - DBSI-T 005676283;
DBSI-T 005677108 - DBSI-T 005677116;
DBSI-T 005677496 - DBSI-T 005677496;
DBSI-T 005677577 - DBSI-T 005677584;
DBSI-T 005812098 - DBSI-T 005812099;
DBSI-T 005814970 - DBSI-T 005814971;
DBSI-T 005814980 - DBSI-T 005814981;
DBSI-T 005814983 - DBSI-T 005814989;
DBSI-T 005815212 - DBSI-T 005815223;
DBSI-T 005815857 - DBSI-T 005815857;
DBSI-T 005815862 - DBSI-T 005815862;
DBSI-T 005815905 - DBSI-T 005815905;
DBSI-T 005815909 - DBSI-T 005815909;
DBSI-T 005816616 - DBSI-T 005816623;
DBSI-T 005817546 - DBSI-T 005817552;
DBSI-T 005818331 - DBSI-T 005818337;
DBSI-T 006074551 - DBSI-T 006074552;
DBSI-T 006075544 - DBSI-T 006075561;
DBSI-T 006075909 - DBSI-T 006075911;
DBSI-T 006093831 - DBSI-T 006093834;
DBSI-T 006094753 - DBSI-T 006094756;
DBSI-T 006149428 - DBSI-T 006149466;
DBSI-T 006164286 - DBSI-T 006164289;
DBSI-T 006226192 - DBSI-T 006226195;
DBSI-T 006284413 - DBSI-T 006284414;
DBSI-T 006324843 - DBSI-T 006324844;
DBSI-T 006327553 - DBSI-T 006327554;
DBSI-T 006337578 - DBSI-T 006337579;
DBSI-T 006337580 - DBSI-T 006337580;
DBSI-T 006341579 - DBSI-T 006341580;
DBSI-T 006350016 - DBSI-T 006350017;
DBSI-T 006356228 - DBSI-T 006356229;

DBSI-T 006356253 - DBSI-T 006356253;
DBSI-T 006389954 - DBSI-T 006389955;
DBSI-T 006389956 - DBSI-T 006389956;
DBSI-T 006440373 - DBSI-T 006440373;
DBSI-T 006504169 - DBSI-T 006504172;
DBSI-T 006514639 - DBSI-T 006514642;
DBSI-T 006519089 - DBSI-T 006519095;
DBSI-T 006519253 - DBSI-T 006519261;
DBSI-T 006519344 - DBSI-T 006519351;
DBSI-T 006526437 - DBSI-T 006526451;
DBSI-T 006527165 - DBSI-T 006527166;
DBSI-T 006535713 - DBSI-T 006535764;
DBSI-T 006549218-DBSI-T 006549227;
DBSI-T 006551234-DBSI-T 006551243;
DBSI-T 006551521- DBSI-T 006551530;
DBSI-T 006555696-DBSI-T 006555699;
DBSI-T 006686084- DBSI-T 006686093;
DBSI-T 006711617-DBSI-T 006711620;
DBSI-T 006713193-DBSI-T 006713195;
DBSI-T 006732672 -DBSI-T 006732673;
DBSI-T 006741023 -DBSI-T 006741034;
DBSI-T 006787329- DBSI-T 006787332;
DBSI-T 006787368-DBSI-T 006787371;
DBSI-T 006787410-DBSI-T 006787413;
DBSI-T 006787480-DBSI-T 006787483;
DBSI-T 006787754- DBSI-T 006787757;
DBSI-T 006787790- DBSI-T 006787793;
DBSI-T 006787826-DBSI-T 006787829;
DBSI-T 006592101-DBSI-T 006592111;
DBSI-T 006789165-DBSI-T 006789178;
DBSI-T 006789193-DBSI-T 006789195;
DBSI-T 006789217-DBSI-T 006789218;
DBSI-T 006789436-DBSI-T 006789441;
DBSI-T 006789442-DBSI-T 006789445;
DBSI-T 006789593- DBSI-T 006789594;
DBSI-T 006789762 -DBSI-T 006789764;
DBSI-T 006789779- DBSI-T 006789781;
DBSI-T 006789803 -DBSI-T 006789804;
DBSI-T 006789846-DBSI-T 006789857;
DBSI-T 006789871-DBSI-T 006789874;
DBSI-T 006790197-DBSI-T 006790198;
DBSI-T 006981203-DBSI-T 006981208;
DBSI-T 007002814-DBSI-T 007002815;
DBSI-T 007009058 -DBSI-T 007009082;
DBSI-T 007009083-DBSI-T 007009089;
DBSI-T 007009136-DBSI-T 007009160;

DBSI-T 007009161-DBSI-T 007009167;
DBSI-T 007010284-DBSI-T 007010308;
DBSI-T 007010309-DBSI-T 007010315;
DBSI-T 007010430-DBSI-T 007010454;
DBSI-T 007010455-DBSI-T 007010461;
DBSI-T 007010463-DBSI-T 007010487;
DBSI-T 007010488-DBSI-T 007010494;
DBSI-T 007010554 -DBSI-T 007010578;
DBSI-T 007010579-DBSI-T 007010585;
DBSI-T 007011097-DBSI-T 007011121;
DBSI-T 007011122-DBSI-T 007011128;
DBSI-T 007011154-DBSI-T 007011178;
DBSI-T 007011179-DBSI-T 007011185;
DBSI-T 007011232-DBSI-T 007011256;
DBSI-T 007011257-DBSI-T 007011263;
DBSI-T 007011306-DBSI-T 007011330;
DBSI-T 007011331-DBSI-T 007011337;
DBSI-T 007011380-DBSI-T 007011404;
DBSI-T 007011405-DBSI-T 007011411;
DBSI-T 007011531-DBSI-T 007011555;
DBSI-T 007011556-DBSI-T 007011562;
DBSI-T 007011579-DBSI-T 007011603;
DBSI-T 007011604-DBSI-T 007011610;
DBSI-T 007011940-DBSI-T 007011964;
DBSI-T 007011965-DBSI-T 007011971;
DBSI-T 007012580-DBSI-T 007012604;
DBSI-T 007012605-DBSI-T 007012611;
DBSI-T 007012658-DBSI-T 007012682;
DBSI-T 007012683-DBSI-T 007012689;
DBSI-T 007013692-DBSI-T 007013716;
DBSI-T 007013717-DBSI-T 007013723;
DBSI-T 007013761-DBSI-T 007013785;
DBSI-T 007013786-DBSI-T 007013792;
DBSI-T 007013835-DBSI-T 007013859;
DBSI-T 007013860-DBSI-T 007013866;
DBSI-T 007014050-DBSI-T 007014074;
DBSI-T 007014075-DBSI-T 007014081;
DBSI-T 007089547-DBSI-T 007089571;
DBSI-T 007089572-DBSI-T 007089578;
DBSI-T 007089894-DBSI-T 007089918;
DBSI-T 007089919-DBSI-T 007089925;
DBSI-T 007089968-DBSI-T 007089992;
DBSI-T 007089993-DBSI-T 007089999;
DBSI-T 007090499-DBSI-T 007090523;
DBSI-T 007090524-DBSI-T 007090530;
DBSI-T 007090777-DBSI-T 007090801;

DBSI-T 007090802-DBSI-T 007090808;
DBSI-T 007090971-DBSI-T 007090971;
DBSI-T 007090972-DBSI-T 007090972;
DBSI-T 007093140-DBSI-T 007093143;
DBSI-T 007093492-DBSI-T 007093493;
DBSI-T 007095366-DBSI-T 007095369;
DBSI-T 007095370-DBSI-T 007095374;
DBSI-T 007095375-DBSI-T 007095380;
DBSI-T 007095381-DBSI-T 007095386;
DBSI-T 007095477-DBSI-T 007095481;
DBSI-T 007095482-DBSI-T 007095486;
DBSI-T 007095487-DBSI-T 007095511;
DBSI-T 007098067-DBSI-T 007098069;
DBSI-T 007098080-DBSI-T 007098083;
DBSI-T 007098092-DBSI-T 007098094;
DBSI-T 007098106-DBSI-T 007098111;
DBSI-T 007098187-DBSI-T 007098188;
DBSI-T 007098194-DBSI-T 007098196;
DBSI-T 007098207-DBSI-T 007098207;
DBSI-T 007098260-DBSI-T 007098264;
DBSI-T 007098265-DBSI-T 007098267;
DBSI-T 007098273-DBSI-T 007098275;
DBSI-T 007098276-DBSI-T 007098278;
DBSI-T 007098316-DBSI-T 007098319;
DBSI-T 007098401-DBSI-T 007098401;
DBSI-T 007098407-DBSI-T 007098407;
DBSI-T 007098408-DBSI-T 007098411;
DBSI-T 007098601-DBSI-T 007098651;
DBSI-T 007098654-DBSI-T 007098659;
DBSI-T 007098802-DBSI-T 007098804;
DBSI-T 007098805-DBSI-T 007098807;
DBSI-T 007098808-DBSI-T 007098866;
DBSI-T 007098893-DBSI-T 007098896;
DBSI-T 007098930-DBSI-T 007098946;
DBSI-T 007098972-DBSI-T 007098986;
DBSI-T 007098995-DBSI-T 007099019;
DBSI-T 007099041-DBSI-T 007099043;
DBSI-T 007099706-DBSI-T 007099711;
DBSI-T 007101230-DBSI-T 007101233;
DBSI-T 007101291-DBSI-T 007101294;
DBSI-T 007101354-DBSI-T 007101358;
DBSI-T 007101377-DBSI-T 007101379;
DBSI-T 007101532-DBSI-T 007101534;
DBSI-T 007101556-DBSI-T 007101561;
DBSI-T 007101572-DBSI-T 007101575;
DBSI-T 007101600-DBSI-T 007101603;

