# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TASER INTERNATIONAL, INC., *et al.*,

   Plaintiffs,

v.

MORGAN STANLEY & CO., INC., *et al.*,

   Defendants.

Case No. 1:10-CV-03108-JOF

**DEFENDANT MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS EMERGENCY
MOTION TO PROTECT PRIVILEGED COMMUNICATIONS
BY STRIKING PLAINTIFFS' MOTION TO COMPEL**

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") respectfully submits this reply memorandum in further support of its Emergency Motion to Protect Privileged Communications by Striking Plaintiffs' Motion to Compel and for Sanctions Against Plaintiffs Pursuant to O.C.G.A. § 9-11-37(b)(2) (the "Emergency Motion").[1]

## PRELIMINARY STATEMENT

Merrill Lynch's Emergency Motion was necessitated by Plaintiffs' Motion to Compel,[2] which revealed the contents of a privileged e-mail communication and violated the Protective Order entered in this case. Plaintiffs have since conceded that they failed to meet their burden of establishing in their Motion to Compel that

---

[1] This Emergency Motion relates to Plaintiffs' use of an inadvertently produced document that is protected by the attorney-client privilege and that, pursuant to the Protective Order entered by the State Court before this action was removed to this Court, Merrill Lynch has clawed-back from Plaintiffs and the other defendants. Accordingly, Merrill Lynch has separately requested leave to file this brief under seal. Furthermore, to preserve the confidentiality of the privileged document, Merrill Lynch has served the other defendants in this action with a version of this brief from which the privileged information has been redacted and has not served those defendants with an unredacted version of this brief. Merrill Lynch has filed the redacted version of this brief on the Court's public docket as an exhibit to its Notice of Presentation to Chambers of Motion to File Documents Under Seal.

[2] Capitalized terms have the same meaning set forth in Merrill Lynch's Memorandum of Law in Support of Its Emergency Motion to Protect Privileged Communications by Striking Plaintiffs' Motion to Compel and for Sanctions Against Plaintiffs Pursuant to O.C.G.A. § 9-11-37.

the crime-fraud exception applies to the attorney-client communication at issue, and they have agreed to withdraw the Motion to Compel if the Court denies their request for an abeyance. (*See* Plaintiffs' Request to Hold Motion in Abeyance to Conduct Further Discovery on Pertinent Issues, dated September 17, 2010, at 5.) Although Plaintiffs might still withdraw the Motion to Compel, Merrill Lynch continues to request that it be stricken and removed from the docket. Merrill Lynch also continues to request that Plaintiffs and their counsel be sanctioned for their intentional violation of the Protective Order.

Plaintiffs' opposition fails to provide any basis for denying Merrill Lynch's Emergency Motion. First, Plaintiffs' statements to the Court about the facts and holdings in several key cases are misleading. While Plaintiffs contend that courts throughout the country have permitted parties to use the contents of clawed-back documents under protective orders "identical or similar" to the one at issue here, the two cases cited by Plaintiffs do not support this proposition. In fact, one of those cases did not even involve a protective order and the other did not contain the language that Plaintiffs purport to quote.

Second, Plaintiffs' counsel fails to provide any justification for their decision to continue using a privileged document that was obviously produced inadvertently.

Third, Plaintiffs fail to justify their decision to intentionally reveal the contents of a privileged e-mail communication to other Defendants. Plaintiffs contend that they did not reveal privileged information because they provided only non-privileged facts that Plaintiffs contend are already known to third parties, but in fact Plaintiffs revealed the contents of a privileged attorney-client *communication* that also included facts that might be known by third parties. Including such facts does not destroy the privileged nature of the communication, nor does it permit Plaintiffs to reveal that communication to others.

Fourth, Plaintiffs fail to identify any language in the Protective Order permitting them to use the contents of the clawed-back document in their Motion to Compel. Rather, Plaintiffs attempt to modify the meaning of the protective order by reading additional language into its claw-back provision. While the claw-back provision unambiguously prohibits the use of clawed-back documents "for any purpose," Plaintiffs argue that this language is limited by the clause reserving a party's right to compel production of clawed-back documents. But permitting a party to compel production of a document is not the same as permitting a party to use a clawed-back document's contents for that motion. And as much as Plaintiffs try to strain the language, it simply does not support their reading. Accordingly,

4

Merrill Lynch's Emergency Motion should be granted and Plaintiffs' Motion to Compel should be stricken and removed from the docket.

