E

X

H

I

B

I

T


1

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date: Aug 23 2010  4:28PM
Mark Harper, Clerk

### IN THE STATE COURT OF FULTON COUNTY
### STATE OF GEORGIA

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | FILE NO.: 2008-EV-004739-B |
| v. | : | |
| | : | |
| MORGAN STANLEY & CO., INC., *et al.*, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEUTSCHE BANK SECURITIES, INC. FOR UNDISPUTED VIOLATION OF THE COURT'S JULY 16, 2009 SCHEDULING ORDER

By Court Order, Defendant Deutsche Bank Securities, Inc. ("DBSI") was required to produce complete and accurate blue sheets (*i.e.*, documents providing detailed information about **TASER** trades) no later than **September 2009**. In the Spring, DBSI later certified to the Plaintiffs its blue sheets were correct and complete and agreed to a Court Order obligated it to produce replacement blue sheets within ten days if there were errors in the blue sheets. On July 14, **DBSI admitted to Plaintiffs that the TASER blue sheets it produced are missing information, and thus are inaccurate and incorrect**. While DBSI should have produced replacement blue sheets to Plaintiffs on or before July 28, it failed to do so. On August 5, Plaintiffs alerted DBSI that it had violated the Court's order by failing to produce replacement blue sheets within ten business days. But, weeks

782799.2

later DBSI still has not produced corrected blue sheets.  Thus, now nearly **one year**

after Plaintiffs should have had full, complete and correct blue sheets, Plaintiffs

still do not have them.  DBSI's violation is not a mere technicality—Plaintiffs have

once lost months necessary to read and analyze important data.

As with its other violations, DBSI does not deny that it violated a Court

Order, but instead asserts baseless excuses.  According to the terms of this Court's

Scheduling Order, DBSI was required to produce complete and accurate TASER

blue sheets by September 2009.[1]  Although DBSI produced its TASER blue sheets,

beginning in November 2009, Plaintiffs approached DBSI with their concern that

they were missing a significant amount of data.[2]  For example, Plaintiffs noted that

they were missing entire columns of data.  DBSI responded to Plaintiffs' inquiries

by representing that if a column was empty, no data existed.[3]

Knowing that DBSI was required to maintain some of the missing data,

Plaintiffs remained skeptical of DBSI's position.  But, rather than run to the Court,

Plaintiffs agreed not to pursue the data if DBSI certified, **in a Court Order**, that its

blue sheets were accurate and complete.  DBSI agreed.  Thus, DBSI certified to

Plaintiffs and the Court as part of a Stipulation and Order that "the information

---

[1] *See* July 16, 2009 Scheduling Order at 2-3, Attachment A at 3 (requiring all
Defendants to produce "[r]esponsive data or information from their trading
systems" by 60 days from the date of the Court's Order.
[2] *See* Exhibit 1 (Affidavit of Steven J. Rosenwasser) ¶¶ 3-5 and Tabs A-C thereto.
[3] *Id.* ¶ 4 and Tab B.

contained on the Blue Sheets [DBSI] produced to Plaintiffs is a **fair and accurate representation** of the information as it exists in DBSI's records." January 11, 2010 Stipulation and Order ¶ 7 (emphasis added). DBSI also promised to supplement production of its blue sheets if it learned of any error or inaccuracies in the data: "If DBSI becomes aware or **should reasonably have been aware** of any corrections to the Blue Sheets . . . those **shall be provided** to Plaintiffs within ten (10) business days upon discovery." *Id.* (emphasis added).

Notwithstanding DBSI's certification, as Plaintiffs continued to examine DBSI's trading data, they realized DBSI's certification did not make sense because some of the missing data must be provided to regulators when they request blue sheet data. Thus, in February 2010, Plaintiffs informed DBSI that the blue sheets appeared incomplete and incorrect.[4] DBSI repeatedly promised to "look into this issue and respond when we have additional information."[5] When Plaintiffs did not hear back from DBSI, they reminded DBSI about the issue.[6]

In May, frustrated by DBSI's slow progress on data issues, Plaintiff sent DBSI a detailed email reiterating that DBSI's blue sheets were missing data, noting specific deficiencies.[7] Since sending that email, when the parties conferred about

---

[4] *See* Exhibit 1 ¶ 6 and Tab D.
[5] *Id.* ¶ 7 and Tab E.
[6] *Id.* ¶ 8 and Tab F.
[7] *Id.* ¶ 9 and Tab G.

782799.2

open issues, Plaintiffs reminded DBSI to respond to this question.[8]  As before,

DBSI represented that it was "looking into the issue."[9]

Although this Court's July 2009 Scheduling Order required DBSI to produce

**complete** **TASER blue sheets by September 2009** and DBSI certified to this

Court that its blue sheets were accurate and complete on January 11, 2010, on July

14, 2010, DBSI admitted that it had not produced the complete information and

that, contrary to its certification, its blue sheets were not accurate.  Specifically,

DBSI admitted that the blue sheets it produced contained errors in at least two

columns of data.[10]  Although DBSI could have easily determined this fact in

**November 2009** (when Plaintiffs first informed DBSI that its blue sheets were

missing information), in February 2010 (before certifying its blue sheets were "fair

and accurate"), and in May 2010 (when Plaintiffs raised the issue again), DBSI

waited until July to first inform Plaintiffs of the missing data.

When DBSI alerted Plaintiffs to this error, it acknowledged its obligation to

produce replacement blue sheets within ten business days.[11]  But, DBSI did not

produce replacement blue sheets to Plaintiffs within ten business days.  Needing a

complete and accurate data set, on August 5, 2010, Plaintiffs asked DBSI when it

could expect the data.  DBSI responded that it was working on the issue, and

---

[8] See Exhibit 1 ¶ 10 and Tab H; *id.* ¶ 11 and Tab I.
[9] *Id.* ¶ 11 and Tab I.
[10] *Id.* ¶ 12 and Tab J.
[11] *See id.*

would not provide a date certain for production.  Plaintiffs again informed DBSI

that the Court's Order required it to produce the data within two weeks.  *See* S.

Rosenwasser August 6, 2010 email to J. Halper.  In an effort to avoid discovery

disputes, Plaintiffs waited another two weeks for the data—and DBSI **still** did not

produce the data.  As of today, Plaintiffs have not received the data from DBSI and

have no idea when they will receive it.

