EXHIBIT

3

07/13/2009  12:33   4042340575                    JUDGE PATSY PORTER

State Court of Fulton County
***EFILED***
PAGE  01
LexisNexis Transaction ID: 26145799
Date: Jul 16 2009 4:05PM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,    :
*et al.*,                      :
                              :
        Plaintiffs,           :        CIVIL ACTION
                              :        FILE NO.: 2008-EV-004739-B
v.                            :
                              :
MORGAN STANLEY & CO., INC.,   :        JURY TRIAL DEMANDED
*et al.*,                      :
                              :
        Defendants.           :

## SCHEDULING ORDER

In the interests of efficient and effective case management, the Court enters

the following Scheduling Order.  This Order shall supersede and replace all

schedules previously entered by the Court or agreed to by the parties.

I.    **DISCOVERY**

      A.    **Preliminary Disclosures.**

            1.    <u>Individual Plaintiffs:</u>  Within sixty (60) days of the date of this

Order, the individual plaintiffs (*i.e.*, all plaintiffs except Taser International, Inc.)

shall complete production to defendants of documents reflecting all of their

purchases, sales, account transfers or other purchase, sale or transfer activity

relating to their holdings of stock in TASER International, Inc. ("TASER").

669604.1

2.     TASER International:

Within sixty (60) days of the date of the entry of this Order, Plaintiff TASER International, Inc. shall complete production of documents reflecting all of its (and its Section 16 officers and directors) purchases, sales, account transfers or other purchase, sale or transfer activity (excluding the awarding of options) relating to TASER stock.

3.     Injury

Within ninety (90) days of the entry of this Order, each plaintiff shall complete production of all documents in his, her, or its possession, custody, or control that support the allegation that each such plaintiff was directly injured by a predicate act allegedly committed by each defendant.

4.     Defendants:

Plaintiffs and Defendants have conferred on the scope of production for request numbers 1 through 15 of Plaintiffs' First Request for Production of Documents.  Although the parties have not reached agreement on all issues relating to those requests, the parties have reached some agreements, which are reflected in Attachment A to this Order and incorporated herein by reference.

By reaching the agreements set forth in Attachment A, Plaintiffs do not concede or agree that the Defendants have satisfied their discovery obligations or produced all documents and data responsive to any of the document requests.

2

Plaintiffs reserve all rights to obtain additional data or documents responsive to any document requests, including request numbers 1 through 15.  Similarly, by reaching the agreements set forth in Attachment A, Defendants do not waive any of their objections and defenses to any document requests.

     5.    <u>Outstanding Interrogatory Responses:</u>

On or before July 3, 2009, Plaintiffs and Defendants shall meet and confer with respect to the objections served by Defendants to Plaintiffs' First Interrogatories to Each Defendant.  On or before July 24, 2009, Defendants shall serve substantive responses to those interrogatories (or subparts thereof) for which there is no objection.  Plaintiffs may immediately move to compel Defendants to respond to any interrogatories (or subparts thereof) for which a dispute remains after the parties have conferred.

**B. <u>30(b)(6) Depositions of Corporate Representatives Regarding Document Retention</u>.**

The parties may begin taking the depositions of witnesses pursuant to O.C.G.A. § 9-11-30 (b)(6) forty-five (45) days after the beginning of the period for general fact discovery.

## C.   General Fact Discovery.

### 1.   Length of Fact Discovery:

General fact discovery shall commence forty-five (45) days from the date of entry of this order.  The general fact discovery period in this action shall expire twelve months from the date on which general fact discovery commences; provided, however, that any party may request that the general fact discovery period be extended if it can demonstrate good cause.

### 2.   Commencement of Depositions:

The parties may begin taking the depositions of witnesses pursuant to O.C.G.A. § 9-11-30(b)(6) thirty (30) days after the beginning of the period for general fact discovery.

### 3.   Commencement of Document Production:

Within sixty (60) days after general fact discovery commences, and except as provided in Section I.A. of this Scheduling Order, each party shall commence production of documents not objected to and responsive to the requests served upon that party prior to the commencement of general fact discovery.  Each party may produce responsive documents on a rolling basis, and each party will make reasonable efforts to complete production of all responsive, non-objected to and non-privileged documents within 120 days of the date of this Order; provided,

4

however, that a party can request an extension of this deadline for good cause shown.

