**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.* <br><br> Plaintiffs, <br><br><br> v. <br><br> MORGAN STANLEY & CO., INC., *et al.* <br><br> Defendants. | <br><br><br><br><br><br><br> CIVIL ACTION NUMBER: <br> 1:10-CV-03108-JOF |

**DEFENDANT BANC OF AMERICA SECURITIES LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS FOR
VIOLATION OF THE COURT'S JULY 16, 2009 SCHEDULING ORDER**

Defendant Banc of America Securities LLC ("BAS") submits this memorandum in opposition to Plaintiffs' Motion for Sanctions Against Banc of America Securities LLC for Undisputed Violation of the Court's July 16, 2009 Scheduling Order (the "Motion").

**PRELIMINARY STATEMENT**

Plaintiffs again demonstrate with this motion that they seek to elevate every routine discovery dispute into a violation of a court order obviating the need for a meet-and-confer and warranting sanctions. This tactic places an undue burden on

the Court and forces BAS to expend resources responding to unnecessary motions. Indeed, before bringing this motion for a discovery extension, Plaintiffs did not even bother to ask BAS to consent.  If they had, the parties could have worked toward a mutually agreeable solution to a relatively minor problem and avoided yet another sanctions motion.  But Plaintiffs continue to shun this reasonable approach to discovery and instead insist on judicial intervention on issues that would ordinarily be resolved among experienced counsel in a complex litigation like this.

The purported violation at issue in the Motion is the inadvertent exclusion of data from the Daily Stock Record that BAS produced to Plaintiffs.  The Daily Stock Record is a report BAS maintains to track the movement of all securities by or within the firm.  In response to Plaintiffs' discovery requests, BAS attempted to isolate the entries on this report relating to TASER securities during a six-and-a-half-year period.  This was an extremely time-consuming and burdensome process that took several months to complete and required writing a proprietary computer script and performing manual redactions.  BAS ultimately produced more than 4600 pages of the report on September 14, 2009 and November 13, 2009.

On July 20, 2010—*more than eight months after receiving the data*— Plaintiffs informed BAS for the first time that the Daily Stock Record appeared to be missing portions of data on certain dates.  BAS quickly investigated the issue

and concluded within a few weeks that some entries had been inadvertently

excluded as a result of a computer programming error.  BAS promised to resolve

the issue as quickly as possible and went to extraordinary lengths to do so,

including hiring a team of contractors to cull through more than eighty million

pages of data.  BAS corrected the issue a little over a month later, producing an

updated version of the Daily Stock Record containing the previously-excluded

data.

Plaintiffs allege that this inadvertent and promptly corrected error constitutes

a violation of this Court's scheduling order because the order required BAS to

produce the Daily Stock Record in September 2009.  Plaintiffs further contend that

this error was so severe as to warrant sanctions.  But Plaintiffs do not explain how

a two-month delay in receiving the corrected data caused them harm, especially

given that Plaintiffs had the data eight months before bringing the error to BAS's

attention.  Nonetheless, BAS would be amenable to a brief discovery extension if

Plaintiffs were to establish actual prejudice from the delayed production and agree

to limit discovery in the extension period to issues arising directly from their

review of the newly produced data.  Plaintiffs' conclusory allegations of harm,

however, cannot justify such an extension.  It is undisputed that Plaintiffs have

more than seven months remaining to review and analyze the data, and they have

made no showing that this is insufficient.  Accordingly, Plaintiffs' motion for

sanctions should be denied.

## ARGUMENT

**I.      The Exclusion of Data from the Daily Stock Record Was Inadvertent and Resulted From a Computer Programming Error.**

Early in this litigation, Plaintiffs requested and BAS agreed to produce those

portions of the Daily Stock Record relating to TASER securities.  The Daily Stock

Record is voluminous—the six-and-a-half-years at issue in this litigation

comprised more than 120 gigabits of text data, or the equivalent of more than 81

million pages.[1]  (*See* Affidavit of Keba Vaughn, dated October 8, 2010 ("Vaughn

Aff."), attached hereto as Ex. A, ¶ 7.[2])

Isolating the portion of the Daily Stock Record that relates to TASER or any

other individual security is not an easy task.  BAS's Global Content Archive group

held a meeting on June 24, 2009 to determine how to approach this request and

settled on writing a computer script to extract the relevant data.  (*See* Affidavit of

---

[1]      LexisNexis estimates that a gigabyte of text data equals approximately 678,000 pages.  *See* http://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ ADI_FS_PagesInAGigabyte.pdf.

[2]      The Vaughn and Kerr affidavits were sworn to under the state-court caption of this case.

Bill Kerr, dated September 20, 2010 ("Kerr Aff."), attached hereto as Ex. B, ¶ 2-3.)

