## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | ) | |
| | ) | Case No.: 1:10-CV-03108-JOF |
| Plaintiffs, | ) | |
| | ) | [On removal from the State |
| v. | ) | Court of Fulton County, |
| | ) | Georgia Case No.: |
| MORGAN STANLEY & CO., INC., *et al.*, | ) | 2008-EV-004739-B] |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFFS' OPPOSITION TO THE GOLDMAN SACHS DEFENDANTS' AND DEUTSCHE BANK SECURITIES INC.'S MOTIONS FOR PROTECTIVE ORDER REGARDING 30(b)(6) DEPOSITIONS

John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Elizabeth G. Eager
Georgia Bar No. 644007
BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
floyd@bmelaw.com
rosenwasser@bmelaw.com
iannarone@bmelaw.com
eager@bmelaw.com
Telephone:  (404) 881-4100
Facsimile:  (404) 881-4100
*Attorneys for Plaintiffs*

810569.1

## I.       INTRODUCTION

The Goldman Sachs Defendants ("Goldman") and Deutsche Bank Securities

Inc. ("DBSI") refuse to submit to a Rule 30(b)(6) deposition seeking specific

information about their conduct that was the subject of regulatory investigations in

which they, in most cases, consented to (1) factual findings that they had violated

SEC, NASD, FINRA and/or other rules and regulations related to short sales and

(2) paying monetary sanctions.  These investigations concern the **very conduct at**

**issue in this case** and are relevant to show, among other things:

- Defendants' **knowledge** that they were engaging in the conduct;
- Defendants' **intent** to engage in such conduct and to continue to do so;
- Defendants' **motive** to engage in the conduct, despite incurring sanctions; and
- Defendants' **pattern** of engaging in the conduct.

While the Defendants neither admit nor deny liability in their settlements of

these investigations, they cannot – as they attempt to do here – use such

settlements as shields to prevent Plaintiffs from inquiring into the **facts** about the

conduct investigated.  Plaintiffs are entitled to ask the Defendants, for example, if

the conduct actually occurred as the regulatory bodies contend it did; if the

Defendants deny that it occurred, the factual basis for the denial; and what they did

to prevent the conduct from occurring, both before and after the investigations.  If

the Defendants cannot answer these questions after a reasonable investigation (*i.e.,*

without first conducting an "audit"), then, as Plaintiffs have assured them, their

designated representatives can so testify.

Plaintiffs' Rule 30(b)(6) Notices are proper, as evidenced by the fact that **Defendants other than Goldman and DBSI have <u>agreed</u> to provide a 30(b)(6) designee**. It is probably no coincidence that Goldman and DBSI (collectively the "Moving Defendants") are currently the only Defendants refusing to provide a witness given that they have been sanctioned more than every other Defendant. But the large number of instances in which the Moving Defendants have been sanctioned does not make the deposition notices unduly burdensome or improper. On the contrary, the fact that the Moving Defendants continued to act illegally even after repeated sanctions is clear proof of their knowledge of illegal conduct and their intent to continue to engage in it.

The Moving Defendants' complaint that a 30(b)(6) notice is not the proper way to obtain this information is likewise disingenuous. Plaintiffs have offered them the opportunity to respond to some of the topics in written form. Further, the Moving Defendants fail to mention that all the Defendants have collectively moved to stop **all written discovery**. *See* Defendants' Motion for Protective Order with Respect to Plaintiffs' June 10 Discovery, filed on July 19, 2010 at 5, attached hereto as Exhibit 1. In truth, the Moving Defendants simply want to keep the information relating to these sanctions hidden.

## II.      BACKGROUND

The Rule 30(b)(6) notices of deposition at issue seek information pertaining to particular regulatory agency investigations, inquiries or examinations (the

810569.1

2

"Investigations") in which the Moving Defendants have been sanctioned *for engaging in the very same conduct alleged in this case*:[1]

| Plaintiffs' Allegation[2] | Examples of Conduct for Which Moving Defendants Were Sanctioned |
|---|---|
| **Failure to Locate** "Knowingly and intentionally providing or relying on a false, fictitious, illegitimate, or inaccurate locates/affirmative determinations when the defendant does not have reasonable grounds to believe that the security can be borrowed or delivered on the date it is due, or failing to obtain locates or affirmative determinations altogether." (Complaint ¶ 116(b) at 75). | Goldman effected short sales and "failed to make/annotate an affirmative determination that the firm could borrow the securities or otherwise provide for delivery of the securities by settlement date." Eager Aff., Ex. B at GS_T 000053; *see also* Eager Aff., Exs. C-E. DBSI effected short sales "without having borrowed the securities or entered into bona-fide arrangements to borrow the securities, or having reasonable grounds to believe that the securities could be borrowed." *See* Affidavit of Jason M. Halper in Support of DBSI's Motion for a Protective Order ("Halper Aff."), Ex. L at 2; *see also id.*, Ex. N.[3] |

[1] Undoubtedly to make the deposition notice seem more burdensome, DBSI contends that the Investigations concern 19 different types of conduct (*see* DBSI Mot. at 1, 4, 15 n.16, 16) but, in fact, the conduct listed in the table (along with failure to supervise or monitor with respect to such conduct) encompasses in substance all of the alleged violations.

[2] *See* Seventh Amended Complaint ("Complaint") ¶¶ 6, 8, 116; Affidavit of Elizabeth G. Eager ("Eager Aff."), Ex. A at 24-25, 77-84, 94, 108-111, 126-127, attached hereto as Exhibit 2. *See* Eager Aff. ¶ 3 n.1 for additional information regarding Plaintiffs' Amended Response to Defendants' Second Interrogatories.

