# EXHIBIT 1

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32215379
Date: Jul 19 2010  9:53PM
Mark Harper, Clerk

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

TASER INTERNATIONAL, INC.,
*et al.*,

      Plaintiffs,

v.

MORGAN STANLEY & CO., INC.,
*et al.*,

      Defendants.

Civil Case No.
2008-EV-004739-B

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER
## WITH RESPECT TO PLAINTIFFS' JUNE 10, 2010 DISCOVERY
## AND MEMORANDUM IN SUPPORT THEREOF

Defendants respectfully move this Court pursuant to O.C.G.A. § 9-11-26(c) for a

protective order (a) quashing Plaintiffs' most recent discovery demands served June 10, 2010

(the "June 10 discovery"),[1] and (b) requiring Plaintiffs to seek leave of the Court for good cause

shown before serving further requests for production, interrogatories or requests for admission.

Defendants' have tried in good faith to resolve this dispute with Plaintiffs without resort to

judicial intervention; however, Plaintiffs' intractable insistence on patently irrelevant and

monumentally burdensome discovery have compelled Defendants to seek relief from the Court.

---

[1] On June 10, 2010, Plaintiffs served (a) a Notice to Take O.C.G.A. § 9-11-30(b)(6) Deposition of All Defendants ("June 10 Deposition Notice"), attached hereto as Exhibit ("Ex.") A; (b) Plaintiffs' Fourth Requests for Admission to All Defendants Except Goldman Sachs and Fifth Requests for Admission to Goldman Sachs ("June 10 Requests for Admission"), attached hereto as Ex. B; and (c) Plaintiffs' Fifth Interrogatories to All Defendants Except UBS and Sixth Interrogatories to UBS ("June 10 Interrogatories"), attached hereto as Ex. C.  On July 19, 2010, contemporaneous to this motion, Defendants served their objections to (a) the June 10 Requests for Admission, attached hereto as Exs. D–K and (b) the June 10 Interrogatories, attached hereto as Exs. L–S.  All exhibits and affidavits referenced herein are submitted in support of Defendants' Motion for Protective Order with Respect to Plaintiffs' June 10, 2010 Discovery.

## PRELIMINARY STATEMENT

This motion is prompted by the latest set of discovery requests served by Plaintiffs—the June 10 discovery—which make clear that Plaintiffs intend to use overly broad, burdensome and expensive discovery demands as a weapon to coerce Defendants into compromising on claims that discovery to date has shown not only lack merit, but also are of insufficient value to justify the massive and expensive discovery Plaintiffs now seek. Defendants have already produced many millions of pages of documents, answered scores of requests for admission, and responded to dozens of multiple-part interrogatories—all at a cost of many millions of dollars. Plaintiffs now demand more: additional written and 30(b)(6) deposition discovery further expanding the scope of inquiry into a general audit of Defendants' short selling and related trade settlement activities concerning *every* securities transaction over a five-year time period. And all of this is before a single deposition has been taken.

To put this motion in perspective, Plaintiffs are an Arizona maker of stun guns, TASER International Inc. ("TASER"), and 42 current or former TASER shareholders. According to publicly available information, TASER's stock enjoyed a brief run-up during late 2003 and 2004, but then dropped precipitously when it was revealed that there were serious safety concerns with its product and that TASER was under investigation by the SEC regarding possible securities fraud with respect to its public filings. TASER's stock has never fully recovered. Nonetheless, Plaintiffs claim they were damaged because Defendants participated in what Plaintiffs vaguely term "abusive naked short selling," which they allege artificially depressed the price of TASER stock. (Sixth Am. Compl. ¶ 8.) Plaintiffs seek to recover their supposed losses under Georgia securities law, RICO and other theories. (*Id.* ¶¶ 93–150.)

2

It turns out, however, that 38 of the 42 shareholders who are plaintiffs in this action,[2] including all of the Georgia plaintiffs, admit that they did not lose any money on their investments in TASER stock; instead, they *profited*.  (Plaintiffs' Response to Defendants' First Set of Requests for Admission to Individual Plaintiffs, No. 8, excerpts attached hereto as Ex. T (hereinafter "Individual Plaintiffs' RFA No. 8 Responses").)  Moreover, the trading records of two of the other three answering Plaintiffs do not appear to support their claims that they lost money in their TASER investments and the aggregate losses of the third Plaintiff—even if assumed to be solely attributable to the alleged wrongdoing by Defendants—are less than fifty thousand dollars.[3]  Finally, TASER itself has produced no evidence whatsoever that it even sold, much less that it had any losses from selling, its own stock during the relevant period.  Under the applicable measures of damage for the securities manipulation claim they have asserted, Plaintiffs have at best nominal damages, even if they could establish liability.

Nevertheless, Plaintiffs have requested, and Defendants have produced, Defendants' trading records regarding TASER.  Defendants have also reviewed and produced their e-mails referencing TASER from hundreds of agreed-upon individuals over a broad six-and-one-half year period.  Yet although Plaintiffs have had in their possession Defendants' TASER-specific trading data for many months now, they have been unable to meaningfully identify particular transactions concerning TASER by any Defendant that supposedly reflect illegal, "abusive naked

---

[2] One Plaintiff, Mr. Chet Scott, is deceased and thus has not responded to the Requests for Admission served by Defendants.  It is therefore not clear whether he made or lost money on his investments in TASER.  It also is not clear whether Mr. Scott's estate intends to pursue this action.

[3] Further, any such claims of alleged losses are tenuous at best because, according to his account statements, this Plaintiff has not sold any of his TASER shares.

short selling." (*See* Defendants' Joint Motion to Compel Plaintiffs' Interrogatory Responses (filed June 10, 2010), Transaction No. 31559851.)[4]

In addition, and in compliance with the Court's February ruling regarding "same or similar conduct," Defendants have recently produced, at a collective cost of millions of dollars, many millions of pages of additional e-mails regarding trading in *other securities*. In arguing that the Court should expand the scope of discovery to include such alleged "same or similar conduct," Plaintiffs assured the Court that *"the Defendants will not be required to review a single document beyond what they have already agreed to review."* (Reply in Support of Plaintiffs' Motion to Compel Production of Documents at 7 (filed Dec. 3, 2009) (emphasis in original), Transaction No. 28339005.) Yet, no sooner had Defendants completed that massive review and production than Plaintiffs served their June 10 discovery, which are no longer limited to the so-called "abusive naked short selling" allegedly at issue in this litigation, but rather cover compliance with *any* procedural or regulatory requirements regarding short sales for *all* securities. Plaintiffs appear to be embarked on an effort to collect evidence of a hodgepodge of securities regulatory issues over the better part of the past decade involving Defendants. Not a single one of these latest discovery demands relates to TASER or even to the "same or similar" conduct about which this Court has permitted some limited discovery. Even if there were some theoretical attenuated relevance of such miscellaneous regulatory infractions to Plaintiffs' claim

---

[4] Contrary to Plaintiffs' assertions that they have, in fact, identified such instances (*see, e.g.*, Plaintiffs' Opposition to Defendants' Motion to Compel Plaintiffs to Answer Interrogatory Nos. 1, 2 and 4 in Defendants' Second Set of Interrogatories (filed July 12, 2010), Transaction No. 32089722), Plaintiffs' interrogatory responses do not identify any such transactions as manipulative and allegedly responsible for harm to Plaintiffs; rather, Plaintiffs' responses purport to identify "suspicious" or "unusual" transactions, and they refuse to tailor their discovery to substantiate any of these claims.

of intentional market manipulation (which there is not), it does not justify the significant cost and expense of the discovery Plaintiffs now seek.

The issue presented by this motion is how far Plaintiffs will be permitted to go in imposing more and more discovery costs and burdens on Defendants.  In the face of their own admissions showing that the value of their money damage claims simply does not justify such costs and burdens, Plaintiffs should not be permitted to impose such additional and substantial burden and expense on Defendants.  Courts have long been mindful that discovery can be misused as a bludgeon against an opposing party and should therefore be kept within reason and in proportion to the nature of the claims and the amounts in issue.  Defendants respectfully submit that Plaintiffs' most recent discovery demands in this case have reached—indeed, have substantially exceeded—anything that is reasonably proportionate to the value of their claims, even were those claims presumed to have merit, a presumption without support in the discovery to date.  The Court should therefore quash Plaintiffs' latest demands to expand the scope of discovery and limit their ability to serve additional written discovery absent a showing that such discovery is necessary and reasonable in light of the discovery already provided.

## BACKGROUND

When the limited discovery stay was lifted approximately twelve months ago,[5] Plaintiffs immediately began pursuing discovery, and have now served on each of the defendants at least five sets of requests for production of documents, four sets of requests for admission, five sets of interrogatories, multiple deposition notices as well as countless "informal" discovery requests

---

[5] Pursuant to the Stipulation dated September 15, 2008, the production of substantive responses to Plaintiffs' first sets of requests for production and interrogatories, as well as the service of additional discovery, was stayed for thirty days following a hearing on the then-pending motions to dismiss. (Stipulation Concerning Discovery (Sept. 15, 2008), Transaction No. 21533186.)  This limited stay was lifted in mid-June 2009, following the May 12, 2009 hearing on the motions.

(conveyed by e-mail, letters or during meet-and-confer telephone conferences). Plaintiffs'

requests seek documents, information, admissions and/or testimony spanning an expansive array

of different topics over a six-and-one-half-year period and have cumulatively imposed an

extraordinary burden on each of the Defendants. As time has gone on, Plaintiffs' discovery

demands have gravitated further and further from Plaintiffs' allegations regarding abusive short

sales of TASER and toward a general investigation of Defendants' regulatory compliance with

respect to all aspects of the short selling process in all securities. Prior to the June 10 discovery

that is the subject of this motion, Plaintiffs served:

- <u>Plaintiffs' First Requests for the Production of Documents (served May 2008, responses served October 2008)</u>: Covering, *inter alia*, Defendants' trading in TASER, analyst reports concerning TASER, short interest reports concerning TASER and fines and sanctions pertaining to TASER or various aspects of short selling for a six-and-one-half-year period.

- <u>Plaintiffs' First Set of Interrogatories (served May 2008, revised in 2009, responses served September 2009)</u>: Covering, *inter alia*, organizational structure and responsibility for various aspects of short selling and trade settlement surveillance reports for a six-and-one-half-year period.

- <u>Plaintiffs' Second Requests for the Production of Documents (served June 2009, responses served August 2009)</u>: Covering, *inter alia*, compliance manuals, SRO membership, stock loan availability lists and DTCC documents for a six-and-one-half-year period.

- <u>Plaintiffs' Third Requests for Production of Documents (served September 2009, responses served October 2009)</u>: Covering, *inter alia*, all documents "referencing abusive naked short selling" and documents concerning violations of Regulation SHO in any security for a six-and-one-half-year period.

- <u>Plaintiffs' Second Interrogatories (served November 2009, responses served February 2010; revised by Plaintiffs May 2010, responses to amended questions served June 2010)</u>: Covering, *inter alia*, failures to deliver in all securities, "mismarking" of orders, alleged overvoting and ownership of dark pools and hedge funds for a six-and-one-half-year period.

- <u>Plaintiffs' First Requests for Admission (served November 2009, responses served February 2010)</u>: Covering, *inter alia*, failures to deliver in TASER,

locates, loans of TASER and violations of Regulation SHO with respect to
TASER, short sales in TASER for a six-and-one-half-year period.

- <u>Plaintiffs' Second Requests for Admission (served February 2010, responses
  served May 2010)</u>: Covering, *inter alia*, failures to deliver in TASER, locates,
  loans of TASER and violations of Regulation SHO with respect to TASER, short
  sales in TASER for a six-and-one-half-year period.

- <u>Plaintiffs' Third Requests for Admission (served February 2010, responses served
  May 2010)</u>: Covering, *inter alia*, activity in Georgia, failures to deliver, locates,
  loans of TASER and violations of Regulation SHO with respect to TASER, short
  sales in TASER, "abusive naked short selling" generally for a six-and-one-half-
  year period.

- <u>Plaintiffs' Third Set of Interrogatories Except UBS, Fourth Set of Interrogatories
  to UBS, and Fourth Requests for Production of Documents to All Defendants
  (served February 2010, responses served May 2010)</u>: Covering all documents
  relating to regulatory or enforcement inquiries and investigations in any security
  concerning, *inter alia*, short selling activity, for a six-and-one-half-year period.

