Official Code of Georgia, the Uniform State Court Rules, the Local Rules or other applicable law.

2.      Credit Suisse Securities objects to the Interrogatories on the ground that they exceed the permissible number of 50 interrogatories, including subparts, allowed by O.C.G.A. § 9-11-33(a) "without leave of court upon a showing of complex litigation or undue hardship incurred."

3.      Credit Suisse Securities objects to the Interrogatories on the grounds that they are overbroad and unduly burdensome.  Contemporaneous with service of these responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion.  Credit Suisse Securities reserves the right to amend these objections and, if necessary, to respond to the Requests following a decision on that motion.

4.      Credit Suisse Securities objects to the Interrogatories as cumulative and duplicative of other discovery already provided by Credit Suisse Securities, including, but not limited to, discovery provided in response to Plaintiffs' requests for production of documents and Plaintiffs' Amended Second Interrogatories to Credit Suisse Securities.

5.      Credit Suisse Securities objects to each Interrogatory on the ground that it seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence.

6.      Credit Suisse Securities objects to each Interrogatory to the extent it purports to seek information for transactions in accounts other than prime brokerage, institutional or firm accounts.

7.     Credit Suisse Securities objects to each Interrogatory to the extent it seeks information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine or any other legally recognized privilege, immunity or exemption from production.  Credit Suisse Securities will not produce information and/or documents containing such information or will produce the material in redacted form.  Credit Suisse Securities would be willing to provide a log in accordance with the governing rules if documents are redacted or withheld because they are protected from disclosure.

8.     Credit Suisse Securities objects to each Interrogatory to the extent it purports to seek information and/or documents that contain personal, private, confidential, proprietary, financial or commercial information relating to Credit Suisse Securities or its clients.

9.     To the extent that Credit Suisse Securities provides information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine or any legally recognized privilege, immunity or exemption from production in response to any Interrogatory, such provision is inadvertent and does not constitute a waiver of the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine or any other privilege with respect to other information and/or documents.  Consistent with the terms of the Stipulation and Protective Order Regarding Confidential Information, Credit Suisse Securities reserves the right to request the return of any such information and/or documents.

10.     Plaintiffs have requested that Defendants answer the Interrogatories "to the extent they are currently aware of responsive information."  To the extent Credit Suisse Securities later answers any of the Interrogatories, Credit Suisse Securities will make a good-faith attempt to

-4-

respond to the Interrogatories based on its knowledge of the relevant facts *at this time* and will

not conduct an audit or investigation of trades that have not previously been investigated by the

relevant groups or personnel in Credit Suisse Securities' Compliance department.  Credit Suisse

Securities reserves its right to amend, supplement, correct, clarify and/or add to its responses and

objections to the Interrogatory and Requests at any time pursuant to § 9-11-26(e) of the Official

Code of Georgia.  Credit Suisse Securities also reserves the right to use or rely on, at any time,

subsequently discovered information or information omitted from these responses as a result of

mistake, error, oversight or inadvertence.

   11. Credit Suisse Securities objects to each Interrogatory to the extent that it requires

Credit Suisse Securities to search for and produce information and/or documents that are not

centrally maintained or from persons not believed to have significant involvement in the subject

matter at issue.  To the extent that each Interrogatory purports to require Credit Suisse Securities

to do so, it seeks to impose an undue burden and/or unreasonable costs upon Credit Suisse

Securities.

   12. Credit Suisse Securities objects to each Interrogatory to the extent that it explicitly

or implicitly characterizes facts, events, circumstances or issues relating to the subject of this

litigation.

   13. Credit Suisse Securities objects to each Interrogatory to the extent it purports to

require Credit Suisse Securities to seek information and/or documents in the possession, custody

or control of other persons or entities or to create documents not presently in Credit Suisse

Securities' possession, custody or control.  Credit Suisse Securities will provide responses only

to the extent such information or materials are in its possession, custody or control and can be

obtained through a reasonable search.

14.     Credit Suisse Securities objects to the definition of the terms "You" and "your" to the extent Plaintiffs employ the terms to seek information beyond Credit Suisse Securities' possession, custody or control or about entities other than Credit Suisse Securities.  Credit Suisse Securities will respond to each Interrogatory only on behalf of the entity named as Defendant in the Sixth Amended Complaint.  Credit Suisse Securities also objects to the definition of the terms "You" and "your" to the extent they seek information and/or documents covered by the attorney-client privilege, the attorney work product doctrine or any other privilege or immunity from discovery.

15.     Credit Suisse Securities objects to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

16.     Credit Suisse Securities objects to the relevance and scope of the definition of the terms "Security" or "Securities" to the extent they define security or securities as instruments other than the common stock of TASER International, Inc.

17.     Credit Suisse Securities' failure to object to any Interrogatory on a particular ground or grounds shall not be construed as a waiver of its right to object on any additional ground(s) consistent with further investigation and discovery.

18.     Credit Suisse Securities further reserves all objections that may be available to it at any hearing or trial or on any motion related to the use or admissibility of any information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1(a):

*For each year from 2004 through 2008, please Identify (as that term is defined below) (a): Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO;*

### RESPONSE TO INTERROGATORY NO. 1(a):

In addition to the General Objections set forth above, Credit Suisse Securities objects to Interrogatory 1(a) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(a) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Credit Suisse Securities also objects to Interrogatory 1(a) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS. Credit Suisse Securities further objects to Interrogatory 1(a) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Additionally, Credit Suisse Securities objects to Interrogatory 1(a) on the ground that it calls for a legal conclusion.

### INTERROGATORY NO. 1(b):

*For each year from 2004 through 2008, please Identify (as that term is defined below) (b): Each instance in which you failed to deliver a security in the time period required by your own rules, policies and procedures;[1]*

---

[1] *For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.*

**RESPONSE TO INTERROGATORY NO. 1(b):**

In addition to the General Objections set forth above, Credit Suisse Securities objects to Interrogatory 1(b) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(b) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Credit Suisse Securities also objects to Interrogatory 1(b) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Credit Suisse Securities. Credit Suisse Securities further objects to Interrogatory 1(b) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Additionally, Credit Suisse Securities objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

**INTERROGATORY NO. 1(c):**

*For each year from 2004 through 2008, please Identify (as that term is defined below) (c): Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;*

**RESPONSE TO INTERROGATORY NO. 1(c):**

In addition to the General Objections set forth above, Credit Suisse Securities objects to Interrogatory 1(c) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(c) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Credit Suisse Securities also objects to Interrogatory 1(c) as cumulative and duplicative of other

discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Credit

Suisse Securities.  Credit Suisse Securities further objects to Interrogatory 1(c) to the extent that

it seeks information protected by the attorney-client privilege, attorney work product doctrine, or

any other applicable privilege.  Additionally, Credit Suisse Securities objects to the term "rules,

policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as

vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies

and procedures adopted by the company."

**INTERROGATORY NO. 1(d):**

> *For each year from 2004 through 2008, please Identify (as that term is defined below)*
> *(d): Each instance in which you failed to close out a failure to deliver position as required by*
> *your own rules, policies;[2]*

**RESPONSE TO INTERROGATORY NO. 1(d):**

In addition to the General Objections set forth above, Credit Suisse Securities objects to

Interrogatory 1(d) as overbroad and unduly burdensome and seeks information that is irrelevant

to the claims or defenses in this action and therefore is not reasonably calculated to lead to the

discovery of admissible evidence in that Interrogatory 1(d) seeks information regarding

transactions in all securities, regardless of whether the transaction related to TASER securities.

Credit Suisse Securities also objects to Interrogatory 1(d) as cumulative and duplicative of other

discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Credit

Suisse Securities.  Credit Suisse Securities further objects to Interrogatory 1(d) to the extent that

it seeks information protected by the attorney-client privilege, attorney work product doctrine, or

any other applicable privilege.  Additionally, Credit Suisse Securities objects to the term "rules,

policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as

---

[2]     *The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in*
*GS_T62 and GS_T211.  Thus, there should be no issue as to their clarity.*

vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

## INTERROGATORY NO. 1(e):

*For each year from 2004 through 2008, please Identify (as that term is defined below) (e): Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3] and*

## RESPONSE TO INTERROGATORY NO. 1(e):

In addition to the General Objections set forth above, Credit Suisse Securities objects to Interrogatory 1(e) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(e) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Credit Suisse Securities also objects to Interrogatory 1(e) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Credit Suisse Securities. Credit Suisse Securities further objects to Interrogatory 1(e) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Additionally, Credit Suisse Securities objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

---

[3]     *The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.*

**INTERROGATORY NO. 1(f):**

*For each year from 2004 through 2008, please Identify (as that term is defined below) (f): Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.*

**RESPONSE TO INTERROGATORY NO. 1(f):**

In addition to the General Objections set forth above, Credit Suisse Securities objects to

Interrogatory 1(f) as overbroad and unduly burdensome and seeks information that is irrelevant

to the claims or defenses in this action and therefore is not reasonably calculated to lead to the

discovery of admissible evidence in that Interrogatory 1(f) seeks information regarding

transactions in all securities, regardless of whether the transaction related to TASER securities.

Credit Suisse Securities also objects to Interrogatory 1(f) as cumulative and duplicative of other

discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Credit

Suisse Securities and Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and

Fourth Set of Interrogatories to UBS. Credit Suisse Securities further objects to Interrogatory

1(f) to the extent that it seeks information protected by the attorney-client privilege, attorney

work product doctrine, or any other applicable privilege. Additionally, Credit Suisse Securities

objects to the term "rules, policies and procedures" and to the definition of "rules, policies and

procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any

other formal rules, policies and procedures adopted by the company."

Dated: July 19, 2010

Brad E. Konstandt
Admitted Pro Hac Vice

Fraser L. Hunter, Jr.
Admitted Pro Hac Vice

-11-

*Attorneys for Credit Suisse Securities (USA) LLC*

WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Ph: 212-230-8800
Fax: 212-230-8888

Richard H. Sinkfield
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290

ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, N. E.
Atlanta, GA 30303-1601
Phone: 404-522-4700
Fax: 404-525-2224

*Attorneys for Defendants Morgan Stanley &
Co. Incorporated; Goldman, Sachs & Co.,
Goldman Sachs Execution & Clearing, L.P.;
Bear, Stearns Securities Corp. (n/k/a JP
Morgan Clearing Corp.) Bear, Stearns & Co.
Inc. (n/k/a JP Morgan Securities Inc.); Merrill
Lynch, Pierce, Fenner & Smith, Inc.; Deutsche
Bank Securities Inc.; Credit Suisse Securities
(USA) LLC, Inc.; Banc of America Securities
LLC; and UBS Securities, LLC*

-12-

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date:  Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit O

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC., *et al.*,

Plaintiffs,

-against-

MORGAN STANLEY & CO., INC., *et al.*,

Defendants.

Civil Case No.
2008-EV-004739-B

### DEFENDANT DEUTSCHE BANK SECURITIES INC.'S
### OBJECTIONS TO PLAINTIFFS' FIFTH SET OF INTERROGATORIES TO ALL
### DEFENDANTS EXCEPT UBS AND SIXTH SET OF INTERROGATORIES TO UBS

Defendant Deutsche Bank Securities Inc. ("DBSI") hereby responds and objects

to Plaintiffs' Fifth Set of Interrogatories to All Defendants Except UBS and Sixth Set of

Interrogatories to UBS (the "Interrogatories").

