# EXHIBIT  H

138129.1

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 62025 / May 4, 2010

ADMINISTRATIVE PROCEEDING
File No. 3-13877

| | |
|---|---|
| In the Matter of<br><br>GOLDMAN SACHS EXECUTION &<br>CLEARING, L.P.<br><br>Respondent. | ORDER INSTITUTING ADMINISTRATIVE<br>AND CEASE-AND-DESIST PROCEEDINGS<br>PURSUANT TO SECTIONS 15(b) AND 21C<br>OF THE SECURITIES EXCHANGE ACT<br>OF 1934, MAKING FINDINGS, AND<br>IMPOSING REMEDIAL SANCTIONS AND<br>A CEASE-AND-DESIST ORDER |

## I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Goldman Sachs Execution & Clearing, L.P. ("Respondent" or "GSEC").

## II.

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds that:

## Summary

1.        These proceedings relate to GSEC's response to the Commission's September 17, 2008 emergency order enacting temporary Rule 204T to Regulation SHO ("Rule 204T" or the "Rule"). That Rule was an important part of the Commission's response to concerns about the effects of "naked" short selling upon securities prices.[1] The Rule, adopted as an interim final temporary rule on October 17, 2008, required participants of a registered clearing agency[2] to either deliver securities by a trade's settlement date or, in connection with short sales, immediately purchase or borrow securities to close out the fail to deliver position by no later than the beginning of regular trading hours on the trading day following the settlement date.[3] GSEC initially responded to the Rule by implementing procedures that were inadequate in that they relied too heavily on individuals to perform manual tasks and calculations, without sufficient oversight or verification of accuracy. As a result, on certain occasions in December 2008 and January 2009 ("the relevant time period"), GSEC violated Rule 204T by failing to timely close out fail to deliver positions.

## Respondent

2.        Goldman Sachs Execution & Clearing, L.P. is a broker-dealer based in Jersey City, New Jersey and has been registered with the Commission since 1948 pursuant to Section 15(b) of the Exchange Act. GSEC is a wholly-owned subsidiary of The Goldman Sachs Group, Inc., whose securities are registered with the Commission pursuant to Section 12(b) of the Exchange Act. Prior to January 2005, GSEC was known as Spear, Leeds & Kellogg, L.P.

## Background

3.        Regulation SHO, compliance with which was required beginning in early 2005, was adopted by the Commission, in part, to regulate short sales.[4] One of the goals of Regulation SHO was to address problems associated with failures to deliver, including potentially abusive

---

[1]        A short sale is the sale of a security that the seller does not own or any sale that is consummated by the delivery of a security borrowed by, or for the account of, the seller. "Naked" short selling generally refers to selling short without borrowing or arranging to borrow the securities in time to make delivery within the three-day settlement period. As a result, the seller's clearing firm may fail to deliver securities when delivery is due.

[2]        GSEC was a participant of a registered clearing agency for the purposes of Rule 204T. "Participant" of a registered clearing agency refers to "any person who uses a clearing agency to clear or settle securities transactions or to transfer, pledge, lend, or hypothecate securities. Such term does not include a person whose only use of a clearing agency is (A) through another person who is a participant or (B) as a pledgee of securities." *See* Exchange Act Section 3(a)(24).

[3]        A "fail to deliver" occurs when a participant of a registered clearing agency is obligated, and fails, to deliver the securities to the clearing agency by settlement date. The resulting open position is referred to as a "fail position" or an "open fail."

[4]        Exchange Act Release No. 34-50103 (July 28, 2004) ("Regulation SHO Adopting Release").

2

GS_T 000221

"naked" short selling.  One way that Regulation SHO attempted to reach that goal was by the creation of a "close-out" requirement.[5]  This requirement mandates that clearing firms must close out fail to deliver positions in threshold securities that have persisted for 13 consecutive settlement days by purchasing securities of like kind and quantity.[6]

4.  In the spring and summer of 2008, securities markets experienced inordinately large fluctuations.  On September 17, 2008, the Commission, concerned by the threat of sudden and excessive fluctuations in securities prices and disruption in the functioning of the securities markets, and in particular, by the possible effects of "naked" short selling upon securities prices, issued an emergency order pursuant to Section 12(k) of the Exchange Act enacting, among others, temporary Rule 204T to Regulation SHO.[7]  On October 14, 2008, the Commission adopted Rule 204T as an interim final temporary rule, to be in effect from October 17, 2008 until July 31, 2009.[8]

5.  Rule 204T required that participants of a registered clearing agency, such as GSEC, either deliver securities by settlement date or, in connection with short sales, purchase or borrow securities to close out the fail to deliver position by no later than the beginning of regular trading hours on the trading day following the settlement date.[9]  Therefore, fail to deliver positions resulting from short sales were required to be closed out by no later than the beginning of regular trading hours on the fourth day after the trade date ("T+4").  Fail to deliver positions resulting from long sales and from short sales due to *bona fide* market making activities, however, were given a two day extension for close-out, to no later than the beginning of regular trading hours on the sixth day after the trade date ("T+6").  If the participant did not comply with the Rule's close-out requirement, then that firm or any broker-dealer from which it received trades for clearance and settlement was prohibited from selling short the security at issue unless it had previously borrowed or arranged to borrow the security (known as the "pre-borrow penalty").

