# EXHIBIT  I

138129.1

# NEW YORK STOCK EXCHANGE LLC

**NYSE HEARING BOARD DECISION 06-128**                    June 28, 2006
GOLDMAN SACHS EXECUTION & CLEARING, L.P.
MEMBER ORGANIZATION

\* \* \*

Violated NYSE Rule 200(g) of Regulation SHO in that it failed to ensure that
all sell orders were properly marked as "long," "short," or "short exempt";
violated Rule 203(a) of Regulation SHO in that it effected customer sell
orders marked long when it did not know or have reasonable grounds to
believe that it would be able to deliver the security on the date the delivery
was due and that short sales were not misrepresented as long sales; violated
Rule 203(b)(1) of Regulation SHO in that it accepted customer short sale
orders and effected those orders without having reasonable grounds to
believe that the securities could be borrowed so that they could be delivered
on the date delivery was due; violated Rule 203(b)(3) of Regulation SHO in
that it failed to accurately account for its fails to deliver in threshold
securities at registered clearing agencies by failing to aggregate its fails which
occurred under separate clearing numbers and by inaccurately redesignating
certain fails as one day old after a buy-in occurred in a security; violated
Section 17(a) of the Securities Exchange Act of 1934 and Rules 17a-3 and
17a-4 thereunder, and NYSE Rule 440 in that it did not accurately record the
age of its fails in threshold securities at registered clearing agencies and did
not properly mark proprietary sell orders as "long," "short," or "short
exempt"; violated NYSE Rule 342 in that it failed to provide for appropriate
procedures of supervision and control to ascertain that (a) customer and
proprietary sell orders were properly marked as "long," "short," or "short
exempt," (b) it only effected customer sell orders marked long when it knew
or had reasonable grounds to believe that it would be able to deliver the
security on the date the delivery was due and short sales were not
misrepresented as long sales, (c) when it accepted and effected short sale
orders it had reasonable grounds to believe that the securities could be
borrowed so that they could be delivered on the dates delivery was due, (d) it
accurately accounted for its fails to deliver in threshold securities at
registered clearing agencies, and (e) it maintained accurate books and
records with respect to the age of its fails in threshold securities at registered
clearing agencies and with respect to marking proprietary sell orders as
"long," "short," or "short exempt" — Consent to censure and $350,000 fine.

2

Appearances:

For the Division of Enforcement
Susan Light, Esq.
Steven F. Korostoff, Esq.
Jeanne R. Elmadany, Esq.

For Respondent
Norman Feit, Esq.

\* \* \*

A Hearing Officer on behalf of the New York Stock Exchange LLC ("NYSE") considered a Stipulation of Facts and Consent to Penalty entered into between NYSE Regulation, Inc.'s Division of Enforcement ("Enforcement") and Goldman Sachs Execution & Clearing, L.P. ("Respondent," or "GSEC," the "Firm"), an NYSE member organization. Without admitting or denying guilt, Respondent consented to a finding by the Hearing Officer that it:

I.    Violated Rule 200(g) of Regulation SHO in that it failed to ensure that all sell orders were properly marked as "long," "short," or "short exempt."

II.   Violated Rule 203(a) of Regulation SHO in that it effected customer sell orders marked long when it did not know or have reasonable grounds to believe:

    a.    that it would be able to deliver the security on the date the delivery was due; and

    b.    that short sales were not misrepresented as long sales.

III.  Violated Rule 203(b)(1) of Regulation SHO in that it accepted customer short sale orders and effected those orders without having reasonable grounds to believe that the securities could be borrowed so that they could be delivered on the date delivery was due.

IV.   Violated Rule 203(b)(3) of Regulation SHO in that it failed to accurately account for its fails to deliver in threshold securities at registered clearing agencies:

    a.    by failing to aggregate its fails which occurred under separate clearing numbers; and

    b.    by inaccurately redesignating certain fails as one day old after a buy-in occurred in a security.

