# EXHIBIT L

138129.1

State Court of Fulton County
\*\*\*EFILED\*\*\*
LexisNexis Transaction ID: 32587722
Date: Aug 10 2010  2:55PM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | |
| Plaintiffs, | CIVIL ACTION FILE NO.: 2008-EV-004739-B |
| v. | |
| MORGAN STANLEY & CO., INC., *et al.*, | JURY TRIAL DEMANDED |
| Defendants. | |

## AMENDED NOTICE TO TAKE O.C.G.A. § 9-11-30(b)(6) DEPOSITION OF DEFENDANT DEUTSCHE BANK SECURITIES, INC.

**TO:** Deutsche Bank Securities, Inc.
c/o Jason Halper, Esq.
Cadwalader, Wickersham & Taft, LLP
New York, NY  10281

**COME NOW** plaintiffs in the above-referenced matter pursuant to O.C.G.A. § 9-11-30(b)(6) and notice the deposition of an individual designated by DEUTSCHE BANK SECURITIES, INC. to testify about the matters identified on Exhibit A attached hereto.  The deposition will take place on September 17, 2010, beginning at 9:00 a.m. at the offices of Rogers & Hardin, 2700 International Tower, Peachtree Center, 229 Peachtree Street, N.E., Atlanta, GA  30303, or at such other time and place as may be mutually agreed upon by the parties.  The deposition will take place before a court reporter authorized to administer oaths in

791385.1

the State of Georgia and before a videographer. The deposition will be taken for all purposes allowable under the Georgia Civil Practice Act.

Respectfully submitted this 10th day of August, 2010.

/s/ Steven J. Rosenwasser
John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax

James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas 77002
(713) 659-7617 Tel.
(713) 659-7641 Fax
(admitted pro hac vice)

791385.1

2

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the foregoing

**AMENDED NOTICE TO TAKE O.C.G.A. § 9-11-30(b)(6) DEPOSITION OF**

**DEFENDANT DEUTSCHE BANK SECURITIES, INC.** was served on the

following counsel of record electronically via Lexis File & Serve:

>**Attorneys for Defendants:**
>Richard H. Sinkfield, Esq.
>Rogers & Hardin
>2700 International Tower, Peachtree Center
>229 Peachtree Street, N.E.
>Atlanta, GA  30303-1601
>
>**Attorneys for Banc of America Securities, LLC and Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
>Andrew J. Frackman, Esq.
>O'Melveny & Myers LLP
>7 Times Square
>New York, NY  10036
>
>**Attorneys for Morgan Stanley & Co. Incorporated:**
>Robert F. Wise, Jr., Esq.
>William J. Fenrich, Esq.
>Melissa T. Aoyagi, Esq.
>Davis Polk & Wardwell LLP
>450 Lexington Avenue
>New York, NY  10017

791385.1

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611

791385.1

4

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

This 10th day of August, 2010.

/s/ Steven J. Rosenwasser
Steven J. Rosenwasser
Georgia Bar No. 614908

791385.1

## **EXHIBIT A**

## **TOPIC ONE**

Each of the matters below, together with the underlying investigation, inquiry and/or examination, shall be referred to individually as the "Investigation" or collectively as the "Investigations"

  (a)  NYSE Arca Equities, Inc. Decision No. 08-AE-02 (DBSI-T1811738-45) and NYSE ARCA Offer of Settlement and Consent (DBSI-T1811729-37). However, for purposes of this Topic 1, the deponent does not need to be prepared to testify as to Paragraphs A(8) – (10) on DBSI-T731-32 and 741;

  (b)  FINRA Letter of Acceptance, Waiver and Consent (DBSI-T1811771-87);

  (c)  AWC No. 20041000088-01 (DBSI-T1811753-58). However, for purposes of this Topic 1, the deponent does not need to be prepared to testify as to Paragraphs A(7) and (8) on page DBSI-T1811756;

  (d)  AWC No. 20050002625-01 (DBSI-T1811759-64). However, for purposes of this Topic 1, the deponent does not need to be prepared to testify as to Paragraphs A(3) through (7) on page DBSI-T1811762;

