# EXHIBIT N

138129.1

## EXHIBIT A

1.  Each of the matters below, together with the underlying investigation, inquiry and examination, shall be referred to individually as the "Investigation" or collectively as the "Investigations"

    (a) March 13, 2006 NASD Letter of Caution (see GS T_66-67).

    (b) NYSE Hearing Board Decision 06-128 (see GS T_74-83) and related June 27, 2006 Stipulation of Facts and Consent to Penalty (see GS _T84-94). However, for purposes of this Topic 1, the deponent does not need to be prepared to testify as to Paragraphs 10-12 on pages GS_T78-79 and GS_T86-87.

    (c) July 10, 2006 NASD Letters (see GS T_95-96 and 97-98).

    (d) July 26, 2006 NASD AWC (see GS T_99-107). However, for purposes of this Topic 1, the deponent does not need to be prepared to testify as to Paragraphs A5-6 on page GS_T104-05.

    (e) January 29, 2009 Cautionary Action (see GS T_133-134 and 135136).

    (f) May 3, 2010 Hearing Board Decision 10-NYSE-11 (see GS T194205) and Stipulation of Facts and Consent to Penalty (see GS T206219).

    (g) May 2010 Cease and Desist Order (see GS T220-27).

For each Investigation, Goldman shall provide a witness to testify as to the following topics listed below in sub-paragraphs a-j. Such testimony, however will be circumscribed insofar as (i) Goldman has informed Plaintiffs that no witness exists with pre-existing knowledge of all of the topics on which Plaintiffs seek testimony and that any corporate representative will testify based upon making reasonable inquiry into those matters; (ii) in reasonably preparing for testimony, the witness shall not be obligated to obtain information from all potential sources of information at Goldman and any consideration of the reasonableness of the witness's preparation shall also take into account the number of topics and their scope; and (iii) the witness shall not be required to testify as to any matters requiring legal or expert opinions or determinations (such as, for example, topics regarding compliance with laws, rules or regulations or for opinions regarding proximate causation), including to the extent any Goldman policies or procedures are based on or reflect legal standards.

a. The scope of the Investigation, in particular (i) the approximate date(s) when Goldman was first notified of the Investigation, (ii) the securities understood to be the subject matter of the Investigation; (iii) the traders/trading desks principally involved, (iv) the time periods examined, and (v) the types of conduct investigated;

b. (i) The approximate date(s) when Goldman first learned of the matters at issue in each Investigation; and (ii) identification of the persons within Goldman with principal knowledge of the matters at issue in each Investigation, and (iii) the approximate dates when they obtained that knowledge;

c. From January 1, 2003 onwards, the policies and procedures Goldman has employed and now employs to prevent violations of the laws, rules or regulations that are the subject matter of the Investigations. This includes monitoring and supervisory procedures;

d. Whether the conduct alleged in the settlement of the Investigations would violate any Goldman policy or procedure (including any policy or procedure contained in any compliance manuals) and, if so, which one(s);

e. What actions, if any, Goldman took in response to the settlement of the Investigations;

f. Whether Goldman is aware of any instance (excluding the Investigations) involving TASER securities in which violations occurred similar to those alleged in the Investigations and, if so, identify (i) what the conduct generally was, (ii) approximately when it occurred, and (iii) the trading desks/traders principally involved;

g. Whether Goldman conducted its own internal investigation into the issues raised by the Investigations or their settlements and, if so and if not protected by privilege or attorney work product: (i) approximately when the investigation occurred, (ii) the persons principally involved in conducting the investigation, (iii) the securities involved, and (iv) the identification of any reports, analyses or memoranda showing the results of the investigation and to whom they were addressed;

h. During the time period identified in response to part a.(iv) above with respect to each of the Investigations, the person(s) with supervisory authority for compliance with the laws, rules or regulations that are

the subject matter of the Investigations, including their name and titles;

i. For each of the trading desks and traders identified under part a.(iii)., information relating to any instance (excluding the Investigations) involving TASER securities in which they failed to comply with any Goldman policy or procedure relating to short selling, mismarking, or inaccurately marking tickets or Reg. SHO,; and

j. Identification of locations at Goldman that would be the subject of a reasonable search for (i) hard copy documents, (ii) audio recordings or (iii) video recordings, which memorialized or recorded any meetings or telephone calls with regulators relating to the Investigation. Responding to this topic does not require (i) a search of these locations and Plaintiffs will serve a document request should they seek the production of such documents and Goldman reserves all rights to objects any such request for production; or (ii) identification of documents that are protected by privilege or attorney work product.

2. In lieu of providing a witness, Goldman shall undertake a reasonable search to produce (or shall identify specifically in its prior production) data sufficient to show whether Goldman's Equity Finance Group ("EFG") executed any trades involving TASER common stock, equities or derivatives and, if so:

   a. When the trades took place;

   b. the account names/numbers;

   c. the number of shares; and

   d. the type of trade (e.g., short or long).

After receiving this data, Goldman Sachs shall provide a corporate representative to testify on the topics listed below in sub-paragraphs a-c. As well as the limitations described in Topics 1 and 2 above (such as those concerning legal or expert opinions), the witness shall be reasonably prepared to testify as to Goldman Sachs' general practices and procedures, but shall not be obligated to prepare or testify on these topics as to any specific trades.

a.  Goldman Sachs' practices and procedures regarding whether shares are delivered within T+3 and, if not, when they are delivered and settled;

b.  Goldman Sachs' practices and procedures regarding whether transactions are completely and accurately recorded to the Nasdaq Market Center; and

c.  Goldman Sachs' practices and procedures regarding whether transactions are completely and accurately recorded on order tickets.