# EXHIBIT P

138129.1

# Elizabeth G. Eager

**From:** Steven J. Rosenwasser
**Sent:** Wednesday, August 11, 2010 10:39 AM
**To:** 'Halper, Jason'; Elizabeth G. Eager; Markel, Gregory; Isajiw, Peter
**Subject:** RE: TASER DBSI Follow Up to 8-10 Phone Call

Jason,

Thank you for your email below. Please see our comments below, and note that the failure to comment on a particular point should not be viewed as agreement or waiver of a right to argue the issue later. Further, I want to reiterate that our proposals in this process are meant to find a way to resolve this dispute without Court intervention. They should not be viewed as any agreement with the points you raise, and we reserve the right to seek to take the deposition as noticed if the parties do not agree.

Finally, I want to note that Plaintiffs remain ready, willing and able to confer on this as soon as you are ready. We believe the conferral process should move as quick as possible as we do not want to delay the deposition again.

Steven

---

**From:** Halper, Jason [mailto:Jason.Halper@cwt.com]
**Sent:** Wednesday, August 11, 2010 8:05 AM
**To:** Elizabeth G. Eager; Markel, Gregory; Isajiw, Peter
**Cc:** Steven J. Rosenwasser
**Subject:** RE: TASER DBSI Follow Up to 8-10 Phone Call

Dear Steven & Liz:

Thank you for your meet and confer efforts in connection with the revised draft 30(b)(6) Notice you sent us on Monday, August 9, 2010, as well as for your email below regarding our conversation on Tuesday August 10 regarding this Notice. I note that following our conversation, as you indicated you would during our call, Plaintiffs served their Notice. DBSI reserves all rights and objections in response thereto whether or not set forth in this email.

As a preliminary matter, we explained that we had focused our efforts on analyzing the revised draft notice you had sent us on August 9 and that our discussions and proposals remain subject to further analysis and client approval. You indicated that you understood those conditions.

We also explained that, in the interest of efficiency, we thought it made more sense to focus on certain topics where further discussion might be productive and not take time discussing topics where the parties' positions appeared clear. You indicated that you understood and agreed with this approach. WE ALSO UNDERSTOOD THAT IN THOSE INSTANCES WHERE WE DID NOT DISCUSS THE ISSUE, IT WAS LIKELY (THOUGHT NOT DEFINITIVE) THAT YOU WOULD AGREE WITH OUR POSITION.

Please also be aware that, although not discussed during our most recent call, we continue to believe (as we have indicated previously) that certain of the ten "Investigations" included in the Notice should be removed from the scope of the 30(b)(6) deposition. We can discuss that issue later this week. WE DID NOT KNOW THIS WAS AN ISSUE, AND ASK THAT YOU PLEASE IDENTIFY ANY INVESTIGATIONS OR PARTS THEREOF THAT YOU ARE CONCERNED ABOUT ASAP.

<u>Subtopic 1(2)</u> - We discussed with you our concerns regarding the extraordinary burden associated with Subtopic 1(2), which broadly seeks information relating to DBSI's "knowledge of the conduct" alleged in each of the 10 AWC's, LOC's or other correspondence referred to as an "Investigation" and included in your Notice, as well as "the steps DBSI took" to promote compliance prior to the issuance of the relevant AWC's, etc.

We also provided you with examples that, in our view, illustrated the audit-like nature of this inquiry, given, among other things, the fact that this request purports to require DBSI to review a substantial portion of its trading data over a six-year time period, spanning numerous trading desks and countless securities and trades; identify any instances in which any of these types of alleged conduct occurred or may have occurred; ascertain the dates on which DBSI "learned" of any such instances in which any of these types of alleged conduct occurred or may have occurred; and then identify "the steps it took" to "prevent" each such instance or possible instance of alleged conduct. WE DISAGREED THAT THE SUBTOPIC WAS OVERLY BROAD OR REQUIRED ALL OF THESE ACTIONS.

