# EXHIBIT D

Applicant, a Maryland corporation, registered under the Act in 1969. Applicant states that on November 6, 1974, its shareholders approved a Plan of Reorganization and Agreement of Merger whereby the Applicant would be merged into Schuster Fund, Inc., an open-end, diversified, management investment company registered under the Act. Applicant further states that the merger became effective when Articles of Merger were filed with the State of Maryland Department of Assessments and Taxation on November 6, 1974, and the separate corporate existence of Applicant ceased to exist.

Section 8(f) of the Act provides, in pertinent part, that whenever the Commission, upon application, finds that a registered investment company has ceased to be an investment company, it shall so declare by order, and upon the taking effect of such order, the registration of such company shall cease to be in effect.

*Notice is further given,* That any interested person may, not later than February 7, 1977, at 5:30 p.m., submit to the Commission in writing a request for a hearing on the matter accompanied by a statement as to the nature of his interest, the reasons for such request and the issues, if any, of fact or law proposed to be controverted, or he may request that he be notified if the Commission shall order a hearing thereon. Any such communication should be addressed: Secretary, Securities and Exchange Commission, Washington, D.C. 20549. A copy of such request shall be served personally or by mail upon Applicant at the address stated above. Proof of such service (by affidavit, or in the case of an attorney-at-law, by certificate) shall be filed contemporaneously with the request. As provided by Rule 0-5 of the Rules and Regulations promulgated under the Act, an order disposing of the application will be issued as of course following said date unless the Commission thereafter orders a hearing upon request or upon the Commission's own motion. Persons who request a hearing or advice as to whether a hearing is ordered will receive any notices and orders issued in this matter, including the date of the hearing (if ordered) and any postponements thereof.

For the Commission, by the Division of Investment Management, pursuant to delegated authority.

GEORGE A. FITZSIMMONS,
*Secretary.*

[FR Doc.77-1810 Filed 1-19-77;8:45 am]

[File No. 600-15]

## NATIONAL SECURITIES CLEARING CORP.

### Order Granting Registration and Statement of Reasons

JANUARY 13, 1977.

These are proceedings pursuant to section 19(a)(1) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. 78s (a)(1) (1975), as amended by the Securities Acts Amendments of 1975 (the "1975 Amendments"),[1] to determine whether to grant or deny the application of the National Securities Clearing Corporation ("NSCC") for registration as a clearing agency[2] pursuant to section 17A of the Act, 15 U.S.C. 78q-1 (1975), and Rule 17Ab2-1 thereunder, 17 CFR 240.17Ab2-1. NSCC's application contemplates the performance by NSCC of the clearing and settlement operations currently performed by the American Stock Exchange Clearing Corporation ("ASECC"), National Clearing Corporation ("NCC") and Stock Clearing Corporation ("SCC").

Section 19(a)(1) of the Act provides that, upon the filing of an application for registration as a registered clearing agency pursuant to section 17A of the Act, the Commission shall publish notice of the filing and afford interested persons an opportunity to submit written data, views and arguments concerning the application. Thereafter, the Commission either grants the registration or institutes further proceedings to determine whether registration should be granted or denied.

On March 29, 1976, the Commission gave notice of the filing of NSCC's application for registration.[3] The importance of the application to the Commission's efforts to perfect the mechanisms of a national market system for securities[4] and to facilitate the establishment of a safe and efficient national system for the clearance and settlement of transactions in securities,[5] the complexity of the technical, legal and economic issues raised by the application, and the written data, views and arguments concerning the application submitted in response to the Commission's March 29, 1976, announcement led the Commission to conclude that further exploration of the issues raised by the application was desirable. Accordingly, on May 28, 1976, the Commission instituted these proceedings and provided an opportunity for oral presentation of data, views and arguments on June 16-18, 1976.[6] On November 3, 1976, the Commission announced it was considering approving the NSCC application subject to four proposed conditions, requested public comment on the proposed conditions, and extended the time for concluding the proceedings in connection with the application to November 29, 1976.[7]

