IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*,<br><br>       Plaintiffs,<br>v.<br><br>MORGAN STANLEY & CO., INC., *et al.*,<br><br>       Defendants. | Civil Case No.<br>1:10-CV-03108-JOF<br><br>[On removal from the State Court of Fulton County, Georgia Case No. 2008-EV-004739-B] |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND, FEES AND COSTS**

1

The original Defendants[1] join in the arguments made by Merrill Pro in opposition to Plaintiffs' remand motion.  They submit this separate memorandum in support of their contention that Plaintiffs' addition in the Seventh Amended Complaint of alleged violations of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") as predicate acts supporting their Georgia RICO claim by itself invokes federal question jurisdiction sufficient to support removal.

## PRELIMINARY STATEMENT

After vigorously litigating this action in state court for more than two years, Plaintiffs recently amended their pleading to allege for the first time that Defendants violated section 10 of the Exchange Act as a predicate act supporting their Georgia RICO claim.  They did so – notwithstanding that they must have known it might lead to removal – because they had to, the allegations are essential to their claim.  They pose the following substantial and disputed federal question: whether Defendants' execution and settlement of short sales in TASER were in compliance with section 10 of the Exchange Act and the rules and regulations

---

[1] This memorandum is filed by all Defendants other than Merrill Lynch Professional Clearing Corp. ("Merrill Pro"), which was added to the case in the Seventh Amended Complaint.  Merrill Pro timely removed the action based on federal question jurisdiction.  The original Defendants consented to the removal.

thereunder, specifically whether such short sales created "counterfeit" TASER shares, as Plaintiffs allege.

Plaintiffs claim that Defendants manipulated the price of TASER stock on the NASDAQ market by executing, for themselves and their customers, short sales for which they intentionally failed to make settlement—what Plaintiffs term abusive naked short selling, thereby creating allegedly "counterfeit" shares. As a result, the rules and procedures for making and settling short sales on the national securities markets are central to the resolution of all of Plaintiffs' claims. Those rules and procedures are set by the Securities and Exchange Commission ("SEC") pursuant to express authority granted to it by Congress in the Exchange Act. The proper regulation and functioning of the national securities markets, including governance of short selling on those markets, constitute uniquely federal, not state, concerns. Indeed, Congress vested the federal courts with exclusive jurisdiction over actions alleging violations of the Exchange Act or regulations thereunder or that seek to enforce a duty created by the Exchange Act.

Despite Congress's decision that such cases should be brought in federal court, Plaintiffs filed this action in state court. In a transparent attempt to keep their case out of federal court, Plaintiffs went to some lengths to avoid federal jurisdiction, such as including several plaintiffs from New York to destroy

diversity jurisdiction given that almost all of the Defendants are headquartered there.  They also made no class allegations and restricted the number of plaintiffs to just under fifty to avoid preemption under the Securities Litigation Uniform Standards Act, 15 U.S.C. §78bb.  And they purported to allege only state law causes of action, never explicitly asserting any claim under the Exchange Act or any of the relevant SEC rules.  Among their state law claims, Plaintiffs charged that Defendants violated the Georgia RICO statute based on the alleged commission of several predicate crimes under Georgia law.  In response to motions to dismiss on various grounds, including federal preemption, Plaintiffs ardently denied any reliance on federal law.

Then, over two years into the case and after extensive documentary and written discovery, Plaintiffs filed the Seventh Amended Complaint in which they alleged for the first time that Defendants violated section 10 of the Exchange Act and various SEC and self-regulatory organization rules thereunder.  Plaintiffs' addition of violations of section 10 of the Exchange Act was neither casual nor gratuitous.  To the contrary, the litigation to date has made it apparent that if Defendants' short selling practices violated any provision of law—which Defendants strenuously deny—such violation can be found only in the federal

securities laws and regulations promulgated by the SEC, over which there is exclusive federal jurisdiction.

