# EXHIBIT H

State Court of Fulton County
\*\*\*EFILED\*\*\*
LexisNexis Transaction ID: 28930738
Date: Jan 11 2010 1:06PM
Mark Harper, Clerk

State Court of Fulton County
\*\*\*EFILED\*\*\*
LexisNexis Transaction ID: 28606805
Date: Dec 21 2009 1:22PM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., et al., | : : : | |
| Plaintiffs, | : : | CIVIL ACTION FILE NO.: 2008-EV-004739-B |
| v. | : : | |
| MORGAN STANLEY & CO., INC., et al., | : : : | JURY TRIAL DEMANDED |
| Defendants. | : : | |

## STIPULATION AND ORDER BETWEEN PLAINTIFFS AND UBS SECURITIES, LLC

Plaintiffs and Defendant UBS Securities, LLC ("UBS") by and through their respective undersigned counsel, hereby stipulate as follows, which shall be treated as an Order of this Court:

1.  Plaintiffs and UBS have reached agreement on an initial set of custodians and keywords to be used to locate electronic evidence. UBS will search the agreed-upon custodians for responsive electronic documents using the agreed-upon keywords, and the searches will include the body of emails and attachments.

2.  For the agreed upon custodians, UBS will produce all responsive documents containing the keywords Taser, Tasr or Taser's CUSIP (collectively, "TASER") under the following schedule:

    a) On November 30, UBS completed production of the TASER documents for the 17 custodians it originally identified.

    b) By January 21, UBS will complete production of the TASER documents for the remaining agreed upon custodians. UBS will diligently review documents and engage in a rolling production that, at a minimum, requires it to produce all of the documents it has located and reviewed as of the following dates: December 24 and January 10.

    c) UBS agrees that it will not produce a substantial majority of the documents on or immediately before January 21

3.  With respect to the outstanding disputes on the scope of discovery:

723249.1

a) <u>General Applicability</u> - UBS agrees that if the agreed-upon keywords locate a document that is responsive to a document request, that document will be produced even if it does not specifically reference TASER so long as the document deals, in whole or in part, with general concepts, subject matters or positions responsive to the document requests. Notwithstanding anything in this paragraph, UBS continues to object to producing documents or information responsive to the document requests that refer: (a) only to a security other than Taser (as opposed to, for example, stocks in general), or (b) to any agency, regulatory or other investigation not specifically related to Taser securities.[1]

b) <u>Defendants' Position Documents</u> - If responsive to a document request, UBS agrees to produce all documents and information containing, referencing or memorializing any positions taken or statements made by them with respect to naked or abusive short selling, including, but not limited to, the potential impact, actual impact, costs or potential or actual effects of naked or abusive short selling. With respect to documents referencing, evidencing or memorializing communications with the SEC or any other federal agency or committee in 2008 or 2009, UBS is not limited to searching only the agreed-upon custodians, but rather will search the email boxes and files of those persons reasonably likely to have responsive information using the agreed upon keywords under para. 1 above. This agreement expressly includes communications with the SEC and other agencies regarding naked or abusive short selling of defendants' own stocks.

c) <u>Similar Conduct With Other Securities</u> – The parties have a dispute as to whether defendants are required to produce documents and information responsive to a document request that primarily involves (i) a specific security other than Taser or (ii) any agency, regulatory or other investigation not specifically related to Taser securities. The parties have briefed this issue to the Court.

4. UBS will diligently review all documents responsive to plaintiffs' requests identified by a non-TASER keyword, and they will produce those documents on a rolling basis (i.e., UBS will produce all of the documents they have identified and reviewed at least every thirty (30) days beginning on February 10, 2010). UBS will complete production of the non-TASER keyword[2] documents by April 22, 2010, and agrees that it will not produce a substantial majority of those documents on or shortly before that date. Upon good cause shown, Plaintiffs shall be entitled to request that UBS search additional keywords for the custodians they have agreed upon based on the information they receive in this case, and UBS retains the right to object to requested additional searches (with the exception of specific traders which is governed by a previous agreement between the parties). Good cause includes, but is in no way limited to, a showing that Plaintiffs could not have reasonably known of the need to search for the additional keyword or

---

[1] As set forth in 3(b) below, this objection does <u>not</u> include investigations or communications defendants had with any agency relating to their own stock.

