# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*, )<br><br>      Plaintiffs, )<br><br>v. )<br><br>MORGAN STANLEY & CO., INC., *et al.*, )<br><br>      Defendants. )<br>_____ ) | Case No.: 1:10-CV-03108-JOF<br><br>[On removal from the State Court of Fulton County, Georgia Case No.: 2008-EV-004739-B] |

## PLAINTIFFS TASER INTERNATIONAL'S FIRST INTERROGATORIES TO DEFENDANT MERRILL LYNCH PROFESSIONAL CLEARING CORP.

Pursuant to O.C.G.A. § 9-11-26, O.C.G.A. § 9-11-33, Fed. R. Civ. P. 26, and Fed. R. Civ. P. 33,[1] Plaintiffs hereby serve the following interrogatories, requesting that Defendant Merrill Lynch Professional Clearing Corp. respond to the following Interrogatories within thirty days to the offices of Bondurant, Mixson & Elmore, 1201 W. Peachtree St., Suite 3900, Atlanta, Georgia 30309.

### Definitions

1.      "You," "your," or "Merrill Pro" designates Merrill Lynch Professional Corp. and includes any subsidiaries, divisions, affiliates, predecessors, assigns or

---

[1] Plaintiffs have moved to remand this case because the federal court lacks subject-matter jurisdiction.  By serving these requests for admission, Plaintiffs in no way waive their objection to litigating in federal court.

809820.1

successors, and of their present or former officers, directors, trustees, employees, agents, representatives, attorneys and/or other persons acting on their behalf.   This specifically includes the PAX division and Merrill Lynch Professional Clearing Corporation #5 (as well as any other number).

2.     "Security" or "Securities" mean any note, common stock, preferred stock, treasury stock, put, call, straddle, option, bond, debenture, conversion, reverse conversion, swap, flex option, evidence of indebtedness, transfer trade, transferable share, investment contract or, in general, any interest or instrument commonly known as a "security."

3.     "TASER" shall mean TASER International, Inc., a company publicly traded on the NASDAQ stock market under the symbol TASR.

4.     "Documents" means all writings and things of any nature by which information may be stored or communicated, including originals and all non-identical copies and drafts thereof, in your possession, custody, or control, regardless of where located, including without limitation contracts, agreements, memoranda, notes, correspondence, letters, e-mails, communications, telegrams, teletypes, telecopies, transmissions, messages (including, but not limited to, records, reports, or memoranda of telephone calls and conversations), reports, studies, summaries, analyses, minutes, diaries, calendars, logs, notes, agenda,

bulletins, notices, circulars, announcements, instructions, charts, tables, manuals, brochures, schedules, price lists, records, orders, invoices, statements, bills, books of account, ledgers, statistical, accounting, and financial statements, forecasts, work papers, notebooks, data sheets, translations, photographs, drawings, tape recordings, computer-stored information which can be retrieved or placed into reasonably usable form, written communications and written evidence of oral communications, and any other "document" from which information can be obtained or translated, if necessary, by you through detection devices into reasonably usable form.  In all cases where originals and/or non-identical copies are not available, "documents" also means identical copies of original documents and copies of non-identical copies.

5.     "And" as well as "or" shall be construed disjunctively or conjunctively so as to bring within the scope of each request all documents, writings, and things which might otherwise be construed to be outside its scope.

6.     The use herein of the singular form of any noun or pronoun shall include, where appropriate, the plural thereof; the use herein of the masculine gender shall include, where appropriate, the feminine.

7.    The term "person" as used herein shall mean an individual, corporation, partnership, or association, or any other business or governmental entity.

8.    The terms "record", "reflect", "relate to", and "concern" are intended to have the broadest possible scope so that all documents, including drafts, are included if they in any way constitute, contain, pertain to, or mention the indicated subject or document.  Whenever a document provides part, but less than all, of the information requested, such document should be produced along with all other related documents.

9.    The term "communication" includes, but is not limited to, all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, conferences, interviews, telephone conversations, correspondence, notes, minutes, memoranda, telegrams, telexes, electronic mail messages, facsimiles, advertisements, or other forms of oral or written intercourse, however transmitted.

10.   "Time Period" refers to January 1, 2003 to and through May 31, 2009.

11.   "Conduct at Issue" shall have the meaning set forth in the May 7, 2010 Stipulation and Order and accompanying attachment.

12.   "Average Loan Rate" means the average rate you charged clients and counterparties to borrow securities.  Plaintiffs refer to GSOC2_T_00004183 for a

definition of this term.  The term "average" in "average loan rate" shall refer to the way that you calculate the "average" for the "average loan rate" in Your ordinary course of business.  If you do not calculate the "average" for the "average loan rate" in your ordinary course of business, you shall calculate "average" as a percentage of market value.

## Instructions

1.      Each interrogatory herein shall be construed independently and shall not be limited by reference to any other interrogatory.

