# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | |
| Plaintiffs, | Civil Case No. |
| v. | 1:10-CV-03108-JEC |
| MORGAN STANLEY & CO., INC., *et al.*, | |
| Defendants. | |

**MERRILL LYNCH PROFESSIONAL CLEARING CORP.'S
SURREPLY IN FURTHER SUPPORT OF ITS
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Plaintiffs' Reply contains several legal and factual inaccuracies to which Merrill Pro responds below.[1]  First, Plaintiffs conflate the standards for assessing federal jurisdiction under 15 U.S.C. § 78aa and 28 U.S.C. § 1331.  These statutes offer separate and independent grounds for federal jurisdiction, and the "essential element" analysis required under Section 1331 is irrelevant to the Section 78aa analysis.  Second, Plaintiffs contend that the Complaint's ***central*** allegation—that Defendants' conduct created counterfeit shares—is not an "essential element" of their claims.  But without their counterfeit-share allegations, Plaintiffs cannot allege the requisite injury, making those allegations "essential" to their claims.

## ARGUMENT

## I.  Plaintiffs Ignore the Exchange Act's Exclusive-Jurisdiction Provision.

### A.  Plaintiffs Improperly Conflate the Jurisdictional Analyses Required Under 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

Plaintiffs treat this action as just another state RICO claim under the federal-question jurisdiction statute, 28 U.S.C. § 1331.  It is not.  Plaintiffs expressly allege that Defendants violated the Securities Exchange Act of 1934 (the "Exchange Act") and various rules and regulations promulgated thereunder.  Merrill Pro

---

[1] Capitalized terms have the same meaning as in Merrill Pro's Opposition to Plaintiffs' Motion for Remand (Dkt. No. 55).  Unless otherwise noted, this memorandum omits internal quotation marks and adds any emphasis reflected in quoted passages.  All exhibits are attached to the November 18, 2010 Declaration of Christina J. Hayes that is being submitted herewith.

therefore removed this action not only under Section 1331, but also under a separate and independent jurisdictional statute:  15 U.S.C. § 78aa, the Exchange Act's exclusive-jurisdiction provision.  Sections 1331 and 78aa require different jurisdictional analyses, and Plaintiffs' Motion must be denied if the Court concludes that *either* statute grants it jurisdiction.

Plaintiffs have no substantive response to Section 78aa's jurisdictional grant. Instead, they contend that there is "no principled difference" between alleged violations of federal mail and wire fraud statutes and alleged violations of the Exchange Act.  (*See* Reply at 12.)  But there is a "principled difference," and it is that Congress explicitly denied state courts the power to hear claims challenging a defendant's exercise of its duties under the Exchange Act.  *See* 15 U.S.C. § 78aa. There is no such exclusive-jurisdiction provision in either the federal mail or wire fraud statutes.  And while Plaintiffs argue that exclusive jurisdiction is implicit in those statutes because they create federal *crimes*, there is no *explicit* congressional mandate that all criminal *and* civil claims under the statute must be heard in federal court.  *See generally Haywood v. Drown*, 129 S. Ct. 2108, 2114 (2009) (finding strong presumption of concurrent jurisdiction over federal claims that is defeated only where Congress expressly ousts state courts of jurisdiction).

Based on the flawed premise that Exchange Act claims are indistinguishable from other federal predicate acts, Plaintiffs contend that this Court lacks jurisdiction because their Exchange Act allegations are not an "essential element" of Plaintiffs' claims.  (*See* Reply at 14–15.)  But while the "essential element" inquiry might be necessary under Section 1331, it is irrelevant to the Court's analysis under the broader Section 78aa.  *Cf. Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1212 (9th Cir. 1998) ("Sparta's argument would have merit if jurisdiction in this case had been solely predicated on 28 U.S.C. § 1331 . . . .").  Section 78aa grants district courts "***exclusive*** jurisdiction" over both (i) alleged "violations of [the Exchange Act] or the rules and regulations thereunder," and (ii) "suits in equity and actions at law brought to enforce any liability or duty created by [this Act] or the rules and regulations thereunder."  The plain language of Section 78aa—which Plaintiffs do not quote or discuss in their Reply—requires the Court to exercise jurisdiction here because Plaintiffs allege violations both of the Exchange Act and of rules promulgated thereunder.  (*See* Complaint ¶¶ 115–16 (alleging violations of 15 U.S.C. § 78j and SEC rules); *see also* Reply at 2 (alleging that "the SEC regularly fines Defendants for the *precise misconduct* alleged in the Complaint").)  This Court therefore has exclusive jurisdiction under Section 78aa, and the Motion should be denied on this ground alone.

### B.  Plaintiffs Fail to Acknowledge That 15 U.S.C. § 78aa Does Not Require an Essential Element Analysis.

Plaintiffs attempt to distinguish the cases Merrill Pro cited in its Opposition on the ground that those decisions "do not apply here because they involve situations in which the **only** way the plaintiff could prevail was to prove that the defendant had violated duties under the Exchange Act."  (Reply at 15 (emphasis in original).)  Plaintiffs' description of these cases is both inaccurate and misleading.

