IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | |
| Plaintiffs, | Civil Case No. |
| v. | 1:10-CV-03108-JEC |
| MORGAN STANLEY & CO., INC., *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT MERRILL LYNCH'S MOTION FOR
PROTECTIVE ORDER WITH RESPECT TO PLAINTIFFS'
<u>AMENDED NOTICE TO TAKE RULE 30(b)(6) DEPOSITION</u>**

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") respectfully submits this memorandum of law in support of its Motion for Protective Order with Respect to Plaintiffs' Amended Notice to Take Rule 30(b)(6) Deposition (the "Amended Notice").

## PRELIMINARY STATEMENT

For nearly two years Plaintiffs have harassed Merrill Lynch and abused the discovery process by serving overly broad and burdensome document requests, interrogatories, and requests for admissions.  In response, Merrill Lynch has produced more than 10 million pages of documents (including trading records and e-mails covering a six-and-a-half-year period), answered scores of requests for admission, and responded to at least fifty interrogatories, all at a cost of many millions of dollars.  Now, Plaintiffs have progressed to serving Merrill Lynch with multiple Rule 30(b)(6) notices, the most recent of which covers impossibly broad and irrelevant topics for which no company could feasibly prepare a corporate representative to testify.

The Amended Notice seeks corporate testimony regarding eleven regulatory settlements (the "Settlements") into which Merrill Lynch entered without admitting or denying liability.  Such compromises and the negotiations that preceded them are inadmissible to prove liability under Federal or Georgia law, and the terms of

the Settlements are embodied in the settlement documents that speak for themselves.  Merrill Lynch offered to reach a fair compromise that would provide Plaintiffs with much of the requested discovery in a different form.  Merrill Lynch has already produced large volumes of documents in its and its outside counsel's possession in response to Plaintiffs' multiple requests for production and has responded to Plaintiffs' interrogatories related to the Settlements.  Merrill Lynch has even offered to identify by Bates number the specific documents that it has produced regarding each Settlement and to provide a verified written statement containing numerous categories of information sought in the Amended Notice. Merrill Lynch has also offered to stipulate to the fact that it has no separate and distinct corporate knowledge of any material facts about the Settlements that are not contained in the documents it produced.  Plaintiffs have refused all proposals.

The fundamental problem—and one that unfortunately has proven insurmountable—is that Plaintiffs continue to insist that they are entitled to testimony on topics (i) that are so overbroad it would be impossible to prepare a corporate representative on them, and (ii) on which Merrill Lynch has no separate and distinct corporate knowledge of any material fact outside the documents that have already been produced to Plaintiffs.  Federal Rule of Civil Procedure 26(c) is meant to protect against precisely this type of abusive discovery.

## BACKGROUND

Defendants in this action are New York-based broker-dealers that execute and clear securities transactions on behalf of their customers and themselves. Plaintiffs' core allegation is that the Defendants facilitated "naked short selling" in TASER, Inc. ("TASER") common stock (*i.e.*, short selling[1] without first determining that the stock can be borrowed and delivered by the settlement date) by intentionally failing to borrow and deliver TASER shares to the National Securities Clearing Corporation.  (*See* Compl. ¶¶ 1–7.)[2]

Plaintiffs have repeatedly sought discovery on regulatory inquiries that bear no connection to TASER securities, failures to deliver, abusive naked short selling, or any of the other alleged wrongdoing.  For example, Plaintiffs' third interrogatories required Merrill Lynch to "identify every formal or informal examination, inquiry, or investigation related to [short selling and record-keeping] whether or not specifically related to TASER securities."  (Pls.' Third Interrogatories and Fourth RFPs (Ex. 1) at 9.)  Plaintiffs requested comprehensive

---

[1] A short sale is the sale of a security that the seller does not own.  The short seller ordinarily borrows the security to deliver it to the purchaser and later purchases it to return to the lender.  Short selling may be used to profit from a price drop, provide market liquidity, or hedge the risk of a long position in the same or a related security.  *See* Short Sales, 68 Fed. Reg. 62972, 62973 (Nov. 6, 2003).

