# EXHIBIT 9

# NEW YORK STOCK EXCHANGE, INC.

**EXCHANGE HEARING PANEL DECISION 05-149**                    January 3, 2006
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED
MEMBER ORGANIZATION

\* \* \*

> **Violated NYSE Rule 410A by failing to submit accurate trading information through the submission of electronic blue sheets; violated NYSE Rule 401 by submitting inaccurate trading information on electronic blue sheets; violated NYSE Rule 342 by failing to establish and maintain appropriate systems and procedures for supervision and control of areas responsible for complying with electronic blue sheet reporting requirements and failing to establish a separate system of follow-up and review to reasonably ensure compliance with NYSE Rules relating to preparation and submission of electronic blue sheets – Consent to censure, fine of $500,000, requirement to conduct validation of all required blue sheet data elements, and undertaking to inform NYSE in writing that validation has been completed.**

**Appearances:**

For the Division of Enforcement
Susan Light, Esq.
Suzanne R. Elovic, Esq.
Elena Salzman Kindler, Esq.

For Respondent Firm
Adrienne Ward, Esq.
David Marcus

\* \* \*

A Hearing Panel of the New York Stock Exchange, Inc. ("NYSE" or "Exchange") met to consider a Stipulation of Facts and Consent to Penalty entered into between the NYSE's Division of Enforcement ("Enforcement") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Respondent Firm" or "Merrill Lynch" or "Respondent"), a member organization. Without admitting or denying allegations, facts, conclusions or findings referred to in the Stipulation of Facts and Consent to Penalty, Respondent Firm consented to a finding by the Hearing Panel that it:

   I. Violated NYSE Rule 410A by failing to submit accurate trading information through the submission of electronic blue sheets in response to one or more requests for such information by the NYSE.

   II. Violated NYSE Rule 401 by failing to adhere to the principles of good business practice in the conduct of its business affairs in that it submitted inaccurate trading

        information on electronic blue sheets in response to one or more requests for such information by the NYSE.

III.    Violated NYSE Rule 342 by failing to establish and maintain appropriate systems and procedures for the supervision and control of areas responsible for complying with electronic blue sheet reporting requirements and failing to establish a separate system of follow-up and review to reasonably ensure compliance with NYSE Rules relating to the preparation and submission of electronic blue sheets.

For the sole purpose of settling this disciplinary proceeding, Enforcement and Respondent stipulate to certain facts, the substance of which follows:[1]

### Background and Jurisdiction

1. Merrill Lynch is a Delaware corporation with its principal place of business in New York, New York, is registered with the SEC, and is a member organization of the Exchange. Merrill Lynch is a global investment banking and multi-service brokerage firm that, among other things, trades securities for institutional and individual customers.

2. Enforcement notified the Respondent that it was investigating certain matters as described below that were referred to Enforcement by the Exchange's Division of Market Surveillance ("MKS").

3. Thereafter, the Respondent provided information in connection with Enforcement's investigation.

### Overview

4. This action concerns submissions by Respondent of inaccurate Electronic Blue Sheets ("blue sheets") in violation of Exchange Rules 410A and 401 and the failure of Respondent to properly supervise the preparation of its blue sheet submissions in violation of Exchange Rule 342. The blue sheets were submitted to the Exchange and other regulators in response to regulatory inquiries over a significant period of time. The inaccuracies in the blue sheet submissions resulted from deficiencies in the Respondent's blue sheet systems. The inaccuracies were systemic in nature and included the reporting of short equity sales as long sales. Additionally, notwithstanding being alerted to these problems by the Exchange, the Respondent continued to have ongoing deficiencies in its blue sheet reporting.

### Electronic Blue Sheets

---

[1] The facts, allegations, and conclusions contained in paragraphs 1-19 are taken from the executed Stipulation of Facts and Consent to Penalty between Enforcement and Respondent. No changes have been made to the stipulated paragraphs by the Hearing Panel, with the exception of the change in paragraph 17, which is explained in footnote 2 below.

ML-TASR0063174

5. Blue sheets are documents that are generated by member organizations at the request of regulators in connection with investigations of questionable trading. The blue sheets provide, *inter alia,* information identifying the account holder for whom specific trades were executed, indicating whether the transaction was a buy or a sell and long or short. The receipt and review of blue sheets are an essential component of Exchange investigations into matters such as potential insider trading or market manipulation, and potential violations of Rule 105 of Regulation M, under the Securities Exchange Act of 1934, which prohibits the covering of a short sale with securities obtained in a public offering, if the short sale occurred within five days of the date when the offering was priced.

