# EXHIBIT 11

Case 1:10-cv-03108-JEC   Document 111-14   Filed 11/24/10   Page 2 of 20

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 28339005
Date: Dec 3 2009 4:57PM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | : : : | |
| Plaintiffs, | : : : | CIVIL ACTION FILE NO.: 2008-EV-004739-B |
| v. | : : | |
| MORGAN STANLEY & CO., INC., *et al.*, | : : : : | JURY TRIAL DEMANDED |
| Defendants. | | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

**I.   Introduction**

Plaintiffs contend that the Defendants have engaged in an illegal and unlawful ***pattern*** of abusive naked short selling to manipulate the price of TASER stock in violation of Georgia RICO and other statutes.  Contrary to Defendants' claim, Plaintiffs do not allege that the pattern of unlawful abusive naked short selling is limited to TASER, but rather allege that the Defendants have engaged in that conduct with respect to other securities as well.  *See, e.g,.* Sixth Amended Complaint ¶ 8 (four-page table listing instances where Defendants were fined by regulators for engaging in unlawful conduct that involves securities other than TASER).

718795.1
717345.1

Plaintiffs have served discovery requesting that the Defendants produce documents showing they engaged in abusive naked short selling and have been sanctioned by regulators for that conduct.[1]  Defendants have refused to produce most of those documents.  Plaintiffs have also sought documents discussing the illegality of abusive naked short selling and the harm such conduct causes.  Defendants refuse to produce most of those documents as well.  In both cases, Defendants claim that Plaintiffs are not entitled to discover any document (or portion thereof) that involves any security other than TASER, even if that document specifically addresses a claim or defense in this case.  Defendants' claim that documents discussing a specific security other than TASER has "no relevance to this litigation."  Defendants' Brief at 2.  Defendants are incorrect.

First, Plaintiffs' RICO claim alleges that the Defendants have engaged in a "pattern" of unlawful abusive naked short sales and market manipulation.  *See* Sixth Amended Complaint ¶¶ 93-132.  Under well established Georgia RICO law, evidence that a defendant engaged in the ***same or similar misconduct (i.e., abusive naked short sales) against victims <u>other than the plaintiff</u>*** is not just discoverable, but admissible to prove the pattern element of Plaintiffs' RICO claim.  *See* Section

---

[1] Plaintiffs' Motion to Compel involves a subject matter for which the Defendants are withholding documents.  Because the motion involves a subject matter, it applies to all discovery that Plaintiffs have served.  For that reason, Plaintiffs will not burden the Court by reciting verbatim each and every document request it has served.  If the Court would like a copy of Plaintiffs' document requests or other discovery, Plaintiffs will be glad to provide them.

718795.1

III(A). Indeed, Georgia law is clear that an illegal act directed at a victim **_other than the plaintiff_** constitutes a predicate act under Georgia's RICO statute: "There is no requirement that plaintiff suffer direct harm from each and every alleged predicate act introduced to show a pattern of racketeering activity." *InterAgency, Inc. v. Danco Fin. Corp.*, 203 Ga. App. 418, 424 (1992). For that reason, Georgia courts have recognized that "a RICO claim . . . by its very nature often requires proof of dealings with individuals and entities not named as parties to the suit on trial." *Id.* at 423. Thus, in the context of this case, if Plaintiffs can show that the Defendants also engaged in abusive naked short selling with respect to a security other than TASER, that conduct would demonstrate both a pattern of racketeering and constitute a predicate act.

Second, even if Plaintiffs did not assert a RICO claim, documents involving non-TASER securities are discoverable for several reasons, including:

(1)   Defendants contend that their conduct was neither intentional nor malicious.[2] Emails and other documents showing that the Defendants engaged in abusive naked short sales of TASER *after* being warned and sanctioned by regulators for engaging in similar conduct with respect to other securities is relevant to disprove that defense and establish their intent.

---

[2] *See, e.g.,* Answer of Bear Stearns Entities, Twelfth, Thirteenth and Fourteenth Affirmative Defenses. Each of the other defendants raised the same affirmative defense.

718795.1

3

(2) Defendants contend that any failure to deliver TASER stock was inadvertent or in error. Evidence that defendants consistently failed to deliver other securities is relevant to disprove that defense.

