# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

TASER INTERNATIONAL, INC., *et al.*,   )
                                     )     Case No.: 1:10-CV-03108-JEC
      Plaintiffs,          )
                                     )
v.                                )     [On removal from the State
                                   )     Court of Fulton County,
MORGAN STANLEY & CO., INC., *et al.*,  )     Georgia Case No.:
                                   )     2008-EV-004739-B]
      Defendants.        )
_____)

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS BANC OF AMERICA SECURITIES, LLC; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC; AND MORGAN STANLEY & CO., INC. TO RESPOND TO INTERROGATORIES AND PRODUCE DOCUMENTS FROM TRADERS AND SALES PERSONNEL

This case, which has been pending since May 2008,[1] is about Defendants'

engaging in, facilitating and profiting from illegal and/or manipulative trading in

TASER securities.  Although this case focuses on Defendants trading of TASER

securities, Defendants Banc of America Securities, LLC ("BAS"); Merrill Lynch,

Pierce, Fenner & Smith, Inc. ("Merrill Lynch"); and Morgan Stanley & Co., Inc.

("Morgan Stanley") (collectively, "Defendants") refuse to search for or produce

---

[1] Defendants removed the case to this Court after it had been pending in the State
Court of Fulton County for over two years.  Plaintiffs do not believe that the
removal of this action was proper.  Plaintiffs do not consent to removal or the
subject matter jurisdiction of this Court.

documents from their own employees who traded TASER, even though they admit that these individuals have responsive information.[2]  In fact, Defendants go so far as to refuse to even identify the employees who traded in TASER.  Instead, they take the circular (and legally unfounded) position that before any traders or sales personnel are identified or any documents produced, Plaintiffs must first prove, without discovery from the traders or sales personnel, that the unidentified traders or sales personnel engaged in specific illegal conduct concerning TASER.

In effect, Defendants want Plaintiffs to prove the entirety of their case as a precondition to certain merits discovery.  But, this is not how discovery works and Defendants cannot be permitted to create artificial barriers to relevant information. The Court should compel Defendants to: (1) search for and produce documents responsive to Plaintiffs' discovery requests from certain traders and sales personnel in TASER; (2) identify their traders and sales personnel who engaged in or facilitated TASER transactions; and (3) award Plaintiffs their fees and expenses associated with this Motion.

---

[2] Plaintiffs are negotiating with Defendants Goldman Sachs & Co. and Goldman Sachs Execution and Clearing, LP (collectively, "Goldman Sachs") regarding the same issues.  The parties have not reached an agreement, but because the negotiations are still active and in an attempt to resolve this discovery dispute without Court intervention, Plaintiffs are not currently moving as to Goldman Sachs.  However, if Plaintiffs and Goldman Sachs do not reach an agreement on the issues, Plaintiffs reserve the right to supplement this motion as to Goldman Sachs.

825644.1

## FACTUAL BACKGROUND

Plaintiffs allege Defendants engaged in, facilitated, and profited from illegal conduct concerning transactions in TASER securities[3] including by engaging in abusive naked short selling.  Defendants reaped profits from their scheme through trading on their own behalf (known as "proprietary trading"),[4] and by earning fees, commissions, interests, and other revenues facilitating, executing and/or clearing illegal transactions in TASER for their customers.  Plaintiffs specifically allege that Defendants, among other things:

- "enter[ed] into fictitious or sham option contracts to conceal naked short sales," Complaint, ¶ 8(c);

- "transact[ed] illegal stock sales off the primary market and outside of the DTCC system," *id.* ¶ 8(h);

- "facilitate[ed], engage[ed] in and/or permit[ed] clients with a pattern or history of fails or other improper conduct to continue short sales or related transactions," *id.* ¶ 8(r);

---

[3] *See* Seventh Amended Complaint ("Complaint") ¶ 1.  Plaintiffs' allegations involve not only TASER common stock but other transactions involving other types of TASER securities, including options and derivatives.  *See id.* ¶ 8. The term "securities" as used herein includes TASER common stock, options and derivatives.

[4] As the Defendants agree, proprietary trading refers to trading activities Defendants execute in their own accounts for the purpose of generating profits for the Defendant by taking a position in the financial market.  *See, e.g.*, Banc of America Securities First Set of Requests for Admission to Each Plaintiff, at 4, attached as Exhibit A.

