# EXHIBIT  B

138129.1

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 19976955
Date:  May 27 2008 10:29AM
Mark Harper, Clerk

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| DAVID and NATALIE BATCHELOR, DR. THOMAS and JUDITH COLLENTINE, CHARLES and SANDRA FAIRES, MASAJI and KELLY KELLEY, STEPHEN and PATRICIA LISENBY, RICHARD and CONSTANCE ALMEROTH, JAMES BAKER, JR., ROBERT BAKER, WILLIAM BURNSIDE, DAVID EVERETT, KELLIE BURNSIDE, HELEN BURNSIDE, ESTATE OF JAMES CONNELLY, DOROTHY CONNELLY, JAMES L. DUNAGIN, JR. TTEE SOUTHEAST EYE SURGERY CLINIC, INC. EMPLOYEE PSP, JAMES and EMILY DUNAGIN, RICHARD C. HASKELL, SUSAN HASKELL, RICHARD C. and AMY HASKELL, JR., MARY RICHARDSON, PAMELA LEWIS, JANE MAJ, ROZALIA MAJ, CRAIG MILLER, MARGARET ROCHE, CHET SCOTT, JOHN SCOTT, PAULA SCOTT, PETER and MICHELLE SCOTT, MARY ROSE STUCKER, DAVID and ANNE ZEBER, and MICHAEL BOYER, <br><br> Plaintiffs, <br><br> v. <br><br> MORGAN STANLEY & CO., INC., GOLDMAN SACHS GROUP, INC., BEAR STEARNS SECURITIES CORP., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., DEUTSCHE BANK SECURITIES, INC., CREDIT SUISSE USA, INC., BANC OF AMERICA SECURITIES, LLC, and UBS SECURITIES, LLC, <br><br> Defendants. | JURY TRIAL DEMANDED <br><br><br><br> **PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO EACH DEFENDANT** |

157849

Pursuant to O.C.G.A. § 9-11-26 and O.C.G.A. § 9-11-34, Plaintiffs hereby serve the following requests for production of documents, requesting that defendants Morgan Stanley & Co., Inc., Goldman Sachs Group, Inc., Bear Sterns Securities Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities, Inc., Credit Suisse USA, Inc., Banc of America Securities, LLC and UBS Securities, LLC (collectively "Defendants"), produce the documents as herein requested and described for inspection and copying at the offices of Bondurant, Mixson & Elmore, 1201 W. Peachtree St., Suite 3900, Atlanta, Georgia 30309.

## Definitions

1. "Defendants" shall mean Morgan Stanley & Co., Inc., Goldman Sachs Group, Inc., Bear Sterns Securities Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities, Inc., Credit Suisse USA, Inc., Banc of America Securities, LLC and UBS Securities, LLC, both individually and collectively, and includes any of their parents, subsidiaries, divisions, affiliates, predecessors, assigns, or successors, and any of their present or former officers, directors, trustees, employees, agents, representatives, attorneys and/or other persons acting on their behalf.

2. "TASER" shall mean Taser International, Inc., a company publicly traded on the NASDAQ stock market under the symbol TASR.

3. "Plaintiffs" shall mean the individuals identified as plaintiffs in the

157849

caption above, both individually and collectively.

4.     "DTCC" shall mean the Depository Trust and Clearing Company, as well as its parents, subsidiaries, divisions, affiliates, predecessors, assigns, or successors, and any of its present or former liquidators, officers, directors, trustees, employees, agents, representatives, attorneys and/or other persons acting on its behalf. This specifically includes, but is not limited to, the National Securities Clearing Corporation.

5.     "Security" or "Securities" mean any note, common stock, preferred stock, treasury stock, put, call, straddle, option, bond, debenture, evidence of indebtedness, transferable share, investment contract or, in general, any interest or instrument commonly known as a "security."

