EXHIBIT 5

## Elizabeth G. Eager

**From:** Elizabeth G. Eager
**Sent:** Thursday, May 13, 2010 5:40 PM
**To:** Eckles, Paul M; 'Horvath, Jr., Richard S'
**Cc:** Steven J. Rosenwasser
**Subject:** Merrill Traders Follow Up

Paul and Richard,

I am writing to follow up on the issue of traders, your emails of April 30 and May 12, and our phone call yesterday.

On the call Defendants indicated that they are not making a blanket objection to producing ESI from traders. Instead, you are requesting that we meet and confer to determine the appropriate custodians and keywords. We are willing to engage in that process, but along the lines set forth within the scheduling order (i.e., all conferrals must be completed within 30 days) and documents produced in a timely manner thereafter.

In your email, you indicate that certain individuals are associated with Knight and not Merrill Lynch. Thank you for the clarification. Please identify the traders at Merrill Lynch who were responsible for and/or would have communicated with individuals at Knight regarding Knight's accounts through which TASER was traded. Plaintiffs explicitly incorporate our earlier request that for trading desks (including trading numbers and individuals) identified, you identify those assistants or other traders who worked with the person identified and produce responsive information from them as well.

On the phone call, Defendants asked the Plaintiffs to narrow the time frame for which they are requesting documents from traders. Plaintiffs have reviewed the data and made a good faith determination that at this time we cannot narrow the date range for data requested from traders. When the parties entered into the stipulation regarding identification of traders, Plaintiffs expected that defendants would comply with their obligations to produce data and that the data would be substantially complete and reliable. Instead, as laid out in Steven's May 6 email and prior communications, the data produced by Merrill, including its blue sheets, do not contain complete information and are unreliable. Accordingly, Plaintiffs cannot narrow the time frame for ESI to be searched for the traders identified. Moreover, there is no reasonable basis for doing so. As we indicated on the phone, the purpose of postponing trader discovery was to allow us to identify, where possible, particular traders (not to limit the time period). Further, to ensure no undue burden, we have requested a reasonable number of traders and are willing to confer on keywords to keep the universe of identified documents to a reasonable amount.

Many of the defendants have taken the position that documents from traders will only be collect for the period when the defendant had persistent net failure to deliver positions in TASER. To the extent this position is limited to when a defendant had net failures at the NSCC, Defendants

1

miss that Plaintiffs' claims go beyond failures to deliver at the NSCC so this time period would be underinclusive. Additionally, the time limitation ignores that responsive information could also have been created on days when there was not a net failure to deliver. Simply put, this time period request construes Plaintiffs' claims too narrowly and is not acceptable.

You requested that Plaintiffs identify keywords to be used for searching traders' ESI. Plaintiffs propose the following keywords should be searched:
- TASER
- TASR
- 87651B104
- fail*
- short
- "reg sho"
- "regulation sho"
- "reg short"
- "regulation short"
- compliance
- violat*
- loan
- borrow
- locate
- "no good"
- tough
- hard
- impossible
- "super hot"
- hot

On the phone all Defendants agreed that Plaintiffs could identify additional traders if they had good reason to do so. So that you are clear on Plaintiffs' position, because of the way that you have produced discovery and because of missing information and inaccuracies in your blue sheets, Plaintiffs take the position that they would have good reason to identify additional traders based on, among other things, (1) additional analysis of the information you provided; (2) receipt of additional data, documents, testimony or explanations regarding the data produced; or (3) receipt of information not produced as of the day we identified the traders. Defendants' failure to produce complete and reliable data has prejudiced Plaintiffs, it is patently unfair to allow Defendants to further benefit from their failure to comply with discovery obligations by putting off all discovery related to traders.

Furthermore, Defendants' position that Plaintiffs identify all traders now turns discovery obligations on their head by requiring Plaintiffs to identify individuals who you employ who are reasonably likely to have responsive information when you are in the better position to do so as

2

these individuals are the employees of your client. Plaintiffs propose that you create a comprehensive list of traders involved in both equity and options transactions in TASER. This would greatly expedite the process of identifying the relevant information.

Defendants' refusal to produce traders' data is simply an attempt to slow down the case. Document discovery began months ago, and despite Defendants requests for numerous extensions and attempts to delay discovery, Plaintiffs have diligently moved this case forward. To that end, Plaintiffs are doing their best, given the data that we have, to identify traders from whom we seek ESI and have at this point identified as many traders as we can. It is not Plaintiffs' goal, wish or desire to engage in multiple rounds of custodian identification for traders. However, given Defendants' actions in discovery so far, Plaintiffs may have to do so.

Thanks,
Liz