IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | |
| Plaintiffs, | Civil Case No. |
| v. | 1:10-CV-03108-JEC |
| MORGAN STANLEY & CO., INC., *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM IN FURTHER SUPPORT
OF DEFENDANT MERRILL LYNCH'S MOTION FOR
PROTECTIVE ORDER WITH RESPECT TO PLAINTIFFS'
AMENDED NOTICE TO TAKE RULE 30(b)(6) DEPOSITION**

Plaintiffs spend most of their Opposition arguing that the facts and circumstances underlying the eleven Settlements identified in the Amended Notice are potentially relevant to their claims and thus discoverable.  But Merrill Lynch does not seek a protective order on the ground that the Settlements have no arguable relevance.  Rather, Merrill Lynch seeks a protective order because (i) the burden and expense of preparing a corporate representative on the broad topics in the Amended Notice far outweighs the likely benefit of that testimony, and (ii) the information sought can be obtained through other, less burdensome means.  Plaintiffs' Opposition fails to rebut either of these facts.

## I.    Plaintiffs Do Not Dispute that the Amended Notice Would Impose Significant Costs on Merrill Lynch.

Nowhere in their Opposition do Plaintiffs assert that it would be easy or a reasonable expense for Merrill Lynch to prepare a corporate representative to testify on the hundreds of topics set forth in the Amended Notice.  Nor do Plaintiffs deny that a corporate representative would be required to abandon his employment responsibilities to study a tremendous volume of information for the deposition.  Instead Plaintiffs contend that the heavy burden and expense they seek to impose on Merrill Lynch is irrelevant because "Plaintiffs are entitled to discover this relevant information, whether Merrill Lynch had two Investigations or 20."

(Opp. at 19.)  This position, however, runs directly contrary to Federal Rule of

Civil Procedure 26(b)(2)(c), which provides in part:

> [T]he court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rules if it
> determines that . . . the discovery sought . . . can be obtained
> from some other source that is more convenient, less
> burdensome, or less expensive [or] the burden or expense of
> the proposed discovery outweighs its likely benefit . . . .

Fed. R. Civ. P. 26(b)(2)(c).

As this Rule makes clear, the mere fact that the information sought may be

discoverable under the Federal Rules does not mean that the discovery method

must be permitted.  Indeed, there are two principles implicit in the Rule:

(i) litigants have an obligation to use the least burdensome and least expensive

discovery method available to obtain the information they seek; and (ii) the cost

required to obtain discoverable or relevant information must be proportional to its

likely benefit.  But during the course of this litigation, Plaintiffs have repeatedly

ignored both of these principles and taken the position that they are entitled to any

and all information even tangentially related to the broad and open-ended

allegations in their 109-page complaint, regardless of the burden imposed on

Merrill Lynch.  (*See, e.g.*, Opp. at 14–15 (arguing that Plaintiffs are entitled to

broad discovery to check whether technical problems with Merrill Lynch computer

system were intentional misconduct).)  Here Plaintiffs assert that they are entitled

to a Rule 30(b)(6) deposition on the topics of their choice, regardless of the burden and expense imposed on Merrill Lynch and regardless of whether Merrill Lynch is willing to provide much of the requested information in writing.  (*See* Opp. at 23.)

But under Rule 26(b)(2)(c), Plaintiffs may not use overly burdensome discovery to obtain every conceivable piece of potentially relevant evidence.  This is demonstrated by *In re Independent Service Organizations Antitrust Litigation*, where the court found that, "[a]lthough we have no quarrel with [plaintiff's] contention that it has a right to discover the facts upon which [defendant] will rely . . . [plaintiff's] attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable."  168 F.R.D. 651, 654 (D. Kan. 1996).  Plaintiffs attempt to distinguish this case on the basis that it involved "facts supporting denials and affirmative defenses" in the litigation, rather than for individual investigations.  (Opp. at 20.)  But it is no easier to prepare a witness to testify about "[t]he facts, issues and circumstances underlying" each of eleven regulatory settlements—including "the facts and bases for [Merrill Lynch's] denial" that any "conduct described" in the regulatory document occurred—than it is to prepare testimony about the facts supporting defenses in the litigation.[1]  And

---

[1] This quote is from Topics 1 and 1(d) of the Amended Notice.  The Amended Notice was submitted with Merrill Lynch's opening memorandum as Exhibit 4 to

the regulatory inquiries are not as relevant as the discovery sought in *Independent Service Organizations*, so there is less justification for imposing this burden on Merrill Lynch.

