# EXHIBIT 12

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHER DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3

 4    TASER INTERNATIONAL, INC., et al.  )
                                         )
 5                    Plaintiffs,        )
                                         )
 6            vs.                        )   CIVIL ACTION
                                         )     FILE NO.:
 7                                       ) 1:10-CV-03108-JOF
      MORGAN STANLEY & CO., INC., et al. )
 8                                       )
                      Defendants.        )

 9

10

11              VIDEOTAPED DEPOSITION OF
                 ROBERT M. BAKER, M.D.
12                 OCTOBER 13, 2010
                     9:30 A.M.

13

14             BONDURANT, MIXSON & ELMORE
             1201 WEST PEACHTREE STREET, NW
15                   SUITE 3900
                  ATLANTA, GEORGIA

16

17          CONTAINS CONFIDENTIAL PORTIONS
             PURSUANT TO PROTECTIVE ORDER

18

19

20

21

22

      REPORTED BY:
23             STEVEN S. HUSEBY, RPR
                   CCR-B-1372

24

25
```

**122**

1  MR. ELIAS:  Sure.          11:31:59
2  MR. JEWELL:  Thanks.          11:32:00
3  MR. ELIAS:  We can go off the          11:32:05
4  record.          11:32:06
5  THE VIDEOGRAPHER:  This is the end   11:32:06
6  of Tape Number One in the deposition of          11:32:09
7  Robert M. Baker, M.D.  The time is 11:32 a.m.   11:32:11
8  We're now off the record.          11:32:15
9  (Lunch recess.)          12:18:36
10  THE VIDEOGRAPHER:  This is the          12:18:36
11  beginning of Tape Number Two in the deposition   12:18:37
12  of Robert M. Baker, M.D.  The time is 12:18          12:18:39
13  p.m.  We are now on the record.          12:18:43
14  MR. JEWELL:  Brad, before you          12:18:46
15  start with your next question I went back, and   12:18:47
16  I have to apologize, I have a head cold today,   12:18:50
17  you said something prior to the witness being   12:18:53
18  sworn and before the first question was asked   12:18:56
19  that Merrill Lynch Professional Clearing          12:18:58
20  Corporation was not making an appearance at   12:19:02
21  this deposition.  By my silence or no comment   12:19:04
22  I didn't want to be interpreted as us          12:19:07
23  acquiescing or consenting to that position.   12:19:10
24  We disagree.          12:19:12
25  It's our position that you, your firm and   12:19:13

**123**

1  other members of your firm do represent          12:19:16
2  Merrill Lynch Professional Clearing          12:19:18
3  Corporation, and that's a matter that I'm not   12:19:20
4  going to debate it with you now.  We'll just   12:19:21
5  leave it to the Court.          12:19:24
6  MR. ELIAS:  And I just want to add   12:19:25
7  that we have not -- O'Melveny & Myers, LLP has   12:19:26
8  not made an appearance in this action on          12:19:28
9  behalf of Merrill Lynch Professional Clearing   12:19:31
10  Corporation, and we are not appearing here   12:19:33
11  today on behalf of Merrill Lynch Professional   12:19:35
12  Clearing Corporation.          12:19:40
13  MR. JEWELL:  I understand, but          12:19:40
14  after the witness was sworn in we basically   12:19:41
15  agreed that the initial stipulations would   12:19:44
16  apply to this deposition, those applied in the   12:19:46
17  past, and one of them is we're only producing   12:19:50
18  this guy one time for a deposition.  Everyone   12:19:53
19  had notice of the deposition, everyone had an   12:19:55
20  ability to participate in this deposition, and   12:19:58
21  subject to your ability to recall him because   12:19:59
22  of a lack of a document being produced, which   12:20:02
23  we understand, we're not going to simply          12:20:05
24  volunteer him because a particular defendant   12:20:07
25  decided not to make an appearance at this   12:20:10

**124**

1  deposition.  But, again, this will be          12:20:12
2  something we can --          12:20:14
3  MR. ELIAS:  Yeah, and there's no   12:20:14
4  need to argue about this.  I will just note   12:20:16
5  for the record that under the Federal Rules we   12:20:18
6  do not think that the discovery period for   12:20:20
7  Merrill Lynch Professional Clearing          12:20:22
8  Corporation has begun.  Merrill Lynch          12:20:24
9  Professional Clearing Corporation has not yet   12:20:28
10  answered the complaint, and we also reserve   12:20:29
11  the right on behalf of -- Merrill Lynch          12:20:33
12  Professional Clearing Corporation will have   12:20:38
13  whatever rights it has under the Federal          12:20:39
14  Rules.          12:20:41
15  MR. JEWELL:  Okay.          12:20:41
16  BY MR. ELIAS:          12:20:41
17  Q.  Okay.  Dr. Baker, we are going to move   12:20:50
18  to your next account statement, which we are   12:20:53
19  going to mark Baker R Exhibit 125.  It is a   12:20:55
20  GMS Group account statement covering the          12:20:59
21  period August 30th, 2003, through          12:21:01
22  September 26th, 2003.  It bears Bates number   12:21:04
23  TSR-BAKER-31 through TSR-BAKERR-43.          12:21:07
24  (Exhibit Number 125          12:21:13
25  marked for identification.)          12:21:29

**125**

1  Q.  Dr. Baker, do you recognize this          12:21:29
2  document?          12:21:31
3  A.  Yes.          12:21:32
4  Q.  Was this document produced by GMS   12:21:33
5  Group on your behalf in this litigation?          12:21:35
6  A.  Yes.          12:21:37
7  Q.  Please direct your attention to the   12:21:40
8  second page of the document.  You'll see a   12:21:41
9  series of purchases in TASER International,   12:21:46
10  some of which are marked solicited and some of   12:21:50
11  which are marked solicited order.          12:21:53
12  Did you instruct your brother to purchase   12:21:56
13  any of these shares on your behalf?          12:21:58
14  A.  He was my accountant and, you know, we   12:22:00
15  agreed a long time ago to do that, yeah, he   12:22:02
16  can purchase.          12:22:06
17  MR. JEWELL:  Accountant, your          12:22:06
18  brother was your accountant?          12:22:08
19  THE WITNESS:  No, he's the -- he's   12:22:09
20  my brother and he was handling my account and   12:22:11
21  he had been given authority a long time          12:22:13
22  before.          12:22:16
23  MR. JEWELL:  Sorry, Brad.          12:22:16
24  MR. ELIAS:  No, I understand.          12:22:18
25  BY MR. ELIAS:          12:22:18

32 (Pages 122 to 125)