782228.1

DBSI-T 007101604-DBSI-T 007101606;
DBSI-T 007101683-DBSI-T 007101684;
DBSI-T 007101685-DBSI-T 007101689;
DBSI-T 007101748-DBSI-T 007101749;
DBSI-T 007102876-DBSI-T 007102883;
DBSI-T 007104460-DBSI-T 007104476;
DBSI-T 007104495-DBSI-T 007104519;
DBSI-T 007104556-DBSI-T 007104572;
DBSI-T 007105954-DBSI-T 007105963;
DBSI-T 007105979-DBSI-T 007105995;
DBSI-T 007105996-DBSI-T 007106014;
DBSI-T 007106050-DBSI-T 007106066;
DBSI-T 007106101-DBSI-T 007106105;
DBSI-T 007106106-DBSI-T 007106111;
DBSI-T 007106124-DBSI-T 007106130;
DBSI-T 007106131-DBSI-T 007106136;
DBSI-T 007106639-DBSI-T 007106641;
DBSI-T 007106647-DBSI-T 007106650;
DBSI-T 007106651-DBSI-T 007106654;
DBSI-T 007110535-DBSI-T 007110535;
DBSI-T 007110536-DBSI-T 007110536;
DBSI-T 007110668-DBSI-T 007110684;
DBSI-T 007110702-DBSI-T 007110720;
DBSI-T 007111448-DBSI-T 007111455;
DBSI-T 007112100-DBSI-T 007112101;
DBSI-T 007112584-DBSI-T 007112593;
DBSI-T 007112620-DBSI-T 007112629;
DBSI-T 007112677-DBSI-T 007112686;
DBSI-T 007112687-DBSI-T 007112696;
DBSI-T 007112747-DBSI-T 007112756;
DBSI-T 007112872-DBSI-T 007112883;
DBSI-T 007113113-DBSI-T 007113122;
DBSI-T 007113124-DBSI-T 007113133;
DBSI-T 007113155-DBSI-T 007113163;
DBSI-T 007113180-DBSI-T 007113191;
DBSI-T 007113261-DBSI-T 007113264;
DBSI-T 007113265-DBSI-T 007113273;
DBSI-T 007113353-DBSI-T 007113362;
DBSI-T 007113363-DBSI-T 007113372;
DBSI-T 007113374-DBSI-T 007113382;
DBSI-T 007113383-DBSI-T 007113392;
DBSI-T 007113393-DBSI-T 007113402;
DBSI-T 007113404-DBSI-T 007113412;
GSE_T 00000117 - GSE_T 00000121;
GSE_T 00000122 - GSE_T 00000126;
GSE_T 00000139 - GSE_T 00000142;

GSE_T 00000143 - GSE_T 00000145;
GSE_T 00000146 - GSE_T 00000148;
GSE_T 00000719 - GSE_T 00000722;
GSE_T 00000731 - GSE_T 00000733;
GSE_T 00000764 - GSE_T 00000768;
GSE_T 00000771 - GSE_T 00000775;
GSE_T 00044353 - GSE_T 00044353;
GSE_T 00044379 - GSE_T 00044379;
GSE_T 00044380 - GSE_T 00044380;
GSE_T 00044389 - GSE_T 00044389;
GSE_T 00044409 - GSE_T 00044409;
GSE_T 00044420 - GSE_T 00044420;
GSE_T 00044440 - GSE_T 00044440;
GSE_T 00044451 - GSE_T 00044451;
GSE_T 00044471 - GSE_T 00044471;
GSE_T 00069950 - GSE_T 00069953;
GSE_T 00069954 - GSE_T 00069957;
GSE_T 00069958 - GSE_T 00069961;
GSE_T 00069962 - GSE_T 00069964;
GSE_T 00069965 - GSE_T 00069968;
GSE_T 00069969 - GSE_T 00069971;
GSE_T 00069972 - GSE_T 00069974;
GSE_T 00069975 - GSE_T 00069977;
GSE_T 00069978 - GSE_T 00069980;
GSE_T 00069981 - GSE_T 00069984;
GSE_T 00069985 - GSE_T 00069988;
GSE_T 00069989 - GSE_T 00069991;
GSE_T 00069992 - GSE_T 00069995;
GSE_T 00069996 - GSE_T 00069999;
GSE_T 00070000 - GSE_T 00070003;
GSE_T 00070004 - GSE_T 00070007;
GSE_T 00070008 - GSE_T 00070011;
GSE_T 00070012 - GSE_T 00070015;
GSE_T 00070016 - GSE_T 00070019;
GSE_T 00070020 - GSE_T 00070022;
GSE_T 00070023 - GSE_T 00070026;
GSE_T 00070027 - GSE_T 00070029;
GSE_T 00070030 - GSE_T 00070032;
GSE_T 00070036 - GSE_T 00070038;
GSE_T 00070039 - GSE_T 00070041;
GSE_T 00070042 - GSE_T 00070044;
GSE_T 00070052 - GSE_T 00070056;
GSE_T 00070057 - GSE_T 00070064;
GSE_T 00070080 - GSE_T 00070082;
GSE_T 00070083 - GSE_T 00070085;
GSE_T 00070086 - GSE_T 00070088;

GSE_T 00070186 - GSE_T 00070188;
GSE_T 00070201 - GSE_T 00070204;
GSE_T 00070241 - GSE_T 00070247;
GSE_T 00070248 - GSE_T 00070255;
GSE_T 00070258 - GSE_T 00070260;
GSE_T 00070261 - GSE_T 00070263;
GSE_T 00070264 - GSE_T 00070266;
GSE_T 00070269 - GSE_T 00070276;
GSE_T 00070310 - GSE_T 00070313;
GSE_T 00070314 - GSE_T 00070317;
GSE_T 00070318 - GSE_T 00070323;
GSE_T 00070324 - GSE_T 00070326;
GSE_T 00070327 - GSE_T 00070329;
GSE_T 00070362 - GSE_T 00070370;
GSE_T 00070383 - GSE_T 00070389;
GSE_T 00070412 - GSE_T 00070418;
GSE_T 00070419 - GSE_T 00070420;
GSE_T 00070421 - GSE_T 00070422;
GSE_T 00070423 - GSE_T 00070425;
GSE_T 00070426 - GSE_T 00070428;
GSE_T 00070429 - GSE_T 00070431;
GSE_T 00070432 - GSE_T 00070436;
GSE_T 00070437 - GSE_T 00070444;
GSE_T 00070446 - GSE_T 00070454;
GSE_T 00070455 - GSE_T 00070465;
GSE_T 00070497 - GSE_T 00070503;
GSE_T 00070505 - GSE_T 00070512;
GSE_T 00070618 - GSE_T 00070626;
GSE_T 00070642 - GSE_T 00070648;
GSE_T 00070649 - GSE_T 00070657;
GSE_T 00070668 - GSE_T 00070674;
GSE_T 00070675 - GSE_T 00070682;
GSE_T 00070685 - GSE_T 00070687;
GSE_T 00070697 - GSE_T 00070706;
GSE_T 00070707 - GSE_T 00070717;
GSE_T 00070888 - GSE_T 00070893;
GSE_T 00070894 - GSE_T 00070900;
GSE_T 00070919 - GSE_T 00070926;
GSE_T 00070943 - GSE_T 00070950;
GSE_T 00070966 - GSE_T 00070972;
GSE_T 00070973 - GSE_T 00070980;
GSE_T 00071031 - GSE_T 00071037;
GSE_T 00071047- GSE_T 00071049;
GSE_T 00071050 - GSE_T 00071052;
GSE_T 00071053 - GSE_T 00071055;
GSE_T 00071056 - GSE_T 00071059;

782228.1

GSE_T 00071069 - GSE_T 00071081;
GSE_T 00071082 - GSE_T 00071089;
GSE_T 00071092 - GSE_T 00071101;
GSE_T 00071154 - GSE_T 00071166;
GSE_T 00071167 - GSE_T 00071180;
GSE_T 00071206 - GSE_T 00071215;
GSE_T 00071216 - GSE_T 00071226;
GSE_T 00071238 - GSE_T 00071248;
GSE_T 00071249 - GSE_T 00071251;
GSE_T 00071252 - GSE_T 00071254;
GSE_T 00071255 - GSE_T 00071258;
GSE_T 00071259 - GSE_T 00071262;
GSE_T 00071263 - GSE_T 00071266;
GSE_T 00071267 - GSE_T 00071270;
GSE_T 00071293 - GSE_T 00071301;
GSE_T 00071302 - GSE_T 00071311;
GSE_T 00071323 - GSE_T 00071330;
GSE_T 00071357 - GSE_T 00071365;
GSE_T 00071366 - GSE_T 00071375;
GSE_T 00071396 - GSE_T 00071404;
GSE_T 00071405 - GSE_T 00071415;
GSE_T 00071426 - GSE_T 00071431;
GSE_T 00176760 - GSE_T 00176766;
GSE_T 00177742 - GSE_T 00177743;
GSE_T 00195334 - GSE_T 00195339;
GSE_T 00195343 - GSE_T 00195348;
GSE_T 00201737 - GSE_T 00201755;
GSE_T 00201756 - GSE_T 00201774;
GSE_T 00201775 - GSE_T 00201793;
GSE_T 00201794 - GSE_T 00201812;
GSE_T 00201848 - GSE_T 00201866;
GSE_T 00201886 - GSE_T 00201904;
GSE_T 00207111 - GSE_T 00207121;
GSE_T 00207199 - GSE_T 00207214;
GSE_T 00207563 - GSE_T 00207575;
GSE_T 00207819 - GSE_T 00207831;
GSE_T 00208397 - GSE_T 00208421;
GSE_T 00208440 - GSE_T 00208445;
GSE_T 00208558 - GSE_T 00208572;
GSE_T 00208722 - GSE_T 00208736;
GSE_T 00208785 - GSE_T 00208809;
GSE_T 00208840 - GSE_T 00208852;
GSE_T 00209100 - GSE_T 00209114;
GSE_T 00209115 - GSE_T 00209129;
GSE_T 00209130 - GSE_T 00209144;
GSE_T 00209193 - GSE_T 00209217;