## I. Plaintiffs' Misquote and Misrepresent Several Judicial Decisions in Their Effort to Justify Their Conduct.

Plaintiffs' argument that courts have adopted their interpretation of the Protective Order has no support. Plaintiffs state that "courts throughout the country have consistently permitted parties . . . to challenge documents they contend are improperly 'clawed back' under protective orders that are either identical or similar to the one governing this case." (Opp. at 8.) But here the Protective Order prohibits Plaintiffs from using a clawed-back document "for any purpose," and neither of the two cases Plaintiffs cite addresses this language. Plaintiffs first cite *Society of Professional Engineering Employees in Aerospace v. Boeing Co.*, 2010 WL 1141269 (D. Kan. March 22, 2010), which they describe in a parenthetical as "permitting challenge to clawed back document under protective order stating a party 'must not use or disclose' the allegedly privileged information." (Opp. at 8.) But the protective order at issue in *Boeing* was different, and Plaintiffs are quoting the *Boeing* court's recitation of Federal Rule of Civil Procedure 26(b)(5)(B). *See* 2010 WL 1141269, at *4. In fact, the protective order at issue in *Boeing* appears to have permitted the recipient of a claw-back notice to use the contents of the challenged document when seeking to compel

production. *See id.* at *5 (quoting protective order provision: "Upon receipt of such notice, if the person to whom such information was disclosed seeks to challenge the claim of privilege or lack of waiver, the notice and motion procedures set forth in paragraph 12, below, shall apply."; paragraph 12 contained no limitation on use). Precisely the opposite is true here, where the protective order unambiguously prohibits the use of clawed-back documents for "any purpose."

Plaintiffs similarly misquote *American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2009 WL 331471 (N.D. Ill. Feb. 10, 2009), for which they provide the same parenthetical as *Boeing*. (*See* Opp. at 8.) But American Hardware did not even involve a protective order, and the language quoted by Plaintiffs is again taken from Federal Rule of Civil Procedure 26(b)(5)(B). Indeed, *American Hardware* has no relevance here because it involves the possible waiver of the attorney-client privilege through ***intentional*** disclosure of a document to a third party.

There is simply no justification for the way in which Plaintiffs have misrepresented these decisions to the Court. Far from permitting a challenge to a clawed back document under a protective order "identical or similar to the one

governing this case," these decisions either did not involve a protective order at all or involved a protective order that is materially different from the one at issue here.

## II. Plaintiffs' Counsel Provides No Explanation for Their Use of the Privileged Document.

As described in the Emergency Motion, Plaintiffs' counsel readily admit that they identified and used the privileged e-mail before receiving Merrill Lynch's claw-back request. Plaintiffs' counsel did so notwithstanding the fact that even a cursory analysis of the document reveals its privileged nature—it is an e-mail exchange between an employee and the General Counsel seeking and providing legal advice. Plaintiffs' counsel easily have notified Merrill Lynch and ceased using the document upon seeing that it was privileged and likely to have been inadvertently produced, but instead they chose to proceed in silence and to incorporate the document into their prosecution of this case. *See Lazar v. Mauney*, 192 F.R.D. 324, 330 (N.D. Ga. 2000) ("Georgia case law expressly and vigorously provides that [inadvertently-produced] documents remain privileged. The logical corollary from that is DO NOT USE PRIVILEGED DOCUMENTS." (capitalization in original).)

In their opposition, Plaintiffs' counsel provides no justification for their decision to continue using a privileged document. Nor could they.

### III. Plaintiffs' Contention that They Did Not Reveal the Contents of a Privileged Communication in Their Motion to Compel Is Incorrect.

Plaintiffs' contention that their Motion to Compel did not reveal privileged information (*see* Opp. at 9) is baseless. They suggest that they "referenced non-privileged information that is already known by third-parties" and "did not disclose facts that are not already known outside of Merrill Lynch by some of its clients." (*Id.* at 9–10.) But Plaintiffs did not merely reveal non-privileged facts. They revealed the contents of a privileged attorney-client *communication* that also included facts known by third parties. The inclusion of those facts did not destroy the privilege and did not give Plaintiffs the right to reveal *any* part of that communication to the other Defendants. *See, e.g., In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he attorney-client privilege protects *communications* rather than information; the privilege does not impede disclosure of information *except to the extent that the disclosure would reveal confidential communications*. Thus, the fact that certain information in the documents might ultimately be disclosed . . . did not mean that the communications to [counsel] were foreclosed from protection by the privilege as a matter of law." (emphasis added)); *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("The public disclosure of [] facts . . . does not destroy the privilege with respect to attorney-client communications about those facts.").