DBSI has willfully violated the Court's Order.` The Court's Order required

DBSI to produce replacement data within ten business days of when it knew or

reasonably should have known of the data error—an obligation that DBSI

acknowledged.  But, more than a month has passed since DBSI reported the

problem, and it still has not produced replacement data.  But, DBSI's violation is

even more egregious because DBSI reasonably should have been aware of these

errors months ago.  If DBSI had actually looked into the missing data issue in

November 2009 or February 2010 (as it represented it had), then it would have

known then (as it apparently knows now) about the missing data.  Without a doubt,

when Plaintiffs sent the May 6 email, DBSI should have identified the problem

shortly thereafter.  Yet, DBSI did not inform Plaintiffs until July 2010.  Thus,

DBSI either: (a) failed to inform Plaintiffs within 10 days that its blue sheets were

inaccurate or (b) made false representations to Plaintiffs that they were looking

into the issue.  Sanctions are warranted.  *See Swindeel v. Swindell*, 233 Ga. 854,

856 (1975) ("[A] conscious indifference to the consequence of failure to comply

with the Orders of this Court . . . has been equated with 'willful misconduct.'").

DBSI will likely tell the Court that the data it failed to produce was

unimportant, rendering the violation of Court Orders minor or technical.  But, of

course, it is not for DBSI to determine what data (that it is required to produce)

Plaintiffs do and do not need.   In any event, these are not minor violations, as the

data is relevant to locating and examining unlawful trades.[12]

In short, as set forth in Plaintiffs' pending motions, this is just another

example of DBSI failing to abide by the Court's deadlines (*e.g.*, it previously

violated the Court's Orders on rolling productions, dumping over 5 million pages

in the last 4 days leading up to the production deadlines).  The only way to prevent

these continuing violations is to impose consequences.  Thus, Plaintiffs request that

the Court impose the following sanctions:

- Extend the period for Plaintiffs (and not DBSI) to seek fact discovery from

  DBSI to and through the close of the expert discovery period, moving the

  deadline from March 31, 2011 to June 27, 2011.  This extension would

  provide Plaintiffs with some additional time to compensate for the period

---

[12] Plaintiffs note that while DBSI has agreed to fix some of its blue sheet problems, it still has not informed Plaintiffs why the opposing broker code is missing on approximately 94% of the blue sheets it produced (further hampering Plaintiffs' analysis).  *See* Exhibit 1 ¶ 9 and Tab G.

782799.2

6

when Plaintiffs only had DBSI's incomplete blue sheets without further delaying trial;

- Enter relief that the Court deems appropriate to deter DBSI from continuing to engage in its willful violation of this Court's Orders, including, but not limited to, finding that the data DBSI failed to produce in a timely manner creates an issue of fact on Plaintiffs' claims;

- Require DBSI to pay all Special Master fees, costs and expenses associated with this motion; and

- Award Plaintiffs their fees incurred in bringing this motion.

These sanctions are well within the Court's discretion.  *See Freeman v. Foss*, 298 Ga. App. 498, 501 (2009).

Respectfully submitted, this 23rd day of August, 2010.

/s/ Elizabeth G. Eager
John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Elizabeth G. Eager
Georgia Bar No. 644007
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax

782799.2

James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas  77002
(713) 659-7617 Tel.
(713) 659-7641 Fax
(admitted pro hac vice)

***ATTORNEYS FOR PLAINTIFFS***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEUTSCHE BANK**

**SECURITIES, INC. FOR UNDISPUTED VIOLATION OF THE COURT'S**

**JULY 16, 2010 SCHEDULING ORDER** was electronically filed with the Clerk

of Court using the Court's electronic filing system which will send email

notification of such filing to the following attorneys of record who are registered

participants in the Court's electronic notice and filing system:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601
>
> **Attorneys for Banc of America Securities, LLC and**
> **Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
> Andrew J. Frackman, Esq.
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY  10036
>
> **Attorneys for Morgan Stanley & Co. Incorporated:**
> Robert F. Wise, Jr., Esq.
> William J. Fenrich, Esq.
> Melissa T. Aoyagi, Esq.
> Davis Polk & Wardwell LLP
> 450 Lexington Avenue
> New York, NY  10017

782799.2

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

782799.2

10

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022

This 23rd day of August, 2010.

/s/ Elizabeth G. Eager
Elizabeth G. Eager
Georgia Bar No. 644007

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date: Aug 23 2010  4:28PM
Mark Harper, Clerk

# EXHIBIT  1

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 2008-EV-004739-B |
| MORGAN STANLEY & CO., INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## AFFIDAVIT OF STEVEN J. ROSENWASSER

I, Steven Jason Rosenwasser, being first duly sworn, do depose and say:

1.

I am over the age of 18 and otherwise competent to give this affidavit. The following is filed in support of Plaintiffs' Motion For Sanctions Against Deutsche Bank Securities, Inc. For Undisputed Violation Of The Court's July 16, 2009 Scheduling Order.

2.

I am a partner at the law firm of Bondurant, Mixson & Elmore, LLP, which represents Plaintiffs in this matter.

3.

A true and correct copy of a November 12, 2009 Email from myself to counsel for Deutsche Bank Securities, Inc., is attached hereto as Tab A.

4.

A true and correct copy of a November 30, 2009 Email from myself to counsel for Deutsche Bank Securities, Inc., is attached hereto as Tab B.

5.

A true and correct copy of a December 16, 2009 Email from Elizabeth Eager to counsel for Deutsche Bank Securities, Inc., is attached hereto as Tab C.

6.

A true and correct copy of a February 8, 2010 Email from Elizabeth Eager to counsel for Deutsche Bank Securities, Inc., is attached hereto as Tab D.

7.

A true and correct copy of a February 9, 2010 Email from counsel for Deutsche Bank Securities, Inc. to Elizabeth Eager, is attached hereto as Tab E.

8.

A true and correct copy of a March 12, 2010 Email from Elizabeth Eager to counsel for Deutsche Bank Securities, Inc., is attached hereto as Tab F.

9.

A true and correct copy of a May 6, 2010 Email from myself to counsel for

Deutsche Bank Securities, Inc., is attached hereto as Tab G.

10.

A true and correct copy of a June 9, 2010 Email from myself to counsel for

Deutsche Bank Securities, Inc., is attached hereto as Tab H.

11.

A true and correct copy of a July 2, 2010 Email from Elizabeth Eager to

counsel for Deutsche Bank Securities, Inc., is attached hereto as Tab I.

12.

A true and correct copy of a July 14, 2010 Email from myself to counsel for

Deutsche Bank Securities, Inc., is attached hereto as Tab J.


FURTHER AFFIANT SAYETH NOT.

Steven J. Rosenwasser

Sworn to and subscribed before me
this 23rd day of August, 2010.

Notary Public

My Commission Expires:



## CERTIFICATE OF SERVICE

I hereby certify that on this 23th day of August, 2010 a true and correct copy of the foregoing **AFFIDAVIT OF STEVEN J. ROSENWASSER** was electronically filed with the Clerk of Court using the Court's electronic filing system which will automatically send an email notification of such filing to the following attorneys of record who are registered participants in the Court's electronic notice and filing system:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601
>
> **Attorneys for Banc of America Securities, LLC:**
> Andrew J. Frackman, Esq.
> Benjamin D. Petrosky, Esq.
> Brendan J. Dowd, Esq.
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY  10036
>
> **Attorneys for Morgan Stanley & Co. Incorporated:**
> Robert F. Wise, Jr., Esq.
> William J. Fenrich, Esq.
> David B. Steinberg, Esq.
> Melissa T. Aoyagi, Esq.
> Davis Polk & Wardwell
> 450 Lexington Avenue
> New York, NY  10017

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Emily P. Hughes, Esq.
Jeffrey G. Landis, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022

Ryan P. Phair, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006

**Attorneys for Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
Paul M. Eckles, Esq.
Shepard Goldfein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY  10036

This 23th day of August, 2010.


/s/ Steven J. Rosenwasser
Georgia Bar No. 614908

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA  30309-3417
Tel.: (404) 881-4100
Fax: (404) 881-4111

795000.1

6

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB A

**From:** Steven J. Rosenwasser
**To:** "Martin.Seidel@cwt.com";
**Subject:** Data Dictionary Questions
**Date:** Thursday, November 12, 2009 4:54:14 AM

Martin,

In an effort to finish the data dictionary issue with respect to the data you have already given  us, in addition to our previous questions, here are the other questions we have remaining: (all of which pertain to the blue sheets):

The column "Opp Broker" is defined as "Contra party broker dealer number/code." What is the definition when the field is not populated?
The column "RR#" is defined as "Branch office/Registered Representative Number." What is the definition when the field is not populated?
The column "Account_Type_Identifier" is defined as "Account Type Identifier." What is the definition when the field is not populated?
The column "Prime_Broker" is defined as "Clearing number of the account's prime broker." What is the definition when the field is not populated?
The column "Depo_Ins_Identifier" is defined as "Identifying number assigned to the account by the depository institution." Why is this column entirely not populated?
The column "Sub_Broker_No" is defined as "Submitting Broker Number: If NSCC member use NSCC clearing number. If not a NSCC member, use clearing number assigned to you by your clearing agency." What is the definition when the field is not populated?

Also, we still need the chart of accounts.

Thanks,

Steven

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB B

## Elizabeth G. Eager

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Monday, November 30, 2009 12:41 PM |
| **To:** | Steven J. Rosenwasser; 'Seidel, Martin'; Elizabeth G. Eager |
| **Subject:** | RE: Open Items |

Martin,

It was good speaking with you a few moments ago.  To confirm our call, we discussed:

1.      Keywords - you agreed to run the search terms as set forth in my email of 11/25 with the following modifications: (a) "nscc and short" - we agreed to "nscc w/10 short"; and (b) for "short and illegal, unlawful* and manipul*" we agreed to change it to "short w/25 illega* or unlawful* or manipul*"

2.      Custodians - you are looking into the remainder of the persons we identified and will respond shortly

3.      With respect to our Nov. 9 email you indicated: (a) RECAP reports - these are an NSCC doc, and DBSI does not have any in its possession, custody or control; (b) interface for prime brokers - you are checking whether you use that interface and, if so, what information it generates; (c) super statements - these have no information specific to securities, and thus you contend they are not relevant.

4.      With respect to our Nov. 16 emails, you indicated: (a) you will provide the sample reports (e.g. batch recap and reconciliation reports) this week; (b) FINRA problem for May 16 - you indicated this is a FINRA problem, not DBSI.  You are trying to reconcile it now.  We will get the information for all other dates; (c) securities attributes data - you indicated this refers to the hard and easy to borrow lists; you indicated that the data was not centrally stored prior to 2006, but it will be captured to the extent it involves Taser in the keyword searches

5.      Data dictionary -  you indicated that if a column is empty, it means that the  blue sheet pulled no data when it was run.  I asked whether the data was available somewhere else, and you agreed to check.

6.      Data from Deutsche Bank Trust Company Americas and Deutsche Bank Securities Limited - you agreed to discuss producing the data with your client.  For clarity, at this time, we are willing to accept: (a) daily trading blotters; (b) blue sheets and (c) daily/weekly stock position reports.

7.      Chart of accounts - you indicated you would produce it shortly.

Thanks,

Steven

---

**From:** Steven J. Rosenwasser
**Sent:** Monday, November 30, 2009 8:16 AM
**To:** 'Seidel, Martin'; Elizabeth G. Eager
**Subject:** Open Items

Good morning.   In a continuing effort to stay on top of the outstanding issues, here is the current list (note, there may be an inadvertent omission which should not be construed as an agreement or waiver):

1.      Custodians - need to finalize list
2.      Keywords - we are having a call today at noon
3.      Resolving Legato issue you recently raised

2.      Response to Eager's email of Nov. 9 with the subject line "re: TASER/DBSI: Follow up to 11609 call"

3.      Response to Eager's email of Nov. 16 with the subject line "TASER/DBSI Letter follow up"

4.      Production of data from Deutsche Bank Trust Company Americas and Deutsche Bank Securities Limited (see email of Nov. 13)

5.      Data dictionary questions set forth in Nov. 12 email

6.      Response to Eager's email of Nov. 6 with subject line "Re: TASER - 11/6/09 Meet and Confer Confirmation"

7.      Production of  chart of accounts (see Oct. 30 email)


As you know, we are required to complete conferrals on keywords/custodians today.  Thus, we hope to resolve those issues during our noon call.

Steven

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB C

## Elizabeth G. Eager

| | |
|---|---|
| **From:** | Elizabeth G. Eager |
| **Sent:** | Wednesday, December 16, 2009 6:48 PM |
| **To:** | 'Isajiw, Peter'; 'Seidel, Martin' |
| **Cc:** | Steven J. Rosenwasser |
| **Subject:** | Follow up on DBSI 12/15 Conference Call |

Martin and Peter,

I am e-mailing to follow up on the conference call that Steven and I had with Peter and Greg yesterday.

On the call we first discussed custodians. First, we discussed Mink, Lane and Harrison. Based on your description of their responsibilities, we agreed to withdraw our request for them if you send us an e-mail summarizing what their responsibilities were. Next, you brought up Sabin Kapferer. You explained that while this individual worked in Domestic Settlements the person's responsibilities were more international. We agreed to remove our request. Yesterday, I sent Peter a document containing what we have as our final custodian list and asked you to let us know if you believed there were any inaccuracies in the list.

Next, we talked about producing Legato documents. You stated that it would you if we set you a list of the order we wanted the custodians reviewed in so that you could prioritize certain individuals. In my e-mail yesterday I sent Peter that list.

We have not reached a final agreement on keywords because you are still performing sampling on the last list we provided. You stated we should get a sample list by the end of the week.

We discussed whether you were going to produce data for Deutsche Bank Trust Company Americans and Deutsche Bank Securities Limited. You stated you were still working on this issue.

We previously raised the issue of data missing on the blue sheets. You asked us to provide you with examples of the missing information. We are working on getting examples to you.

Finally, there is one outstanding issue that we unintentionally omitted from the phone call. The second requests for production included two documents requests directed at DBSI regarding an Arca investigation. We would like to have a phone call to discuss what documents you will be producing in response to this document request. Are you available Thursday or Friday to discuss this issue?

Please let me know if you have any questions.

Thanks,
Liz

1

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date: Aug 23 2010 4:28PM
Mark Harper, Clerk

# TAB D

## Elizabeth G. Eager

| | |
|---|---|
| **From:** | Elizabeth G. Eager |
| **Sent:** | Monday, February 08, 2010 2:34 PM |
| **To:** | 'Seidel, Martin'; 'Isajiw, Peter' |
| **Cc:** | Steven J. Rosenwasser |
| **Subject:** | DBSI: Open Items/Blue Sheet Empty Columns |

With regard to the Blue Sheet empty column issue, you previously asked us for examples about what information we contended was missing. We have questions about what it means when the following fields of information are not populated:

The column "Opp Broker" is defined as "Contra party broker dealer number/code." What is the definition when the field is not populated?

The column "RR#" is defined as "Branch office/Registered Representative Number." What is the definition when the field is not populated?

The column "Account_Type_Identifier" is defined as "Account Type Identifier." What is the definition when the field is not populated?

The column "Prime_Broker" is defined as "Clearing number of the account's prime broker." What is the definition when the field is not populated?

The column "Depo_Ins_Identifier" is defined as "Identifying number assigned to the account by the depository institution." Why is this column entirely not populated?

The column "Sub_Broker_No" is defined as "Submitting Broker Number: If NSCC member use NSCC clearing number. If not a NSCC member, use clearing number assigned to you by your clearing agency." What is the definition when the field is not populated?

Thank you for your time and attention to these matters.

Liz

---

**From:** Elizabeth G. Eager
**Sent:** Monday, February 08, 2010 10:36 AM
**To:** 'Seidel, Martin'; 'Isajiw, Peter'
**Cc:** Steven J. Rosenwasser
**Subject:** RE: Current Open Items

Martin and Peter,

I hope you both are doing well this morning. I am sending a list with the open items as they pertain to DBSI so we can stay on top of any issues that need to be resolved. Our list includes the following (any inadvertent issue should not be deemed a waiver):

(1) Redaction issue (see Rosenwasser's 1/18/10 email)
(2) ARCA issue (to be resolved by Court ruling on motion to compel)
(3) Blue Sheet empty column issue (see # 4 in Rosenwasser 1/18/10 email below)

(4) Redacted lender data. In January you indicated to us that you would be unredacting lender data after addressing certain confidentiality issues. If you have not produced this data to us yet, when do you anticipate producing it?

(5) Identification of custodians who responded to inquiries/ investigations (if any) and routine blue sheet requests pursuant to paragraph 4 of the DBSI-Plaintiffs stipulation

(6) Identification of custodians with persons reasonably likely to have responsive information regarding defendants' position documents pursuant to paragraph 3b of the December 15, 2009 Stipulation.

Finally, we need to confer with you (along with the other defendants) on objections to our request numbers 23 and 24. I understand Rick Pepperman is leading this issue, and he has information from us to address this topic.

Please let me know a convenient time to have a call to discuss these issues.

Liz

Elizabeth G. Eager, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
404-881-4186 (direct)
404-881-4111 (fax)

Confidentiality Notice: This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

---

**From:** Steven J. Rosenwasser
**Sent:** Monday, January 18, 2010 4:47 AM
**To:** 'Seidel, Martin'; Isajiw, Peter
**Cc:** Elizabeth G. Eager
**Subject:** Current Open Items

Martin and Peter,

Good morning. I am sending one of my now familiar follow-up lists so we can stay on top of any issues that still need to be resolved. My list includes the following (any inadvertent omission should not be deemed a waiver):

1.      Redaction issue (i.e., your response to our proposal)
2.      Arca Investigation documents (this will be resolved by the Court's ruling on our motion to compel)
3.      Production of FINRA short position reports and information (you were going to provide us with an estimated date)
4.      Data dictionary - you indicated that if a column is empty, it means that the blue sheet pulled no data when it was run. On or around Nov. 30, I asked      whether the data was   available somewhere else, and you agreed to check (see email of 11/30). Do you have any additional information?

Finally, you had previously circulated a revised protective order, and we provided our redline responses. Can you please let me know the status of this?

Thanks,

Steven

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB E

## Elizabeth G. Eager

| | |
|---|---|
| **From:** | Koh, Christine [Christine.Koh@cwt.com] on behalf of Seidel, Martin [Martin.Seidel@cwt.com] |
| **Sent:** | Tuesday, February 09, 2010 2:53 PM |
| **To:** | Elizabeth G. Eager; Isajiw, Peter |
| **Cc:** | Steven J. Rosenwasser |
| **Subject:** | RE: Current Open Items |

Liz,

Hope all is well.  Below are our responses to your "open items" email.  Please let us know if you have any additional questions about any of the topics:

(1) Redaction issue (see Rosenwasser's 1/18/10 email)

As we have previously explained, we cannot produce native spreadsheet files to you on a wholesale basis because, consistent with the industry standards, we need to produce these files as .tiff images in order to preserve our ability to redact certain information.  However, as we also previously explained, we would be willing to meet & confer to discuss the possibility of producing certain native from a limited universe of spreadsheet documents to the extent we could do so without compromising our redactions and without undue burden or expense.  We continue to believe that our meet & confer on this topic should occur after we have finished producing the relevant documents and after Plaintiffs have identified the limited universe of documents they would like us to consider.

2) ARCA issue (to be resolved by Court ruling on motion to compel)

We agree that this issue will be resolved by the Court.

(3) Blue Sheet empty column issue (see # 4 in Rosenwasser 1/18/10 email below).

On December 15, 2009, you agreed to provide us with examples of columns with purportedly missing information that you were concerned about.   We received your email listing those columns yesterday.  We will look into this issue and respond when we have additional information.

(4) Redacted lender data.  In January you indicated to us that you would be unredacting lender data after addressing certain confidentiality issues.  If you have not produced this data to us yet, when do you anticipate producing it?

The unredacted documents were produced to you on January 8, 2010.  As indicated in the January 8, 2010 cover accompanying that production DBSI produced "unredacted versions of securities lending data produced in redacted form on November 13, 2009" in the documents bates numbered DBSI-T 572659 through 572666.

(5) Identification of custodians who responded to inquiries/ investigations (if any) and routine blue sheet requests pursuant to paragraph 4 of the DBSI-Plaintiffs stipulation.

(6) Identification of custodians with persons reasonably likely to have responsive information regarding defendants' position documents pursuant to paragraph 3b of the December 15, 2009 Stipulation.

We are currently investigating the appropriate custodians regarding items (5) and (6).  We will advise you when we have additional information.   Consistent with the parties agreement as set forth in the February 5

1

Stipulation, we intend to produce any responsive, non-privileged information from these custodians on June 1, 2010.

Martin L. Seidel, Esq.
Partner
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Tel:  +1 (212) 504-5643
Fax: +1 (212) 504-6666
www.cadwalader.com

---

**From:** Elizabeth G. Eager [mailto:eager@bmelaw.com]
**Sent:** Monday, February 08, 2010 10:36 AM
**To:** Seidel, Martin; Isajiw, Peter
**Cc:** Steven J. Rosenwasser
**Subject:** RE: Current Open Items

Martin and Peter,

I hope you both are doing well this morning.  I am sending a list with the open items as they pertain to DBSI so we can stay on top of any issues that need to be resolved.  Our list includes the following (any inadvertent issue should not be deemed a waiver):

(1) Redaction issue (see Rosenwasser's 1/18/10 email)
(2) ARCA issue (to be resolved by Court ruling on motion to compel)
(3) Blue Sheet empty column issue (see # 4 in Rosenwasser 1/18/10 email below)
(4) Redacted lender data.  In January you indicated to us that you would be unredacting lender data after addressing certain confidentiality issues.  If you have not produced this data to us yet, when do you anticipate producing it?
(5) Identification of custodians who responded to inquiries/ investigations (if any) and routine blue sheet requests pursuant to paragraph 4 of the DBSI-Plaintiffs stipulation
(6) Identification of custodians with persons reasonably likely to have responsive information regarding defendants' position documents pursuant to paragraph 3b of the December 15, 2009 Stipulation.

Finally, we need to confer with you (along with the other defendants) on objections to our request numbers 23 and 24.  I understand Rick Pepperman is leading this issue, and he has information from us to address this topic.

Please let me know a convenient time to have a call to discuss these issues.

Liz

Elizabeth G. Eager, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
404-881-4186 (direct)
404-881-4111 (fax)

Confidentiality Notice: This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named

addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

---

**From:** Steven J. Rosenwasser
**Sent:** Monday, January 18, 2010 4:47 AM
**To:** 'Seidel, Martin'; Isajiw, Peter
**Cc:** Elizabeth G. Eager
**Subject:** Current Open Items

Martin and Peter,

Good morning.  I am sending one of my now familiar follow-up lists so we can stay on top of any issues that still need to be resolved.  My list includes the following (any inadvertent omission should not be deemed a waiver):

1.       Redaction issue (i.e., your response to our proposal)
2.       Arca Investigation documents (this will be resolved by the Court's ruling on our motion to compel)
3.       Production of FINRA short position reports and information (you were going to provide us with an estimated date)
4.       Data dictionary - you indicated that if a column is empty, it means that the  blue sheet pulled no data when it was run.  On or around Nov. 30, I asked         whether the data was   available somewhere else, and you agreed to check (see email of 11/30).  Do you have any additional information?

Finally, you had previously circulated a revised protective order, and we provided our redline responses.  Can you please let me know the status of this?

Thanks,

Steven

---

IRS Circular 230 Legend: Any advice contained herein was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal, state, or local tax penalties. Unless otherwise specifically indicated above, you should assume that any statement in this email relating to any U.S. federal, state, or local tax matter was written in connection with the promotion or marketing by other parties of the transaction(s) or matter(s) addressed in this email. Each taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB F

## Elizabeth G. Eager

| | |
|---|---|
| **From:** | Elizabeth G. Eager |
| **Sent:** | Friday, March 12, 2010 5:08 PM |
| **To:** | 'Seidel, Martin'; 'Isajiw, Peter' |
| **Cc:** | Steven J. Rosenwasser; Nicole G. Iannarone |
| **Subject:** | Current Open Items |

Martin and Peter,

The plaintiffs currently have a variety of issues outstanding with each defendant and are working with each defendant to resolve those issues. As I am sure you are also aware, there are no future monthly conferences with the Court scheduled. Plaintiffs are going to contact the Court to schedule future monthly conferences. But before we contact the Court, we want to try to resolve as many of the outstanding issues as possible. To that end, we would like to schedule a phone call with you next week to discuss open issues, and I will be out of the office next Friday. Please let us know a date and time next week that works for you.

We still have open the issues laid out in my emails below. Additionally, we need to confer on profit and loss data.

Also, while we are dealing with the conferrals about Plaintiffs' Second Interrogatories on a group basis, plaintiffs still have not received a response from the group about Steven's February 23rd email. We also consider this an open issue and would like to confer about it.

Thanks,
Liz

---

**From:** Elizabeth G. Eager
**Sent:** Friday, March 5, 2010 4:15 PM
**To:** 'Seidel, Martin'; 'Isajiw, Peter'
**Cc:** Steven J. Rosenwasser
**Subject:** FW: Current Open Items

Martin and Peter,

We still need to discuss the issues laid out in the email below. Additionally, we need to discuss production of profit and loss data from DBSI. Please let us know when you are available to discuss these issues.

Thanks,
Liz

---

Elizabeth G. Eager, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
404-881-4186 (direct)
404-881-4111 (fax)

Confidentiality Notice: This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**From:** Elizabeth G. Eager
**Sent:** Monday, February 08, 2010 10:36 AM
**To:** 'Seidel, Martin'; 'Isajiw, Peter'
**Cc:** Steven J. Rosenwasser
**Subject:** RE: Current Open Items

Martin and Peter,

I hope you both are doing well this morning.  I am sending a list with the open items as they pertain to DBSI so we can stay on top of any issues that need to be resolved.  Our list includes the following (any inadvertent issue should not be deemed a waiver):

(1) Redaction issue (see Rosenwasser's 1/18/10 email)
(2) ARCA issue (to be resolved by Court ruling on motion to compel)
(3) Blue Sheet empty column issue (see # 4 in Rosenwasser 1/18/10 email below)
(4) Redacted lender data.  In January you indicated to us that you would be unredacting lender data after addressing certain confidentiality issues.  If you have not produced this data to us yet, when do you anticipate producing it?
(5) Identification of custodians who responded to inquiries/ investigations (if any) and routine blue sheet requests pursuant to paragraph 4 of the DBSI-Plaintiffs stipulation/
(6) Identification of custodians with persons reasonably likely to have responsive information regarding defendants' position documents pursuant to paragraph 3b of the December 15, 2009 Stipulation.

Finally, we need to confer with you (along with the other defendants) on objections to our request numbers 23 and 24.  I understand Rick Pepperman is leading this issue, and he has information from us to address this topic.

Please let me know a convenient time to have a call to discuss these issues.

Liz

Elizabeth G. Eager, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
404-881-4186 (direct)
404-881-4111 (fax)

Confidentiality Notice: This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**From:** Steven J. Rosenwasser
**Sent:** Monday, January 18, 2010 4:47 AM
**To:** 'Seidel, Martin'; Isajiw, Peter
**Cc:** Elizabeth G. Eager
**Subject:** Current Open Items

Martin and Peter,

Good morning. I am sending one of my now familiar follow-up lists so we can stay on top of any issues that still need to be resolved. My list includes the following (any inadvertent omission should not be deemed a waiver):

1.      Redaction issue (i.e., your response to our proposal)
2.      Arca Investigation documents (this will be resolved by the Court's ruling on our motion to compel)
3.      Production of FINRA short position reports and information (you were going to provide us with an estimated date)
4.      Data dictionary - you indicated that if a column is empty, it means that the blue sheet pulled no data when it was run. On or around Nov. 30, I asked        whether the data was   available somewhere else, and you agreed to check (see email of 11/30). Do you have any additional information?

Finally, you had previously circulated a revised protective order, and we provided our redline responses. Can you please let me know the status of this?

Thanks,

Steven

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB G

**Elizabeth G. Eager**

| | |
|---|---|
| From: | Steven J. Rosenwasser |
| Sent: | Thursday, May 06, 2010 10:48 AM |
| To: | 'Seidel, Martin' |
| Cc: | Nicole G. Iannarone; Elizabeth G. Eager |
| Subject: | DBSI Conferral Re: Data/Documents |

Martin,

I am emailing to follow up on certain issues with regard to DBSI production.  By raising these issues now, Plaintiffs in no way prejudice their right to raise issues about other deficiencies later.   Additionally, this email is without prejudice to our rights to seek appropriate relief from the Court for any violation of an order from the Court.

(1) Plaintiffs request that you produce a complete "chart of accounts."  To fully understand journal entries in some of your stock records that net balance a stock record, we need a chart of accounts, as maintained in the ordinary course of business.

(2) Plaintiffs request that you produce trade runs and P&S blotters.  While DBSI has produced its blue sheets, as Plaintiffs have reviewed the data, we have concerns about the accuracy of DBSI's blue sheets.  For example:

- The blue sheets do not record the time of equity transactions;
- DBSI's equity blue sheets do not include the opposing broker for 94% of the trades;
- DBSI's equity blue sheets only show 2 trades transacted on the NASDAQ market for the six-year time period.  On the other hand, the NASDAQ ETJ shows 124,289 transactions.  Of the 2 NASAQ trades reported in Deutsche Bank's blue sheets, neither are recorded in the NASDAQ ETJ; and
- DBSI's option blue sheets show options that were not posted in the Options Clearing Corporation production.

Plaintiffs understand that the equity trade journals capture merely one portion of DBSI's transactions in TASER on a given day so that the blue sheets should record either the same volume of trading activity as the ETJ (if all the trades were recorded in the ETJ) or a greater volume of trading activity (if trades were executed through other platforms).  DBSI's blue sheets present a different problem because the ETJ records *more* transactions than recorded in the blue sheets, suggesting that the blue sheets are not accurate records.

(3) Please confirm DBSI will be unredacting the lenders of the shares in the locate data, and that the information will be produced within the next 30 days.

(4) Please confirm DBSI will be unredacting its Loan Contract Data to show the receiving parties of the loans, and that the information within the next 30 days.

(5) S012 Recap Report.  You produced one instance of the S012 Recap Report at DBSI-T 1043284.  Please confirm that TASER has not been on that report at any other time from January 1, 2003 through May 31, 2009.

(6) Did DBSI create or utilize a report known as the "CNS Consecutive Days Short Fail Report for Reg SHORT Threshold CUSIPS – Intra Day Report?"  We have seen that other defendants utilized this report which includes the following columns:  CUSIP; Sec Description; Security Type; P/E Age; GF Quantity; Min Liability; Today's Net Opening CNSA Pos Long/ Shrt (-) and CNSE Pos Long/ Short (-); Today's Settling Trade Buy/ Sell (-); Today's Net Position CNSA Prior to Night and CNSE Prior to Night Cycle Long/ Shrt (-); Today's Night Cycle Alloc Long/ Shrt (-); Today's Day Cycle Alloc Long/ Shrt (-); Today's EOD CNS Pos; Tomorrow's Sett Trades Purchase/ Sold (-); and Tomorrow Projected CNS Pos Lng/Shrt (-). Please let us know if DBSI created this

1

report, or a report with many of these fields, during the time period. If DBSI created such a report, please identify it by name and confirm that all such reports have been produced.

(7) Did DBSI create letters that were known as "Loan Termination & Buy In Notices?" We have seen that other defendants utilized this type of letter to alert those to whom they had loaned security to return a specific quantity of the security. The letter lays out the quantity of security under the loan contract, the date of the loan, and the amount of the contract. Please let us know if DBSI created this report, or a report with many of these fields, during the time period. If DBSI created such a report, please identify it by name and confirm that all such reports have been produced.

(8) Did DBSI create or utilize a report known as the "SAFE or SGUD Fails" report? We have seen that other defendants utilized this report which includes the following columns: CUSIP; symbol; security type; temperature; type; age; quantity; amount; account name; t/d; s/d; source; trade ID; O/I affirmed; DK Ind; market exposure; and comments. Please let us know if DBSI created this report, or a report with many of these fields, during the time period. If DBSI created such a report, please identify it by name and confirm that all such reports have been produced.

(9) Did DBSI create or utilize a report similar to or known as the "Threshold Fail Tracking System Data"? We have seen that other defendants utilized this report which includes the following columns: Report Date; Security Name; CUSIP; Account Number; At Risk; Start Date; Days Aged; Ticker; Exchange Code; Acct; Account Name; IPS Symbol; Comments; Threshold Start Date; Orig Qty; Location; and BuyIn_Date. Please let us know if DBSI created this report, or a report with many of these fields, during the time period. If DBSI created such a report, please identify it by name and confirm that all such reports have been produced.

(10) The following questions pertain to DBSI's blue sheets.

    (a) The column "Opp Broker" is defined as "Contra party broker dealer number/ code." What is the definition when the field is not populated?

    (b) The column "RR#" is defined as "Branch office/ Registered Representative Number." What is the definition when this field is not populated?
    (c) The column "Account_Type_Identifier" is defined as "Account Type Identifier." What is the definition when the field is not populated?

    (d) The column "Prime Broker" is defined as "Clearing number of the account's prime broker." What is the definition when the field is not populated?

    (e) The column "Depo_Ins_Identifier" is defined as "Identifying number assigned to the account by the depository institution." Why is this column entirely not populated?

    (f) The column "Sub_Broker_No" is defined as "Submitting Broker Number: If NSCC member, use NSCC clearing number. If not a NSCC member, use clearing number assigned to you by your clearing agency." What is the definition when the field is not populated?

We appreciate your time and attention to these matters. A number of issues are raised in this issue, and please contact us as you have answers to these questions—you do not need to wait until you have resolved all of the issues.

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB H

## Elizabeth G. Eager

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Wednesday, June 09, 2010 5:01 AM |
| **To:** | 'Markel, Gregory'; 'Halper, Jason' |
| **Cc:** | Elizabeth G. Eager |
| **Subject:** | Confirmation of yesterday's conferral |

Greg and Jason,

I am emailing to follow up on the phone call we had yesterday. On the call we mainly discussed the 30(b)(6) regarding inquiries and investigations and outlined the other outstanding issues. More specifically:

1.       I explained that with regard to the 30(b)(6) Deposition on inquiries/ investigations, the information is relevant to this case and for that reason Plaintiffs are not willing to withdraw the deposition notice. We are, however, willing to reschedule the deposition for a later date if you agree to identify the Bates numbers for the documents in your production regarding inquiries/ investigations (this would include both the documents sent to or received from the regulators, as well as any internal correspondence relating thereto) and provide written, verified answers to certain agreed-upon topics. Based on the documents produced and/or your written answers, Plaintiffs may be willing to remove certain topics/subtopics from the 30(b)(6) deposition based on the information you provide. Further, under this framework, Plaintiffs would request that you identify those topics to which you are objecting regarding scope so that the parties can confer on these topics.

You indicated that you would consider this proposal, discuss it with your client and get back to us by today. You further stated that on Thursday you will be producing documents from your outside counsel related to inquiries/ investigation and may be producing documents regarding internal communications. Plaintiffs request that in your production letter you identify each outside counsel from whom you are producing documents and the Bates numbers corresponding to documents from the outside counsel and that you identify the Bates ranges for any internal documents relating to inquiries/ investigations. Identifying these documents will help Plaintiffs review these documents and identify for what issues a 30(b)(6) deposition is or is not necessary.

We also discussed DBSI's outstanding issues. As Steven indicated on the phone, there are many outstanding issues, and for a number of the issues you have gone a month to six weeks without responding to any of our emails. For the case to advance, we need to resolve these issues. The issues are:
(1) Traders. The last correspondence on this issue was from us on May 13. In your previous letter you raised an issue that the Registered Representative codes we identified are associated with 150+ accounts. We asked you to help us understand if there is any way that we can use these codes and narrow or target the accounts that traded TASER. We presume that DBSI knows which accounts under the codes have been involved in TASER trades. We are willing to narrow the request to those traders, but need your help to do so.

(2) Conferral regarding data. We sent you this email on May 6 and have not received any response. This email involves issues related to blue sheets, a chart of accounts and other issues related to reports and other types of data. The information sought in this email is needed to allow us to fully read, understand and analyze the data, and thus the failure to respond is prejudicing our ability to move forward in this case. Please get us a response by no later than Monday.

(3) Third Interrogatories/ Fourth Requests for Production. We sent you an email on this issue on May 11. You indicated that you are amending your response to this interrogatory soon. If you will not be amending by the end of this week, please let us know when you intend to amend your response.

(4) FINRA AWC email. We sent you this email on May 13. Please respond.

(5) Second amended interrogatory response.  Steven sent you this email earlier today.  Please let us know when you can confer.

(6) Rolling production 30(b)(6).  After we got off the phone, Steven sent you an amended deposition notice pushing the deposition date back until mid-July.  The deposition is now scheduled for after we receive your response to the motion related to the rolling production.  Based on the substance of your responses, Plaintiffs will either convene a deposition on all of the topics, some of the topics or cancel the deposition.  You indicated that because Plaintiffs had postponed the deposition, you would not be going to the Court seeking an emergency protective order at this time.

(7) Profit and Loss Data.  You indicated that you do not keep profit and loss data on a security level basis.  We are still indicated in obtaining information regarding profit and loss data related to the categories of information identified in the document I previously sent you (such as commissions, prop trading, borrows, locates, etc).  Please let us know if you keep this information.  This issue has been outstanding for a very long time and we need to come to a conclusion.

(8) Second Requests for Admission and Third Requests for Admission.  We have circulated a conferral email based on our Friday phone call.  The email identified issues outstanding as to each individual defendant.  Please let us know a date and time when we can confer on DBSI's individual issues.

(9) Previous TASER production.  On the call, Steven explained that Plaintiffs are trying to organize our production.  Since March 15--your deadline for producing TASER documents--have you produced TASER documents?  To the extent you have produced documents, can you please let us know the basis for production of the documents (i.e., privilege, inadvertently omitted, etc.)

(10) Evaluations request for production.  Steven sent an email on this topic earlier this morning.

In the list above, Plaintiffs have endeavored to identify all of the currently open issues between the parties.  However, the omission of an issue shall not be deemed a waiver of that issue.

Finally, on the phone call you indicated that you had inadvertently omitted approximately 3000 documents from your non-TASER production based on a clerical error and that you should be producing the documents tomorrow.

Thanks,

Steven

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB I

## Elizabeth G. Eager

| | |
|---|---|
| **From:** | Elizabeth G. Eager |
| **Sent:** | Friday, July 02, 2010 11:27 AM |
| **To:** | 'greg.markel@cwt.com'; 'lsajiw, Peter'; 'Jason.Halper@cwt.com' |
| **Cc:** | Steven J. Rosenwasser |
| **Subject:** | DBSI 6/24 phone call follow up |

Greg, Jason and Peter,

I am emailing to follow up on our phone call on June 24.  Please let us know if you disagree with or have anything to add to this confirmation of our call.

**(1) Production of Outside Counsel Documents**
First, we discussed the format of your production of outside counsel documents.  You explained that you received hard copy documents from your outside counsel with CDs attached to them and that the 44 CDs you produced are in the form that you received them from outside counsel.  We explained that we have issues with the way that the CDs were BATES labeled so that individual pages did not have unique BATES numbers.  Additionally, when we received documents from TASER's outside counsel we did not simply produce the documents in the format we received them but instead had the documents processed and produced in the same format as other documents.

You are going to send us the name and contact information of either a paralegal or IT person at your law firm who can discuss the format of the production with Tanya Reed at our firm.  Tanya's phone number is 404-881-4124, and her email address is reed@bmelaw.com.

**(2) Traders**
You explained that the registered representative numbers we identified are not associated with traders but are instead associated with either business units or the people who opened the account.   You also indicated that the definitions for the registered representative numbers changed over time.  You suggested that we see whether we can find any additional information to identify the traders.  Similarly, we asked you to please conduct an investigation to determine whether you could find any additional information.   We also asked whether you agree that the persons we identified by name on April 20 would be custodians.

We explained that once we had the traders identified, we would need to discuss keywords and dates.  Plaintiffs will likely further refine the keyword list we previously supplied to you.

**(3) May 6 Data Questions**
You indicated that DBSI does not have a chart of accounts.  You are however, working on a response that would identify what the first three digits of the account number correlates to.  You explained that DBSI uses 10 digit account numbers split into 3 digit, 5 digit and 2 digits segments.  You indicated that the first digits may indicate information about the account such as if it is a prime brokerage account or a firm account.

Plaintiffs requested that you produce trade runs and blotters because of inaccuracies Plaintiffs identified in the blue sheets.  You explained that considers its blue sheets to be its "trade runs."  You further stated that the blue sheets do not record the time of an equity transaction but that information is available on the order execution/ ORMS data.  You are looking into the issue of missing opposing broker information.  You stated that transactions in firm accounts and average price accounts would not have this information.  You suggested that we identify specific trades missing this information so that you could see if you could track it down.

You are still working on the issue related to the inconsistencies between DBSI's blue sheets and the ETJs and issues related to options clearing.

1

You indicated that you produced the unredacted lender and locate data on 1/8/10.

**(4) Amendment to Third Interrogatory**
You indicated that you will try to get this to us either later this week or next week.

**(5) 30b6 on FINRA**
You will get back to us on this no later than early next week, which wil include a written response to our draft 30b6 notice (stating the topics you agree to, object to and those you will provide a written response to in advance of the deposition).

**(6) Second Amended Interrogatories**
We reviewed your response to Plaintiffs' Second Amended Interrogatory.

With regard to the general objections and interrogatory 5a, you did not actively withhold information based on your objections. Instead, you did the agreed upon search and provided full answers.

For Interrogatory 5c and 5d, your answer is that specific trades may be identified on reports.  For trades identified on the reports, you know that the trades were listed on the reports but you do not know one way or the other if there was a violation.

For Interrogatory 5i and 5j, you state that there was a FINRA settlement.  You clarified that DBSI reached no conclusion as to whether or not there was a violation.

For Interrogatory 5m and 5n, we indicated that we needed to know whether you had knowledge of any system error or blue sheets error whether or not it was intentional.  We need to know this information for two reasons:  (1) it could go to your intent/ liability and (2) we need it be sure that the data you provided us is accurate.

Finally, we discussed your verification and whether you would be willing to change it.  You indicated you are not.

**(7) Profit and Loss Documents**
You indicated that DBSI does not maintain profit and loss data on a security-by-security basis.  You stated that we already had information about the credit interest loans and borrows from Loannet records.  You also indicated that iDelta has information about open contracts which indicated rebate information.  You stated that it is your understanding that DBSI did not participate in activities like pay for holds.

For categories of profit and loss data for which DBSI had no activity (like pay-for-holds), we asked you to send us an email stating that DBSI had no activity in that area.  We also inquired whether DBSI maintained additional documents or reports showing daily profits from securities lending.  You stated that you did not think DBSI had those reports.

**(8) Second and Third RFAs.**
We had/ will have separate calls on these issues.

**(9) Production of TASER documents Since the Deadline**
You indicated that you have only produced two categories of TASER documents since the deadline for production of TASER documents:  (1) a group of documents inadvertently not produced and (2) documents originally withheld on privilege and subsequently produced.

**(10) Lobbyist Interrogatory**
We explained that this Interrogatory not only requests the identify of individuals who engaged in lobbying Congress but also those who lobbied the executive branch, especially the SEC and Treasury.  Additionally, during the time period, Utah enacted a law prohibiting naked short selling.  We would want to know if DBSI used any lobbyists in relation to that law.

**(11) Recent Email Document Questions**
You indicated that DBSI T 00124668 was produced in unredacted form on 5/17.

You indicated that for the report contained at DBSI-T 1590031 you generally speaking included that report in your production so to the extent you came across it you produced it.

Thanks,
Liz

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32813372
Date:  Aug 23 2010  4:28PM
Mark Harper, Clerk

# TAB J

**Elizabeth G. Eager**

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Wednesday, July 14, 2010 11:10 AM |
| **To:** | 'Markel, Gregory'; Halper, Jason; Isajiw, Peter |
| **Cc:** | Nicole G. Iannarone; Elizabeth G. Eager |
| **Subject:** | Follow Up |

Greg,

Good morning.  I am following up and confirming your phone call to me of earlier today.

To start, I appreciate you calling me and bringing the issues discussed below to my attention.  However, as I am sure you can appreciate, Plaintiffs are troubled by the information you provided.

First, during our call you revealed that the TASER blue sheets Deutsche Bank produced in this case are incomplete.  Indeed, among other things, you indicated that they are missing a column of information that is maintained on blue sheets in the ordinary course and provided to regulators in response to blue sheet requests.  You also indicated that at least two other columns of information that are normally kept in the ordinary course of business were not fully populated in the data you provided us.

In response to the above, I indicated that Plaintiffs reserve all rights with respect to Deutsche Bank's failure to produce data as required by the Court's Order.   Further, to mitigate any additional prejudice, I asked that you please:

(1)     Let us know <u>immediately</u> the columns of data that are missing and that you are going to produce;
(2)     Produce correct and complete blue sheets as soon as possible; and
(3)     Produce the trade blotters and other data we requested on, among other times, May 6, 2010 (in my email).

 Second, during our call you indicated that, despite Deutsche Bank's promise and agreement last week, you would not be able to provide us with a response to our 30(b)(6) proposal by noon today.   You indicated that your client had not signed off on the proposal you and your team created.  In response, I asked that you please send me the proposal you have, and I will understand that it is subject to your client's approval.  I indicated that we need the response today so we can have a substantive call on it tomorrow before I leave town; *i.e.*, so we do not lose another week.   You indicated you would let me know today.

Third, we discussed the lobbying interrogatory.  You stated that if you considered Utah (and its proposed short selling ban), it would not change Deutsche Bank's answer.  We appreciate the input.  However, we also need you to please change your actual response to state that you have answered as to the SEC and Treasury (not just Congress).

Thank you for your attention to these matters.

Steven