      4.     Upon and after the commencement of general fact discovery, the parties may serve additional discovery requests within the limitations established by the Civil Practice Act, O.C.G.A. § 9-11-1 <u>et seq.</u>

      5.     The parties may take depositions for the preservation of testimony for use at trial outside the general fact discovery period.

      6.     The time frame for discovery shall be January 1, 2003 to and through May 31, 2009.

    C.    **<u>Expert Discovery.</u>**

      1.     <u>Initial Designations</u> - The party with the burden of proof on an issue for which it seeks to introduce expert evidence shall, within ten (10) days of the close of the general fact discovery period, identify each person whom that party expects to call as an expert witness at trial and state the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. O.C.G.A. § 9-11-26(b)(4)(A)(i).

      2.     <u>Rebuttal Designations</u> – Within thirty (30) days after the initial designation of experts, as set forth above, each party shall identify any additional person whom that party expects to call as an expert witness at trial and state the

subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

      3.    <u>Expert Depositions</u> - The parties shall complete the depositions of expert witnesses within forty-five (45) days after the date for designating rebuttal expert witnesses.

      **D.**    **<u>Procedure for Resolving Discovery Disputes</u>.**

      1.    For discovery disputes, the Court adopts the good-faith conferral requirement of Uniform Superior Court Rule 6.4(B).  For a verbal conference to have Rule 6.4(B) status, one party to the conference must give written or e-mail notice prior to the conference that the conference is intended to serve as a Rule 6.4(B) conference.  If the parties reach an impasse regarding the discovery dispute and are unable to resolve it by agreement, the party seeking relief regarding the matter in dispute shall contact the Court to determine whether written motions should be filed and/or the dispute will be resolved through a hearing or conference with the Court.  If the parties' Rule 6.4(B) conference addresses multiple disputed issues, and if the parties resolve one or more of those issues by agreement, then any motions filed with the Court pursuant to this Section shall briefly describe the issues resolved by agreement and the resolution of the issue to which the parties agreed.

2.    All discovery motions relating to discovery timely served must be filed within one-hundred-twenty (120) days of the date the impasse between the parties is reached in the Rule 6.4(B) conference; provided, however, that no motion to compel relating to fact discovery may be filed more than fifteen (15) days after the close of general fact discovery and no motion to compel relating to experts may be filed more than fifteen (15) days after the close of expert discovery.

E.    **Cost Allocation.**  This Order does not address the allocation of costs that may be associated with responding to a party's discovery request.  To the extent that issues arise with respect to the allocation of such costs, the Court directs the parties to confer as provided in Uniform Superior Court Rule 6.4(B).  If the parties are unable to agree on the proper allocation of costs, the party seeking relief shall contact the Court to determine whether a written motion should be filed and/or the dispute will be resolved through a hearing or conference with the Court.

## II.    DISPOSITIVE AND *DAUBERT* MOTIONS

Dispositive motions shall be filed no later than forty-five (45) days after the close of expert discovery.  Motions filed in advance of that date shall include a certification that, in the opinion of the filing party, further discovery regarding the issues addressed in the motion will not reveal additional facts relevant to the motion.  Responses to dispositive motions shall be filed no later than forty-five (45) days after the dispositive motion is filed.

7

Motions to exclude expert testimony under O.C.G.A. § 24-9-67.1 or *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), shall be filed by the date on which a Pretrial Order is submitted pursuant to Part III of this Order.

## III.   PRETRIAL ORDER AND TRIAL DATE

1.   <u>Pre-Trial Order:</u>

The Pre-Trial Order in this action shall be due forty-five (45) days after the Court rules on any timely filed dispositive motions or, if no such motions are filed, within forty-five (45) days after the close of expert discovery.

2.   <u>Trial Date:</u>

Upon the entry of the Pretrial Order, the Court shall specially set the date for the trial of this action.

## IV.   PARTIES TO THIS ACTION

The Court hereby GRANTS the Joint Motion to Add, Substitute and Remove Parties as of March 6, 2009, the date the motion was filed with this Court. The parties listed on the caption of that pleading shall be the parties in this action.

**SO ORDERED**, this ____16____ day of ~~June~~ July, 2009

The Honorable Patsy Porter
Judge, State Court of Fulton County

8

# ATTACHMENT A

## General Statements Regarding Data Production

(1)     In an effort to avoid duplicative production and unnecessary burden, the parties have agreed as follows:

With respect to the first fifteen document requests, Defendants are not required to produce more than one run or report containing the same information from a particular database or system. Thus, by way of example, if Bank 1 has "Database/System X" which includes all of the information responsive to Request No. 1, Bank 1 is only required to produce one run or report containing all of the responsive information from *that* database or system. Bank 1 is not required to run or produce multiple reports on "Database/System X" that would duplicate the information already produced from *that* database or system.

Each Defendant maintains multiple computer systems or databases that contain information that is responsive to the first fifteen requests. These systems or databases contain many of the same data points (i.e., price, quantity, trade date, settlement date, account, etc.). Generally speaking, most Defendants employ three fundamental types of computer systems relating to equities trading that contain: (1) order information at the (order) execution level (for trades executed by the Defendant), (2) trading information at the settlement level (for trades that settled with the Defendant), or (3) records of stock positions, balances, and activity for accounts maintained at and by the firm. As reflected in the responses set forth below and as discussed during the parties' meeting on June 18, each Defendant has agreed to provide Plaintiffs with information from more than one of these sources, and for some Defendants, information from all three sources. Accordingly, within the time periods specified below, Plaintiffs will receive from each Defendant information from more than one "database or system," with data from one database or system in many instances overlapping with data from one of the other databases or systems.

Plaintiffs do not concede or agree that production from some, but not all databases/systems is sufficient, and reserve their right to move to compel data from other databases/systems. Defendants maintain that production other than that listed in this Attachment A would be unduly burdensome and reserve their objections to discovery of that information.

(2)     Each Defendant has the capacity to generate substantially similar reports containing data about equity trading in TASER common stock. Among Defendants, these reports may be referenced by different names, although they contain substantially similar information. In connection with each Defendant's response to these document requests, each Defendant will meet and confer with Plaintiffs' counsel to ensure there is no misunderstanding concerning either the nomenclature or substance of the documents or data to be produced. The meet and confer process can be via telephone and will be completed no later than July 10, 2009.

668759.1

(3)   UBS has informed Plaintiffs that "certain data issues...could affect some of the blue sheets which UBS Securities, LLC ('UBS') has agreed to produce." UBS will produce to Plaintiffs both the inaccurate and corrected blue sheets, where such documents exist. UBS will take reasonable steps to identify, by bates number, produced documents (such as data from its order management systems and daily stock reports) which contain the correct information.

(4)   All parties agree to take reasonable steps to identify any documents or data containing inaccurate information, upon discovery of any such inaccuracies.

(5)   All parties will produce all documents or data in a readable and useable form that provides substantially the same information as is maintained and/or used in the ordinary course of business; each including all necessary data codes, dictionaries, legends or other information needed to read, understand and use the data.

(6)   Defendants are only required to produce those documents, reports, runs or data that they have in their possession, custody or control. Defendants reserve their objections to production of documents in the possession or custody of third parties. Plaintiffs contend that Defendants are required to obtain information in the possession of third parties that is in their custody or control. The parties agree to meet and confer with respect to any questions regarding production of materials within the possession or custody of third parties.

(7)   As the parties discussed, Defendants are currently investigating the nature and extent of customer confidentiality considerations that they contend might delay, if not prevent, the provision of account-identifying information within the time periods set forth below. Defendants will inform Plaintiffs of their final position on this issue no later than July 10, 2009. Plaintiffs have agreed to treat such information as confidential under a protective order, and will maintain it as such prior to the entry of such order. Plaintiffs do not agree that Defendants can withhold this information. Nothing in this statement shall provide good cause for an extension of any deadline in this Attachment other than for the production of account-identifying information. If the parties are unable to resolve this issue, then until the Court makes a determination, the Defendants will produce such documents with the account-identifying information redacted.

(8)   Plaintiffs reserve the right to seek to modify or terminate this agreement for good cause shown, including, but not limited to, after further discussions with counsel, production of data or 30(b)(6) depositions on data storage and preservation.

668759.I

<u>**Document Request Nos. 1, 4, 9, 11, 14**</u>

<u>**ALL DEFENDANTS**</u>[1]

<u>Within 60 days all of the Defendants will produce:</u>

(1)     Responsive data or information from their trading systems from January 1, 2003 to and extending through May 31, 2009, such as:

    (a)     Blue sheet runs for equities trading in TASER common stock; or

    (b)     Trade reports, trade runs, trade history reports (or other substantially similar reports or data kept in the ordinary course of business) for equities trading in TASER common stock.

(2)     Responsive data or information from their stock position records from June 1, 2007 to and extending through May 31, 2009, such as:

    (a)     Daily stock record reports, daily stock position or daily activity reports or data for equities trading in TASER common stock.

<u>Within 120 days all of the Defendants will produce:</u>

(1)     Responsive data or information from their stock position records from January 1, 2003 to and extending through May 31, 2007, such as:

    (a)     Daily stock position or daily activity reports or data for equities trading in TASER common stock.

The parties will meet and confer concerning weekly stock record reports (or Holder's file) or stock position data for equities trading in TASER common stock.

---

[1] With the exception of Morgan Stanley & Co. Incorporated and Deutsche Bank Securities Inc., Defendants have agreed to produce information from all accounts, including proprietary, institutional, non-customer and retail accounts.  Morgan Stanley & Co. Incorporated and Deutsche Bank Securities Inc. object to producing data for retail clients and Plaintiffs intend to move the Court to compel on that issue.  Defendants request the opportunity to meet and confer with Plaintiffs prior to any such motion.

668759.1

**Document Request Nos. 2, 3 & 5**

**Banc of America Securities, LLC (BAS)**

Within 60 days BAS will produce:

(1)     Blue sheet runs for equities trading in TASER common stock from January 1, 2003 to and through May 31, 2009.

BAS proposes that Plaintiffs (1) review the blue sheets that BAS will produce and (2) identify a reasonably limited subset of transactions that Plaintiffs believe relate to the claims alleged in this action. Plaintiffs are willing to meet and confer on this issue. The meet and confer process will be completed no later than July 10, 2009.

----------------------------------------------------------------

**Bear Stearns**

Within 60 days Bear Stearns will produce:

(2)     Blue sheet runs for equities trading in TASER common stock from January 1, 2003 to and through May 31, 2009.

Bear Stearns proposes that Plaintiffs (1) review the blue sheets that Bear Stearns will produce and (2) identify a reasonably limited subset of transactions that Plaintiffs believe relate to the claims alleged in this action. Plaintiffs are willing to meet and confer on this issue. The meet and confer process will be completed no later than July 10, 2009.

----------------------------------------------------------------

**Credit Suisse**

Within 60 days Credit Suisse will produce:

(1)     All responsive data from Credit Suisse's order management systems from February 1, 2004 to May 31, 2009.

Within 120 days Credit Suisse will produce:

(1)     All responsive order-related information from January 1, 2003 to January 31, 2004.

----------------------------------------------------------------

**Deutsche Bank Securities Inc.**

Deutsche Bank Securities Inc. has represented to Plaintiffs that retrieving information

668759.1

responsive to this Request would require a combination: (1) retrieving daily reports that are routinely generated from multiple order management and/or execution systems and stored as optical files in DBSI's archival system, OnDemand; (2) gathering information by searching multiple, separate databases to generate responsive reports; and/or (3) restoring information, data and/or system environments that are archived or no longer in use for at least some part of the six-year period. For certain of the daily reports stored in OnDemand, and for certain portions of the relevant timeframe, Deutsche Bank Securities Inc. can produce reports from data contained in these systems through a combination of searching live data sources and restoration of archived data sources, without need to access the archived historical reports from OnDemand. Deutsche Bank Securities Inc. will provide written representation to Plaintiffs that the information that will be contained in the reports generated through this process will be the same as the information contained in the historically generated daily reports from the relevant order management and order execution systems stored in OnDemand. Deutsche Bank Securities Inc. will provide Plaintiffs with a sample of historically generated daily reports from the relevant order management and order execution systems, where applicable, for twenty dates of Plaintiffs' choosing when it produces the responsive reports. Plaintiffs may compare these samples to the reports provided in response to Requests 2 and 3, and will meet and confer with counsel for Deutsche Bank Securities Inc. to discuss and resolve any outstanding concerns they may have after their review.

Within 60 days Deutsche Bank Securities Inc. will produce:

(1)     Historical reports and/or data containing responsive information from Deutsche Bank Securities Inc.'s primary order execution and order management systems, where applicable, related to cash equities trading in TASER common stock from June 1, 2007 to May 31, 2009.  Plaintiffs agree to meet and confer with counsel for Deutsche Bank Securities Inc. to further discuss these reports and resolve any outstanding issues; and

(2)     With respect to Request No. 5, Deutsche Bank Securities Inc. has represented that it did not utilize any Alternative Trading Systems established pursuant to SEC Regulation ATS during the relevant period and, therefore, will not produce documents in response to this request.

Within 120 days Deutsche Bank Securities Inc. will produce:

(1)     Historical reports and/or data containing responsive information from Deutsche Bank Securities Inc.'s primary order execution and order management systems, where applicable, related to cash equities trading in TASER common stock from January 1, 2003 to May 31, 2007.  Plaintiffs agree to meet and confer with counsel for Deutsche Bank Securities Inc. to further discuss these reports and resolve any outstanding issues.

-----------------------------------------------------------------------------------------

668759.1

**Goldman Sachs**

<u>Within 60 days Goldman Sachs will produce:</u>

(1)     All order tickets from June 1, 2007 to and through May 31, 2009.

<u>Within 120 days Goldman Sachs will produce:</u>

(1)     All order tickets from January 1, 2003 to and through May 31, 2006

---

**Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch)**

<u>Within 60 days Merrill Lynch will produce:</u>

(1)     Blue sheet runs for equities trading in TASER common stock from January 1,
        2003 to and extending through May 31, 2009.

Merrill Lynch proposes that Plaintiffs (1) review the blue sheets that Merrill Lynch will
produce and (2) identify a reasonably limited subset of transactions that Plaintiffs believe
relate to the claims alleged in this action.  Plaintiffs are willing to meet and confer on this
issue.  The meet and confer process will be completed no later than July 10, 2009.

---

**Morgan Stanley & Co. Incorporated (MSCO)**

<u>Within 60 days MSCO will produce:</u>

(1)     All responsive data from MSCO's order management systems from January 1,
        2003 to and through May 31, 2009.

---

**UBS Securities**

<u>Within 60 days UBS Securities will produce:</u>

(1)     All responsive data from UBS's order management systems from May 31, 2007
        to and through May 31, 2009.

668759.1

## Document Request No. 6

## ALL DEFENDANTS

Within 60 days all of the Defendants will produce:

(1)   Responsive data or information from their trading systems from January 1, 2003
       to and extending through May 31, 2009, such as:

      (a)   Blue sheet runs for equities trading in TASER common stock; or

      (b)   Trade reports, trade runs, trade history reports (or other substantially
             similar reports or data kept in the ordinary course of business) for equities
             trading in TASER common stock.

(2)   Responsive data or information from their stock position records from June 1,
       2007 to and extending through May 31, 2009, such as:

      (a)   Daily stock record reports, daily stock position or daily activity reports or
             data for equities trading in TASER common stock.

Within 120 days all of the Defendants will produce:

(1)   Responsive data or information from their stock position records from January 1,
       2003 to and extending through May 31, 2007, such as:

      (a)   Daily stock position or daily activity reports or data for equities trading in
             TASER common stock.

The parties will meet and confer concerning weekly stock record reports (or Holder's
file) or stock position data for equities trading in TASER common stock.

Pending Items:

During the parties' meeting on June 18, 2009, Plaintiffs represented that reports
characterized as "bookkeeping journals" and "batch recap reports" may be responsive to
this request. These reports had not previously been identified by Plaintiffs, and Plaintiffs
did not provide any explanation about the content of the documents or why they might be
responsive. Defendants are currently investigating whether they maintain "bookkeeping
journals" and "batch recap reports," and, if so, whether these reports contain responsive
information. Defendants will discuss their findings with Plaintiffs.

668759.1

### Document Request No. 7

<u>Within 60 days all of the Defendants will produce:</u>

(1)     Responsive data or information from their stock position records from June 1, 2007 to and extending through May 31, 2009, such as:

      (a)     Daily stock record reports, daily stock position or daily activity reports or data for equities trading in TASER common stock.

<u>Within 120 days all of the Defendants will produce:</u>

(1)     Responsive data or information from their stock position records from January 1, 2003 to and extending through May 31, 2007, such as:

      (a)     Daily stock position or daily activity reports or data for equities trading in TASER common stock.

The parties will meet and confer concerning weekly stock record reports (or Holder's file) or stock position data for equities trading in TASER common stock.

-------------------------------------------------------------------------

<u>In addition to these reports, individual Defendants have agreed to the following:</u>

### Banc of America Securities, LLC (BAS)

On or before June 26, BAS will inform Plaintiffs whether it has a LoanNet report that is responsive to Request No. 7. To the extent BAS has such a report, it will endeavor to provide to Plaintiffs by July 2 a sample page from such a report, with all confidential information redacted.

-------------------------------------------------------------------------

### Bear Stearns

The Daily and Weekly Stock Record reports indicated above will contain information responsive to this Request. Nonetheless, on or before June 26, Bear Stearns will inform Plaintiffs whether it has Loannet data responsive Request No. 7. To the extent Bear Stearns has such data, it will endeavor to provide Plaintiffs by July 2 a sample of such data, with all confidential information redacted. Plaintiffs will meet and confer with counsel for Bear Stearns to discuss and resolve any outstanding concerns they may have after their review.

-------------------------------------------------------------------------

668759.1

## Credit Suisse

<u>Within 120 days Credit Suisse will produce:</u>

(1)     A responsive LoanNet report from January 1, 2003 through May 31, 2009.

---------------------------------------------------------------------------------

## Deutsche Bank Securities Inc.

The Daily and Weekly Stock Record reports indicated above will contain the information responsive to this Request.   Nonetheless, on or before June 26, Deutsche Bank Securities Inc. will inform Plaintiffs whether it has Loannet data responsive to Request No. 7.  To the extent Deutsche Bank Securities Inc. has such data, it will endeavor to provide to Plaintiffs by July 2 a sample of such data, with all confidential information redacted. Plaintiffs will meet and confer with counsel for Deutsche Bank Securities Inc. to discuss and resolve any outstanding concerns they may have after their review.

---------------------------------------------------------------------------------

## Goldman Sachs

<u>Within 120 days Goldman Sachs will produce:</u>

(1)     Responsive Borrow/Loan reports from January 1, 2003 through May 31, 2009.

---------------------------------------------------------------------------------

## Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch)

The stock record reports indicated above will contain the information responsive to this Request.   Nonetheless, on or before June 26, Merrill Lynch will inform Plaintiffs whether it has Loannet data responsive to Request No. 7.  To the extent Merrill Lynch has such data, it will endeavor to provide to Plaintiffs by July 2 a sample of such data, with all confidential information redacted.   Plaintiffs will meet and confer with counsel for Merrill Lynch to discuss and resolve any outstanding concerns they may have after their review.

--------------------------------------------------------------------------------

### Morgan Stanley & Co. Incorporated (MSCO)

<u>Within 120 days MSCO will produce:</u>

(1)    Responsive data or information concerning securities lending and borrowing from January 1, 2003 through May 31, 2009, contained in the Loanet Monthly Security History reports.

--------------------------------------------------------------------------------

### UBS Securities

<u>Within 120 days UBS will produce:</u>

(1)    Responsive Data or information concerning securities lending and borrowing from January 1, 2003 through May 31, 2009, contained in the Loanet Monthly Security History reports, to the extent such data is currently readily accessible. To the extent any such data is not readily accessible, the parties will meet and confer.

668759.1

## Document Request No. 10

## ALL DEFENDANTS

Within 60 days all of the Defendants will produce:

(1)     Responsive data or information from their trading systems from January 1, 2003 to and extending through May 31, 2009, such as:

     (a)     Blue sheet runs for equities trading in TASER common stock; or

     (b)     Trade reports, trade runs, trade history reports (or other substantially similar reports or data kept in the ordinary course of business) for equities trading in TASER common stock.

(2)     Responsive data or information from their stock position records from June 1, 2007 to and extending through May 31, 2009, such as:

     (a)     Daily stock record reports, daily stock position or daily activity reports or data for equities trading in TASER common stock.

Within 120 days all of the Defendants will produce:

(1)     Responsive data or information from their stock position records from January 1, 2003 to and extending through May 31, 2007, such as:

     (a)     Daily stock position or daily activity reports or data for equities trading in TASER common stock.

The parties will meet and confer concerning weekly stock record reports (or Holder's file) or stock position data for equities trading in TASER common stock.

Pending Items:

During the parties' meeting on June 18, 2009, Plaintiffs represented that reports characterized as "CAGE III Overnight exposure reports" and "aged fail reports" may be responsive to this request.  These reports had not previously been identified by Plaintiffs, and Plaintiffs did not provide any explanation about the content of the documents or why they might be responsive.  Defendants are currently investigating whether they maintain "CAGE III Overnight exposure reports" and "aged fail reports," and, if so, whether these reports contain responsive information.  Defendants will discuss their findings with Plaintiffs.

668759.1

**Document Request No. 12**

**ALL DEFENDANTS**

<u>Within 60 days</u>:  Unless otherwise indicated,[2] Defendants will produce, for the time period January 1, 2003 through May 31, 2009, responsive data or information from their trading systems, such as:

(1)     Blue sheet runs for trading of listed options in TASER common stock; or

(2)     Trade reports, trade runs, trade history reports (or other substantially similar reports or data kept in the ordinary course of business) for trading of listed options in TASER common stock.

The parties will meet and confer about whether any additional information is required in response to this request.

---

[2] UBS and Morgan Stanley & Co. Incorporated (MSCO) are still investigating the feasibility and burden associated with producing blue sheet runs, trade reports, trade runs, trade history reports (or other substantially similar reports or data) for listed options related to TASER common stock and cleared through UBS Securities, LLC and MSCO from January 1, 2003 to and through May 31, 2009.  UBS and MSCO will agree to meet and confer with the Plaintiffs once they have had a chance to investigate these issues.

668759.1

**Document Request No. 13**

**ALL DEFENDANTS**

The parties are continuing to meet and confer concerning Request No. 13.

668759.1

<u>**Document Request No. 15**</u>

<u>**ALL DEFENDANTS**</u>

<u>Within 60 days all of the Defendants will produce:</u>

(1)   Responsive data or information from their trading systems from January 1, 2003 to and extending through May 31, 2009, such as:

    (a)   Blue sheet runs for equities trading in TASER common stock; or

    (b)   Trade reports, trade runs, trade history reports (or other substantially similar reports or data kept in the ordinary course of business) for equities trading in TASER common stock.

(2)   Responsive data or information from their stock position records from June 1, 2007 to and extending through May 31, 2009, such as:

    (a)   Daily stock record reports, daily stock position or daily activity reports or data for equities trading in TASER common stock.

<u>Within 120 days all of the Defendants will produce:</u>

(1)   Responsive data or information from their stock position records from January 1, 2003 to and extending through May 31, 2007, such as:

    (a)   Daily stock position or daily activity reports or data for equities trading in TASER common stock.

The parties will meet and confer concerning weekly stock record reports (or Holder's file) or stock position data for equities trading in TASER common stock.

<u>Pending Items:</u>

During the parties' meeting on June 18, 2009, Plaintiffs represented that reports characterized as "bookkeeping journals" and "batch recap reports" may be responsive to this request. These reports had not previously been identified by Plaintiffs, and Plaintiffs did not provide any explanation about the content of the documents or why they might be responsive. Defendants are currently investigating whether they maintain "bookkeeping journals" and "batch recap reports," and, if so, whether these reports contain responsive information. Defendants will discuss their findings with Plaintiffs.

668759.1