The script was designed to open each daily report, search for the word "TASER,"

and then export the six pages that immediately followed.  (*Id.* at ¶ 4.)  After this

script was completed and tested, it was executed on all Daily Stock Records for the

relevant six-and-a-half-year period.  (Vaughn Aff. ¶ 2.)  The culled data was then

manually redacted over the course of several weeks to remove those portions that

related to other securities.  (*Id.* at ¶ 3.)  The resulting TASER-specific data was

produced to Plaintiffs on September 14, 2009 and November 13, 2009.  (*See*

Affidavit of Brad Elias, dated October 8, 2010 ("Elias Aff."), attached hereto as

Ex. C, ¶ 2.)

BAS had no knowledge that this data was incomplete until Plaintiffs

identified a potential problem on July 20, 2010—more than eight months after first

receiving the data.  (*Id.* at ¶ 3; Kerr Aff. ¶ 5.)  BAS investigated the issue and

concluded on August 9, 2010, that certain entries on the Daily Stock Record had

been inadvertently excluded as a result of an error in the computer script.  (Vaughn

Aff. ¶ 5.)  While the script exported the six pages of data following the appearance

of the text string "TASER," there were certain trading days on which the TASER-

specific data on the Daily Stock Record extended beyond six pages.  In these

instances, certain TASER stock movements were inadvertently excluded from BAS's production.  (*Id.* at ¶ 5.)

BAS told Plaintiffs that it would work to resolve this newly discovered problem as quickly as possible.  BAS was not able to provide a date certain for production given the quantity of data and the difficulty of isolating the TASER-specific portions.  (*Id.* ¶ 6.)  But BAS went to extraordinary lengths to produce the data as quickly as possible.  In fact, it hired a team of outside contractors to review the 120 gigabytes of text data and manually extract the TASER-specific entries.  (Elias Aff. ¶ 4.)  On September 20, 2010, approximately 60 days after the error was first reported, BAS produced an updated version of the Daily Stock Record containing the previously excluded data.  (*Id.* ¶ 5.)

## II.   Discovery Should Not Be Extended Because Plaintiffs Fail to Establish Any Prejudice From the Production Delay.

BAS does not believe that its inadvertent exclusion of data constituted a violation of the Court's July 16, 2009 Scheduling Order because BAS produced the Daily Stock Record in the time required.  The single case Plaintiffs cite, *Riches To Rags, Inc. v. McAlexander & Assocs., Inc.*, 249 Ga. App. 649, 653 (2001), does not stand for the proposition that inadvertent computer problems may not excuse discovery errors.  To the contrary, in *Riches to Rags*, the court found that the party responding to discovery "engaged in dilatory tactics and intentionally failed to

6

provide requested information in a timely manner" and "was intentionally

prolonging the discovery process." *Id.* at 653.  Plaintiffs here do not even allege

that BAS intentionally withheld data or intentionally delayed the discovery

process.

Nonetheless, BAS acknowledges that Plaintiffs were delayed in receiving

portions of the Daily Stock Record.  BAS would therefore consent to a brief

discovery extension if Plaintiffs were to establish that they were prejudiced by this

delay and agree to limit discovery during the extension period to issues arising

directly from their review of the newly produced data.  Plaintiffs, however, have

offered nothing more than a conclusory allegation of harm based on the assertion

that they now have seven more months, rather than nine more months, to review

the Daily Stock Record.  This assertion is insufficient to establish prejudice.

Plaintiffs have submitted no evidence demonstrating how long it will take to

review and analyze the data.  Without such evidence, the Court has no way to

determine whether a discovery extension is necessary or appropriate.  Indeed, there

is no reason to believe that it will take Plaintiffs anywhere near seven months to

review BAS's data since BAS was a small player in the prime brokerage market

and has significantly fewer trading records than other defendants.  *See* Seventh

Amended Complaint, ¶ 64 (alleging that BAS is the smallest prime broker in this action with a 2% market share).

### III.  Sanctions Are Unwarranted Because Plaintiffs Failed to Meet and Confer With BAS And Burdened the Court with Yet Another Unnecessary Motion.

This is a complex litigation in which the parties have produced tens of millions of pages of documents.  Whenever there are document productions of this size and scope mistakes are bound to happen, and the parties generally work together to resolve these issues without judicial intervention.  Plaintiffs, however, have repeatedly shown that they are unwilling to work with the Defendants to solve these types of problems.  Rather, Plaintiffs have chosen to file sanctions motions with a frequency that none of the experienced defense counsel in this litigation have seen before.  Indeed, Plaintiffs never asked BAS to consent to a discovery extension before filing their motion.  (Elias Aff. ¶ 6.)

Plaintiffs justify their decision not to meet and confer by asserting that Georgia law does not require a conferral where there is an alleged violation of a court order.[3]  Plaintiffs further assert that because a court order set a deadline to

---

[3]     For example, Plaintiffs did not meet and confer with Merrill Lynch before filing a sanctions motion in connection with Merrill Lynch's alleged failure to make rolling productions.  (*See* Plaintiffs' Reply Memorandum in Support of Their Motion for Relief and Sanctions for Violations of this Court's Discovery Orders, dated July 14, 2010, at 14 ("Defendants complain that

produce the Daily Stock Record BAS violated that order by making a timely, but

inadvertently flawed, production of the data.  Plaintiffs' position on this issue

creates an inefficient discovery process and unnecessarily burdens the Court.  If

Plaintiffs had approached BAS with their concerns, BAS would have been willing

to consent to a brief discovery extension conditioned on (i) Plaintiffs ability to

show prejudice from the delayed production and (ii) Plaintiffs' agreement to limit

discovery during the extension period to issues arising from their review of the

Daily Stock Record.  But BAS was never given this opportunity.  Rather, Plaintiffs

have forced BAS to brief what is, in the context of this litigation as a whole, an

exceedingly minor issue that should not have required motion practice.

Accordingly, Plaintiffs should not be rewarded by recovering fees and expenses

that are purely of their own making.

---

Plaintiffs did not confer with respect to Defendants' violation of this Court's
Order.  But, where a party fails to produce documents in compliance with a
court-imposed deadline, Uniform Superior Court Rule 6.4 does not require a
meet-and-confer.").)

## CONCLUSION

For all of the foregoing reasons, BAS respectfully requests that the Court

deny Plaintiffs' motion for sanctions.


Dated:  October 19, 2010


/s/ Richard H. Sinkfield

Richard H. Sinkfield
Georgia Bar No. 649100
E-mail: rsinkfield@rh-law.com

Dan F. Laney III
Georgia Bar No. 435290
E-mail: dlaney@rh-law.com

*Attorneys for Defendant Banc of America Securities LLC*

ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
Tel:  404-522-4700
Fax:  404-525-2224

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TASER INTERNATIONAL, INC.,
*et al.*

     Plaintiffs,

v.

MORGAN STANLEY & CO., INC.,
*et al.*

     Defendants.

CIVIL ACTION NUMBER:
1:10-CV-03108-JOF

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2010, I have caused to be served a copy

of the foregoing **DEFENDANT BANC OF AMERICA SECURITIES LLC'S**

**OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS FOR**

**VIOLATION OF THE COURT'S JULY 16, 2009 SCHEDULING ORDER**

with the Clerk of Court using the CM/ECF system which will automatically send

e-mail notification of such filing to the following attorneys of record:

       John E. Floyd, Esq.
       floyd@bmelaw.com

       Steven J. Rosenwasser, Esq.
       rosenwasser@bmelaw.com

Nicole G. Iannarone
iannarone@bmelaw.com

Elizabeth G. Eager
eager@bmelaw.com

that I have caused a copy to be served by U.S. Mail on the following attorney of

record:

James W. Christian, Esq.
CHRISTIAN, SMITH & JEWELL LLP
2302 Fannin, Suite 500
Houston, TX  77002

and that, pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure, I

have caused a copy to be served by electronic means on the following attorneys:

Robert F. Wise, Jr., Esq.
robert.wise@davispolk.com

William J. Fenrich, Esq.
william.fenrich@davispolk.com

Melissa Aoyagi, Esq.
melissa.aoyagi@davispolk.com

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017

2

Richard H. Klapper, Esq.
klapperr@sullcrom.com

Richard C. Pepperman, II, Esq.
peppermanr@sullcrom.com

Tracy Richelle High, Esq.
hight@sullcrom.com

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498


Stephen L. Ratner, Esq.
sratner@proskauer.com

Brian L. Friedman, Esq.
blfriedman@proskauer.com

PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036


Gregory A. Markel, Esq.
greg.markel@cwt.com

Martin L. Seidel, Esq.
martin.seidel@cwt.com

Peter J. Isajiw, Esq.
peter.isajiw@cwt.com

Heather L. Fesnak, Esq.
heather.fesnak@cwt.com

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281

3

Fraser L. Hunter, Jr., Esq.
fraser.hunter@wilmerhale.com

WILMER CUTLER PICKERING HALE AND
DORR LLP
399 Park Avenue
New York, NY  10022


Andrew J. Frackman, Esq.
afrackman@omm.com

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036


Andrew B. Clubok, Esq.
andrew.clubok@kirkland.com

Jeffrey G. Landis, Esq.
jeffrey.landis@kirkland.com

Jeffrey M. Gould, Esq.
jeffrey.gould@kirkland.com

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005

5

/*s*/ Richard H. Sinkfield

Richard H. Sinkfield
Georgia Bar No. 649100
rsinkfield@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:   404-522-4700
Fax:   404-525-2224

5