[3] DBSI filed its motion and certain exhibits to the Halper Affidavit under seal. Plaintiffs requested that DBSI remove the confidentiality designation from these documents. While DBSI agreed to remove designations from its motion and exhibits Q and U, it refused to do so for exhibits N, P and R, claiming that the exhibits contain confidential and proprietary information even after Plaintiffs offered to redact account identifying information. While Plaintiffs disagree with DBSI's position, to avoid having to file documents under seal, Plaintiffs have not attached them to the brief and refer to the exhibits DBSI filed in the State Court proceedings.

810569.1

3

| | |
|---|---|
| **Failure to Deliver**<br><br>"[F]acilitating, engaging in and/or permitting clients with a pattern or history of fails or other improper conduct to continue short sales or related transactions" (Complaint ¶ 8(r) at 7);<br><br>"Knowingly and intentionally short selling securities of TASER and the securities of other publicly traded corporations when they neither possessed nor intended to obtain stock for delivery by the settlement date"  (Complaint ¶ 116(a) at 75). | Goldman "fail[ed] … to timely close out fail-to-deliver positions" and "accept[ed] certain customer short sale orders … for which it had an open fail-to-deliver position while [it] and the customer were in the 'penalty box'" Eager Aff., Ex. F at GS_T 000197; *see also id.*, Exs. G-H.<br><br>DBSI "failed to close out such fails [to deliver] as required and/or executed short sales in these securities while an aged threshold fail was pending without having first borrowed or arranged to borrow the security as required." *See* Halper Aff., Ex. Q at DBSI-T 001811779; *see also id.*, Ex. R. |
| **Voting**<br><br>"DBSI was also sanctioned for conduct relating to the issuance of proxy materials during the time period of March 1998 through November 2003, conduct which may indicate illegal naked short selling in this case." (Eager Aff., Ex. A, Responses to Second Interrogatories at 101);<br><br>"Naked short selling damages rightful shareholders of a company because it floods the market with artificial and/or counterfeit shares, thereby diluting the value of each legitimate share of stock …" (Complaint  ¶ 6 at 5, *see id.* ¶ 8 (e) at 6 ("proxy voting"); *id.* ¶ 8 (j) at 6-7) ("issuing voting material to shareholders with nonexistent assets"). | DBSI "(a) failed to timely reconcile stock records on beneficial ownership in connection with proxy voting; (b) issued duplicate requests for proxy voting instructions for securities held in certain omnibus accounts, which resulted in duplicate votes in some instances; (c) failed to transmit accurate information to its proxy services provider on numerous occasions; (d) voted more shares than it was entitled to vote ('over-voting') in proxy matters in numerous instances; and (e) did not adequately retain certain proxy solicitation records." Halper Aff., Ex. U at DBSI-T 007171269. |
| **Mismarking**<br><br>"Knowingly and intentionally | Goldman's "employees improperly marked certain [proprietary] sales…as long sales.  The |

| | |
|---|---|
| concealing short-sale transactions … by, among other things, mismarking order tickets" (Complaint ¶ 116(d) at 75);<br><br>"[F]alsely marking short sales as 'long' on blue sheets, order tickets and other documents to conceal naked short positions." (Complaint ¶ 8(d) at 6).[4] | sales should have been marked as short sales…." Eager Aff., Ex. I at GS_T 000082; *see also id.*, Ex. J.<br>DBSI "did not correctly mark an unquantified but significant number of proprietary short sell orders.  As a result, certain short sales were incorrectly marked long, and some of these orders were improperly executed."  Halper Aff., Ex. L at DBSI-T 001811739; DBSI "fail[ed] to have the reasonable grounds in order to mark client sell orders as 'long.'" Halper Aff., Ex. Q at DBSI-T 001811778; *see also*, Ex. P. |

*See* Eager Aff., Ex. K (Corrected Amended Notice to take 30(b)(6) of Goldman (8/11/10) ("Goldman Not.")) at 6; *id.*, Ex. L (Amended Notice to Take O.C.G.A. § 9-11-30(B)(6) of Deutsche Bank Securities ("DBSI Not.")), Ex. A at 1-2. Notably, the Notices **exclude** sanctions relating to conduct that is not at issue here[5] and do not include any instances in which a Defendant was investigated but not sanctioned.

   **The Goldman Notice.**  The notice of deposition to Goldman[6] clearly identifies the Investigations at issue, providing the Bates numbers of the document

---

[4] *See* Complaint ¶ 141 at 84 ("[T]he defendants have provided inaccurate and false reports on their electronic blue sheets (*i.e.*, Responses to Request by the SEC) regarding the identity of an account holder for whom specific trades were executed and whether transactions were buys or sales, or longs or shorts.").

[5] *See* Ex. K (Goldman Not.) at 6, ¶¶ 1. (a), (b), (d), (e), (g); Ex. L (DBSI Not.), Ex. A at 1-2, ¶¶ (a), (c), (d), (e) and (j).

[6] Exhibit K to the Eager Affidavit is the last version of the Goldman Notice that was actually served.  However, Plaintiffs are still agreeable to a narrower notice, Ex. M to the Eager Affidavit, developed during the conferral process.

810569.1

5

memorializing Goldman's final consent and sanction.  *See* Ex. K (Goldman Not.) at

6.  For example, Goldman "consents, without admitting or denying" to certain

"findings by NASD," including, *inter alia*, that when Goldman effected short sales

for Goldman's proprietary account, it "failed to make/annotate an affirmative

determination that the firm could borrow the securities or otherwise provide for the

delivery of the securities by settlement date" and that it failed to report or correctly

report certain transactions as short sales.  Goldman further consented that such

conduct constitutes "violations" of NASD rules and to the "imposition … of …

[monetary] sanctions."  Eager Aff., Ex. B at GS_T 000053-54.

> In an NYSE Disciplinary Proceeding, it was determined that Goldman:
>
> (1) "failed to ensure that all sell orders were properly marked as 'long,' 'short,' or  'short exempt'";
>
> (2) "effected customer sell orders marked long when it did not know or have reasonable grounds to believe:  (a) that it would be able to deliver the security on the date the delivery was due; and (b) that short sales were not misrepresented as long sales";
>
> (3) "accepted customer short sale orders and effected those orders without having reasonable grounds to believe that those securities could be borrowed so that they could be delivered on the date delivery was due"; and
>
> (4) "failed to accurately account for its fails to deliver in threshold securities."

Eager Aff., Ex. I at GS_T 000075.  Additional violations pertain to record-keeping,

supervision and control concerning short sales.  *See id.* at GS_T 000076.

> For each Investigation and related sanction, the Goldman Notice requests a

witness to answer questions about each Investigation, such as:

- Goldman's knowledge of the conduct described in the Investigation's documentation (the "Described Conduct");

- For the relevant time period, Goldman's policies and procedures to prevent the Described Conduct;

- Whether the Described Conduct violated any Goldman policies or procedures;

- The actions, if any, Goldman took in response to the Investigation;

- The Goldman personnel principally responsible for ensuring that the Described Conduct did not occur;

- The traders/trading desks involved in the Described Conduct; and

- Whether the Described Conduct ever occurred with respect to TASER securities.

Goldman also apparently continues to challenge Topic 2, which requests information on Goldman's execution of trades in TASER securities, even though Plaintiffs agreed to Goldman's proposal to revise it such that:

**In lieu of providing a witness** … Goldman shall produce or specifically identify in its prior production data sufficient to show whether Goldman's Equity Finance Group ("EFG") executed any trades involving TASER [securities.]

Eager Aff., Ex. M at 9 (emphasis added).  Ironically, despite Defendants' complaints at every turn about Plaintiffs' supposed failure to identify improper trades in TASER securities (*see, e.g.*, DBSI Mot. at 9), Goldman objects to providing this very information.

Contrary to Goldman's claims, the Goldman Notice expressly disclaims any obligation to "conduct an audit" in preparing a witness to testify; to the contrary, it expressly states:

> Plaintiffs are <u>not</u> requesting that Goldman first conduct an audit.  Rather, Goldman need only provide information as to "matters known or reasonably available" to the firm.  O.C.G.A. 9-11-30(b)(6).

Ex. M (Goldman Not.) at 8 n.2 (emphasis in original).  In addition, where applicable, the Goldman Notice makes clear that Plaintiffs are not seeking "any legal opinions" (*id.* at 9); information "protected by privilege or attorney work product" (*id.* at 8); or "expert testimony."  *Id.* at 8 n.3.

Notwithstanding the tone of its Memorandum, as Goldman's proposed amended notice (Eager Aff., Ex. N) shows, Goldman does not oppose most of the topics in the Notice, either in their entirety or in substance with certain limitations or qualifications.  *Compare* Ex. M (Goldman Not.) at 7, ¶¶ a, b, c, e, f, h, j, o, p, q, r *with* Ex. N.  However, Goldman refuses to produce a witness on some significant topics, such as whether it admits or denies that the Described Conduct occurred (Ex. M at 7 ¶ 1.d.); its position, if any, on the effect of the Described Conduct on the accuracy of records, the delivery of securities, or stock price (*id.* at 8 ¶ 1.i); and Goldman's rights and options with the respect to the Investigations (limited to those set forth in the referenced documents (the "Documentation") and excluding legal opinions).  *Id.* at 9 ¶ 1.l.

**The DBSI Notice.**  The DBSI Notice identifies 10 Investigations.[7]  *See*
Ex. L (DBSI Notice), Ex. A at 1-2.  These Investigations are relevant to the claims
and defenses in this case.  For example, DBSI settled a formal disciplinary action
by consenting that "at least five of [DBSI's] 19 proprietary trading desks failed to
comply with certain NYSE Arca Equities Rules and Regulation SHO requirements
with respect to its execution and supervision of the short sale orders" described in
the Documentation.  Halper Aff., Ex. L at DBSI-T 001811739.  These violations
included having "effected an unquantified but significant number of short sales …
without having borrowed the securities or entered into bona-fide arrangements to
borrow the securities, or having reasonable grounds to believe that the securities
could be borrowed for delivery when due, and without the proper documentation of
such."  *Id.*  The violations also included failing to "adhere to the independent
trading unit aggregation requirements" and failing to "correctly mark …
proprietary sell orders" so that "certain short sales were incorrectly marked long,"
*id.*, and having "fail to deliver position[s], which [DBSI] failed to close out as
required…at the registered clearing agency."  Halper Aff., Ex. T at DBSI-
T 001811747.  DBSI consented to the imposition of monetary fines as sanctions
for this conduct.  *Id.*; *see also* Halper Aff., Ex. Q at DBSI-T 001811772 (Reg SHO
was "designed to control the harmful effects on market prices and volatility caused

_____

[7] At DBSI's request, Plaintiffs have agreed to remove two investigations listed on
the original notice.

by naked short selling"); *id.* (describing DBSI's multiple failures to comply with various rules and requirements, including Reg SHO, pertaining to short sale orders during 2005-2009).

Topic One of the DBSI Notice requests information about the 10 Investigations similar in substance to what the Goldman Notice requests.  In Topics Two - Six, the DBSI Notice requests additional specific "information regarding certain of the allegations set forth in the AWCs."  DBSI Mot. at 12.

Like the Goldman Notice, the DBSI Notice makes clear that Plaintiffs do not expect DBSI to conduct an audit or provide legal opinions.  *See, e.g.*, Ex. L, Ex. A at 2 n.2; *id.* at 3 n.4; *see also id.* at 4 ¶ 13 ("if currently known"); *id.* at 4 ¶ 11 ("This topic ... will not seek any legal opinions").  In addition, the DBSI Notice contains clarifications and limiting language Plaintiffs added in a good faith effort to address concerns that DBSI's counsel expressed during the conferral process. *See, e.g.*, *id.* at 2 nn.1, 2; *id.* at 3 n.3; *id.* at 5 n.7.

During conferral, Plaintiffs also clarified and gave examples of what they seek in the depositions.  For example, for Topic One, subtopic (2), Plaintiffs explained that they are not asking DBSI to review all potential instances of violations, "but rather, whether through … regulators, surveillance, monitoring, exams, audits, etc. DBSI found that it may have an issue in a particular area.  Thus, DBSI may respond that it never identified the conduct as a systematic or other issue. …"  Eager Aff., Ex. O (Aug. 10, 2010 email from E. Eager to counsel for

DBSI).  Similarly, for subtopic 1(4), Plaintiffs explained, "We are seeking information as to whether DBSI concluded that the conduct occurred, did not occur or did not come to a conclusion. … **[W]e are not asking DBSI to first audit … the matter now, but rather provide any conclusions that have already been reached (if any)**."  Eager Aff., Ex. P at 2 (Aug. 11, 2010 email from S. Rosenwasser to counsel for DBSI (emphasis added).  *See also id.* at 3 (re: Topic 1(7):  "[W]e are not asking for documents that say a violation *may* have occurred, but rather documents that track or show where DBSI concluded a violation did in fact occur. … *i.e.*, violations it is already aware of, as opposed to violations it could find if it first conducted an audit now."); Eager Aff., Ex. O at 2 (re: Topic 1(9):  "[W]e seek testimony on how an error (like a mismarking) would track into other data sets. …  We are NOT looking for expert opinion or testimony.  Rather, whether, outside of expert testimony … DBSI has a position. …  If the answer is no, we will accept that as responsive."); *id* at 2 (re: Topic 1(11):  "[W]e are entitled to show what options DBSI had with regulators in lieu of agreeing to an AWC or other sanction.  You mentioned we may cross examine a witness about that at trial. We … are entitled to the testimony now."

## III.   ARGUMENT AND CITATION OF AUTHORITIES

### A.   Defendants Have Failed to Meet their Burden of Establishing Good Cause for a Protective Order.

The party moving for a protective order has the burden of proof under both

federal and Georgia law.[8]   *See Stamps v. Encore Receivable Mgmt., Inc.*, 232 F.R.D. 419, 423 (N.D. Ga. 2005) (party moving for protective order has burden of demonstrating "good cause" for the order's issuance); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (good cause "signifies a sound basis or legitimate need to take judicial action."); *see Munn v. Munn*, 116 Ga. App. 297, 298 (1967) ("[T]he burden of persuasion is on the objecting party"); *see also Deloitte Haskins & Sells v. Green*, 187 Ga. App. 376, 376 (1988) ("The courts of this State have long recognized 'the overriding policy of liberally construing the application of the discovery law.  To hold otherwise would be to give every litigant an effective veto of his adversaries' attempts at discovery.'").

The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Young v. Jones*, 149 Ga. App. 819, 824 (1979) (good cause "necessarily is not established by stereotyped or conclusional statements, bereft of facts.").  Under Georgia law, good cause must be supported by "substantial evidence."  *Bridges v. 20ᵗʰ Century Travel, Inc*., 149 Ga. App. 837, 839 (1979) ("It is contemplated that the trial judge will exercise a sound and legal discretion in the grant or denial of protective orders.  ***Such are intended to be protective--not prohibitive***--and, until such time as the court is satisfied by

---

[8] Plaintiffs have moved for remand.  If this case is remanded, the State Court will decide this motion under Georgia law.

810569.1

12

**substantial evidence** that *bad faith or harassment motivates the* (discoveror's) *action*, the court should not intervene to limit (or prohibit) the scope of pretrial discovery.") (emphasis in original).

Absent a showing of a need to protect a party from harassment or oppression, a trial court abuses its discretion in restricting the broad use of discovery. *See, e.g.*, *Osborne v. Bank of Delight*, 173 Ga. App. 322, 324 (1985) ("Because the plaintiff in the present case offered no evidence in support of its contention that the requested discovery was sought solely for harassment purposes," trial court erred in prohibiting discovery); *see also In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004, 2009 U.S. Dist. LEXIS 111149, at **1-2 (M.D. Ga. Dec. 1, 2009), *vacated in part on other grounds*, 2010 U.S. Dist. LEXIS 52628 (M.D. Ga. May 28, 2010) ("[Fed. R. Civ. P.] 26(c) provides that a court 'may, for good cause**,** issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' including an order forbidding a deposition.  However, '[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.") (quoting *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

### B.    The Information Sought in the Notices Is Highly Relevant and Likely to Lead to the Discovery of Admissible Evidence.

The Moving Defendants have already lost the argument they make in these

Motions, that the information sought is irrelevant or not relevant enough to justify the "burden" of responding because it relates to securities other than TASER. *See, e.g.*, DBSI Mot. at 20-22; Goldman Mem. at 1-2.  In ordering Defendants to produce the very Documentation that is the subject of the Notices, the State Court ruled:

> The Court hereby **ORDERS**, the Defendants … to produce all documents referring, relating to or showing conduct that is the same or similar to the conduct at issue in this case, **including stocks other than TASER.  This includes documents relating to any agency, regulatory or other than investigation not specifically related to TASER securities**.

Order dated Feb. 10, 2010, attached hereto as Exhibit 3 (emphasis added).

The Plaintiffs have alleged that the Defendants engaged in the very conduct that was the subject of the Investigations.  For example:

> Defendants failed to request or require buy-ins for TASER and other securities that a Defendant failed to deliver, including **each Defendant permitting the other to fail to deliver beyond the permitted time frame or otherwise improperly account for an illegal short sale**.  (Eager Aff., Ex. A (Responses to Second Interrogatories) at 125-126 (emphasis added).

> In many instances, one or more **Defendants had consistent failures to receive, indicating that the Defendant knew that TASER securities were not settling** and thus the Defendant should have, *inter alia*, required a buy-in.  **The failure to request a buy-in further demonstrates Defendants' agreement and conspiracy to permit and/or facilitate naked short selling and other improper and/or manipulative activity**.  (*Id.* at 32) (emphasis added).

> The defendants have used several illegal methods to engage in and conceal their naked short selling, including … **failing to make legitimate or reasonable efforts to locate TASER shares or make affirmative**

**determinations prior to short selling them**.  (Complaint ¶ 8) (emphasis added).

Defendants' improper conduct also includes the **failure to properly provide or obtain a locate for TASER securities**.  (Eager Aff., Ex. A (Responses to Second Interrogatories) at 149 (emphasis added).

*See supra* at 3-5.  The Investigations are plainly relevant to these allegations.

The State Court having ordered that the Investigations are discoverable, the Moving Defendants nevertheless assert that the Described Conduct is not relevant to show "potential [RICO] 'predicate acts'" (Goldman Mem. at 12; DBSI Mot. at 21 n.25).  This argument assumes that the Described Conduct is **only** relevant if it constitutes RICO predicate acts – an assumption which is patently untrue.  Even if none of the Described Conduct could by itself constitute a predicate act (which Plaintiffs dispute), it is still relevant in the following ways, among others:

- Violations involving other stocks show a pattern and course of conduct, which is relevant to Plaintiffs' RICO claims;
- Prior violations rebut any claim by Defendants that the illegal TASER transactions were unintentional or isolated incidents;
- Prior violations, and the failure to rectify the conduct constituting such violations, prove Defendants' intent and knowledge (scienter);
- Prior violations rebut any claim that Defendants' monitoring and compliance policies and procedures were adequate;
- Prior violations prove willfulness, a component of Plaintiffs' RICO claim and request for punitive damages;
- Prior violations rebut Defendants' claim that they operated in good faith; and

- Prior violations show Defendants' knowledge that the conduct was improper (contrary to what they claim in this case).[9]

Indeed, courts have consistently accepted same or similar conduct evidence for these very reasons. *See, e.g.*, *InterAgency, Inc. v. Danco Fin. Corp.*, 203 Ga. App. 418, 424 (1992); *Jones v. Childers*, 18 F.3d 899 (11th Cir. 1994); *see generally* Reply in Support of Plaintiffs' Motion to Compel Production of Documents, filed Dec. 3, 2009 at 8-11, 13-14, attached hereto as Exhibit 4.

Furthermore, while the violation of a regulation may not be, in and of itself, a RICO predicate act, it certainly can be relevant to proving a predicate act. For example, Plaintiffs allege that Defendants' conduct was knowing and intentional. *See, e.g.*, Complaint ¶¶ 8, 13, 107, 108, 116. The evidence sought by this Rule 30(b)(6) deposition – which shows that Defendants were made aware of the illegal conduct by regulators and continued to engage in it – is clearly relevant to show that state of mind. Of course,

> [Plaintiffs], it must be remembered, do[] not need to show much to fit [their] requests under the "any possibility" discovery standard. *See In Re Wirebound Boxes Antitrust Litig.*, 129 F.R.D. 534, 539 (D. Minn. 1990) (discovery of the information at issue "is to be considered relevant where there is any possibility that the information sought may be relevant") (quotes and cite omitted), *vacated on other grounds*, 131 F.R.D. 578 (D. Minn. 1990); *AM Int'l, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D. Ill. 1981) (discovery should be allowed if there is any possibility that the information sought may be relevant), *cited in La Mura v. U.S.*, 765 F.2d 974,

---

[9] Defendants claim that certain Investigations are not relevant because they involved discrete periods of time or resulted in small monetary penalties. That is an argument Defendants can make to the jury. Regardless, each Investigation is relevant for the reasons identified above.

982 n.12 (11th Cir. 1985).

*Wachovia Ins. Servs. v. Paddison*, No. 406CV083, 2006 U.S. Dist. LEXIS 66463, at **65-66 (S.D. Ga. Jul. 11, 2006).

The Moving Defendants also argue that any inquiry into their prior "settlements" is improper because of the inadmissibility of settlement negotiations. But Plaintiffs are not seeking to discover the content of such negotiations.[10] Rather, Plaintiffs seeking to inquire about the **facts** underlying the Investigations. For example, because the Moving Defendants neither admit nor deny it, Plaintiffs intend to ask whether the Described Conduct occurred and, if the Defendants deny it, what is the factual basis for their denial. *See* Ex. M (Goldman Not.) at 7 ¶ D; Ex. L (DBSI Not.), Ex. A at 3 ¶ 4. The Moving Defendants have failed to identify a topic in the Notices that necessarily (or even likely) delves into their settlement negotiations. While the Moving Defendants pretend that the request for their "rights and options" in the Investigations calls for such information and for legal conclusions, to the contrary, both Notices expressly state that this request "is limited to the rights and options set forth in the AWC, Cautionary Action and Consent, and will not seek any legal opinions." Ex. M (Goldman Not.) at 9; Ex. L (DBSI Not.), Ex. A at 4. At the deposition, Defendants maintain the right to object

---

[10] O.C.G.A. § 24-3-37 and Federal Rule of Evidence 408 are evidentiary rules that do not purport to prohibit *discovery* into settlements; further, they permit the use of such evidence for "another purpose" other than to prove the validity or invalidity of the claim or its amount. Fed. R. Evid. 408(b); *see Nevitt v. CMD Realty Inv. Fund IV, L.P.*, 282 Ga. App. 533, 537 (2006).

810569.1

to any questions they claim seek legal conclusions.  There is no basis for stopping the deposition altogether.

The Moving Defendants also claim that this topic "also necessarily implicates attorney work product and attorney-client privilege."  Goldman Mem. at 11; DBSI Mot. at 26.  Again, Defendants are free to object during the depositions to any specific question they believe calls for attorney client privileged or work product information.  That the noticed topics might conceivably encompass some privileged or otherwise protected information does not justify the grant of a protective order on that entire topic, let alone the whole deposition.  *See Farnsworth v. Procter & Gamble Co*., 101 F.R.D. 355, 357 (N.D. Ga. 1984), *aff'd*, 758 F.2d 1545 (11th Cir. 1985) ("[T]he existence of a privilege does not determine whether a protective order should issue under Rule 26(c). The standard is whether the movant has shown good cause for such an order."); *see also High Five Invs., LLC v. Floyd County*, 239 F.R.D. 663, 665 (N.D. Ga. 2007) (denying motion for protective order where defendant argued that Rule 30(b)(6) deposition seeking to discover the "interests meant to be furthered" by an ordinance plaintiffs alleged to be unconstitutional impermissibly sought the mental processes of the commissioners who enacted the ordinance).

In a similar vein, the Moving Defendants argue that the Notices would improperly require the corporate representatives to make "legal conclusions" as to whether the Moving Defendants' own policies and procedures were violated.  *See*

810569.1

18

Goldman Mem. at 10; DBSI Mot. at 25.  But, whether conduct violated a **company's** own policy does not constitute a **legal** conclusion; of course a deponent can testify as to whether the company's own policies permitted the conduct at issue.

Further, the *Byrd v. Wal-Mart* case upon which the Moving Defendants rely does not support their argument.  In that case, Wal-Mart moved for a protective order on the question of whether, after conducting a post-accident investigation into whether the accident at issue was "preventable," Wal-Mart concluded that its driver was "at fault" in the accident.  Holding that the driver's fault was a legal conclusion, the court granted a protective order as to that question.  But the question of who was legally at fault is entirely distinct from the question here, whether certain conduct was permitted by company policy.  Further, in *Byrd*, Wal-Mart had **permitted its witness to testify as to the conclusion it reached in its investigation**, that the accident was "non-preventable."  And, unlike the Moving Defendants here, Wal-Mart was not attempting to prevent the plaintiff "from discovering *factual* information as to Wal-Mart's policies and procedures and post-accident review."  *Byrd v. Wal-Mart Transp., LLC*, No. CV609-0142009 U.S. Dist. LEXIS 87356, at *11 (S.D. Ga. Sept. 23, 2009) (emphasis in original).  The court ruled that "If [Wal-Mart's] SAR [Serious Accident Review] committee applies a uniform methodology in making preventability assessments, that information (the how and why of its methodology) should be discoverable."  *Id.*  Similarly, here, the

Notice inquires whether the Moving Defendants have made a determination that the conduct at issue in the Investigations violated Defendants' own policies and procedures, and if so, they should produce a witness to provide that information. *See* Ex. M (Goldman Not.) at 7 ¶ e; Ex. L (DBSI Not.), Ex. A at 3 ¶ 5.  Further, if they in fact deny that the specific conduct at issue in the Investigations occurred, the Moving Defendants must provide a witness to testify as to the **factual** basis of such denial.  *See* Ex. M (Goldman Not.) at 7 ¶ d; Ex. L (DBSI Not.), Ex. A at 3 ¶ 4. (If they have not made such a determination, they need not provide any information in response to that topic.  *See* Ex. M (Goldman Not.) at 7 n.1).

### C.   The Deposition Notices Are Not Overly Broad, Unduly Burdensome, or Lacking in Particularity.

Defendants claim the Deposition Notices are vague or lacking in particularity.  To the contrary, the Notices reference by Bates number the specific Documentation each Moving Defendant produced for each Investigation.  The Documentation describes precisely the conduct investigated, which is the subject of the inquiries in the Notices.

Rather than making the Notices more burdensome (as the Moving Defendants argue), the subparts in the Notices were intended to and do in fact make the topics *more* **particular**.  For example, the Notices could simply have asked the Defendants to identify a witness to testify about each Investigation. Instead, the Notices identify particular subtopics of inquiry about the

Investigations, such as "[w]hat actions, if any, DBSI took in response" to the Investigation. Ex. L at 3 ¶ (6). While this would have been sufficient, the Notices get even more particular. For example, the DBSI Notice requests a witness to testify about "[t]he scope of" each Investigation. *Id.* at 2 ¶ (1). It then defines the scope of the Investigation to "mean[] for this purpose" (1) "when DBSI learned that the Investigation started"; (2) "the securities that DBSI is aware were investigated" (if any); (3) "the time periods examined"; and (4) a "general description of the types of conduct investigated." *Id.*; *see* Ex. M (Goldman Not.) at 7 ¶ 1a.

The fact that each of the Moving Defendants had **10** such Investigations (and therefore, when counting the number of subjects covered by the Notices, the Moving Defendants multiply each subtopic by 10) does not make the Notices overly broad or unduly burdensome.[11] Plaintiffs are entitled to discover this relevant information, whether each Defendant had two Investigations or 20.

The Moving Defendants nevertheless argue that the Notices are so "vague and broad" that it would be "impossible to designate and prepare witnesses to testify." DBSI Mot. at 14; Goldman Mem. at 7 (both quoting *Edelen v. Campbell*

---

[11] The Moving Defendants assert that the language "including, but not limited to" makes the Notice topics that include it *per se* overly broad. *See, e.g.*, Goldman Mem. at 12-13. Even if this were the rule in this District or Circuit, only **one** sub-topic in the Notices contains that language (Topic 1, subtopic 11), and that sub-topic is expressly "limited to the rights and options set forth in the [Documentation]." *See, e.g.*, Ex. L at 4, ¶ 11. Thus, there is no failure to identify the outer limits of the inquiry.

810569.1

21

*Soup Co.*, 265 F.R.D. 676, 700 (N.D. Ga. 2010)).   But a review of the Notices

belies that claim.  For example, the Notices seek such specific information as

"identification of the trading desks and traders involved in the conduct" sanctioned

in the Investigation and "when the conduct occurred."

The *Edelen* case, upon which the Moving Defendants rely, is entirely

distinguishable.  In that case, "Plaintiff's two Rule 30(b)(6) notices were each

nearly 40 pages long and contained 120 topics."  265 F.R.D. at 684.  The court

held, "It is not difficult to conclude that such notices are unreasonable in a **single**

**plaintiff employment discrimination action**."  *Id.* (emphasis added).  The

analysis is obviously different here, in an action with 44 plaintiffs, 10 defendants

and a 109-page complaint.

Furthermore, the topics that were held to be too "vague and broad" in the

*Edelen* case were the following:

> Topic No. 1: The existence, description, nature, custody, condition, and
> location of **any documents or other tangible things that are relevant or are**
> **reasonably calculated to lead to the discovery of admissible evidence.**
> Topic No. 2: Campbell Soup's knowledge of any and **all discoverable, non-**
> **privileged information regarding the allegations, claims, and defenses**
> appearing in either Plaintiff's complaint or Campbell Soup's answer and
> written responses to discovery.

*Id.* (emphasis added).  While these topics request identification of all "relevant"

documents and all "discoverable" information, the topics at issue here are tailored

to specific conduct and specific Investigations of such conduct.[12]  There is no basis

for the Moving Defendants' assertion that the topics in the Notices are "broader."

　　　Similarly, *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146-CM-DJW, 2008 U.S.

Dist. LEXIS 82594 (D. Kan. Oct. 15, 2008), is distinguishable.  In that case,

> Plaintiff's Rule 30(b)(6) deposition notice asks U.S. Bancorp to produce a
> witness who can testify regarding the conduct of its employees and agents
> and its subsidiaries' employees, which conduct is described in all of the 263
> paragraphs of the Petition.  The notice also requests that U.S. Bancorp
> produce a corporate representative who is "familiar with all documents in its
> possession or control or the possession of its agents related to the conduct of
> its agents" described in those same 263 paragraphs.  In other words, Plaintiff
> is asking U.S. Bancorp to produce a representative to testify about every
> single allegation of conduct by U.S. Bancorp in the entire Petition and all
> documents relating to the conduct of its agents.

2008 U.S. Dist. LEXIS 82594, at **17-18.  *Lipari's* ruling has no application here,

where the Notices reference specific Investigations of specific conduct.

---

[12] A recent case from this Circuit refutes the Moving Defendants' implicit premise
that "Rule 30(b)(6) deposition topics requiring a corporate party to produce a
witness to testify regarding all facts and circumstances underlying the corporate
party's causes of action are routinely quashed in federal court." *Lockheed Martin
Corp. v. L-3 Communs. Corp.*, No. 6:05-cv-15802007 U.S. Dist. LEXIS 52658, at
*8 (M.D. Fla. Jul. 22, 2007):

> The case law does not support this sweeping proposition. Some courts have
> granted protective orders with respect to Rule 30(b)(6) deposition notices
> asking a corporate party to produce a representative to testify about facts
> underlying causes of action asserted in a case.  Other courts have permitted
> the Rule 30(b)(6) depositions to proceed.  Accordingly, I conclude that the
> resolution of the motions at issue must be based upon the facts and
> procedural status of the present case.

*Id.*
810569.1

23

The Moving Defendants continue to insist that preparation of witnesses for the 30(b)(6) depositions would "require an audit of hundreds of thousands of transactions."  DBSI Mot. at 15; *see id.* at 16; Goldman Mem. at 12.  But

> Plaintiffs are not requesting that [Defendant] first conduct an audit.  Rather, this topic only seeks [Defendant's] current knowledge.  Thus, if [Defendant] does not currently have a position or know whether the conduct occurred, it need only testify as to that fact.

Ex. M (Goldman Not.) at 7 n.1; Ex. L (DBSI Not.), Ex. A at 2 n.2.  The DBSI Notice further states, "Plaintiffs have informed DBSI that, if appropriate, it can limit its preparation to speaking with persons in its compliance and regulatory department(s) and reviewing documents sent to or from those areas."  Ex. L (DBSI Not.), Ex. A at 2 n.2.[13]   The Moving Defendants cannot simply ignore the plain language of the Notices when claiming overbreadth or undue burden.  If the Defendants follow the Notices' instructions and still cannot reasonably ascertain an answer, they can so testify.

### D.   The Court or Special Master Should Not Reformulate Plaintiffs' Deposition Notices.

The Court or Special Master should resist the Moving Defendants' invitation

---

[13] By contending it would still have to review all of the documents "sent to or from" DBSI's "compliance and regulatory departments" to designate and prepare a witness, DBSI is taking an unreasonably broad view of the topic, which defines "DBSI's knowledge of the conduct" as "mean[ing]":  "when DBSI learned that it may be or was engaging in the type of conduct alleged" in each Investigation and "the steps DBSI took, if any, to prevent that conduct …."  Ex. L (DBSI Not.), Ex. A. at 2.

810569.1

to rewrite the Notices.  For example, as shown above, there are no topics that should or can be eliminated **in their entirety** because they purportedly "impermissibly seek[] legal or expert opinions or conclusions" (Goldman Mem. at 14); any such objections to specific questions can be and are best made in the depositions.  Goldman further suggests that

> to the extent Plaintiffs wish to determine whether the alleged "conduct" occurred, [Goldman] would be prepared to identify fact witnesses, if such witnesses can reasonably be identified, with personal knowledge of the events at issue.

*Id.*  Of course, that proposal would defeat perhaps the main purpose of Rule 30(b)(6), to obtain the **corporate party's** knowledge of and admission that such conduct occurred (precisely what Goldman apparently hopes to avoid).  Similarly, Goldman asks the Court to forgive in advance its lack of preparation, which is not only unprecedented, but unnecessary given that the Plaintiffs have expressly limited Goldman's responsibilities in the Notices themselves.

## E.    No Award of Fees or Expenses Is Appropriate.

For all the reasons set forth above, no award of fees or expenses incurred in bringing these Motions is appropriate.

Respectfully submitted, this 19th day of October, 2010.

*/s/ Elizabeth G. Eager*
John E. Floyd
Georgia Bar No. 266413

810569.1

25

Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Elizabeth G. Eager
Georgia Bar No. 644007
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax

James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas  77002
(713) 659-7617 Tel.
(713) 659-7641 Fax

***ATTORNEYS FOR PLAINTIFFS***

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the District Court for the Northern District of Georgia, I hereby certify that the foregoing pleading has been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

Respectfully submitted this 19th day of October, 2010.


*/s/ Elizabeth G. Eager*
Elizabeth G. Eager
Georgia Bar No. 644007

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing

**PLAINTIFFS' OPPOSITION TO THE GOLDMAN SACHS DEFENDANTS'**

**AND DEUTSCHE BANK SECURITIES INC.'S MOTIONS FOR**

**PROTECTIVE ORDER REGARDING 30(b)(6) DEPOSITIONS** was

electronically filed with the Clerk of Court using the Court's electronic filing

system which will automatically send an email notification of such filing to the

following attorneys of record who are registered participants in the Court's

electronic notice and filing system:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Dan F. Laney, III, Esq.
> Kristina M. Jones, Esq.
> Stefanie H. Jackman, Esq.
> James W. Cobb, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601
> rsinkfield@rh-law.com

Further, I hereby certify that on this day, I caused a true and correct copy of

the foregoing to be served by U.S. Mail on:

810569.1

28

**Attorneys for Banc of America Securities, LLC;
Merrill Lynch, Pierce, Fenner & Smith, Inc.; and Merrill Lynch
Professional Clearing Corporation:**
Andrew J. Frackman, Esq.
Brad Elias, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036
afrackman@omm.com

**Attorneys for Morgan Stanley & Co. Incorporated:**
Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa T. Aoyagi, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017
robert.wise@davispolk.com

**Attorneys for Bear Stearns & Co., Inc. and Bear Stearns
Securities Corp.:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036
blfriedman@proskauer.com

**Attorneys for Goldman, Sachs & Co. and Goldman Sachs
Execution & Clearing, L.P.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004
peppermanr@sullcrom.com

810569.1

29

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281
peter.isajiw@cwt.com

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793
aclubok@kirkland.com

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Credit Suisse Securities (USA), LLC.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022
fraser.hunter@wilmerhale.com

This 19th day of October, 2010.

/s/ Elizabeth G. Eager
Elizabeth G. Eager
Georgia Bar No. 644007

810569.1

30