- <u>Plaintiffs' Fourth Set of Interrogatories to All Defendants Except UBS and Fifth
  Set of Interrogatories to UBS (served May 2010, responses served June 2010)</u>:
  Covering lobbying efforts by Defendants for a six-and-one-half-year period.

- <u>Plaintiffs' Sixth Requests for the Production of Documents to Defendants Banc of
  America Securities, LLC and Merrill Lynch and Fifth Requests for the Production
  of Documents as to the Remaining Defendants (served May 2010, responses
  served June 2010)</u>: Covering, *inter alia*, all documents constituting, referring to
  or relating to any self-evaluation, self-review or other similar document wherein
  each custodian evaluated, reflected upon or summarized his or her performance
  for a six-and-one-half-year period.

- <u>Plaintiffs' Notice to Take O.C.G.A. § 9-11-30(b)(6) Depositions (served on all
  but one Defendant in May 2010)</u>: Covering, *inter alia*, various aspects of
  regulatory findings, including order marking, trade surveillance, trade reporting
  and Regulation SHO, for all securities for a six-and-one-half-year period.[6]
  Transaction Nos.: 31094882, 31098713, 31297289, 31325537, 31345648,
  31364675, 31364675.

While Defendants have worked in good faith to provide substantive responses to the foregoing

requests, each such response has, in turn, triggered a new round of cascading requests for

---

[6] Plaintiffs have also directed additional, burdensome discovery requests and deposition notices at specific
Defendants.

"clarification" (which often have been entirely new requests) or demands to supplement or amend these responses, thus compounding the extraordinary burden and expense associated with the original requests.[7]

In response to Plaintiffs' written discovery demands, Defendants have collected, reviewed and produced vast quantities of information and documents. Collectively, Defendants have produced tens of millions of rows of transactional data, reviewed millions of documents as part of their e-mail review, and produced over 3.7 million documents, spanning well over 50 million pages. (*See* Affidavits of Brian L. Friedman, Jeffrey M. Gould, Brad E. Konstandt, Gregory A. Markel, Richard C. Pepperman, II, Robert F. Wise, Jr. ¶¶ 2–5; Affidavit of Andrew J. Frackman ¶¶ 2–9.) Defendants have been producing this information since August 2009. These productions include, among other items:

- August 2009: Certain policies and procedures concerning (a) prime brokerage; (b) short sales of common stock; (c) common stock lending; (d) clearance, delivery and settlement of short sales of common stock and (e) proprietary trading.

- September 2009: Organizational charts covering those groups involved in various aspects of short selling activities.

- September to October 2009: Responses to a comprehensive questionnaire concerning Defendants' systems for storage and retrieval of e-mail and other electronically stored information.

- September to November 2009: Data from multiple sources concerning trading in TASER common stock and listed options for a six-and-one-half year period, as well as certain documents agreed upon by the parties.

- December 31, 2009: TASER-related e-mails spanning six-and-one-half years from approximately 560 custodians. These productions collectively totaled

---

[7] Plaintiffs' follow-up requests are often interlaced with unjustified accusations as to the propriety or accuracy of Defendants' responses, which has, of course, imposed additional burden on Defendants to further explain answers that were both proper and accurate in the first instance.

approximately 30 million pages.[8]

- 2010 (year to date): Non-TASER e-mails spanning six-and-one-half years from approximately 560 custodians. These productions have collectively totaled approximately 20.5 million pages.

(*See generally* Affidavits of Andrew J. Frackman, Brian L. Friedman, Jeffrey M. Gould, Brad E. Konstandt, Gregory A. Markel, Richard C. Pepperman, II, and Robert F. Wise, Jr.)

The parties are currently conferring with respect to the collection, review and production of *further* e-mail from additional custodians, trading personnel, for each Defendant. Defendants' agreement to search traders' e-mail, however, was expressly conditioned on Plaintiffs' identification of particular, presumably manipulative trades or time periods when such manipulation allegedly occurred, so as to limit the burden of the further search. (*See* Stipulation dated 8/12/09 ("[A]fter Plaintiffs have received and reviewed trading and other data, Plaintiffs will inform Defendants of specific trades, traders, trading and/or sales personnel, trading accounts, trading desks, or trading time frames for which they seek information as to traders.") Tellingly, Plaintiffs have failed to identify a single trade that satisfies that condition.

Also telling is that Plaintiffs have admitted that they profited from their holdings in TASER stock. On May 14, 2010, 41 of the individual Plaintiffs served answers to requests for admission propounded by Defendants, and 38 of the Plaintiffs admitted that they "realized a net gain" from their transactions in TASER stock. (*See* Individual Plaintiffs' RFA No. 8 Responses, Ex. T.) Plaintiffs' trading records support those admissions, showing that some Plaintiffs

---

[8] Certain Defendants reached agreement with Plaintiffs for an extension of time beyond December 31, 2009 and produced on an agreed-upon timetable in the first months of 2010. (Stipulation and Order Between Plaintiffs and Merrill Lynch Pierce, Fenner & Smith, Inc. and Banc of America Securities LLC (filed Jan. 13, 2010), Transaction No. 29007489; Stipulation and Order Between Plaintiffs and UBS Securities LLC (filed Dec. 21, 2009), Transaction No. 28606805 (extending deadline 3 weeks to Jan. 21, 2010); Stipulation and Order Between Plaintiffs and Deutsche Bank Securities, Inc., Transaction No. 28934322 (filed Jan. 11, 2010).) Bear Stearns also reached an agreement with Plaintiffs over email to extend the deadline.

profited through their transactions in TASER stock by as much as approximately fifty million dollars. Additionally, the trading records of two of the three Plaintiffs who denied that they profited on their investments in TASER stock show that they in fact did make money on those investments, and the third Plaintiff's records show that his aggregate losses from investing in TASER are less than fifty thousand dollars. Further, TASER itself has not produced any evidence that it sold, much less that it had any losses from selling, its own stock during the relevant period.

## LEGAL STANDARD

This Court has authority under O.C.G.A. § 9-11-26(c) to prevent precisely the type of burdensome discovery campaign Plaintiffs are conducting. Section 26(c) provides that "for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Georgia trial courts have "broad discretion in the control of discovery prior to trial, including the quashing of [discovery requests] and the grant of protective orders." *See, e.g., Am. Oil Co. v. Manpower, Inc.*, 124 Ga. App. 79, 79-80, 183 S.E.2d 95, 96 (1971). Georgia courts have used this authority to put a halt to discovery "used oppressively or to put opposing parties and counsel to unreasonable expense and trouble." *Id.* Georgia cases consistently hold that abusive discovery is antithetical to an "ordered system of justice," and that discovery may not be used as "a device for the unscrupulous litigant to squeeze concessions from the opposing side." *Borenstein v. Blumenfeld*, 151 Ga. App. 420, 421, 260 S.E.2d 377, 378 (1979); *A S. Outdoor Promotions, Inc. v. Nat'l Banner Co.*, 215 Ga. App. 133, 134–35, 449 S.E.2d 684, 686 (1994).

Likewise, federal courts have repeatedly held that a party's right to obtain discovery may be constrained where the court determines that the burden or expense of the proposed discovery

10

outweighs its likely benefit given the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.[9]  *See Dilley v. Metro. Life Ins. Co.*, 256 F.R.D. 643, 645 (N.D. Cal. 2009); *Collins v. J.C. Penney Life Ins. Co.*, No. 02-cv-0674-L, 2003 U.S. Dist. LEXIS 8455, at *4, *22 (S.D. Cal. May·5, 2003).  The burden of proposed discovery should not be evaluated in isolation, but rather should be considered within the context of the total cost of discovery to date.  *See, e.g., Jones v. Goord*, No. 95 Civ. 8026, 2002 U.S. Dist. LEXIS 8707, at *43–44 (S.D.N.Y. May 15, 2002).

Discovery is also not to be used as a "fishing expedition."  *Porter v. Ray,* 461 F.3d 1315, 1324 (11th Cir. 2006).  While standards for discovery are admittedly liberal, parties making requests must have some reasonable basis to believe that their requests will result in relevant evidence.  Courts furthermore require that parties exercise self-discipline in the service of even unambiguously relevant discovery requests, and courts have applied this principle to intervene in cases where the issues are complex and the right to liberal discovery unquestioned.  *See, e.g., In re U.S. Fin. Sec. Litig.*, 74 F.R.D. 497, 498 (S.D. Cal. 1975) (holding, in securities class action, that despite court's belief in "unfettered discovery of all materials relevant to the case . . . and that discovery need not be limited to facts admissible at trial," discovery requests still need to be "calculated to discover important facts rather than numerous and minor evidentiary details").

## ARGUMENT

Plaintiffs' ever-expanding discovery demands have now gone well beyond what is reasonably proportionate to the value of their claims.  Defendants have incurred extraordinary

---

[9] Because of the similarities between the Federal Rules of Civil Procedure and the Georgia rules, Georgia courts give "great weight to constructions placed on the Federal Rules by the federal courts." *Bicknell v. CBT Factors Corp.*, 171 Ga. App. 897, 898–99, 321 S.E.2d 383, 384–86 (1984) (citation omitted) (looking to federal rules for guidance on setting deposition location).

costs and burden in responding to discovery requests that have expanded, most recently with the June 10 discovery, into a general audit of Defendants' short selling and related trade settlement activities concerning *all* securities transactions over the better part of a decade, regardless of whether those activities had any effect on trading in TASER securities.  Such requests not only directly contradict Plaintiffs' express representation to the Court that expanding the scope of discovery to include "same or similar conduct" would *not* impose any additional burden on Defendants (*see* Reply in Support of Plaintiffs' Motion to Compel Production of Documents at 2 (filed Dec. 3, 2009), Transaction No. 28339005), but also have imposed extraordinary expense on Defendants that is not justified given that Plaintiffs have not identified any allegedly improper transactions by Defendants and have admitted that most of them actually *profited* from their investment in TASER stock.

## I.     Plaintiffs' Increasingly Expansive and Burdensome Discovery Demands Have Far Exceeded What Is Reasonably Proportionate to Their Claims

Courts have repeatedly held that the burden of discovery should not be assessed in isolation, but rather should be viewed in the context of (a) the total cost of discovery to date, and (b) the amount in controversy.  *See, e.g.*, *Jones*, 2002 U.S. Dist. LEXIS 8707, at *44. Defendants have already spent an extraordinary amount of time and millions of dollars in responding to Plaintiffs' never-ending discovery requests, even though 38 of 42 individual Plaintiffs admit to having *made money* from their trading of TASER stock during the alleged time period.  (*See* Individual Plaintiffs' RFA No. 8 Responses, Ex. T.)  Indeed, based on their transaction records, some of the individual Plaintiffs appear to have made many millions of dollars from their holdings in TASER stock, and TASER itself has never produced evidence that it sold its own stock at a loss.  Because Defendants have already incurred massive costs in

complying with Plaintiffs' unreasonable demands to date, allowing Plaintiffs to continue to pursue unfettered discovery would by itself constitute undue burden.  Moreover, the relatively small amount in controversy mitigates in favor of a far more focused discovery plan than the nearly boundless discovery that Plaintiffs are pursuing.  *Valderrama v. Nat'l Revenue Corp.*, No. CV-80-L-67, 1981 U.S. Dist. LEXIS 18627, at *20–21 (D. Neb. Sept. 28, 1981) (granting motion for protective order as to certain topics where the cost to search for requested information outweighed the benefits to be derived "*particularly in light of the amount in controversy*" (emphasis added)).

Plaintiffs no doubt will insist that the potential damages in this case justify the discovery they seek; but Plaintiffs cannot justify irrelevant and burdensome discovery by mere speculation. *See Miller v. Mut. of Omaha Ins. Co.*, No. 74-214-C5, 1977 U.S. Dist. LEXIS 16349, at *4–5 (D. Kan. Apr. 15, 1977) (upholding magistrate judge's limits on discovery where damage to plaintiff was limited but plaintiff sought expansive discovery in an attempt to prove that defendant's behavior was part of a larger pattern or practice, noting "we do not wish to allow a plaintiff to unjustifiably claim damages of millions, attempt discovery which is only tangential to the basic claim and that would cost hundreds of thousands of dollars to complete and thereby bludgeon a defendant . . . into settlement").

Plaintiffs' entitlement to discovery must operate within the constraints of reasonableness and proportionality to any actual damages Plaintiffs are likely to recover.  Approximately nine months after receiving millions of data entries reflecting Defendants' trading in TASER

securities, Plaintiffs' damages remain speculative and minimal, at best.[10]  Plaintiffs rely upon a

laundry list of attenuated theories of damage with little to no monetary value, such as

"interference with the ordinary and intended operation of [non-monetary stock] rights," which,

although deemed to satisfy their pleading burden, do not justify the additional scope of discovery

they now seek.[11]  Not surprisingly, Plaintiffs have yet to provide any factual examples of any

alleged "interference."  Given the admitted lack of value of their questionable claims, Plaintiffs

should not be permitted to persist in their ever-expanding, costly, burdensome and irrelevant

discovery requests that are completely out of proportion to the amount in controversy in this

case.

        In response, Plaintiffs have argued that their RICO allegations permit expansive

discovery and a more liberal measure of damages.  Such arguments, however, continue to be

entirely speculative.  To establish their RICO claims, Plaintiffs must prove *criminal* acts by

Defendants; yet their discovery demands, in particular the June 10 discovery, seek information

regarding regulatory and administrative infractions, none of which has ever been held by any

court anywhere to be criminal in nature.  Nor is it clear what damages, aside from nonexistent

---

[10] The 38 individual Plaintiffs that have admitted that they profited from their trading in TASER stock cannot claim damages under the Georgia Securities Act of 1973 ("GSA"), the operative securities law in Georgia during the period at issue in this case.  The GSA provides a formula for damages arising from violations of O.C.G.A. § 10-5-12, totaling "the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest." O.C.G.A. § 10-5-14(a) (2008).  For Plaintiffs that made money trading in TASER, the statutory formula would yield a negative result, meaning that they have not sustained any damages for purposes of the GSA.  Similarly, discovery to date has not produced any evidence that TASER itself sold its securities during the relevant periods.

[11] Perhaps recognizing the inherent weakness in their theory of damages, Plaintiffs relied on a theory of nominal damages in opposing Defendants' motion to dismiss.  (See Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint and, Alternatively, Motion for a More Definitive Statement at 32–35 (Jan. 9, 2009), Transaction No. 23243966.)  While nominal damages may suffice to establish a theory of damages and survive a motion to dismiss, its inclusion only highlights Plaintiffs' inability to articulate a theory of damages that is proportionate to the sweeping discovery they have sought from Defendants.

trading losses, Plaintiffs think they can recover under RICO even if they could prove that something Defendants did depressed TASER's stock price for some period of time.

RICO allegations do not open the door to unfettered fishing expeditions of the sort that Plaintiffs have repeatedly sought here. In *Koch v. Koch Industries*, No. 85-1636-C, 1991 U.S. Dist. LEXIS 16068, at *1 (D. Kan. Oct. 24, 1991), *aff'd*, 203 F.2d 1333 (10th Cir. 2000), for example, the court rejected such discovery in a case involving both common-law fraud and RICO claims because, as the magistrate judge had ruled, "the breadth of plaintiffs' discovery requests and their vague allegations of false representations reveal the plaintiffs' intent to fish through all of the defendants' records in the hope of finding claims to disparage the reputations of [the defendant] and its management." *Id.* at *20. Similarly, courts have rejected RICO allegations as license to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Palumbo v. Shulman*, No. 97 Civ. 4314, 1998 U.S. Dist. LEXIS 11467, at *14 (S.D.N.Y. July 24, 1998). It is exactly this kind of prohibited fishing expedition that Plaintiffs seek to pursue in this action.

## II.   Plaintiffs' June 10 Discovery Is Improper

The June 10 discovery contains three identical sets of questions, posed as deposition topics, interrogatories and requests for admission. (*See* June 10 Deposition Notice, Ex. A; June 10 Requests for Admission, Ex. B; June 10 Interrogatories, Ex. C.) Despite several conferrals, Plaintiffs have refused meaningfully to limit their demands. Indeed, while Plaintiffs agreed to postpone the depositions *sine die*, they remain pending. Further, while Plaintiffs purported to present a "narrowing" of the interrogatories on June 24, in reality, Plaintiffs' proposal did nothing to alleviate the burden associated with these demands, because they refused to limit the time frame or the scope of the topics in any meaningful way. Indeed, other than removing one

15

apparently duplicative topic (*see* E-mail from S. Rosenwasser to Defense Counsel (June 25, 2010), Affidavit of Robert F. Wise, Jr. (hereinafter "Wise Aff."), Ex. 1 (removing topic concerning "locates" but retaining topic seeking same information as to "affirmative determinations")), and offering a very *slight* narrowing of topic No. 1(a), neither of which has any meaning given Plaintiffs' refusal to restrict the duplicative Requests for Admission *at all*, Plaintiffs have left their demands untouched. This does not represent any kind of reasonable compromise.[12]

These demands make clear that, left unchecked, Plaintiffs will continue to interpose discovery requests that are facially improper, extraordinarily burdensome and duplicative of other requests. Such requests (and conduct) are well beyond what is appropriate and permissible in discovery.

A.    The June 10 Discovery Is Duplicative, Would Impose Substantial
and Undue Burden and Contradicts Plaintiffs' Prior
Representations to this Court

The June 10 discovery covers such expansive topics—many of which, to the extent even marginally relevant, have already been covered by Plaintiffs' prior discovery requests—that any limited benefit Plaintiffs may obtain from the answers is *far* outweighed by the burden and expense required to respond. *Collins v. J.C. Penney Life Ins. Co.*, No. 02 cv-0674-L, 2003 U.S. Dist. LEXIS 8455, at *22 (S.D. Cal. May 5, 2003) (denying motion to compel where the "burden and expense of [the plaintiff's] proposed discovery . . . outweighs its likely benefit").

---

[12] Defendants proposed what they believed to be a reasonable counterproposal on June 24, 2010, offering to produce witnesses from their compliance departments to testify as to the manner in which their compliance records with respect to failures to deliver and locates are maintained in an effort to demonstrate to Plaintiffs the kinds of records that Defendants *do* maintain that might be relevant to Plaintiffs' inquiry. (*See* E-mail from R. Wise to S. Rosenwasser (June 28, 2010), Wise Aff., Ex. 2.) In doing so, Defendants explained that they did not think that the June 10 discovery was appropriate and that if Plaintiffs would not withdraw or meaningfully amend the various requests, Defendants intended to file a motion for protective order prior to the response date. *Id.*

Significantly, the June 10 discovery seeks information as to *all* securities regarding any procedural or regulatory infraction, not just the "same or similar conduct" as to which Plaintiffs previously sought discovery and the Court previously permitted.  For example, even as narrowed in Plaintiffs' proposal, the June 10 Interrogatories demand that Defendants identify "each instance" in which they "failed to require a buy-in in accordance with [Defendants'] policies and procedures."  (*See* E-mail from S. Rosenwasser to Defense Counsel (June 25, 2010), Wise Aff., Ex. 1; *accord* June 10 Interrogatories No. 1(c), Ex. C.)  There are many rules and procedures that pertain to trading and short sales that could not conceivably be related to "abusive naked short selling."[13]  In making their previous motion for documents related to "same or similar conduct," Plaintiffs *assured* the Court that the "only question presented . . . is whether documents identified . . . that pertain to the improper short selling of non-TASER securities will be placed in the 'produce' pile or the 'nonresponsive' pile."  (Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Production of Documents at 7, Transaction No. 28339005)  In so arguing, Plaintiffs expressly represented to this Court that expanding discovery to capture "same or similar" conduct would not increase the burden on Defendants because any such relief would be limited to Defendants' review of documents that they had already agreed to review.  Now, however, Plaintiffs seek to distort that Order beyond all recognition by serving deposition notices, requests for admission, and requests for production that would impose upon Defendants the burden of identifying *any transaction* in *any security* over a *five-year period* in which a Defendant violated

---

[13] *See, e.g.*, legacy NASD Rule 6955 (order reporting requirements); 17 C.F.R. § 240.10a-1 (2004) (SEC "uptick rule") (removed 2007); NASD, NASD Manual Rule 3350 (NASD "uptick rule") (Nov. 2003) (renumbered as Rule 5100 in 2006 and removed in 2007); NYSE, Inc., The Official Constitution and Rules of the New York Stock Exchange Rule 440B (NYSE "uptick rule") (Aug. 2003) (amended 2004).

17

any internal policy, regulation or rule regarding locates, failures to deliver, closeouts and the like. Such tactics should not be tolerated.

Nor does Plaintiffs' purported limitation that "Defendants are not required to conduct an audit" (June 10 Interrogatories, Ex. C; *accord* June 10 Requests for Admission, Ex. B; June 10 Deposition Notice, Ex. A) lessen this burden.[14] The interrogatories require Defendants to identify every single violation "learned through internal surveillance, monitoring, supervising or reporting, as well as violations learned through regulatory investigations, inquiries, decisions, letters and/or findings." (June 10 Interrogatories, Ex. C.) According to Plaintiffs, this should be done "through a review of available records and discussions with appropriate personnel" within each Defendants' compliance department. In other words, Plaintiffs demand that Defendants effectively perform the very audit and investigation they purport to abjure.

Defendants have advised Plaintiffs that they do not maintain centralized records cataloguing each and every instance (if any) of potential variances from its policies for every single security going back through a five-year historical period. (*See* Wise Aff. ¶ 6.) Rather, Defendants use multiple procedures to conduct extensive "internal surveillance, monitoring, supervising or reporting," including, but certainly not limited to, potentially dozens of different reports and e-mail correspondence. (*See id.* ¶ 7.) And the mere presence of a trade on a report so generated does not necessarily mean that the trade constitutes a violation. Accordingly,

_____

[14] Plaintiffs purport to limit the questions to so-called "known" violations about which Defendants are "currently aware," and not to require Defendants "to conduct an audit or investigation of trades that have not previously been investigated by the relevant groups or personnel in Defendants' compliance departments." (June 10 Interrogatories, Instruction No. 7, Ex. C.) Plaintiffs imported this language from the May 7, 2010 stipulation in which Defendants agreed to respond to Plaintiffs' Amended Second Interrogatories with regard to "known violations." (May 7, 2010 Stipulation and Order at 7–8, Transaction No. 31000620.) Plaintiffs then engrafted "clarifying" language referencing "internal surveillance, monitoring, supervising or reporting," which completely undermines the proposition that Defendants are not required to conduct an audit.

Plaintiffs' request could be construed to require Defendants to examine every single such report generated for a five-year period to determine whether any "violations" were identified thereon—in essence, to conduct an "audit."

The undue burden that these requests would occasion is not justifiable, especially because the subjects covered by the requests, to the extent relevant, are duplicative in significant measure of previously answered requests.  Following extensive negotiations, Defendants have now answered interrogatories seeking information concerning failures to deliver (from 2003 through May 31, 2009) that are duplicative of the instant requests.  (*Compare* Plaintiffs' Second Amended Interrogatories Nos. 5(i)–5(j), *with* June 10 Interrogatories, Nos. 1(a)–1(d), Ex. C.)  Likewise, Plaintiffs have asked for extensive information concerning violations related to failures to deliver, affirmative determinations, and the locate requirement of Regulation SHO, for which Defendants were censured, fined or otherwise sanctioned, the very topics featured in Plaintiffs' June 10 discovery.  (*Compare* Plaintiffs' First Requests for Production of Documents, Request Nos. 41–43, 47, Third Set of Interrogatories to All Defendants Except UBS, Fourth Set of Interrogatories to UBS, *and* Plaintiffs' Notice to Take O.C.G.A. § 9-11-30(b)(6) Deposition of All Defendants (served May 28, 2010), Transaction No. 31566363 *with* June 10 Interrogatories, *passim,* Ex. C)

Moreover, Defendants have already provided Plaintiffs with extensive discovery—well over 50 million pages of documents, including Excel files produced natively—on the topics covered by the June 10 discovery.  Defendants have also already provided Plaintiffs with their policies and procedures governing these topics.  Defendants should not now be forced to undertake the burden and expense of analyzing five years of reports and trading records in every security in which they transacted—records that are largely in the possession of Plaintiffs—on the

19

basis of rules and standards that have also already been provided to Plaintiffs. This is particularly true given that Plaintiffs thus far have not identified a single allegedly illegal transaction that they claim to have caused them harm.

    B.    <u>The June 10 Discovery Is Objectionable in Form</u>

        Plaintiffs' June 10 Deposition Notice is an improper use of a 30(b)(6) deposition as a discovery device because *every topic* seeks information that amounts to nothing more than a recitation of objective facts that would better be provided in response to an interrogatory. Indeed, the notice reads like a set of interrogatories, asking Defendants to "please identify" either "each instance in which" or "each short sale in which," where "identify" is defined as "stating the security involved, date of the instance whether the violation involved a proprietary or client/customer trade (and if the latter, the customer's name and account number)." (June 10 Deposition Notice, *passim*.) Preparing a 30(b)(6) witness is an expensive and burdensome process, and it is an improper use of discovery to ask Defendants to provide a corporate designee for the purpose of sitting in a room and reading from prepared notes. *See Gossar v. Soo Line R.R. Co.*, No. 3:09-cv-9-RLY-WGH, 2009 U.S. Dist. LEXIS 100931, at *13 (S.D. Ind. Oct. 27, 2009) (issuing protective order for topics where "30(b)(6) is not the most convenient manner for discovering" the information sought); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98-C-3952, 2000 U.S. Dist. LEXIS 667, at *29 (N.D. Ill. Jan. 21, 2000) (denying motion to compel upon finding 30(b)(6) deposition an "inefficient means through which to obtain . . . information," and noting, "[d]efendants could readily have obtained the same information in a more efficient manner by propounding 'standard' interrogatories upon its opponent"). There is *no topic* noticed that requires anything more than a recitation of facts. This is not the use for which 30(b)(6) depositions were intended.

Likewise, Plaintiffs' interrogatories repeat verbatim the "topics" from the deposition notice. This repetition was evidently by design, as Plaintiffs' counsel explained at the time the June 10 discovery was served:

> We requested the information two different ways in order to offer you the option as to which means of discovery you would like to provide it (i.e., we are trying to make this as efficient and convenient as possible). We do not intend on seeking it in duplicative ways, and would like to meet and confer as to which discovery method you would prefer to provide the information (e.g., if you provide it by interrogatory (*without objections*), we will withdraw the deposition).

(E-mail from S. Rosenwasser to Defense Counsel (June 10, 2010) (emphasis added), Wise Aff., Ex. 3.) Plaintiffs articulated this offer again during two telephone conferrals on June 24, 2010 and July 9, 2010 and in e-mail messages memorializing those conferrals. (*See* E-mail from S. Rosenwasser to Defense Counsel (June 29, 2010), Wise Aff., Ex. 4; E-mail from S. Rosenwasser to R. Wise, E. Eager, M. Aoyagi (July 9, 2010), Wise Aff., Ex. 5.) Defendants are aware of no precedent permitting a party to use service of an inappropriate discovery request—here, a 30(b)(6) Notice—to gain leverage to compel an opposing party to waive its right to object to another discovery request. As noted above, Georgia courts recognize that discovery *may not be used* as "a device for the unscrupulous litigant to squeeze concessions from the opposing side." *Borenstein*, 151 Ga. App. at 421, 260 S.E.2d at 378.

Finally, Plaintiffs' requests for admission again seek the same information requested by the June 10 Deposition Notice and the June 10 Interrogatories. Indeed, regardless of whether Defendants had accepted Plaintiffs' proposal, as outlined above, Plaintiffs insisted on responses to their requests for admission, which pose essentially the very same questions. The burden of responding to multiple discovery requests seeking the same information is not justifiable.

21

### III.   Plaintiffs Should Not Be Permitted to Serve Further Written Discovery Without Good Cause

In light of the foregoing, not only should the June 10 discovery be quashed, but Plaintiffs should be required to seek judicial approval prior to serving further written discovery requests. Defendants are not attempting to interfere with Plaintiffs' acknowledged right to broad discovery. To the contrary, Defendants have, to date, attempted to accommodate Plaintiffs' increasingly unreasonable discovery demands. But Plaintiffs' recent round of demands is merely the latest in a long line of abusive, objectionable requests and practices, and it is now apparent that, without judicial supervision, Plaintiffs' discovery offensive will completely spiral out of control.

By way of example, on May 6, 2010, a mere five weeks before serving the June 10 discovery, Plaintiffs served Defendants with a request for "any documents constituting, referring to or relating to any self-evaluation, self-review or other similar document wherein each custodian evaluated, reflected upon or summarized his or her performance." (Plaintiffs' Sixth Requests for the Production of Documents to Defendants Banc of America Securities, LLC and Merrill Lynch and Fifth Requests for the Production of Documents as to the Remaining Defendants.) Confronted with Defendants' entirely reasonable response that such information had no bearing upon allegations in this case—namely, that Defendants engaged in and facilitated improper short sales of TASER stock—Plaintiffs responded that it was possible that such reviews contained references to the profitability of short selling and/or that they might reflect knowledge of potential or actual violations of the securities laws. (E-mail from S. Rosenwasser to Defense Counsel (June 8, 2010), Wise Aff. Ex. 6.) Such a response betrays an utter lack of understanding of the purpose and proper use of discovery devices. Discovery is not to be used as

22

a "mere fishing expedition." *Bean v. State Farm Fire & Cas. Ins. Co.*, No. 75-21-C5, 1977 U.S. Dist. LEXIS 16317, at *6–10, *15 (D. Kan. Apr. 18, 1977). The mere fact that Plaintiffs can imagine some possibility or create some hypothetical that a particular request might yield some piece of information that may be relevant to their case is not sufficient to justify imposition of the burden of production upon Defendants. Yet, these are the kinds of requests that Plaintiffs have repeatedly served.

It is simply not the case, as Plaintiffs contend, that every request that might possibly produce relevant information is automatically permitted. As noted above, requests need not be *wholly irrelevant* to warrant judicial intervention. *See In re U.S. Fin. Sec. Litig.*, 74 F.R.D. 497, 498 (S.D. Cal. 1975) (ordering a party to "serve and file interrogatories *reasonable in number* [and] calculated to discover *important facts* rather than numerous and minor evidentiary details." (emphasis added)). It is Plaintiffs' obligation to decide which facts are most important to their case and to serve discovery requests reasonably tailored to discover those facts. Plaintiffs have shown themselves unwilling to abide by this obligation. Instead, they persist in a pattern of abusive discovery that places undue burden on Defendants by forcing Defendants to endlessly pursue information that is obtained only at high cost to Defendants and that is of only attenuated (if of any) relevance to this case.

Courts have not hesitated to step in where the burden and expense of discovery have outweighed its likely benefit, *see, e.g., Collins v. J.C. Penney Life Ins. Co.*, No. 02 cv-0674-L, 2003 U.S. Dist. LEXIS 8455, at *22–23 (S.D. Cal. May 5, 2003); *Dilley v. Metro Life Ins. Co.*, 256 F.R.D. 643, 644-45 (N.D. Cal. 2009), or where, as here, the cumulative burden of discovery requests has simply exceeded the bounds of reasonableness, *see Kay Beer Distrib., Inc. v. Energy Brands, Inc.*, No. 07-C-1068, 2009 U.S. Dist. LEXIS 17733, at *17 (E.D. Wis. Feb. 20, 2009).

Plaintiffs already have served and Defendants already have responded to multiple document requests, interrogatories and requests for admission.  With all of this, Plaintiffs have had a more than fair and adequate opportunity by this time to obtain the documents and written responses they need from Defendants and cannot be heard to complain that reasonable restrictions on their demands for yet more will prejudice their ability to prepare for trial.  The time has come for this case to proceed to depositions and dispositive motions without further expansion of written discovery and without the burden to the Court or Defendants of having to address endless demands by Plaintiffs for yet more and more mostly irrelevant or duplicative information.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion for Protective Order (a) quashing the June 10 discovery, and (b) barring Plaintiffs from serving further written discovery requests without first obtaining leave of the Court.

## RULE 6.4 CERTIFICATE

Pursuant to Uniform State Court Rule 6.4, counsel for Defendants hereby certifies that prior to filing the foregoing DEFENDANTS' MOTION FOR PROTECTIVE ORDER WITH RESPECT TO PLAINTIFFS' JUNE 10, 2010 DISCOVERY AND MEMORANDUM IN SUPPORT THEREOF, counsel for Defendants conferred with counsel for Plaintiffs in a good-faith effort to resolve the matters involved in the motion, but Defendants' efforts failed.

Dated: July 19, 2010

Richard H. Sinkfield
Georgia Bar No. 649100
Dan F. Laney
Georgia Bar No. 435290

*Attorneys for Defendants Morgan Stanley &
Co. Incorporated; Goldman, Sachs & Co.;
Goldman Sachs Execution & Clearing, L.P.;
Bear, Stearns & Co. Inc. k/n/a/ JP Morgan
Securities, Inc.; Bear Stearns Securities Corp.
k/n/a/ JP Morgan Clearing Corp.; Merrill
Lynch, Pierce, Fenner & Smith, Inc.; Deutsche
Bank Securities Inc.; Credit Suisse Securities
(USA) LLC; Banc of America Securities LLC;
and UBS Securities, LLC*

ROGERS & HARDIN LLP
2700 International Tower
  Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA 30303-1601
Phone:  404-522-4700
Fax:  404-525-2224

Robert F. Wise, Jr.
Admitted Pro Hac Vice
William J. Fenrich
Admitted Pro Hac Vice
Melissa Aoyagi
Admitted Pro Hac Vice

*Attorneys for Defendant Morgan Stanley & Co.
Incorporated.*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Phone:  212-450-4000
Fax:  212-701-5800

Richard H. Klapper
Admitted Pro Hac Vice
Richard C. Pepperman, II
Admitted Pro Hac Vice
Tracy Richelle High
Admitted Pro Hac Vice

*Attorneys for Defendants Goldman, Sachs &
Co. and Goldman Sachs Execution &
Clearing, L.P.*

SULLIVAN & CROMWELL LLP

25

125 Broad Street
New York, NY 10004-2498
Phone: 212-558-4000
Fax: 212-558-3588

Stephen L. Ratner
Admitted Pro Hac Vice
Brian L. Friedman
Admitted Pro Hac Vice

*Attorneys Defendants Bear, Stearns & Co.,
Inc. k/n/a/ JP Morgan Securities, Inc. and Bear
Stearns Securities Corp. k/n/a/ JP Morgan
Clearing Corp.*

PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Phone: 212-969-3000
Fax: 212-969-2900

Gregory A. Markel
Admitted Pro Hac Vice
Martin L. Seidel
Admitted Pro Hac Vice
Peter J. Isajiw
Admitted Pro Hac Vice
Heather L. Fesnak
Admitted Pro Hac Vice

*Attorneys for Defendant Deutsche Bank
Securities Inc.*

CADWALADER, WICKERSHAM &
   TAFT LLP
One World Financial Center
New York, NY 10281
Phone: 212-504-6000
Fax: 212-504-6666

Fraser L. Hunter, Jr.
Admitted Pro Hac Vice

*Attorney for Defendant Credit Suisse (USA)
Inc.*

WILMER CUTLER PICKERING HALE
   AND DORR LLP
399 Park Avenue

26

New York, NY 10022
Phone: 212-230-8800
Fax: 212-230-8888

Andrew J. Frackman
Admitted Pro Hac Vice

*Attorneys for Defendants Banc of America
Securities LLC and Merrill Lynch, Pierce,
Fenner & Smith, Inc.*

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Phone: 212-326-2000
Fax: 212-326-2061

Andrew B. Clubok
Admitted Pro Hac Vice
Jeffrey G. Landis
Admitted Pro Hac Vice
Jeffrey M. Gould
Admitted Pro Hac Vice

*Attorneys for Defendant UBS Securities, LLC*

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Phone: 202-879-5000
Fax: 202-879-5200

27

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

TASER INTERNATIONAL, INC.,
*et al.,*

               Plaintiffs,

v.

MORGAN STANLEY & CO., INC.,
*et al.,*

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION FILE NO.

2008-EV-004739-B

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2010, a true and correct copy of the foregoing DEFENDANTS' MOTION FOR PROTECTIVE ORDER WITH RESPECT TO PLAINTIFFS' JUNE 10, 2010 DISCOVERY AND MEMORANDUM IN SUPPORT THEREOF, as well as the supporting affidavits and exhibits in support of the Motion, were served via electronic filing with the Clerk of Court using the Court's electronic filing system, which will automatically send an e-mail notification of such filing to the following attorneys of record, who are registered participants in the Court's electronic filing system:

John E. Floyd, Esq.
Steven J. Rosenwasser, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309;

and via U.S. Mail postage prepaid and addressed to the following attorney of

record:

      James W. Christian, Esq.
      Christian, Smith & Jewell LLP
      2302 Fannin, Suite 500
      Houston, Texas 77002

      This 19th day of July, 2010.

                                    James W. Cobb
                                    Georgia Bar No. 420133

ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303-1601
Tel.   (404) 522-4700
Fax   (404) 525-2224

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32215379
Date:  Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit A

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,      :
*et al.*,                       :
                                :
           Plaintiffs,          :      CIVIL ACTION
                                :      FILE NO.: 2008-EV-004739-B
v.                              :
                                :
MORGAN STANLEY & CO., INC.,     :      JURY TRIAL DEMANDED
*et al.*,                       :
                                :
           Defendants.          :

## NOTICE TO TAKE O.C.G.A. § 9-11-30(b)(6) DEPOSITIONS OF ALL DEFENDANTS

**TO:  Attorneys for Defendants:**
       Richard H. Sinkfield, Esq.
       Rogers & Hardin
       2700 International Tower, Peachtree Center
       229 Peachtree Street, N.E.
       Atlanta, GA  30303-1601

**COME NOW** plaintiffs in the above-referenced matter pursuant to

O.C.G.A. § 9-11-30(b)(6) and notice the deposition of an individual designated by

DEFENDANTS MORGAN STANLEY & CO., INC., GOLDMAN, SACHS &

CO., GOLDMAN SACHS EXECUTION & CLEARING, L.P. ("GOLDMAN

SACHS"), BEAR STEARNS & CO, INC., K/N/A/ JP MORGAN SECURITIES,

INC., BEAR STEARNS SECURITIES CORP., K/N/A JP MORGAN CLEARING

CORP. ("BEAR STEARNS"), MERRILL LYNCH, PIERCE, FENNER &

SMITH, INC., DEUTSCHE BANK SECURITIES, INC., CREDIT SUISSE

SECURITIES (USA) LLC, BANC OF AMERICA SECURITIES, LLC, UBS

SECURITIES, LLC to testify about the matters identified on Exhibit A attached

hereto.  The depositions will take place:

(1)    Morgan Stanley & Co., Inc. – July 6, 2010 at 9:00 a.m.

(2)    Goldman, Sachs – July 6, 2010 at 1:30 p.m.

(3)    Bear Stearns – July 7, 2010 at 9:00 a.m.

(4)    Merrill Lynch, Pierce, Fenner & Smith, Inc. – July 7, 2010 at 1:30 p.m.

(5)    Deutsche Bank Securities, Inc. – July 8, 2010 at 9:00 a.m.

(6)    Credit Suisse Securities (USA) LLC – July 8, 2010 at 1:30 p.m.

(7)    Banc of America Securities, LLC – July 9, 2010 at 9:00 a.m.

(8)    UBS Securities, LLC – July 9, 2010 at 1:30 p.m.

The depositions will be at the offices of Rogers & Hardin, 2700 International

Tower, Peachtree Center, 229 Peachtree Street, N.E., Atlanta, GA  30303, or at

such other time and place as may be mutually agreed upon by the parties.  The

depositions will take place before a court reporter authorized to administer oaths in

the State of Georgia and before a videographer.  The depositions will be taken for

all purposes allowable under the Georgia Civil Practice Act.

774013.1

Respectfully submitted this 10th day of June, 2010.

/s/ Steven J. Rosenwasser
John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax

James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas  77002
(713) 659-7617 Tel.
(713) 659-7641 Fax
(admitted pro hac vice)

774013.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing

**NOTICE TO TAKE O.C.G.A. § 9-11-30(b)(6) DEPOSITIONS OF ALL**

**DEFENDANTS** was served on the following counsel of record electronically via

Lexis File & Serve:

        **Attorneys for Defendants:**
        Richard H. Sinkfield, Esq.
        Rogers & Hardin
        2700 International Tower, Peachtree Center
        229 Peachtree Street, N.E.
        Atlanta, GA  30303-1601

        **Attorneys for Banc of America Securities, LLC:**
        Andrew J. Frackman, Esq.
        O'Melveny & Myers LLP
        7 Times Square
        New York, NY  10036

        **Attorneys for Morgan Stanley & Co. Incorporated:**
        Robert F. Wise, Jr., Esq.
        William J. Fenrich, Esq.
        Melissa T. Aoyagi, Esq.
        Davis Polk & Wardwell LLP
        450 Lexington Avenue
        New York, NY  10017

        **Attorneys for Bear Stearns:**
        Stephen L. Ratner, Esq.
        Harry Frischer, Esq.
        Brian L. Friedman, Esq.
        Proskauer Rose LLP
        1585 Broadway
        New York, NY  10036

774013.1

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022

774013.1

**Attorneys for Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
Paul M. Eckles, Esq.
Shepard Goldfein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY  10036

Richard S. Horvath, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center
Suite 3800
San Francisco, CA  94111-4144

This 10th day of June, 2010.


/s/ Steven J. Rosenwasser
Steven J. Rosenwasser
Georgia Bar No. 614908

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA  30309-3417
Telephone (404) 881-4100
Facsimile (404) 881-4111

774013.1

## EXHIBIT A

## Instructions

For these depositions, Plaintiffs request that Defendants answer the following questions to the extent they are <u>currently</u> aware of responsive information.  Defendants' responses may be limited to information obtained from the relevant groups or personnel within their compliance department (through a review of available records and discussions with appropriate personnel) concerning instances in which the Defendant <u>already has identified or learned</u> of a known violation of applicable securities laws or internal rules, policies or procedures.  This includes, but is not limited to, violations learned through internal surveillance, monitoring, supervising or reporting, as well as violations learned through regulatory investigations, inquiries, decisions, letters and/or findings.  For purposes of defining current awareness, Defendants are not required to conduct an audit or investigation of trades that have not previously been investigated by the relevant groups or personnel in Defendants' compliance departments.

1.   For each year from 2004 through 2008, please Identify (as that term is defined below):

    a.   Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO; and

774013.1

b.    Each instance in which you failed to deliver a security in the time period required by your own rules, policies and procedures;[1]

c.    Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;

d.    Each instance in which you failed to close out a failure to deliver position as required by your own rules, policies;[2]

e.    Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3] and

f.    Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

For purposes of this Notice, Identify shall mean stating the security involved, date of the instance, whether the violation involved a proprietary or client/customer trade (and if the latter, the customer's name and account number), and, for Topic No. 1(a), a brief description of the conduct involved and the rule or regulation that was violated.

---

[1] For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.

[2] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

[3] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

774013.1

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date:  Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit B

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,    :
*et al.*,                     :
                             :
      Plaintiffs,        :        CIVIL ACTION
                             :        FILE NO.: 2008-EV-004739-B
v.                            :
                             :
MORGAN STANLEY & CO., INC.,   :        JURY TRIAL DEMANDED
*et al.*,                     :
                             :
      Defendants.        :

## PLAINTIFFS' FOURTH REQUESTS FOR ADMISSION TO ALL DEFENDANTS EXCEPT GOLDMAN SACHS AND FIFTH REQUESTS FOR ADMISSION TO GOLDMAN SACHS

Pursuant to O.C.G.A. § 9-11-26 and O.C.G.A. § 9-11-36, Plaintiffs hereby serve the following requests for admission, requesting that each of the Defendants provide responses within 30 days to Plaintiffs at the offices of Bondurant, Mixson & Elmore, 1201 West Peachtree Street, N.W., Suite 3900, Atlanta, Georgia 30309.

### Definitions and Instructions

1.    "You", "Your" or "Yourself" designates the Defendant responding to the First Requests for Admission and includes any parents, subsidiaries, divisions, affiliates, predecessors, assigns or successors, and of their present or former officers, directors, trustees, employees, agents, representatives, attorneys and/or other persons acting on their behalf.

773868.1

2.      "Proprietary account" refers to any account for which You, at the relevant time, had at least a 50.1% ownership or control over the trading decisions of the account.  This includes trading for Yourself or taking a position on behalf of or for Your clients (if Your answer differs as between the two, please so indicate in Your response).

3.      Plaintiffs request that Defendants answer these requests to the extent they are <u>currently</u> aware of responsive information.  Defendants' responses may be limited to information obtained from the relevant groups or personnel within their compliance department (through a review of available records and discussions with appropriate personnel) concerning instances in which the Defendant <u>already has identified or learned</u> of a known violation of applicable securities laws or internal rules, policies or procedures.  This includes, but is not limited to, violations learned through internal surveillance, monitoring, supervising or reporting, as well as violations learned through regulatory investigations, inquiries, decisions, letters and/or findings.  For purposes of defining current awareness, Defendants are not required to conduct an audit or investigation of trades that have not previously been investigated by the relevant groups or personnel in Defendants' compliance departments.

## Requests for Admission

### 1.

In 2004, you violated NASD Rule 3370 with respect to at least one short sale in a proprietary account.

### 2.

In 2004, you violated UPC71 with respect to at least one short sale in a proprietary account.

### 3.

In 2005, you violated Regulation SHO with respect to at least one short sale for a proprietary account.

### 4.

In 2006, you violated Regulation SHO with respect to at least one short sale for a proprietary account.

### 5.

In 2007, you violated Regulation SHO with respect to at least one short sale for a proprietary account.

### 6.

In 2008, you violated Regulation SHO with respect to at least one short sale for a proprietary account.

7.

In 2009, you violated Regulation SHO with respect to at least one short sale for a proprietary account.

8.

In 2005, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

9.

In 2006, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

10.

In 2007, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

11.

In 2008, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

12.

In 2009, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

13.

In 2005, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

14.

In 2006, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

15.

In 2007, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

16.

In 2008, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

17.

In 2009, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

18.

In 2005, you failed to require a buy-in as required by Regulation SHO.

19.

In 2006, you failed to require a buy-in as required by Regulation SHO.

20.

In 2007, you failed to require a buy-in as required by Regulation SHO.

21.

In 2008, you failed to require a buy-in as required by Regulation SHO.

22.

In 2009, you failed to require a buy-in as required by Regulation SHO.

23.

In 2005, you failed to close out at least one failure to deliver position as required by Regulation SHO.

24.

In 2006, you failed to close out at least one failure to deliver position as required by Regulation SHO.

25.

In 2007, you failed to close out at least one failure to deliver position as required by Regulation SHO.

26.

In 2008, you failed to close out at least one failure to deliver position as required by Regulation SHO.

27.

In 2009, you failed to close out at least one failure to deliver position as required by Regulation SHO.

Respectfully submitted, this 10th day of June, 2010.

John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Michael A. Caplan
Georgia Bar No. 601039
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
(404) 881-4100


James W. Christian
State Bar No. 04228700
Christian, Smith & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas 77002
(713) 659-7617
*Pro hac vice*

**ATTORNEYS FOR PLAINTIFFS**

773868.1

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, a true and correct copy of

the foregoing PLAINTIFFS' FOURTH REQUESTS FOR ADMISSION TO ALL

DEFENDANTS EXCEPT GOLDMAN SACHS AND FIFTH REQUESTS FOR

ADMISSION TO GOLDMAN SACHS was served via Email and hand delivery to

the following:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601

and via U.S. Mail to:

> **Attorneys for Banc of America Securities, LLC:**
> Andrew J. Frackman, Esq.
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY  10036

> **Attorneys for Morgan Stanley & Co. Incorporated:**
> Robert F. Wise, Jr., Esq.
> William J. Fenrich, Esq.
> Melissa T. Aoyagi, Esq.
> Davis Polk & Wardwell
> 450 Lexington Avenue
> New York, NY  10017

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

773868.1

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

**Attorneys for Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
Paul M. Eckles, Esq.
Shepard Goldfein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036

Richard S. Horvath, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcedero Center
Suite 3800
San Francisco, CA 94111-4144


This 10th day of June, 2010.


Steven Rosenwasser
Georgia Bar No. 614908

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3417
Tel.: (404) 881-4100
Fax: (404) 881-4111

773868.1

10

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date:  Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit C

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,   :
*et al.*,                           :
                              :
        Plaintiffs,           :    CIVIL ACTION
                              :    FILE NO.: 2008-EV-004739-B
v.                            :
                              :
MORGAN STANLEY & CO., INC., : JURY TRIAL DEMANDED
*et al.*,                           :
                              :
        Defendants.           :

## PLAINTIFFS' FIFTH INTERROGATORIES TO ALL DEFENDANTS EXCEPT UBS AND SIXTH INTERROGATORIES TO UBS

Pursuant to O.C.G.A. § 9-11-26 and O.C.G.A. § 9-11-33, Plaintiffs hereby

serve the following interrogatories, requesting that each of the Defendants

individually respond to the following Interrogatories within thirty days to the

offices of Bondurant, Mixson & Elmore, 1201 W. Peachtree St., Suite 3900,

Atlanta, Georgia 30309.

### Definitions

1.    "You" or "your" designates the Defendant responding to the

Interrogatories and includes any parents, subsidiaries, divisions, affiliates,

predecessors, assigns or successors, and of their present or former officers,

directors, trustees, employees, agents, representatives, attorneys and/or other

persons acting on their behalf.

773827.1

2.      "Security" or "Securities" mean any note, common stock, preferred stock, treasury stock, put, call, straddle, option, bond, debenture, evidence of indebtedness, transferable share, investment contract or, in general, any interest or instrument commonly known as a "security."

## Instructions

1.      Each interrogatory herein shall be construed independently and shall not be limited by reference to any other interrogatory.

2.      When an interrogatory does not specifically request a particular fact, but such fact is necessary in order to make the answer to the interrogatory either comprehensible, complete, or not misleading, you are to include such fact as part of the answer and the interrogatory shall be deemed specifically to request such fact.

3.      When, after a reasonable investigation using due diligence, you are unable to answer any interrogatory or any part thereof because of lack of information available to you, specify in detail the type of information which you claim is not available, the reason the information is not available to you, and what you have done to locate such information.  In addition, specify what knowledge or belief you have concerning the unanswered portion of the interrogatory, set forth the facts upon which such knowledge or belief is based, and identify, the person who has or is likely to have the information which you claim is not available.

773827.1

4.    When an interrogatory asks for specific information, as for example, a date, identify the information precisely, if known.  If the precise date or other specific information is unknown to you or your agents, you are to give your best approximation of the information requested, provided that you indicate in your response that the information being provided is an approximation and is incomplete in certain specific respects.  Also identify any person who may be able to provide the exact or complete information requested.

5.    The interrogatories shall be deemed continuing in nature.  With respect to any of the following interrogatories as to which you, after answering, acquire additional information or documents, you are asked to serve on the undersigned further answers to such interrogatories and produce any additional responsive documents immediately after acquiring the additional information or documents.

6.    If you refuse to answer any interrogatory in whole or in part, describe the basis for your refusal to answer, including any claim of privilege or work product, in sufficient detail to permit the court to adjudicate the validity of your refusal, and identify each document and oral communication for which a privilege is claimed.

7.    **Plaintiffs request that Defendants answer these interrogatories to the extent they are <u>currently</u> aware of responsive information.  Defendants'**

responses may be limited to information obtained from the relevant groups or personnel within their compliance department (through a review of available records and discussions with appropriate personnel) concerning instances in which the Defendant <u>already has identified or learned</u> of a known violation of applicable securities laws or internal rules, policies or procedures. This includes, but is not limited to, violations learned through internal surveillance, monitoring, supervising or reporting, as well as violations learned through regulatory investigations, inquiries, decisions, letters and/or findings. For purposes of defining current awareness, Defendants are not required to conduct an audit or investigation of trades that have not previously been investigated by the relevant groups or personnel in Defendants' compliance departments.

<u>Interrogatories</u>

1.    For each year from 2004 through 2008, please Identify (as that term is defined below):

    a.    Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO; and

    b.    Each instance in which you failed to deliver a security in the time period required by your own rules, policies and procedures;[1]

---

[1] For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.

c.  Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;

d.  Each instance in which you failed to close out a failure to deliver position as required by your own rules, policies;[2]

e.  Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3] and

f.  Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

For purposes of this Interrogatory, Identify shall mean stating the security involved, date of the instance, whether the violation involved a proprietary or client/customer trade (and if the latter, the customer's name and account number), and, for Interrogatory No. 1(a), a brief description of the conduct involved and the rule or regulation that was violated.

In order to avoid any claim of burden, please see Instruction 7 above.

---

[2] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211.  Thus, there should be no issue as to their clarity.
[3] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211.  Thus, there should be no issue as to their clarity.

773827.1

Respectfully submitted this 10th day of June, 2010.

John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No: 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax

James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas  77002
(713) 659-7617 Tel.
(713) 659-7641 Fax
(admitted pro hac vice)
***ATTORNEYS FOR PLAINTIFFS***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused to be served a true and correct copy of the foregoing **PLAINTIFFS' FIFTH INTERROGATORIES TO ALL DEFENDANTS EXCEPT UBS AND SIXTH INTERROGATORIES TO UBS** via hand delivery to:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601

and via U.S. Mail to:

> **Attorneys for Banc of America Securities, LLC:**
> Andrew J. Frackman, Esq.
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY  10036

> **Attorneys for Morgan Stanley & Co. Incorporated:**
> Robert F. Wise, Jr., Esq.
> William J. Fenrich, Esq.
> Melissa T. Aoyagi, Esq.
> Davis Polk & Wardwell
> 450 Lexington Avenue
> New York, NY  10017

> **Attorneys for Bear Stearns:**
> Stephen L. Ratner, Esq.
> Harry Frischer, Esq.
> Brian L. Friedman, Esq.
> Proskauer Rose LLP
> 1585 Broadway
> New York, NY  10036

773827.1

7

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022

**Attorneys for Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
Paul M. Eckles, Esq.
Shepard Goldfein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY  10036

Richard S. Horvath, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcedero Center
Suite 3800
San Francisco, CA  94111-4144


This 10th day of June, 2010.

Steven Rosenwasser
Georgia Bar No. 614908

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA  30309-3417
Tel.: (404) 881-4100
Fax: (404) 881-4111

773827.1

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date:  Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit D

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,
*et al.*,

      Plaintiffs,

v.

MORGAN STANLEY & CO., INC.,
*et al.*,

      Defendants.

Civil Case No.
2008-EV-004739-B

## BANC OF AMERICA SECURITIES LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FOURTH REQUESTS FOR ADMISSIONS

Defendant Banc of America Securities LLC ("BAS") hereby responds to Plaintiffs'

Fourth Requests for Admission to All Defendants Except Goldman Sachs and Fifth Requests for

Admission to Goldman Sachs (the "Requests").

At the outset, BAS notes that it has already produced to Plaintiffs over seven million

pages of documents and hundreds of gigabytes of data, including hundreds of thousands of data

entries concerning trading in TASER securities.  BAS also has provided a significant volume of

information in response to Plaintiffs' numerous previous interrogatories, requests for admission

and informal discovery requests.  Notwithstanding these facts, Plaintiffs seek through these

Requests to again improperly expand the scope of discovery into a general audit of BAS's short

selling and related trade settlement activities concerning all securities over a five-year time

period, regardless of whether those activities impacted trading in TASER securities.  This

directly contradicts Plaintiffs' express representation to the Court on December 3, 2009 that

expanding the scope of discovery to include "same or similar conduct" would not impose any

additional burden on Defendants.  *See* Plaintiffs' Reply in Support of Plaintiffs' Motion to

Compel Production of Documents, filed December 3, 2009, at 14-15.  Moreover, the expense and burden that would be involved in responding to these Requests is not justified where Plaintiffs have (a) yet to even identify any instances of alleged "abusive naked short selling" with respect to TASER —the only security at issue in this litigation, and (b) admitted that nearly every Plaintiff profited from their trading in TASER.  Contemporaneous with service of these responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion.

## GENERAL OBJECTIONS

BAS hereby makes the following General Objections, which apply to each Request and are incorporated by reference in the response to each Request as if set forth fully therein.  BAS's specific objections to each Request are made without waiving these General Objections.  To improve readability, BAS has not repeated these objections in its response to each Request. Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.      BAS objects to all Definitions and Requests to the extent that they call for BAS to do more than is required under the Official Code of Georgia, the Uniform State Court Rules, the Local Rules or other applicable law.

2.      BAS objects to the Requests on the grounds that they are overbroad and duplicative of Plaintiffs' prior discovery requests and, as such, are designed to harass BAS. Specifically, the Requests are duplicative of Plaintiffs' Amended Second Set of Interrogatories No. 5 and Plaintiffs' Third Set of Interrogatories to Defendants Other Than UBS.

-2-

3.      BAS objects to the Requests on the ground that they are unduly burdensome because they seek to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct." Contemporaneous with service of these responses, Defendants are filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion. BAS reserves the right to amend these objections and, if necessary, to respond to the Requests following a decision on that motion.

4.      BAS objects to each Request to the extent that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

5.      BAS reserves all objections that may be available to it at any hearing or trial or on any motion related to the use or admissibility of any information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

6.      BAS objects to each Request to the extent it seeks information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine, or any other legally recognized privilege, immunity or exemption from production.  BAS will not produce information and/or documents containing such information or will produce the material in redacted form.

7.      BAS objects to each Request to the extent it purports to seek information and/or documents that contain personal, private, confidential, proprietary, financial or commercial information relating to BAS or its clients.

-3-

8.     BAS objects to the Requests as premature, improper, unduly oppressive and intended to harass BAS. To the extent BAS later answers any of the Requests, BAS will make a good faith attempt to respond to the Requests based on its knowledge of the relevant facts *at that time*. Because BAS continues to review the relevant substantive and procedural facts of this case, its current position with respect to any of the Requests might change as a result of this ongoing review. Therefore, BAS reserves the right to supplement or alter its responses at any time pursuant to § 9-11-26(e) of the Official Code of Georgia. BAS also reserves the right to use or rely on, at any time, subsequently discovered information or information omitted from these responses as a result of mistake, error, oversight or inadvertence.

9.     BAS objects to each Request on the grounds that, taken as a whole and as written, the Requests are overbroad, unduly burdensome and vague, and purport to require the production of irrelevant information for a period of more than six years.

10.     BAS objects to each Request to the extent it purports to require BAS to seek documents and/or information in the possession, custody or control of other persons or entities.

11.     BAS objects to each Request to the extent it requires BAS to search for, review, provide and/or conduct an analysis of information and/or documents that are not centrally maintained or from persons not believed to have significant involvement in the transactions at issue. Any Request that purports to require BAS to do more than that seeks to impose an undue burden and/or unreasonable costs upon BAS.

12.     BAS objects to the definition of the terms "You," "Your" and "Yourself" to the extent Plaintiffs employ those terms to seek information beyond BAS's possession, custody or control or about entities other than BAS. To the extent BAS later responds to any of the Requests, BAS will respond only on behalf of the entity named as Defendant in the Sixth

-4-

Amended Complaint.  BAS also objects to the definition of the terms "You" "Your" and "Yours" to the extent they seek information and/or documents covered by the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity from discovery.

13.     BAS objects to the definition of the term "proprietary account" as overbroad, vague and ambiguous.  To the extent BAS later responds to any of the Requests, BAS will respond to any request concerning "proprietary account" as referring to trading by BAS on its own behalf for the purpose of profiting from a long or short position in the particular security. Thus, the term excludes market-making and other trading for the purpose of facilitating customer orders and hedging activities (*i.e.*, trades designed to reduce the risk of other trades or positions). BAS also objects to the definition of "proprietary account" to the extent it seeks information that is not relevant to the claims or defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.  In particular, BAS objects to this definition to the extent it includes computerized trading such as program and index-driven trading (*e.g.*, where a particular security is selected for trading due to an algorithm or because it is part of one or more market indices).  To the extent BAS later responds to any of the Requests, BAS will exclude such trading from its responses.

14.     BAS's failure to object to any Request on a particular ground or grounds shall not be construed as a waiver of its right to object to any additional ground(s) consistent with further investigation and discovery.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST NO. 1

In 2004, you violated NASD Rule 3370 with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 1:**

BAS objects to Request No. 1 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 1 on the ground that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 1 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 2:**

In 2004, you violated UPC71 with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 2:**

BAS objects to Request No. 2 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 2

-6-

on the ground that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 2 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 3:

In 2005, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

## RESPONSE TO REQUEST NO. 3:

BAS objects to Request No. 3 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 3 on the ground that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 3 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 4:**

In 2006, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 4:**

BAS objects to Request No. 4 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 4 on the ground that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 4 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 5:**

In 2007, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 5:**

BAS objects to Request No. 5 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 5 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities

-8-

other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 5 on the ground that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 5 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 6**:

In 2008, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 6**:

BAS objects to Request No. 6 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 6 on the grounds that it is overbroad unduly burdensome because it seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 6 on the ground that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 6 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 7:**

In 2009, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 7:**

BAS objects to Request No. 7 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 7 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 7 on the ground that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 7 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 8:**

In 2005, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 8:**

BAS objects to Request No. 8 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 8 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities

-10-

other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 8 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 9:**

In 2006, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 9:**

BAS objects to Request No. 9 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 9 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 9 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 10:**

In 2007, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 10:**

BAS objects to Request No. 10 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass

BAS. BAS also objects to Request No. 10 on the grounds that it is overbroad, unduly

burdensome, and seeks to impose an obligation on BAS to gather information about securities

other than TASER beyond what Plaintiffs represented to the Court in connection with "same or

similar conduct." BAS further objects to Request No. 10 on the ground that it seeks information

that is not relevant to the claims and defenses in this action and thus not reasonably calculated to

lead to the discovery of admissible evidence.

### REQUEST NO. 11:

In 2008, as an executing broker, you violated Regulation SHO with respect to at least one
short sale for or on behalf of one of your customers.

### RESPONSE TO REQUEST NO. 11:

BAS objects to Request No. 11 on the grounds that it is cumulative and duplicative of

Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories

and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass

BAS. BAS also objects to Request No. 11 on the grounds that it is overbroad, unduly

burdensome, and seeks to impose an obligation on BAS to gather information about securities

other than TASER beyond what Plaintiffs represented to the Court in connection with "same or

similar conduct." BAS further objects to Request No. 11 on the ground that it seeks information

that is not relevant to the claims and defenses in this action and thus not reasonably calculated to

lead to the discovery of admissible evidence.

### REQUEST NO. 12:

In 2009, as an executing broker, you violated Regulation SHO with respect to at least one
short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 12**:

BAS objects to Request No. 12 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 12 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 12 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 13**:

In 2005, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 13**:

BAS objects to Request No. 13 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 13 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 13 on the grounds that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 13 on the ground that it seeks

-13-

information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, BAS objects to Request No. 13 as unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 14:**

In 2006, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 14:**

BAS objects to Request No. 14 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 14 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 14 on the grounds that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 14 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, BAS objects to Request No. 14 as unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

-14-

**REQUEST NO. 15**:

In 2007, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 15**:

BAS objects to Request No. 15 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 15 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 15 on the grounds that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 15 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, BAS objects to Request No. 15 as unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 16**:

In 2008, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 16**:

BAS objects to Request No. 16 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories

-15-

and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 16 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 16 on the grounds that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 16 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, BAS objects to Request No. 16 as unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 17:**

       In 2009, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 17:**

       BAS objects to Request No. 17 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 17 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." BAS further objects to Request No. 17

on the grounds that the term "proprietary account" is overbroad, poorly defined, and unduly burdensome. Additionally, BAS objects to Request No. 17 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, BAS objects to Request No. 17 as unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 18:**

In 2005, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 18:**

BAS objects to Request No. 18 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 18 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 18 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 19:**

In 2006, you failed to require a buy-in as required by Regulation SHO.

-17-

**RESPONSE TO REQUEST NO. 19:**

BAS objects to Request No. 19 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 19 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 19 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20:**

In 2007, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 20:**

BAS objects to Request No. 20 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 20 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 20 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

-18-

**REQUEST NO. 21**:

In 2008, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 21:**

BAS objects to Request No. 21 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 20 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 20 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 22**:

In 2009, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 22:**

BAS objects to Request No. 22 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 22 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 22 on the ground that it seeks information

that is not relevant to the claims and defenses in this action and thus not reasonably calculated to

lead to the discovery of admissible evidence.

**REQUEST NO. 23:**

In 2005, you failed to close out at least one failure to deliver position as required by
Regulation SHO.

**RESPONSE TO REQUEST NO. 23:**

BAS objects to Request No. 23 on the grounds that it is cumulative and duplicative of

Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories

and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass

BAS. BAS also objects to Request No. 23 on the grounds that it is overbroad, unduly

burdensome, and seeks to impose an obligation on BAS to gather information about securities

other than TASER beyond what Plaintiffs represented to the Court in connection with "same or

similar conduct." BAS further objects to Request No. 23 on the ground that it seeks information

that is not relevant to the claims and defenses in this action and thus not reasonably calculated to

lead to the discovery of admissible evidence.

**REQUEST NO. 24:**

In 2006, you failed to close out at least one failure to deliver position as required by
Regulation SHO.

**RESPONSE TO REQUEST NO. 24:**

BAS objects to Request No. 24 on the grounds that it is cumulative and duplicative of

Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories

and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass

BAS. BAS also objects to Request No. 24 on the grounds that it is overbroad, unduly

burdensome, and seeks to impose an obligation on BAS to gather information about securities

other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 24 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 25:**

In 2007, you failed to close out at least one failure to deliver position as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 25:**

BAS objects to Request No. 25 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass BAS. BAS also objects to Request No. 25 on the grounds that it is overbroad, unduly burdensome, and seeks to impose an obligation on BAS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." BAS further objects to Request No. 25 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 26:**

In 2008, you failed to close out at least one failure to deliver position as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 26:**

BAS objects to Request No. 26 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass

BAS.  BAS also objects to Request No. 26 on the grounds that it is overbroad, unduly

burdensome, and seeks to impose an obligation on BAS to gather information about securities

other than TASER beyond what Plaintiffs represented to the Court in connection with "same or

similar conduct."  BAS further objects to Request No. 26 on the ground that it seeks information

that is not relevant to the claims and defenses in this action and thus not reasonably calculated to

lead to the discovery of admissible evidence.

## REQUEST NO. 27:

In 2009, you failed to close out at least one failure to deliver position as required by
Regulation SHO.

## RESPONSE TO REQUEST NO. 27:

BAS objects to Request No. 27 on the grounds that it is cumulative and duplicative of

Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Interrogatories

and Interrogatory No. 5 of Plaintiffs' Second Interrogatories, and, as such, is designed to harass

BAS.  BAS also objects to Request No. 27 on the grounds that it is overbroad, unduly

burdensome, and seeks to impose an obligation on BAS to gather information about securities

other than TASER beyond what Plaintiffs represented to the Court in connection with "same or

similar conduct."  BAS further objects to Request No. 27 on the ground that it seeks information

that is not relevant to the claims and defenses in this action and thus not reasonably calculated to

lead to the discovery of admissible evidence.

Andrew J. Frackman
  Admitted *Pro Hac Vice*
Brad M. Elias
  Admitted *Pro Hac Vice*

*Attorneys for Banc of America Securities LLC*

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Phone:  (212) 326-2000
Fax:  (212) 326-2061

Richard H. Sinkfield, Esq.
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290
ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree St, NW
Atlanta, Georgia  30307
Phone:  (404) 522-4700
Fax:  (404) 525-2224

*Attorneys for Defendants Morgan Stanley & Co.*
*Incorporated; Goldman, Sachs & Co., Goldman*
*Sachs Execution & Clearing, L.P.; Bear,*
*Stearns Securities Corp. (n/k/a JP Morgan*
*Clearing Corp.); Bear, Stearns & Co. Inc.*
*(n/k/a JP Morgan Securities Inc.); Merrill*
*Lynch, Pierce, Fenner & Smith, Inc.; Deutsche*
*Bank Securities Inc.; Credit Suisse Securities*
*(USA) LLC, Inc.; Banc of America Securities*
*LLC; and UBS Securities, LLC*

NYI:1819795.1

-23-

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date: Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit E

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC., et al.,

      Plaintiffs,

v.

MORGAN STANLEY & CO., INC., et al.,

      Defendants.

CIVIL ACTION
FILE NO. 2008-EV-004739-B

JURY TRIAL DEMANDED

**DEFENDANT BEAR, STEARNS & CO., INC.'S AND
BEAR, STEARNS SECURITIES CORP.'S OBJECTIONS
AND RESPONSES TO PLAINTIFFS' FOURTH REQUESTS FOR
ADMISSION TO DEFENDANTS EXCEPT GOLDMAN SACHS
AND FIFTH REQUEST FOR ADMISSION TO GOLDMAN SACHS**

Defendant Bear, Stearns Securities Corp. ("BSSC") (n/k/a JP Morgan Clearing Corp.) and Bear, Stearns & Co. Inc. ("BS&Co.") (n/k/a JP Morgan Securities Inc.) (collectively the "Bear Stearns Entities") hereby submit their Objections and Responses to Plaintiffs' Fourth Requests for Admission to Defendants Except Goldman Sachs and Fifth Request For Admission to Goldman Sachs (the "Requests").

At the outset, the Bear Stearns Entities note that they already produced to Plaintiffs over one million pages of documents and thousands of gigabytes of data, including millions of data entries concerning trading in TASER securities. The Bear Stearns Entities also have provided a significant volume of information in response to Plaintiffs' numerous interrogatories, requests for admission and informal discovery requests. Notwithstanding these facts, Plaintiffs seek through these Requests, to again improperly expand the scope of discovery into a general audit of the Bear Stearns Entities' short selling and related trade settlement activities concerning all securities over a five-year time period, regardless of whether those activities had any effect on trading in TASER securities. This directly contradicts Plaintiffs' express representation to the Court on December 3, 2009 that expanding the scope of discovery to include "same or similar conduct" would not impose any additional burden on Defendants. (*See* Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Production of Documents at 14-15 (Dec. 3, 2009).) Moreover, the expense and burden that would be involved in responding to these Requests is not justified because Plaintiffs have yet to meaningfully identify any instances in which the Bear Stearns Entities purportedly engaged in manipulative "abusive naked short selling" with respect to TASER—the only security at issue in this litigation—thereby impacting the price of TASER stock. Further, Plaintiffs have responded to written discovery admitting—and produced

documents demonstrating—that almost every Plaintiff profited from trading in TASER and thus suffered no cognizable harm as a result of any hypothetical misconduct.

Contemporaneous with service of these responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion. The Bear Stearns Entities reserve the right to amend these objections and, if necessary, to respond to the Requests following a decision on that motion.

## GENERAL OBJECTIONS

The Bear Stearns Entities hereby make the following General Objections, which apply to each and every specific Request and are incorporated by reference in the response to each request as if set forth fully therein. The Bear Stearns Entities' specific objections to specific Requests are made without waiving these General Objections. The Bear Stearns Entities have not repeated these objections in every response to improve readability. Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.     The Bear Stearns Entities object to all Definitions and Requests to the extent that they call for the Bear Stearns Entities to do more than is required under the Official Code of Georgia, the Uniform State Court Rules, the Local Rules or other applicable law.

2.     The Bear Stearns Entities object to the Requests on the grounds that they are overly broad and duplicative of Plaintiffs' prior discovery requests and, as such, are designed to harass the Bear Stearns Entities. Specifically, the Requests are duplicative of Plaintiffs' Amended Second Set of Interrogatories Nos. 5(i) and 5(j) and Plaintiffs' Third Set of Interrogatories to Defendants Other Than UBS. Contemporaneous with service of these

2

responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion. The Bear Stearns Entities reserve the right to amend these objections and, if necessary, to respond to the Requests following a decision on that motion.

3.      The Bear Stearns Entities object to the Requests on the ground that they are unduly burdensome because they seek to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct." The regulatory provisions cited in the Requests are administrative and Plaintiffs make no claim, and could not make any claim, based on their violation. They are therefore not "at issue" in this action. (*See* Defendants' Motion For Protective Order With Respect To Discovery Served By Plaintiffs On June 10, 2010.)

4.      The Bear Stearns Entities object to each Request to the extent that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

5.      The Bear Stearns Entities reserve all objections that may be available to them at any hearing or trial or on any motion related to the use or admissibility of any information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

6.      The Bear Stearns Entities object to each Request to the extent it seeks information and/or documents covered by the attorney-client privilege, the joint defense or common interest

3

privilege, the attorney work product doctrine, or any other legally recognized privilege,
immunity or exemption from production.

7.      The Bear Stearns Entities object to the Requests as premature, improper, unduly
oppressive and intended to harass the Bear Stearns Entities.  To the extent the Bear Stearns
Entities later answer any of the Requests, the Bear Stearns Entities will make a good faith
attempt to respond to the Requests based on their knowledge of the relevant facts *at that time.*
Because the Bear Stearns Entities continue to review the relevant substantive and procedural
facts of this case, their current position with respect to any of the Requests might change as a
result of this ongoing review.  Therefore, the Bear Stearns Entities reserve the right to
supplement or alter their responses at any time pursuant to § 9-11-26(e) of the Official Code of
Georgia.  The Bear Stearns Entities also reserve the right to use or rely on, at any time,
subsequently discovered information or information omitted from these responses as a result of
mistake, error, oversight or inadvertence.

8.      The Bear Stearns Entities object to each Request on the grounds that, taken as a
whole and as written, the Requests are overbroad, unduly burdensome and vague, and purport to
require the production of irrelevant information for a period of more than six years.

9.      The Bear Stearns Entities object to each Request to the extent it purports to
require the Bear Stearns Entities to seek documents and/or information in the possession, custody
or control of other persons or entities.

10.     The Bear Stearns Entities object to each Request to the extent it requires the Bear
Stearns Entities to search for, review, provide and/or conduct an analysis of information and/or
documents that are not centrally maintained or from persons not believed to have significant

4

involvement in the transactions at issue.  Any Request that purports to require the Bear Stearns

Entities to do more than that seeks to impose an undue burden and/or unreasonable costs upon

the Bear Stearns Entities.

11.     The Bear Stearns Entities object to the definition of the terms "You," "Your" and

"Yourself" to the extent Plaintiffs employ the terms to seek information beyond the Bear Stearns

Entities' possession, custody or control or about entities other than the Bear Stearns Entities.  To

the extent the Bear Stearns Entities later respond to any of the Requests, the Bear Stearns Entities

will respond only on behalf of the entities named as Defendants in the Sixth Amended

Complaint.  The Bear Stearns Entities also object to the definition of the terms "You" "Your"

and "Yours" to the extent they seek information and/or documents covered by the attorney-client

privilege, the attorney work product doctrine, or any other privilege or immunity from discovery.

12.     The Bear Stearns Entities object to the definition of the term "proprietary

account" as overbroad, vague and ambiguous.  To the extent the Bear Stearns Entities later

respond to any of the Requests, the Bear Stearns Entities will respond to any request concerning

"proprietary account" as referring to trading by the Bear Stearns Entities on their own behalf for

the purpose of profiting from a long or short position in the particular security.  Thus, the term

excludes market-making and other trading for the purpose of facilitating customer orders and

hedging activities (*i.e.*, trades designed to reduce the risk of other trades or positions).  The Bear

Stearns Entities also object to the definition of "proprietary account" to the extent it seeks

information that is not relevant to the claims or defenses in this action and thus not reasonably

calculated to lead to the discovery of admissible evidence and, in particular, to the extent it

includes computerized trading such as program and index-driven trading (*e.g.*, where a particular

security is selected for trading due to an algorithm or because it is part of one or more market indices).  To the extent the Bear Stearns Entities later respond to any of the Requests, the Bear Stearns Entities will endeavor to exclude such trading from their responses.

   13. The Bear Stearns Entities' failure to object to any Request on a particular ground or grounds shall not be construed as a waiver of their right to object to any additional ground(s) consistent with further investigation and discovery.

**OBJECTIONS TO**
**SPECIFIC REQUESTS FOR ADMISSIONS**

   In addition to the General Objections set forth above, which are expressly incorporated by reference in each response below, the Bear Stearns Entities further make the following specific objections.

**REQUEST NO. 1**

   In 2004, you violated NASD Rule 3370 with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 1:**

   In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 1 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities.  The Bear Stearns Entities also object to Request No. 1 on the grounds that it is overly broad and unduly burdensome.  The Bear Stearns Entities further object to Request No. 1 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court

6

in connection with their motion to compel concerning "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 1 on the ground that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Finally, the Bear Stearns Entities object to Request No. 1 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 2:**

In 2004, you violated UPC71 with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 2:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 2 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 2 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 2 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 2 on the ground that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Finally, the Bear Stearns Entities object to Request No. 2 on the ground that it seeks information that is not relevant to the

7

claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 3:**

In 2005, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 3:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 3 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 3 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 3 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 3 on the ground that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Finally, the Bear Stearns Entities object to Request No. 3 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 4:**

In 2006, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

8

**RESPONSE TO REQUEST NO. 4:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 4 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 4 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 4 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 4 on the ground that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Finally, the Bear Stearns Entities object to Request No. 4 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 5:**

In 2007, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 5:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 5 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the

Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 5 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 5 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 5 on the ground that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Finally, the Bear Stearns Entities object to Request No. 5 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 6:**

In 2008, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 6:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 6 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 6 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 6 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Additionally,

10

the Bear Stearns Entities object to Request No. 6 on the ground that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Finally, the Bear Stearns Entities object to Request No. 6 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 7:**

In 2009, you violated Regulation SHO with respect to at least one short sale in a proprietary account.

**RESPONSE TO REQUEST NO. 7:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 7 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 7 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 7 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 7 on the ground that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Finally, the Bear Stearns Entities object to Request No. 7 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 8:**

In 2005, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 8:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 8 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 8 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 8 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 8 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 9:**

In 2006, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 9:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 9 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants

Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 9 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 9 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 9 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 10:**

In 2007, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 10:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 10 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 10 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 10 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 10 on the ground that it seeks information that is not relevant to the claims

13

and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 11:**

In 2008, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 11:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 11 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities.  The Bear Stearns Entities also object to Request No. 11 on the grounds that it is overly broad and unduly burdensome.  The Bear Stearns Entities further object to Request No. 11 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct."  Additionally, the Bear Stearns Entities object to Request No. 11 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 12:**

In 2009, as an executing broker, you violated Regulation SHO with respect to at least one short sale for or on behalf of one of your customers.

**RESPONSE TO REQUEST NO. 12:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 12 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs' Third Set of Interrogatories To All Defendants Except UBS and Fourth Set of Interrogatories to UBS, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 12 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities further object to Request No. 12 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." Additionally, the Bear Stearns Entities object to Request No. 12 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 13:**

In 2005, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 13:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 13 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The

15

Bear Stearns Entities also object to Request No. 13 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities also object to Request No. 13 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." The Bear Stearns Entities further object to Request No. 13 on the grounds that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Additionally, the Bear Stearns Entities object to Request No. 13 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, the Bear Stearns Entities object to Request No. 13 on the grounds that it is unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 14:**

In 2006, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 14:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 14 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 14 on the grounds that it is overly broad and

16

unduly burdensome. The Bear Stearns Entities also object to Request No. 14 on the ground that it is unduly burdensome because it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." The Bear Stearns Entities further object to Request No. 14 on the grounds that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Additionally, the Bear Stearns Entities object to Request No. 14 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, the Bear Stearns Entities object to Request No. 14 on the grounds that it is unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 15:**

In 2007, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 15:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 15 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 15 on the grounds that it is overly broad and

17

unduly burdensome.  The Bear Stearns Entities also object to Request No. 15 on the ground that

it seeks to impose an obligation on the Bear Stearns Entities to gather information about

securities other than TASER beyond what Plaintiffs represented to the Court in connection with

their motion to compel concerning "same or similar conduct."  The Bear Stearns Entities further

object to Request No. 15 on the grounds that the term "proprietary account" is overly broad,

poorly defined, and unduly burdensome.  Additionally, the Bear Stearns Entities object to

Request No. 15 on the ground that it seeks information that is not relevant to the claims and

defenses in this action and thus not reasonably calculated to lead to the discovery of admissible

evidence.  Finally, the Bear Stearns Entities object to Request No. 15 on the grounds that it is

unclear, vague and ambiguous, particularly because the Continuous Net Settlement system

aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the

system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 16**:

     In 2008, you failed to deliver a security in the time required by Regulation SHO with
respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 16**:

     In addition to the General Objections set forth above, the Bear Stearns Entities object to

Request No. 16 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery

requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants

Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each

Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities.  The

Bear Stearns Entities also object to Request No. 16 on the grounds that it is overly broad and

unduly burdensome.  The Bear Stearns Entities also object to Request No. 16 on the ground that

18

it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." The Bear Stearns Entities further object to Request No. 16 on the grounds that the term "proprietary account" is overly broad, poorly defined, and unduly burdensome. Additionally, the Bear Stearns Entities object to Request No. 16 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence. Finally, the Bear Stearns Entities object to Request No. 16 on the grounds that it is unclear, vague and ambiguous, particularly because the Continuous Net Settlement system aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 17:**

In 2009, you failed to deliver a security in the time required by Regulation SHO with respect to at least one short sale for a proprietary account.

**RESPONSE TO REQUEST NO. 17:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 17 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 17 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities also object to Request No. 17 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about

19

securities other than TASER beyond what Plaintiffs represented to the Court in connection with

their motion to compel concerning "same or similar conduct." The Bear Stearns Entities further

object to Request No. 17 on the grounds that the term "proprietary account" is overly broad,

poorly defined, and unduly burdensome. Additionally, the Bear Stearns Entities object to

Request No. 17 on the ground that it seeks information that is not relevant to the claims and

defenses in this action and thus not reasonably calculated to lead to the discovery of admissible

evidence. Finally, the Bear Stearns Entities object to Request No. 17 on the grounds that it is

unclear, vague and ambiguous, particularly because the Continuous Net Settlement system

aggregates and nets the daily receipt and daily delivery obligations of its participants and thus the

system does not associate specific transactions or customers with specific failures to deliver.

**REQUEST NO. 18:**

    In 2005, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 18:**

    In addition to the General Objections set forth above, the Bear Stearns Entities object to

Request No. 18 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery

requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants

Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each

Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The

Bear Stearns Entities also object to Request No. 18 on the grounds that it is overly broad and

unduly burdensome. The Bear Stearns Entities also object to Request No. 18 on the ground that

it seeks to impose an obligation on the Bear Stearns Entities to gather information about

securities other than TASER beyond what Plaintiffs represented to the Court in connection with

"same or similar conduct." The Bear Stearns Entities further object to Request No. 18 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 19:**

In 2006, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 19:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 19 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 19 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities also object to Request No. 19 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." The Bear Stearns Entities further object to Request No. 19 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20:**

In 2007, you failed to require a buy-in as required by Regulation SHO.

21

**RESPONSE TO REQUEST NO. 20:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 20 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 20 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities also object to Request No. 20 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." The Bear Stearns Entities further object to Request No. 20 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 21:**

In 2008, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 21:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 21 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 21 on the grounds that it is overly broad and

22

unduly burdensome. The Bear Stearns Entities also object to Request No. 21 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." The Bear Stearns Entities further object to Request No. 21 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 22:**

In 2009, you failed to require a buy-in as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 22:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 22 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 22 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities also object to Request No. 22 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." The Bear Stearns Entities further object to Request No. 22 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 23:**

In 2005, you failed to close out at least one failure to deliver position as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 23:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 23 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants Except UBS And Fourth Set to UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass the Bear Stearns Entities. The Bear Stearns Entities also object to Request No. 23 on the grounds that it is overly broad and unduly burdensome. The Bear Stearns Entities also object to Request No. 23 on the ground that it seeks to impose an obligation on the Bear Stearns Entities to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with "same or similar conduct." The Bear Stearns Entities further object to Request No. 23 on the ground that it seeks information that is not relevant to the claims and defenses in this action and thus not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 24:**

In 2006, you failed to close out at least one failure to deliver position as required by Regulation SHO.

**RESPONSE TO REQUEST NO. 24:**

In addition to the General Objections set forth above, the Bear Stearns Entities object to Request No. 24 on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including but not limited to Plaintiffs Third Set of Interrogatories to All Defendants