At the outset, DBSI notes that it has already produced to Plaintiffs over seven (7)

million pages of documents in response to Plaintiffs' broad document requests, as well as

approximately half-a-million lines of data concerning trading in the securities of TASER

International, Inc. ("TASER").  DBSI also has provided a significant volume of information in

response to Plaintiffs' numerous previous interrogatories, requests for admission and informal

discovery requests.  Notwithstanding these facts, through these Interrogatories, Plaintiffs seek to

improperly expand the scope of discovery into a general audit of DBSI's short selling and related

trade settlement activities concerning all securities over a five-year time period, regardless of

whether those activities had any effect on trading in TASER securities.  This directly contradicts

Plaintiffs' express representation to the Court on December 3, 2009 that expanding the scope of

discovery to include "same or similar conduct" would not impose any additional burden on Defendants. *See* Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Production of Documents, filed on December 3, 2009, at 14-15. More importantly, the expense and burden that would be involved in responding to these Interrogatories is not justified because Plaintiffs have yet to meaningfully identify any instances in which DBSI purportedly engaged in manipulative "abusive naked short selling" with respect to TASER -- the only security at issue in this litigation -- thereby impacting the price of TASER stock. Further, Plaintiffs have responded to written discovery admitting -- and produced documents demonstrating -- that almost every individual Plaintiff profited from trading in TASER and thus suffered no cognizable harm as a result of any hypothetical misconduct.

Contemporaneous with service of these objections, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion. DBSI reserves the right to amend these objections and, if necessary, to respond to the Interrogatories following a decision on that motion.

## GENERAL OBJECTIONS

DBSI hereby makes the following General Objections, which apply to each and every specific Interrogatory and are incorporated by reference in the response to each Interrogatory as if set forth fully therein. DBSI has not repeated these objections in every Interrogatory response to improve readability. Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.    DBSI objects to all Instructions, Definitions and Interrogatories to the extent that they call for DBSI to do more than is required under the Official Code of Georgia, the Uniform State Court Rules, the Local Rules or other applicable law.

2.      DBSI objects to the Interrogatories on the ground that they exceed the permissible number of fifty (50), including subparts, under O.C.G.A. § 9-11-33(a) "without leave of court."

3.      DBSI objects to the Interrogatories on the grounds that they are overly broad and unduly burdensome.

4.      Contemporaneous with service of these objections, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion. DBSI reserves the right to amend these objections and, if necessary, to respond to the Interrogatories following a decision on that motion.

5.      DBSI objects to the Interrogatories on the grounds that they are cumulative and duplicative of other discovery already provided by DBSI, including but not limited to, discovery provided in response to Plaintiffs' Amended Second Set of Interrogatories to Each Defendant ("Plaintiffs' Second Interrogatories") and Plaintiffs' Third Set of Interrogatories to All Defendants Except UBS, and Fourth Set of Interrogatories to UBS ("Plaintiffs' Third Interrogatories").

6.      DBSI objects to the Interrogatories on the ground that they seek to impose an obligation on DBSI to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct." *See* Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Production of Documents, filed on December 3, 2009, at 14-15.

7.      DBSI objects to each Interrogatory to the extent it purports to seek information relating to DBSI's Private Client Services ("PCS") retail trading activity. Through

the meet and confer process, Plaintiffs and DBSI have agreed to exclude from discovery any documents or information related to PCS accounts or retail trading activity.

8.    DBSI objects to each Interrogatory to the extent it purports to seek information for transactions in accounts other than prime brokerage, institutional or firm accounts.

9.    DBSI objects to each Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence.

10.    DBSI objects to each Interrogatory to the extent it seeks information and/or documents protected from disclosure by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine or any other legally recognized privilege, immunity or exemption from production.

11.    DBSI objects to each Interrogatory to the extent it purports to seek information containing personal, private, confidential, proprietary, financial or commercial information relating to DBSI or its clients.

12.    DBSI objects to each Interrogatory to the extent that it purports to require DBSI to seek information and/or documents in the possession, custody or control of other persons or entities or to create documents not presently in DBSI's possession, custody or control.

13.    DBSI objects to each Interrogatory to the extent that it requires DBSI to search for and produce information and/or documents, including email and other electronic documents (e.g., Microsoft Word and Powerpoint documents, Excel spreadsheets, calendars, instant messages, etc.) that are not centrally maintained or reasonably accessible, or from persons not believed to have significant involvement in the subject matter at issue. To the extent that

each Interrogatory purports to require DBSI to do so, it seeks to impose an undue burden and/or unreasonable costs upon DBSI.

14.     DBSI objects to each Interrogatory to the extent that it explicitly or implicitly characterizes facts, events, circumstances or issues relating to the subject matter of this litigation.

15.     DBSI objects to each Interrogatory to the extent it seeks production of documents or information beyond that which DBSI has already produced in response to the Phase I and Phase II email searches of the seventy-two (72) current or former employees Plaintiffs have requested.

16.     DBSI objects to the definition of the terms "You" and "your" to the extent Plaintiffs employ those terms to seek information not in DBSI's possession, custody or control or about entities other than DBSI.  DBSI also objects to the definition of the terms "You" and "your" to the extent they seek information and/or documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the accountant-client privilege, or any other privilege or immunity from discovery.

17.     DBSI objects to the definition of the term "Identify" on the ground that it is vague and ambiguous, including with respect to the term "proprietary" as used in that definition.  DBSI further objects to the definition of the term "Identify" on the ground that it is overly broad and unduly burdensome.

18.     DBSI objects to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, including with respect to the phrase "any other formal rules, policies and procedures adopted by the Company."

19.     DBSI objects to the relevance and scope of the definition of the terms "Security" or "Securities" to the extent they define security or securities as instruments other than the common stock of TASER.

20.     DBSI reserves all objections that may be available to it at any hearing or trial or on any motion related to the use or admissibility of any information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

21.     DBSI expressly incorporates all of the General Objections set forth above, as well as any General Objections identified in DBSI's objections and responses to Plaintiffs' first, second, amended second, third, and fourth interrogatories to DBSI, into the Specific Objections to each Interrogatory.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1(a):

For each year from 2004 through 2008, please Identify (as that term is defined below): a. Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO; and

### RESPONSE TO INTERROGATORY NO. 1(a):

In addition to the General Objections set forth above, DBSI objects to Interrogatory No. 1(a) on the grounds that it is overly broad, unduly burdensome and designed to harass DBSI. DBSI also objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence. DBSI also objects to Interrogatory 1(a) on the ground that it seeks to impose an obligation on DBSI to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." DBSI further objects to Interrogatory No. 1(a) as cumulative and duplicative of other discovery sought in this matter, including but not limited to

Interrogatory No. 5 of Plaintiffs' Second Interrogatories, as well as Plaintiffs' Third Interrogatories. DBSI further objects to Interrogatory No. 1(a) to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Additionally, DBSI objects to this Interrogatory on the ground that it calls for a legal conclusion.

### *INTERROGATORY NO. 1(b):*

For each year from 2004 through 2008, please Identify (as that term is defined below): b. Each instance in which you failed to deliver a security in the time period required by your own rules, policies and procedures;[1]

### **RESPONSE TO INTERROGATORY NO. 1(b):**

In addition to the General Objections set forth above, DBSI objects to Interrogatory No. 1(b) on the grounds that it is overly broad, unduly burdensome and designed to harass DBSI. DBSI also objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence. DBSI also objects to Interrogatory 1(b) on the ground that it is unduly burdensome because it seeks to impose an obligation on DBSI to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." DBSI further objects to Interrogatory No. 1(b) as cumulative and duplicative of other discovery sought in this matter, including but not limited to Interrogatory No. 5 of Plaintiffs' Second Interrogatories. DBSI further objects to Interrogatory No. 1(b) to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other

---

[1]   For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.

applicable privilege. DBSI further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, including with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

*INTERROGATORY NO. 1(c):*

For each year from 2004 through 2008, please Identify (as that term is defined below): c. Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;

**RESPONSE TO INTERROGATORY NO. 1(c):**

In addition to the General Objections set forth above, DBSI objects to Interrogatory No. 1(c) on the grounds that it is overly broad, unduly burdensome and designed to harass DBSI. DBSI also objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence. DBSI also objects to Interrogatory 1(c) on the ground that it is unduly burdensome because it seeks to impose an obligation on DBSI to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." DBSI further objects to Interrogatory No. 1(c) as cumulative and duplicative of other discovery sought in this matter, including but not limited to Interrogatory No. 5 of Plaintiffs' Second Interrogatories. DBSI further objects to Interrogatory No. 1(c) to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. DBSI further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, including with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

## INTERROGATORY NO. 1(d):

For each year from 2004 through 2008, please Identify (as that term is defined below): d. Each instance in which you failed to close out a failure to deliver position as required by your own rules, policies;[2]

## RESPONSE TO INTERROGATORY NO. 1(d):

In addition to the General Objections set forth above, DBSI objects to Interrogatory No. 1(d) on the grounds that it is overly broad, unduly burdensome and designed to harass DBSI. DBSI also objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence. DBSI also objects to Interrogatory 1(d) on the ground that it is unduly burdensome because it seeks to impose an obligation on DBSI to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." DBSI further objects to Interrogatory No. 1(d) as cumulative and duplicative of other discovery sought in this matter, including but not limited to Interrogatory No. 5 of Plaintiffs' Second Interrogatories. DBSI further objects to Interrogatory No. 1(d) to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. DBSI further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, including with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

---

[2]    The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

### *INTERROGATORY NO. 1(e):*

For each year from 2004 through 2008, please Identify (as that term is defined below): e. Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3] and

### RESPONSE TO INTERROGATORY NO. 1(e):

In addition to the General Objections set forth above, DBSI objects to Interrogatory No. 1(e) on the grounds that it is overly broad, unduly burdensome and designed to harass DBSI. DBSI also objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence. DBSI also objects to Interrogatory 1(e) on the ground that it is unduly burdensome because it seeks to impose an obligation on DBSI to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." DBSI further objects to Interrogatory No. 1(e) as cumulative and duplicative of other discovery sought in this matter, including but not limited to Interrogatory No. 5 of Plaintiffs' Second Interrogatories. DBSI further objects to Interrogatory No. 1(e) to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. DBSI further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, including with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

---

[3]   The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211.  Thus, there should be no issue as to their clarity.

*INTERROGATORY NO. 1(f):*

For each year from 2004 through 2008, please Identify (as that term is defined below): f. Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

## RESPONSE TO INTERROGATORY NO. 1(f):

In addition to the General Objections set forth above, DBSI objects to Interrogatory No. 1(f) on the grounds that it is overly broad, unduly burdensome and designed to harass DBSI. DBSI also objects to this Interrogatory on the ground that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence. DBSI also objects to Interrogatory 1(f) on the ground that it is unduly burdensome because it seeks to impose an obligation on DBSI to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." DBSI further objects to Interrogatory No. 1(f) as cumulative and duplicative of other discovery sought in this matter, including but not limited to Interrogatory No. 5 of Plaintiffs' Second Interrogatories, as well as Plaintiffs' Third Interrogatories. DBSI further objects to Interrogatory No. 1(f) to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. DBSI further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, including with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

Dated:    July 19, 2010

_____

Gregory A. Markel
(admitted *pro hac vice*)
Peter J. Isajiw
(admitted *pro hac vice*)

CADWALADER, WICKERSHAM & TAFT LLP
1 World Financial Center
New York, New York 10281
Tel:  (212) 504-6000
Fax:  (212) 504-6666

*Attorneys for Deutsche Bank Securities Inc.*

Richard H. Sinkfield
Georgia Bar No. 649100
Don F. Laney III
Georgia Bar No. 435290

ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, NW
Atlanta, Georgia 30307
Phone: 404-522-4700
Fax: 404-525-2224

*Attorneys for Defendants Morgan Stanley & Co.*
*Incorporated; Goldman, Sachs & Co., Goldman*
*Sachs Execution & Clearing, L.P.; Bear,*
*Stearns Securities Corp. (n/k/a JP Morgan*
*Clearing Corp.) Bear, Stearns & Co. Inc. (n/k/a*
*JP Morgan Securities Inc.); Merrill Lynch,*
*Pierce, Fenner & Smith, Inc.; Deutsche Bank*
*Securities Inc.; Credit Suisse Securities (USA)*
*LLC; Inc.; Banc of America Securities LLC; and*
*UBS Securities, LLC*

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date:  Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit P

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,
*et al.*,

      Plaintiffs,

v.

                                      Civil Case No.
                                      2008-EV-004739-B

MORGAN STANLEY & CO., INC.,
*et al.*,

      Defendants.

### RESPONSES AND OBJECTIONS OF DEFENDANTS GOLDMAN, SACHS & CO. AND GOLDMAN SACHS EXECUTION & CLEARING, L.P. TO PLAINTIFFS' FIFTH SET OF INTERROGATORIES TO ALL DEFENDANTS AND SIXTH SET OF INTERROGATORIES TO UBS

      Defendants Goldman, Sachs & Co. ("GS&Co.") and Goldman Sachs Execution & Clearing, L.P. ("GSEC") (collectively "Goldman Sachs") hereby object and respond as follows to Plaintiffs' Fifth Set of Interrogatories to all Defendants and Sixth Set of Interrogatories to UBS (the "Interrogatories").

      At the outset, Goldman Sachs notes that it has already produced to Plaintiffs over three million pages of documents and thousands of gigabytes of data.  Goldman Sachs also has provided a significant volume of information in response to Plaintiffs' numerous previous interrogatories, requests for admission and informal discovery requests.  Notwithstanding these facts, Plaintiffs seek through these Interrogatories to again improperly expand the scope of discovery into a general audit of Goldman Sachs's short selling and related trade settlement activities concerning all securities over a five-year time period, regardless of whether those activities had any effect on trading in TASER securities.  This directly contradicts Plaintiffs' express representation to the Court on December 3, 2009 that expanding the scope of discovery

to include "same or similar conduct" would not impose any additional burden on Defendants. *See* Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Production of Documents, filed December 3, 2009, at 14-15. Moreover, the expense and burden that would be involved in responding to these Interrogatories is not justified because Plaintiffs have (a) yet to even identify any instances of alleged "abusive naked short selling" with respect to TASER—the only security at issue in this litigation, and (b) produced documents that show that nearly every Plaintiff profited from their trading in TASER and thus suffered no cognizable harm as a result of the alleged misconduct.

Contemporaneous with service of these responses, Goldman Sachs and all other Defendants are filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion. Goldman Sachs reserves the right to amend these objections and, if necessary, to respond to the Requests following a decision on that motion.

## GENERAL OBJECTIONS

Goldman Sachs hereby makes the following General Objections, which apply to each Interrogatory and are incorporated by reference in the response to each Interrogatory as if set forth fully therein. Goldman Sachs's response to each Interrogatory is made subject to and without waiving these General Objections or any specific objections raised by Goldman Sachs. To improve readability, Goldman Sachs has not repeated these objections in its response to each Interrogatory. Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.     Goldman Sachs objects to all Instructions, Definitions and Interrogatories to the extent that they call for Goldman Sachs to do more than is required under the Official Code of Georgia, the Uniform State Court Rules, the Local Rules or other applicable law.

2.      Goldman Sachs objects to the Interrogatories on the ground that they exceed the permissible number of 50, including subparts, under O.C.G.A. § 9-11-33(a).

3.      Goldman Sachs objects to the Interrogatories on the grounds that they are overbroad and unduly burdensome.  Contemporaneous with service of these responses, Goldman Sachs and all other Defendants are filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion.  Goldman Sachs reserves the right to amend these objections and, if necessary, to respond to the Interrogatories following a decision on that motion.

4.      Goldman Sachs objects to the Interrogatories as cumulative and duplicative of other discovery already provided by Goldman Sachs, including, but not limited to, discovery provided in response to Plaintiffs' requests for production of documents and Plaintiffs' Amended Second Interrogatories to Goldman Sachs.

5.      Goldman Sachs objects to each Interrogatory to the extent that it seeks information that is not relevant to the claims and defenses in this action, and thus not reasonably calculated to lead to the discovery of admissible evidence.

6.      Goldman Sachs objects to each Interrogatory to the extent it purports to seek information for transactions in accounts other than prime brokerage, institutional or firm accounts.

7.      Goldman Sachs objects to each Interrogatory to the extent it seeks information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine or any other legally recognized privilege, immunity or exemption from production.  Goldman Sachs will not produce information and/or documents containing such information or will produce the material in redacted form.

-3-

8.      Goldman Sachs objects to each Interrogatory to the extent it purports to seek information and/or documents that contain personal, private, confidential, proprietary, financial or commercial information relating to Goldman Sachs or its clients.

9.      To the extent that Goldman Sachs provides information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine or any legally recognized privilege, immunity or exemption from production in response to any Interrogatory, such provision is inadvertent and does not constitute a waiver of the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine or any other privilege with respect to other information and/or documents.

10.     Goldman Sachs objects to each Interrogatory to the extent that it requires Goldman Sachs to search for and produce information and/or documents that are not centrally maintained or from persons not believed to have significant involvement in the subject matter at issue.  To the extent that each Interrogatory purports to require Goldman Sachs to do so, it seeks to impose an undue burden and/or unreasonable costs upon Goldman Sachs.

11.     Goldman Sachs objects to each Interrogatory to the extent it purports to require Goldman Sachs to seek information and/or documents in the possession, custody or control of other persons or entities..

12.     Goldman Sachs objects to the definition of the terms "You" and "your" to the extent Plaintiffs employ those terms to seek information beyond Goldman Sachs's possession, custody or control or about entities other than Goldman Sachs.  Goldman Sachs will respond to each Interrogatory only on behalf of the entities named as Defendant in the Sixth Amended Complaint.  Goldman Sachs also objects to the definition of the terms "You" and "your" to the

-4-

extent they seek information and/or documents covered by the attorney-client privilege, the attorney work product doctrine or any other privilege or immunity from discovery.

13.     Goldman Sachs objects to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

14.     Goldman Sachs objects to the relevance and scope of the definition of the terms "Security" or "Securities" to the extent they define security or securities as instruments other than the common stock of TASER International, Inc.

15.     Goldman Sachs's failure to object to any Interrogatory on a particular ground or grounds shall not be construed as a waiver of its right to object on any additional ground(s) consistent with further investigation and discovery.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1(a):

For each year from 2004 through 2008, please Identify (as that term is defined below) (a):  Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO;

### RESPONSE TO INTERROGATORY NO. 1(a):

In addition to the General Objections set forth above, Goldman Sachs objects to Interrogatory 1(a) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(a) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Goldman Sachs also objects to Interrogatory 1(a) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS.  Goldman Sachs also objects

to Interrogatory 1(a) on the ground that Plaintiffs have exceeded the permissible number of

Interrogatories under O.C.G.A. § 9-11-33(a).  Goldman Sachs further objects to Interrogatory

1(a) to the extent that it seeks information protected by the attorney-client privilege, attorney

work product doctrine, or any other applicable privilege.  Additionally, Goldman Sachs objects

to Interrogatory 1(a) on the ground that it calls for a legal conclusion.

**INTERROGATORY NO. 1(b):**

    For each year from 2004 through 2008, please Identify (as that term is defined below)
(b):  Each instance in which you failed to deliver a security in the time period required by your
own rules, policies and procedures;[1]

**RESPONSE TO INTERROGATORY NO. 1(b):**

    In addition to the General Objections set forth above, Goldman Sachs objects to

Interrogatory 1(b) as overbroad and unduly burdensome and seeks information that is irrelevant

to the claims or defenses in this action and therefore is not reasonably calculated to lead to the

discovery of admissible evidence in that Interrogatory 1(b) seeks information regarding

transactions in all securities, regardless of whether the transaction related to TASER securities.

Goldman Sachs also objects to Interrogatory 1(b) as cumulative and duplicative of other

discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to

Goldman Sachs.  Goldman Sachs also objects to Interrogatory 1(b) on the ground that Plaintiffs

have exceeded the permissible number of Interrogatories under O.C.G.A. § 9-11-33(a). Goldman

Sachs further objects to Interrogatory 1(b) to the extent that it seeks information protected by the

attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Additionally, Goldman Sachs objects to the term "rules, policies and procedures" and to the

definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly

---

[1] For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.

with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

### INTERROGATORY NO. 1(c):

For each year from 2004 through 2008, please Identify (as that term is defined below) (c): Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;

### RESPONSE TO INTERROGATORY NO. 1(c):

In addition to the General Objections set forth above, Goldman Sachs objects to Interrogatory 1(c) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(c) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Goldman Sachs also objects to Interrogatory 1(c) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Goldman Sachs.  Goldman Sachs also objects to Interrogatory 1(c) on the ground that Plaintiffs have exceeded the permissible number of Interrogatories under O.C.G.A. § 9-11-33(a). Goldman Sachs further objects to Interrogatory 1(c) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Additionally, Goldman Sachs objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

**INTERROGATORY NO. 1(d):**

For each year from 2004 through 2008, please Identify (as that term is defined below) (d): Each instance in which you failed to close out a failure to deliver position as required by your own rules, policies;[2]

**RESPONSE TO INTERROGATORY NO. 1(d):**

In addition to the General Objections set forth above, Goldman Sachs objects to Interrogatory 1(d) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(d) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Goldman Sachs also objects to Interrogatory 1(d) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Goldman Sachs. Goldman Sachs also objects to Interrogatory 1(d) on the ground that Plaintiffs have exceeded the permissible number of Interrogatories under O.C.G.A. § 9-11-33(a). Goldman Sachs further objects to Interrogatory 1(d) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Additionally, Goldman Sachs objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

**INTERROGATORY NO. 1(e):**

For each year from 2004 through 2008, please Identify (as that term is defined below) (e): Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3] and

---

[2] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

**RESPONSE TO INTERROGATORY NO. 1(e):**

In addition to the General Objections set forth above, Goldman Sachs objects to Interrogatory 1(e) as overbroad and unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(e) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Goldman Sachs also objects to Interrogatory 1(e) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Goldman Sachs.  Goldman Sachs also objects to Interrogatory 1(e) on the ground that Plaintiffs have exceeded the permissible number of Interrogatories under O.C.G.A. § 9-11-33(a). Goldman Sachs further objects to Interrogatory 1(e) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Additionally, Goldman Sachs objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

**INTERROGATORY NO. 1(f):**

For each year from 2004 through 2008, please Identify (as that term is defined below) (f): Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

**RESPONSE TO INTERROGATORY NO. 1(f):**

In addition to the General Objections set forth above, Goldman Sachs objects to Interrogatory 1(f) as overbroad and unduly burdensome and seeks information that is irrelevant

---

[3] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211.  Thus, there should be no issue as to their clarity.

to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(f) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Goldman Sachs also objects to Interrogatory 1(f) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to Goldman Sachs.  Goldman Sachs also objects to Interrogatory 1(f) on the ground that Plaintiffs have exceeded the permissible number of Interrogatories under O.C.G.A. § 9-11-33(a). Goldman Sachs further objects to Interrogatory 1(f) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Additionally, Goldman Sachs objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

Dated: July 19, 2010

Richard H. Klapper
Admitted Pro Hac Vice
Richard C. Pepperman, II
Admitted Pro Hac Vice
Tracy Richelle High
Admitted Pro Hac Vice

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Ph: 212-558-4000
Fax: 212-558-3588

*Attorneys for Defendants Goldman, Sachs & Co.
and Goldman Sachs Execution & Clearing, L.P.*

Richard H. Sinkfield
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290

ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, N. E.
Atlanta, GA 30303-1601
Phone: 404-522-4700
Fax: 404-525-2224

*Attorneys for Defendants*

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date: Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit Q

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

|  |  |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY & CO., INC., *et al.*,<br><br>          Defendants. | Civil Case No.<br>2008-EV-004739-B |

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED'S
RESPONSES AND OBJECTIONS TO PLAINTIFFS'
<u>FIFTH INTERROGATORIES TO ALL DEFENDANTS</u>**

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") hereby responds to Plaintiffs' Fifth Interrogatories to all Defendants and Sixth Interrogatories to UBS (the "Interrogatories").

At the outset, Merrill Lynch notes that it has already produced to Plaintiffs over a million pages of documents and hundreds of gigabytes of data, including millions of data entries concerning trading in TASER securities. Merrill Lynch also has provided a significant volume of information in response to Plaintiffs' numerous previous interrogatories, requests for admission and informal discovery requests. Notwithstanding these facts, Plaintiffs seek through these Interrogatories to again improperly expand the scope of discovery into a general audit of Merrill Lynch's short selling and related trade settlement activities concerning all securities over a five-year time period, regardless of whether those activities impacted trading in TASER securities. This directly contradicts Plaintiffs' express representation to the Court on December 3, 2009 that expanding the scope of discovery to include "same or similar conduct" would not impose any additional burden on Defendants. *See* Plaintiffs' Reply in Support of Plaintiffs'

Motion to Compel Production of Documents, filed December 3, 2009, at 14-15. Moreover, the expense and burden that would be involved in responding to these Interrogatories is not justified where Plaintiffs have (a) yet to even identify any instances of alleged "abusive naked short selling" with respect to TASER —the only security at issue in this litigation, and (b) admitted that nearly every Plaintiff profited from their trading in TASER. Contemporaneous with service of these responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion.

### GENERAL OBJECTIONS

Merrill Lynch hereby makes the following General Objections, which apply to each Interrogatory and are incorporated by reference in the response to each Interrogatory as if set forth fully therein. Any response to each Interrogatory is made subject to and without waiving these General Objections. To improve readability, Merrill Lynch has not repeated these objections in its response to each Interrogatory. Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.     Merrill Lynch objects to all Instructions, Definitions and Interrogatories to the extent that they call for Merrill Lynch to do more than is required under the Official Code of Georgia, the Uniform State Court Rules, the Local Rules or other applicable law.

2.     In particular, Merrill Lynch objects to the Interrogatories on the ground that Plaintiffs have now exceeded the permissible number of 50, including subparts, under O.C.G.A. § 9-11-33(a) "without leave of court upon a showing of complex litigation or undue hardship incurred."

2

3.      Merrill Lynch objects to the Interrogatories on the grounds that they are overbroad and unduly burdensome in that Merrill Lynch has already produced to Plaintiffs over one million pages of documents and hundreds of gigabytes of data, including millions of data entries concerning trading in TASER securities.  Merrill Lynch has also provided a significant volume of information in response to Plaintiffs' numerous interrogatories, requests for admission and informal discovery requests.  Notwithstanding that fact, through these Interrogatories Plaintiffs seek to again expand the scope of discovery into a general audit of Defendants' short selling and related trade settlement activities concerning all securities over a more than five-year time period, regardless of whether those activities impacted or relate to trading in TASER securities.  Contemporaneous with service of these responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion.  Merrill Lynch reserves the right to amend these objections and, if necessary, to respond to the Interrogatories following a decision on that motion.

4.      Merrill Lynch objects to the Interrogatories on the ground that they are unduly burdensome because they seek to impose an obligation on Merrill Lynch to gather information about non-TASER securities beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct."  (*See* Defendants' Motion For Protective Order With Respect To Discovery Served By Plaintiffs On June 10, 2010.)

5.      Merrill Lynch objects to each Interrogatory on the ground that it seeks information that is neither relevant to the claims and defenses in this action, nor reasonably calculated to lead to the discovery of admissible evidence.

6.    Merrill Lynch objects to these Interrogatories as cumulative and duplicative of other discovery already provided by Merrill Lynch, including, but not limited to, discovery provided in response to Plaintiffs' requests for production of documents and Plaintiffs' Amended Second Interrogatories to Each Defendant.

7.    Merrill Lynch objects to each Interrogatory to the extent it seeks information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine, the accountant-client privilege, or any other legally recognized privilege, immunity or exemption from production.  Merrill Lynch will not produce information and/or documents containing such information or will produce the material in redacted form.  Merrill Lynch would be willing to provide a log in accordance with the governing rules if documents are redacted or withheld because they are protected from disclosure.

8.    To the extent that Merrill Lynch provides information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine, the accountant-client privilege or any legally recognized privilege, immunity or exemption from production in response to any Interrogatory, such provision is inadvertent and does not constitute a waiver of the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine, the accountant-client privilege or any other privilege with respect to other information and/or documents.  Consistent with the terms of the Stipulation and Protective Order Regarding Confidential Information, Merrill Lynch reserves the right to request the return of any such information and/or documents.

9.      Merrill Lynch objects to each Interrogatory to the extent it purports to seek information and/or documents that contain personal, private, confidential, proprietary, financial or commercial information relating to Merrill Lynch or its customers.

10.     Merrill Lynch objects to each Interrogatory to the extent that it purports to require Merrill Lynch to seek information and/or documents in the possession, custody or control of other persons or entities or to create documents not presently in Merrill Lynch's possession, custody or control.  Merrill Lynch also objects to each Interrogatory to the extent that it requests documents that are in the public domain and are therefore equally available to all parties.  Merrill Lynch will provide responses, if any, only to the extent that such information or materials are in its possession, custody or control.

11.     Merrill Lynch objects to each Interrogatory to the extent that it requires Merrill Lynch to search for and produce information and/or documents that are not centrally maintained or from persons not believed to have significant involvement in the subject matter at issue.  To the extent that each Interrogatory purports to require Merrill Lynch to do so, it seeks to impose an undue burden and/or unreasonable costs upon Merrill Lynch.

12.     Merrill Lynch objects to each Interrogatory to the extent that it explicitly or implicitly characterizes facts, events, circumstances or issues relating to the subject of this litigation.

13.     Merrill Lynch objects to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the Company."

14.     Merrill Lynch objects to the relevance and scope of the definition of the terms "Security" or "Securities" to the extent they define security or securities as instruments other than the common stock of TASER International, Inc.

15.     Merrill Lynch objects to the definition of the terms "You" and "Your" to the extent Plaintiffs employ the terms to seek information beyond Merrill Lynch's possession, custody or control or about entities other than Merrill Lynch.  To the extent Merrill Lynch responds to these Interrogatories, it will do so only on behalf of the entity named as Defendant in the Sixth Amended Complaint.  Merrill Lynch also objects to the definition of the terms "You" and "Your" to the extent they seek information and/or documents covered by the attorney-client privilege, the attorney work product doctrine, the accountant-client privilege, or any other privilege or immunity from discovery.

16.     Merrill Lynch continues to review the relevant substantive and procedural facts of this case and its current position with respect to each Interrogatory may change as a result of its ongoing review.  Accordingly, Merrill Lynch reserves its right to amend, supplement, correct, clarify and/or add to its responses and objections to the Interrogatory at any time pursuant to §9-11-26(e) of the Official Code of Georgia.

17.     Merrill Lynch reserves all objections that may be available to it at any hearing or trial or on any motion related to the use or admissibility of any information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

18.     Merrill Lynch expressly incorporates all of the General Objections set forth above, as well as any General Objections identified in Merrill Lynch's objections and responses to Plaintiffs' first, second, amended second, third, and fourth interrogatories to Merrill Lynch, into the Specific Objections to each Interrogatory.

6

## SPECIFIC OBJECTIONS AND RESPONSES

### *INTERROGATORY NO. 1(a):*

For each year from 2004 through 2008, please Identify (as that term is defined below):  a. Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO;

### RESPONSE TO INTERROGATORY NO. 1(a):

In addition to the General Objections set forth above, Merrill Lynch objects to Interrogatory 1(a) on the grounds that it is overbroad, unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(a) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities.  Merrill Lynch also objects to Interrogatory 1(a) on the ground that it is unduly burdensome because it seeks to impose an obligation on Merrill Lynch to gather information about non-TASER securities beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct."  Merrill Lynch further objects to Interrogatory 1(a) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS.  Merrill Lynch further objects to Interrogatory 1(a) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Additionally, Merrill Lynch objects to Interrogatory 1(a) on the ground that it calls for a legal conclusion.

***INTERROGATORY NO. 1(b):***

For each year from 2004 through 2008, please Identify (as that term is defined below):  b. Each instance in which you failed to deliver a security in the time period required by your own rules, policies and procedures;[1]

**RESPONSE TO INTERROGATORY NO. 1(b):**

In addition to the General Objections set forth above, Merrill Lynch objects to Interrogatory 1(b) on the grounds that it is overbroad, unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(b) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities.  Merrill Lynch also objects to Interrogatory 1(b) on the ground that it is unduly burdensome because it seeks to impose an obligation on Merrill Lynch to gather information about non-TASER securities beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct."  Merrill Lynch further objects to Interrogatory 1(b) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS.  Merrill Lynch further objects to Interrogatory 1(b) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Merrill Lynch further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

---

[1]   For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.

_**INTERROGATORY NO. 1(c):**_

For each year from 2004 through 2008, please Identify (as that term is defined below):  c. Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;

**RESPONSE TO INTERROGATORY NO. 1(c):**

In addition to the General Objections set forth above, Merrill Lynch objects to Interrogatory 1(c) on the grounds that it is overbroad, unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(c) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities.  Merrill Lynch also objects to Interrogatory 1(c) on the ground that it is unduly burdensome because it seeks to impose an obligation on Merrill Lynch to gather information about non-TASER securities beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Merrill Lynch further objects to Interrogatory 1(c) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS.  Merrill Lynch further objects to Interrogatory 1(c) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Merrill Lynch further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

### *INTERROGATORY NO. 1(d):*

For each year from 2004 through 2008, please Identify (as that term is defined below):  d. Each instance in which you failed to close out a failure to deliver position as required by your own rules, policies;[2]

## RESPONSE TO INTERROGATORY NO. 1(d):

In addition to the General Objections set forth above, Merrill Lynch objects to Interrogatory 1(d) on the grounds that it is overbroad, unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(d) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities.  Merrill Lynch also objects to Interrogatory 1(d) on the ground that it is unduly burdensome because it seeks to impose an obligation on Merrill Lynch to gather information about non-TASER securities beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct."  Merrill Lynch further objects to Interrogatory 1(d) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS.  Merrill Lynch further objects to Interrogatory 1(d) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Merrill Lynch further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

---

[2]   The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211.  Thus, there should be no issue as to their clarity.

**_INTERROGATORY NO. 1(e):_**

For each year from 2004 through 2008, please Identify (as that term is defined below): e. Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3]

**RESPONSE TO INTERROGATORY NO. 1(e):**

In addition to the General Objections set forth above, Merrill Lynch objects to Interrogatory 1(e) on the grounds that it is overbroad, unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(e) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. Merrill Lynch also objects to Interrogatory 1(e) on the ground that it is unduly burdensome because it seeks to impose an obligation on Merrill Lynch to gather information about non-TASER securities beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." Merrill Lynch further objects to Interrogatory 1(e) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS. Merrill Lynch further objects to Interrogatory 1(e) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Merrill Lynch further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

---

[3]   The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

***INTERROGATORY NO. 1(f):***

For each year from 2004 through 2008, please Identify (as that term is defined below):  f. Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

## RESPONSE TO INTERROGATORY NO. 1(f):

In addition to the General Objections set forth above, Merrill Lynch objects to Interrogatory 1(f) on the grounds that it is overbroad, unduly burdensome and seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(f) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities.  Merrill Lynch also objects to Interrogatory 1(f) on the ground that it is unduly burdensome because it seeks to impose an obligation on Merrill Lynch to gather information about non-TASER securities beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct."  Merrill Lynch further objects to Interrogatory 1(f) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS.  Merrill Lynch further objects to Interrogatory 1(f) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Merrill Lynch further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

12

Dated:  July 19, 2010

Andrew J. Frackman
   Admitted *Pro Hac Vice*
Brad M. Elias
   Admitted *Pro Hac Vice*

*Attorneys for Merrill Lynch, Pierce, Fenner*
*& Smith Incorporated*

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036
Phone:  (212) 326-2000
Fax:  (212) 326-2061

Richard H. Sinkfield, Esq.
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290
ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree St, NW
Atlanta, Georgia  30307
Phone:  (404) 522-4700
Fax:  (404) 525-2224

*Attorneys for Defendants Morgan Stanley & Co.*
*Incorporated; Goldman, Sachs & Co., Goldman*
*Sachs Execution & Clearing, L.P.; Bear,*
*Stearns Securities Corp. (n/k/a JP Morgan*
*Clearing Corp.); Bear, Stearns & Co. Inc.*
*(n/k/a JP Morgan Securities Inc.); Merrill*
*Lynch, Pierce, Fenner & Smith, Inc.; Deutsche*
*Bank Securities Inc.; Credit Suisse Securities*
*(USA) LLC, Inc.; Banc of America Securities*
*LLC; and UBS Securities, LLC*

NY1:1819952.1

13

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date:  Jul 19 2010  9:53PM
Mark Harper, Clerk

# Exhibit R

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC., *et al.*,

        Plaintiffs,

v.

MORGAN STANLEY & CO., INC., *et al.*,

        Defendants.

Civil Case No.
2008-EV-004739-B

**DEFENDANT MORGAN STANLEY & CO. INC.'S OBJECTIONS TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES TO ALL DEFENDANTS
AND SIXTH SET OF INTERROGATORIES TO UBS**

Defendant Morgan Stanley & Co. Incorporated ("MSCO") hereby objects to Plaintiffs'

Fifth Set of Interrogatories to all Defendants and Sixth Set of Interrogatories to UBS (the

"Interrogatories") as follows.

At the outset, MSCO notes that it has already produced to Plaintiffs over 3.1 million

pages of documents and over 2.5 million rows of data. MSCO also has provided a significant

volume of information in response to Plaintiffs' numerous previous interrogatories, requests for

production, requests for admission and informal discovery requests. Notwithstanding these facts,

Plaintiffs seek through these Interrogatories again improperly to expand the scope of discovery

into a general audit of MSCO's short selling and related trade settlement activities concerning all

securities over a five-year time period, regardless of whether those activities had any effect on

trading in TASER securities. This directly contradicts Plaintiffs' express representation to the

Court on December 3, 2009 that expanding the scope of discovery to include "same or similar

conduct" would not impose any additional burden on Defendants. (*See* Plaintiffs' Reply in

Support of Plaintiffs' Motion to Compel Production of Documents, at 14–15 (Dec. 3, 2009).)

Moreover, the expense and burden that would be involved in responding to these Interrogatories

is not justified because Plaintiffs have yet to meaningfully identify any instances in which

MSCO purportedly engaged in manipulative "abusive naked short selling" with respect to

TASER—the only security at issue in this litigation—thereby impacting the price of TASER

stock. Further, Plaintiffs have responded to written discovery admitting—and produced

documents demonstrating—that almost every Plaintiff profited from trading in TASER and thus

suffered no cognizable harm as a result of any hypothetical misconduct.

Contemporaneous with service of these objections, Defendants are also filing a Motion

for Protective Order with Respect to Plaintiffs' June 10, 2010 Discovery for the reasons

discussed herein and as explained in further detail in that motion.  MSCO reserves the right to

amend these objections and, if necessary, to respond to the Interrogatories following a decision

on that motion.

## GENERAL OBJECTIONS

MSCO hereby makes the following General Objections, which apply to each

Interrogatory and are incorporated by reference in each and every response below as if set forth

fully therein.  MSCO's responses to each Interrogatory are made subject to and without waiving

these General Objections or any specific objections raised by MSCO.  To improve readability,

MSCO has not repeated these objections with respect to each specific interrogatory below.

Failure to reiterate a General Objection below does not constitute a waiver of that or any other

objection.

1.     MSCO objects to all Instructions, Definitions and Interrogatories to the extent that

they call for MSCO to do more than is required under the Official Code of Georgia, the Uniform

State Court Rules, the Local Rules or other applicable law.

2.      MSCO objects to the Interrogatories on the ground that they exceed the permissible number of interrogatories (50), including subparts, under O.C.G.A. § 9-11-33(a).

3.      MSCO objects to the Interrogatories to the extent that they seek to contravene the key word searches that MSCO and Plaintiffs previously agreed to and seeks the production of information or documents broader than the agreed-upon searches.  MSCO objects to each Interrogatory to the extent that it requires MSCO to search for and produce information and/or documents that are not centrally maintained or from persons not believed to have significant involvement in the subject matter at issue.  MSCO further objects to each Interrogatory to the extent that it requires MSCO to search computer records or other electronic data storage media that are not reasonably accessible, manageable or searchable.  To the extent that each Interrogatory purports to require MSCO to do so, it seeks to impose an undue burden and/or unreasonable costs upon MSCO.

4.      MSCO objects to the Interrogatories to the extent that they are unreasonably cumulative or duplicative, or seek information that is already in Plaintiffs' possession or that is obtainable from another source that is more convenient, less burdensome or less expensive.

5.      MSCO objects to each Interrogatory to the extent it purports to seek information for transactions in accounts other than prime brokerage, institutional or firm accounts.

6.      MSCO objects to each Interrogatory to the extent each seeks information that is protected by applicable privileges or immunities from disclosure, including, without limitation, the attorney-client privilege and the work-product doctrine.  Inadvertent disclosure, if any, of information subject to any privilege, including without limitation the attorney-client privilege or work-product doctrine, is not intended to, and shall not, waive any such privilege or doctrine.

3

7.     MSCO objects to each Request to the extent it purports to seek information for transactions in accounts other than prime brokerage, firm, institutional or private wealth management accounts.

8.     MSCO objects to each Interrogatory to the extent it purports to seek information and/or documents that contain personal, private, confidential, proprietary, financial or commercial information relating to MSCO or its clients and customers.

9.     MSCO objects to each Interrogatory to the extent it purports to require MSCO to seek information and documents in the possession, custody or control of other persons or entities or to create documents not presently in MSCO's possession, custody or control.  In particular, MSCO objects to the definition of the terms "You" and "your" to the extent Plaintiffs employ the terms to seek information beyond MSCO's possession, custody or control or about entities other than MSCO.  To the extent MSCO later responds to any of the Interrogatories, MSCO will respond only on its own behalf.  MSCO also objects to the definition of the terms "You" and "your" to the extent that they seek information and/or documents covered by the attorney-client privilege, the attorney work product doctrine or any other privilege or immunity from discovery.

10.     MSCO objects to the definition of "rules, policies and procedures" in footnote I as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

11.     MSCO's failure to object to any Interrogatory on a particular ground or grounds shall not be construed as a waiver of its right to object on any additional ground(s) consistent with further investigation and discovery.  MSCO reserves its right to amend, supplement, correct, clarify and/or add to its responses and objections to the Interrogatories at any time pursuant to § 9-11-26(e) of the Official Code of Georgia.  MSCO also reserves the right to use or

4

rely on, at any time, subsequently discovered information or information omitted from these responses and objections as a result of mistake, error, oversight or inadvertence. MSCO further reserves all objections that may be available to it at any hearing or trial or on any motion related to the use or admissibility of any information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

In addition to the General Objections set forth above, which are expressly incorporated by reference in each response below, MSCO further makes the following responses and objections.

## OBJECTIONS TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 1(a):

For each year from 2004 through 2008, please Identify (as that term is defined below) (a): Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO;

### RESPONSE TO INTERROGATORY NO. 1(a):

In addition to the General Objections, MSCO objects to Interrogatory No. 1(a) as overly broad and unduly burdensome, particularly because it seeks to require MSCO to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct" at issue. The regulatory provisions cited in the Interrogatory are administrative and Plaintiffs make no claim, and could not make any claim, based on their violation. They are therefore not "at issue" in this action. MSCO also objects to this Interrogatory on the ground that it seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence. MSCO further objects to this Interrogatory on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including, but not limited to Plaintiffs' Third Set of Interrogatories to All Defendants Except UBS and

Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass MSCO.  Additionally, MSCO objects to this Interrogatory on the ground that it calls for a legal conclusion.

## INTERROGATORY NO. 1(b):

For each year from 2004 through 2008, please Identify (as that term is defined below)  (b):  Each instance in which you failed to deliver a security in the time period required by your own rules, policies and procedures;[1]

## RESPONSE TO INTERROGATORY NO. 1(b):

In addition to the General Objections set forth above, MSCO objects to Interrogatory No. 1(b) as overly broad and unduly burdensome, particularly because it seeks to require MSCO to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct" at issue. Plaintiffs make no claim, and could not make any claim, based on the violation of internal "rules, policies and procedures" cited in the Interrogatory.  They are therefore not "at issue" in this action.  MSCO also objects to this Interrogatory on the ground that it seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence.  MSCO further objects to this Interrogatory on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including, but not limited to Plaintiffs' Third Set of Interrogatories to All Defendants Except UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass MSCO.

---

[1]  For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.

6

**INTERROGATORY NO. 1(c):**

For each year from 2004 through 2008, please Identify (as that term is defined below) (c): Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;

**RESPONSE TO INTERROGATORY NO. 1(c):**

In addition to the General Objections set forth above, MSCO objects to Interrogatory No. 1(c) as overly broad and unduly burdensome, particularly because it seeks to require MSCO to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct" at issue. Plaintiffs make no claim, and could not make any claim, based on the violation of internal "rules, policies and procedures" cited in the Interrogatory. They are therefore not "at issue" in this action. MSCO also objects to this Interrogatory on the ground that it seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence. MSCO objects to this Interrogatory on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including, but not limited to Plaintiffs' Third Set of Interrogatories to All Defendants Except UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass MSCO.

**INTERROGATORY NO. 1(d):**

For each year from 2004 through 2008, please Identify (as that term is defined below) (d): Each instance in which you failed to close out a failure to deliver position as required by your own rules, policies;[2]

---

[2] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

**RESPONSE TO INTERROGATORY NO. 1(d):**

In addition to the General Objections set forth above, MSCO objects to Interrogatory No. 1(d) as overly broad and unduly burdensome, particularly because it seeks to require MSCO to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct" at issue. Plaintiffs make no claim, and could not make any claim, based on the violation of internal "rules, policies and procedures" cited in the Interrogatory. They are therefore not "at issue" in this action. MSCO also objects to this Interrogatory on the ground that it seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence. MSCO objects to this Interrogatory on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including, but not limited to Plaintiffs' Third Set of Interrogatories to All Defendants Except UBS and Plaintiffs' Second Set of Interrogatories to Each Defendant, Interrogatory No. 5, and, as such, is designed to harass MSCO.

**INTERROGATORY NO. 1(e):**

For each year from 2004 through 2008, please Identify (as that term is defined below) (e): Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3] and

**RESPONSE TO INTERROGATORY NO. 1(e):**

In addition to the General Objections set forth above, MSCO objects to Interrogatory No. 1(e) as overly broad and unduly burdensome, particularly because it seeks to require MSCO to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct" at issue.

---

[3] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

Plaintiffs make no claim, and could not make any claim, based on the violation of internal "rules, policies and procedures" cited in the Interrogatory. They are therefore not "at issue" in this action. MSCO also objects to this Interrogatory on the ground that it seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence. MSCO objects to this Interrogatory on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including, but not limited to Plaintiffs' Third Set of Interrogatories to All Defendants Except UBS, and, as such, is designed to harass MSCO.

**INTERROGATORY NO. 1(f):**

For each year from 2004 through 2008, please Identify (as that term is defined below) (f): Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

**RESPONSE TO INTERROGATORY NO. 1(f):**

In addition to the General Objections set forth above, MSCO objects to Interrogatory No. 1(f) as overly broad and unduly burdensome, particularly because it seeks to require MSCO to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct" at issue. Plaintiffs make no claim, and could not make any claim, based on the violation of internal "rules, policies and procedures" cited in the Interrogatory. They are therefore not "at issue" in this action. MSCO also objects to this Interrogatory on the ground that it seeks information that is irrelevant to the claims or defenses in this action and therefore is not reasonably calculated to lead to the discovery of admissible evidence. MSCO further objects to this Interrogatory on the grounds that it is cumulative and duplicative of Plaintiffs' other discovery requests, including,

but not limited to Plaintiffs' Third Set of Interrogatories to All Defendants Except UBS, and, as such, is designed to harass MSCO.

Dated:  July 19, 2010

Robert F. Wise, Jr. (admitted *pro hac vice*)
William J. Fenrich (admitted *pro hac vice*)
Melissa T. Aoyagi (admitted *pro hac vice*)

*Attorneys for Morgan Stanley & Co.*
*Incorporated*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Tel: (212) 450-4000
Fax: (212) 701-5800

Richard H. Sinkfield
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290

*Attorneys for Defendants Morgan Stanley & Co.*
*Incorporated; Goldman, Sachs & Co.; Goldman*
*Sachs Execution & Clearing, L.P.; Bear,*
*Stearns Securities Corp. (n/k/a J.P. Morgan*
*Clearing Corp.); Bear, Stearns & Co. Inc. (n/k/a*
*J.P. Morgan Securities Inc.); Merrill Lynch,*
*Pierce, Fenner & Smith, Inc.; Deutsche Bank*
*Securities Incorporated.; Credit Suisse*
*Securities (USA) LLC; Banc of America*
*Securities LLC; and UBS Securities, LLC*

ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree St., NE
Atlanta, Georgia  30303
Phone:  (404) 522-4700
Fax:  (404) 525-2224

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32215379
Date: Jul 19 2010 9:53PM
Mark Harper, Clerk

# Exhibit S

**IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA**

TASER INTERNATIONAL, INC.,
*et al.*,

      Plaintiffs,

v.

MORGAN STANLEY & CO., INC.,
*et al.*,

      Defendants.

Civil Case No.
2008-EV-004739-B

## UBS SECURITIES, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIFTH INTERROGATORIES TO ALL DEFENDANTS AND SIXTH INTERROGATORIES TO UBS

Defendant UBS Securities, LLC ("UBS") hereby responds to Plaintiffs' Sixth Interrogatories to Defendant UBS Securities, LLC (the "Interrogatories") as follows:

At the outset, UBS notes that it has already produced to Plaintiffs over 1.2 million pages of documents and thousands of gigabytes of data, including millions of data entries concerning trading in TASER securities. UBS also has provided a significant volume of information in response to Plaintiffs' numerous previous interrogatories, requests for admission and informal discovery requests. Notwithstanding these facts, Plaintiffs seek through these Interrogatories to again improperly expand the scope of discovery into a general audit of UBS's short selling and related trade settlement activities concerning all securities over a five-year time period, regardless of whether those activities impacted trading in TASER securities. This directly contradicts Plaintiffs' express representation to the Court on December 3, 2009 that expanding the scope of discovery to include "same or similar conduct" would not impose any additional burden on Defendants. *See* Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Production of Documents, filed December 3, 2009, at 14-15. Moreover, the expense and burden

that would be involved in responding to these Interrogatories is not justified where Plaintiffs have (a) yet to even identify any instances of alleged "abusive naked short selling" with respect to TASER — the only security at issue in this litigation, and (b) admitted that nearly every Plaintiff profited from his or her trading in TASER.

Contemporaneous with service of these responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion.   UBS reserves the right to amend these objections and, if necessary, to respond to the Interrogatories following a decision on their Motion.

## GENERAL OBJECTIONS

UBS hereby makes the following General Objections, which apply to each Interrogatory and are incorporated by reference in the response to each Interrogatory as if set forth fully therein.   Any response to each Interrogatory is made subject to and without waiving these General Objections.   To improve readability, UBS has not repeated these objections in its response to each Interrogatory.   Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.      UBS objects to all Instructions, Definitions and Interrogatories to the extent that they call for UBS to do more than is required under the Official Code of Georgia, the Uniform State Court Rules, the Local Rules or other applicable law.

2.      UBS objects to the Interrogatories on the ground that Plaintiffs have now exceeded the permissible number of 50, including subparts under O.C.G.A. § 9-11-33(a) "without leave of court upon a showing of complex litigation or undue hardship incurred."

2

3.      UBS objects to the Interrogatories on the grounds that they are overbroad and unduly burdensome in that UBS has already produced to Plaintiffs over 1.2 million pages of documents and thousands of gigabytes of data, including millions of data entries concerning trading in TASER securities.  UBS has also provided a significant volume of information in response to Plaintiffs' numerous interrogatories, requests for admission and informal discovery requests.  Notwithstanding that fact, through these Interrogatories Plaintiffs seek to again expand the scope of discovery into a general audit of Defendants' short selling and related trade settlement activities concerning all securities over a more than five-year time period, regardless of whether those activities impacted or relate to trading in TASER securities.  Contemporaneous with service of these responses, Defendants are also filing a Motion For Protective Order With Respect To Plaintiffs' June 10, 2010 Discovery for the reasons discussed herein and as explained in further detail in their Motion.  UBS reserves the right to amend these objections and, if necessary, to respond to the Interrogatories following a decision on their Motion.

4.      UBS objects to the Interrogatories on the ground that they are unduly burdensome because they seek to impose an obligation on UBS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel relating to "same or similar conduct."  (*See* Defendants' Motion For Protective Order With Respect To Discovery Served By Plaintiffs On June 10, 2010.)

5.      UBS objects to each Interrogatory on the ground that it seeks information that is neither relevant to the claims and defenses in this action, nor reasonably calculated to lead to the discovery of admissible evidence.

6.      UBS objects to these Interrogatories as cumulative and duplicative of other discovery already provided by UBS, including, but not limited to, discovery provided in response

3

to Plaintiffs' requests for production of documents and Plaintiffs' Amended Second Interrogatories to UBS.

7.    UBS objects to each Interrogatory to the extent it seeks information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine, the accountant-client privilege, or any other legally recognized privilege, immunity or exemption from production.    UBS will not produce information and/or documents containing such information or will produce the material in redacted form. UBS would be willing to provide a log in accordance with the governing rules if documents are redacted or withheld because they are protected from disclosure.

8.    To the extent that UBS provides information and/or documents covered by the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine, the accountant-client privilege or any legally recognized privilege, immunity or exemption from production in response to any Interrogatory, such provision is inadvertent and does not constitute a waiver of the attorney-client privilege, the joint defense or common interest privilege, the attorney work product doctrine, the accountant-client privilege or any other privilege with respect to other information and/or documents.  Consistent with the terms of the Stipulation and Protective Order Regarding Confidential Information, UBS reserves the right to request the return of any such information and/or documents.

9.    UBS objects to each Interrogatory to the extent that it purports to require UBS to seek information and/or documents in the possession, custody or control of other persons or entities. UBS also objects to each Interrogatory to the extent that it requests documents that are in the public domain and are therefore equally available to all parties.  UBS will provide

4

responses, if any, only to the extent that such information or materials are in its possession, custody or control.

10.   UBS objects to each Interrogatory to the extent that it requires UBS to search for and produce information and/or documents that are not centrally maintained or from persons not believed to have significant involvement in the subject matter at issue.  To the extent that each Interrogatory purports to require UBS to do so, it seeks to impose an undue burden and/or unreasonable costs upon UBS.

11.   UBS objects to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the Company."

12.   UBS objects to the relevance and scope of the definition of the terms "Security" or "Securities" to the extent they define security or securities as instruments other than the common stock of TASER International, Inc.

13.   UBS objects to the definition of the terms "You" and "your" to the extent Plaintiffs employ the terms to seek information beyond UBS's possession, custody or control or about entities other than UBS.  To the extent UBS responds to these Interrogatories, it will do so only on behalf of the entity named as Defendant in the Sixth Amended Complaint.  UBS also objects to the definition of the terms "You" and "Your" to the extent they seek information and/or documents covered by the attorney-client privilege, the attorney work product doctrine, the accountant-client privilege, or any other privilege or immunity from discovery.

14.   UBS continues to review the relevant substantive and procedural facts of this case and its current position with respect to each Interrogatory may change as a result of its ongoing review.  Accordingly, UBS reserves its right to amend, supplement, correct, clarify and/or add to

its responses and objections to the Interrogatory at any time pursuant to §9-11-26(e) of the Official Code of Georgia.

    15.    UBS reserves all objections that may be available to it at any hearing or trial or on any motion related to the use or admissibility of any information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

## SPECIFIC OBJECTIONS AND RESPONSES

### *INTERROGATORY NO. 1(a):*

For each year from 2004 through 2008, please Identify (as that term is defined below): a. Each instance in which you violated NASD Rule 3370, UPC 71 or Regulation SHO; and

### RESPONSE TO INTERROGATORY NO. 1(a):

    In addition to the General Objections set forth above, UBS objects to Interrogatory 1(a) on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(a) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities.  UBS further objects to Interrogatory 1(a) because it seeks to impose an obligation on UBS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." UBS further objects to Interrogatory 1(a) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Third Set of Interrogatories to all Defendants Except UBS and Fourth Set of Interrogatories to UBS.  UBS further objects to Interrogatory 1(a) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Additionally, UBS objects to Interrogatory 1(a) on the ground that it calls for a legal conclusion.

***INTERROGATORY NO. 1(b):***

For each year from 2004 through 2008, please Identify (as that term is defined below): b. Each instance in which you failed to deliver a security in the time period required by your own rules, policies and procedures;[1]

## RESPONSE TO INTERROGATORY NO. 1(b):

In addition to the General Objections set forth above, UBS objects to Interrogatory 1(b) on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(b) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. UBS further objects to Interrogatory 1(b) because it seeks to impose an obligation on UBS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." UBS further objects to Interrogatory 1(b) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to UBS. UBS further objects to Interrogatory 1(b) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. UBS further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

---

[1] For purposes of this and all subparts, "rules, policies and procedures" refers to the rules, policies and procedures contained within your compliance manuals, as well as any other formal rules, policies and procedures adopted by the company.

## *INTERROGATORY NO. 1(c):*

For each year from 2004 through 2008, please Identify (as that term is defined below): c. Each instance in which you failed to require a buy-in as required by your own rules, policies and procedures;

## RESPONSE TO INTERROGATORY NO. 1(c):

In addition to the General Objections set forth above, UBS objects to Interrogatory 1(c) on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(c) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. UBS further objects to Interrogatory 1(c) because it seeks to impose an obligation on UBS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." UBS further objects to Interrogatory 1(c) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to UBS. UBS further objects to Interrogatory 1(c) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. UBS further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

## *INTERROGATORY NO. 1(d):*

For each year from 2004 through 2008, please Identify (as that term is defined below): d. Each instance in which you failed to close out a failure to deliver position as required by your own rules, policies;[2]

---

[2] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

**RESPONSE TO INTERROGATORY NO. 1(d):**

In addition to the General Objections set forth above, UBS objects to Interrogatory 1(d) on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(d) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. UBS also objects to Interrogatory 1(d) on the ground that it is unduly burdensome because it seeks to impose an obligation on UBS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." UBS further objects to Interrogatory 1(d) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to UBS. UBS further objects to Interrogatory 1(d) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. UBS further objects to the term "rules, policies" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

*INTERROGATORY NO. 1(e):*

For each year from 2004 through 2008, please Identify (as that term is defined below): e. Each short sale in which your rules, policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[3] and

**RESPONSE TO INTERROGATORY NO. 1(e):**

In addition to the General Objections set forth above, UBS objects to Interrogatory 1(e) on the grounds that it is overbroad, unduly burdensome and seeks information that is neither

---

[3]   The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211. Thus, there should be no issue as to their clarity.

relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(e) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. UBS also objects to Interrogatory 1(e) on the ground that it is unduly burdensome because it seeks to impose an obligation on UBS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." UBS further objects to Interrogatory 1(e) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to UBS. UBS further objects to Interrogatory 1(e) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. UBS further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

### INTERROGATORY NO. 1(f):

For each year from 2004 through 2008, please Identify (as that term is defined below): f. Each short sale in which your rules, policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

### RESPONSE TO INTERROGATORY NO. 1(f):

In addition to the General Objections set forth above, UBS objects to Interrogatory 1(f) on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence in that Interrogatory 1(f) seeks information regarding transactions in all securities, regardless of whether the transaction related to TASER securities. UBS also objects to Interrogatory 1(f) on the ground that it is unduly burdensome because it seeks to impose an

obligation on UBS to gather information about securities other than TASER beyond what Plaintiffs represented to the Court in connection with their motion to compel concerning "same or similar conduct." UBS further objects to Interrogatory 1(f) as cumulative and duplicative of other discovery sought in this matter, particularly Plaintiffs' Amended Second Interrogatories to UBS. UBS further objects to Interrogatory 1(f) to the extent that it seeks information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. UBS further objects to the term "rules, policies and procedures" and to the definition of "rules, policies and procedures" in Footnote 1 as vague and ambiguous, particularly with respect to the phrase "any other formal rules, policies and procedures adopted by the company."

Dated: July 19, 2010

_____

Andrew B. Clubok
*Admitted Pro Hac Vice*
Jeffrey G. Landis
*Admitted Pro Hac Vice*
Jeffrey M. Gould
*Admitted Pro Hac Vice*

*Attorneys for Defendant UBS Securities, LLC*

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Phone: 202-879-5000
Fax: 202-879-5200

Richard H. Sinkfield
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290

11

*Attorneys for Defendants Morgan Stanley & Co., Inc.; The Goldman Sachs Group, Inc.; Bear Stearns Capital Markets, Inc.; Bear, Stearns & Co., Inc.; The Bear Stearns Companies, Inc.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; Deutsche Bank Securities, Inc.; Credit Suisse USA, Inc.; Banc of America Securities, LLC; and UBS Securities, LLC*

ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, N. E.
Atlanta, GA 30303-1601
Phone:  404-522-4700
Fax:  404-525-2224

## IN THE STATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

TASER INTERNATIONAL, INC.,
*et al.*,                                                 )
                                                         )
                                                         )
                       Plaintiffs,                       )
                                                         )
v.                                                       )       CIVIL ACTION FILE NO.
                                                         )       2008-EV-004739-B
MORGAN STANLEY & CO., INC.,                              )
*et al.*,                                                 )
                                                         )
                       Defendants.                       )
_____ )

### CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July , 2010, a true and correct copy of UBS's

Responses to Plaintiffs' Sixth Set of Interrogatories to UBS Securities, LLC was served via

e-mail and First Class Mail to the following attorneys of record:


ATTORNEYS FOR PLAINTIFFS
Steven J. Rosenwasser, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309



And via electronic mail upon the following attorneys of record:

ATTORNEYS FOR DEFENDANTS

Richard H. Sinkfield, Esq.                    Brendan Dowd, Esq.
Rogers & Hardin LLP                           O'Melveny & Myers LLP
2700 International Tower                       Times Square Tower
Atlanta, GA  30303                            7 Times Square
rsinkfield@rh-law.com                         New York, NY  10036
                                              bdowd@omm.com

Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
blfriedman@proskauer.com

Richard H. Klapper, Esq.
Sullivan and Cromwell LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000
Fax: (212) 558-3588
klapper@sullcrom.com

Robert F. Wise, Jr., Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
Robert.wise@dpw.com

Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale
and Dorr LLP
399 Park Avenue
New York, NY 10022
fraser.hunter@wilmerhale.com

Gregory Merkel, Esq.
Cadwalader Wickersham
& Taft LLP
One World Financial Center
New York, NY 10281
Tel: (212) 504-6000
greg.markel@cwt.com

This 19th day of July, 2010

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Phone: 202-879-5000
Fax: 202-879-5200

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32215379
Date: Jul 19 2010 9:53PM
Mark Harper, Clerk

# Exhibit T

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,   :
*et al.,*   :
 :
     Plaintiffs,   :   CIVIL ACTION
 :   FILE NO.: 2008-EV-004739-B
v.   :
 :
MORGAN STANLEY & CO., INC.,   :   JURY TRIAL DEMANDED
*et al.,*   :
 :
     Defendants.   :

## PLAINTIFF CONSTANCE L. ALMEROTH'S RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION TO INDIVIDUAL PLAINTIFFS

Plaintiff Constance L. Almeroth ("C. Almeroth") hereby submits her Responses to Defendants' First Set of Requests for Admission to Individual Plaintiffs.  C. Almeroth reserves the right to enter additional objections and responses, and to supplement its responses as necessary.  The failure to object to any of the Requests for Admission does not waive any general or specific objection or privilege.  C. Almeroth also agrees to meet and confer with Defendants' counsel, in good faith, in an attempt to resolve any disagreements with C. Almeroth's Responses and Objections herein.

767686.1

1.      C. Almeroth objects to Request No. 7 on the ground that it is
not relevant to this litigation and is not reasonably calculated to lead
to the discovery of admissible evidence.

2.      C. Almeroth objects to Request No. 7 on the ground that it is
unclear, vague, and ambiguous in total and particularly in its use of
the undefined terms "assets," "account(s)," "you maintained" and
"located in an account in the State of Georgia."

3.      C. Almeroth objects to Request No. 7 to the extent that it calls
for speculation and information held by third parties; *e.g.*, where
banks may physically hold or have previously held deposited assets at
an undefined time in the past.  C. Almeroth's response to this request
is limited to its own knowledge.

### 8.

**Subtracting the total sum of monies you received as a result of your
sales of the common stock of TASER from the total sum of monies you paid to
purchase the common stock of TASER, you realized a net gain based on those
transactions.**

**RESPONSE:**

a.      Admitted.

b.      Objections:

1.     C. Almeroth objects to Request No. 8 on the ground that it is not relevant to this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

2.     C. Almeroth objects to Request No. 8 on the ground that it is unclear, vague, and ambiguous, particularly in its use of the undefined terms "total sum of monies you received as a result of your sales of the common stock of TASER," "total sum of monies you paid to purchase the common stock of TASER," "realized," and "net gain."

3.     C. Almeroth objects to Request No. 8 to the extent that it prematurely seeks expert discovery.

4.     C. Almeroth objects to Request No. 8 insofar as it does not specify whether the costs of purchasing/sales should be considered and whether any monies should be discounted to present value and/or for investment and other opportunity costs.

## 9.

**You currently do not own, hold, or possess, directly or indirectly, any common stock of TASER.**

**RESPONSE:**

a.     Admitted.

b.     Objections:

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,   :
*et al.*,   :
   :
   Plaintiffs,   :   CIVIL ACTION
   :   FILE NO.: 2008-EV-004739-B
v.   :
   :
MORGAN STANLEY & CO., INC.,   :   JURY TRIAL DEMANDED
*et al.*,   :
   :
   Defendants.   :

**PLAINTIFF RICHARD D. ALMEROTH'S
RESPONSES TO DEFENDANTS' FIRST SET OF
REQUESTS FOR ADMISSION TO INDIVIDUAL PLAINTIFFS**

Plaintiff Richard D. Almeroth ("R. Almeroth") hereby submits his Responses to Defendants' First Set of Requests for Admission to Individual Plaintiffs. R. Almeroth reserves the right to enter additional objections and responses, and to supplement its responses as necessary. The failure to object to any of the Requests for Admission does not waive any general or specific objection or privilege. R. Almeroth also agrees to meet and confer with Defendants' counsel, in good faith, in an attempt to resolve any disagreements with R. Almeroth's Responses and Objections herein.

767694.1

1.      R. Almeroth objects to Request No. 7 on the ground that it is not relevant to this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

2.      R. Almeroth objects to Request No. 7 on the ground that it is unclear, vague, and ambiguous in total and particularly in its use of the undefined terms "assets," "account(s)," "you maintained" and "located in an account in the State of Georgia."

3.      R. Almeroth objects to Request No. 7 to the extent that it calls for speculation and information held by third parties; *e.g.*, where banks may physically hold or have previously held deposited assets at an undefined time in the past.  R. Almeroth's response to this request is limited to its own knowledge.

**8.**

**Subtracting the total sum of monies you received as a result of your sales of the common stock of TASER from the total sum of monies you paid to purchase the common stock of TASER, you realized a net gain based on those transactions.**

**RESPONSE:**

a.      Admitted.

b.      Objections:

1.      R. Almeroth objects to Request No. 8 on the ground that it is not relevant to this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

2.      R. Almeroth objects to Request No. 8 on the ground that it is unclear, vague, and ambiguous, particularly in its use of the undefined terms "total sum of monies you received as a result of your sales of the common stock of TASER," "total sum of monies you paid to purchase the common stock of TASER," "realized," and "net gain."

3.      R. Almeroth objects to Request No. 8 to the extent that it prematurely seeks expert discovery.

4.      R. Almeroth objects to Request No. 8 insofar as it does not specify whether the costs of purchasing/sales should be considered and whether any monies should be discounted to present value and/or for investment and other opportunity costs.

### 9.

**You currently do not own, hold, or possess, directly or indirectly, any common stock of TASER.**

**RESPONSE:**

a.      Admitted.

b.      Objections:

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC., :
*et al.,* :
           :
         Plaintiffs, :     CIVIL ACTION
           :     FILE NO.: 2008-EV-004739-B
v. :
           :
MORGAN STANLEY & CO., INC., :     JURY TRIAL DEMANDED
*et al.,* :
           :
         Defendants. :

**PLAINTIFF JAMES BAKER, JR.'S RESPONSES TO DEFENDANTS'
FIRST SET OF REQUESTS FOR ADMISSION TO INDIVIDUAL
PLAINTIFFS**

Plaintiff James Baker, Jr. ("J. Baker") hereby submits his Responses to

Defendants' First Set of Requests for Admission to Individual Plaintiffs.  J. Baker

reserves the right to enter additional objections and responses, and to supplement

its responses as necessary.  The failure to object to any of the Requests for

Admission does not waive any general or specific objection or privilege.  J. Baker

also agrees to meet and confer with Defendants' counsel, in good faith, in an

attempt to resolve any disagreements with J. Baker's Responses and Objections

herein.

767704.1

the undefined terms "assets," "account(s)," "you maintained" and
"located in an account in the State of Georgia."

3.      J. Baker objects to Request No. 7 to the extent that it calls for
speculation and information held by third parties; *e.g.*, where banks
may physically hold or have previously held deposited assets at an
undefined time in the past.  J. Baker's response to this request is
limited to its own knowledge.

### 8.

**Subtracting the total sum of monies you received as a result of your
sales of the common stock of TASER from the total sum of monies you paid to
purchase the common stock of TASER, you realized a net gain based on those
transactions.**

<u>**RESPONSE**</u>**:**

a.      Admitted.

b.      Objections:

1.      J. Baker objects to Request No. 8 on the ground that it is not
relevant to this litigation and is not reasonably calculated to lead to the
discovery of admissible evidence.

2.      J. Baker objects to Request No. 8 on the ground that it is
unclear, vague, and ambiguous, particularly in its use of the undefined
terms "total sum of monies you received as a result of your sales of

the common stock of TASER," "total sum of monies you paid to purchase the common stock of TASER," "realized," and "net gain."

3.      J. Baker objects to Request No. 8 to the extent that it prematurely seeks expert discovery.

4.      J. Baker objects to Request No. 8 insofar as it does not specify whether the costs of purchasing/sales should be considered and whether any monies should be discounted to present value and/or for investment and other opportunity costs.

## 9.

**You currently do not own, hold, or possess, directly or indirectly, any common stock of TASER.**

**RESPONSE:**

a.      Denied.

b.      Objections:

1.      J. Baker objects to Request No. 9 on the ground that it is unclear, vague, and ambiguous, particularly in its use of the undefined term "possess . . . directly or indirectly."

2.      J. Baker objects to Request No. 9 on the ground insofar as it does not request information concerning a specific time period.  For purposes of Request No. 9, J. Baker construes the Request as

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,  :
*et al.*,                                         :
                                                      :
            Plaintiffs,                      :         CIVIL ACTION
                                                      :         FILE NO.: 2008-EV-004739-B
v.                                                  :
                                                      :
MORGAN STANLEY & CO., INC.,  :         JURY TRIAL DEMANDED
*et al.*,                                         :
                                                      :
            Defendants.                    :


**PLAINTIFF ROBERT BAKER'S RESPONSES TO DEFENDANTS'
<u>FIRST SET OF REQUESTS FOR ADMISSION TO INDIVIDUAL
PLAINTIFFS</u>**


Plaintiff Robert Baker ("R. Baker") hereby submits his Responses to

Defendants' First Set of Requests for Admission to Individual Plaintiffs.  R. Baker

reserves the right to enter additional objections and responses, and to supplement

its responses as necessary.  The failure to object to any of the Requests for

Admission does not waive any general or specific objection or privilege.  R. Baker

also agrees to meet and confer with Defendants' counsel, in good faith, in an

attempt to resolve any disagreements with R. Baker's Responses and Objections

herein.


767719.1

the undefined terms "assets," "account(s)," "you maintained" and

"located in an account in the State of Georgia."

3.      R. Baker objects to Request No. 7 to the extent that it calls for

speculation and information held by third parties; *e.g.*, where banks

may physically hold or have previously held deposited assets at an

undefined time in the past.  R. Baker's response to this request is

limited to its own knowledge.

### 8.

**Subtracting the total sum of monies you received as a result of your sales of the common stock of TASER from the total sum of monies you paid to purchase the common stock of TASER, you realized a net gain based on those transactions.**

<u>**RESPONSE**</u>**:**

a.      Admitted.

b.      Objections:

1.      R. Baker objects to Request No. 8 on the ground that it is not

relevant to this litigation and is not reasonably calculated to lead to the

discovery of admissible evidence.

2.      R. Baker objects to Request No. 8 on the ground that it is

unclear, vague, and ambiguous, particularly in its use of the undefined

terms "total sum of monies you received as a result of your sales of

the common stock of TASER," "total sum of monies you paid to purchase the common stock of TASER," "realized," and "net gain."

3.    R. Baker objects to Request No. 8 to the extent that it prematurely seeks expert discovery.

4.    R. Baker objects to Request No. 8 insofar as it does not specify whether the costs of purchasing/sales should be considered and whether any monies should be discounted to present value and/or for investment and other opportunity costs.

### 9.

**You currently do not own, hold, or possess, directly or indirectly, any common stock of TASER.**

**<u>RESPONSE</u>:**

a.    Admitted.

b.    Objections:

1.    R. Baker objects to Request No. 9 on the ground that it is unclear, vague, and ambiguous, particularly in its use of the undefined term "possess . . . directly or indirectly."

2.    R. Baker objects to Request No. 9 on the ground insofar as it does not request information concerning a specific time period.  For purposes of Request No. 9, R. Baker construes the Request as

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,  :
*et al.*,                    :
                            :
          Plaintiffs,        :        CIVIL ACTION
                            :        FILE NO.: 2008-EV-004739-B
v.                           :
                            :
MORGAN STANLEY & CO., INC.,  :        JURY TRIAL DEMANDED
*et al.*,                    :
                            :
          Defendants.        :

**PLAINTIFF DAVID M. BATCHELOR'S
RESPONSES TO DEFENDANTS' FIRST SET OF
REQUESTS FOR ADMISSION TO INDIVIDUAL PLAINTIFFS**

Plaintiff David M. Batchelor ("D. Batchelor") hereby submits his Responses
to Defendants' First Set of Requests for Admission to Individual Plaintiffs.  D.
Batchelor reserves the right to enter additional objections and responses, and to
supplement its responses as necessary.  The failure to object to any of the Requests
for Admission does not waive any general or specific objection or privilege.  D.
Batchelor also agrees to meet and confer with Defendants' counsel, in good faith,
in an attempt to resolve any disagreements with D. Batchelor's Responses and
Objections herein.

767737.1

1.      D. Batchelor objects to Request No. 7 on the ground that it is not relevant to this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

2.      D. Batchelor objects to Request No. 7 on the ground that it is unclear, vague, and ambiguous in total and particularly in its use of the undefined terms "assets," "account(s)," "you maintained" and "located in an account in the State of Georgia."

3.      D. Batchelor objects to Request No. 7 to the extent that it calls for speculation and information held by third parties; *e.g.*, where banks may physically hold or have previously held deposited assets at an undefined time in the past.  D. Batchelor's response to this request is limited to its own knowledge.

**8.**

**Subtracting the total sum of monies you received as a result of your sales of the common stock of TASER from the total sum of monies you paid to purchase the common stock of TASER, you realized a net gain based on those transactions.**

**RESPONSE:**

a.      Admitted.

b.      Objections:

1.      D. Batchelor objects to Request No. 8 on the ground that it is
not relevant to this litigation and is not reasonably calculated to lead
to the discovery of admissible evidence.

2.      D. Batchelor objects to Request No. 8 on the ground that it is
unclear, vague, and ambiguous, particularly in its use of the undefined
terms "total sum of monies you received as a result of your sales of
the common stock of TASER," "total sum of monies you paid to
purchase the common stock of TASER," "realized," and "net gain."

3.      D. Batchelor objects to Request No. 8 to the extent that it
prematurely seeks expert discovery.

4.      D. Batchelor objects to Request No. 8 insofar as it does not
specify whether the costs of purchasing/sales should be considered
and whether any monies should be discounted to present value and/or
for investment and other opportunity costs.

### 9.

**You currently do not own, hold, or possess, directly or indirectly, any
common stock of TASER.**

**RESPONSE:**

a.      Admitted.

b.      Objections:

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,   :
*et al.*,                    :
                             :
          Plaintiffs,        :          CIVIL ACTION
                             :          FILE NO.: 2008-EV-004739-B
v.                           :
                             :
MORGAN STANLEY & CO., INC.,  :          JURY TRIAL DEMANDED
*et al.*,                    :
                             :
          Defendants.        :


**PLAINTIFF NATALIE J. BATCHELOR'S**
**RESPONSES TO DEFENDANTS' FIRST SET OF**
**REQUESTS FOR ADMISSION TO INDIVIDUAL PLAINTIFFS**


        Plaintiff Natalie J. Batchelor ("N. Batchelor") hereby submits her Responses

to Defendants' First Set of Requests for Admission to Individual Plaintiffs.  N.

Batchelor reserves the right to enter additional objections and responses, and to

supplement its responses as necessary.  The failure to object to any of the Requests

for Admission does not waive any general or specific objection or privilege.  N.

Batchelor also agrees to meet and confer with Defendants' counsel, in good faith,

in an attempt to resolve any disagreements with N. Batchelor's Responses and

Objections herein.


767738.1

1.    N. Batchelor objects to Request No. 7 on the ground that it is
not relevant to this litigation and is not reasonably calculated to lead
to the discovery of admissible evidence.

2.    N. Batchelor objects to Request No. 7 on the ground that it is
unclear, vague, and ambiguous in total and particularly in its use of
the undefined terms "assets," "account(s)," "you maintained" and
"located in an account in the State of Georgia."

3.    N. Batchelor objects to Request No. 7 to the extent that it calls
for speculation and information held by third parties; *e.g.*, where
banks may physically hold or have previously held deposited assets at
an undefined time in the past.  N. Batchelor's response to this request
is limited to its own knowledge.

**8.**

**Subtracting the total sum of monies you received as a result of your
sales of the common stock of TASER from the total sum of monies you paid to
purchase the common stock of TASER, you realized a net gain based on those
transactions.**

**RESPONSE:**

a.    Admitted.

b.    Objections:

1.      N. Batchelor objects to Request No. 8 on the ground that it is
not relevant to this litigation and is not reasonably calculated to lead
to the discovery of admissible evidence.

2.      N. Batchelor objects to Request No. 8 on the ground that it is
unclear, vague, and ambiguous, particularly in its use of the undefined
terms "total sum of monies you received as a result of your sales of
the common stock of TASER," "total sum of monies you paid to
purchase the common stock of TASER," "realized," and "net gain."

3.      N. Batchelor objects to Request No. 8 to the extent that it
prematurely seeks expert discovery.

4.      N. Batchelor objects to Request No. 8 insofar as it does not
specify whether the costs of purchasing/sales should be considered
and whether any monies should be discounted to present value and/or
for investment and other opportunity costs.

**9.**

**You currently do not own, hold, or possess, directly or indirectly, any
common stock of TASER.**

**RESPONSE:**

a.      Admitted.

b.      Objections:

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

TASER INTERNATIONAL, INC.,   :
*et al.*,                      :
                             :
      Plaintiffs,           :     CIVIL ACTION
                             :     FILE NO.: 2008-EV-004739-B
v.                           :
                             :
MORGAN STANLEY & CO., INC.,  :     JURY TRIAL DEMANDED
*et al.*,                     :
                             :
      Defendants.            :


## PLAINTIFF MICHAEL BOYER'S
## RESPONSES TO DEFENDANTS' FIRST SET OF
## REQUESTS FOR ADMISSION TO INDIVIDUAL PLAINTIFFS


Plaintiff Michael Boyer ("M. Boyer") hereby submits his Responses to

Defendants' First Set of Requests for Admission to Individual Plaintiffs.  M. Boyer

reserves the right to enter additional objections and responses, and to supplement

its responses as necessary.  The failure to object to any of the Requests for

Admission does not waive any general or specific objection or privilege.  M. Boyer

also agrees to meet and confer with Defendants' counsel, in good faith, in an

attempt to resolve any disagreements with M. Boyer's Responses and Objections

herein.


767758.1

the undefined terms "assets," "account(s)," "you maintained" and
"located in an account in the State of Georgia."

3.      M. Boyer objects to Request No. 7 to the extent that it calls for
speculation and information held by third parties; *e.g.*, where banks
may physically hold or have previously held deposited assets at an
undefined time in the past.  M. Boyer's response to this request is
limited to its own knowledge.

**8.**

**Subtracting the total sum of monies you received as a result of your
sales of the common stock of TASER from the total sum of monies you paid to
purchase the common stock of TASER, you realized a net gain based on those
transactions.**

**RESPONSE:**

a.      Admitted.

b.      Objections:

1.      M. Boyer objects to Request No. 8 on the ground that it is not
relevant to this litigation and is not reasonably calculated to lead to the
discovery of admissible evidence.

2.      M. Boyer objects to Request No. 8 on the ground that it is
unclear, vague, and ambiguous, particularly in its use of the undefined
terms "total sum of monies you received as a result of your sales of

the common stock of TASER," "total sum of monies you paid to purchase the common stock of TASER," "realized," and "net gain."

3.      M. Boyer objects to Request No. 8 to the extent that it prematurely seeks expert discovery.

4.      M. Boyer objects to Request No. 8 insofar as it does not specify whether the costs of purchasing/sales should be considered and whether any monies should be discounted to present value and/or for investment and other opportunity costs.

**9.**

**You currently do not own, hold, or possess, directly or indirectly, any common stock of TASER.**

<u>**RESPONSE**</u>:

a.      Admitted.

b.      Objections:

1.      M. Boyer objects to Request No. 9 on the ground that it is unclear, vague, and ambiguous, particularly in its use of the undefined term "possess . . . directly or indirectly."

2.      M. Boyer objects to Request No. 9 on the ground insofar as it does not request information concerning a specific time period.  For purposes of Request No. 9, M. Boyer construes the Request as