6.  Many of GSEC's customers are market makers.  When a market maker is subject to the pre-borrow penalty, it may be difficult for that market maker to perform its duties, as short sales are commonly used as part of *bona fide* market making activities in a stock.  Thus, when a market maker that is the sole market maker in a stock on a floor-based exchange is subject to the

---

[5]  *See* Rule 203(b)(3) of Regulation SHO.

[6]  A "threshold security" is an equity security which has an aggregate fail to deliver position totaling 10,000 shares and equal to at least 0.5% of the issuer's total shares outstanding for at least 5 consecutive settlement days.  *See* Rule 203(c)(6) of Regulation SHO.

[7]  Exchange Act Release No. 34-58572 (September 17, 2008).

[8]  Exchange Act Release No. 34-58773 (October 17, 2008).

[9]  On July 27, 2009, the Commission adopted Rule 204, which made Rule 204T permanent with limited changes.  Therefore, the requirements of the Rule described above continue to apply to GSEC and other participants of registered clearing agencies.

3

pre-borrow penalty, that stock may be reallocated by the exchange to another market maker until the penalty ends. This reallocation could potentially result in disruption to the market in a particular stock.

7.    Upon the Rule's release, GSEC implemented procedures designed to ensure its compliance with Rule 204T. Generally, this entailed tracking its delivery obligations to make sure that short sale fail positions were closed out by no later than the beginning of regular trading hours on T+4, while fail positions attributable to long sales and short sales resulting from market making activity were closed out by no later than the beginning of regular trading hours on the morning of T+6. These procedures were to a great extent performed manually. Ultimately, GSEC developed a system-based process in spring 2009.

8.    During the relevant time period, each morning GSEC's Operations department created a spreadsheet which listed all T+4 and T+6 obligations that were coming due that day at market open. That information was sent to GSEC's Client Services department, which reduced the obligations by the amount of: borrowed stock; pre-fail credits;[10] market maker extensions; and other extensions.[11] The final close-out obligation information was then forwarded by Client Services to a trade execution group within GSEC, which entered purchase orders at market open. After those purchases were made, Client Services sent the information back to Operations to track the actions taken on that day's T+4 obligations and to calculate the amount of the potential close-out obligation on the corresponding T+6.

## GSEC's Failure to Properly Close Out Positions

9.    In December 2008 and January 2009, GSEC did not close out certain fail to deliver positions as required by Rule 204T, leaving both GSEC and its customers subject to the pre-borrow penalty.

**December 9, 2008**

10.    On December 9, 2008, GSEC did not close out its fail to deliver positions in 22 securities at T+6. The procedure in place at GSEC during this time required a GSEC employee in the Operations department to update the information contained in two spreadsheets – one spreadsheet contained information for T+4 obligations due that morning, while the other contained T+6 obligations. However, on this date, the employee failed to update the T+6 spreadsheet correctly. As a result, information sent to the Client Services department was a day

---

[10]    Rule 204T(e) exempted broker-dealers from the pre-borrow penalty if the firm had made a *bona fide* purchase of securities on or after the date of the trade but no later than the end of regular trading hours on the settlement date for the transaction sufficient to cover that firm's entire open short position, and that the firm could demonstrate that it had a net long or net flat position on its books and records on that settlement day. This is known as the "pre-fail credit."

[11]    Rule 204T(a)(2) extended the deadline for closing out fail to deliver positions resulting from sales pursuant to Rule 144 of the Securities Act of 1933 to the beginning of regular trading hours on the thirty-sixth day following the settlement date.

GS_T 000223

old. Client Services' calculations were therefore incorrect. As a consequence, GSEC bought shares for which it had no T+6 obligation, while at the same time it did not close out certain actual T+6 fail positions.

11.     GSEC detected the mistake and bought in the correct amounts after market open on December 9. However, as a result of the error, GSEC and certain of its broker-dealer customers were subject to the pre-borrow penalty until these purchases settled on December 12, 2008. As a result, two NYSE Arca Lead Market Makers who were subject to this pre-borrow penalty were unable to continue to make markets in two securities.

**January 6, 2009 – January 22, 2009**

12.     From January 6, 2009 through January 22, 2009 GSEC, on approximately 46 occasions, failed to timely close out T+6 positions in 38 securities. These failures resulted from GSEC's error in calculating its potential T+6 obligations. The procedure in place at GSEC during this time period required that after GSEC had bought securities on the morning of T+4, Client Services would send the final purchase information to Operations. Operations would then manually calculate the T+6 obligation. The spreadsheet that Operations received from Client Services contained the details of the T+4 purchase calculations, which included the shares that were exempted as the result of market making activities.

13.     In early January 2009, while modifying the spreadsheet provided by Client Services, an employee in the Operations department removed the number of shares attributable to the market maker exemption from the spreadsheet. Because the data was a component of a mathematical formula, this resulted in an inaccurate increase to the number of shares reported as having been purchased on T+4. GSEC then used this incorrect number to calculate the T+6 close-out obligation. The T+6 calculations were therefore incorrectly low and, during this period, GSEC purchased inadequate numbers of shares on approximately 46 occasions.

14.     The erroneous T+6 calculations were first made on January 6, 2009, and continued undetected by GSEC until January 22, 2009. The error was brought to GSEC's attention by a customer who advised GSEC of a potential problem concerning GSEC's calculation. Upon investigating this information, GSEC confirmed the error and notified regulators and its broker, dealer, and market maker customers.

15.     During the time the error remained undetected, GSEC and its broker-dealer customers were subject to the pre-borrow penalty for the 38 affected securities, but accepted approximately 385 short sales in those securities without a pre-borrow. Upon discovery of the error, one NYSE Designated Market Maker ("DMM") was subject to the pre-borrow penalty, meaning that trading in one of that market maker's assigned stocks was halted and the stock was reallocated by the NYSE to another DMM firm.

GS_T 000224

## Violations

16.     As a result of the conduct described above, GSEC willfully[12] violated Rule 204T of Regulation SHO by failing to deliver certain securities or immediately purchase or borrow securities to close out the fail to deliver position by no later than the beginning of regular trading hours on the required date.

## GSEC's Remedial Efforts

17.     In determining to accept the Offer, the Commission considered remedial acts promptly undertaken by GSEC and cooperation afforded the Commission staff.

## Undertaking

18.     Pursuant to the New York Stock Exchange LLC Hearing Board decision accepting Stipulation of Facts and Consent to Penalty entered into by Respondent GSEC and NYSE Regulation on May 3, 2010, Respondent GSEC agreed to pay a fine in the amount of $225,000 to NYSE Regulation.

In determining whether to accept the Offer, the Commission has considered this undertaking.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent's Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, it is hereby ORDERED that:

A.     Respondent GSEC cease and desist from committing or causing any violations and any future violations of Exchange Act Rule 204;

B.     Respondent GSEC is censured; and

C.     Respondent shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $225,000 to the United States Treasury. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. 3717. Such payment shall be: (A) made by wire transfer, United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered

---

[12]     A willful violation of the securities laws means merely "'that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)). There is no requirement that the actor "'also be aware that he is violating one of the Rules or Acts.'" *Id.* (quoting *Gearhart & Otis, Inc. v. SEC*, 348 F.2d 798, 803 (D.C. Cir. 1965)).

GS_T 000225

or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Goldman Sachs Execution & Clearing, L.P. as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Elaine C. Greenberg, Associate Regional Director, Philadelphia Regional Office, Securities and Exchange Commission, 701 Market Street, Suite 2000, Philadelphia, PA 19106.

By the Commission.


Elizabeth M. Murphy
Secretary

7

GS_T 000226

<u>Service List</u>

Rule 141 of the Commission's Rules of Practice provides that the Secretary, or another duly authorized officer of the Commission, shall serve a copy of the Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), on the Respondent and its legal agent.

The attached Order has been sent to the following parties and other persons entitled to notice:

Honorable Brenda P. Murray
Chief Administrative Law Judge
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-2557

Deborah E. Siegel, Esq.
Philadelphia Regional Office
Securities and Exchange Commission
701 Market Street, Suite 2000
Philadelphia, PA 19106

Goldman Sachs Execution & Clearing, L.P.
c/o Harry J. Weiss, Esq.
Wilmer Cutler Pickering Hale and Dorr
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

Harry J. Weiss , Esq.
Wilmer Cutler Pickering Hale and Dorr
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(Counsel for Goldman Sachs Execution & Clearing, L.P.)

8

GS_T 000227