V.    Violated Section 17(a) of the Securities Exchange Act of 1934 and Rules 17a-3 and 17a-4 thereunder, and NYSE Rule 440 in that it:

    a.    did not accurately record the age of its fails in threshold securities at registered clearing agencies; and

3

     b.     did not properly mark proprietary sell orders as "long," "short," or "short exempt."

VI.    Violated NYSE Rule 342 in that it failed to provide for appropriate procedures of supervision and control to ascertain that:

     a.     customer and proprietary sell orders were properly marked as "long," "short," or "short exempt";

     b.     it only effected customer sell orders marked long when it knew or had reasonable grounds to believe that:

          i.     it would be able to deliver the security on the date the delivery was due; and

          ii.     short sales were not misrepresented as long sales;

     c.     when it accepted and effected short sale orders it had reasonable grounds to believe that the securities could be borrowed so that they could be delivered on the dates delivery was due;

     d.     it accurately accounted for its fails to deliver in threshold securities at registered clearing agencies;

     e.     it maintained accurate books and records with respect to:

          i.     the age of its fails in threshold securities at registered clearing agencies; and

          ii.     marking proprietary sell orders as "long," "short," or "short exempt.".

For the sole purpose of settling this disciplinary proceeding, Enforcement and Respondent stipulate to certain facts, the substance of which follows:[*]

### Background and Jurisdiction

1.    Goldman Sachs Execution & Clearing, L.P., formerly Spear, Leeds & Kellogg, L.P., is an affiliate of The Goldman Sachs Group, Inc.  GSEC provides securities clearing and execution services to broker-dealers (including equity and options market makers and specialists, as well as introducing brokers) and institutional and certain retail

---

[*] Hearing Officer Note:  The facts, allegations, and conclusions contained in paragraphs 1 to 35 are taken from the executed Stipulation of Facts and Consent to Penalty between Enforcement and Respondent. No changes have been made to the stipulated paragraphs by the Hearing Officer.

GS_T 000076

4

clients.

2. Effective September 7, 2004, the U.S. Securities and Exchange Commission ("SEC") adopted Regulation SHO under the Securities Exchange Act of 1934 ("Exchange Act"), and the commencement date for compliance with its provisions was January 3, 2005.

3. In the second quarter of 2005, after Regulation SHO had been in effect for approximately four months, the NYSE's Division of Member Firm Regulation ("MFR") performed a special examination of the operational and supervisory standards, and written policies and procedures established and maintained by the Firm with respect to Regulation SHO. MFR issued a report of that examination, MFR's 2005 Special Regulation SHO Examination Report (the "Report"), that included exceptions reflecting that the Firm failed to have and/or failed to adequately implement supervisory policies and procedures with regard to Regulation SHO, and was not in compliance with certain provisions of Regulation SHO. The Report was referred to Enforcement.

4. By letter dated November 1, 2005, Enforcement advised the Firm that it was investigating, among other things, possible violations of NYSE Rules, Regulation SHO and/or other federal securities laws contained in MFR's Report.

<u>Overview</u>

5. Regulation SHO was designed to, among other things, establish uniform locate and delivery requirements in order to address problems associated with failures to deliver,[1] including potentially abusive "naked" short selling selling ("naked" short selling generally refers to selling short without having borrowed the securities to make delivery), and create uniform marking requirements for sales of all equity securities.

6. Regulation SHO has three primary purposes: to create uniform order marking requirements for sales of all equity securities; to reduce the number of potential failures to deliver by means of the "locate" requirement; and to limit the time in which a broker can permit failures to deliver to persist in securities in which a substantial number of fails have occurred ("threshold securities") by means of a buy-in requirement.

7. The commencement date for compliance with the provisions of Regulation SHO was January 3, 2005. Among other things, Regulation SHO defines ownership of securities, specifies requirements for the aggregation of long and short positions, and requires broker-dealers to mark sales in all equity securities "long," "short," or "short

---

[1] When a seller does not deliver the securities sold to the buyer by settlement date as required it is referred to as a "failure to deliver", "fail to deliver" or fail. The resulting open position is referred to as a "fail position" or "fail."

GS_T 000077

5

exempt." Regulation SHO also requires short sellers in all equity securities to locate securities and/or pre-borrow before selling, and also imposes more stringent delivery requirements on broker-dealers for threshold securities.

## Summary of Violative Conduct

8.      As set forth below, GSEC failed to comply with the requirements of Regulation SHO in certain respects during the period January 3, 2005 to August 2005 (the "relevant period").   The Firm failed to ascertain that orders were properly marked "long", "short" or "short exempt" in various instances.  With respect to customer orders, the Firm failed to ascertain that sell transactions for securities that were not in the Regulation SHO pilot program, but were exempt from the tick/price test under Section 10(a) of the Exchange Act and Rule 10a-1 thereunder were properly marked short exempt.  The Firm failed to monitor customer short sales to ascertain that previous borrowings arranged by the customers had resulted in timely deliveries and therefore that the Firm had reasonable grounds to rely on customers' assurances.  Similarly, the Firm failed to monitor customer "long" sales to ascertain whether such sales repeatedly required borrowed shares for delivery or resulted in fails to deliver and consequently whether the Firm had reasonable grounds to believe customers would deliver securities to it prior to the scheduled settlement of the transactions.

9.      The Firm also improperly marked certain sales for one of its own accounts as long sales when those transactions were short sales.  In addition, the Firm failed to properly calculate and age its fails in threshold securities by treating its positions under multiple participant numbers separately.  Further, the Firm failed to reasonably supervise in that it did not have adequate policies and procedures to provide for compliance with these sections of Regulation SHO, and failed to maintain accurate books and records with respect to these matters.

## GSEC Failed to Ascertain that Orders were Properly Marked "Short Exempt"

10.     Exchange Act Rule 10a-1 sets forth tick/price restrictions on the circumstances under which a person may effect a short sale.  Exchange Act Rules 10e-1 through 10e-13 provide exceptions to these tick/price restrictions on short sales.

11.     Rule 200(g) of Regulation SHO requires that a broker or dealer must mark all sell orders of any equity security as "long," "short," or "short exempt."  A short sale order must be marked "short exempt" if the seller is relying  on an exception from the tick test of Rule 10a-1, or the price test of an exchange or national securities association.  The accurate marking of sell orders is essential for locate, stock borrow, and execution purposes.

12.     During the relevant period, GSEC did not have reasonable procedures to ascertain that transactions for securities that were not in the pilot program, but were exempt from the tick/price test under Section 10(a) of the Exchange Act and Rule 10a-1

6

thereunder, were properly marked "short exempt." Rather than fulfilling the obligation placed on it as the broker-dealer by Regulation SHO to properly mark sell orders, GSEC relied solely on its customers to mark these orders properly.

### GSEC Failed to Have Reasonable Grounds to Believe
### Securities Could Be Borrowed for Delivery on the Date Delivery Was Due
### Prior to Effecting Short Sales Based on Customers' Assurances

13.     Rule 203(b)(1) of Regulation SHO states: A broker or dealer may not accept a short sale order in an equity security from another person, or effect a short sale in an equity security for its own account, unless the broker or dealer has:  (i) Borrowed the security, or entered into a bona-fide arrangement to borrow the security; or (ii) Reasonable grounds to believe that the security can be borrowed so that it can be delivered on the date delivery is due; and (iii) Documented compliance with...paragraph (b)(1).

14.     Rule 203 requires that the executing broker has the responsibility to perform the locate and document it, prior to effecting a short sale, and must have a reasonable basis to believe that the security can be delivered on the settlement date. Reasonableness is based on the facts and circumstances of a particular transaction.

15.     Pursuant to Regulation SHO the executing broker may rely on a customer's representation that an order to sell short a security is supported by a locate obtained by the customer from the stock loan department of the executing broker, or any other identified entity that is authorized to loan stock, as long as reliance on such representation is reasonable.  This may provide the "reasonable grounds" required by Rule 203(b)(1)(ii).

16.     However, where a broker-dealer knows or has reason to know that a customer's prior assurances resulted in failures to deliver, assurances from such customer may not provide the "reasonable grounds" required for a locate by 203(b)(1)(ii).

17.     The documentation required by Rule 203(b)(1)(iii) should include the source of securities cited by the customer. The broker-dealer also should be able to demonstrate that there are "reasonable grounds" to rely on the customer's assurances, *e.g.*, through documentation showing that previous borrowings arranged by the customer resulted in timely deliveries in settlement of the customer's transactions.

7

18.   An executing broker may not reasonably assert that it did not know or have reason
      to know whether a customer's prior short sale trades resulted in delivery failures if
      the executing broker made no reasonable effort to obtain such information.[2]

19.   GSEC executed customers' short sales based on customers' assurances as a basis
      for "reasonable grounds" to believe that securities could be borrowed for delivery
      on the date delivery is due.

20.   During the relevant period, GSEC did not track customers' assurances in order to
      verify that previous borrowings arranged by its customers resulted in timely
      deliveries in settlement of customers' transactions.  If a customer failed to deliver
      on a short sale, GSEC would make good on the delivery, but not track the fail
      back to the particular customer, in most instances.  Under these circumstances,
      GSEC could not rely on its customers' assurances as the "reasonable grounds"
      required by Rule 203(b)(1)(ii), as described above.

21.   GSEC executed customer short sales in certain instances, when it had not
      borrowed the security, or entered into a bona-fide arrangement to borrow the
      security and did not have reasonable grounds based on customer representations
      to believe that the security could be borrowed so that it could be delivered on the
      date delivery is due.

**GSEC Failed to Properly Calculate and Age its Fails in Threshold Securities**

22.   Rules 203(b)(3) and 203(b)(3)(iii) of Regulation SHO state:

      (3) if a participant of a registered clearing agency has a fail to
      deliver position at a registered clearing agency in a threshold
      security for 13 consecutive settlement days, the participant shall
      immediately thereafter close out the fail to deliver position by
      purchasing securities of like kind and quantity....

      (3)(iii) if a participant of a registered clearing agency has a fail to
      deliver position at a registered clearing agency in a threshold
      security for 13 consecutive settlement days, the participant and any
      broker or dealer for which it clears transactions, including any
      market maker that would otherwise be entitled to rely on the
      exception provided in paragraph (b)(2)(iii) of this section, may not
      accept a short sale order in the threshold security from another
      person, or effect a short sale in the threshold security for its own

---

[2]  If the executing broker discovered that the customer's prior assurances resulted in a single failure to
deliver, the executing broker should consider the relevant facts and circumstances to determine whether
it would be reasonable to rely on the customer's assurances for other transactions.  For example, it may
be reasonable for an executing broker to rely on the customer's assurances if the circumstances of the
fail in a prior transaction were unusual, or if previous locates relying on the customer's assurances
resulted in timely deliveries of securities to settle the customer's transactions and the fail in the prior
transaction was an anomaly.

GS_T 000080

8

account, without borrowing the security or entering into a bona-
fide arrangement to borrow the security, until the participant closes
out the fail to deliver position by purchasing securities of like kind
and quantity.

23. During the relevant period, GSEC maintained two clearing platforms at The
Depository Trust Company ("DTC") and tracked its fails in threshold securities
separately for these two clearing platforms.

24. Despite the number of clearing platforms it may have at a registered clearing
agency, for the purpose of calculating its fails under Regulation SHO, each
broker-dealer is still a single participant in the registered clearing agency, and
therefore must combine its positions to calculate its fails in threshold securities.
Therefore, GSEC was required to combine its fails on its two clearing platforms
to determine its obligations with regard to fails in threshold securities, in order to
ensure fails were closed out as required and the Firm did not become subject to
pre-borrowing restrictions.

25. Also, during the period of approximately March 23, 2005 to June 17, 2005, GSEC
erroneously aged its fails in threshold securities in certain respects.  During this
period, due to an error in the Firm's coding logic for taking trade date credit for
certain buy-ins, the Firm inadvertently re-aged certain fails in threshold securities
(corresponding to the quantity of the buy-in) as one day old when those fails were
actually as old as the Firm's oldest fail in the security, i.e. two to 13 days old.  As
a result, GSEC's books and records did not accurately reflect the age of these
fails.

### GSEC Failed to Ascertain that Customers
### Were Not Misrepresenting Short Sales as Long Sales

26. Rule 203(a) of Regulation SHO provides, in pertinent part:
*Long sales*. (1) If a broker or dealer knows or has reasonable grounds to
believe that the sale of an equity security was or will be effected pursuant
to an order marked "long," such broker or dealer shall not lend or arrange
for the loan of any security for delivery to the purchaser's broker after the
sale, or fail to deliver a security on the date delivery is due.

(2) The provisions of paragraph (a)(1) of this section shall not apply: (i)
To the loan of any security by a broker or dealer through the medium of a
loan to another broker or dealer; [or] (ii) If the broker or dealer knows, or
has been reasonably informed by the seller, that the seller owns the
security, and that the seller would deliver the security to the broker or
dealer prior to the scheduled settlement of the transaction, but the seller
failed to do so....

GS_T 000081

9

27.　Depending on the circumstances, it may be unreasonable for a broker-dealer to treat a sale as long where orders marked "long" from the same customer repeatedly require borrowed shares for delivery or result in "fails to deliver."

28.　During the relevant period, GSEC did not monitor customer "long" sales to ascertain whether such sales repeatedly required borrowed shares for delivery or resulted in fails to deliver, and whether fails relating to long sales resulted from a pattern of certain customers repeatedly failing to deliver in securities on settlement date or special (acceptable) circumstances.

29.　GSEC cannot reasonably ascertain that it will be able to make delivery when due without borrowing securities to do so, if it does not have a reasonable basis to believe that the selling customer will deliver the security to it prior to the scheduled settlement of the transaction.  During the relevant period, GSEC did not have such a reasonable basis because it did not review its customers' performances, i.e., timely delivery of the securities, in connection with previous assurances. Under these circumstances, GSEC could not rely on its customers' assurances as the "reasonable grounds" required by Rule 203(a) of Regulation SHO, as described above.

30.　Further, because GSEC did not monitor long sales resulting in fails, it could not reasonably ascertain that its customers were not misrepresenting short sales as long sales.

**GSEC Failed to Maintain Accurate Books and Records
in that It Improperly Marked Short Sales as Long Sales**

31.　During the relevant period, GSEC used its own capital to buy-in aged customer fails in threshold securities in instances where it had provided the customer with the locate for the short sale.  GSEC recorded these buy-ins in an account designated as the "Hard Stock" account.[3]

32.　GSEC employees provided the information for the sell orders from the Hard Stock account including marking the orders as long, short or short exempt.

33.　During the relevant period, GSEC employees improperly marked certain sales of securities from the Hard Stock account as long sales.  The sales should have been marked as short sales because GSEC did not possess the securities at the time they were sold from the Hard Stock account thereby rendering GSEC's books and records inaccurate.

---

[3]　The Hard Stock account was maintained at GSEC.  However the orders for the account were executed at Goldman Sachs & Co. Inc.

10

GSEC Failed to Reasonably Supervise

34. NYSE Rule 342 requires that every member organization provide for appropriate
procedures for supervision and control over its business activities and compliance
with securities laws and regulations.  Additionally, every member organization is
required to establish a system of follow-up and review to assure the proper
exercise of responsibility and authority.  Additionally, NYSE Rule 342.23
requires that every member organization develop and maintain adequate controls
over each of its business activities, and that such controls must provide for the
establishment of procedures for independent verification and testing of those
business activities.

35. GSEC failed to reasonably supervise in that it did not provide for appropriate
procedures of supervision and control of its business activities with respect to the
aspects of Regulation SHO discussed herein.

## DECISION

The Hearing Officer, in accepting the Stipulation of Facts and Consent to Penalty, found
Respondent guilty as set forth above.

## PENALTY

In view of the above findings, the Hearing Officer imposed the penalty consented to by
Respondent of a censure and a fine of $350,000.

For the Hearing Board

Peggy Kuo - Chief Hearing Officer