  (e)  AWC No. 20060054835-01 (DBSI-T1811765-70). However, for purposes of this Topic 1, the deponent does not need to be prepared to testify as to Paragraphs A(1), (4) and (5) on page DBSI-T1811767-68;

  (f)  NYSE Hearing Decision 05-45 and related Stipulation of Facts and Consent to Penalty;

  (g)  February 25, 2004 AMEX Letter (DBSI-T7171191-92);

  (h)  March 19, 2008 FINRA Letter of Caution No. 2007-447 (DBSI-T 6465961-63);

  (i)  May 18, 2004 AMEX Letter (DBSI T-7124376-77); and

 (j) FINRA AWC No. 20050018280 (DBSI-T1811746-52). However, for purposes of this Topic 1, the deponent does not need to be prepared to testify as to Paragraphs A(2) through (8) on page DBSI-T1811748-49.

For each Investigation (or relevant portion thereof), please provide a witness to testify as to the following:

(1) The scope of the Investigation, which means for this purpose: (a) when DBSI learned that the Investigation started; (b) the securities that DBSI is aware were investigated (to the extent the Investigation was specifically focused on particular securities and/or particular securities were specifically identified by the relevant regulatory body); (c) the time periods examined; and (d) a general description of the types of conduct investigated;

(2) DBSI's knowledge of the conduct described in each Investigation's AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter,[1] which means for this purpose: (i) when DBSI learned that it may be or was engaging in the type of conduct alleged in AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter and (ii) the steps DBSI took, if any, to prevent that conduct prior to the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter;[2]

---

[1] In conferring on this deposition, DBSI claimed the phrase "conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter" is unclear. Plaintiffs disagree. Nonetheless, for clarity, Plaintiffs provide an example: in Paragraph A(1) on DBSI-T1811755, the conduct described is that, for customer short sale orders, DBSI "failed to make/annotate an affirmative determination that the firm would receive delivery of the security on behalf of the customer or that the firm could borrow the security on behalf of the customer for delivery by the settlement date."

[2] Plaintiffs note that they are **not** asking DBSI to now first engage in an audit or investigation, but rather to follow Rule 30(b)(6), which requires it to provide information on "matters known or reasonably available" to the firm. O.C.G.A. 9-11-30(b)(6). Plaintiffs have informed DBSI that, *if appropriate*, it can limit its preparation to speaking with persons in its compliance and regulatory department(s) and reviewing documents sent to or from those areas. DBSI, of course, retains the responsibility for identifying and speaking with the persons most likely to have responsive information.

(3) To the extent not captured by subtopic (2) of this Topic One, the policies and procedures DBSI employed which were reasonably designed to prevent the conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter. This subtopic is limited to the time period specified in the applicable portion of the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter;

(4) DBSI's position as to whether the conduct described in the applicable portion(s) of the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter occurred and, if DBSI denies that any of the conduct occurred, the facts and bases for that denial;

(5) Whether the conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter violated any DBSI rule, regulation or procedure (including any rule, regulation or procedure contained in any compliance manuals) and, if so, which one(s)[3];

(6) What actions, if any, DBSI took in response to the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter;

(7) Whether DBSI is aware of any other instances in which the conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter occurred and, if so, what the conduct was, when it occurred, the trading desks/traders involved and the securities involved;[4]

(8) Whether DBSI conducted its own internal investigation into the issues raised by the Investigation or in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter and, if so: (i) when the investigation occurred, (ii) the persons actively involved in the investigation, (iii) the securities involved and (iv) the identification of any reports, analyses or memoranda showing the results of the investigation;

(9) To the extent DBSI has a position, the impact and effect the conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts

---

[3] DBSI only need identify the rules, regulations or procedures that existed at the time of the violation (*i.e.*, the rule, regulation or procedure that was violated).

[4] See footnote 2.

791385.1

3

and Consent to Penalty or Letter had or could have on: (1) the accuracy of records; (2) the delivery or receipt of securities; or (3) stock price;

(10) During the time period specified in the applicable portion(s) of the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter, the person(s) primarily responsible for overseeing DBSI's adherence to rules, regulations and laws applicable to the conduct described in the applicable portion(s) of the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter, including their names and titles;

(11) DBSI's rights and options with respect to the Investigation, including, but not limited to, the information it can and/or must provide to the regulator, the ability to provide witnesses or evidence and the right to a hearing or to challenge findings. This topic is limited to the rights and options set forth in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter, and will not seek any legal opinions;

(12) For each of the trading desks and traders involved in the conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter, information relating to any other currently known instances in which they were alleged or in fact violated any DBSI rule, regulation or procedure or federal, state or agency rule or regulation relating to short selling, mismarking or inaccurately marking tickets or Reg. SHO;[5]

(13) Identification of the trading desks and traders involved in the conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter if currently known;[6]

(14) Identification of any notes, audio or video recordings of any meetings with regulators relating to the Investigation;

(15) Whether any of the conduct described in the AWC, Cautionary Action, Decision, Stipulation of Facts and Consent to Penalty or Letter ever occurred with respect to TASER securities, options or derivatives; and

(16) Mr. Bosco's knowledge and involvement in the Investigation.

---

[5] See footnote 2.
[6] See footnote 2.

791385.1

4

## TOPIC TWO

For NYSE Arca Equities, Inc. Decision No. 08-AE-02 (DBSI-T1811738-45) and NYSE ARCA Offer of Settlement and Consent (DBSI T-1811729-37):

(1)  Identification of the DBSI proprietary trading desks that ARCA alleged "effected an unquantified but significant number of short sales in securities that were not on DBSI's Easy to Borrow List without having (i) borrowed the security or entered into bona-fide arrangements to borrow the security, or having reasonable grounds to believe that the security could be borrowed for delivery when due, and (ii) documented compliance with these requirements."[7] DBSI-T1811742.

(2)  For the trading desks identified in response to (1) of this Topic Two, identification of each of the traders who were alleged to effect "short sales in securities that were not on DBSI's Easy to Borrow List without having (i) borrowed the security or entered into bona-fide arrangements to borrow the security, or having reasonable grounds to believe that the security could be borrowed for delivery when due, and (ii) documented compliance with these requirements."[8]

(3)  Identification of the "Firm's proprietary desks" that ARCA alleged "failed to adhere to the independent trading unit aggregation requirements."[9] DBSI-T1811742.

(4)  Identification of the traders who were alleged to engage in the conduct described in Paragraph 15 on DBSI-T1811742.[10]

(5)  Identification of the proprietary trading desks that ARCA alleged "incorrectly marked an unquantified but significant number of proprietary short sales as long." DBSI-T1811742.[11]

---

[7] Plaintiffs believe that this topic is appropriate for deposition. DBSI, however, has indicated a preference to provide a written response. To accommodate DBSI, Plaintiffs are willing to accept a written, verified response to this subtopic in advance of the deposition, which could substantially limit the deposition on this subtopic. Also, see footnote 2.

[8] See footnote 6.

[9] See footnote 6.

[10] See footnote 6.

(6) Identification of the desks ARCA alleged DBSI "failed to adequately supervise certain of its proprietary traders and [to] enforce its written supervisory procedures concerning proprietary short sales in a manner that was reasonably designed to achieve compliance with Regulation SHO and NYSE Arca Equities Rules pertaining to short selling of equities securities."[12] DBSI-T1811742.

For this Topic Two, Plaintiffs understand that DBSI may only be able to respond to the extent that ARCA informed DBSI of the facts underlying its allegations. Thus, by way of example, for subtopic (3), Plaintiffs understand that DBSI will only identify the proprietary desks if ARCA informed DBSI which desks it alleged to have failed to adhere to the aggregation requirements.

**TOPIC THREE**

With respect to DBSI's DMA Market Access Platform (the "DMA Platform"):

(1) How the DMA Platform obtains locates for easy to borrow and hard to borrow stocks;

(2) The purpose, use and operation of the Automated Block, which means for this purpose the: (a) type of securities it applied to; (b) the time period(s) it was in place; (c) why it was created; (d) its functions and goals; (e) the types of accounts it applied to and (f) the persons/ departments primarily responsible for overseeing it;

(3) The date(s) the Automated Block was disabled and the general reasons why the Automated Block was disabled during that time period. Further, on the date(s) the Automated Block was disabled, identification of the accounts (by number and name) for which the Automated Block was disabled;[13]

(4) For those instances where a stock was sold short through the DMA Platform when the stock was not easy to borrow and the Automated Block was disabled: (a) how a locate is generally obtained; (b) the steps DBSI took to oversee the short sale to ensure that a locate occurred; and (c) the documents or data on which locates were recorded.

---

[11] See footnote 6.
[12] See footnote 6.
[13] See footnote 6.

(5)  All instances in which TASER was sold short through the DMA Platform while the Automated Block was disabled and: (i) no valid locate was obtained prior to the short sale or (ii) DBSI cannot confirm whether a valid locate was obtained prior to the short sale;[14]

(6)  Identification of the persons with primary responsibility for overseeing the operation of the Automated Block and determining whether to disable it;[15]

(7)  Any changes to DBSI's policies and procedures concerning the Automated Block in response to the issues raised in the FINRA Letter of Acceptance, Waiver and Consent (DBSI-T1811771-87);[16] and

(8)  The number of currently known instances where a short sale was conducted through the DMA Platform and no valid locate was obtained prior to the short sale. If reasonably available, the witness should provide this information by year, for each year from 2003 to 2009.[17]

## TOPIC FOUR

The procedures DBSI used to compile its Easy to Borrow list from January 2005 April 2007, and the reasons why FINRA alleged that such procedures were "deficient" (to the extent FINRA informed DBSI of those reasons). Further, the steps DBSI took, if any, to change the procedure for compiling its Easy to Borrow List after in response to the April 2007 AWC.

## TOPIC FIVE

Each trade or transaction for which FINRA alleged that:[18]

a.  DBSI "violated Reg SHO's provisions concerning certain long sale orders accepted from its clients" as described on DBSI-T1811777-78;

b.  DBSI "utilized borrowed shares to effect delivery on long sales" as described in DBSI-T1811778;

---

[14]  See footnote 6.
[15]  See footnote 6.
[16]  See footnote 6.
[17]  See footnote 6.
[18]  For all of the subtopics, please see footnote 6.

791385.1

7

c.  DBSI failed to monitor fails to deliver in threshold securities on the threshold list provided by the Archipelago Exchange. DBSI-T1811779;

d.  "certain aged fails in securities on the Archipelago Exchange's threshold list were not closed out as required and/or the Firm executed short sales in these threshold securities while it had an aged threshold fail without first borrowing or arranging to borrow the securities as required." DBSI-T1811779.

e.  DBSI "did not apply the method as prescribed by FAQ 5.8 to close-out aged threshold fails," as described in DBSI-T001811779;

f.  DBSI "erroneously reported position movements between related client accounts as buy and sell transactions for blue sheet recording purposes," as described in DBSI-T1811780;

g.  for "short sales executed in the accounts of customers with multiple prime brokers that executed at [DBSI] but instructed [DBSI] to send the position to another prime broker, [DBSI] failed to ensure that the short sale indicators properly flowed to Automatic Data Processing, Inc.," as described in DBSI-T001811780;

h.  DBSI "did not monitor [or] effect buy-ins . . . for client long sale orders where [DBSI] had not obtained possession of the securities from the customer within 10 business days after the settlement date" or otherwise violated Rule 15c303 as described in DBSI-T1811781; and

i.  that DBSI "made an inaccurate entry in its books and records" by "accept[ing] a sell order marked 'long' from a client but booked such long sale to a short account during the period from January 3, 2005 to approximately December 2008," as described in DBSI-T001811781.

## TOPIC SIX

Identification of the "single account" listed under (5) on DBSI-T1811756.

791385.1

8