While we appreciate the footnote in the Notice stating that you have informed DBSI that "if appropriate" it "can limit its preparation to speaking with persons in its compliance and regulatory department(s) and reviewing documents sent to and from those areas," we indicated that this footnote does not provide a meaningful or sufficient limitation on what we view to be an inappropriate and overly broad discovery request. You indicated that you understand our position regarding the burden associated with this request and then suggested revising the language in the footnote such that DBSI need only search documents regarding internal surveillance, monitoring, supervision, or reporting of any of the alleged types of conduct, to the extent DBSI maintains any such documents. You also indicated that Plaintiffs are not seeking information on a security-by-security or trade-by-trade basis, nor are they seeking information that would require DBSI to, for instance, review any emails at all or every Locate Exception or other Report within the applicable time period(s). Rather, you explained that Plaintiffs seek testimony only as to DBSI's identification of any general concerns with regard to the general types of conduct at issue and, generally, how DBSI addressed any such concerns. Further, by way of example, you indicated that you envision among the possible hypothetical but appropriate responses to your inquiry: "Yes, there was a concern regarding A in 2004 and in response DBSI did B," or "DBSI first learned about A during investigation B and followed up by doing X, Y, or Z."

WE DID NOT SAY THAT DBSI DEFINITIVELY NEED NOT REVIEW ANY "EMAILS AT ALL." WE DID, HOWEVER, INDICATE THAT WE ARE ASKING WHETHER DBSI IDENTIFIED ANY POTENTIAL OR ACTUAL INSTANCES OF THE CONDUCT AND WHAT STEPS IF ANY IT TOOK TO RESOLVE IT. AS YOU POINT OUT, AN EXAMPLE WOULD BE THAT DBSI WAS CONCERNED ABOUT FAILURES TO LOCATE IN 2004 AND TOOK ACTIONS X, Y AND Z TO RESOLVE THEM. I SHOULD NOTE THAT IN PROVIDING THIS EXAMPLE, WE ARE NOT AGREEING IN ADVANCE THAT SUCH AN ANSWER WOULD BE FULL AND COMPLETE, BUT RATHER THE AMOUNT OF INFORMATION YOU PROVIDE WOULD DEPEND ON THE CIRCUMSTANCE. WE DO AGREE THAT WE ARE NOT SEEKING TRADE SPECIFIC INFORMATION.

We will consider whether we can appropriately define and limit this topic of inquiry and the resultant burdens, including possible individuals and/or documents that may be reasonably available to DBSI and which DBSI may consult without conducting an audit.

Subtopic 1(4) - We indicated that Subtopic 1(4) presents similar concerns as Subtopic 1(2) in that it requires an audit to determine DBSI's "position" as to whether any of the alleged conduct in any of the Investigations occurred. You indicated that Plaintiffs are not seeking an audit or a response that would require an audit, but, rather, a general response that falls within what Plaintiffs regard as one of three appropriate hypothetical responses: "Yes, the alleged conduct occurred"; "No, the alleged conduct did not occur"; or "We did not each a conclusion as to whether the alleged conduct occurred because we arrived at a settlement." While you also suggested in this regard that the response would lie within a corporation's "current knowledge," we indicated that this phrase does not provide meaningful guidance or limitations on the scope of inquiry that would be required.

FOR CLARIFICATION, WE ARE NOT AGREEING THAT THE SENTENCE EXAMPLES PROVIDED WOULD BE A FULL AND COMPLETE RESPONSE, BUT RATHER ARE ILLUSTRATIVE OF THE TYPE OF INFORMATION WE ARE SEEKING. THE AMOUNT OF DETAIL PROVIDED WOULD DEPEND ON THE CIRCUMSTANCE. BUT, AS A GENERAL MATTER, YOU ARE CORRECT THAT WE ARE SEEKING INFORMATION AS TO WHETHER DBSI CONCLUDED THAT THE CONDUCT OCURRRED, DID NOT OCCUR OR DID NOT COME TO A CONCLUSION. YOU ARE ALSO CORRECT THAT WE ARE NOT ASKING DBSI TO FIRST AUDIT OR INVESTIGATION THE MATTER NOW, BUT RATHER PROVIDE ANY CONCLUSIONS THAT HAVE ALREADY BEEN REACHED (IF ANY).

We will consider DBSI's response to this Subtopic in light of the clarification above.

Subtopic 1(5) - This Subtopic, which seeks information as to whether any of the types of alleged conduct at issue in the Investigations violated any DBSI "rule, regulation or procedure" that might have been in place during any point spanning a six-year time period, as we discussed, presents complicated and overlapping problems of burden that are compounded, in

2

our view and as previously discussed, by the lack of relevance to plaintiffs' claims of whether DBSI "violated" one of its internal rules or regulations.

In response, you claimed that "the number of types of conduct at issue are not that many" and that when you look at what you claim is a limited number of types of conduct for which Plaintiffs seek information "this topic does not require much work at all." We expressed our disagreement with that view and provided examples of the burden associated with this Subtopic.

We also suggested during our call that Plaintiffs reconsider the scope of conduct implicated by their Notice, at least for purposes of Subtopic 1(5) if not more generally, and limit the types of alleged conduct for which they believe they require information for this Subtopic. You indicated that you will consider this suggestion.

In the meantime, we will continue to consider whether we can otherwise appropriately define and limit this topic of inquiry and the resultant burdens.

WE STATED THAT IT IS RELEVANT AND DISCOVERABLE WHETHER THE CONDUCT VIOLATED ANY DBSI RULE, POLICY OR PROCEDURE. WITH RESPECT TO YOUR CLAIM OF BURDEN, WHILE WE DISAGREED WITH YOUR OBJECTION, WE AGREED TO LIMIT THE SCOPE TO THE PARTICULAR RULE, POLICY OR PROCEDURE THAT WAS OR WOULD BE VIOLATED BY THE CONDUCT DURING THE TIME PERIOD COVERED BY THE INVESTIGATION. OUR REVISED NOTICE REFLECTS THAT.

Subtopic 1(7) - As discussed, we believe this Subtopic presents the same audit-like burdens as associated with Subtopic 1(2). You indicated that Plaintiffs do not seek an audit or a response that would require that DBSI, for instance, review every Locate Exception Report, but, rather, that DBSI review what you termed "next step" documents (which all parties acknowledged may not exist), which you explained to comprise internal surveillance, monitoring, supervision, or reporting of the alleged conduct beyond routine reports (i.e., once elevated to a supervisory or compliance level). THIS IS NOT AN EXHAUSTIVE LIST, BUT RATHER EXAMPLES. DBSI IS IN A BETTER POSITION THAN PLAINTIFFS TO IDENTIFY WHAT REPORTS, IF ANY, EXIST. You also stated that Plaintiffs seek a response only to the extent any such "next step" documents exist, and that if no such documents exist, that would be the end of the inquiry.

FOR CLARITY, WE ARE NOT ASKING FOR DOCUMENTS THAT SAY A VIOLATION *MAY* HAVE OCCURRED, BUT RATHER DOCUMENTS THAT TRACK OR SHOW WHERE DBSI CONCLUDED A VIOLATION DID IN FACT OCCUR. THE PURPOSE OF THIS IS TO ASK DBSI TO PROVIDE ITS CURRENT KNOWLEDGE; I.E., VIOLATIONS IT IS ALREADY AWARE OF, AS OPPOSED TO VIOLATIONS IT COULD FIND IF IT FIRST CONDUCTED AN AUDIT NOW. DBSI WOULD CONDUCT A REASONABLE SEARCH TO FIND DOCUMENTS CONTAINING THAT INFORMATION.

We will consider DBSI's response to this Subtopic in light of your clarification.

Subtopic 1(9) - You indicated that Plaintiffs are not seeking testimony related to technical issues or from an IT professional regarding this Subtopic. You also indicated that Plaintiffs understand and agree that DBSI may rely in part or in whole on expert testimony for subpart (3) of this Subtopic.

FOR PURPOSES OF THE ACCURACY OF RECORDS, WE ARE SEEKING TO DETERMINE HOW AN ERROR IN ONE SYSTEM OR DOCUMENT MAY RESULT IN THE SAME ERROR EXISTING IN OTHER PLACES. THUS, BY OF EXAMPLE, IF DATABASE X MISMARKS A SHORT SALE AS LONG, WE WOULD WANT TO KNOW ALL THE DATABASES AND DOCUMENTS THAT WOULD ALSO HAVE THAT ERROR AS A RESULT.

FOR PURPOSES OF IMPACT ON DELIVERY OF SECURITIES AND STOCK PRICE, PLEASE SEE LIZ'S EMAIL. WE ARE LOOKING TO SEE WHETHER DBSI HAS A POSITION ON THOSE POINTS. IF DBSI'S POSITION IS THAT IT HAS NO POSITION ON THOSE ISSUES, BUT INSTEAD WILL RELY ONLY ON ITS EXPERT'S OPINION IT CAN SO TESTIFY. I NOTE THAT IF DBSI HAS TAKEN A POSITION WITH REGULATORS OR OTHERS ON THIS, WE WANT TO KNOW THAT.

Subtopic 1(11) - We explained, again, that a discussion of legal rights is an inappropriate subject for 30(b)(6) testimony, particularly where, as here, this testimony would be nothing more than a recitation of what is set forth in the relevant AWC's and other documents, which can be authenticated separately by written agreement. Plaintiffs indicated and your email below confirms that Plaintiffs' attempt to obtain testimony on this Subtopic is not for the purpose of discovering factual information. Rather, the information is clear from the documents and therefore we reiterate our belief that this

request is an inappropriate topic for 30(b)(6) testimony. We believe it is premature to discuss a trial deposition with respect to this issue but, to be frank, are not inclined to agree it is appropriate.

WE DID NOT AGREE THAT THE INFORMATION WE SEEK IS NOT FACT DISCOVERY. WE SIMPLY NOTED THAT, IN RESPONSE TO YOUR STATEMENT THAT THE INFORMATION MAY BE MORE APPROPRIATE FOR A TRIAL CROSS, THAT DBSI HAS NOT COMMITTED TO BRING ITS EMPLOYEES TO ATLANTA FOR TRIAL. WE BELIEVE THAT DBSI HAS A POSITION ON ITS RIGHTS WITH RESPECT TO THE INVESTIGATIONS, PARTICULARLY WHEN WE LIMIT THE EXAMINATION TO THOSE RIGHTS LISTED IN THE RELEVANT AWC, DECISION, ETC. I ALSO NOTED THAT WE ARE NOT SEEKING A LEGAL OPINION, AND THAT YOU RESERVE YOUR RIGHT TO OBJECT TO ANY QUESTIONS AS CALLING FOR A LEGAL CONCLUSION WHICH THE COURT CAN LATER RULE ON. A BLANKET OBJECTION, WITHOUT ANY QUESTIONS, IS IMPROPER.

<u>Subtopics 1(12)</u> - Given the audit-like nature of this request, you suggested that we will handle this Subtopic as we do Subtopic 1(2), i.e., considering your clarification of the information you are seeking in connection with this Subtopic, we will consider whether we can appropriately define and limit this topic of inquiry and the resultant burdens without conducting an audit.

<u>Subtopic 1(14)</u> - As indicated during our call, we believed we had reached agreement on the scope of inquiry in connection with this topic, namely, that Plaintiffs sought the identification of in-person meetings with regulators (with dates and persons present). You confirmed that Plaintiffs now also seek the identification of "hard copy documents," which for this Subtopic you defined as notes taken of and during any such meetings, and you withdrew Plaintiffs' request for audio or video recordings. You also indicated that Plaintiffs would be willing to accept a writing in lieu of a deposition for this Subtopic. We will consider DBSI's response to this Subtopic in light of the new information sought.

OUR REVISED NOTICE REFLECTS THIS

<u>Subtopic 1(15)</u> - We discussed the burden associated with this request, which, like certain other Subtopics discussed, would essentially require an audit that involved reconstructing Taser trading activity for every day during a six-year time period. We further explained the enormity of this task by noting that regulators were willing to limit their inquiries to a sampling of a handful of stocks or trading days due to the same burdens and practicalities. You indicated among other things that you understood the burden this request purports to impose on DBSI and that Plaintiffs only seek a general response such as that discussed in connection with Subtopic 1(2). You further indicated that Plaintiffs are not seeking information on a trade by trade or transaction by transaction basis. Given your clarification of the information sought in this Subtopic, we will consider whether we can appropriately define and limit this topic of inquiry and the resultant burdens without conducting an audit.

WE DID NOT AGREE THAT THIS CREATES AN UNDUE BURDEN. WHEN WE SAY WE UNDERSTAND IN THIS OR OTHER CONTEXTS, WE MEAN WE UNDERSTAND YOUR POSITION, NOT THAT WE AGREE WITH IT. WE INDICATED THAT WE ARE WILLING TO DISCUSS THIS MATTER FURTHER, BUT NOTED THAT YOUR CLAIM OF BURDEN IS INCONSISTENT WITH YOUR ANSWER, WHERE YOU DENY THE CONDUCT. WE DO NOT SEE HOW YOU CAN DENY THE CONDUCT AND AT THE SAME TIME SAY IT IS BURDENSOME TO ANSWER QUESTIONS AS TO WHETHER THE CONDUCT OCCURRED. WE DID NOT AGREE THAT WE WILL AGREE TO HANDLE THIS LIKE 1(2), BUT WERE WILLING TO CONSIDER IT OR OTHER ALTERNATIVES. WE ASK THAT YOU PROVIDE US WITH A PROPOSAL.

Also, we disagree with your suggestion that DBSI's position with respect to this Subtopic somehow is "inconsistent" with any prior pleadings or written discovery responses, but do not see value in debating that point at this time.

<u>Subtopic 1(16)</u> - As discussed, we believe inquiries relating to Mr. Bosco's knowledge or work are irrelevant to Plaintiffs' claims. You vaguely suggested that this topic is directly relevant to "one of your claims" but did not identify the claim or its relevance. You also indicated that Plaintiffs seek only general information regarding Mr. Bosco's present recollection of his general knowledge of and involvement in the Investigations. We will consider DBSI's response to this Subtopic in light of your clarification, although continue to believe that this information is irrelevant.

AS WE DISCUSSED, THIS IS RELEVANT TO THIS CASE AND TO THE FACT THAT MR. BOSCO PROVIDED A VERIFICATION ON THESE MATTERS. I NOTED THAT WE DO NOT WANT TO KNOW MR. BOSCO'S DAY TO DAY KNOWLEDGE, BUT RATHER INFORMATION ABOUT WHETHER HE WAS INVOLVED OR KNOWLEDGEABLE OF THE INVESTIGATION AND, IF SO, GENERALLY WHAT HIS INVOLVEMENT OR KNOWLEDGE WAS AND WHEN HE OBTAINED IT.

<u>Topics 2 and 5</u> - You indicated that Plaintiffs are willing to accept a writing for each subtopic within Topics 2 and 5, which may eliminate or streamline any deposition on these topics. Please let us know which, if any, subtopics within Topics 2 and 5 would be eliminated were DBSI to provide such a verified writing. We also indicated that DBSI can provide a response to these inquiries only to the extent a regulator informed DBSI of any such facts, and we indicated that any responses which DBSI ultimately agrees to provide would be derived from the relevant correspondence with the regulator.

However, we note that your email below appears to object to DBSI endeavoring to provide a response based solely on correspondence with the regulator and therefore Plaintiffs appear to be reserving their rights to later argue that a response based on such an inquiry is inappropriate or insufficient. While appearing to preserve that position, you also do not indicate what type of inquiry would satisfy Plaintiffs in connection with these Topics. That situation is now workable. If we are going to reach an agreement, all parties must understand the burdens entailed and the information that will be provided. Please confirm that Plaintiffs will not take the position that DBSI's provision of information in response to Topics 2 and 5 based on a review of written correspondence with the regulator is inadequate or inappropriate or inform us of what additional inquiry you believe is required (as to which DBSI will consider but also reserves its rights to object).

OUR POSITION IS THAT DBSI MUST PROVIDE INFORMATION KNOWN OR REASONABLY AVAILABLE TO IT, AS 30B6 REQUIRES. IF THE ONLY AVAILABLE INFORMATION IS FROM CORRESPONDENCE, THEN IT MAY BE SUFFICIENT. BUT IF THERE IS OTHER REASONABLY AVAILABLE INFORMATION, WE ASK THAT YOU OBTAIN IT. WE ARE NOT ASKING YOU TO DO MORE THAN THE RULE REQUIRES. WE ARE NOT ASKING YOU TO ENGAGE IN A BURDENSOME SEARCH, BUT YOU MAY NEED TO TALK TO PERSONS INVOLVED IN THE INVESTIGATION TO SEE IF THEY HAVE INFORMATION OUTSIDE OF THE CORRESPONDENCE. WE CAN TALK MORE ABOUT THIS TO MAKE YOU COMFORTABLE.

AS FOR ELIMINATING A DEPO, WE CANNOT TELL YOU WHICH TOPICS IT MAY ELIMINATE UNTIL WE GET THE RESPONSE. MOREOVER, THIS DOES NOT MEAN WE AGREE THAT A WRITING IS APPROPRIATE INSTEAD OF A DEPOSITION, WE ARE SIMPLY ATTEMPTING TO AVOID COURT INTERVENTION BY ACCOMDATING YOU.


<u>Subtopic 3(1)</u> - Both as a general matter relating to Topic 3 and as to this particular Subtopic, we explained that, since these subtopics relate to an issue raised in a specific FINRA Investigation, we believe that limiting all inquiries on this Topic to the relevant time period for that Investigation (January 2005 through September 2009) is appropriate and reasonable. You indicated that September 2009 was an acceptable cut-off date and that you would consider January 2005 as the appropriate beginning of the time period applicable to Topic 3. WE INDICATED THAT THE START PERIOD SHOULD BE 2003 (OR WHEN THE PROCESS STARTED). THE FACT THAT FINRA ONLY LOOKED AT JANUARY 2005 DOES NOT MEAN THAT THE CONDUCT DID NOT EXIST BEFORE THEN.

As to Subtopic 3(1), you indicated that Plaintiffs will not seek any testimony relating to technical issues or from an IT professional, and that Plaintiffs seek only general testimony as to how the DMA Platform obtains locates. WE WANT TO KNOW HOW THE PROCESS WORKS (E.G., IF SOMEONE SHORTS ON THE DMA PLATFORM, HOW DOES A LOCATE GET OBTAINED. WE ARE NOT LOOKING FOR THE TECHNICAL IT SIDE OF IT)

<u>Subtopic 3(3)</u> - With respect to the second point of information sought in the Subtopic, we explained that it is our belief at this time, and that we are trying to confirm, that the information sought by this request is not reasonably accessible. In addition, we reiterated our concerns as to privacy and relevance. .LETS DISCUSS DURING OUR NEXT CALL.

<u>Subtopic 3(5)</u> - We explained the burden and difficulties associated with this inquiry, including the apparent need to reconstruct trading data over a multi-year time period. In response, you suggested that this topic could be handled like Subtopic 1(2).

<u>Subtopic 3(8)</u> - We discussed our view regarding the impracticability of this new request. In response, you suggested that this could be handled like Subtopic 1(7). We will consider DBSI's response in light of this clarification.

<u>Topic 6</u> - You indicated that Plaintiffs would accept a writing in lieu of deposition testimony.

We note that Plaintiffs have agreed that deposition(s) in response to the Notice will take place in New York and that, in the event that we are able to reach agreement on the scope of the Notice, you would agree to adjourn the deposition to a mutually acceptable later date. WE ARE ONLY AGREEING TO NEW YORK AS TO THIS DEPOSITION AND IT SHOULD NOT BE VIEWED AS AN AGREEMENT THAT OTHER DEPOS SHOULD BE OUTSIDE OF ATLANTA. AS FOR TIMING OF THE DEPOSITION, WE NEED TO DISCUSS THAT AND WHEN ANY WRITING WOULD BE PROVIDED. LETS DISCUSS DURING OUR NEXT CALL.

Finally, I raised with you the possibility that DBSI would move for a protective order with respect to the Notice prior to August 17, when the Court has devoted a substantial part of its day to hearing argument on the parties' various discovery motions. I expressed to you DBSI's concern that if we had not reached an agreement by the end of this week, notwithstanding our commitment to continue to negotiate to attempt to reach an agreement through this week, we may feel compelled to file such a motion in order to have that motion (or at least a request for an adjournment of the noticed deposition date) heard with the other discovery motions noticed for the 17th. In order to address this concern and avoid having DBSI move for a protective order while negotiations are ongoing, you expressed a willingness to agree that Plaintiffs would not argue (in the event DBSI does not make a motion prior to the 17th) that DBSI should have moved prior to the 17th or raise any other issue in regard to the timing of such a motion as it related to the other discovery motions being heard on the 17th. You also agreed to consider acknowledging in advance -- in agreed-upon language that could be included in any brief DBSI files supporting a protective order motion -- that we raised this issue with you this week and, in order to permit the parties to continue to negotiate in attempt to reach an agreement and avoid burdening the Court at this time with potentially unnecessary motion practice, all parties agreed that DBSI would refrain from filing a protective order motion prior to the 17th.

While we continue to reserve our rights to move for a protective order prior to August 17th, please let us know your position with respect to the issue raised immediately above. WE BELIEVE THAT IT IS PREMATURE TO MOVE FOR A PROTECTIVE ORDER AT THIS TIME AS THE PARTIES ARE STILL CONFERRING AND NOT AT AN IMPASSE. AT THE SAME TIME, WE INDICATED THAT WE HAVE BEEN CONFERRING FOR OVER THREE MONTHS AND WE CANNOT LET THIS DEPOSITION SLIP BACK FURTHER. THUS, IF WE DO NOT REACH AGREEMENT, WE INTEND ON MOVING FORWARD ON THE AMENDED NOTICE DATE. THAT SAID, IF WE REACH AN IMPASSE AND YOU FILE A MOTION FOR PROTECTIVE ORDER, WE WILL NOT ARGUE THAT YOU SHOULD HAVE FILED YOUR MOTION PRIOR TO THE HEARING ON THE 17TH. I BELIEVE THIS ADDRESSES YOUR CONCERN, BUT LET ME KNOW IF THAT IS NOT THE CASE.

Thank you for your continued meet and confer efforts, and we look forward to speaking with you in the next day or two to continue our discussions.

**From:** Elizabeth G. Eager [mailto:eager@bmelaw.com]
**Sent:** Tuesday, August 10, 2010 2:45 PM
**To:** Markel, Gregory; Isajiw, Peter; Halper, Jason
**Cc:** Steven J. Rosenwasser
**Subject:** TASER DBSI Follow Up to 8-10 Phone Call

Greg, Jason and Peter,

I am emailing to follow up on the draft Amended 30b6 Notice Steven sent you yesterday. We had a phone call on the topics in the deposition notice. This email summarizes our discussion on the phone call. Please let us know if you disagree with our summary.

You noted on the phone call that everything was still subject to client approval.

**Topic 1d.**

The topic is modified so to read "Paragraphs A(3) through A(7)." The use of "and" was a typo. The amended notice we are filing today will correct this.

**Topic 1. Subtopic 2.**

You expressed concern that this topic would require an audit because it covers a variety of conduct over a six-year period, including documents sent to and from compliance. We explained that we are interested in knowing when DBSI came to the opinion, if ever, that it has or may have a problem or issue with respect to the conduct at issue. Thus, we were not asking DBSI to review all potential instances of violations, but rather whether through, among other things, regulators, surveillance, monitoring, exams, audits, etc. DBSI found that it may have an issue in the particular area. Thus, DBSI may respond that it never identified the conduct as a systemic or other issue, that it identified it after regulators brought it to the firm's attention, etc. If you have alternate language you would like to propose, please do so. You will get back to us on this topic.

**Topic 1. Subtopic 4.**

You expressed concern over this topic. Plaintiffs reiterated that we are not looking for an audit. We explained that the answer to this question (in general and simplified terms) is likely one of the following: (1) Yes, we agree it occurred; (2) no, it did not occur (with an explanation why); or (3) DBSI never made a determination as to whether the conduct occurred.

You will get back to us on this topic.

**Topic 1. Subtopic 5.**

You expressed concern over the burden associated with this topic and its relevance. You expressed concern over the number of types of conduct covered by the investigations and the burden with having to look at various rules. Plaintiffs explained that we already limited the conduct when we limited the investigations for which we were seeking the 30(b)(6) deposition. We also noted that there is a lot of overlap between the investigations as to the conduct at issue. You also expressed concern that you may have to review compliance manuals for 2003 through 2009. We agreed to limit the identification of the rules, regulations or procedures that were violated to those that were in existence when the violation occurred, which is reflected in the amended notice we will serve today.

**Topic 1, Subtopic 7**
This topic requests you to identify specific instances of which you are aware. Plaintiffs explained that if DBSI's maintains a log, report, tracking document or something similar that lists or tracks violations we would want the listed violations. If DBSI does not maintain a log or tracking report that lists known violations, Plaintiffs would take a representation that such a log or tracking report does not exist (i.e, that DBSI does not track violations of the conduct).

**Topic 1, Subtopic 9**
You asked whether Plaintiffs were seeking an IT-type employee to testify about how systems interface with each other. Plaintiffs explained this is not the type of information we seek. Instead, we seek testimony on how an error (like a mismarking) would track into other data sets. While we understand that systems are integrated, we are interested in knowing to what other data sets the error would be transmitted but are not interested in how the transmission occurs. For example, if a short sale was marked long in a certain database, we wanted to know what other documents would have the same mismarking because it is linked to the original error or otherwise.

You indicated that part 3 of this subtopic regarding the effect on stock price was an expert issue. Plaintiffs explained that we are seeking to understand if DBSI has a position on the effect of the conduct in the AWC, letter of caution, etc. on delivery of securities or on stock price. We are NOT looking for expert opinion or testimony. Rather, whether, outside of any expert testimony DBSI may present in this case, DBSI has a position on the impact of the conduct on delivery or price. If the answer is no, we will accept that as responsive in the deposition.

**Topic 1, Subtopic 11**
DBSI takes the position that it is not appropriate for a 30(b)(6) witness to testify as to legal rights. Plaintiffs take the position that we are entitled to show what options DBSI had with regulators in lieu of agreeing to an AWC or other sanction. You mentioned that we may cross examine a witness about that trial. We responded that we believe we are

entitled to the testimony now, particularly if DBSI is going to object to either trial depositions after discovery or bringing its current or former employees to Atlanta for trial. You are considering this issue.

**Topic 1, Subtopic 12**
We will treat this like Topic 1, Subtopic 7.

**Topic 1, Subtopic 13**
You asked about what the term "conduct" in the subtopic referred to. Plaintiffs explained that we meant conduct like that which was the subject of the AWC. Thus, if the AWC said a certain prop desk and trader "John Doe" were involved, Plaintiffs would expect them to be identified in response to this topic.

**Topic 1, Subtopic 14**
Plaintiffs agreed to remove the "or telephone calls" language. Plaintiffs clarified that the reference to "hard copy documents" does not refer to formal correspondence with regulators. Instead, it refers to notes of meetings with regulators. DBSI indicated that it might have privilege concerns. Plaintiffs indicated that this was a topic that we would be willing to take a writing on this topic, in lieu of a deposition. Our amended notice reflects this.

**Topic 1, Subtopic 15**
You raised burden concerns as to this topic, claiming that it would require you to reconstruct the TASER trading activity. Plaintiffs indicated that you could answer this topic based on the type of information discussed as top topic 2.

**Topic 1, Subtopic 16**
Steven and Greg had an earlier conversation on the issue of Mr. Bosco's knowledge. You indicated that DBSI would likely prepare for this topic by talking to Mr. Bosco about his knowledge and what he remembers about each investigation. Plaintiffs explained that we are not seeking information about Mr. Bosco's knowledge of all of the specifics of the investigation but instead general information about his level of involvement with and knowledge of each investigation.

**Topic 2**
Plaintiffs indicated that while we believe topic two is appropriate for a deposition, to compromise, we would be willing to take a writing on topic two) (though we reserve the right to take a deposition on it, and you reserve the right to object). You asked whether this included subtopic 6 because it did not have a footnote. Plaintiffs confirmed that we will also take a writing on subtopic 6 and that the omission of the footnote was an oversight. You explained that DBSI's response to topic two will be based on written correspondence. We believe that you are required to provide information "reasonably available" to DBSI, whatever that information may be.


**Topic 3**
You asked whether Plaintiffs were seeking testimony from IT personnel. Plaintiffs confirmed that we are not seeking such testimony. Instead, we want to know how a locate would be done for an easy-to-borrow stock, such as if a client would use an online order execution system. And for a hard-to-borrow stock, would a client call stock loan for a manual locate.

We discussed the time period. Plaintiffs proposed 1/1/03-present day for subtopic 1 and 1/1//03-9/30/09 for the other subtopics.

**Topic 3, Subtopic 3**
You indicated that you believed for the second sentence, the information does not exist in a readily attainable form, and you would have to recreate trading activity. In an attempt to limit the burden, Plaintiffs asked if the automated block was disabled for all clients or just for a certain list of accounts or clients. You will try to get additional information and get back to us.

8

**Topic 3, Subtopic 5**
We discussed treating this topic like Topic 1, Subtopic 15.

**Topic 3, Subtopic 8**
You indicated that read literally this topic would require DBSI to perform an audit. Plaintiffs confirmed that they do not seek for you to do an audit. Instead, Plaintiffs want to know if you keep track of this information. We discussed treating this topic like Topic 1, Subtopic 7.

**Topic 5**
We discussed treating this topic like Topic 2. You indicated that DBSI's response would likely be based on written correspondence. We believe that you are required to provide information "reasonably available" to DBSI, whatever that information may be.

**Topic 6**
Plaintiffs indicated a writing was fine on this topic and that you could even send an informal email to resolve the issue.

At the end of the call, Plaintiffs indicated we would be serving the amended 30(b)(6) notice for September 17. Plaintiffs are, however, willing to confer on these topics. If we reach an agreement, Plaintiffs would consider postponing the deposition.

You are going to discuss these issues with your client and will get back to us.

Thanks,
Liz

---

IRS Circular 230 Legend: Any advice contained herein was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal, state, or local tax penalties. Unless otherwise specifically indicated above, you should assume that any statement in this email relating to any U.S. federal, state, or local tax matter was written in connection with the promotion or marketing by other parties of the transaction(s) or matter(s) addressed in this email. Each taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

================================

NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.

---