In the light of its experience in regulating securities markets, clearing corporations, securities depositories, transfer agents and brokers and dealers, the Commission reviewed and analyzed the many technical, legal and economic issues raised by NSCC's application, submissions made in response to the application, and other presentations of data, views and arguments made in connection with these proceedings and in response to the Commission's request for comment on the proposed conditions to approval of the application. Thereafter, the Commission made specific determinations required by the Act and, in accordance with the Act's directive to facilitate the establishment of a national system for the prompt and accurate clearance and settlement of transactions in securities, evaluated the application against the statutory findings and objectives of safety, efficiency, the use of new data processing and communications techniques, the linking of clearance and settlement facilities, the development of uniform standards and procedures, and reductions in unnecessary costs.[8] In addition, and as required by the Act, the Commission considered the effects which the exercise of its authority to grant or deny NSCC's application for registration would have on the public interest, the protection of investors, the safeguarding of funds and securities and the maintenance of fair competition.[9] On the basis of its review, analysis and evaluation of the NSCC application and a balancing of the concerns which the Commission must consider in using its authority under the Act to facilitate the establishment of a national clearing and settlement system,[10] the Commission has concluded these proceedings and has determined to grant registration to NSCC subject to the terms of this order and to the four conditions and the directives set forth herein.[11]

NSCC will be required to comply with those conditions to the satisfaction of the Commission before NSCC may begin operating, as a single integrated system, the clearing and settlement systems currently operated by ASECC, NCC and SCC. In the interim, NSCC must submit for Commission approval any proposed changes in the rules, operating procedures and facilities management arrangements of NSCC or any of its operating divisions which are in effect immediately following the issuance of this order.

---

[1] Pub. L. No. 94-29, section 16, 89 Stat. 146 (1975).

[2] Section 3(a)(23) of the Act, 15 U.S.C. 78(c)(a)(23) (1975), defines "clearing agencies" to include, inter alia, clearing corporations and securities depositories. See also N.Y. Uniform Commercial Code, Sections 8-102(3) and 8-320 (McKinney Supp. 1975-76). For a description of clearing corporation and depository functions, see discussion under "Characteristics of a National System" infra.

[3] Securities Exchange Act Release No. 12274 (March 29, 1976), 41 FR 14455 (April 5, 1976).

[4] The Act, Section 2, 15 U.S.C. 78(b) (1975).

[5] The Act, Sections 2 and 17A.

[6] Securities Exchange Act Release No. 12489 (May 28, 1976), 41 FR 23255 (June 9, 1976).

[7] Securities Exchange Act Release No. 12954 (November 3, 1976), 41 FR 49721 (November 10, 1976). NSCC subsequently consented to an extension of time for concluding these proceedings to January 13, 1977.

[8] The Act, Section 17A(a)(1).

[9] The Act, Section 17A(a)(2).

[10] *Id.*

[11] The determinations the Commission is making under the Act and the duration of, conditions to and directives issued in connection with NSCC's registration are set forth below under "Determinations, Conditions and Directives."

in connection with the determinations with respect to NSCC's registration not made in this order, the Commission will consider, during the period before the implementation of Phase II and thereafter, such matters as (i) the issues which should be included in the book entry portion of a national clearing and settlement system, (ii) the appropriateness and parameters of interface fees for movements between securities depositories, (iii) the bases on which and arrangements under which registered clearing agencies should participate in other registered clearing agencies,[203] (iv) the extent to and manner in which registered clearing agency operations should facilitate settlements between brokers and dealers and their institutional customers, (v) the size and nature of the clearing fund contributions and other membership requirements to which participants in registered clearing agencies should be subject in general and as participants in more than one registered clearing agency and (vi) the extent to which clearing agencies should be obligated to discolse cost and revenue data to participants and owners. At the same time, the Commission will be considering areas in which it should exercise its rulemaking authority with respect to registered clearing agencies. In the discharge of this broad range of regulatory responsibilities the Commission will seek to harmonize the Act's objective of developing a national clearing and settlement system with NSCC's initiation of Phase II operations.

While NSCC will operate in the context of the continuing oversight conducted by the Commission in discharging its regulatory responsibilities with respect to securities markets, clearing agencies, brokers and dealers, transfer agents and securities information processors, the Commission will implement measures uniquely intended to isolate, identify and evaluate the effects of NSCC's establishment on each of those entities.

In addition to meetings with registered clearing agencies and their participants to determine the rate of NSCC's progress toward the implementation of Phase II and the effects of its pricing policies, the Commission plans to establish a program for the receipt of regular reports from registered clearing agencies covering such matters as (i) price and service data, (ii) aggregate clearing volume and number of participants, (iii) volume in either direction through each interface or link (detailed) as to each participant, (iv) names of participants withdrawing from registered clearing agencies, (v) the history of clearing volume generated by withdrawing participants, (vi) clearing volume generated by participants joining registered clearing agencies during the six months before their joining and (vii) cost and revenue data for the clearance and settlement operations (detailed as to, among other things, comparison, interface and branch facility operations). The Commission will also monitor the effects and appropriateness of the $0.12 fee imposed pursuant to the NSCC shareholders' agreement in connection with the Commission's survey of Self-Regulatory Organizations and Subsidiaries.[204]

In appropriate instances, the Commission may determine that cost data obtained from registered clearing agencies with respect to matters such as interface, comparison and branch facility operations should be furnished to other clearing agencies participating in the interfaces or branch facility operations.

DETERMINATIONS, CONDITIONS AND DIRECTIVES

NSCC having made application for registration as a clearing agency pursuant to sections 17A(b) and 19(a)(1) of the Act and, pursuant to Rule 17Ab2-1 under the Act, having requested the Commission to exempt NSCC from one or more of the requirements as to which the Commission is directed to make determinations pursuant to subparagraphs (A)-(I) at section 17A(b)(3) of the Act;

And the Commission having determined: that NSCC is so organized and has the capacity to be able to facilitate the prompt and accurate clearance and settlement of securities transactions for which it is responsible, to safeguard securities and funds in its custody or control or for which it is responsible, to comply with the provisions of the Act and the rules and regulations thereunder and to carry out the purposes of section 17A of the Act; that the rules of NSCC do not impose any schedule of prices, or fix rates or other fees, for services rendered by its participants; that the rules of NSCC are designed to promote the prompt and accurate clearance and settlement of securities transactions, to assure the safeguarding of securities and funds which are in NSCC's custody or control or for which it is responsible, to foster cooperation and coordination with persons engaged in clearance and settlement of securities transactions, to remove impediments to and perfect the mechanism of a national system for the prompt and accurate clearance and settlement of securities transactions, and, in general, to protect investors and the public interest; and that the rules of NSCC do not impose any burden on competition not necessary or appropriate in furtherance of the purposes of the Act;

*It is ordered,* That NSCC's registration be and it hereby is granted, subject to the terms contained in this order and to the following conditions and directions, this 13th day of January 1977, to be effective for not more than 18 months, implementation thereof by NSCC to occur not earlier than January 20, 1977; and

*Further ordered,* That NSCC may not begin operating, as an integrated system, the clearing and settlement systems currently operated by the American Stock Exchange Clearing Corporation ("ASECC"), the National Clearing Corporation ("NCC") and Stock Clearing Corporation ("SCC") or make, without prior Commission approval, any changes in the rules, operating procedures or facilities management arrangements of NSCC or any of its operating divisions in effect immediately following issuance of its order unless NSCC shall have first:

(i) Established full interfaces with each of the Midwest Clearing Corporation ("MCC"); Pacific Clearing Corporation ("PCC"); and Stock Clearing Corporation of Philadelphia ("SCCP") and appropriate links with Boston Stock Exchange Clearing Corporation ("BSECC") and TAD Depository Corporation ("TADDC") and offered to operate each interface and link under agreements which would provide that the parties to the interface or link would not charge each other for interface movements or charge their participants either an interface fee or any fee which would operate as an interface fee;

(ii) Provided, at cost, efficient facilities, and cooperated with brokers and dealers and other registered clearing agencies in the development of alternative means, through which brokers and dealers may compare, either directly or through an agent, transactions eligible for comparison at NSCC, and enabled its participants to effect comparison, clearance and settlement of New York Stock Exchange, Inc. ("NYSE"), American Stock Exchange, Inc. ("Amex") and over-the-counter ("OTC") transactions through the NSCC branch network;

(iii) Begun operating existing NCC branch facilities so that those facilities, and any other branch facilities established by NSCC, provide, at a minimum, the same level of service provided through the facilities to NSCC participants to participants in any other registered clearing agency which agrees to use any of the facilities and to defray a portion of any such facility's operating costs equal to such clearing agency's proportionate use of the facility; and

(iv) Furnished without charge to any registered clearing agency which requested them computer programs for the performance of trade comparison for OTC transactions between the registered clearing agency's participants and made arrangements for any other registered clearing agency which is willing to do so to compare all OTC transactions between participants in different registered clearing agencies, without charge to such registered clearing agencies, or, if no other registered clearing agency is willing to do so, undertaken to compare all such transactions without charge to registered clearing agencies; and

*Further ordered,* That in order to facilitate establishment of the interfaces and links referred to in the first condition and the shared operation of branch facilities referred to in the third condition, NSCC be and it hereby is directed to offer to constitute a coordinating group for each interface or link which NSCC establishes and each branch facility in which one or more registered clearing agencies other than NSCC elect to participate. The composition of the coordinating groups is to be as follows: In the case of an interface or link, (i) a representative of NSCC, (ii) a representative of an NSCC participant designated by NSCC that intends to use the interface or link, (iii) a representative of the other clearing agency participat-

[203] *See* note 168 *supra.*

[204] *See* discussions under "Payments to the Amex, NASD and NYSE" in "THE NSCC APPLICATION" and "DETERMINATIONS WITH RESPECT TO NSCC" *supra.*

ing in the interface or link and (iv) a representative of a participant in the other clearing agency designated by it which participant intends to use the interface or link; and, in the case of a branch facility in which one or more registered clearing agencies other than NSCC elect to participate, (i) a representative of NSCC, (ii) a representative of an NSCC participant that uses the branch facility, (iii) a representative of each other registered clearing agency that elects to participate in the branch facility and (iv) a representative of a participant in each other registered clearing agency designated by it which participant intends to use the branch facility. During the period preceding implementation of integrated systems operations each coordinating group shall meet periodically and upon the call of two or more of its members and, not less frequently than once a month during this period, shall report to NSCC and to the other registered clearing agency or agencies represented in the group on the progress made in establishing the interface, link or branch facility and on any difficulties encountered in its establishment.

By the Commission (Chairman Hills and Commissioners Loomis, Evans and Pollack).

GEORGE A. FITZSIMMONS,
*Secretary.*

[FR Doc.77-1945 Filed 1-19-77;8:45 am]

## BOSTON STOCK EXCHANGE

### Application for Unlisted Trading Privileges and of Opportunity for Hearing

JANUARY 13, 1977.

The above named national securities exchange has filed an application with the Securities and Exchange Commission pursuant to Section 12(f)(1)(B) of the Securities Exchange Act of 1934 and Rule 12f-1 thereunder, for unlisted trading privileges in the security of the company as set forth below, which security is listed and registered on one or more other national securities exchanges:

IROP Corp. File No. 7-4906. Common stock—$1 par value.

Upon receipt of a request, on or before January 29, 1977 from any interested person, the Commission will determine whether the application with respect to the company named shall be set down for hearing. Any such request should state briefly the title of the security in which that person is interested, the nature of the interest of the person making the request, and the position he proposes to take at the hearing, if ordered. In addition, any interested person may submit his views or any additional facts bearing on the said application by means of a letter addressed to the Secretary Securities and Exchange Commission, Washington, D.C. 20549 not later than the date specified. If no request for a hearing with respect to the particular application is made, such application will be determined by order of the Commission on the basis of the facts stated therein and other information contained in the official files of the Commission pertaining thereto.

For the Commission, by the Division of Market Regulation, pursuant to delegated authority.

GEORGE A. FITZSIMMONS,
*Secretary.*

[FR Doc.77-1939 Filed 1-19-77;8:45 am]

[Release No. 9606; 811-2525]

## CNA MONEY INSTRUMENTS, INC.

### Filing of Application for an Order Declaring That Company Has Ceased To Be an Investment Company

JANUARY 14, 1977.

Notice is hereby given that CNA Money Instruments, Inc. ("Applicant"), 245 Park Avenue, New York, New York 10017, an open-end, diversified management investment company registered under the Investment Company Act of 1940 ("Act"), has filed an application pursuant to section 8(f) of the Act for an order of the Commission declaring that Applicant has ceased to be an investment company as defined in the Act. All interested persons are referred to the application on file with the Commission for a statement of the representations contained therein, which are summarized below.

Applicant is a corporation organized under the laws of the State of Maryland in September, 1974. A notification of registration and registration statement pursuant to section 8 of the Act and a registration statement under the Securities Act of 1933 were filed with the Commission on September 20, 1974.

Applicant states that due to economic conditions, business operations of Applicant were never commenced. No capital was ever invested in Applicant and Applicant's registration statement under the Securities Act of 1933 has been withdrawn.

Section 8(f) of the Act provides, in pertinent part, that whenever the Commission, upon application, finds that a registered investment company has ceased to be an investment company, it shall so declare by order, and upon the taking effect of such order, the registration of such company shall cease to be in effect.

Notice is further given that any interested person may, not later than February 8, 1977, at 5:30 p.m., submit to the Commission in writing a request for a hearing on the matter accompanied by a statement as to the nature of his interest, the reasons for such request and the issues of fact or law proposed to be controverted, or he may request that he be notified if the Commission shall order a hearing thereon. Any such communication should be addressed: Secretary, Securities and Exchange Commission, Washington, D.C. 20549. A copy of such request shall be served personally or by mail upon Applicant at the address set forth above. Proof of such service (by affidavit, or in case of an attorney-at-law, by certificate) shall be filed contemporaneously with the request. As provided by Rule 0-5 of the Rules and Regulations promulgated under the Act, an order disposing of the application will be issued as of course following said date unless the Commission thereafter orders a hearing upon request or upon the Commission's own motion. Persons who request a hearing or advice as to whether a hearing is ordered will receive any notice and orders issued in this matter, including the date of the hearing (if ordered) and any postponements thereof.

For the Commission, by the Division of Investment Management, pursuant to delegated authority.

GEORGE A. FITZSIMMONS,
*Secretary.*

[FR Doc.77-1940 Filed 1-19-77;8:45 am]

[Rel. No. 9607; 811-2526]

## KEOGH-SMATHERS FUND, INC.

### Filing of Application for an Order Declaring That Company Has Ceased to be an Investment Company

JANUARY 14, 1977.

Notice is hereby given that the Keogh-Smathers Fund, Inc. ("Applicant"), 245 Park Avenue, New York, New York 10017, an open-end, diversified management investment company registered under the Investment Company Act of 1940 ("Act"), has filed an application pursuant to section 8(f) of the Act for an order of the Commission declaring that Applicant has ceased to be an investment company as defined in the Act. All interested persons are referred to the application on file with the Commission for a statement of the representations contained therein, which are summarized below.

Applicant was organized under the laws of the State of Maryland on September 19, 1974. A notification of registration was filed with the Commission on September 20, 1974, and registration statements pursuant to section 8 of the Act and under the Securities Act of 1933 were filed in October 1974.

Applicant states that due to changes in economic conditions, business operations of Applicant were never commenced. No capital has been invested in Applicant and Applicant's registration statement under the Securities Act of 1933 was declared abandoned by order of the Commission on October 28, 1975.

Section 8(f) of the Act provides, in pertinent part, that whenever the Commission, upon application, finds that a registered investment company has ceased to be an investment company, it shall so declare by order, and upon the taking effect of such order the registration of such company shall cease to be in effect.

Notice is further given that any interested person may, not later than Feb-