Whether Defendants' alleged conduct violated section 10 is undeniably a federal question, and a substantial one because Plaintiffs challenge market practices with respect to short selling in a way that are integral to the operation of the Nation's securities markets.  In light of the exclusive federal court jurisdiction over the Exchange Act, there can be no argument here that retaining this action in federal court would interfere with the proper division of work between the federal and state courts.  Indeed, it is clearly Plaintiffs, not Defendants, who seek to interfere with that proper division by attempting to prosecute claims for violations of the Exchange Act and regulations in state court under the guise of a state RICO claim.

## BACKGROUND

Plaintiffs filed their original complaint ("Compl.") on May 27, 2008.  They alleged four causes of action under Georgia law, including one for violation of the Georgia Racketeer Influenced and Corrupt Organization Act.  (Compl. ¶ 87.)  The original complaint alleged four predicate acts of "racketeering activity" on the part of Defendants:  violations of the Georgia Securities Act (O.C.G.A. § 10-5-24), violations of the Georgia Computer Systems Protection Act ("GCSPA") (§ 16-9-93), and two Georgia theft crimes (theft by taking (§ 16-8-2) and theft by deception (§ 16-8-3)).  (Compl. ¶¶ 90-114.)  The original complaint alleged no predicate acts based on violations of federal law.

Plaintiffs are an Arizona-based maker of electric stun guns, TASER, with no offices in Georgia, and 40 investors who allege that they bought and sold TASER securities.  Only ten of the investors claim to be Georgia residents; the remainder are from other states all over the country.  (Seventh Am. Compl. ¶¶ 17-44.)  TASER stock was traded on the NASDAQ national market during the relevant period.  NASDAQ is headquartered in Maryland and operates an electronic market accessible to broker-dealers by computer.  Defendants are eight of the nation's largest and most active broker-dealers.  They all have NASDAQ trading desks

5

located in New York and other locations, but none is alleged to have a NASDAQ

trading desk in Georgia.

Plaintiffs contend that Defendants manipulated the market for TASER

securities by engaging in what they term abusive naked short selling.  (*See id.* ¶¶

1–7.)  They claim that Defendants executed short sales of TASER stock for

themselves or their customers and then intentionally failed to deliver the securities

when due at settlement, generally three days after trade execution.  (*See id.* ¶ 8.)

They allege, further, that Defendants did so with intent to depress artificially the

price of TASER stock, thereby causing them losses.  (*See id.* ¶ 14.)

Short selling of securities is legal and governed by rules issued by the SEC,

pursuant to an express grant of authority in section 10(a) of the Exchange Act, 15

U.S.C. § 78j(a)(1).  In 2004, the SEC promulgated Regulation SHO, 17 C.F.R.

§ 242.203, which sets out a detailed regulatory scheme governing short sales,

including settlement of such trades.  Pursuant to congressional mandate to

modernize the national securities markets, settlement of most securities trades are

effected through the Continuous Net Settlement System (the "CNS"), whose rules

and procedures are subject to approval by the SEC.  Plaintiffs do not allege that

Georgia has adopted any statutes or regulations governing short sale trades or their

settlement.

6

Two-and-one-half years have passed since Plaintiffs filed their original complaint, during which time extensive discovery has been conducted.  Plaintiffs have amended their complaint seven times, most recently on September 15, 2010.  In their Seventh Amended Complaint, Plaintiffs added, for the first time, as alleged predicate acts, violations of the anti-fraud and manipulation provision of the federal securities laws, namely, section 10 of the Exchange Act, 15 U.S.C. § 78j.[2] (*See* Seventh Am. Compl. ¶¶112–120.)  Plaintiffs also added allegations that Defendants violated various SEC and self-regulatory organization rules promulgated under the Exchange Act.  (*See, e.g.*, Seventh Am. Compl. ¶¶ 8, 76.)

---

[2] Defendants allegedly violated section 10(a), 15 U.S.C. § 78j(a)(1), by "directly or indirectly effecting [short sales] of one or more securities registered on a national securities exchange by the use of the means or instrumentality of interstate commerce, the mails, or of any national securities exchange, in contravention of rules and regulations prescribed by the Securities and Exchange Commission, including, but not limited to, Regulation SHO, 17 C.F.R. § 242.203; Rule 15c3-3, 17 C.F.R. § 240.15c3-3; and Rule 10b-5, 17 C.F.R. § 240.10b-5." (Seventh Am. Compl. ¶ 115.)  Defendants allegedly violated section 10(b), 15 U.S.C. § 78j(b), by "knowingly and intentionally engaging in the Conduct at Issue in this case, including but not limited to, short selling securities of TASER and the securities of other publicly traded corporations when they neither possessed nor intended to obtain stock for delivery by the settlement date . . . [and accordingly Defendants have] made and continue to make, attempt to make, solicited, and aided and abetted a 'manipulative or deceptive device or contrivance,' in contravention of rules and regulations prescribed by the Securities and Exchange Commission as necessary or appropriate in the public interest or for the protection of investors, including, but not limited to, Regulation SHO, Rule 15c3-3, and Rule 10b-5." (*Id.* ¶ 119.)

## ARGUMENT

A case may be removed to federal district court if it could properly have been brought there in the first place.  28 U.S.C. § 1441(a).  Federal district courts have original jurisdiction over, *inter alia*, "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  As the Supreme Court has held, this encompasses not only cases asserting causes of action directly created by federal law, but also cases alleging "state-law claims that implicate significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  Permitting removal of such cases adheres to "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.* (internal citation omitted).

The Eleventh Circuit has held that a Georgia RICO action involving a federal law predicate act may fall within this category of cases.  *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 520 (11th Cir. 2000).  Although narrowed in scope somewhat by subsequent cases, *Ayres* remains good law.  *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1302 (11th Cir. 2008).

8

Five years after *Ayres* was decided, the Supreme Court in *Grable* enunciated a tripartite test for assessing the propriety of removal in cases involving state-law claims implicating federal issues.  According to *Grable*, federal question jurisdiction exists where the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  545 U.S. at 314.  In addition to falling within the scope of *Ayres*—and being distinguishable in numerous respects from all of the post-*Ayres* cases cited by Plaintiffs—the facts in this case fully satisfy the tripartite test set out in *Grable*.  In fact, the case for federal jurisdiction is even stronger here because Congress conferred exclusive jurisdiction on the federal courts over the violations of federal law alleged by Plaintiffs.  *See* 15 U.S.C. § 78aa(a).

A.   **Plaintiffs' Allegations That Defendants Violated Section 10 of the Exchange Act Raise a Substantial and Disputed Issue of Federal Law.**

Plaintiffs' section 10 allegations raise substantial and disputed issues regarding the proper interpretation and application of sections 10(a) and 10(b) of the Exchange Act—and the rules and regulations promulgated thereunder (in particular, Regulation SHO, Rule 15c3-3 and Rule 10b-5)—with respect to short selling.  This raises a federal issue, and it is clearly *disputed*.  The parties dispute

not only the facts of this case, but also the application of sections 10(a) and
10(b)—and the rules and regulations promulgated thereunder—to the facts.  The
provisions, rules and regulations that Plaintiffs allege were violated, as well as the
challenged activities in this case, are highly complex.

The federal issue is also *substantial*.  Federal courts have repeatedly
acknowledged a federal interest in the interpretation and application of securities
law generally.  *See*, *e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547
U.S. 71, 78 (2006) ("The magnitude of the federal interest in protecting the
integrity and efficient operation of the market for nationally traded securities
cannot be overstated."); *Friedlander v. Troutman, Sanders, Lockerman &
Ashmore*, 788 F.2d 1500, 1504 (11th Cir. 1986) ("The comprehensive scheme of
statutes and regulations designed to police the securities industry is indicative of a
strong federal interest."); *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 102-03
(2d Cir. 2001) ("[T]he interpretation and application of the federal securities laws .
. . [are] areas of undisputed strong federal interest."); *Gobble v. Hellman*, No.
1:02CV0076, 2002 U.S. Dist. LEXIS 26833, at *10 (N.D. Ohio Mar. 26, 2002)
("[I]nterpreting the Exchange Act and the rules and regulations promulgated
thereunder is a matter of substantial federal concern").  Because Congress has
vested exclusive jurisdiction in the federal courts over claims under the Exchange

10

Act and regulations promulgated thereunder, state courts are not called upon to

interpret the federal anti-fraud provisions of section 10 and thus are not well-suited

to this task.

The federal interest in the interpretation and application of section 10 of the

Exchange Act is especially substantial.  This is evident from the pivotal role

assigned to the SEC—a *federal* agency—in the enforcement of these provisions,

and the promulgation of rules and regulations thereunder.  As the SEC has itself

stated, the Exchange Act delegated to it "plenary authority to regulate short sales

of securities . . .  as necessary to protect investors" under section 10(a) of the

Exchange Act.  *See* Short Sales, Exchange Act Release No. 34-48709, 68 Fed.

Reg. 62972, 62973 (Oct. 28, 2003); *see also id.* at 62974 ("Congress gave the

[SEC] broad authority to regulate short sales.").  The SEC has done so consistently

for decades.  Congress also has authorized the SEC to regulate short sales, and to

prevent and punish "manipulative or deceptive" practice, through its oversight of

self-regulatory organizations ("SROs"), such as the National Association of

Securities Dealers, Inc. ("NASD") and New York Stock Exchange, Inc. ("NYSE"),

which govern the conduct of their members.  *See* 15 U.S.C. §§ 78f, 78o-3.  The

SEC must review and approve the issuance of, and amendments to, SRO rules;

11

may create, delete, or amend SRO rules by its own action; and enforces SRO rules under the authority of the Exchange Act.  *Id.* § 78s(b)-(d).

The SEC is also authorized to regulate the clearance and settlement of short sales—an essential aspect of Plaintiffs' claims under section 10.  *Id.* § 78q-l(a)(2)(A)(l).  Congress delegated this function to the SEC to help ensure "the development of uniform standards and procedures for clearance and settlement [of securities transactions]."  *See* S. Rep. No. 73-1455, at 50.  To that end, the SEC approved the establishment of the National Securities Clearing Corporation ("NSCC") to facilitate the electronic clearance and settlement process for trades.  *See* Exchange Act Release No. 13163, II SEC Docket 1448 (Jan. 13, 1977).  As a registered clearing agency, NSCC operates subject to rules that are approved by the SEC.

The cases cited by Plaintiffs in support of the opposite conclusion—that the federal issue in this case is not substantial—are inapposite.  None of them involved the resolution of a disputed question of federal securities law that is within the federal courts' exclusive jurisdiction.  Instead, they involved the routine, non-controversial application of federal statutes—in most cases, the mail and wire fraud statutes—to straightforward facts.

12

In *Austin v. Ameriquest Mortgage Co.*, 510 F. Supp. 2d 1218, 1226 (N.D. Ga. 2007*)*, for example—another Georgia RICO action involving a federal predicate act—the court held that the federal issue in that case was not substantial because the Court was merely required to "determine whether defendant committed a violation [of the mail and wire fraud statutes]," and was not required "to interpret an independent federal statute" in that process.  Likewise, in *Neighborhood Mortgage, Inc. v. Fegans*, No. 1:06-cv-1984-JOF, 2007 WL 2479205, at *10-11 (N.D. Ga. Aug. 28, 2007) (Forrester, J.), the federal issue was not substantial because it only arose from the "mere citation of federal mail and wire fraud as predicate acts," and "raised no other federal question."  *See also Scouten v. Amerisave Mortgage Corp.*, Nos. 1:04-cv-1125-CAM, 2004CV83343, 2004 WL5486512, at *6 (N.D. Ga. Dec. 16, 2004) (Moye, J.) (alleging mail and wire fraud as federal predicate acts); *Gates Condominium Assoc., Inc. v. Arrow Exterminators, Inc.*, No. 1:04-cv-1258-CAP, slip op. at 6-7 (N.D. Ga. June 30, 2004) (Pannel, J.) (same).

The federal mail and wire fraud statutes, which are of general application and not tied to any peculiarly federal interest, differ fundamentally from the provisions, rules and regulations at issue here, which clearly do implicate a substantial federal interest, the operation of the national securities markets.  That is

13

why Congress created exclusive federal jurisdiction over such matters.  *Browne v. NASD, Inc.*, 2006 U.S. Dist. LEXIS 90657, at *17 (N.D. Tex. Dec. 14, 2006) ("Exclusive jurisdiction is conferred . . . by Congress in an effort to guard the application of federal law and to facilitate a more uniform interpretation thereof."). The meaning of the individual provisions, rules and regulations, their interaction with each other, and their application to the facts raise substantial and complex questions of federal law.  In this respect, this case more closely resembles *Ayres*. In that case, the federal predicate act likewise raised an unsettled and complex question regarding a subject of substantial federal interest—automobile safety— governed by a separate federal statute.

For all of these reasons, Plaintiffs' allegations that Defendants violated section 10 of the Exchange Act and various regulations promulgated under  that Act raise a substantial and disputed issue of federal law that justifies "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.

### B.     By Exercising Jurisdiction, This Court Would Adhere to a Congressionally Approved Balance of Federal and State Judicial Responsibilities.

In exercising jurisdiction, this Court would not be "disturbing a congressionally approved balance of federal and state judicial responsibilities."

14

*Grable*, 545 U.S. at 314.  On the contrary, this Court's exercise of jurisdiction would further the express preferences of Congress and preserve its preferred division of labor between federal and state courts.

In *Grable*, the Supreme Court upheld the exercise of federal question jurisdiction where removal "would not distort any division of labor between the state and federal courts, provided or assumed by Congress."  545 U.S. at 310. Faced with a state quiet title action that raised questions of federal tax law, the Court held that removing the "rare state title case that raises a contested matter of federal law" would "portend only a microscopic effect on the federal-state division of labor."  *Id.* at 315.  Federal question jurisdiction was therefore appropriate, the Court concluded, because its exercise in that case was "consistent with congressional judgment about the sound division of labor between state and federal courts."  *Id.* at 313–14.

This is precisely the case here—in fact, even more so.  The exercise of federal jurisdiction over actions involving alleged violations of the Exchange Act would not disturb, but rather preserve the "Congressionally-approved balance of judicial responsibilities" between federal and state courts.  *Landers v. Morgan Asset Mgmt., Inc.*, No. 08-2260, 2009 WL 962689, at *9 (W.D. Tenn. Mar. 31, 2009).  Indeed, in the Exchange Act itself, Congress expressly provided that

15

federal courts should have *exclusive* jurisdiction over claims involving alleged violations of the Exchange Act and the rules and regulations made thereunder. Section 27 of the Exchange Act provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this title [15 U.S.C. §§ 78a et seq.] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder."  15 U.S.C. § 78aa.[3]

Nor would permitting these claims to remain in federal court disrupt the division of labor between state and federal courts.  In *Grable*, the Supreme Court cautioned against allowing removal of state-law claims where doing so would "heral[d] a[n] .  .  .  enormous shift of traditionally state cases into federal courts." 545 U.S. at 318.  This danger is unequivocally absent in this case.  Federal securities claims are, pursuant to Congress's express preference, litigated in federal court every day, and removing them from state courts would not upset any traditional balance.  To the contrary, it would run afoul of Congress's decision to confer exclusive federal jurisdiction on federal courts to permit such claims to

---

[3] Section 28 of the Exchange Act, 15 U.S.C. § 78bb, expressly preserves all other remedies, including state law securities claims.  But Plaintiffs have chosen to inject a federal claim, violation of section 10 of the Exchange Act, into the case. That allegation invokes federal, not state, law.  Plaintiffs must live with the jurisdictional consequences of that choice.

proceed in state court under the guise of a state RICO statute.  Moreover, in contrast to cases involving more common predicate acts such as mail and wire fraud, permitting removal in this case would not threaten to flood the federal courts with state RICO actions.  Instead, exercising jurisdiction here would promote Congress's desired division of labor by ensuring that cases alleging violation of the Exchange Act are heard exclusively in federal court.

In addition to providing exclusive jurisdiction in the federal courts over section 10 claims, Congress as part of the Private Securities Litigation Reform Act ("PSLRA"), 109 Stat. 737 (codified at 15 U.S.C. §§ 77z-1 and 78u-4), expressly removed violations of the federal securities laws for which a private right of action exists, as it does for section 10 violations, from the list of predicate acts that will support a federal RICO claim.  *See* 18 U.S.C. § 1964(c), as amended by Pub.L.No. 104 67, §107.  Congress did so to prevent attempts to avoid the procedural limitations it imposed on civil securities fraud litigation in the PSLRA under the guise of recasting the claim as a RICO violation.  This only further demonstrates that Plaintiffs, by including section 10 allegations in their amended Georgia RICO claim, seek to frustrate congressional intent, which itself raises an issue of substantial federal interest.

17

**C.**   **Plaintiffs' Section 10 Allegations Necessarily Raise a Substantial and Disputed Federal Issue.**

The first paragraph of Plaintiffs' Seventh Amended Complaint, under Plaintiffs' own heading "Nature of the Action," sets out what Plaintiffs themselves say is the essential issue in the case, the allegation that Defendants' alleged conduct created "counterfeit" TASER shares on a national securities market:

> ***This is an action to recover damages incurred as a result of the defendants' conspiracy to reap enormous profits by creating and trading in unauthorized, artificial, and/or counterfeit shares of the common stock of TASER International, Inc. ("TASER"), which is publicly traded on the NASDAQ stock market.***

(Seventh Am. Compl. ¶1)(emphasis added).

Plaintiffs' allegation that "fails to deliver" (which are permitted and heavily regulated under federal securities law) somehow create "counterfeit shares" thus *necessarily* raises a substantial question of federal securities law, which is starkly brought out by their pleading amendment to allege violations of the SEC and SRO rules governing short selling and add alleged section 10 violations as predicates for their RICO claim.  The "counterfeit share" theory was expressly rejected by the SEC when it established the rules and regulations that governed short sales during the relevant time period.  In particular, the SEC's Regulation SHO explicitly permits "fails to deliver" and, as such,  "naked" short sales as Plaintiffs have

18

defined them.  Whether or not Plaintiffs' state law claims will succeed thus

*necessarily* implicates a substantial and disputed federal issue.  This distinguishes

this case from the handful of post-*Ayres* cases cited by Plaintiffs in their motion to

remand, in which the federal issues were not necessary or essential, but rather

incidental, to the state law claims.[4]

For example, the fundamental dispute in *Gates Condominium Homeowners'*

*Ass'n v. Arrow Exterminators, Inc.*, No. 1:04-cv-1258-CAP (N.D. Ga. June 30,

2004) (Pannell, J.), was whether a pest control company hired by a group of

condominium owners in Georgia to prevent termite infestation had failed

adequately to perform and had otherwise committed wrongdoings, which

supposedly resulted in termite infestation and severe damage in the condominium

complex.  Such conduct was alleged to violate a host of state laws.  Although the

alleged predicate acts underlying plaintiffs' Georgia RICO claim also included

federal mail fraud because some of the parties' documents were sent through the

mail, the *Gates* court not surprisingly held that the presence of this single alleged

---

[4] Plaintiffs' reliance on *Graham Commercial Realty, Inc. v. Shamsi*, 75 F.
Supp. 2d 1371 (N.D. Ga. 1998), is misplaced.  That case was decided two years
before *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 520 (11th Cir. 2000), and
therefore fails to take account of the holding in *Ayres* that federal question
jurisdiction can in some circumstances be based on the inclusion of a federal
predicate in a state RICO claim.

federal predicate act alone was not essential to the state law dispute.  *See id.*, slip

op. at 6-7 (distinguishing *Ayres* while noting that "this case simply involves" the

issue of whether defendants' alleged conduct also violates federal mail fraud

statute) (emphasis added).

Plaintiffs' attempt to analogize the core questions of federal securities law

raised in this case to the alleged wrongdoing in *Neighborhood Mortgage* and

*Austin* is equally misplaced.  The heart of each of those cases was state-law tort

and alleged mortgage fraud.  In *Neighborhood Mortgage,* plaintiffs alleged that

defendants fraudulently overstated the appraisal values of their properties and lied

about their assets in order to obtain residential mortgage loans and excess funds at

closing for "property repairs" that never occurred.  *Neighborhood Mortg., Inc. v.*

*Fegans*, No. 1:06-CV-1984-JOF, 2007 WL 2479205, at *1 (N.D. Ga. Aug. 28,

2007).  In *Austin,* the plaintiff was allegedly fraudulently induced into acquiring a

loan she could not afford as a result of in-state defendant mortgage lenders and

property appraisers' alleged fraudulent misrepresentations and inflated property

valuations.  *Austin v. Ameriquest Mortg. Co.*, 510 F. Supp.2d 1218 (N.D. Ga.

2007).  In both cases, the courts held that defendants' use of the mails and wire to

transmit various documents, even if also a federal criminal offense, was incidental

to the state law issues that were at the heart of these cases.  *Austin*, 510 F. Supp. 2d at 1226-27; *Neighborhood Mortg., Inc.* 2007 WL 2479205, at *4.

Likewise, the *Scouten* case turned on plaintiffs' defamation and intentional infliction of emotional distress claims, not the alleged violations of the federal mail and wire fraud statutes, which did not raise any matters "'of considerable magnitude and substantial federal interest.'"  *Scouten v. Amerisave Mortg. Corp.*, Nos. 1:04- CV-1125-CAM, 2004CV83343, 2004 WL 5486512, at *2 (N.D. Ga. Dec. 16, 2004) (quoting *Ayres*, 234 F.3d at 520).

Nothing in the cases cited by Plaintiffs raised a federal question of the magnitude of the substantial and disputed federal issues *necessarily* implicated by Plaintiffs' inclusion of alleged violations of  the Exchange Act in their Georgia RICO claim.  As evidenced on the face of Plaintiffs' Seventh Amended Complaint, resolution of these federal issues is "an essential element" of both the violations of federal law expressly alleged by Plaintiffs and the other state-law claims underlying Plaintiffs' Georgia RICO claim.  *Ayres*, 234 F.3d at 518.

In short, Plaintiffs' transparent attempt to circumvent federal jurisdiction by hiding a substantial federal question behind a jumble of baseless state law predicate acts in their RICO claim should be rejected.  The federal question is not merely incidental to Plaintiffs' state law claims; it is the core issue in this case.

21

"Abusive naked short selling" on the national securities markets is a crime, if at all, only to the extent it violates the governing federal laws and regulations over which there is exclusive federal jurisdiction; it is not theft, computer fraud, or misrepresentation under state law, the gratuitous state law predicate acts alleged alongside it.[5]

Even Plaintiffs' Georgia Securities Act manipulation claim, under O.C.G.A. § 10-5-12(d)(6), depends on federal law.  Section 10-5-12(e) provides that "[t]ransactions effected in compliance with the applicable provisions of the Securities Exchange Act of 1934 and the rules and regulations of the Securities and Exchange Commission thereunder shall not be deemed to constitute market

---

[5] In their Seventh Amended Complaint, Plaintiffs also allege that Defendants have committed perjury by purportedly providing inaccurate or incomplete interrogatory responses in this case.  Defendants are prepared to demonstrate that this claim is baseless, and perhaps sanctionable as unsupported by a good faith basis.  But regardless of the merit of this claim, it raises at most a discovery dispute dressed up as an alleged violation of Georgia law.  Defendants' interrogatory responses obviously postdate Plaintiffs' alleged losses by several years and cannot possibly be the "cause" of such losses.  A Georgia RICO claim will succeed only where the alleged injuries "flo[w] from one or more predicate acts."  *Maddox v. Southern Eng'g Co.*, 231 Ga. App. 802, 805 (Ga. Ct. App. 2004) ("[A] private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts.") (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir. 1991).  In any event, the perjury claim ***itself*** implicates federal law as the discovery requests at issue pertain to whether or not certain individuals at each of the banks were actually "aware" of violations of the federal rules governing naked shorting.  Presumably Plaintiffs' claim that the answers provided were inaccurate stems from their differing interpretation of these federal rules.

manipulation under [§ 10-5-12(d)(6)]." Thus, to determine whether the Georgia Securities Act predicate act is established, the same federal issues must be determined.

Two years into the case and deep into discovery, Plaintiffs apparently recognized that absent allegation of federal securities law violations as a predicate acts, their Georgia RICO claim was fatally flawed, hence their amendment at this juncture. Having premised their case on a theory of "counterfeit shares" that raises a substantial and disputed federal issue and having themselves chosen to add the express allegation that Defendants have violated section 10 of the Exchange Act to their RICO claim—presumably because they believe they need such an allegation—Plaintiffs cannot now argue that the case should be remanded because they have alleged other supposed predicate acts under state law, all of which implicate the same federal issue, that render the alleged federal violation unnecessary or nonessential to their claim.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for remand, fees and costs.

Dated: October 27, 2010

/s/ Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290

*Attorneys for Defendants Morgan
Stanley & Co. Incorporated,
Goldman, Sachs & Co., Goldman
Sachs Execution & Clearing, L.P.,
Bear Stearns & Co., Inc. K/N/A/ JP
Morgan Securities, Inc., Bear Stearns
Securities Corp., K/N/A JP Morgan
Clearing Corp., Merrill Lynch,
Pierce, Fenner & Smith, Inc.,
Deutsche Bank Securities, Inc., Credit
Suisse Securities (USA) LLC, Banc of
America Securities, LLC and UBS
Securities, LLC*

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:   404-522-4700
Fax:   404-525-2224

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(C)</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that the foregoing **DEFENDANTS MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND, FEES AND COSTS** has been prepared in accordance with Local Rule 5.1(C) with 14-point Times New Roman font.

/s/ Richard H. Sinkfield
RICHARD H. SINKFIELD
Georgia Bar No. 649100
E-mail: rsinkfield@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:  404-522-4700
Fax:   404-525-2224

*Attorneys for Defendants Morgan Stanley & Co. Incorporated, Goldman, Sachs & Co., Goldman Sachs Execution & Clearing, L.P., Bear Stearns & Co., Inc. K/N/A/ JP Morgan Securities, Inc., Bear Stearns Securities Corp., K/N/A JP Morgan Clearing Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities, Inc., Credit Suisse Securities (USA) LLC, Banc of America Securities, LLC and UBS Securities, LLC*

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

TASER INTERNATIONAL, INC.,
*et al.*

      Plaintiffs,

v.

MORGAN STANLEY & CO., INC.,
*et al.*

      Defendants.

CIVIL ACTION NUMBER:
1:10-CV-03108-JOF

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused a copy of the foregoing

***DEFENDANTS MEMORANDUM OF LAW IN OPPOSITION TO***

***PLAINTIFFS' MOTION FOR REMAND, FEES AND COSTS*** to be filed with

the Clerk of Court using the CM/ECF system, which will automatically send e-

mail notification of such filing to the following attorneys of record:

      John E. Floyd, Esq.
      floyd@bmelaw.com

      Steven J. Rosenwasser, Esq.
      rosenwasser@bmelaw.com

      Nicole G. Iannarone, Esq.
      iannarone@bmelaw.com

      Elizabeth G. Eager, Esq.
      eager@bmelaw.com

Robert L. Ashe, III, Esq.
ashe@bmelaw.com

Michael A. Caplan, Esq.
caplan@bmelaw.com

and that I have caused a copy of the foregoing to be served on the following

attorneys of record by U.S. Mail:

James W. Christian, Esq.
CHRISTIAN, SMITH & JEWELL LLP
2302 Fannin, Suite 500
Houston, TX  77002

Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa Aoyagi, Esq.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017

Richard H. Klapper, Esq.
Richard C. Pepperman, II, Esq.
Tracy Richelle High, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498

Stephen L. Ratner, Esq.
Brian L. Friedman, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036

Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Peter J. Isajiw, Esq.
Heather L. Fesnak, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281

Fraser L. Hunter, Jr., Esq.
WILMER CUTLER PICKERING HALE AND
DORR LLP
399 Park Avenue
New York, NY  10022

Andrew J. Frackman, Esq.
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036

Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Jeffrey M. Gould, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005

Dated:  October 27, 2010

                                     */s/* Stefanie H. Jackman
                                     ─────────────────────────────

                                     Stefanie H. Jackman
                                     ROGERS & HARDIN LLP
                                     Georgia Bar No. 335652
                                     E-mail: sjackman@rh-law.com

                                     Attorneys for Defendants