[2] Non-Taser keywords refer to keywords other than Taser, Tasr or Taser's CUSIP.

723249.1

2

custodians at the time of this Agreement. Similarly, if while reviewing the documents captured by the keywords, UBS finds and can show that a substantial majority of the documents captured by a keyword are non-responsive to Plaintiffs' document requests, UBS can request that the keyword be amended to more accurately capture responsive documents. If a dispute occurs, the parties will meet and confer and work together to jointly raise the issue with the Court on a mutually agreeable schedule, if agreement can not be reached.

5. UBS believes that Plaintiffs are responsible for external costs associated with processing, gathering and searching emails and application documents or data. Plaintiffs maintain that under the applicable law they are not required to share costs. Regardless, the parties agree that any dispute as to cost sharing will not delay document production and does not constitute a ground to extend the deadlines set forth herein. Plaintiffs agree that they will not use the fact that UBS is willing to go forward with discovery and defer a resolution of the cost-sharing issue as part of any argument on the merits of cost-sharing. Further, Plaintiffs and Defendants agree to continue to confer on this issue in good faith and jointly present to the Court on a mutually agreeable schedule if an agreement cannot be reached.

6. Plaintiffs' deadline for producing documents responsive to defendants' first document requests will be due no later than December 31 (and will be produced on a rolling basis). Plaintiffs will produce documents responsive to defendants' second document requests by no later than June 1, 2010 (plaintiffs will produce on a rolling basis, with scheduled productions on the same timetable as UBS).

7. By January 15, 2010, UBS will complete production of data dictionaries and other information that plaintiffs requested prior to November 30, 2009 to read and understand the data that has already been produced by defendants, subject to any objections. To the extent that plaintiffs thereafter have questions about any data code,, defendants will provide responsive information, to the extent such information exists and is readily available and otherwise unobjectionable, within 30 days.

8. All deadlines in the scheduling order starting from the end of fact discovery will be moved back 7 months (the parties will submit a joint consent order). This change in the scheduling order refers only to the date that fact discovery closes and the dates thereafter; i.e., none of the deadlines prior to the close of fact discovery shall change except as expressly set forth in this Stipulation and Order.

9. To allow defendants to focus on document production, the parties will postpone all previously noticed 30b6 depositions until at least January 15, 2010 (and will follow the already agreed upon order of depositions). Nothing in this paragraph or agreement precludes the parties from noticing and taking other depositions.

10. By reaching this agreement, plaintiffs do not waive their right to request other search terms or other custodians at a later time. Nor does this agreement affect the parties' prior agreement of August 12, 2009 as it relates to information (including emails) from individual traders.

11. This agreement has no bearing on other potential disputes between the parties, including, but not limited to, disputes relating to the completeness and accuracy of the data either of the parties have obtained or will soon receive.

12. UBS shall not file any motion to compel or seek any relief challenging the sufficiency or completeness of plaintiffs' responses to any discovery to the extent that plaintiffs' responses depend on a review or analysis of any data (including the information necessary to read, understand and use the data) or documents that have not been produced by UBS either at all or in the sixty days prior to the motion being filed. To the extent, however, plaintiffs can partially answer discovery requests, they may not withhold such responses pending any supplementation that may depend on a review or analysis of any such data or documents. In responding to discovery, it shall not be improper for Plaintiffs to state that some of the information as to UBS's alleged liability or the alleged damages caused by UBS's conduct has not been produced by the other defendants either at all or in the 60 days prior to the response.

13. For any discovery requests previously served upon Plaintiffs or UBS not specifically addressed in the foregoing paragraphs, excluding Plaintiffs' Third Interrogatories to UBS, Plaintiffs and UBS will meet and confer on those requests as soon as practicable and complete their conferral on or before January 15, 2010. Any unobjected documents or other information responsive to those requests will be produced no later than June 1, 2010.

14. The above agreement will be submitted to the Court for entry as a Court Order.

*[signature]*
Hon. Patsy Y. Porter
Judge, State Court of Fulton County

January 7, 2010

723249.1

4