2.      When an interrogatory does not specifically request a particular fact, but such fact is necessary in order to make the answer to the interrogatory either comprehensible, complete, or not misleading, you are to include such fact as part of the answer and the interrogatory shall be deemed specifically to request such fact.

3.      When, after a reasonable investigation using due diligence, you are unable to answer any interrogatory or any part thereof because of lack of information available to you, specify in detail the type of information which you claim is not available, the reason the information is not available to you, and what you have done to locate such information.  In addition, specify what knowledge or belief you have concerning the unanswered portion of the interrogatory, set forth

809820.1

the facts upon which such knowledge or belief is based, and identify, the person who has or is likely to have the information which you claim is not available.

4.      When an interrogatory asks for specific information, as for example, a date, identify the information precisely, if known.  If the precise date or other specific information is unknown to you or your agents, you are to give your best approximation of the information requested, provided that you indicate in your response that the information being provided is an approximation and is incomplete in certain specific respects.  Also identify any person who may be able to provide the exact or complete information requested.

5.      The interrogatories shall be deemed continuing in nature.  With respect to any of the following interrogatories as to which you, after answering, acquire additional information or documents, you are asked to serve on the undersigned further answers to such interrogatories and produce any additional responsive documents immediately after acquiring the additional information or documents.

6.      If you refuse to answer any interrogatory in whole or in part, describe the basis for your refusal to answer, including any claim of privilege or work product, in sufficient detail to permit the court to adjudicate the validity of your

809820.1

refusal, and identify each document and oral communication for which a privilege is claimed.

7.     The following instruction applies to Interrogatory No. 1:  **Plaintiffs request that you answer this interrogatory to the extent you are <u>currently</u> aware of responsive information.  Your response may be limited to information obtained from the relevant groups or personnel within your compliance department (through a review of available records and discussions with appropriate personnel) concerning instances in which you <u>already had identified or learned</u> of a known violation of applicable securities laws or internal rules, policies or procedures.  This includes, but is not limited to, violations learned through internal surveillance, monitoring, supervising or reporting, as well as violations learned through regulatory investigations, inquiries, decisions, letters and/or findings.  For purposes of defining current awareness, you are not required to conduct an audit or investigation of trades that have not previously been investigated by the relevant groups or personnel in your compliance department.**

## <u>INTERROGATORIES</u>

1.

Please identify each instance in which you (for your proprietary account or for or on behalf of a client):

a.  Failed to deliver a TASER security as required by Reg. SHO, NASD 3310 or UPC71;

b.  Received fees, commissions, interest or other money for a borrow of TASER securities that was not actually made (e.g., where the client/customer was charges fees associated with an open short position when the securities was not borrowed for some or all of the time that the client was charged);

c.  Failed to close out open fails in TASER common stock that have persisted for 13 consecutive settlement days;

d.  Failed to close out open fails in TASER or any other security that have persisted in violation of any of your own formal policies or procedures;

e.  Failed to deliver shares in TASER or any other security in violation of your formal policies and procedures, including those identified and described in your applicable compliance manual(s);

f.  Used a conversion, reverse conversion or flex option in conjunction with covering a fail to deliver position in TASER or any other security that was open for twelve or more settlement days;

g.  Mismarked an order ticket, stock record or blue sheet with respect to TASER securities;

h.  Failed to deliver a long sale of TASER by the settlement date;

i.  Applied the market-maker exemption or options-market-maker exemption of Regulation SHO for a transaction in TASER securities for a person or entity that was not entitled to that exemption;

j.  Applied the market-maker exemption or options-market-maker exemption of Regulation SHO for a transaction in a security other than TASER for a person or entity that was not entitled to that exemption.

    k.      Each short sale in which your formal policies and/or procedures required you to conduct a locate prior to effecting the short sale, but you failed to do so;[2] and

    l.      Each short sale in which your policies and procedures required you to make an affirmative determination that you could borrow the securities or otherwise provide for delivery of the securities by the settlement date but you failed to do so.

For purposes of this Interrogatory, Identify shall mean stating the security involved, date of the instance, whether the violation involved a proprietary or client/customer trade (and if the latter, the customer's name and account number), and, for Interrogatory No. 1(a), a brief description of the conduct involved and the rule or regulation that was violated.

2.

    Identify all clients/ entities/ individuals, by name and account number, for whom you applied the market-maker exception or options-market-maker exemption to Regulation SHO for any transaction in TASER common stock, options, or derivatives and state the basis for applying that exemption.

3.

    Identify any formal analysis, reports, audits or reviews created, designed or used to identify compliance with, or potential or actual violations of, your policies or procedures or securities laws relating to: (i) fails to deliver or receive; (ii) failures to locate or conduct affirmative determinations; (iii) the do not flip process; (iv) mismarkings of order tickets or blue sheets; (v) flex options; (vi) conversions or reverse conversions; (vii) the market-maker or option market maker exemption or (viii) unusual or suspicious fails, stock borrowing/ lending, order marking or derivatives trading.  For each report, identify the name of the report, to whom it is distributed in the ordinary course of business and the area of the firm with principal responsibility for reviewing it.

---

[2] The terms "effecting" and "close out" are taken from regulatory actions on this topic, such as found in GS_T62 and GS_T211.  Thus, there should be no issue as to their clarity.

809820.1

4.

Identify the individuals who testified with respect to the Certain Threshold Securities Investigation, including identifying his/her name, date of testimony and a general description of the matters he/she testified to.

5.

Identify any person who, at any point between January 1, 2003, and May 31, 2009, conducted an investigation, audit or inquiry concerning (i) any suspicious, improper, or unlawful activities relating to the trading of TASER securities or derivatives (regardless of whether the allegation was proven true); (ii) the borrowing or lending of TASER securities; (iii) fails relating to TASER securities. Please state the person's name, job title, and dates of responsibility.  If no one, please state so.  This interrogatory does not include persons who, in the ordinary course of business, received reports relating to borrow, loaning or fails of securities generally, unless that person conducted an investigation, audit, or inquiry specifically relating to TASER.

6.

Identify all witnesses, including expert witnesses, whom you expect to call to testify at trial of this action.  For each expert witness, please state the qualifications of the expert, the facts and opinions to which he is expected to testify, and the grounds for the expert's opinions.

7.

Please identify every formal or informal examination, inquiry or investigation (collectively, "investigation") of you by any agency, regulatory body or SRO (including but not limited to NASDAQ, FINRA, SEC, NYSE, ARCA, CBOE, any options trading board or any other similar self-regulatory agency) related to the Conduct at Issue whether or not specifically related to TASER securities.  For purposes of this interrogatory, identify includes, but is not limited to, stating the agency, regulatory body or self-regulatory organization (SRO) at issue; describing, in detail, the conduct being examined, inquired about or investigated; the security or securities at issue; the dates of the investigation; the name of any outside entity or firm that represented or assisted you in the

investigation (including, but not limited to, outside counsel); the names and titles of any persons who actively participated in responding to the investigation; the findings/conclusions of the investigation; and the result of the investigation (e.g., censure, letter of caution, fine, settlement, etc)  This interrogatory does not seek information about routine blue sheet requests.

8.

For each day between January 1, 2003 through May 31, 2009, please state the Average Loan Rate[3] You charged for TASER securities on that day.

Respectfully submitted this 26th day of October, 2010.

*Elizabeth G. Eager*

John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Elizabeth G. Eager
Georgia Bar No. 644007
BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
floyd@bmelaw.com
rosenwasser@bmelaw.com
iannarone@bmelaw.com
eager@bmelaw.com
Telephone:  (404) 881-4100
Facsimile:  (404) 881-4100

***Attorneys for Plaintiffs***

---

[3] Average Loan Rate is defined in Definition 12.
809820.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused to be served a true and correct copy

of the within and foregoing **PLAINTIFFS TASER INTERNATIONAL'S**

**FIRST INTERROGATORIES TO DEFENDANT MERRILL LYNCH**

**PROFESSIONAL CLEARING CORP.** to be served via e-mail and United States

Mail, with adequate postage thereon and addressed as follows:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Dan F. Laney, III, Esq.
> Kristina M. Jones, Esq.
> Stefanie H. Jackman, Esq.
> James W. Cobb, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601
> rsinkfield@rh-law.com

Further, I hereby certify that on this day, I caused to be served a true and

correct copy of the foregoing to be served by U.S. Mail on:

> **Attorneys for Banc of America Securities, LLC;**
> **Merrill Lynch, Pierce, Fenner & Smith, Inc.; and Merrill Lynch**
> **Professional Clearing Corporation:**
> Andrew J. Frackman, Esq.
> Brad Elias, Esq.
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY  10036
> afrackman@omm.com

809820.1

**Attorneys for Morgan Stanley & Co. Incorporated:**
Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa T. Aoyagi, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017
robert.wise@davispolk.com

**Attorneys for Bear Stearns & Co., Inc. and Bear Stearns Securities Corp.:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036
blfriedman@proskauer.com

**Attorneys for Goldman, Sachs & Co. and Goldman Sachs Execution & Clearing, L.P.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004
peppermanr@sullcrom.com

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281
peter.isajiw@cwt.com

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005-5793
aclubok@kirkland.com

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611

**Attorneys for Credit Suisse Securities (USA), LLC.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022
fraser.hunter@wilmerhale.com

This 26th day of October, 2010.

_Elizabeth G. Eager_
Elizabeth G. Eager
Georgia Bar No. 644007

803840.1                                   14