First, in the cases Merrill Pro cited applying Section 78aa, not a single court engaged in an "essential element" analysis or based its holding on the fact that plaintiffs could prevail only if they proved an Exchange Act violation.  Rather, the courts' analysis turned on the straightforward question of whether the action sought to enforce a duty created by the Exchange Act or a regulation promulgated thereunder.  *See, e.g.*, *Sparta*, 159 F.3d at 1212 (finding jurisdiction under § 78aa because "although Sparta's theories are posited as state law claims, they are founded on the defendants' conduct in [operating under NASD rules]"); *Whitehall Wellington Invs., Inc. v. NASD*, 2000 U.S. Dist. LEXIS 18607, at *13 (S.D. Fla. Dec. 7, 2000) (finding jurisdiction because allegation that defendants violated NASD rules "amounts to a claim that Defendants breached a 'liability' or 'duty' under the terms of Section 78a").  Plaintiffs ask this Court to be the first to read an

"essential element" requirement into Section 78aa, which contains no textual basis for imposing such a requirement.

Second, in several cases the court found exclusive jurisdiction even though the court explicitly noted that the plaintiff could prevail without proving that the defendant violated the Exchange Act or rules promulgated thereunder.  In *Sparta*, for example, the court stated that "[plaintiff] sought relief based ***in part*** upon NASD's purported violation of its own rules."  159 F.3d at 1211.  Indeed, Sparta subsequently amended its complaint to state a claim *without* most of the prior references to the NASD rules.  *See id.* at 1213.  Similarly, in *D'Alessio v. N.Y. Stock Exch., Inc.*, the court observed that "[w]hile [plaintiff's] claims are cast as state law claims, they are premised, ***in large part***, on the [defendant's] failure to enforce and monitor compliance by its members with the Exchange Act . . . ."  258 F.3d 93, 103 (2d Cir. 2001).  *See also T&E Pastorino Nursery v. Duke Energy Trading & Mktg., LLC*, 123 Fed. Appx. 813, 814 (9th Cir. 2005) (affirming denial of remand because "[p]laintiffs' claim for relief [was] ***partially*** predicated on a subject matter committed exclusively to federal jurisdiction").

In contrast, Plaintiffs' cases are not on-point.  Plaintiffs cite *Gordon v. Buntrock*, for example, but *Gordon* is similar to *Avenius* in that it was a state-law action in which the plaintiff merely "reference[d]" the Exchange Act to

"support . . . the allegation that defendants breached their common law duties of full and fair disclosure." 2000 U.S. Dist. LEXIS 5977, at *14–15 (N.D. Ill. Apr. 28, 2000). But as Merrill Pro showed in distinguishing *Avenius* in its Opposition, Plaintiffs here do much more than merely "reference" the Exchange Act; they expressly allege violations of the Exchange Act and rules and regulations thereunder, seeking for damages for those alleged violations. Plaintiffs' reliance on *Beechwood Dev. Group, Inc. v. Konersman* is also misplaced because that case concerned registration requirements under the Securities Act of 1933. *See* 517 F. Supp. 2d 770, 773 (D.D.C. 2007). Unlike the Exchange Act, the Securities Act *explicitly* provides for *concurrent* state and federal jurisdiction, *see* 15 U.S.C. § 77v, and the *Beechwood* court did not mention Section 78aa. Accordingly, Plaintiffs cite no new cases that support remand under the circumstances presented here, where violations of the Exchange Act and the rules and regulations thereunder have been expressly alleged.[2]

---

[2] Plaintiffs also rely on *Meinders*, *Fairfax*, and *Avenius*. Merrill Pro discussed and distinguished all of these decisions in its Opposition. (*See* Opp. at 19–21, 25.)

## II. Plaintiffs Seek to Avoid Federal-Question Jurisdiction by Minimizing the Central Issue in this Litigation.

Plaintiffs do not dispute that whether the National System allows for the creation of counterfeit shares is a federal question.[3]  They do, however, seek to minimize the essential nature of this question by walking away from the Complaint's core allegation:  that Defendants' CNS failures to deliver created counterfeit TASER shares that harmed shareholders by artificially depressing the price of TASER stock.  In fact, the Complaint's very first paragraph states that "[t]his is an action to recover damages incurred as a result of the defendants' . . . creating and trading in unauthorized, artificial, and/or counterfeit [TASER] shares."  (Compl. ¶ 1.)  Despite the language of their own Complaint, Plaintiffs now contend that the alleged existence of counterfeit shares is not an "essential element" of their state-law claims and that therefore this Court lacks jurisdiction. (Reply at 7–8.)  Plaintiffs are incorrect.  Like all tort causes of action, each of Plaintiffs' alleged claims requires Plaintiffs to prove injury,[4] and the *only* alleged

---

[3] Nor could they given the holdings in *Pet Quarters, Inc. v. DTCC*, 559 F.3d 772 (8th Cir. 2009), and *Capece v. DTCC*, 2005 U.S. Dist. LEXIS 42039 (S.D. Fla. Oct. 11, 2005), which Plaintiffs do not even attempt to distinguish.

[4] *See Ledford v. Peeples*, 605 F.3d 871, 895 n.65, 903 (11th Cir. 2010) (O.C.G.A. § 10-5-12(a)(2) requires economic loss); *Vurv Tech. LLC v. Kenexa Corp.*, 2009 U.S. Dist. LEXIS 61623, at *7 (N.D. Ga. July 20, 2009) (listing loss of property element of O.C.G.A. § 16-9-93(g) claim); *Decatur Auto Ctr., Inc. v. Wachovia*

injury is that counterfeit shares depressed the price of Plaintiffs' stock and

deprived them of their ownership rights.  Plaintiffs allege no other theory of harm.[5]

Plaintiffs incorrectly suggest that they can prevail simply by proving that

Defendants "falsely mark[ed] short sales as 'long' on blue sheets, order tickets and

other documents," "falsely represented[ed] that they either possessed the borrowed

securities or had located them for borrowing and delivery," or "conceal[ed] fails

through washed and matched trades."  (Reply at 8–9.)  But without injury,

Plaintiffs have no claim based on this alleged misconduct.  Plaintiffs are not

federal regulators.  They cannot recover for Merrill Pro's mismarking an order

ticket, for example, unless they can show that the mismarking injured them.

---

*Bank, N.A.*, 583 S.E.2d 6, 7 (Ga. 2003) ("Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another."); *Mullinax v. State*, 545 S.E.2d 891, 893 (Ga. 2001) ("Theft by taking is committed when one 'unlawfully appropriates any property of another with the intention of depriving him of the property.'"); *Gordon v. State*, 359 S.E.2d 634, 635 (Ga. 1987) ("A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."); *Gulf Life Ins. Co. v. Folsom*, 806 F.2d 225, 228 (11th Cir. 1986) ("An action for money had and received . . . is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another.").

[5] Even if Plaintiffs could concoct another theory of harm, they cannot amend their pleading now to avoid removal.  *See Sparta*, 159 F.3d at 1213 ("[A] plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based.").

Plaintiffs' only attempt to link Defendants' alleged misconduct to Plaintiffs' alleged injury is the repeated allegation that Defendants' conduct created counterfeit shares that depressed TASER's stock price and impaired Plaintiffs' rights as shareholders.  (*See, e.g*., Compl. ¶¶ 107, 109, 110, 124–131, 168, 170, 174, 177, 180.)  Without counterfeit shares, Plaintiffs have no other basis to argue that the price of their TASER shares or their rights as shareholders were adversely affected.  The existence of counterfeit shares is thus an essential element of each of Plaintiffs' state-law claims.

Plaintiffs also attempt to avoid the undeniably federal counterfeit share issue by contending that the SEC disagrees only with their *description* of "securities entitlements" as "counterfeit shares."  (*See* Reply at 2, 11.)  But this case is not a semantic dispute—Defendants (and the SEC) say that CNS failures to deliver do not create excess "securities entitlements" either.  A security entitlement is a contractual right to exercise the rights of the security, such as selling and voting.  (*See* Brief of the SEC *Amicus Curiae*, *Pet Quarters, Inc. v. DTCC*, at 10–12 (Ex. 1) (explaining concept of securities entitlements).)  CNS does not create securities entitlements because it does not credit customers with such entitlements until the shares are delivered.  *See, e.g.*, 68 Fed. Reg. 62972, 62975 (Nov. 6, 2003) (Ex. 2) (noting that CNS failures to deliver may adversely affect broker-dealer expecting

delivery because it is unable to vote those shares).)[6]  Plaintiffs' fundamental

misunderstanding of this issue gives rise to the substantial federal question.

In any event, Plaintiffs' assertion that the SEC agrees with the substance of

their counterfeit-share allegations is beside the point.  In opposing remand, Merrill

Pro does not contend that Plaintiffs are precluded from arguing that the National

System allows for the creation of counterfeit shares.  Instead, Merrill Pro simply

argues that this dispute, which has important consequences for the national

markets, raises a substantial and disputed federal question and thus gives rise to

federal jurisdiction.

## CONCLUSION

For all of the foregoing reasons, Merrill Pro respectfully requests that the

Court deny Plaintiffs' Motion for Remand, Fees and Costs.

---

[6] For this reason, Plaintiffs' contention that they can prevail by proving the existence of counterfeit shares outside CNS is a red herring.  When a trade is cleared outside CNS, delivery still occurs by DTC book entry.  Thus, a buyer awaiting delivery of an "ex-clearing" trade still does not have the ability to trade, lend, or vote those shares before actually receiving them in its DTC account.

Dated:  November 18, 2010

*/s/* Richard H. Sinkfield

Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

Dan F. Laney III
Georgia Bar No. 435290
DLaney@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:  404-522-4700
Fax:  404-525-2224

Andrew J. Frackman
Abby F. Rudzin
Brad M. Elias
*Pro Hac Vice* Applications Pending

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Phone:  212-326-2000
Fax:  212-326-2061

*Attorneys for Defendant Merrill Lynch*
*Professional Clearing Corp.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing brief has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1(C).

/s/ Richard H. Sinkfield

Richard H. Sinkfield
Georgia Bar No. 649100
rsinkfield@rh-law.com