[2] A complete case description can be found in Merrill Lynch Professional Clearing Corp.'s Opposition to Plaintiffs' Motion for Remand.  (Dkt. No. 55.)

information for each such investigation, including "the security or securities at issue," "the dates of the investigation," "the name of any outside entity or firm that represented or assisted you," and "the names and titles of any persons who actively participated in responding to the investigation." (*Id.*) Similarly, Plaintiffs' fourth set of document requests required Merrill Lynch to "produce all documents relating to any examination, inquiry or investigation identified in response to [that interrogatory]." (*Id.*) In response Merrill Lynch identified six regulatory settlements that met Plaintiffs' broad definition and resulted in a fine or sanction, however minor. Merrill Lynch also produced documents on these topics, including hundreds of documents relating specifically to the Settlements on May 10, June 9, and September 9, 2010.

On May 26, 2010—before reviewing many of the documents that Merrill Lynch produced in response to Plaintiffs' discovery requests—Plaintiffs served a Notice to Take O.C.G.A. § 9-11-30(b)(6) Deposition of Merrill Lynch (Ex. 2). "Topic 1" of this notice sought testimony from a corporate representative on the "facts, issues, and circumstances," underlying sixteen different regulatory settlements. (Ex. 2 at 6–9.) "Topic 1" also sought testimony regarding at least 21 sub-topics (containing at least 74 sub-parts) for each of the sixteen different regulatory Settlements. In other words, "Topic 1" by itself demanded that Merrill

Lynch prepare corporate representatives to testify on an extraordinary *1,184 topics*.
(In fact, this is a conservative estimate of the number of topics encompassed by
"Topic 1," which improperly stated that it "includes, but is not limited to," the
specified topics.  (Ex. 2 at 7).)  The Settlements for which Plaintiffs demanded the
right to make this wide-ranging inquiry have nothing to do with the TASER
securities at issue in this case and virtually nothing to do with this litigation.
Indeed, none of the Settlements makes any reference at all to TASER.  They
involve technical matters that yielded little sanction and are marginally relevant, if
at all, to the core issues in this case.

Rather than immediately move to quash the notice, Merrill Lynch provided a
written response and formal objections on June 9, 2010, and June 18, 2010,
respectively, and attempted in good faith to reach reasonable compromises with
Plaintiffs over the scope of the topics for examination.  On multiple occasions,
through letters, e-mails, and telephonic meet-and-confers, Merrill Lynch explained
why Plaintiffs' proposed topics were massively overbroad, were either irrelevant or
at best tangentially relevant to anything at issue in the litigation, and were not
suitable for 30(b)(6) testimony.

After retaining new counsel in June 2010, Merrill Lynch resumed in August
negotiations with Plaintiffs during a telephonic meet and confer at which it voiced

serious concerns about providing any testimony in response to the May 2010 Notice.  Merrill Lynch informed Plaintiffs that its knowledge of the facts and circumstances surrounding the settlements was contained exclusively within the documents that had already been produced to Plaintiffs, largely because key personnel responsible for responding to the inquiries were no longer with the company.  Nonetheless, Merrill Lynch agreed to continue the meet-and-confer process and proposed a more limited set of topics on September 3, 2010.  Plaintiffs responded on September 7, 2010, by rejecting Merrill Lynch's proposal and adding three additional settlement agreements to Topic 1 of the notice.

After receiving Plaintiffs' new proposal, Merrill Lynch continued to search for additional information or documents relating to the settlement agreements, and on November 19, 2010, it served amended responses to Plaintiffs' Third Interrogatories.  The amended responses identified an additional settlement agreement that was responsive to Plaintiffs' third interrogatories and also provided additional information concerning the employees responsible for responding to the inquiries and the securities at issue (none of which was TASER).

In the course of preparing its amended responses, Merrill Lynch confirmed that it had no information to provide Plaintiffs about the Settlements that was not already included in either the documents it had produced or its interrogatory

responses.  Merrill Lynch therefore informed Plaintiffs on November 17, 2010, that it would not be proposing revised deposition topics.  It also informed Plaintiffs that if they chose to re-serve the same overbroad notice, Merrill Lynch would seek a protective order.  (*See* Nov. 17 E-Mail from B. Elias to S. Rosenwasser (Ex. 3).)

Just hours later, Plaintiffs served the Amended Notice.  (Ex. 4.)  The Amended Notice lists in its "Topic 1" eleven Settlements, with fourteen to nineteen sub-topics and numerous sub-sub-topics for each.  (Ex. 4 at 9–13.)  In other words, the Amended Notice continues to demand that Merrill Lynch prepare corporate representatives to testify about ***hundreds of topics***.  Amazingly, the Amended Notice requires Merrill Lynch to produce a testifying corporate representative on these vast topics on December 10—*i.e.*, within about three weeks of service.

After receiving the Amended Notice, Merrill Lynch continued to try to reach a reasonable compromise, but Plaintiffs were not interested.  On November 19, 2010, Merrill Lynch reiterated its objections to the burden imposed by the topics in the Amended Notice and offered to stipulate to the fact that it has no additional information to provide Plaintiffs regarding the facts and circumstances surrounding those Settlements.  (*See* Nov. 19, 2010 E-Mail from B. Elias to S. Rosenwasser (Ex. 5).)  Plaintiffs rejected this proposal and refused to withdraw the Amended Notice.  (*See* Nov. 22, 2010 E-mail from S. Rosenwasser to B. Elias (Ex. 6).)

On November 23, 2010, Merrill Lynch made yet another attempt at compromise and offered to identify by Bates number the documents in Plaintiffs' possession relating to each of the eleven regulatory investigations for which they sought testimony, thus eliminating Plaintiffs' stated concern that they would need to "cull" through the documents.  (*See* Nov. 23, 2010 E-mail from B. Elias to S. Rossenwasser (Ex. 7).)  Merrill Lynch noted that this would effectively give Plaintiffs a roadmap of all the information within Merrill Lynch's possession, custody, or control relating to these investigations.  (*Id.*)  Merrill Lynch also stated that, as a compromise, it was willing to provide verified written responses regarding several sub-topics in the Amended Notice, including (i) whether any of the conduct alleged in the inquiries would have violated Merrill Lynch's policies and procedures, (ii) whether Merrill Lynch conducted an internal investigation in response to any of the inquiries, (iii) Merrill Lynch's procedural rights in the inquiries, and (iv) the traders and/or trading desks involved in the inquiries (to the extent this information is available).  (*Id.*)  Merrill Lynch hoped that by agreeing to provide this information, Plaintiffs would agree to withdraw the Amended Notice or at least serve an amended version.  But again Plaintiffs refused, this time on the ground that the Plaintiffs "are entitled to obtain the information in a format [that] is

binding on the company and can be presented to the jury." (Nov. 23, 2010 E-mail

from S. Rossenwasser to B. Elias (Ex. 8).)

## ARGUMENT

### I.   The Court Should Protect Merrill Lynch From the Undue Burden and Expense That the Amended Notice Would Impose.

The Amended Notice is precisely the type of overbroad and abusive

discovery request that Rule 26(c) is meant to prohibit.  That statute provides that,

upon motion by a party, and "for good cause," the court may "issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense."  Fed. R. Civ. P. 26(c).  The order may do any of the following:

> (1)  Forbid the disclosure or discovery;
>
> (2)  Specify terms, including time and place, for the disclosure or discovery;
>
> (3)  Prescribe a discovery method other than the one selected by the party seeking discovery;
>
> (4)  Forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters.

*Id.*

### A.   The Topics in the Amended Notice Are Vague and Overbroad.

A Rule 30(b)(6) deposition notice must "describe with reasonable

particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  Where, as

here, the specified topics are so "vague [and] broad" as to "make it impossible to

9

designate and prepare witnesses to testify," they must be rejected.  *Edelen v.
Campbell Soup Co.*, 265 F.R.D. 676, 700 (N.D. Ga. 2010).  This is because "[a]n
overbroad . . . notice subjects the noticed party to an impossible task.  When the
notice is overbroad, the responding party is unable to identify the outer limits of
the areas of inquiry noticed, and designating a representative in compliance with
the deposition notice becomes impossible."  *Lipari* v. *U.S. Bancorp, N.A.*, 2008
U.S. Dist. LEXIS 82594, at *16 (D. Kan. Oct. 16, 2008) (footnotes omitted).

     The hundreds of sub-topics included in the Amended Notice cannot be
considered a particularized request for testimony, even under the most liberal
standard.  For example, the Amended Notice demands testimony on "whether the
conduct described in" each Settlement agreement "occurred and, if Merrill Lynch
denies that any of the conduct occurred, the facts and bases for that denial."  (Ex. 4
at 10.)  This sweeping demand is improper and overbroad, as demonstrated by
*Edelen*.  There plaintiff demanded corporate testimony regarding Campbell Soup's
"knowledge of . . . information regarding the allegations, claims, and defenses" in
the action.  265 F.R.D. at 700.  The court rejected that topic as improperly broad
and vague.  *Id.*  Plaintiffs' request here for testimony concerning the "facts and
basis" for Merill Lynch's position on eleven different regulatory inquiries is far

broader than the topic rejected by the *Edelen* court.[3]  It is also less relevant—at least the topic rejected in *Edelen* concerned the allegations, claims, and defenses of the case being litigated.  By contrast, Plaintiffs demand corporate testimony on eleven Settlements unrelated to the alleged TASER market manipulation.

Similarly, in *Lipari*, the court granted a protective order against a notice seeking corporate testimony regarding "the conduct of [defendant's] current or former employees, the employees of its subsidiaries and the conduct of its agents described . . . [in] the plaintiff's complaint" on the ground that it was "overly broad" and "unfocused."  2008 U.S. Dist. LEXIS 82594, at *13, *18.  Again the Amended Notice is far broader and seeks information less relevant than the notice in *Lipari*, which called for testimony about facts concerning the allegations in the complaint.  Here Plaintiffs seek such testimony for eleven different Settlements.

**B.   The Burden and Expense of the Proposed Discovery Far Outweighs Its Limited Relevance.**

The Federal Rules of Civil Procedure recognize that the right to conduct discovery is "not absolute," and "a party's right to obtain discovery may be constrained where the court determines . . . that the burden or expense of the

---

[3] The Amended Notice also demands testimony on the absurdly broad topic of "whether Merrill Lynch is currently aware of any other instances in which the conduct" occurred and, if so, "when it occurred, the trading desks and traders involved and the securities involved."  (Ex. 4 at 10–11.)

proposed discovery outweighs its likely benefit." *Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 620 (D. Colo. 2007).  Here the burden and expense imposed by the Amended Notice far outweighs the limited relevance of the Settlements to Plaintiffs' allegations in this case.

       1.    Preparing a Corporate Representative to Testify on the Topics Set <u>Forth in the Amended Notice Would Be Unduly Burdensome.</u>

Topic 1, which seeks testimony on all "facts, issues and circumstances underlying" the eleven enumerated Settlements, is incredibly burdensome because it would require a corporate representative to learn, or have at his fingertips, the precise details of each regulatory inquiry and the conduct at issue therein.  This would be a herculean task, far exceeding anything required by Rule 30(b)(6).  *See, e.g.*, *S.E.C. v. Nacchio*, 614 F.Supp.2d 1164, 1177 (D. Colo. 2009) ("To require the [plaintiff] to marshal [the requested] facts would literally require some person . . . to spend untold weeks if not months learning this case.  That's inefficient in the extreme."); *FTC v. Cyberspy Software, LLC*, 2009 U.S. Dist. LEXIS 71270, at *11 (M.D. Fla. July 31, 2009) (finding that plaintiff was "not required to produce a witness who has memorized all of the facts that have been uncovered to date"); *Smithkline Beecham Corp. v. Apotex Corp.*, 2000 U.S. Dist. LEXIS 667, at *27 (N.D. Ill. Jan. 21, 2000) ("[T]he recipient of a Rule 30(b)(6) request is not required

to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or claim.").

In this way the Amended Notice is similar to the notice rejected in *In re Independent Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651 (D. Kan. 1996).  There the plaintiff sought "a corporate witness to testify about facts supporting numerous paragraphs of [the defendant's] denials and affirmative defenses in its Answer and Counterclaims."  *Id.* at 654.  The court found that although the plaintiff had "a right to discover the facts upon which [the defendant would] rely for its defense and counterclaims, [the plaintiff's] attempt to discover those facts through a 30(b)(6) deposition [was] overbroad, inefficient, and unreasonable."  *Id.*  The court noted that "[e]ven under the present-day liberal discovery rules, [the defendant] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim."  *Id.*  The court found that this would be "highly inefficient and burdensome," especially "where the information appears to be discoverable by other means."  *Id.*  Similarly here, Merrill Lynch should not be required to marshal factual proof and prepare a witness to testify on its claims and defenses in eleven different regulatory inquiries. And as in *Independent Serv.*, the information is discoverable through other

13

means—*i.e.*, reviewing the numerous documents concerning the Settlements that Merrill Lynch has already produced.

Moreover, here the Notice is even more burdensome because there is no Merrill Lynch employee with knowledge of these regulatory inquiries.  The Settlements go back more than six years, and many of Merrill Lynch's compliance employees from that period are no longer employed by the company.[4]  Any witness testifying on these topics would therefore need to learn the facts from scratch—by studying the documents that have been produced to Plaintiffs.  There is no justification for giving Merrill Lynch employees this homework assignment, when Plaintiffs already have the same textbook.

      2.   The Requested Discovery Is Not Relevant to Plaintiffs' Claims.

Not only is the requested discovery incredibly burdensome for Merrill Lynch, it would also yield little admissible evidence for Plaintiffs.  Plaintiffs claim that Merrill Lynch conspired with the other Defendants to manipulate the price of TASER stock by engaging in or facilitating abusive naked short sales of TASER stock and then failing to deliver those shares to the nation's securities clearing agency (the DTCC).  (*See* Compl. ¶¶ 1–7.)  None of the eleven Settlements on

---

[4] In late 2008 Merrill Lynch was acquired by Bank of America, Inc., and corporate consolidation led to many Merrill Lynch employees leaving the company.

which Plaintiffs seek testimony involved TASER stock, abusive naked short selling, failures to deliver to the DTCC, or any other conduct central to Plaintiffs' claims.  And while Plaintiffs will likely assert that the Settlements are relevant to Plaintiffs' claims under the Georgia RICO statute as potential "predicate acts," that assertion has no merit.  None of the Settlements alleged (much less proved) that Merrill Lynch engaged in any criminal, manipulative, or fraudulent conduct.  Thus, even if the conduct alleged in the inquiries occurred, such conduct would not constitute a "predicate act" under the Georgia RICO statute, which identifies only certain crimes that can serve as predicate acts.  *See* O.C.G.A. § 16-14-3(9)(A)–(B).

The minimal relevance of the Settlements is further demonstrated by the fact that most resulted from routine regulatory inquiries (among hundreds that Merrill Lynch, like other SEC-regulated broker-dealers, receives each year) involving alleged technical violations.  For example, Plaintiffs want to question a Rule 30(b)(6) deponent about a regulatory inquiry dealing with "blue sheets," which are trading records broker-dealers produce to regulators on request.  In connection with that inquiry and Settlement, the New York Stock Exchange alleged that:

> [Merrill Lynch] experienced recurring failures with it [sic] blue sheet systems pertaining to short sales being reported as long sales.  Among the deficiencies, one of Merrill Lynch's systems failed to transfer certain information regarding proprietary trades to another of its systems; [Merrill Lynch's] system coded certain of its correspondent firms as market makers, which

caused an automatic and erroneous conversion of their transactions coded as short sales to long sales; and [Merrill Lynch] did not detect that certain of its correspondent firms failed to provide it with accurate and/or complete information.

(*See* NYSE Hearing Panel Decision 05-149 (Ex. 9) at 4.)  In other words, the NYSE inquiry addressed an inadvertent computer programming error.  There is no allegation that Merrill Lynch ever intentionally acted inappropriately.  Indeed, the NYSE specifically found that "[Merrill Lynch] did not detect" the problems with the data.  (*Id.*)  Nonetheless, Plaintiffs seek testimony on such irrelevant topics as "[w]hen and how the exchange notified Merrill of blue sheet inaccuracies" and "the securities listed on the incomplete or erroneous blue sheets."  (Ex. 4 at 13.) They also seek testimony on information they know from the settlement agreement itself, including "[t]he manner in which the blue sheets were allegedly incomplete or inaccurate" and "the blue sheets at issue . . . and the time periods."  (*Id.*)

To justify such burdensome discovery into conduct unrelated to TASER stock, Plaintiffs have relied repeatedly on the Georgia State Court's February 10, 2010 Order granting their Motion to Compel.  That order required the Defendants to produce documents concerning "conduct that is the same or similar to the conduct at issue in this case," without defining "conduct at issue."  (*See* Ex. 10.)  It says nothing about the far more burdensome job of preparing a 30(b)(6) witness to testify about dozens of topics concerning the Settlements.  Indeed, Plaintiffs

emphasized in seeking that order that there would be ***no*** additional burden to Defendants in producing documents concerning the Settlements:

> **If the Court grants Plaintiffs' Motion, the Defendants will not be required to review a single document beyond what they have already agreed to review.** The only question presented here is whether documents identified in that review that pertain to the improper short selling of non-TASER securities will be placed in the "produce" pile or the "nonresponsive" pile.

(Reply in Support of Plaintiffs' Motion to Compel Production of Documents (Ex. 11) at 6–7 (emphasis added).)  The conclusion that regulatory investigations are sufficiently relevant to justify the burden of a document production does not mandate a conclusion that they are also sufficiently relevant to justify the much more burdensome task of providing corporate representative testimony.  *See, e.g.*, *Independent Serv.*, 168 F.R.D. at 654 (noting how burdensome and inefficient 30(b)(6) deposition can be relative to other discovery methods).

### C.  The Amended Notice Improperly Seeks Testimony Regarding Merrill Lynch's Legal Conclusions and Settlement Negotiations.

The Amended Notice is not just overbroad and unduly burdensome, it also seeks testimony on several improper topics.  For example, it demands testimony on Merrill Lynch's position on "[w]hether the conduct described" in each of the Settlements "violated any Merrill Lynch policy or procedure (including any policy or procedure contained in any compliance manuals)."  (Ex. 4 at 10.)  But as is

common in regulatory settlements, Merrill Lynch expressly neither admits nor denies the findings in the Settlements.  Plaintiffs cannot use their Rule 30(b)(6) deposition to re-litigate each of these settled investigations and somehow obtain "findings" or "admissions" that the alleged conduct occurred, let alone that it was improper.  And as explained above, none of the Settlements addressed market manipulation or TASER stock, so a "finding" that the conduct occurred cannot help establish that Merrill Lynch committed the torts Plaintiffs allege.

Moreover, the topic amounts to an impermissible request for Merrill Lynch's privileged legal conclusions.  Merrill Lynch's policies and procedures are designed to ensure compliance with the law.  Thus any question about whether certain conduct violated a policy therefore equates to a question about whether Merrill Lynch believes that the conduct violated the law.  That is privileged attorney work product that Plaintiffs are not entitled to.  *See Byrd* v. *Wal-Mart Trans., LLC*, 2009 U.S. Dist. LEXIS 87356 (S.D. Ga. Sept. 23, 2009).  In *Byrd*, the plaintiff asked Wal-Mart's corporate representative "whether 'Wal-Mart [had] ever attributed any *fault* to [its driver] for the wreck'" at issue.  *Id.* at *3.  The court granted Wal-Mart's motion for a protective order because "[a]ny subjective evaluation by Wal-Mart of its *legal* responsibility for the accident (i.e., its failure to maintain some legally mandated standard of conduct) necessarily steps into the mental

impressions of the merits of the case." *Id.* at *6.  The court found that such

"[l]egal conclusions . . . [cannot] fairly be said to lead to the discovery of

admissible evidence" and would constitute privileged attorney work product.  *Id.* at

*6 n.3.[5]  The Amended Notice here is as improper as the questions in *Byrd.*

The Amended Notice also seeks testimony about Merrill Lynch's "rights and

responsibilities with respect to" the Settlements.  (Ex. 4 at 11.)  But this too seeks

to invade the attorney-client privilege.  A party's "rights and responsibilities"

under any contract, especially a settlement agreement, necessarily are based on

legal analysis of the agreement and thus, by definition, seek privileged information

and legal conclusions.  (Merrill Lynch's "rights and responsibilities" under the

Settlements are also irrelevant to Plaintiffs' claims.)

Indeed, the entire premise of the Amended Notice is improper, because it

seeks discovery concerning settlement negotiations.  "There exists a strong public

---

[5]  The court further reasoned that "asking a lay 30(b)(6) witness to undertake on-the-spot legal analysis in order to respond to contention questions is asking too much, especially since the company's lawyer is far better equipped to formulate full and complete responses for his client to sign" in the form of interrogatory responses.  *Id.* at *13–14 n.7; *see also United States v. J.M. Taylor*, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996) ("Some inquiries are better answered through contention interrogatories wherein the client can have the assistance of the attorney in answering complicated questions involving legal issues.").  Consistent with this approach, Merrill Lynch proposed providing written, verified responses to many of the topics in the Amended Notice.  Plaintiffs rejected this proposal.

interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980–81 (6th Cir. 2003) (upholding decision preventing discovery into settlements based on "public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein"). And while Federal Rule of Evidence 408 prohibits only the admissibility of settlement discussions, it also bears on discoverability because "the rule makes it unlikely that information about prior settlements will lead to the discovery of admissible evidence." *Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D. Ga. 1994) (prohibiting discovery of settlement information without "particularized showing" that such information "is truly relevant"). Here the discovery sought is particularly problematic because it potentially seeks privileged information about the Settlements. *See Smithkline Beecham*, 2000 U.S. Dist. LEXIS 667, at *28 ("[C]ourts will not permit discovery implicating privilege concerns absent a showing that the information sought is not discoverable by other means."); *Metro. Life Ins. Co. v. Muldoon*, 2007 U.S. Dist. LEXIS 94530, at *6 (D. Kan. Dec. 20, 2007) (preventing deposition about settlement transactions where "[t]he deposition would necessarily inquire into the strategies and policies applied by the United States in resolving federal tort claims litigation").

### D.  The Information Sought by the Amended Notice Is More Efficiently Obtained Through Written Discovery.

Plaintiffs will undoubtedly assert that they are entitled to use their favored discovery tool.  That misstates the law and oversimplifies the analysis.  A 30(b)(6) deposition is an expensive and burdensome discovery tool of last resort, disfavored when less expensive and less burdensome means are available.  *See, e.g.*, *Dugan v. Quanstrom*, 2003 U.S. Dist. LEXIS 22309, at *11–15 (N.D. Ill. Dec. 11, 2003) (granting motion to quash 30(b)(6) subpoena where party could not demonstrate that less expensive and less burdensome means have been used without success).  Accordingly, a protective order is appropriate where, as here, the information Plaintiffs seek can be obtained more readily in other formats.  *See, e.g.*, *Dongguk University v. Yale Univ.*, 2010 U.S. Dist. LEXIS 83987, at *10 (D. Conn. Aug. 17, 2010) ("Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition."); *Gossar v. Soo Line R.R. Co.*, 2009 U.S. Dist. LEXIS 100931, at *13 (S.D. Ind. Oct. 27, 2009) (granting protective order where "30(b)(6) deposition [was] not the most convenient manner for discovering" information sought); *United States ex rel. Smith v. Boeing Co.*, 2010 U.S. Dist. LEXIS 32438, at *14 (D. Kan. Apr. 1, 2010) (granting protective order where

information could "be obtained more conveniently and with less expense through a simple interrogatory").

Here Merrill Lynch has already produced documents providing much of the information Plaintiffs seek.  And the written discovery proposed by Merrill Lynch would provide Plaintiffs with still more information.  *See Smithkline Beecham*, 2000 U.S. Dist. LEXIS 667, at *28 ("Defendants could readily have obtained the same information in a more efficient manner by propounding 'standard' interrogatories upon its opponent.").  The situation here is again similar to that in *Independent Serv.*, where the court issued a protective order after the plaintiff rejected a "reasonable compromise" in which the defendants would have provided a written summary of the facts underlying their defenses.  The court found that the plaintiff "failed to convince the court that the factual information it [sought could not] be discovered by other less problematic means, or that it [was] not already available in the voluminous discovery previously conducted."  168 F.R.D. at 654. An identical result is warranted here, where much of the information Plaintiffs seek is contained in documents already produced and Merrill Lynch has made a good-faith offer to provide additional information in writing.

## II.   If the Court Permits Plaintiffs to Conduct a Rule 30(b)(6) Deposition, It Should Take Place in New York, Not Atlanta.

If the Amended Notice, or some version of it, is permitted to stand, the Rule 30(b)(6) deposition should occur in New York where Merrill Lynch has its principal place of business and where the witnesses are located.  *See Salter v. Upjohn Co.*, 593 F.2d 649, 651–52 (5th Cir. 1979) ("It is well settled that '(t)he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when, as in this case, the corporation is the defendant." (*citing* 8 C. Wright & A. Miller, Federal Practice & Procedure § 2112 at 410 (1970))); *see also In re Subpoena to Huawei Techs. Co.*, 2010 U.S. Dist. LEXIS 56027, at *23 (N.D. Ill. June 2, 2010) ("The law is clear that a corporation's principal place of business is presumed to be the appropriate place for its deposition pursuant to Rule 30(b)(6).")

There are no unusual circumstances in this case that justify imposing on Merrill Lynch or its employees the additional cost and expense, in terms of both time and money, of traveling to Atlanta for a Rule 30(b)(6) deposition.  The corporate designee would already need to devote substantial time and resources to preparing for the deposition, so he or she should be permitted to testify at or near Merrill Lynch's corporate headquarters, where he or she is also located.

## CONCLUSION

For the foregoing reasons, the Court should grant Merrill Lynch's motion for a protective order prohibiting examination on the topics in the Amended Notice.  If the Court denies this motion, Merrill Lynch respectfully requests that it be given at least 30 days to begin producing corporate representatives to testify as to the topics in the Amended Notice.

Dated:  November 24, 2010

           /s/ Richard H. Sinkfield
           Richard H. Sinkfield
           Georgia Bar No. 649100
           RSinkfield@rh-law.com

           ROGERS & HARDIN LLP
           229 Peachtree Street, N.E.
           2700 International Tower
           Atlanta, Georgia  30303
           Tel.:  404-522-4700
           Fax:  404-525-2224

           Andrew J. Frackman
           Abby F. Rudzin
           Brad M. Elias
           *Pro Hac Vice* Applications Pending

           O'MELVENY & MYERS LLP
           7 Times Square
           New York, New York  10036
           Phone:  212-326-2000
           Fax:  212-326-2061

           *Attorneys for Defendant Merrill Lynch,*
           *Pierce, Fenner & Smith Incorporated*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MERRILL

LYNCH'S MOTION FOR PROTECTIVE ORDER WITH RESPECT TO

PLAINTIFFS' AMENDED NOTICE TO TAKE RULE 30(b)(6) DEPOSITION

has been prepared in Times New Roman, 14-point font, as permitted by Local Rule

5.1(C).

/s/ Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **TASER INTERNATIONAL, INC.,** *et al.* | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NUMBER: 1:10-CV-03108-JEC** |
| **MORGAN STANLEY & CO., INC.,** *et al.* | |
| **Defendants.** | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2010, I caused a copy of the foregoing

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MERRILL

LYNCH'S MOTION FOR PROTECTIVE ORDER WITH RESPECT TO

PLAINTIFFS' AMENDED NOTICE TO TAKE RULE 30(b)(6) DEPOSITION to

be filed with the Clerk of Court using the CM/ECF system, which will

automatically send e-mail notification of such filing to the following attorneys of

record:

John E. Floyd, Esq.
floyd@bmelaw.com

Steven J. Rosenwasser, Esq.
rosenwasser@bmelaw.com

Nicole G. Iannarone, Esq.
iannarone@bmelaw.com

Jill A. Pryor, Esq.
pryor@bmelaw.com

Robert L. Ashe, III, Esq.
ashe@bmelaw.com

Michael A. Caplan, Esq.
caplan@bmelaw.com

Elizabeth G. Eager
eager@bmelaw.com

and that I have caused a copy to be served by U.S. Mail on the following attorneys

of record:

James W. Christian, Esq.
CHRISTIAN, SMITH & JEWELL LLP
2302 Fannin, Suite 500
Houston, TX  77002

Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa Aoyagi, Esq.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017

Richard H. Klapper, Esq.
Richard C. Pepperman, II, Esq.
Tracy Richelle High, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498

Stephen L. Ratner, Esq.
Brian L. Friedman, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036

Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Peter J. Isajiw, Esq.
Heather L. Fesnak, Esq.
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY  10281

Fraser L. Hunter, Jr., Esq.
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY  10022

Andrew J. Frackman, Esq.
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036

Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Jeffrey M. Gould, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005


/s/ Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:  404-522-4700
Fax:  404-525-2224

4