6. Since in or about 1989, members and member organizations have submitted these blue sheets in an electronic format to all regulators including the Exchange.

7. It is the responsibility of members and member organizations to reasonably ensure that the information submitted to regulators via blue sheets is accurate.

### Background of the Investigation

8. In or around August 2003, MKS requested certain blue sheet information from the Respondent.

9. Shortly thereafter, MKS discovered inaccuracies in the blue sheet submission received from Respondent. As a result, MKS commenced an investigation of Respondent. The investigation revealed that Respondent had submitted inaccurate blue sheets to the Exchange.

10. As a result, MKS referred its findings to the Division of Enforcement on February 18, 2005.

### Violative Conduct

11. Respondent's blue sheet systems caused certain short sale transactions to erroneously be identified as long sale transactions in its blue sheet submissions to the Exchange and/or other regulators. The inaccurate information submitted by the Respondent undermined the integrity of the information utilized by the Exchange and other regulators during the course of investigations into questionable trading activity.

12. The systemic failure of Respondent's blue sheet system occurred over a significant, but indeterminable, period of time, during which multiple blue sheets containing inaccurate information were submitted to the Exchange and/or other regulators.

13. Respondent regularly received data from correspondent firms related to transactions executed away from Respondent, some of which inaccurately identified short sale transactions in certain types of accounts as long sale transactions. However, the Respondent did not have in place reasonable procedures designed to independently verify the accuracy of that information, by comparing it to information otherwise in

4

the possession of the Respondent, prior to including it in its own blue sheet submissions.

14. Respondent experienced recurring failures with it blue sheet systems pertaining to short sales being reported as long sales. Among the deficiencies, one of Merrill Lynch's systems failed to transfer certain information regarding proprietary trades to another of its systems; Respondent's system coded certain of its correspondent firms as market makers, which caused an automatic and erroneous conversion of their transactions coded as short sales to long sales; and Respondent did not detect that certain of its correspondent firms failed to provide it with accurate and/or complete information.

15. Additionally, the Respondent reported during the course of the investigation that its blue sheet deficiencies had been corrected, but subsequently discovered that it continued to submit blue sheets containing erroneous information in certain instances.

16. Prior to notification by the Exchange to the Respondent of its blue sheet problems, the Respondent did not maintain adequate written supervisory procedures relating to blue sheet submissions nor had the Respondent established a separate system of follow-up and review to determine that the blue sheet submissions contained accurate information.

## Applicable Exchange Rules

17. Exchange Rule 410A requires a member or member organization to submit from time to time, trade data elements in the automated format prescribed by the Exchange in regard to a transaction or transactions that are the subject of a particular request for information made by the Exchange. The required data elements include, in relevant part, whether each transaction was a purchase, sale or short sale; the date the transactions was executed, if the transaction was effected for a member broker-dealer customer, whether the broker-dealer was acting as principal or agent; and whether the transaction was a proprietary transaction effected or caused to be effected by the member for an account in which the member held an interest.[2]

18. Exchange Rule 401 requires that every member, allied member and member organization shall adhere to the principles of good business practice with respect to the conduct of his or its business affairs at all times.

19. Exchange Rule 342 requires that every member and member organization provide for appropriate procedures for supervision and control over their business activities and compliance with securities laws and regulations. Additionally, every member and member organization is required to establish a system of follow-up and review to

---

[2] Hearing Panel Note: The final clause in paragraph 17 was modified slightly from its equivalent in the Stipulation of Facts and Consent to Penalty ("effected or caused to be effected for the member or an account in which the member had an interest") in order to conform with the precise language of NYSE Rule 410A(a).

ML-TASR0063176

5

assure the proper exercise of responsibility and authority. Additionally, Exchange Rule 342.23 requires that every member and member organization develop and maintain adequate controls over each of its business activities, and that such controls must provide for the establishment of procedures for independent verification and testing of those business activities.

## DECISION

The Hearing Panel, in accepting the Stipulation of Facts and Consent to Penalty, found Respondent Firm guilty as set forth above by unanimous vote.

## PENALTY

In view of the above findings, the Hearing Panel, by unanimous vote, imposed the penalty consented to by Respondent Firm of a censure, a fine of $500,000 to be paid jointly to the NYSE and the American Stock Exchange, a requirement that Respondent Firm conduct a validation of all required blue sheet data elements in accordance with ISG Regulatory Memorandum, ISG 2005-01, and an undertaking to inform the NYSE in writing that Respondent Firm has completed its validation.

For the Hearing Panel


Peggy Kuo - Chief Hearing Officer
Panelists:
John Cirrito
Joseph C. Gawronski

ML-TASR0063177