(3) Defendants contend that their conduct was "in full compliance with applicable federal laws and regulations."[3] Emails and other documents showing or discussing the illegality of abusive naked short selling (even if in the context of a non-TASER security) are relevant to disprove that defense.

(4) Defendants contend that abusive naked short selling does not cause harm.[4] Emails and other documents stating that abusive naked short selling causes a stock's price to fall or other harm (even if in the context of a stock other than TASER) are relevant to disprove that defense.

(5) Defendants contend that they "acted in good faith in conformity with the rules, regulations and pronouncements of the SEC."[5] Emails and other documents discussing how abusive naked short selling violates SEC rules (including agency investigations and sanctions relating to other stocks) are relevant to disprove that defense.

---

[3] *See, e.g.,* Answer of Bear Stearns Entities, Thirteenth Affirmative Defense. Each of the other defendants raised the same affirmative defense.

[4] *See, e.g.,* Answer of Bear Stearns Entities, Ninth and Tenth Affirmative Defenses (stating that plaintiffs cannot establish "injury in fact" and that "plaintiffs were not damaged by Bear Stearns Entities' conduct"). Each of the other defendants raised the same affirmative defense.

[5] *See, e.g.,* Answer of Bear Stearns Entities, Twelfth Affirmative Defense.

718795.1

4

(6)   In a civil case, same or similar conduct evidence can be used to show "a general practice or course of conduct or display intent, motive, knowledge or bad faith." *Kent v. White*, 238 Ga. App. 792, 794 (1999).

For these reasons, documents involving non-TASER securities are not only relevant, but potentially critical to this case. This is perhaps best shown by example. Through searches of public records, Plaintiffs have identified instances in which the Defendants have been sanctioned by regulators for engaging in precisely the type of conduct alleged here. For example, in 2006, Credit Suisse and Goldman Sachs were fined $600,000 for, *inter alia*, "accepting short sale orders and effecting those orders without having borrowed securities," for engaging in short sales "when [they] did not know or have reasonable grounds to believe that [they] would be able to deliver securit[ies] on the date deliver was due," for improperly marking sell orders and for "failing to provide appropriate procedures of supervision and control." *See* Exhibit A.

According to Defendants, these sanctions "have no relevance to this litigation." Defendants' Brief at 2. That is incorrect. For one, the conduct underlying the sanctions itself constitutes predicate acts regardless of which security was involved. *See* Section III(A). Further, there are undoubtedly emails and other documents relating to these sanctions that are relevant to this case. For example, there are likely emails from regulators informing the Defendants that this

type of conduct is illegal (disproving the defense that the conduct is legal or that the Defendants "acted in good faith" believing the conduct was permissible). There may also be emails from the regulators discussing how the Defendants' conduct harmed the stock at issue (emails that would tend to disprove Defendants' claim that this conduct is harmless). Finally, there may be internal emails evidencing a Defendant's decision to continue the behavior because the revenues they stood to gain far exceed any likely fine (emails showing malice and the need for punitive damages). Or, even if there are no emails discussing a decision to continue the behavior, these sanctions and accompanying emails are relevant to show that the Defendants knowingly and intentionally continued to engage in this conduct after expressly being told by regulators that it is illegal.

As this one example shows, conduct relating to non-TASER securities is clearly reasonably calculated to lead to the discovery of admissible evidence and thus discoverable in this case. Allowing Defendants to withhold this evidence would not only unfairly prejudice Plaintiffs, but likely constitute reversible error.

Finally, Defendants suggest that providing evidence of involving non-TASER securities would require a burdensome review of documents relating to every short sale transaction in America. This claim is also incorrect. As explained below, Plaintiffs and all Defendants (except UBS) have already negotiated the scope of the documents that each defendant will review. ***If the Court grants***

718795.1

6

*Plaintiffs' Motion, the Defendants will <u>not</u> be required to review a single document beyond what they have already agreed to review*. The only question presented here is whether documents identified in that review that pertain to the improper short selling of non-TASER securities will be placed in the "produce" pile or the "nonresponsive" pile.

## II. Defendants Ignore The Standard for Discovery.

The Defendants' response only contains one argument – relevance. Defendants, however, ignore O.C.G.A. § 9-11-26 which describes the proper scope of discovery:

> Parties may obtain discovery regarding any matter, not privileged, **which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party**. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

O.C.G.A. § 9-11-26(b)(1) (emphasis added).

Rather than focus on this discovery standard, defendants have raised an assortment of other objections to plaintiffs' document requests, including that: (1) plaintiffs lack standing to request documents concerning non-TASER securities; (2) RICO does not apply to the conduct at issue (an argument they already lost in their motion to dismiss); (3) that the discovery sought *could* yield the production of inadmissible documents and (4) plaintiffs should not be entitled to this discovery

until they identify the specific misconduct that they believe the documents will uncover.  Defendants' arguments range from attempts to relitigate their motion to dismiss to speculation about what the requested documents might or might not contain.  *None* of these arguments have any bearing on whether the requested documents are "relevant to the subject matter" or "relate[] to the claim or defense" of any party in this case.  Defendants ignore the relevant standard because they have no legitimate basis to claim that the documents are irrelevant.[6]

### III.   Evidence Concerning Non-TASER Securities Is Relevant.

#### A.   The Evidence Is Relevant to Plaintiffs' RICO Claim.

Defendants' claim that information about non-TASER securities has "no relevance to this litigation" ignores Plaintiffs' RICO claim and is belied by the RICO statute itself.  To prove their RICO claim, Plaintiffs must show that defendants engaged in a pattern of racketeering activity.  O.C.G.A. § 16-14-4.  The Georgia RICO statute sets out what activity may constitute a "pattern of racketeering activity" for the purpose of establishing a RICO claim:

---

[6] Defendants make several claims about what the requested documents do *not* contain:  For example, "[T]he document requests at issue . . . do not bear on whether any Defendant engaged in *criminal* conduct." Defendants' Brief at 9 (emphasis in original).  That is incorrect.  Documents showing that defendants engaged in unlawful and improper short selling *are* evidence of criminal conduct, particularly documents showing that defendants knowingly and intentionally engaged in improper short sales.

718795.1

8

> 'Pattern of racketeering activity' means: Engaging in at least two acts of racketeering activity . . . that have the ***same or similar intents, results, accomplices, victims <u>or</u> methods of commission*** . . .

O.C.G.A. § 16-14-3(8)(A) (emphasis added).

In enacting the RICO statute, the General Assembly intended to punish defendants who engage in multiple acts of certain types of illegal conduct and it broadly defined the pattern requirement in order to accomplish that objective. It would be contrary to the purpose and intent of the statute to narrowly define discovery and to preclude plaintiffs from obtaining pattern evidence. For that reason, courts have consistently permitted discovery of evidence of "similar…methods of commission" of unlawful acts, even if those acts were directed at persons other than the plaintiff.

For example, in *Interagency v. Danco Financial Corp.*, 203 Ga. App. 418, the plaintiff brought a RICO claim alleging that the defendant made numerous misrepresentations with respect to the sale of a business. To demonstrate a pattern and the existence of predicate acts, the plaintiff introduced ***at trial*** evidence that the defendant made similar misrepresentations to other persons who were not parties to the lawsuit. *Id.* at 423.

On appeal, the defendant argued that admitting evidence of similar conduct with respect to other victims was improper because they occurred after the lawsuit was filed and because "the acts did not demonstrate any injury or harm to

718795.1

9

plaintiff." *Id.* at 422. The Georgia Court of Appeals rejected that argument, holding that evidence relating to other victims was relevant to the RICO claim "which by its very nature often requires proof of dealings with individuals and entitles not named as parties to the suit on trial." *Id.* at 423. The Court continued:

> ***[T]here is no requirement that plaintiff suffer direct harm from each and every alleged predicate act introduced to show a pattern of racketeering activity.*** The direct involvement with plaintiff is not the interrelatedness or "interconnectedness" required by the Georgia statute. It is the "pattern" which must be shown, . . . not that plaintiff was injured by each incident of which the pattern was comprised.

*Id.* at 424 (emphasis added) (citations omitted). Of course, if the evidence was admissible at trial, it certainly is discoverable.

Similarly, in *Jones v. Childers*, 18 F.3d 899 (11th Cir. 1994) the plaintiff brought securities fraud claims and introduced evidence that the defendant committed similar fraud with respect to other victims who were not parties to the suit. The Court held that while the evidence of multiple wrongful acts committed against the plaintiffs was <u>not</u> enough to establish a pattern, the plaintiff was nonetheless able to establish a RICO pattern by relying on evidence of wrongful conduct aimed at other victims:

> While, as discussed above, the two violations perpetrated against [the plaintiffs] do not, in and of themselves, provide a sufficient basis for finding 'continuity,' ***the totality of the evidence as to [the defendant's] business practices with respect to [other clients] sufficiently establishes a pattern of criminal activity***.

718795.1

10

*Id.* at 913 (emphasis added).  The Court also held that "the other sales [to other victims] constituted *predicate acts* on the same level as the sale of Telron I and II to the [plaintiffs]." *Id.* at 914 (emphasis in original).

In *Mosley v. State*, 253 Ga. App. 710 (2002), a securities salesperson was convicted of RICO violations based on violations of the Georgia Securities Act. The conviction was based on evidence that the defendant had committed a pattern of predicate acts against multiple victims (as opposed to a pattern of conduct aimed at the same person or involving the same security).  The Court of Appeals affirmed the conviction, affirming the finding that the offenses against multiple victims constituted a "pattern of racketeering activity." *Id.* at 712.  Likewise, in *Saxon v. State*, 266 Ga. App. 547 (2004), the Court of Appeals affirmed the RICO conviction of two defendants based on crimes committed against multiple victims.

In short, Georgia law is clear that evidence of similar conduct (i.e., abusive naked short selling) aimed at other securities is relevant to prove both a pattern of racketeering activity and the existence of predicate acts.  Thus, abusive naked short selling aimed at other victims (i.e., securities) is clearly relevant to this case.

718795.1

11

## B. Evidence Concerning Non-TASER Securities Is Relevant to Prove Plaintiffs' Other Claims and Refute Defendants' Defenses.

There are numerous additional reasons why documents involving securities other than TASER are discoverable.

First, documents relating to other securities are relevant to refute many of the Defendants' affirmative defenses. O.C.G.A. § 9-11-26 (permitting discovery into the "claim *or defense* of any party"). For example, Defendants contend that their conduct was done "in full compliance with applicable federal laws" and that they "acted in good faith in conformity with the rules, regulations and pronouncements of the SEC."[7] Emails showing that the Defendants were sanctioned by the SEC and other regulators for engaging in the very conduct at issue here is relevant to disprove those claims. The fact that sanctions deal with a security other than TASER is irrelevant – the pertinent fact is that the Defendants were sanctioned for the **specific conduct** which Defendants now contend is legal. Moreover, the fact that the Defendants continued to engage in the specific conduct even after being put on notice that it was illegal (and after being fined for it) demonstrates the criminal intent underlying Plaintiffs' RICO claim and malice warranting punitive damages.

---

[7] *See, e.g.,* Answer of Bear Stearns Entities, Twelfth, Thirteenth and Fourteenth Affirmative Defenses.

718795.1

12

Second, Defendants raise an affirmative defense that abusive naked short selling does not cause harm.[8]  Correspondence to or from the SEC discussing how abusive naked short selling is harmful is directly relevant to disprove that claim.  Again, it is the conduct that is important, not the security that was victimized by it.

Third, Defendants contend that any abusive naked short selling was inadvertent or a trading error.  Evidence that the Defendants engaged in abusive naked short selling with respect to other securities is relevant to disprove that defense.  For example, according to the SEC, 99% (by dollar value) of all trades should settle on time.  *See* SEC Exchange Act Release No. 34-58774, 73 Fed. Reg. 61666, 61668 n.9.  Yet, Defendants have already produced extensive **redacted** lists that appear to show that the Defendants consistently fail to settle trades of non-TASER securities on time.  Plaintiffs believe that if these lists are unredacted (as would occur if the Court grants Plaintiffs' motion), the lists will show that Defendants' failure to deliver TASER shares is not an isolated incident, but rather a pattern for purposes of RICO and an intentional course of conduct.  Indeed, "[f]requently the defendant's state of mind regarding one act is illustrated by other acts of a similar nature that indicate a general practice or course of conduct or display intent, motive, knowledge or bad faith." *Kent v. White*, 238 Ga. App. 792,

---

[8] *See, e.g.,* Answer of Bear Stearns Entities, Ninth and Tenth Affirmative Defenses (stating that plaintiffs cannot establish "injury in fact" and that "plaintiffs were not damaged by Bear Stearns Entities' conduct").

718795.1

13

794 (1999).  To that end, "similar transaction" evidence is routinely admitted by Georgia courts to show intent or course of conduct." *See, e.g.*, *Pareja v. State*, No. S09G0960, 2009 WL 3517541 (Ga. Nov. 2, 2009) (affirming admissibility of similar transaction evidence); *Payne v. State*, 285 Ga. 137 (2009) (same); *Kellett v. Kumar*, 281 Ga. App. 120 (2006) (same); *Wood v. D.G. Jenkins Homes,Inc.*, 255 Ga. App. 572 (2002) (trial court abused its discretion in excluding "similar transaction" evidence); *David v. State*, 264 Ga. App. 128 (2003) (affirming admissibility of similar transaction evidence in a RICO case).

Fourth, evidence that the Defendants knew that abusive naked short selling was illegal and continued to engage in that conduct is relevant to show willfulness, bad faith and malice warranting punitive damages.  *See Tookes v. Murray*, 297 Ga. App. 765, 768 (2009) (punitive damages require a showing of "willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the resumption of conscious indifference to consequences").

**IV.   Granting Plaintiffs' Motion Will Not Increase Defendants' Burden.**

Defendants imply that Plaintiffs' discovery is unduly burdensome and amount to an audit of the all the short sales in America.  Again, that is incorrect.

After much negotiating, Plaintiffs and all of the Defendants (except UBS) have reached an agreement as to the set of documents that Defendants will review for potential production in this case.  Specifically, the parties have agreed that the

718795.1

defendants will search (1) a limited set of agreed-upon employees' emails (2) and will conduct that search using focused keywords.  In other words, instead of reviewing all of the emails in an employees' email box, Defendants will review only those emails containing agreed-upon terms that are relevant to the claims and defenses in this case (e.g., terms such as "short and abusive").  Significantly, in their motion to compel, Plaintiffs are not asking the defendants to expand or change that agreement.  Instead, Plaintiffs are simply requesting that if a Defendant locates a responsive document in its review of the agreed-upon documents, that the Defendant not be permitted to withhold that document from production on the ground that it involves a specific security other than TASER.  **Put differently, granting Plaintiffs' motion will not require Defendants to review any more documents than they have already agreed to review**.

In fact, rather than creating an extra burden, Plaintiffs' motion should accelerate discovery in this case.  Defendants have undertaken to redact all non-TASER-specific information from their document production.  If Plaintiffs' Motion is granted, the Defendants will not have to assume substantial time and resources redacting virtually every document they produce in this case.

Respectfully submitted this 3rd day of December, 2009.

/s/ Steven Rosenwasser
John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax


James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas  77002
(713) 659-7617 Tel.
(713) 659-7641 Fax
(admitted pro hac vice)

***ATTORNEYS FOR PLAINTIFFS***

718795.1

16

# CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the foregoing **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** was served via electronic file and serve which will provide notice to the parties as follows:

**Attorneys for Defendants:**
Richard H. Sinkfield, Esq.
Rogers & Hardin
2700 International Tower, Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA  30303-1601

**Attorneys for Banc of America Securities, LLC:**
Andrew J. Frackman, Esq.
Benjamin D. Petrosky, Esq.
Brendan J. Dowd, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036

**Attorneys for Morgan Stanley & Co. Incorporated:**
Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
David B. Steinberg, Esq.
Melissa T. Aoyagi, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017

718795.1

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022

**Attorneys for Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
Paul M. Eckles, Esq.
Shepard Goldfein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY  10036

Richard S. Horvath, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center
Suite 3800
San Francisco, CA  94111-4144

This 3rd day of December, 2009.

/s/ Steven Rosenwasser
Steven J. Rosenwasser
Georgia Bar No. 614908

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA  30309-3417
Tel.: (404) 881-4100
Fax: (404) 881-4111

718795.1

19