- "engag[ed] in short sales with existing failure to deliver positions or when otherwise knowing that timely delivery would not occur," *id.* ¶ 8(s);

- "engag[ed] in unlawful conversions, reverse conversions, flex options, exits or other transactions," *id.* ¶ 8(u);

- "short [sold] TASER stock in their own proprietary accounts, giving them a financial interest in lowering the stock's price," *id.* ¶ 15(a);

- "earn[ed] profits through unlawful transaction fees, including fees relating to purchases, sales, loans, options and conversions," *id.* ¶ 15(c);

- "knowingly and intentionally accepted and facilitated short sales of publicly-traded securities, including TASER stock, for their clients at times when the defendants neither possessed nor intended to obtain through borrowing sufficient stock to loan to those clients for delivery by the settlement date," *id.* ¶ 79(i);

- "acted improperly, unlawfully and illegally . . . to the extent they unlawfully allowed their clients to claim the bona fide market maker or options market maker exception," *id.* ¶ 95; and

- "reaped illicit profits through, among other things, charging fees and interest for 'loans' of TASER stock that are never made, **obtaining greater profits on their own proprietary short sales and charging transaction fees for trades that could not lawfully be accomplished**;" *id.* ¶ 98 (emphasis added).

Each of these allegations specifically implicates Defendants' traders and sales personnel who facilitated orders on behalf of customers.  Accordingly, Plaintiffs' first discovery, served in 2008, called for the production of documents relating to traders and sales personnel as well as Defendants' motives and profits

for engaging in such improper activity.  The requests sought, among other things, documents concerning: "short sales of TASER securities;"[5]  "the delivery of TASER securities or the short sale of TASER securities" (*id*. at No. 27); "any irregular stock trading and/or irregular share accounting in TASER securities" (*id*. at No. 34); and "actual market trading in TASER securities as compared with actual settlements of TASER securities" (*id.* at No. 35).   Plaintiffs' subsequent discovery requests also implicated traders and sales personnel.  These document requests sought, among other things, "[a]ll documents discussing the potential impact or effect of . . . abusive naked short selling;"[6] "all documents concerning, discussing, relating to or referencing abusive naked short selling;"[7] and "all documents relating to any examination, inquiry or investigation related to the conduct at issue."[8]

---

[5] Plaintiffs' First Requests for Production of Documents to Each Defendant ("First Requests") No. 17, attached as Exhibit B.

[6] Plaintiffs' Second Requests for Production of Documents to Each Defendant ("Second Requests") No. 16, attached as Exhibit C.

[7] Plaintiffs' Third Requests for Production of Documents to Each Defendant ("Third Requests") No. 1, attached as Exhibit D.

[8] Plaintiffs' Fourth Requests for Production of Documents to Each Defendant ("Fourth Requests") No. 1, attached hereto as Exhibit E.

Plaintiffs also served interrogatories[9] seeking: "the name and title of each person with a specific responsibility for TASER stock," (Agreement at 2); "the person(s) responsible for overseeing the relevant trading desk(s) [which traded TASER securities for proprietary accounts]," (*id.* at 3); and "the person primarily responsible for overseeing any company trading desks that traded TASER securities, options, or derivative contracts," (*id.* at 5).

### The Parties' Agreement

Rather than insisting that Defendants provide all information from its proprietary traders and personnel who facilitated client orders at the onset of the case, Plaintiffs compromised and agreed to permit Defendants to first produce data and later address the discovery concerning traders and sales personnel. Under the compromise, among other things, Plaintiffs would receive and review trading data first and then would have the opportunity to seek further information from Defendants on a wide variety of trader and sales personnel-related topics, including

---

[9] Plaintiffs served the interrogatories in May 2008. *See* Plaintiffs' First Interrogatories to Each Defendant, attached as Exhibit F. Defendants objected to the initial format of the Interrogatories, and the parties later compromised on substitute interrogatories, including those identified above. The interrogatories Defendants answered are contained within the parties' August 12, 2009 Agreement. *See* August 12, 2009 Agreement, attached as Exhibit 1 to the Affidavit of Elizabeth Eager ("Eager Aff.") which is attached hereto as Exhibit G.

825644.1

information regarding specific trades, traders, accounts, desks or certain time periods.  In particular, the parties agreed that

> after Plaintiffs have received and reviewed trading and other data, Plaintiffs will inform Defendants of specific trades, traders, trading and/or sales personnel, trading accounts, trading desks, ***or*** trading time frames for which they seek information as to traders.

*Id.* at 2 (emphasis added).  The Agreement also mandated timeframes for when Defendants must provide this information.  Thus, if Plaintiffs requested information pursuant to the Agreement, Defendants were required to provide objections, if any, within 15 days and thereafter "confer in good faith."  *Id*. at 3.  If there was no objection, Defendants must provide the information "within 30 calendar days of receiving a request."  *Id.*

The Agreement covered both the document production and the identification of traders and sales personnel under the interrogatories.  As a result, when determining the custodians from whom Defendants' documents would be collected, the parties specifically excluded traders and sales personnel due to the Agreement.[10]  Similarly, a December 2009 stipulation regarding custodians and keywords for Defendants' document production included a provision that the

---

[10] *See, e.g.*, Aoyagi October 19, 2009 email to Rosenwasser, attached as Exhibit 2 to Eager Aff.  ("In accordance with our agreement, MSCO has not identified trading or sales personnel involved in transactions related to Taser [sic] securities, pending your review of MSCO's trading data.").

stipulation did not "affect the parties' prior agreement of August 12, 2009 as it relates to information (including emails) from individual traders."[11]

### Plaintiffs Request Information Under the Agreement

After reviewing trading data, Plaintiffs asked each Defendant for more information concerning traders and sales personnel, including:  (1) the name of the employees associated with certain identifiers used internally by Defendants; (2) the identity of Defendants' proprietary traders engaged in more than *de minimis* TASER transactions; and (3) the identity of Defendants' employees who facilitated or executed transactions on behalf of a **specific list** of Defendants' clients who appear to have participated with Defendants in illegal TASER trades.  Plaintiffs also requested that Defendants search these employees' documents and produce any responsive materials.

Defendants refused to provide the vast majority of the information requested, claiming that the Agreement somehow contained a requirement that Plaintiffs first identify specific manipulative trades before Plaintiffs could receive information and documents concerning individual employee.  It could not be clearer, however, that the Agreement contains no such requirement.  In fact, the Agreement permits Plaintiffs to seek the information regarding trading and sales

---

[11] *See* December 17, 2009 Stipulation and Order ¶ 11, attached as Exhibit H.

825644.1

personnel related to any number of items, only one of which is specific trades. *See* Exhibit 1 to Eager Aff. (Agreement) at 2-3, 5. *Id.* at 4. ("Plaintiffs will inform Defendants of specific trades, traders, trading and/or sale personnel, trading accounts, trading desks, **_or_** trading time frames for which they seek information as to traders.") (emphasis added). Accordingly, while Plaintiffs can ask for information regarding traders and sales personnel related to specific trades, **_they can also_** ask for information concerning specific traders, accounts, desks or time frames. *Id.* at 2-3, 5. Moreover, even if the Agreement did contain any such requirement, it is more than satisfied by Plaintiffs' responses to Defendants' Second Interrogatories, which contain over 170 pages of illegal and/or suspicious trades.

### _Merrill Lynch_ *Refuses to Identify Traders or Produce Documents.*

Plaintiffs first sought information concerning a group of nine traders and sales personnel from Merrill Lynch on April 20, 2010,[12] and then identified additional traders and sales personnel a month later.[13] Plaintiffs promptly responded to Merrill Lynch's questions about the traders and sales personnel and even proposed keywords,[14] but Merrill Lynch ignored Plaintiffs. Nevertheless,

---

[12] Eager April 20, 2010 email to Horvath, attached as Exhibit 3 to Eager Aff.
[13] Eager May 10, 2010 email to Horvath, attached as Exhibit 4 to Eager Aff.
[14] Eager May 13, 2010 email to Horvath, attached as Exhibit 5 to Eager Aff.

Plaintiffs continued to raise trader and sales personnel questions with Merrill Lynch, by requesting the identification of certain proprietary traders and that Merrill Lynch produce documents from employees associated with certain market participants.[15]  Although Plaintiffs again raised the issue on October 12 and October 18, 2010, Merrill Lynch's only response was to promise that it would make a proposal to Plaintiffs.[16]  Unfortunately, over a month later, Plaintiffs have yet to receive that proposal.  In the meantime, Merrill Lynch has effectively robbed Plaintiffs of seven months of time in to review pertinent documents and take discovery, giving Merrill Lynch an improper extension at Plaintiffs' expense.

### _Morgan Stanley_ _Refuses to Identify Traders or Produce Documents._

Morgan Stanley has likewise refused to identify its traders and produce their documents.  On April 20, 2010, Plaintiffs asked Morgan Stanley to identify some traders and sales personnel and produce their documents.[17]  Morgan Stanley largely ignored the question and refused to produce documents from Peter Muller, a trader who worked in an algorithmic trading group, because Morgan Stanley contends he did not make trading decisions but that they were made by a computer.  But, as

---

[15] Eager September 17, 2010 email to Elias, attached as Exhibit 6 to Eager Aff.

[16] Eager October 18, 2010 email to Elias, attached as Exhibit 7 to Eager Aff.

[17] Eager April 20, 2010 email to Wise, attached as Exhibit 8 to Eager Aff.

Plaintiffs noted, "individuals create, modify and review the algorithms that are used."[18]  Morgan Stanley never responded.

Morgan Stanley also refuses to produce information concerning proprietary traders in TASER even though it has no objection to providing that information and even agreed to identify those traders five months ago.[19]  *Id.*  In September, Plaintiffs requested the identity of proprietary traders and sales personnel and traders overseeing the accounts of certain market participants, specifying time periods and proposing keywords for a search.[20]  Morgan Stanley failed to respond. Although Plaintiffs have repeatedly sought to confer on these issues,[21] Morgan Stanley simply refuses to discuss these matters.

### <u>*BAS*</u> *Refuses to Identify Its Traders Or Produce Their Documents.*

Although BAS has engaged in some substantive discussions regarding the production of trader and sales personnel documents, it refuses to produce documents unless Plaintiffs identify illegal trades.  Plaintiffs began conferring with BAS regarding traders and sales personnel in April, requesting the identification of employees associated with three identifiers, their documents and documents from

---

[18] Eager May 13, 2010 email to Wise, attached as Exhibit 9 to Eager Aff.

[19] Eager June 11, 2010 email to Wise, attached as Exhibit 10 to Eager Aff.

[20] Eager September 17, 2010 email to Wise, attached as Exhibit 11 to Eager Aff.

[21] *See, e.g.*, Eager October 12, 2010 email to Wise, attached as Exhibit 12 to Eager Aff.

trader Kevin Sharkey.[22]  A month later, Plaintiffs suggested keywords for the

search.[23]  In July, Plaintiffs requested BAS produce documents from traders and

sales personnel who handled certain market participants' transactions in TASER.[24]

Although the parties continued to confer on this issue through the summer and

Plaintiffs narrowed the list of market participants, [25] last month BAS declared an

impasse.[26]  At this point, after six months of negotiation, BAS claimed it would not

produce documents unless Plaintiffs first identified first suspicious trades.

Although Plaintiffs have identified numerous suspicious trades in response to

Defendants' Second Interrogatories, BAS contended those trades were not

suspicious and has not responded to Plaintiffs' requests to confer.

    In sum, the Defendants have violated the Agreement, refused to confer and

Plaintiffs are left with no choice but to seek court intervention to obtain documents

and information they are unquestionably entitled to receive.

---

[22] Eager April 20, 2010 email to Dowd, attached as Exhibit 13 to Eager Aff.
[23] Eager May 13, 2010 email to Elias, attached as Exhibit 14 to Eager Aff..
[24] Eager July 30, 2010 email to Elias, attached as Exhibit 15 to Eager Aff.
[25] Eager August 20, 2010 email to Elias, attached as Exhibit 16 to Eager Aff.
[26] Eager October 18, 2010 email to Elias, attached as Exhibit 7 to Eager Aff.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    Defendants Are Required To Produce Documents From Traders And Sales Personnel Who Engaged In Non De-Minimis Trading In TASER Securities, Including Options And Derivatives.**

Pursuant to the Agreement, Plaintiffs identified certain traders or sales personnel[27] and asked Defendants to produce their documents responsive to existing requests for production.[28]  Defendants refused, even though it is undisputed that these traders have responsive information because they ***facilitated, executed and/or cleared trades in TASER*** and their activities underlie the Complaint's allegations.

The Agreement requires the provision of information, including documents, in response to Plaintiffs' inquiries.  In particular, Defendants were required to provide any objections to the production of documents within fifteen days after receiving Plaintiffs' request, or "provide the non-objectionable, responsive

---

[27] These traders include Kevin Sharkey at BAS; John Panichi and Frank Laino at Merrill Lynch; and Peter Muller at Morgan Stanley.

[28] As explained above, documents from traders are responsive to a number of documents requests Plaintiffs have served.  To conform with this Court's Local Rules, Plaintiffs incorporate by reference the document requests contained within: the First Requests, Second Requests, Third Requests, and Fourth Requests. Defendants responses, including their objections, to the First Set of Document Requests are attached as Exhibits I-K (BAS, Merrill, and Morgan respectively), to the Second Set of Document Requests are Exhibits L-N; to the Third Set of Document Requests are Exhibits O-Q; and to the Fourth Set of Document Requests are Exhibits R-T.

information within 30 calendar days of receiving a request for which there is no

objection or the resolution of an objection to a request."  Agreement at 3, Eager

Aff. Exhibit 1.  Defendants have failed to meet the terms of the Agreement and

their excuses for failing to produce those documents are not proper objections.

A.     **Documents From Traders And Sales Personnel Have Not Previously Been Produced.**

Defendants will likely try to evade the Agreement's requirement that they

produce trader and sales personnel documents by claiming that it would be

duplicative of prior discovery.  Notwithstanding the fact that Defendants ***agreed to***

***produce documents from traders and sales personnel identified by Plaintiffs***, this

argument is unfounded:  the documents have not yet been produced.  Defendants'

current document productions include few, if any, emails sent from the traders and

sales personnel Plaintiffs identified:

| Emails Sent From Identified Traders in Existing Document Production[29] | | |
|---|---|---|
| Trader | Defendant | Emails From Trader in Current Production |
| Kevin Sharkey | BAS | 3 |
| John Panichi | Merrill Lynch | 0 |
| Frank Laino | Merrill Lynch | 0 |
| Peter Muller | Morgan Stanley | 0 |

---

[29] *See* Eager Aff. ¶¶ 19-20 (describing how information was compiled).

While Defendants will likely point to the volume of their prior productions, because the traders and sales personnel are likely to possess responsive documents and these documents are different from the documents already produced, the Defendants should be required to produce the documents.

### B.   Defendants' Only Objection To Producing Documents Is Based Upon An Improper Reading Of The Agreement.

Defendants refuse to produce trader and sales personnel documents to Plaintiffs based upon a condition that is not part of the Agreement.  Specifically, Defendants allege that the Agreement requires Plaintiffs to identify a manipulative trade before Defendants are required to produce documents. But, the Agreement contains no such requirement.  Rather, while the Agreement *permits* Plaintiffs to ask for information regarding certain trades, Plaintiffs are also permitted to seek information regarding "traders, trading and/or sales personnel, trading accounts, trading desks, or trading time frames."  There is simply no requirement anywhere in the Agreement that suspicious trades need be identified prior to Plaintiffs receiving information concerning traders or sales personnel.  And, even if such a requirement did exist, Plaintiffs have more than met it by providing over 170 pages

detailing the Defendants' suspect trades.[30]   There can be no question that

Defendants' traders and sales personnel engaged in improper activities and their

documents are highly relevant to this lawsuit.

### C.    Plaintiffs' Proposal For Trader And Sales Personnel Documents.

Plaintiffs simply ask that Defendants search for documents from traders,

sales personnel (and their supervisors) during time periods when they or certain of

their clients engaged in more than *de minimis* trading in TASER securities.[31]   As

used in Plaintiffs' proposal, "TASER securities" means all transactions in TASER,

including common stock, options, conversions, and derivatives, a definition

designed to encompass all the trades through which Defendants harmed Plaintiffs.

The search should include documents related to traders who were involved in all

TASER trades, including algorithmic trades, because these traders developed the

algorithms and oversaw trading in the accounts, just like regular traders.  In the

event that a trader or sales person responsible for a client who directly entered its

own trades did not enter *any* transactions in TASER securities, Defendants need

not search for documents from that person if they provide a certification that all of

---

[30] *See* Plaintiffs' Amended Responses to Defendants' Second Set of Interrogatories
and Third Requests for Production of Documents to All Plaintiffs (Dkt. Nos. 44-7,
44-8) (Exhibit 2 to Affidavit of Elizabeth G. Eager dated October 19, 2010).

[31] Plaintiffs have identified specific clients for each Defendant and request each
Defendant produce documents from the trader(s) responsible for that account.  *See*
Eager Aff. Exhibits 17-19.

825644.1

the trader's TASER trades were entered into a direct market access (DMA) or similar system.

Months ago, Plaintiffs proposed keywords in order to ensure that the documents referenced TASER or directly related to Plaintiffs' allegations.  All Defendants refused to discuss the proposed keywords and should be required to apply them due to their failure to object.  Plaintiffs request that the Court compel Defendants to use the following keywords to search for their traders and sales personnel's documents:

| KEYWORDS FOR DEFENDANTS | |
|---|---|
| **Keyword** | **Relevance of Keyword** |
| TASER, TASR, 87651B104 | These keywords are TASER, its stock symbol, and its CUSIP—a unique identifier for TASER.  These keywords should capture emails discussing transactions in TASER. |
| (Reg* sho) or 3370 | These keywords refer to rules and regulations governing short sales.  Plaintiffs allege Defendants violations of Regulation SHO are a predicate act.  These keywords are designed to capture emails discussing violations of these rules. |
| (borrow or fail) w/20 negative | Plaintiffs allege Defendants intentionally failed to deliver and did not actually borrow securities when they were expensive to borrow, meaning they had a high negative rate. |
| (without or fail*) w/5 (locat* or delive* or receiv*) | Plaintiffs allege Defendants failed to obtain locates and intentionally failed to deliver securities and did not clean up failures to receive.  These keywords are designed to capture email communications about such plans. |
| Violat* | Plaintiffs allege Defendants conspired to violate the law. |

| | This keyword is designed to capture emails discussing whether conduct violates the law |
|---|---|
| Short w/20 (naked or abusive) | The scheme Plaintiffs' allege is frequently referred to as naked short selling or abusive short selling.  This keyword is designed to capture documents discussing the practice. |
| Conversion* | Plaintiffs allege that Defendants have engaged in illegal conversions and reverse conversions of TASER stock.  This conduct is currently the subject of an ongoing SEC investigation. |
| Flex* | Plaintiffs allege that Defendants have engaged in flex transactions.  This conduct is currently the subject of an ongoing SEC investigation |
| Arenstein; Aronstein; "ala trading;" Hazan; HCM; Wolfson (**Merrill Lynch only**) | These keywords refer to Merrill Lynch clients and their principles who were sanctioned for naked short selling.  The SEC is currently investigating Merrill Lynch for its dealings with Hazan and Arenstein |
| "certain threshold" or 07729 (**Merrill Lynch only**) | These keywords are the names for the ongoing SEC investigation into Merrill Lynch.  These keywords are designed to capture documents discussing the investigation |
| Testi* (**Merrill Lynch only**) | Plaintiffs have requested Merrill Lynch search this keyword for any trader who provided testimony in the SEC's investigation for 30 days before and after the testimony. |

## II.    The Court Should Compel Defendants To Identify Traders And Sales Personnel In Response To Plaintiffs' Interrogatories.

Plaintiffs served three interrogatories, Interrogatories Nos. 1 & 2, Item Nos.

3 and 4 and Interrogatory No. 5, Item No. 4 (the "Interrogatories") requesting the

identification of individuals responsible for various trading functions regarding

TASER securities, options, or derivative contracts, and the parties agreed

825644.1

Defendants would provide this information.  Agreement at 2-3, 5, Eager Aff.

Exhibit 1.  Under their Agreement, Defendants must identify persons responsive to

these Interrogatories "within 30 calendar days of receiving a request for which

there is no objection."  *Id.* at 3.  None of the Defendants have any legitimate

objection to providing responses to the Interrogatories, and each of them is in

violation of the Agreement by failing to identify the relevant traders.

Interrogatory Nos. 1 & 2, Item 3 requested: "the name and title of each

person with a specific responsibility for TASER stock" for each division,

committee, group, department or business unit identified in response to

Interrogatory No. 1.  *Id.* at 2.  In response, Morgan Stanley purported to

incorporate "General Objections" and indicated "[t]o the extent this interrogatory

seeks identification of traders or any trading and/or sales personnel, MSCO will

respond in accordance with the parties' agreement."[32]  The other Defendants raised

similar objections.[33]

---

[32] Defendant Morgan Stanley & Co. Incorporated's Responses to Plaintiffs First
Interrogatories to Each Defendant ("MSCO Interrogatory Responses"), at 14, 17
attached hereto as Exhibit U.

[33] Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated's Responses and
Objections to Interrogatories to Each Defendant ("Merrill Lynch Interrogatory
Responses") at 15-16 (purporting to incorporate general objections), attached
hereto as Exhibit V; Defendant Banc of America Securities LLC's Responses and
Objections to Plaintiffs' First Set of Interrogatories to Each Defendant ("BAS

Interrogatory Nos. 1 & 2, Item 4 asked Defendants to identify "the person(s) responsible for overseeing the relevant trading desk(s)" related to the Defendants' purchases or sales of TASER securities or derivatives.  Agreement at 3, Eager Aff. Exhibit 1.  BAS responded as follows:  "Subject to and without waiving the foregoing General Objections, which are incorporated herein by reference, [Defendant] will respond in accordance with the parties' agreement."[34]  Morgan raised a similar objection.[35]  While Merrill identified two individuals who were responsible for overseeing the Small Cap Trading Desk, it also incorporated "[g]eneral" and unidentified "specific" objections and responded "it will only identify additional traders or sales personnel in accordance with the parties' agreement."[36]

Interrogatory No. 5, Item No. 4 sought the identity of: "the person primarily responsible for overseeing any company trading desks that traded TASER securities, options or derivatives contracts."  Agreement at 5, Eager Aff. Exhibit 1.

---

Interrogatory Responses") at 12-13 (purporting to incorporate general objections) attached hereto as Exhibit W.

[34] BAS Interrogatory Responses at 15, Exhibit W.

[35] MSCO Interrogatory Responses at 17 (raising a nearly identical response which also purported to incorporate "the foregoing General Objections" which were never identified), Exhibit U.

[36] Merrill Lynch Interrogatory Responses at 19, Exhibit V.

825644.1

Defendants' responses were identical to their responses to Interrogatories No. 1 and 2, Item No. 4.[37]

### A.    Defendants' "General Objections" Are Improper.

None of the Defendants submitted any substantive objection to the Interrogatories.  All of the Defendants appear to base their refusal to answer at least in part on their "general objections," which they incorporate by reference, but do not set out specifically, in response to the Interrogatories seeking the identification of traders or sales personnel.  Such general objections are an insufficient basis upon which to withhold a response.  In the Northern District of Georgia, "the Court will ignore [general objections] unless [a] Defendant specifically asserts them in response to an interrogatory."  *Interland, Inc. v. Bunting*, No. 1:04-CV-444-ODE, 2005 WL 2414990 *5 (N.D. Ga. March 31, 2005).  Because Defendants have not asserted any specific objection to the interrogatories, each must answer.

---

[37] *See* BAS Interrogatory Responses at 24-25, Exhibit W; Merrill Lynch Interrogatory Responses at 19, Exhibit V; MSCO Interrogatory Responses at 28, Exhibit U.  Because Defendants' responses to the Interrogatories are virtually identical and based upon the same arguments, for the purposes of Rule 37.1 the reasons the Court should grant the motion for each Interrogatory are the same.

### B.     Defendants Violated The Agreement.

Under the parties' Agreement, Defendants must provide information in response to the Interrogatories.  None of the Defendants have responded to the Interrogatories even though the Agreement requires that they do so within thirty days if they have no objection.[38]  And, the Defendants do not object to identifying traders and sales personnel.  Instead, they base their refusal to respond on an argument contained nowhere within the Agreement.  Defendants contend that the Agreement somehow requires the identification of improper trades before Defendants must identify traders or sales personnel.[39]  As discussed above, however, the Agreement does not require Plaintiffs to identify any improper trades before receiving information.  Rather, Plaintiffs are entitled to, among other things, information regarding *any* of the following topics, with no precondition other than they first receive and review trading data:  "specific trades, traders, trading and/or sales personnel, trading accounts, trading desks, or trading time frames."  Agreement at 1-2, 5, Eager Aff. Exhibit 1.  The Court should compel each of the

---

[38] Agreement at 2-3, 5, Eager Aff. Exhibit 1.  In addition, each of the Defendants is under a responsibility to supplement their interrogatory responses and Plaintiffs are entitled to such supplementation.  *See Price v. Gwinnett Family Dental Care, LLC*, No. CIV. A. 1:06CV2659BBM, 2007 WL 3477771 at *1 (N.D. Ga. Oct. 31, 2007) (party that served discovery is "entitled to supplemental responses to its interrogatories.").

[39] *See* Eager May 13 letters to all three Defendants.  *See* Eager Aff. Exhibits 5, 9 and 14.

Defendants to abide by the terms of the Agreement and provide complete

responses to the Interrogatories including the following information:

| Defendant | Information Improperly Withheld |
|-----------|-------------------------------|
| Bank of America Securities | Identification of proprietary traders and traders and sales personnel associated with market participants identified in Exhibit 17 to Eager Aff. |
| Merrill Lynch | Identification of proprietary traders and traders and sales personnel associated with market participants identified in Exhibit 18 to Eager Aff. |
| Morgan Stanley | Identification of proprietary traders and traders and sales personnel associated with market participants identified in Exhibit 19 to Eager Aff.[40] |

## CONCLUSION

For the forgoing reasons, Defendants should grant Plaintiffs' Motion to

Compel.  Plaintiffs request the following specific relief:

- Order Defendants to search for and produce documents from all traders who facilitated, executed and/or cleared trades in TASER securities for proprietary accounts,[41] using the keywords contained in Exhibit 20 to Eager Aff., excluding time periods when Defendants were engaged in *de minimis* trading activities.[42]

---

[40] Each Defendant can omit traders who engaged only in *de minimis* trading in TASER securities.

[41] For purposes of the Order, "security" or "securities" should mean any note, common stock, preferred stock, treasury stock, put, call, straddle, option, bond, debenture, evidence of indebtedness, transferable share, investment contract, or. in general, any interest or instrument generally known as a "security."

[42] *De minimis* as used here in means any 30-day period where a trader responsible for proprietary and/or customer accounts traded fewer than 200 transactions in TASER securities, as defined in footnote 41, *supra*, which, in the aggregate, equal

- Order Defendants to search for and produce documents from all traders who facilitated, executed, or cleared transactions in TASER securities on behalf of the market participants identified in Exhibits 17-19 to Eager Aff., using the keywords contained in Exhibit 20 to Eager Aff., excluding time periods when Defendants were engaged in *de minimis* trading activities.

- Order BAS to search for and procedure documents from Kevin Sharkey, using the keywords contained in Exhibit 20 to Eager Aff.

- Order Merrill Lynch to search for and produce documents from John Panichi and Frank Laino, using the keywords contained in Exhibit 20 to Eager Aff., for the time periods the Senior Trader for the Small Cap Desk.

- Order Morgan Stanley to search for and produce documents from Peter Muller, using the keywords contained in Exhibit 20 to Eager Aff.

- Order Defendants produce the documents identified above within 45 days and produce a privilege log associated with the production within 75 days of the Court entering its order.

- Order Defendants to provide responses concerning traders to the following Interrogatories in Plaintiffs' First Set of Interrogatories to Each Defendant: Interrogatories No. 1 and 2, Item 3; Interrogatories No. 1 and 2, Item 4; and Interrogatory No. 5, Item 4 within 15 days.

- Order Defendants to identify all traders who facilitated, executed and/or cleared transactions in TASER securities for proprietary accounts within 15 days.

- Order Defendants to identify all traders who facilitated, executed and/or cleared transactions in TASER securities on behalf of the market participants identified in Exhibits 17-19 to Eager Aff., excluding time

---

fewer than 75,000 shares of TASER common stock and/or TASER securities equivalent to common stock.

periods when Defendants were engaged in de minimis trading activities within 15 days.

- Order that Defendants reimburse Plaintiffs for their reasonable fees and expenses in preparing this Motion.

Respectfully submitted, this 9th day of December, 2010.

*/s/ Elizabeth G. Eager*
John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Elizabeth G. Eager
Georgia Bar No. 644007
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax

James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas  77002
(713) 659-7617 Tel.
(713) 659-7641 Fax

***ATTORNEYS FOR PLAINTIFFS***

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the District Court for the Northern District of Georgia, I hereby certify that the foregoing pleading and the Brief in Support of P have been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

Respectfully submitted this 9th day of December, 2010.

<u>/s/ Elizabeth G. Eager</u>
Elizabeth G. Eager
Georgia Bar No. 644007

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

**DEFENDANTS BANC OF AMERICA SECURITIES, LLC; MERRILL**

**LYNCH, PIERCE, FENNER & SMITH, INC; AND MORGAN STANLEY &**

**CO., INC. TO RESPOND TO INTERROGATORIES AND PRODUCE**

**DOCUMENTS FROM TRADERS AND SALES PERSONNEL** was

electronically filed with the Clerk of Court using the Court's electronic filing

system which will automatically send an email notification of such filing to the

following attorneys of record who are registered participants in the Court's

electronic notice and filing system:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Dan F. Laney, III, Esq.
> Kristina M. Jones, Esq.
> Stefanie H. Jackman, Esq.
> James W. Cobb, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA  30303-1601
> rsinkfield@rh-law.com

825644.1

Further, I hereby certify that on this day, I caused to be served a true and correct copy of the foregoing by United States mail on:

**Attorneys for Banc of America Securities, LLC;**
**Merrill Lynch, Pierce, Fenner & Smith, Inc.; and Merrill Lynch**
**Professional Clearing Corporation:**
Andrew J. Frackman, Esq.
Brad Elias, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036

**Attorneys for Morgan Stanley & Co. Incorporated:**
Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa T. Aoyagi, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017

**Attorneys for Bear Stearns & Co., Inc. and Bear Stearns**
**Securities Corp.:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for Goldman, Sachs & Co. and Goldman Sachs**
**Execution & Clearing, L.P.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

825644.1

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Credit Suisse Securities (USA), LLC.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022

This 9th day of December, 2010.

/s/ Elizabeth G. Eager
Elizabeth G. Eager
Georgia Bar No. 644007