6.     "Documents" means all writings and things of any nature by which information may be stored or communicated, including originals and all non-identical copies and drafts thereof, in your possession, custody, or control, regardless of where located, including without limitation contracts, agreements, memoranda, notes, correspondence, letters, e-mails, communications, telegrams, teletypes, telecopies, transmissions, messages (including, but not limited to, records, reports, or memoranda of telephone calls and conversations), reports, studies, summaries, analyses, minutes, diaries, calendars, logs, notes, agenda, bulletins, notices, circulars, announcements, instructions, charts, tables, manuals,

brochures, schedules, price lists, records, orders, invoices, statements, bills, books of account, ledgers, statistical, accounting, and financial statements, forecasts, work papers, notebooks, data sheets, translations, photographs, drawings, tape recordings, computer-stored information which can be retrieved or placed into reasonably usable form, written communications and written evidence of oral communications, and any other "document" from which information can be obtained or translated, if necessary, by you through detection devices into reasonably usable form.  In all cases where originals and/or non-identical copies are not available, "documents" also means identical copies of original documents and copies of non-identical copies.

7.    "And" as well as "or" shall be construed disjunctively or conjunctively so as to bring within the scope of each request all documents, writings, and things which might otherwise be construed to be outside its scope.

8.    The use herein of the singular form of any noun or pronoun shall include, where appropriate, the plural thereof; the use herein of the masculine gender shall include, where appropriate, the feminine.

9.    The term "Person" as used herein shall mean an individual, corporation, partnership, or association, or any other business or governmental entity.

10.    The terms "record", "reflect", "relate to", and "concern" are intended

157849

to have the broadest possible scope so that all documents, including drafts, are
included if they in any way constitute, contain, pertain to, or mention the indicated
subject or document.  Whenever a document provides part, but less than all, of the
information requested, such document should be produced along with all other
related documents.

11.    The term "communication" includes, but is not limited to, all
inquiries, discussions, conversations, negotiations, agreements, understandings,
meetings, conferences, interviews, telephone conversations, correspondence, notes,
minutes, memoranda, telegrams, telexes, electronic mail messages, facsimiles,
advertisements, or other forms of oral or written intercourse, however transmitted.

12.    "Time Period" refers to January 1, 2002 to and through the present.

## Instructions

1.    Documents attached to other documents or materials shall not be
separated unless sufficient records are kept to permit reconstruction of the
grouping or context in which the document is maintained in the ordinary course of
your business.

2.    If any document which you would have produced in response to any
request was, but is no longer, in your present possession or subject to your control
or is no longer in existence, please state whether any such document is:
(1) missing or lost; (2) destroyed; (3) transferred to others; or (4) otherwise

157849

disposed of. In any such instance set forth the surrounding circumstances and any authorization for such disposition and state the approximate date of any such disposition, and, if known, state the present location and custodian of such document.

3.      These document requests specifically seek electronic records (e.g., email, word processing documents, PowerPoints, Excel spreadsheets). Plaintiff shall produce all such records regardless of whether they are maintained or stored on an active, storage or archived system. Thus, these requests specifically include, but are not limited to, active, near-line and off-line electronic records, as well as electronic records stored on back-up tapes, floppy disc, compact disc, disaster tapes, magnetic tapes or any other medium used to store or archive email. These requests also specifically include "deleted" emails that can be retrieved. Finally, these requests seek metadata.

4.      Unless expressly stated otherwise, each of the document requests seeks documents from January 1, 2003, to the present.

5.      If you contend that any document requested to be produced for inspection and copying is protected from disclosure by virtue of a privilege, provide the following with respect to each such document:

        (a)      The type of each such document (e.g., letter, memoranda, e-mail, telegram, telefax, notes, or memoranda of telephone

conversations, etc.);

(b)   The date of each such document;

(c)   The author of each such document;

(d)   The person to whom such document was directed;

(e)   The person who received a copy of each such document; and

(f)   The general subject matter of each such document.

(g)   With respect to each document which you claim is protected from disclosure by virtue of a privilege, as provided for in the foregoing instruction, it is requested that you shall provide as part of such description thereof:

(h)   Each privilege whereby you contend the contents of such document are protected from disclosure; and

(i)   Each and every fact upon which you rely to support such claim.

## Requests for Production

### 1.

All Blotters (or other records of original entry) showing itemized daily record of purchase and sales of TASER securities, including:

(a)   the account for which each such transaction was effectuated;

(b)   the name and amount of securities;

(c)   the unit and aggregate purchase or sale price;

 (d) the trade date;

 (e) and the name or other designation of the person from whom purchased or received or to whom sold or delivered.

*See* 17 C.F.R. 240.17a-3(a)(1).

2.

A memorandum of each brokerage order, and of any other instruction given or received for the purchase or sale of TASER securities, whether executed or unexecuted, and showing:

 (a) the terms and conditions of the order or instructions and of any modification or cancellation thereof;

 (b) the account for which entered;

 (c) the time the order was received;

 (d) the time of entry;

 (e) the price at which executed;

 (f) the identity of each associated person, if any, responsible for the account;

 (g) the identity of any other person who entered or accepted the order on behalf of the customer or, if a customer entered the order on an electronic system, a notation of that entry; and, to the extent feasible, the time of execution or cancellation.

*See* 17 C.F.R. 240.17a-3(a)(6).

### 3.

A memorandum of each purchase and sale of TASER securities, for the account of the member, broker, or dealer showing the price and, to the extent feasible, the time of execution; and, in addition, where the purchase or sale is with a customer other than a broker or dealer, a memorandum of each order received, showing the time of receipt, the terms and conditions of the order and of any modification thereof, the account for which it was entered, the identity of each associated person, if any, responsible for the account, the identity of any other person who entered or accepted the order on behalf of the customer or, if a customer entered the order on an electronic system, a notation of that entry. *See* 17 C.F.R. 240.17a-3(a)(7).

### 4.

Copies of confirmations of all purchase and sales of TASER securities, including all repurchase and repurchase agreements, and copies of notices of all other debits and credits for securities, cash and other items for the account of customers and partners of defendant. *See* 17 C.F.R. 240.17a-3(a)(8).

### 5.

Time-sequenced records of each transaction relating to TASER securities effected through the internal broker-dealer system, including date and time

157849

executed, price, size, counterparty identification information and method of execution (if internal broker-dealer system allows alternative means or locations for execution, such as routing to another market, matching with limit orders or executing against the quotations of the broker or dealer sponsoring the system). *See* 17 C.F.R. 240.17a-3(a)(16)(i).

6.

All ledger accounts (or other records) reflecting TASER securities in transfer. *See* 17 C.F.R. 240.17a-3(a)(4)(i).

7.

All ledger accounts (or other records) reflecting TASER securities borrowed and TASER securities loaned. *See* 17 C.F.R. 240.17a-3(a)(4)(iii).

8.

All ledger accounts (or other records) reflecting moneys borrowed and moneys loaned (together with a record of collateral therefore and any substitutions in such collateral) relating to loans made using TASER securities as collateral. *See* 17 C.F.R. 240a-3(a)(4)(iv).

9.

A securities record or ledger reflecting separately for each TASER security as of the clearance dates all long or short positions (including securities in safekeeping and securities that are subjects of repurchase or reverse repurchase

agreements) carried by defendant for its account or for the account of its customers or partners or others and showing the location of all securities long and the offsetting position to all securities short, including long security count differences and short security count differences classified by the date of the physical count and verification in which they were discovered, and in all cases the name or designation of the account in which each position is carried. *See* 17 C.F.R. 240.17a-3(a)(5).

10.

For each customer or partner of defendant, as well as for each defendant, all ledgers accounts (or other records) itemized separately of all purchases, sales, receipts and deliveries of TASER securities for such account. *See* 17 C.F.R. 240-17a-3(a)(3).

11.

A record in respect of each margin account from which has been pledged or otherwise loaned TASER securities, indicating the name and address of the beneficial owner of the account and the signature of such owner. *See* 17 C.F.R. 240.17a-3(a)(9)(iii).

12.

A record of all puts, calls, spreads, straddles and other options relating to TASER securities in which a defendant has any direct or indirect interest or which

a defendant has granted or guaranteed.  The record shall include, at a minimum, an identification of the security and the number of units involved.  *See* 17 C.F.R. 240.17a-3(a)(10).

### 13.

A record of all eligible OTC derivative instruments (as defined in Rule 3b-13), relating to TASER securities, in which the OTC derivatives dealer has any direct or indirect interest or which it has written or guaranteed.  The record shall contain, at a minimum, an identification of the security or other instrument, the number of units involved and the identity of the counterparty.  *See* 17 C.F.R. 240.17a-3(a)(10).

### 14.

All blotters (or other records of original entry) showing all receipts and deliveries of TASER securities (including certificate numbers), including the account for which each such transaction was effected, the name and amount of securities, the unit and aggregate purchase or sale price, the trade date, and the name or other designation of the person from whom purchased or received or to whom sold or delivered.  *See* 17 C.F.R. 240.17a-3(a)(1).

### 15.

All blotters (or other records of original entry) showing all receipts of cash and all other debits and credits related to TASER securities, including the account

157849

for which each such transaction was effected, the name and amount of securities, the unit and aggregate purchase or sale price, the trade date, and the name or other designation of the person from whom purchased or received or to whom sold or delivered. *See* 17 C.F.R. 240.17a-3(a)(1).

### 16.

All data dictionaries, legends or other documents necessary to read and understand any databases or other electronic data produced in response to these or any other document requests.

### 17.

All documents discussing or referencing short sales of TASER securities.

### 18.

All documents discussing or referencing the amount of short interest in TASER securities.

### 19.

All documents discussing or referencing the availability of TASER securities.

### 20.

All documents discussing or referencing the borrowing or loaning of TASER securities.

21.

All documents discussing or referencing the delivery, or failure to deliver, of TASER securities.

22.

All documents discussing or referencing the impact, effect or result of failing to deliver TASER securities by the settlement date.

23.

All documents discussing or referencing the amount of profit made or money lost through the short sale (either directly for proprietary accounts or indirectly for customers or partners) of TASER securities.

24.

All documents discussing or referencing the amount of revenues and/or profits received in connection with borrowing or loaning TASER securities.

25.

All documents, including emails, discussing whether you are in compliance with (or in violation of) all laws, rules and regulations regarding short selling, including, but not limited to, whether you are in compliance with (or in violation of) short selling laws, rules and regulations with respect to TASER securities.

26.

All documents, including emails, discussing whether you are in compliance with Regulation SHO with respect to TASER securities.

27.

All documents, including emails, sent or received from any of the defendants discussing TASER securities, including, but not limited to, the delivery of TASER securities or the short sale of TASER securities.

28.

All correspondence to and from the DTCC (including its subsidiaries and affiliates such as the NSCC) relating to or discussing TASER securities.

29.

All documents or data reflecting the number of TASER securities you loaned during the Time Period.

30.

All documents and data reflecting the number of TASER securities you borrowed during the Time Period.

31.

All documents and data discussing and/or reflecting the amount of fees, costs, interest and/or commissions you charged for the borrowing or loaning of TASER securities.

157849

32.

All analyses, ratings, recommendations, reports, memoranda, opinions or other documents created by the defendant or on the defendant's behalf discussing TASER securities.

33.

Documents reflecting any settlement services resulting from trading activity in TASER securities, including data transmitted through the Securities Industry Automation Corporation ("SAIC"), or to or from the National Securities Clearing Corporation ("NSCC"), the Depository Trust Company ("DTC"), the Depository Trust and Clearing Corporation ("DTCC"), or any market participant, exchange, clearing firm, custodian, depository, market maker or broker-dealer, both foreign and domestic.

34.

Documents discussing, referring to or evidencing any irregular stock trading and/or irregular share accounting in TASER securities.

35.

Documents or reports evidencing or discussing actual market trading in TASER securities as compared with actual settlements of TASER securities.

36.

Documents or reports discussing or evidencing suspicious transactional

157849

activity in TASER securities as defined by regulations and industry standards.

37.

Documents discussing or evidencing any actions, notice or inquiries of the ECN's participants in regards to short selling of TASER securities.

38.

Documents received from or sent to any securities agencies, bodies or regulators (including, but not limited to, the SEC or NASDAQ) relating to TASER securities.

39.

Documents reflecting or evidencing the failure to deliver shares of TASER securities (i.e, leaving the trade uncovered, naked short sale).

40.

Documents reflecting or discussing any fines or sanctions levied that in any way involve or relate to TASER securities.

41.

Documents reflecting or discussing any fines or sanctions levied relating to improperly marking short sales as longs.

42.

Documents reflecting or discussing any fines or sanctions levied relating to creating, distributing or submitted inaccurate or false short interest reports.

157849

43.

Documents reflecting or discussing any fines or sanctions levied relating to short sales, including, but not limited to, failing to deliver shares of a stock sold short (i.e., failing to cover a trade, naked short selling).

44.

Documents discussing requesting, or the failure to request, the delivery or "buy in" of TASER securities.

45.

All documents referenced in or in support of any responses you provide to interrogatories or requests for admission served by plaintiffs.

46.

All documents supporting any responses or affirmative defenses set forth in your Answer.

47.

Documents reflecting or discussing any fines or sanctions levied relating to failing to make affirmative determination prior to effecting short sales and failing to ensure compliance that delivery is made on or before the settlement date.

48.

For the time period, all documents reflecting or discussing any open, fail or fail to deliver positions with respect to TASER securities.

49.

Documents or data discussing, referencing or comparing the number of TASER securities beneficially owned relative to the number of TASER securities held at the DTCC (either at an individual company or broader level).

50.

Documents discussing or referencing large or unusually high volume trading of TASER securities.

51.

Documents discussing potential changes to SEC rules and/or regulations regarding short sales.

52.

Documents relied upon by any experts you may hire in this matter.

53.

Documents you receive from any third party relating to or arising out of this litigation.

54.

Please produce organizational charts for the Time Period.

157849

This 27th day of May, 2008.

_____

John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
(404) 881-4100

JAMES W. CHRISTIAN
State Bar No. 04228700
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas 77002
(713) 659-7616 Tel.
(713) 659-7641 Fax
(pro hac application to be filed)

John O'Quinn
State Bar No.15296000
The O'Quinn Law Firm
440 Louisiana St, Ste. 2300
Houston, Texas 77002
(713) 223-1000 Tel.
(713) 222-6903 Fax
(pro hac application to be filed)

*ATTORNEYS FOR PLAINTIFFS*

157849

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 27th day of May, 2008, a copy

of the foregoing PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF

DOCUMENTS TO EACH DEFENDANT was served on the following counsel of

record as follows:

     Goldman Sachs Group, Inc.
     Bear Stearns Securities Corp
     Merrill Lynch, Pierce, Fenner & Smith, Inc.
     Deutsche Bank Securities, Inc.
     Credit Suisse (USA) Inc.
     Banc of America Securities, LLC
     c/o Their Registered Agent
     CT Corporation System
     1201 Peachtree St., NE
     Atlanta, Georgia

     UBS Securities, LLC
     c/o Their Registered Agent
     Corporation Service Company
     40 Technology Parkway South, #300
     Norcross, Georgia 30092

                             John E. Floyd
                             Georgia Bar No. 266413
                             Steven J. Rosenwasser
                             Georgia Bar No. 614908