Plaintiffs' assertion that Merrill Lynch has already made and lost the burden argument presented here (*see* Opp. at 11–12) is inconsistent with the record. It is true that the State Court ordered Merrill Lynch to produce *documents* concerning securities other than TASER, but it has never ordered a defendant to prepare for a 30(b)(6) deposition about non-TASER issues. And the State Court only issued the document order after Plaintiffs explicitly represented that there would be no burden on Defendants from such an overbroad document production:

> **If the Court grants Plaintiffs' Motion, the Defendants will not be required to review a single document beyond what they have already agreed to review.** The only question presented here is whether documents identified in that review that pertain to the improper short selling of non-TASER securities will be placed in the "produce" pile or the "nonresponsive" pile.

(Reply in Support of Plaintiffs' Motion to Compel Production of Documents (Elias Decl. Ex. 11) at 6–7 (emphasis added).) It is thus disingenuous for Plaintiffs to claim that the State Court already weighed the burden of preparing a corporate

---

the Declaration of Brad M. Elias (Dkt No. 111-3). For the Court's convenience, we attach another copy as Appendix A here.

representative to testify on topics unrelated to TASER against the likely benefit of

such testimony.  (*See* Opp. at 11–12.)  The State Court did no such thing.

## II.   The Court Should Reject Plaintiffs' Attempt to Downplay the Burden Imposed by the Amended Notice.

While Plaintiffs do not dispute that the Amended Notice will impose a great

burden and expense on Merrill Lynch, they attempt to artificially minimize this

burden in their Opposition by quoting only the Amended Notice's three most

narrow topics.  Plaintiffs carefully avoid discussing the numerous overbroad,

hypotehtical, and vague topics, including, for example:

- The impact and effect the conduct described in the [Settlements] had or *could have* on (a) the accuracy of records; (b) the delivery or receipt of securities and/or (c) stock price;

- For each of the trading desks and traders involved in the conduct described in the [Settlements], information relating to other known instances in which they were alleged or in fact violated any Merrill Lynch policy or procedure relating to short selling, mismarking or inaccurately marking tickets or Reg. SHO;

- Whether Merrill Lynch is currently aware of any other instances in which the conduct described in the [Settlements] occurred and, if so, what the conduct was, when it occurred, the trading desk and traders involved and the securities involved;

- For the conduct or matters referenced in the [Settlements], facts sufficient to show:  (i) the securities involved; (ii) the

amount of shares traded; (iii) the trading desk and traders involved and (iv) when the conduct occurred; and

- Whether Merrill Lynch engaged in any of the conduct alleged in the Decision after January 3, 2006 and, if so, when, which conduct and with respect to which securities.

(Ex. 4 at 9–13 (topics 1(h), 1(j), 1(f), 1(l), 2(d)) (emphasis added).)

Plaintiffs also attempt to rewrite the Amended Notice by asserting that Merrill Lynch is only obligated to provide a witness on the detailed topic 1 "subtopics," and not the general topic 1. (*See* Opp. at 18.) But the Amended Notice does not say this. It lists topic number one as the "facts, issues and circumstances underlying" each settlement, defines "Investigation" to include those "facts, issues and circumstances," and then says for "each Investigation" Merrill Lynch must testify on all "subtopics." (Ex. 4 at 8–9.) Plaintiffs' latest attempt to limit the scope of the Amended Notice—after six months of meeting and conferring—is an implicit acknowledgement of its overbreadth.

Moreover, the additional listed topics are not "subtopics" because they call for testimony beyond the "facts, issues and circumstances underlying" the Settlements. For example, for each trading desk and trader involved in the conduct described in the Settlement, Plaintiffs seek testimony regarding every instance in which that trading desk or trader ever allegedly violated a Merrill Lynch policy or procedure relating to short selling. (*Id.* at 12 (topic 1(j)).) They also seek

testimony regarding every instance in which the conduct described in the Settlement ever occurred, and if so, what the conduct was, when it occurred, the trading desks and traders involved, and the securities involved.  (*Id.* at 10–11(topic 1(f)).)  These "subtopics" therefore seek information well beyond the Settlements themselves.  And contrary to Plaintiffs' assertion (*see* Opp. at 18), they do not make the Amended Notice more particular and less burdensome.

## III.  Plaintiffs Fail to Identify Any Likely Benefit that Outweighs the Burden and Expense Imposed by the Amended Notice.

Plaintiffs do not dispute that the Settlements (i) have no connection to TASER or TASER securities, (ii) contain no findings or allegations that Merrill Lynch engaged in knowing or intentional misconduct, and (iii) often did not result in a monetary fine or sanction.  Yet Plaintiffs contend that the Settlements are potentially relevant to showing Merrill Lynch's motive or intent to manipulate the price of TASER common stock.  (*See* Opp. at 1.)

Plaintiffs' misplaced hope that testimony about Merrill Lynch's minor regulatory investigations will provide the proof of intentional misconduct they need to prove their claims is not sufficient to justify the burden it would impose on Merrill Lynch.  The regulatory issues are only tangentially related to the merits of Plaintiffs' claims, as demonstrated by the fact that Plaintiffs can point to only three paragraphs in a nearly two-hundred-paragraph Complaint to argue that the

Settlements are potentially relevant to their claims.  (See Opp. at 2–4 (citing

Compl. ¶¶ 8, 116, 141).)  Rather, Plaintiffs' main allegation is that Merrill Lynch

failed to deliver TASER shares to the DTCC, creating "counterfeit shares" that

depressed TASER's stock price.  (*See* Compl. ¶¶ 1–7.)  Merrill Lynch therefore

has produced all of its TASER trading data for both stock and options, all records

regarding TASER stock position movements to the DTCC and other

counterparties, dozens of reports used by its compliance department, and millions

of e-mails discussing TASER, failures to deliver, and a host of other search terms

demanded by Plaintiffs.

Despite the strained nature of Plaintiffs' theory of the Settlements'

relevance, Merrill Lynch has produced all non-privileged documents concerning

the Settlements that it collected after a reasonable search.  Merrill Lynch also

conducted a search for additional information to respond to Plaintiffs' third

interrogatories and identified for Plaintiffs the securities at issue and the Merrill

Lynch employees that participated in responding to each inquiry.  After completing

this search, Merrill Lynch concluded that it had no additional information to offer

Plaintiffs and offered to provide a verified statement that its knowledge of the

Settlements is contained exclusively within the documents and interrogatory

responses that it had already produced to Plaintiffs.

Had Plaintiffs accepted this offer, it would have eliminated the need for testimony on many topics in the Amended Notice and would have reduced to some degree the burden on Merrill Lynch.  For example, there is no reason for a Merrill Lynch corporate representative to abandon his employment responsibilities so that he can memorize or read aloud information contained in the documents, including (i) the date each investigation started, the securities investigated, the time periods examined and the types of conduct investigated (topic 1(a)); (ii) the trading desks and traders involved in the conduct (topic 1(k)); and (iii) the securities listed on the incomplete or erroneous blue sheets (topic 2(a)).  (*See* Ex. 4 at 9–13.)  Plaintiffs are simply not entitled to demand all of this information in deposition form.

## IV.   Plaintiffs Fail to Establish that the Information They Seek Cannot Be Obtained Through Less Burdensome Means.

Plaintiffs' assertion that they need deposition testimony "to bind the company to understand its position" is incorrect.  (Opp. at 23.)  Not only would the verified writings proposed by Merrill Lynch be binding, but Merrill Lynch has already explained its "position" on the Settlements to Plaintiffs:  Merrill Lynch does not have a position on whether the conduct alleged in the Settlements occurred because the very purpose of entering into the Settlements was to avoid the time and expense of investigating and defending against those allegations.  Merrill Lynch did not admit or deny the allegations then, and it has no obligation to admit

or deny them now.  Indeed, Plaintiffs themselves agree that "they are not asking Merrill Lynch to now first engage in an audit or investigation."  (Ex. 4 at 9 n.8.) Thus, the Merrill Lynch witness would simply answer questions about whether the conduct occurred with "I don't know."  Preparing a witness on hundreds of topics when numerous questions would be answered with no information for Plaintiffs is both burdensome to Merrill Lynch and unhelpful to Plaintiffs.

Moreover, even if Merrill Lynch were to take the position in this litigation that the alleged conduct did not occur, Plaintiffs would not be entitled to discover which specific facts Merrill Lynch believes support that position because this information is protected attorney work product.  *See Am. Nat'l Red Cross v. Travelers Indem. Co. of R.I.*, 896 F. Supp. 8, 14 (D.D.C. 1995) ("When [plaintiff's] counsel requested of [defendant] a description of the 'facts and documents which [defendant] contends support' each affirmative defense, [plaintiff's] counsel was asking questions that intruded upon protected work product . . . ."); *Securities and Exchange Commission v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (defendant's notice of Rule 30(b)(6) deposition "constitutes an impermissible attempt to inquire into the mental processes and strategies of the SEC [because it wa]s intended to ascertain how the SEC intends to marshal the facts, documents, and testimony in its possession").  And again Plaintiffs' suggestion that Merrill Lynch could just

object to numerous questions at the deposition does not answer the argument that it is unduly burdensome and inefficient to require Merrill Lynch to prepare a witness on these topics.

## V.   The Court Should Reject Plaintiffs' Unilateral Attempt to Punish Merrill Lynch for Engaging in a Lengthy Meet and Confer.

Plaintiffs concede that a Rule 30(b)(6) deposition should be noticed at the deponent's principal place of business, which here is New York.  (Opp. at 24.) They argue, however, that Plaintiffs properly noticed the December 22 deposition for Atlanta because of Merrill Lynch's "improper conduct [in drawing out] discovery conferrals for six months."  (*Id.* at 24–25.)  But the mere fact that the parties' negotiations lasted six months before reaching an impasse does not demonstrate any intentional delay or bad faith by Merrill Lynch.  And Plaintiffs fail to acknowledge that the negotiations were meaningful—Plaintiffs have significantly narrowed the notice in response to those negotiations and apparently seek to further narrow it in the course of this motion practice by stating that they now do not seek any testimony on Topic 1 but instead only on its "subtopics" (*see* Opp. at 18).  There is nothing nefarious about these negotiations taking several months.  Plaintiffs also do not cite a single case permitting them to unilaterally punish Merrill Lynch for an alleged delay by imposing additional travel, lodging, and other expenses on it.

## CONCLUSION

For the foregoing reasons, the Court should grant Merrill Lynch's motion for

a protective order prohibiting examination on the topics in the Amended Notice.  If

the Court denies this motion, Merrill Lynch respectfully requests that it be given at

least 30 days to educate and produce a corporate representative in New York.

Dated:  December 14, 2010

                      /s/ Richard H. Sinkfield
                    Richard H. Sinkfield
                    Georgia Bar No. 649100
                    RSinkfield@rh-law.com
                    Dan F. Laney, III
                    Georgia Bar No. 435290
                    DLaney@rh-law.com

                    ROGERS & HARDIN LLP
                    229 Peachtree Street, N.E.
                    2700 International Tower
                    Atlanta, Georgia  30303
                    Tel.:  404-522-4700
                    Fax:  404-525-2224

                    Andrew J. Frackman
                    Abby F. Rudzin
                    Brad M. Elias
                    *Pro Hac Vice* Applications Pending

                    O'MELVENY & MYERS LLP
                    7 Times Square
                    New York, New York  10036
                    Phone:  212-326-2000
                    Fax:  212-326-2061

*Attorneys for Defendant Merrill Lynch,
Pierce, Fenner & Smith Incorporated*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing REPLY

MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT MERRILL

LYNCH'S MOTION FOR PROTECTIVE ORDER WITH RESPECT TO

PLAINTIFFS' AMENDED NOTICE TO TAKE RULE 30(b)(6) DEPOSITION

has been prepared in Times New Roman, 14-point font, as permitted by Local Rule

5.1(C).

/s/Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TASER INTERNATIONAL, INC.,
*et al.*

       Plaintiffs,

v.

MORGAN STANLEY & CO., INC.,
*et al.*

       Defendants.

CIVIL ACTION NUMBER:
1:10-CV-03108-JEC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2010, I caused a copy of the foregoing

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT

MERRILL LYNCH'S MOTION FOR PROTECTIVE ORDER WITH RESPECT

TO PLAINTIFFS' AMENDED NOTICE TO TAKE RULE 30(b)(6)

DEPOSITION to be filed with the Clerk of Court using the CM/ECF system,

which will automatically send e-mail notification of such filing to the following

attorneys of record:

          John E. Floyd, Esq.
          floyd@bmelaw.com

          Steven J. Rosenwasser, Esq.
          rosenwasser@bmelaw.com

Nicole G. Iannarone, Esq.
iannarone@bmelaw.com

Jill A. Pryor, Esq.
pryor@bmelaw.com

Robert L. Ashe, III, Esq.
ashe@bmelaw.com

Michael A. Caplan, Esq.
caplan@bmelaw.com

Elizabeth G. Eager
eager@bmelaw.com

and that I have caused a copy to be served by U.S. Mail on the following attorneys

of record:

James W. Christian, Esq.
CHRISTIAN, SMITH & JEWELL LLP
2302 Fannin, Suite 500
Houston, TX  77002

Robert F. Wise, Jr., Esq.
Melissa Aoyagi, Esq.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017

Richard H. Klapper, Esq.
Richard C. Pepperman, II, Esq.
Tracy Richelle High, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498

Stephen L. Ratner, Esq.
Brian L. Friedman, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036

Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Peter J. Isajiw, Esq.
Heather L. Fesnak, Esq.
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY  10281

Fraser L. Hunter, Jr., Esq.
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY  10022

Andrew J. Frackman, Esq.
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036

Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Jeffrey M. Gould, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005

/s/ James W. Cobb
_____

James W. Cobb
Georgia Bar No. 420133
rsinkfield@rh-law.com