GSE_T 00209630 - GSE_T 00209639;
GSE_T 00210228 - GSE_T 00210244;
GSE_T 00210416 - GSE_T 00210416;
GSE_T 00210418 - GSE_T 00210435;
GSE_T 00210555 - GSE_T 00210588;
GSE_T 00211738 - GSE_T 00211758;
GSE_T 00211903 - GSE_T 00211918;
GSE_T 00212937 - GSE_T 00212954;
GSE_T 00212988 - GSE_T 00213002;
GSE_T 00213175 - GSE_T 00213205;
GSE_T 00213237 - GSE_T 00213253;
GSE_T 00214149 - GSE_T 00214165;
GSE_T 00215105 - GSE_T 00215122;
GSE_T 00218272 - GSE_T 00218288;
GSE_T 00219342 - GSE_T 00219348;
GSE_T 00220933 - GSE_T 00220934;
GSE_T 00222122 - GSE_T 00222132;
GSE_T 00222191 - GSE_T 00222209;
GSE_T 00227589 - GSE_T 00227595;
GSE_T 00231371 - GSE_T 00231373;
GSE_T 00247865 - GSE_T 00247873;
GSE_T 00273205 - GSE_T 00273209;
GSE_T 00273486 - GSE_T 00273489;
GSE_T 00273838 - GSE_T 00273841;
GSE_T 00274182 - GSE_T 00274183;
GSE_T 00274187 - GSE_T 00274191;
GSE_T 00274964 - GSE_T 00274969;
GSE_T 00298266 - GSE_T 00298270;
GSE_T 00303122 - GSE_T 00303133;
GSE_T 00303458 - GSE_T 00303466;
GSE_T 00303872 - GSE_T 00303880;
GSE_T 00303974 - GSE_T 00303978;
GSE_T 00307781 - GSE_T 00307783;
GSE_T 00310089 - GSE_T 00310105;
GSE_T 00310357 - GSE_T 00310359;
GSE_T 00338843 - GSE_T 00338864;
GSE_T 00338865 - GSE_T 00338870;
GSE_T 00349262 - GSE_T 00349263;
GSE_T 00522394 - GSE_T 00522395;
GSE_T 00556928 - GSE_T 00556929;
GSE_T 00562627 - GSE_T 00562629;
GSE_T 00563989 - GSE_T 00563991;
GSE_T 00564258 - GSE_T 00564261;
GSE_T 00564272 - GSE_T 00564274;
GSE_T 00564311 - GSE_T 00564313;
GSE_T 00564314 - GSE_T 00564316;

GSE_T 00564317 - GSE_T 00564319;
GSE_T 00564320 - GSE_T 00564322;
GSE_T 00564352 - GSE_T 00564354;
GSE_T 00564509 - GSE_T 00564510;
GSE_T 00564782 - GSE_T 00564783;
GSE_T 00567999 - GSE_T 00568004;
GSE_T 00613958 - GSE_T 00613982;
GSE_T 00614038 - GSE_T 00614062;
GSE_T 00614116 - GSE_T 00614140;
GSE_T 00668316 - GSE_T 00668322;
GSE_T 00680278 - GSE_T 00680280;
GSE_T 00680307 - GSE_T 00680309;
GSE_T 00683595 - GSE_T 00683600;
GSE_T 00694473 - GSE_T 00694478;
GSE_T 00694547 - GSE_T 00694552;
GSE_T 00702139 - GSE_T 00702139;
GSE_T 00702166 - GSE_T 00702166;
GSE_T 00702400 - GSE_T 00702400;
GSE_T 00702454 - GSE_T 00702454;
GSE_T 00702456 - GSE_T 00702456;
GSE_T 00702461 - GSE_T 00702461;
GSE_T 00702466 - GSE_T 00702466;
GSE_T 00702523 - GSE_T 00702523;
GSE_T 00702667 - GSE_T 00702667;
GSE_T 00703154 - GSE_T 00703154;
GSE_T 00732784 - GSE_T 00732876;
GSE_T 00732880 - GSE_T 00732972;
GSE_T 00732974 - GSE_T 00733066;
GSE_T 00823561 - GSE_T 00823563;
GSE_T 00885627 - GSE_T 00885643;
GSE_T 00921630 - GSE_T 00921634;
GSE_T 00926457 - GSE_T 00926460;
GSE_T 00926465 - GSE_T 00926468;
GSE_T 00926476 - GSE_T 00926476;
GSE_T 00928002 - GSE_T 00928003;
GSE_T 00932570 - GSE_T 00932574;
GSE_T 00937348 - GSE_T 00937353;
GSE_T 00937373 - GSE_T 00937378;
GSE_T 00937816 - GSE_T 00937822;
GSE_T 00937902 - GSE_T 00937908;
GSE_T 00937936 - GSE_T 00937942;
GSE_T 00939239 - GSE_T 00939244;
GSE_T 00939510 - GSE_T 00939515;
GSE_T 00939740 - GSE_T 00939745;
GSE_T 00939913 - GSE_T 00939918;
GSE_T 00940778 - GSE_T 00940784;

GSE_T 00941235 - GSE_T 00941241;
GSE_T 00942499 - GSE_T 00942504;
GSE_T 00943781 - GSE_T 00943787;
GSE_T 00944704 - GSE_T 00944710;
GSE_T 00945333 - GSE_T 00945340;
GSE_T 00945496 - GSE_T 00945503;
GSE_T 00945536 - GSE_T 00945543;
GSE_T 00945658 - GSE_T 00945665;
GSE_T 00946173 - GSE_T 00946179;
GSE_T 00960570 - GSE_T 00960591;
GSE_T 01034483 - GSE_T 01034507;
GSE_T 01034508 - GSE_T 01034514;
GSE_T 01054296 - GSE_T 01054296;
GSE_T 01054415 - GSE_T 01054415;
GSE_T 01054488 - GSE_T 01054488;
GSE_T 01054607 - GSE_T 01054607;
GSE_T 01054767 - GSE_T 010547671
GSE_T 01055184 - GSE_T 01055184;
GSE_T 01126919 - GSE_T 01126943;
GSE_T 01126972 - GSE_T 01126978;
GSE_T 01127001 - GSE_T 01127025;
GSE_T 01127054 - GSE_T 01127060;
GSE_T 01141590 - GSE_T 01141624;
GSE_T 01126919.001 - GSE_T 01126943.001;
GSE_T 01126972.001 - GSE_T 01126978.001;
GSE_T 01127001.001 - GSE_T 01127025.001;
GSE_T 01127054.001 - GSE_T 01127060.001;
GSE_T 01142121 - GSE_T 01142125;
GSE_T 01143965 - GSE_T 01143969;
GSE_T 01144023 - GSE_T 01144027;
GSE_T 01144041 - GSE_T 01144045;
GSE_T 01146358 - GSE_T 01146359;
GSE_T 01147702 - GSE_T 01147706;
GSE_T 01147724 - GSE_T 01147728;
GSE_T 01147834 - GSE_T 01147836;
GSE_T 01147853 - GSE_T 01147860;
GSE_T 01149338 - GSE_T 01149386;
GSE_T 01150091 - GSE_T 01150099;
GSE_T 01152319 - GSE_T 01152326;
GSE_T 01153219 - GSE_T 01153223;
GSE_T 01153225 - GSE_T 01153232;
GSE_T 01154466 - GSE_T 01154516;
GSE_T 01155324 - GSE_T 01155333;
GSE_T 01156879 - GSE_T 01156883;
GSE_T 01157548 - GSE_T 01157555;
GSE_T 01157808 - GSE_T 01157810;

GSE_T 01157982 - GSE_T 01157984;
GSE_T 01158756 - GSE_T 01158758;
GSE_T 01159394 - GSE_T 01159398;
GSE_T 01159521 - GSE_T 01159536;
GSE_T 01159537 - GSE_T 01159552;
GSE_T 01160047 - GSE_T 01160050;
GSE_T 01160077 - GSE_T 01160080;
GSE_T 01160163 - GSE_T 01160166;
GSE_T 01160245 - GSE_T 01160247;
GSE_T 01160263 - GSE_T 01160266;
GSE_T 01160311 - GSE_T 01160334;
GSE_T 01160336 - GSE_T 01160359;
GSE_T 01164163 - GSE_T 01164167;
GSE_T 01164177 - GSE_T 01164181;
GSE_T 01164191 - GSE_T 01164195;
GSE_T 01164205 - GSE_T 01164209;
GSE_T 01164214 - GSE_T 01164218;
GSE_T 01164223 - GSE_T 01164227;
GSE_T 01164236 - GSE_T 01164240;
GSE_T 01164248 - GSE_T 01164252;
GSE_T 01164961 - GSE_T 01165011;
GSE_T 01168851 - GSE_T 01168858;
GSE_T 01169556 - GSE_T 01169571;
GSE_T 01170614 - GSE_T 01170615;
GSE_T 01170618 - GSE_T 01170619;
GSE_T 01171005 - GSE_T 01171009;
GSE_T 01171016 - GSE_T 01171018;
GSE_T 01171057 - GSE_T 01171057;
GSE_T 01171058 - GSE_T 01171058;
GSE_T 01171059 - GSE_T 01171060;
GSE_T 01171061 - GSE_T 01171061;
GSE_T 01171067 - GSE_T 01171068;
GSE_T 01171078 - GSE_T 01171079;
GSE_T 01171130 - GSE_T 01171131;
GSE_T 01173219 - GSE_T 01173267;
GSE_T 01175253 - GSE_T 01175254;
GSE_T 01189471 - GSE_T 01189475;
GSE_T 01189520 - GSE_T 01189524;
GSE_T 01189526 - GSE_T 01189530;
GSE_T 01191612 - GSE_T 01191612;
GSE_T 01192104 - GSE_T 01192104;
GSE_T 01192130 - GSE_T 01192130;
GSE_T 01192267 - GSE_T 01192267;
GSE_T 01192352 - GSE_T 01192352;
GSE_T 01192727 - GSE_T 01192783;
GSE_T 01194375 - GSE_T 01194399;

GSE_T 01196654 - GSE_T 01196717;
GSE_T 01196822 - GSE_T 01196822;
GSE_T 01198021 - GSE_T 01198021;
GSE_T 01198281 - GSE_T 01198281;
GSE_T 01198320 - GSE_T 01198320;
GSE_T 01198377 - GSE_T 01198377;
GSE_T 01198378 - GSE_T 01198378;
GSE_T 01198831 - GSE_T 01198831;
GSE_T 01198833 - GSE_T 01198833;
GSE_T 01199651 - GSE_T 01199655;
GSE_T 01203318 - GSE_T 01203361;
GSE_T 01203363 - GSE_T 01203406;
GSE_T 01218175 - GSE_T 01218178;
GSE_T 01223138 - GSE_T 01223139;
GSE_T 01232423 - GSE_T 01232479;
GSE_T 01232520 - GSE_T 01232527;
GSE_T 01424582 - GSE_T 01424587;
GSE_T 01424588 - GSE_T 01424593;
GSE_T 01429208 - GSE_T 01429213;
GSE_T 01429214 - GSE_T 01429219;
GSE_T 01430754 - GSE_T 01430755;
GSE_T 01437399 - GSE_T 01437404;
GSE_T 01437405 - GSE_T 01437410;
GSE_T 01437430 - GSE_T 01437435;
GSE_T 01437436 - GSE_T 01437441;
GSE_T 01437933 - GSE_T 01437941;
GSE_T 01437964 - GSE_T 01437972;
GSE_T 01440114 - GSE_T 01440116;
GSE_T 01444026 - GSE_T 01444028;
GSE_T 01446785 - GSE_T 01446788;
GSE_T 01451044 - GSE_T 01451044;
GSE_T 01451091 - GSE_T 01451091;
GSE_T 01458265 - GSE_T 01458265;
GSE_T 01461168 - GSE_T 01461170;
GSE_T 01461237 - GSE_T 01461243;
GSE_T 01463156 - GSE_T 01463157;
GSE_T 01467800 - GSE_T 01467803;
GSE_T 01474951 - GSE_T 01474952;
GSE_T 01474953 - GSE_T 01474954;
GSE_T 01483179 - GSE_T 01483182;
GSE_T 01483489 - GSE_T 01483492;
GSE_T 01486904 - GSE_T 01486907;
GSE_T 01486911 - GSE_T 01486914;
GSE_T 01486931 - GSE_T 01486933;
GSE_T 01486934 - GSE_T 01486937;
GSE_T 01486938 - GSE_T 01486941;

GSE_T 01487230 - GSE_T 01487233;
GSE_T 01487462 - GSE_T 01487465;
GSE_T 01487466 - GSE_T 01487469;
GSE_T 01489079 - GSE_T 01489086;
GSE_T 01489088 - GSE_T 01489095;
GSE_T 01502478 - GSE_T 01502485;
GSE_T 01508958 - GSE_T 01509017;
GSE_T 01509028 - GSE_T 01509087;
GSE_T 01517565 - GSE_T 01517570;
GSE_T 01521919 - GSE_T 01521924;
GSE_T 01522554 - GSE_T 01522559;
GSE_T 01522561 - GSE_T 01522568;
GSE_T 01537220 - GSE_T 01537244;
GSE_T 01550703 - GSE_T 01550703;
GSE_T 01254021 - GSE_T 01254025;
GSE_T 01254376 - GSE_T 01254378;
GSE_T 01254524 - GSE_T 01254529;
GSE_T 01254582 - GSE_T 01254585;
GSE_T 01254631 - GSE_T 01254634;
GSE_T 01254704 - GSE_T 01254705;
GSE_T 01254736 - GSE_T 01254737;
GSE_T 01254764 - GSE_T 01254765;
GSE_T 01254800 - GSE_T 01254801;
GSE_T 01254804 - GSE_T 01254805;
GSE_T 01254808 - GSE_T 01254810;
GSE_T 01254814 - GSE_T 01254815;
GSE_T 01254816 - GSE_T 01254818;
GSE_T 01254827 - GSE_T 01254828;
GSE_T 01254831 - GSE_T 01254833;
GSE_T 01254834 - GSE_T 01254835;
GSE_T 01254836 - GSE_T 01254837;
GSE_T 01254846 - GSE_T 01254847;
GSE_T 01254848 - GSE_T 01254849;
GSE_T 01254855 - GSE_T 01254856;
GSE_T 01254882 - GSE_T 01254885;
GSE_T 01257460 - GSE_T 01257460;
GSE_T 01275127 - GSE_T 01275128;
GSE_T 01280404 - GSE_T 01280405;
GSE_T 01299770 - GSE_T 01299776;
GSE_T 01300321 - GSE_T 01300325;
GSE_T 01300433 - GSE_T 01300433;
GSE_T 01300483 - GSE_T 01300483;
GSE_T 01303643 - GSE_T 01303691;
GSE_T 01303693 - GSE_T 01303741;
GSE_T 01308778 - GSE_T 01308784;
GSE_T 01308787 - GSE_T 01308794;

GSE_T 01316773 - GSE_T 01316773;
GSE_T 01316778 - GSE_T 01316778;
GSE_T 01321213 - GSE_T 01321216;
GSE_T 01321218 - GSE_T 01321221;
GSE_T 01321223 - GSE_T 01321226;
GSE_T 01321228 - GSE_T 01321228;
GSE_T 01321230 - GSE_T 01321280;
GSE_T 01321430 - GSE_T 01321430;
GSE_T 01321457 - GSE_T 01321507;
GSE_T 01321509 - GSE_T 01321509;
GSE_T 01321511 - GSE_T 01321513;
GSE_T 01321527 - GSE_T 01321530;
GSE_T 01321680 - GSE_T 01321682;
GSE_T 01321700 - GSE_T 01321700;
GSE_T 01321824 - GSE_T 01321834;
GSE_T 01322126 - GSE_T 01322131;
GSE_T 01323634 - GSE_T 01323641;
GSE_T 01323650 - GSE_T 01323657;
GSE_T 01340358 - GSE_T 01340360;
GSE_T 01340819 - GSE_T 01340821;
GSE_T 01353385 - GSE_T 01353426;
GSE_T 01354016 - GSE_T 01354018;
GSE_T 01358902 - GSE_T 01358906;
GSE_T 01362951 - GSE_T 01362954;
GSE_T 01368065 - GSE_T 01368093;
GSE_T 01385367 - GSE_T 01385369;
GSE_T 01387223 - GSE_T 01387249;
GSE_T 01387272 - GSE_T 01387298;
GSE_T 01399426 - GSE_T 01399431;
GSE_T 01403530 - GSE_T 01403530;
GSE_T 01407946 - GSE_T 01407966;
GSE_T 01564318 - GSE_T 01564327;
GSE_T 01566416 - GSE_T 01566440;
GSE_T 01568965 - GSE_T 01569003;
GSE_T 01569005 - GSE_T 01569043;
GSE_T 01569344 - GSE_T 01569348;
GSE_T 01574099 - GSE_T 01574106;
GSE_T 01594869 - GSE_T 01594871;
GSE_T 01594873 - GSE_T 01594875;
GSE_T 01605259 - GSE_T 01605259;
GSE_T 01605386 - GSE_T 01605386;
GSE_T 01607088 - GSE_T 01607090;
GSE_T 01607207 - GSE_T 01607209;
GSE_T 01616629 - GSE_T 01616633;
GSE_T 01616684 - GSE_T 01616689;
GSE_T 01624970 - GSE_T 01624978;

GSE_T 01631697 - GSE_T 01631701;
GSE_T 01633806 - GSE_T 01633809;
GSE_T 01634506 - GSE_T 01634508;
GSE_T 01634509 - GSE_T 01634523;
GSE_T 01643625 - GSE_T 01643649;
GSE_T 01643650 - GSE_T 01643656;
GSE_T 01643672 - GSE_T 01643696;
GSE_T 01643725 - GSE_T 01643731;
GSE_T 01643787 - GSE_T 01643811;
GSE_T 01643812 - GSE_T 01643818;
ML-TSINTL-ESI0063933 - ML-TSINTL-ESI0063946;
ML-TSINTL-ESI0063957 - ML-TSINTL-ESI0063970;
ML-TSINTL-ESI0067105 - ML-TSINTL-ESI0067116;
ML-TSINTL-ESI0111559 - ML-TSINTL-ESI0111562;
ML-TSINTL-ESI0595547 - ML-TSINTL-ESI0595560;
ML-TSINTL-ESI0595574 - ML-TSINTL-ESI0595587;
ML-TSINTL-ESI0747169 - ML-TSINTL-ESI0747203;
ML-TSINTL-ESI0747205 - ML-TSINTL-ESI0747239;
ML-TSINTL-ESI0747241 - ML-TSINTL-ESI0747275;
ML-TSINTL-ESI0747277 - ML-TSINTL-ESI0747311;
ML-TSINTL-ESI0748147 - ML-TSINTL-ESI0748181;
ML-TSINTL-ESI0748183 - ML-TSINTL-ESI0748217;
ML-TSINTL-ESI0748219 - ML-TSINTL-ESI0748253;
ML-TSINTL-ESI0748255 - ML-TSINTL-ESI0748289;
ML-TSINTL-ESI0748291 - ML-TSINTL-ESI0748325;
ML-TSINTL-ESI0748327 - ML-TSINTL-ESI0748361;
ML-TSINTL-ESI0748363 - ML-TSINTL-ESI0748373;
ML-TSINTL-ESI1029285 - ML-TSINTL-ESI1029298;
ML-TSINTL-ESI1029301 - ML-TSINTL-ESI1029314;
ML-TSINTL-ESI1029317 - ML-TSINTL-ESI1029330;
ML-TSINTL-ESI1029332 - ML-TSINTL-ESI1029345;
ML-TSINTL-ESI1029347 - ML-TSINTL-ESI1029360;
ML-TSINTL-ESI1029362 - ML-TSINTL-ESI1029375;
ML-TSINTL-ESI1029377 - ML-TSINTL-ESI1029390;
ML-TSINTL-ESI1034581 - ML-TSINTL-ESI1034602;
ML-TSINTL-ESI1330103 - ML-TSINTL-ESI1330145;
ML-TSINTL-ESI1352960 - ML-TSINTL-ESI1353015;
ML-TSINTL-ESI2290499 - ML-TSINTL-ESI2290533;
ML-TSINTL-ESI2604907 - ML-TSINTL-ESI2604962;
ML-TSINTL-ESI3085528 - ML-TSINTL-ESI3085541;
ML-TSINTL-ESI3088944 - ML-TSINTL-ESI3088954;
ML-TSINTL-ESI3299849 - ML-TSINTL-ESI3299862;
ML-TSINTL-ESI3358518 - ML-TSINTL-ESI3358539;
ML-TSINTL-ESI3553080 - ML-TSINTL-ESI3553114;
ML-TSINTL-ESI3553117 - ML-TSINTL-ESI3553151;
ML-TSINTL-ESI4079599 - ML-TSINTL-ESI4079600;

ML-TSINTL-ESI-A01218451 - ML-TSINTL-ESI-A01218509;
ML-TSINTL-ESI-A01306001 - ML-TSINTL-ESI-A01306014;
ML-TSINTL-ESI-A01306358 - ML-TSINTL-ESI-A01306371;
ML-TSINTL-ESI-A01308897 - ML-TSINTL-ESI-A01308910;
ML-TSINTL-ESI-A01629402 - ML-TSINTL-ESI-A01629444;
ML-TSINTL-ESI-A01746823 - ML-TSINTL-ESI-A01746878;
ML-TSINTL-ESI-A02026022 - ML-TSINTL-ESI-A02026056;
ML-TSINTL-ESI-A02083482 - ML-TSINTL-ESI-A02083488;
ML-TSINTL-ESI-A02615291 - ML-TSINTL-ESI-A02615298;
ML-TSINTL-ESI8923846 - ML-TSINTL-ESI8923846;
ML-TSINTL-ESI8923848 - ML-TSINTL-ESI8923848;
ML-TSINTL-ESI8923854 - ML-TSINTL-ESI8923854;
ML-TSINTL-ESI8925537 - ML-TSINTL-ESI8925537;
ML-TSINTL-ESI8925546 - ML-TSINTL-ESI8925546;
ML-TSINTL-ESI8925548 - ML-TSINTL-ESI8925548;
ML-TSINTL-ESI8980769 - ML-TSINTL-ESI8980769;
ML-TSINTL-ESI8995641 - ML-TSINTL-ESI8995641;
ML-TSINTL-ESI9043604 - ML-TSINTL-ESI9043604;
ML-TSINTL-ESI9046139 - ML-TSINTL-ESI9046139;
ML-TSINTL-ESI9046143 - ML-TSINTL-ESI9046143;
ML-TSINTL-ESI9047202 - ML-TSINTL-ESI9047202;
ML-TSINTL-ESI9047209 - ML-TSINTL-ESI9047209;
ML-TSINTL-ESI9047216 - ML-TSINTL-ESI9047216;
ML-TSINTL-ESI9060114 - ML-TSINTL-ESI9060114;
ML-TSINTL-ESI9082983 - ML-TSINTL-ESI9082983;
ML-TSINTL-ESI9095304 - ML-TSINTL-ESI9095304;
ML-TSINTL-ESI9131839 - ML-TSINTL-ESI9131839;
ML-TSINTL-ESI9134351 - ML-TSINTL-ESI9134351;
ML-TSINTL-ESI9138520 - ML-TSINTL-ESI9138520;
ML-TSINTL-ESI9140515 - ML-TSINTL-ESI9140515;
ML-TSINTL-ESI9157351 - ML-TSINTL-ESI9157351;
ML-TSINTL-ESI9157353 - ML-TSINTL-ESI9157353;
ML-TSINTL-ESI9165775 - ML-TSINTL-ESI9165775;
ML-TSINTL-ESI9167445 - ML-TSINTL-ESI9167445;
ML-TSINTL-ESI9181685 - ML-TSINTL-ESI9181685;
ML-TSINTL-ESI9198674 - ML-TSINTL-ESI9198674;
ML-TSINTL-ESI9205499 - ML-TSINTL-ESI9205499;
ML-TSINTL-ESI9205567 - ML-TSINTL-ESI9205567;
ML-TSINTL-ESI9205568 - ML-TSINTL-ESI9205568;
ML-TSINTL-ESI9205574 - ML-TSINTL-ESI9205574;
ML-TSINTL-ESI9205580 - ML-TSINTL-ESI9205580;
ML-TSINTL-ESI9205591 - ML-TSINTL-ESI9205591;
ML-TSINTL-ESI9205601 - ML-TSINTL-ESI9205601;
ML-TSINTL-ESI9205607 - ML-TSINTL-ESI9205607;
ML-TSINTL-ESI9205801 - ML-TSINTL-ESI9205801;
ML-TSINTL-ESI9209151 - ML-TSINTL-ESI9209151;

ML-TSINTL-ESI9211536 - ML-TSINTL-ESI9211536;
ML-TSINTL-ESI9211582 - ML-TSINTL-ESI9211582;
ML-TSINTL-ESI9212528 - ML-TSINTL-ESI9212528;
ML-TSINTL-ESI9212531 - ML-TSINTL-ESI9212531;
ML-TSINTL-ESI9212536 - ML-TSINTL-ESI9212536;
ML-TSINTL-ESI9217829 - ML-TSINTL-ESI9217829;
ML-TSINTL-ESI9218615 - ML-TSINTL-ESI9218615;
ML-TSINTL-ESI9218655 - ML-TSINTL-ESI9218655;
ML-TSINTL-ESI9222246 - ML-TSINTL-ESI9222246;
ML-TSINTL-ESI9226982 - ML-TSINTL-ESI9226982;
ML-TSINTL-ESI9227125 - ML-TSINTL-ESI9227125;
ML-TSINTL-ESI9227126 - ML-TSINTL-ESI9227126;
ML-TSINTL-ESI9227131 - ML-TSINTL-ESI9227131;
ML-TSINTL-ESI9227132 - ML-TSINTL-ESI9227132;
ML-TSINTL-ESI9227137 - ML-TSINTL-ESI9227137;
ML-TSINTL-ESI9227138 - ML-TSINTL-ESI9227138;
ML-TSINTL-ESI9227435 - ML-TSINTL-ESI9227435;
ML-TSINTL-ESI9227443 - ML-TSINTL-ESI9227443;
ML-TSINTL-ESI9227506 - ML-TSINTL-ESI9227506;
ML-TSINTL-ESI9227507 - ML-TSINTL-ESI9227507;
ML-TSINTL-ESI9227512 - ML-TSINTL-ESI9227512;
ML-TSINTL-ESI9227571 - ML-TSINTL-ESI9227571;
ML-TSINTL-ESI9227575 - ML-TSINTL-ESI9227575;
ML-TSINTL-ESI9227577 - ML-TSINTL-ESI9227577;
ML-TSINTL-ESI9227601 - ML-TSINTL-ESI9227601;
ML-TSINTL-ESI9227761 - ML-TSINTL-ESI9227761;
ML-TSINTL-ESI9229391 - ML-TSINTL-ESI9229391;
ML-TSINTL-ESI9292406 - ML-TSINTL-ESI9292406;
ML-TSINTL-ESI9292410 - ML-TSINTL-ESI9292410;
ML-TSINTL-ESI9394287 - ML-TSINTL-ESI9394287;
ML-TSINTL-ESI9394516 - ML-TSINTL-ESI9394516;
ML-TSINTL-ESI9420375 - ML-TSINTL-ESI9420375;
ML-TSINTL-ESI9420426 - ML-TSINTL-ESI9420426;
ML-TSINTL-ESI9420432 - ML-TSINTL-ESI9420432;
ML-TSINTL-ESI9426752 - ML-TSINTL-ESI9426752;
ML-TSINTL-ESI9428364 - ML-TSINTL-ESI9428364;
ML-TSINTL-ESI9435266 - ML-TSINTL-ESI9435266;
ML-TSINTL-ESI9435268 - ML-TSINTL-ESI9435268;
ML-TSINTL-ESI9435352 - ML-TSINTL-ESI9435352;
ML-TSINTL-ESI9435361 - ML-TSINTL-ESI9435361;
ML-TSINTL-ESI9435426 - ML-TSINTL-ESI9435426;
ML-TSINTL-ESI9438557 - ML-TSINTL-ESI9438557;
ML-TSINTL-ESI9465193 - ML-TSINTL-ESI9465193;
ML-TSINTL-ESI9465201 - ML-TSINTL-ESI9465201;
ML-TSINTL-ESI9465212 - ML-TSINTL-ESI9465212;
ML-TSINTL-ESI9465219 - ML-TSINTL-ESI9465219;

ML-TSINTL-ESI9465266 - ML-TSINTL-ESI9465266;
ML-TSINTL-ESI9465326 - ML-TSINTL-ESI9465326;
ML-TSINTL-ESI9616632 - ML-TSINTL-ESI9616632;
ML-TSINTL-ESI9673390 - ML-TSINTL-ESI9673390;
ML-TSINTL-ESI9683927 - ML-TSINTL-ESI9683927;
ML-TSINTL-ESI9684368 - ML-TSINTL-ESI9684368;
ML-TSINTL-ESI9701254 - ML-TSINTL-ESI9701254;
ML-TSINTL-ESI9717407 - ML-TSINTL-ESI9717407;
ML-TSINTL-ESI9723106 - ML-TSINTL-ESI9723106;
ML-TSINTL-ESI9727846 - ML-TSINTL-ESI9727846;
ML-TSINTL-ESI9738390 - ML-TSINTL-ESI9738390;
ML-TSINTL-ESI9738716 - ML-TSINTL-ESI9738716;
ML-TSINTL-ESI9740191 - ML-TSINTL-ESI9740191;
ML-TSINTL-ESI9741095 - ML-TSINTL-ESI9741095;
ML-TSINTL-ESI9741752 - ML-TSINTL-ESI9741752;
ML-TSINTL-ESI9741753 - ML-TSINTL-ESI9741753;
ML-TSINTL-ESI9742275 - ML-TSINTL-ESI9742275;
ML-TSINTL-ESI9745309 - ML-TSINTL-ESI9745309;
ML-TSINTL-ESI9751638 - ML-TSINTL-ESI9751638;
ML-TSINTL-ESI9752668 - ML-TSINTL-ESI9752668;
ML-TSINTL-ESI9752672 - ML-TSINTL-ESI9752672;
ML-TSINTL-ESI9752676 - ML-TSINTL-ESI9752676;
ML-TSINTL-ESI9764012 - ML-TSINTL-ESI9764012;
ML-TSINTL-ESI9776348 - ML-TSINTL-ESI9776348;
ML-TSINTL-ESI9785007 - ML-TSINTL-ESI9785007;
ML-TSINTL-ESI9793055 - ML-TSINTL-ESI9793055;
ML-TSINTL-ESI9793085 - ML-TSINTL-ESI9793085;
ML-TSINTL-ESI9793086 - ML-TSINTL-ESI9793086;
ML-TSINTL-ESI9821006 - ML-TSINTL-ESI9821006;
ML-TSINTL-ESI9847621 - ML-TSINTL-ESI9847621;
ML-TSINTL-ESI9862577 - ML-TSINTL-ESI9862578;
ML-TSINTL-ESI9863166 - ML-TSINTL-ESI9863216;
MS_TASR_00002361-MS_TASR_00002373;
MS_TASR_00002374-MS_TASR_00002377;
MS_TASR_00002378-MS_TASR_00002382;
MS_TASR_00002383-MS_TASR_00002384;
MS_TASR_00002385-MS_TASR_00002385;
MS_TASR_00002423-MS_TASR_00002455;
MS_TASR_00002466-MS_TASR_00002467;
MS_TASR_00002468-MS_TASR_00002468;
MS_TASR_00002469-MS_TASR_00002470;
MS_TASR_02658706-MS_TASR_02658709;
MS_TASR_02658710-MS_TASR_02658715;
MS_TASR_02660867-MS_TASR_02660868;
MS_TASR_02688917-MS_TASR_02688918;
MS_TASR_02689166-MS_TASR_02689167;

782228.1

MS_TASR_02738719-MS_TASR_02738720;
MS_TASR_02745238-MS_TASR_02745238;
MS_TASR_02755588-MS_TASR_02755598;
MS_TASR_02755654-MS_TASR_02755664;
MS_TASR_02755838-MS_TASR_02755848;
MS_TASR_02755868-MS_TASR_02755878;
MS_TASR_02755898-MS_TASR_02755908;
MS_TASR_02755928-MS_TASR_02755938;
MS_TASR_02755956-MS_TASR_02755966;
MS_TASR_02764416-MS_TASR_02764417;
MS_TASR_02826619-MS_TASR_02826620;
MS_TASR_02826623-MS_TASR_02826624;
MS_TASR_02868962-MS_TASR_02868963;
MS_TASR_02890869-MS_TASR_02890870;
MS_TASR_03177518-MS_TASR_03177519;
MS_TASR_03177520-MS_TASR_03177522;
MS_TASR_03177731-MS_TASR_03177733;
MS_TASR_03177734-MS_TASR_03177736;
MS_TASR_03049475-MS_TASR_03049496;
MS_TASR_03080698-MS_TASR_03080699;
MS_TASR_03080702-MS_TASR_03080703;
MS_TASR_03139652-MS_TASR_03139655;
MS_TASR_03180138-MS_TASR_03180143;
MS_TASR_03180612-MS_TASR_03180617;
MS_TASR_03181603-MS_TASR_03181604;
MS_TASR_03181859-MS_TASR_03181860;
MS_TASR_03182157-MS_TASR_03182163;
MS_TASR_03182196-MS_TASR_03182197;
MS_TASR_03182203-MS_TASR_03182212;
MS_TASR_03182213-MS_TASR_03182214;
MS_TASR_03182425-MS_TASR_03182434;
MS_TASR_03182435-MS_TASR_03182437;
MS_TASR_03183261-MS_TASR_03183262;
UBS_TSR0046115 - UBS_TSR0046117;
UBS_TSR0056418 - UBS_TSR0056418;
UBS_TSR0063172 - UBS_TSR0063175;
UBS_TSR0068285 - UBS_TSR0068288;
UBS_TSR0068742 - UBS_TSR0068752;
UBS_TSR0068768 - UBS_TSR0068778;
UBS_TSR0077435 - UBS_TSR0077438;
UBS_TSR0077551 - UBS_TSR0077553;
UBS_TSR0087607 - UBS_TSR0087607
UBS_TSR0349446 - UBS_TSR0349448;
UBS_TSR0349449 - UBS_TSR0349451;
UBS_TSR0389277 - UBS_TSR0389288;
UBS_TSR1153527 - UBS_TSR1153527

782228.1

UBS_TSR1153719 - UBS_TSR1153727;
UBS_TSR1154223 - UBS_TSR1154226;
UBS_TSR1155394 - UBS_TSR1155395;
UBS_TSR1155566 - UBS_TSR1155568;
UBS_TSR1155569 - UBS_TSR1155570;
UBS_TSR1155571 - UBS_TSR1155576;
UBS_TSR1155577 - UBS_TSR1155589;
UBS_TSR1155636 - UBS_TSR1155690;
UBS_TSR1155735 - UBS_TSR1155789;
UBS_TSR1155861 - UBS_TSR1155867;
UBS_TSR1155868 - UBS_TSR1155874;
UBS_TSR1156308 - UBS_TSR1156308
UBS_TSR1156391 - UBS_TSR1156393;
UBS_TSR1156394 - UBS_TSR1156396;
UBS_TSR1156510 - UBS_TSR1156510
UBS_TSR1156511 - UBS_TSR1156518;
UBS_TSR1156600 - UBS_TSR1156600
UBS_TSR1156953 - UBS_TSR1156953
UBS_TSR1156959- UBS_TSR1156960;
UBS_TSR1158687 - UBS_TSR1158687
UBS_TSR1158976 - UBS_TSR1158983;
UBS_TSR1158986 - UBS_TSR1158987;
UBS_TSR1158988 - UBS_TSR1158995;
UBS_TSR1158998 - UBS_TSR1158999;
UBS_TSR1159008 - UBS_TSR1159008
UBS_TSR1159015 - UBS_TSR1159022;
UBS_TSR1159044 - UBS_TSR1159045;
UBS_TSR1159054 - UBS_TSR1159061;
UBS_TSR1159099 - UBS_TSR1159100;
UBS_TSR1159859 - UBS_TSR1159860;
UBS_TSR1159861 - UBS_TSR1159862;
UBS_TSR1160029 - UBS_TSR1160031;
UBS_TSR1160033 - UBS_TSR1160120;
UBS_TSR1160168 - UBS_TSR1160171;
UBS_TSR1160179 - UBS_TSR1160179
UBS_TSR1160180 - UBS_TSR1160180
UBS_TSR1160181 - UBS_TSR1160181
UBS_TSR1160182 - UBS_TSR1160184;
UBS_TSR1160213 - UBS_TSR1160214;
UBS_TSR1160215 - UBS_TSR1160217;
UBS_TSR1160221- UBS_TSR1160222;
UBS_TSR1171790 - UBS_TSR1171790
UBS_TSR1171818 - UBS_TSR1171821;
UBS_TSR1171863 - UBS_TSR1171869;
UBS_TSR1171883 - UBS_TSR1171889;
UBS_TSR1171967 - UBS_TSR1171968;

UBS_TSR1172022 - UBS_TSR1172023;
UBS_TSR1172712 - UBS_TSR1172719;
UBS_TSR1172720 - UBS_TSR1172724;
UBS_TSR1172725 - UBS_TSR1172726;
UBS_TSR1173021 - UBS_TSR1173024;
UBS_TSR1173193 - UBS_TSR1173200;
UBS_TSR1173841 - UBS_TSR1173842;
UBS_TSR1173845 - UBS_TSR1173859;
UBS_TSR1173946 - UBS_TSR1173950;
UBS_TSR1173953 - UBS_TSR1173954;
UBS_TSR1173957 - UBS_TSR1173958;
UBS_TSR1173975 - UBS_TSR1173980;
UBS_TSR1173990 - UBS_TSR1173992;
UBS_TSR1176631 - UBS_TSR1176631
UBS_TSR1180616 - UBS_TSR1180618;
UBS_TSR1180619 - UBS_TSR1180621;
UBS_TSR1192483 - UBS_TSR1192485;
UBS_TSR1198557 - UBS_TSR1198559;
UBS_TSR1204451 - UBS_TSR1204453;
UBS_TSR1204454 - UBS_TSR1204456;
UBS_TSR1209689 - UBS_TSR1209696;
UBS_TSR1209806 - UBS_TSR1209809;
UBS_TSR1214962 - UBS_TSR1214978;
UBS_TSR1215636 - UBS_TSR1215638;
UBS_TSR1215796 - UBS_TSR1215797;
UBS_TSR1216031 - UBS_TSR1216032;
UBS_TSR1216049 - UBS_TSR1216052;
UBS_TSR1216059 - UBS_TSR1216061;
UBS_TSR1216077 - UBS_TSR1216081;
UBS_TSR1216680 - UBS_TSR1216683;
UBS_TSR1216908 - UBS_TSR1216910;
UBS_TSR1216965 - UBS_TSR1216968;
UBS_TSR1242536 - UBS_TSR1242540;
UBS_TSR1242625 - UBS_TSR1242628;
UBS_TSR1244504 - UBS_TSR1244504
UBS_TSR1244518 - UBS_TSR1244518
UBS_TSR1254051 - UBS_TSR1254052;
UBS_TSR1254095 - UBS_TSR1254098;
UBS_TSR1254158 - UBS_TSR1254161;
UBS_TSR1254260 - UBS_TSR1254261;
UBS_TSR1255100 - UBS_TSR1255101;
UBS_TSR1255192 - UBS_TSR1255197;
UBS_TSR1255233 - UBS_TSR1255234;
UBS_TSR1255258 - UBS_TSR1255260;
UBS_TSR1255279 - UBS_TSR1255282;
UBS_TSR1255465 - UBS_TSR1255468;

UBS_TSR1255740 - UBS_TSR1255741;
UBS_TSR1255758 - UBS_TSR1255760;
UBS_TSR1255761 - UBS_TSR1255762;
UBS_TSR1255775 - UBS_TSR1255777;
UBS_TSR1255783 - UBS_TSR1255785;
UBS_TSR1255795 - UBS_TSR1255796;
UBS_TSR1257491 - UBS_TSR1257495;
UBS_TSR1266141 - UBS_TSR1266144;
UBS_TSR1267536 - UBS_TSR1267538;
UBS_TSR1268377 - UBS_TSR1268380;
UBS_TSR1269390 - UBS_TSR1269392;
UBS_TSR1269979 - UBS_TSR1269982;
UBS_TSR1270042 - UBS_TSR1270045;
UBS_TSR1270847 - UBS_TSR1270851;
UBS_TSR1271247 - UBS_TSR1271250;
UBS_TSR1271264 - UBS_TSR1271267;
UBS_TSR1271450 - UBS_TSR1271453;
UBS_TSR1271911 - UBS_TSR1271914;
UBS_TSR1273651 - UBS_TSR1273657;
UBS_TSR1273667 - UBS_TSR1273671;
UBS_TSR1273679 - UBS_TSR1273682;
UBS_TSR1273689 - UBS_TSR1273692;
UBS_TSR1273694 - UBS_TSR1273697;
UBS_TSR1276370 - UBS_TSR1276372;
UBS_TSR1280453 - UBS_TSR1280456;
UBS_TSR1281443 - UBS_TSR1281445

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date:  Jul 12 2010  6:41PM
Mark Harper, Clerk

6

678215.1

# FILED UNDER SEAL

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

7

# FILED UNDER SEAL

**Steven J. Rosenwasser**

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Thursday, May 27, 2010 2:25 PM |
| **To:** | 'Andrew Clubok'; 'Jeffrey Gould' |
| **Cc:** | Elizabeth G. Eager; Nicole G. Iannarone |
| **Subject:** | follow up |

Andy and Jeff,

Good afternoon. I am following up on outhe portion of our call today regarding Plaintiffs' pending Motion to Compel for violation of the Court's Order. During our call, we discussed the following:

1.     UBS's requirement to provide Plaintiffs with a certication that "its trade blotters are derived from the same data as its bluesheets, such that if UBS produced its trade blotters, it would not cure any inaccuracies in its blue sheets" - As you know, since Plaintiffs were aware that UBS's blue sheet information is incomplete and inaccurate, last year we asked UBS to produce trade blotters so that Plaintiffs had accurate information. UBS repeatedly refused to produce that information, representing that the information in the trade blotters was derived from the same information as the blue sheets, and thus there was no reason to produce the blotters. To confirm that fact, and to avoid a motion, you agreed in a Court Order to represent and certify that the information in the blotters and the blue sheets is identical. Now, many months later and after the Court ordered deadline has passed, you indicate for the first time that UBS cannot make that representation, and that it is willing to produce its trade blotters. We are disappointed that after this many months and your repeated representations, we are first learning this fact now. In any event, since our goal is to obtain the accurate information, we are willing to accept your proposal to provide the trade blotters instead of what would otherwise be an admittedly inaccurate representation. In addition, we are willing to withdraw our motion to compel on this topic if UBS agrees to the following: (a) you will produce trade blotters for TASER equities and options for the Time Period no later than June 24, 2010; (b) the production will made in Excel format; (c) you will agree that you cannot make the representation set forth in the prior Order, and acknowledge that the trade blotters contain trading information that Plaintiffs have not previously received and thus did not have available for review or analyses; and (d) agree never to seek any costs, expenses or fees associated with gathering, processing and producing the trade blotters.

2.     Affiliate Data - we understand that you are still looking into this issue and at this point do not have an anticipated date of production. We stand by our position in the motion and, even if we agree to (1) above, will maintain our motion on this point.

Steven

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Jeffrey M. Gould
To Call Writer Directly:
(202) 879-5138
jeffrey.gould@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

June 7, 2010

**Via Electronic Mail (without enclosure)**
**And Federal Express**

Steven Rosenwasser, Esq.
Bondurant, Mixon & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3400

Re:   *Taser International, et al. v. Morgan Stanley & Co., et al.*

Dear Steven:

On behalf of UBS Securities, LLC ("UBS"), enclosed please find one CD containing materials Bates numbered UBS_TSR1296222 through UBS_TSR1296243. This production consists of trade blotters reflecting information on TASER trades from January 1, 2003 to May 31, 2009. Please note that this production has been labeled as "Highly Confidential" pursuant to the Stipulation and Protective Order Regarding Confidential Information agreed to by the parties and entered by the Court on April 15, 2010.

As we have previously discussed, we intend to seek costs for the collection, processing and production of these trade blotters.

Please be advised that this production is subject to, and not a waiver of, UBS's specific and general objections to plaintiffs' document requests, interrogatories, and our ongoing discussions regarding discovery. We reserve the right to amend and supplement our discovery response as necessary.

If you have any questions concerning the enclosed, please do not hesitate to contact me.

Chicago    Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai

Steven Rosenwasser, Esq.
June 7, 2010
Page 2

Respectfully submitted,

Jeffrey M. Gould

Enclosure

cc:     Andrew B. Clubok

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

K

**Steven J. Rosenwasser**

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Friday, November 13, 2009 2:02 PM |
| **To:** | 'Andrew Clubok' |
| **Cc:** | 'Jeffrey Landis'; 'Daniel Gomez' |
| **Subject:** | UBS Data |

Gentlemen:

At your convenience, we need to discuss data from Financial Services - 0221, UBS AG Stamford Branch/As Custodian for UBS AG London Branch - 2507 and UBS Securities LLC/Securities Lending - 5284

Thanks

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

L

**Steven J. Rosenwasser**

| | |
|---|---|
| **From:** | Elizabeth G. Eager |
| **Sent:** | Monday, May 24, 2010 10:03 AM |
| **To:** | 'Andrew Clubok'; 'Jeffrey Landis'; 'jeffrey.gould@kirkland.com'; 'Daniel Gomez' |
| **Cc:** | Steven J. Rosenwasser |
| **Subject:** | Additional Item for the Phone Call Today |

Andy, Jeff, Jeff and Dan,

For the phone call today, we want to make you aware that Plaintiffs intend to discuss the production of data from UBS Financial Services and UBS AG Stamford Branch and the May 21 deadline for production of that data.

Thanks,
Liz

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

M

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE
NEW YORK 10036-6522
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-2578
DIRECT FAX
(917) 777-2578
EMAIL ADDRESS
PAUL.ECKLES@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 18, 2010

**By Email and FedEx**

Steven J. Rosenwasser, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309

        RE:   *TASER International, Inc., et al. v. Morgan Stanley &*
              *Co., Inc., et al.,* Civil Case No. 2008-EV-004739-B

Dear Steven:

        I write on behalf of Merrill Lynch, Pierce, Fenner & Smith
Incorporated ("Merrill Lynch"). Merrill Lynch recently discovered that it
inadvertently produced certain privileged documents as part of its April 23, 2010 and
April 30, 2010 productions.

        Pursuant to Paragraph 21 of the Protective Order entered by the Court
on April 15, 2010, Merrill Lynch is hereby notifying Plaintiffs that the documents
listed below are subject to a claim of privilege and are thus protected from
disclosure. Merrill Lynch requests that Plaintiffs return, destroy and delete within
five (5) business days of receipt of this notice any copies, summaries or extracts of
these documents. Merrill Lynch further requests that Plaintiffs not "review, use, or
disclose such items for any purpose . . . ." As Merrill Lynch is notifying Plaintiffs of
these inadvertent disclosures within 90 days of being made aware of such
disclosures, inadvertent production of these documents shall not be used by Plaintiffs
as evidence that any applicable privilege has been waived. Proper entries for these
documents will be included on the privilege log that Merrill Lynch submits in

Steven J. Rosenwasser, Esq.
May 18, 2010
Page 2

connection with its production of documents responsive to the "non-Taser" search terms.

Documents beginning with the Bates numbers listed below contain attorney-client privileged and/or work product information and should have been withheld from Merrill Lynch's production:

- ML-TSINTL-ESI8852407

- ML-TSINTL-ESI8855704

- ML-TSINTL-ESI8856148

- ML-TSINTL-ESI8856742

- ML-TSINTL-ESI8857771 through ML-TSINTL-ESI8857774

- ML-TSINTL-ESI8857908

- ML-TSINTL-ESI8858083 through ML-TSINTL-ESI8858088

- ML-TSINTL-ESI8858106 through ML-TSINTL-ESI8858107

- ML-TSINTL-ESI8858120

- ML-TSINTL-ESI8858285

- ML-TSINTL-ESI8858348

- ML-TSINTL-ESI8858593 through ML-TSINTL-ESI8858594

- ML-TSINTL-ESI8858612 through ML-TSINTL-ESI8858613

- ML-TSINTL-ESI8859053 through ML-TSINTL-ESI8859054

- ML-TSINTL-ESI8859845 through ML-TSINTL-ESI 8859846

- ML-TSINTL-ESI8860966 through ML-TSINTL-ESI8860967

- ML-TSINTL-ESI8860968 through ML-TSINTL-ESI8860967

- ML-TSINTL-ESI8860968 through ML-TSINTL-ESI8860969

Steven J. Rosenwasser, Esq.
May 18, 2010
Page 3

- ML-TSINTL-ESI8860970 through ML-TSINTL-ESI8860971

- ML-TSINTL-ESI8860981

- ML-TSINTL-ESI8861138

- ML-TSINTL-ESI8861140 through ML-TSINTL-ESI8861141

- ML-TSINTL-ESI8861187 through ML-TSINTL-ESI8861188

- ML-TSINTL-ESI8861292

- ML-TSINTL-ESI8861841

- ML-TSINTL-ESI8861844 through ML-TSINTL-ESI8861446

- ML-TSINTL-ESI8863493

- ML-TSINTL-ESI8863512 through ML-TSINTL-ESI8863514

- ML-TSINTL-ESI8863619 through ML-TSINTL-ESI8863620

- ML-TSINTL-ESI8863653 through ML-TSINTL-ESI8863654

- ML-TSINTL-ESI8863941

- ML-TSINTL-ESI8864061 through ML-TSINTL-ESI8864062

- ML-TSINTL-ESI8864064

- ML-TSINTL-ESI8864382

- ML-TSINTL-ESI8865167

- ML-TSINTL-ESI8865964 through ML-TSINTL-ESI8865966

- ML-TSINTL-ESI8867127 through ML-TSINTL-ESI8867128

- ML-TSINTL-ESI8867131

- ML-TSINTL-ESI8867148

- ML-TSINTL-ESI8867156 through ML-TSINTL-ESI8867157

Steven J. Rosenwasser, Esq.
May 18, 2010
Page 4

- ML-TSINTL-ESI8867176

- ML-TSINTL-ESI8867518 through ML-TSINTL-ESI8867519

- ML-TSINTL-ESI8881608

Please confirm that these documents have been destroyed and/or returned to us within five (5) business days of receipt of this notice as required by the Protective Order. Please be advised that this letter does not limit, in any way, Merrill Lynch's rights with respect to other inadvertently produced documents that are subject to the attorney-client privilege, the work product doctrine, or other applicable privileges and immunities.

Please feel free to contact me if you have any questions.

Very truly yours,

*Paul M. Eckles*

Paul M. Eckles

cc:     Defense counsel (via e-mail)

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Jeffrey Landis
To Call Writer Directly:
(202) 879-5984
jeffrey.landis@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

January 6, 2010

**Via Electronic Mail**

Steven Rosenwasser, Esq.
Bondurant, Mixon & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3400

Re:    *Taser International, et al. v. Morgan Stanley & Co., et al.*

Dear Steven:

Pursuant to Paragraph 21 of the Stipulation and [Proposed] Protective Order Regarding Confidential Information, agreed to by the parties and awaiting entry by the Court, I am writing to provide written notice of the inadvertent production of two sets of documents (UBS_TSR0034180 - UBS_TSR0034185 and UBS_TSR0077656 - UBS_TSR0077659) containing certain attorney-client privileged and/or attorney work-product material, and to request the return, or destruction, of all copies (including all paper and electronic copies or summaries) of those documents in your possession. The Bates ranges UBS_TSR0034180 - UBS_TSR0034185 and UBS_TSR0077656 - UBS_TSR0077659 will hereafter be unused in UBS Securities, LLC's production.

Please send us a written confirmation when the documents have been returned and/or destroyed.

Sincerely,

Jeffrey Landis

cc:    Andrew Clubok

Chicago    Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai

## KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

| | | |
|---|---|---|
| Jeffrey M. Gould<br>To Call Writer Directly:<br>(202) 879-5138<br>jeffrey.gould@kirkland.com | (202) 879-5000<br><br>www.kirkland.com | Facsimile:<br>(202) 879-5200 |

May 20, 2010

**VIA ELECTRONIC MAIL**

Steven Rosenwasser, Esq.
Bondurant, Mixon & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3400

Re:    <i>Taser International, et al. v. Morgan Stanley & Co., et al.</i>

Dear Steven:

    I write on behalf of UBS Securities, LLC ("UBS"). Pursuant to Paragraph 21 of the Stipulation and Protective Order Regarding Confidential Information, agreed to by the parties and entered by the Court on April 15, 2010, I am writing to provide written notice of the inadvertent production of documents containing certain attorney-client privileged and/or attorney work-product material. UBS requests that Plaintiffs immediately return, destroy and delete within (5) business days of receipt of this notice any copies, summaries or extracts of these documents. Consistent with the Protective Order, UBS further requests that Plaintiffs not "review, use, or disclose such items for any purpose. . ." As UBS is notifying Plaintiffs of these inadvertent disclosures within 90 day of being made aware of such disclosures, inadvertent production of these documents shall not be used by Plaintiffs as evidence that any applicable privilege has been waived. Proper entries for these documents will be included on privilege logs that UBS submits in connection with its production of documents responsive to "non-Taser" search terms.

    This letter applies to documents bearing the following Bates numbers and ranges:

- UBS_TSR1155410-1155438

- UBS_TSR1155528-1155565

- UBS_TSR1156470-1156509

- UBS_TSR1158745-1158806

Steven Rosenwasser, Esq.
May 18, 2010
Page 2


- UBS_TSR1172678-1172711

- UBS_TSR1173772-1173798

These Bates numbers and ranges will hereafter be unused in UBS Securities, LLC's productions. To the extent that any of the above-listed documents contains responsive, non-privileged information, we will be producing redacted versions to you shortly.

Several of the documents referenced herein relate to your April 8, 2010 email to Jeff Landis regarding UBS's Significant Compliance Issues reports. In that email, you asked us to confirm that we will be producing additional reports of this nature. I can confirm that we will produce additional Significant Compliance Issues reports containing responsive, non-privileged information, if any.

Please send us a written confirmation when the documents have been returned and/or destroyed.

Sincerely,

Jeffrey M. Gould

Enclosure

cc:   Andrew B. Clubok
      All defense counsel

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32089722
Date: Jul 12 2010 6:41PM
Mark Harper, Clerk

N

| From: | Steven J. Rosenwasser |
|---|---|
| To: | "Dowd, Brendan"; "belias@omm.com"; |
| cc: | Elizabeth G. Eager; |
| | Nicole G. Iannarone; |
| Subject: | Privilege Log Conferral |
| Date: | Tuesday, April 20, 2010 11:06:17 AM |

Brendan and Brad,

Good morning. I am writing as a follow up to our recent conversations regarding the Defendants' privilege logs. Per the Defendants' request, rather than seeking a Special Master at this time, we are willing to endeavor to try and narrow the documents at issue. To that end, below please find our follow up conferral on Bank of America's privilege log. The number on the left refers to the privilege log entry, and the description thereafter is our conferral.

General Matter

In many instances, you refer to a NASD, FINRA, SEC or other regulatory inquiry or investigation. In order to determine whether the privilege applies to any such inquiries, we need the following information for each entry referring to an inquiry: (a) name of agency involved; (b) dates of investigation/inquiry; (c) stocks involved in inquiry; (d) subject matter being investigated and (e) whether any of the information in the email or attachment was disclosed to the agency at any point in time.

Individual Entries:

Entry 1 - With respect to the regulatory inquiry, please provide the information requested in the "General Matter" section above. Further, please explain why the underlying information (e.g., facts, trading data, communications with third parties) provided is itself privileged. Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged. Also, please state whether you would have responded to the regulatory inquiry in the normal course of business and as part of your compliance process, regardless of whether litigation was anticipated. As to your claim of work product, please state: (a) when you first anticipated litigation; (b) who you anticipated

bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.  Finally, please confirm that the email and the attachments contain nothing but legal advice.

Entry 2 - Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged. Also, please confirm that the email and the attachments contain nothing but legal advice.

Entry 3 - With respect to the regulatory inquiry, please provide the information requested in the "General Matter" section above.  Further, please explain why the information provided is itself privileged; i.e., why facts, trading data or  conveying of communications with others is privileged. Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged.  Also, please state whether you would have responded to the regulatory inquiry in the normal course of business and as part of your compliance process, regardless of whether litigation was anticipated.  As to your claim of work product, please state: (a) when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.  Finally, please confirm that the email and the attachments contain nothing but legal advice.

Entry 4 - With respect to the regulatory inquiry, please provide the information requested in the "General Matter" section above.  Further, please explain why the information provided is itself privileged; i.e., why facts, trading data or  conveying of communications with others is privileged. Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged.  Also, please state whether you would have responded to the regulatory inquiry in the normal course of business and as part of your compliance process, regardless of whether litigation was anticipated.  As to your claim of work product, please state: (a) when you first anticipated litigation; (b) who you anticipated bringing the litigation; (c) why you anticipated litigation and (d) the subject matter of the anticipated litigation.  Please confirm that the email and the attachments contain nothing but legal advice.  Finally, please provide the titles of each of the senders/recipients of the email at the time it was sent.

Entry 5 - See entry 4.

Entry 6- See entry 4.

Entry 7 - See entry 4.

Entry 8 - See entry 4

Entry 9 - See entry 4

Entry 10 - See entry 4

Entry 11 - See entry 4

Entry 12 - See entry 4

Entry 13 - See entry 4

Entry 14 - See entry 4

Entry 15 - Please explain why the information provided is itself privileged; i. e., why facts, trading data or conveying of communications with others is privileged. Please confirm that the email and the attachments contain nothing but legal advice. Please identify the contents of the attachment, including listing all parties that sent or received it, what it contains and why it is privileged.

Entry 16 - See entry 4

Entry 17 - See entry 4

Entry 18 - See entry 4

Entry 19 - See entry 4

Entry 20 - See entry 4

Entry 21 - See entry 4

Entry 22 - Please explain why the underlying factual information, such as trading data or communications with third parties, is privileged. Alternatively, please confirm that the email and the attachments contain only legal advice, and nothing else (including no trading data or discussions with clients or third parties).

Entry 23 - See Entry 22.

Entry 24 - See Entry 22.

Entry 25 - See Entry 22.

Entry 26 - See Entry 22.

Entry 27 - See Entry 22.

Entry 31 - See Entry 22.

Entry 32 - See Entry 22.

Entry 33 - See Entry 22.

Entry 34 - See Entry 22.

We appreciate your cooperation,

Steven

| From: | Steven J. Rosenwasser |
|---|---|
| To: | "Friedman, Brian L."; |
| cc: | Nicole G. Iannarone; |
| | Elizabeth G. Eager; |
| Subject: | Privilege Log Conferral |
| Date: | Monday, April 19, 2010 10:41:39 AM |

Brian,

Good morning. I am writing as a follow up to our recent conversations regarding the Defendants' privilege logs. Per the Defendants' request, rather than seeking a Special Master at this time, we are willing to endeavor to try and narrow the documents at issue.   To that end, below please find our follow up conferral on Bear Stearns' privilege log.

First, Plaintiffs do not believe that Bear Stearns' descriptions, in the "description" column, are sufficient to permit us to ascertain whether the privilege has been properly invoked.  For example, with respect to nearly all of the entries, Bear Stearns simply states that the document is an "email string regarding regulatory inquiry."  While the fact that the email involves a regulatory inquiry is relevant, we need additional facts to determine whether the email is privileged.  For example:

1.      Was the substance of the communication or any information contained in the email later provided, in whole or in part, to the regulatory agency?
2.      Did your client contemplate that any information contained within the email would be provided to a third party, such as the regulatory agency?
3.      Would your client have responded to the inquiry regardless of whether there was litigation anticipated?
4.      Does any of the email convey business, as opposed to legal, advice?
5.      Does any portion of the email contain non-legal advice, such as trading, locate, borrowing or lending data?
6.      Please identify the regulatory inquiry referred to (i.e., what agency was involved, what was the issue, which security or securities)?
7.      When the inquiry was made by the regulatory agency, did your internal rules, regulations, policies or procedures require you to investigate and respond?

Second, many of the documents contain attachments. *See, e.g,* entries 1-3, 5-6, 8-12, 17-18, 29-30, 38-40, 47-52, 54, 57-61. Can you please explain why each of the attachments is privileged? The simple fact that they were sent to an attorney does not, standing alone, render them privileged.  Please describe the attachment and why you contend its privileged.  Also, please identify all persons who ever reviewed or received attachments? Were the attachments, or any part thereof,

ever sent to a regulatory agency? Was there any contemplation that they may be?

Third, in entry numbers 11 and 12, the email is between two non-lawyers. You claim it is because it was conducted at the "direction of counsel." Please provide the facts you have supporting that claim. Further, please explain why the information contained within the email is privileged; e.g., if it is trading data, the basic information is not privileged.

Fourth, in entry number 18, you state that the email is privileged because it forwards communication of counsel. The fact that an attachment contains a communication from counsel does not necessarily mean that the cover email is privileged. Please explain why you contend the cover email is privileged. Also, with respect to the document being forwarded, please identify all authors and receipients of the document, and explain why you contend its privileged.

Thanks,

Steven

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **To:** | "Hunter, Fraser"; |
| **cc:** | Nicole G. Iannarone; |
| | Elizabeth G. Eager; |
| **Subject:** | Privilege Log Conferral |
| **Date:** | Wednesday, April 21, 2010 8:23:14 AM |

Fraser,

Good morning.  I am writing as a follow up to our recent conversations regarding the Defendants' privilege logs.  Per the Defendants' request, rather than seeking a Special Master at this time, we are willing to endeavor to try and narrow the documents at issue.   To that end, below please find our follow up conferral on Credit Suisse's privilege log.  The number on the left refers to the privilege log entry, and the description thereafter is our conferral.

General Matter

In many instances, you refer to a NASD, FINRA, SEC or other regulatory inquiry or investigation.  In order to determine whether the privilege applies to any such inquiries, we need the following information for each entry referring to an inquiry: (a) name of agency involved; (b) dates of investigation/inquiry; (c) stocks involved in inquiry; (d) subject matter being investigated and (e) whether any of the information in the email or attachment was disclosed to the agency at any point in time.

Individual Entries

Entry 1 - With respect to the regulatory inquiry, please provide the information requested under "General Matter" above.  Further, please explain why the underlying information and facts (e.g., trade data, references to statements made by third parties, business operations information) are privileged.  Also, please indicate whether it is Credit Suisse's position that all of the email and the attachment contains legal advice (i.e., there is no trading data, business advice, information on business operations, references to communications with third parties).  If not, please explain why the non-legal advice is privileged.  With respect to the attachment, please identify its contents, including all parties that sent or received it, what it contains and