8

███████████ So while the fact that clients requested ████████ may not itself be privileged, the fact that the General Counsel provided legal advice on this request *is* privileged. Plaintiffs revealed this information to the other Defendants in their Motion to Compel. (*See* Opp. at 10 ███████████

Plaintiffs' reliance on *Upjohn Co. v. United States*, 449 U.S. 383 (U.S. 1981), in an effort to justify their disclosure (*see* Opp. at 10) is misplaced. In *Upjohn*, the Court noted that "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." 449 U.S. at 396. Here, Plaintiffs' have revealed precisely what the client—*i.e.*, the Merrill Lynch employee—said and wrote to his attorney. Thus, *Upjohn* does not assist Plaintiffs and in fact shows the fallacy in their position.

9

## IV. Plaintiffs' Position Requires Reading Non-existent Language into the Protective Order's Claw-Back Provision.

The Protective Order entered in this case is unambiguous and provides that the parties shall not "review, use or disclose a [clawed-back document] *for any purpose*; provided, however, that such return shall not preclude the receiving party from seeking to compel production of the [document]." (Elias Aff., Ex. 1, at 11–12 (emphasis added).) Plaintiffs, however, seek to effectively rewrite the second clause of this provision to read: "provided, however, that a party may use the contents of clawed-document when seeking to compel production of that document." But the Protective Order does not say this. To the contrary, it expressly reserves the rights of the parties to seek to compel production, while making no mention of a party's right to use the privileged document's contents in doing so.

Plaintiffs' contention that the phrase "provided, however," is a limitation on the phrase "for any purpose" is simply wrong. The clause "provided, however, that such return shall not preclude the receiving party from seeking to compel production" merely forecloses any argument that by returning a clawed-back document a party has somehow conceded that the document is actually privileged or rightfully withheld. There is no indication in the text of the Protective Order that this clause is intended to carve out a permissible use of the clawed-back

10

document's contents. Indeed, the broad language prohibiting the use of a clawed-back document "for any purpose" is in no way limited by language reserving a party's right to seek to compel production of that document—presumably in the same manner that a party would seek to compel production of any document that has been intentionally withheld on privilege or other grounds.

At its core, Plaintiffs' argument is that they are entitled to an advantage from Merrill Lynch's inadvertent production and that adopting Merrill Lynch's reading of the Protective Order would eliminate that advantage. But Plaintiffs' desire to derive a benefit from the inadvertent production runs counter to the purpose of the claw-back provision, which is to put the parties back in the same position they would have been had the inadvertent production never occurred. While Plaintiffs may not like this result, it is the correct one based on the plain language of the Protective Order.

## CONCLUSION

For the foregoing reasons, Merrill Lynch respectfully requests that the Court (i) strike the Motion to Compel; (ii) direct that the Motion to Compel be removed from the electronic docket; (iii) order all parties to destroy any copies of the Motion to Compel in their possession; and (iv) grant such other and further relief

that the Court deems appropriate, including awarding Merrill Lynch the attorneys' fees and expenses it incurred in connection with bringing this Emergency Motion.

Respectfully submitted, this 19th day of October, 2010.

RICHARD H. SINKFIELD
Georgia Bar No. 649100
E-mail: rsinkfield@rh-law.com

Dan F. Laney III
Georgia Bar No. 435290
E-mail: dlaney@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:   404-522-4700
Fax:   404-525-2224

*Attorneys for Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(B)

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that the foregoing **REPLY MEMORANDUM IN FURTHER SUPPORT OF EMERGENCY MOTION TO PROTECT PRIVILEGED COMMUNICATIONS BY STRIKING PLAINTIFFS' MOTION TO COMPEL** has been prepared in accordance with Local Rule 5.1(b) with 14-point Times New Roman font.

RICHARD H. SINKFIELD
Georgia Bar No. 649100
E-mail: rsinkfield@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:   404-522-4700
Fax:   404-525-2224

*Attorneys for Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated*