IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY & CO., INC., *et al.*,<br><br>Defendants. | Civil Case No.<br><br>1:10-CV-03108-JEC |

**DEFENDANTS BANC OF AMERICA SECURITIES LLC'S AND
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL A
RESPONSE TO INTERROGATORIES AND PRODUCTION
<u>OF DOCUMENTS FROM TRADERS AND SALES PERSONNEL</u>**

Defendants Banc of America Securities LLC ("BAS") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") submit this memorandum in opposition to Plaintiffs' Motion to Compel Defendants Banc of America Securities LLC; Merrell Lynch, Pierce, Fenner & Smith, Inc.; and Morgan Stanley & Co., Inc. to Respond to Interrogatories and Produce Documents from Traders and Sales Personnel (the "Motion to Compel").

Although the Court has denied the Motion to Compel, it did so without prejudice so that Plaintiffs could renew it before the Special Master.  BAS and Merrill Lynch file this Opposition now so that if Plaintiffs do renew the Motion to Compel, the papers would be complete for his consideration.

## PRELIMINARY STATEMENT

Since this litigation started almost three years ago, BAS and Merrill Lynch (which are now both owned by Bank of America Corporation) have spent many millions of dollars producing more than 20 million pages of documents collected from more than 100 employees, answering scores of requests for admission, and responding to dozens of multi-part interrogatories.  Now Plaintiffs ask Defendants to answer still more interrogatories and produce still more documents from the e-mail accounts of more than 160 additional employees.  After years of never-ending and increasingly irrelevant discovery demands, enough is enough.  It is

long overdue for discovery to become more narrowly tailored, not expanded beyond all reasonable bounds.

The Motion to Compel conflates two distinct discovery disputes. The first dispute arises from Plaintiffs' document requests and their demand that Defendants conduct a time-consuming and expensive search of e-mails and other electronically-stored information ("ESI") generated by traders and sales personnel. The second dispute arises from the parties' August 12, 2010 agreement, which postponed Defendants' responses to certain interrogatories so that Plaintiffs could narrow them. While Plaintiffs contend now that the August 12 agreement also governs document production, the record says otherwise. The two disputes should be addressed separately.

The Motion to Compel requests a document production that is both unduly burdensome and not reasonably calculated to lead to admissible evidence. Plaintiffs ask the Court to order BAS/Merrill Lynch to collect and review ESI from at least 160 custodians using broad search terms. This collection and review would cost BAS/Merrill Lynch approximately $5 million *just in vendor fees*. That is before the undersigned counsel conduct their review. Not only does this staggering expense, standing alone, constitute an undue burden, but Plaintiffs have failed to show any likely benefit from the requested productions.

While Plaintiffs seek to compel ESI from the sales personnel associated with more than 125 different "market participants" at each Defendant, Plaintiffs have not provided the Court with any explanation as to how communications between these market participants and their sales representatives might be relevant to Plaintiffs' claims.  In fact, the BAS records show that 36 of the BAS-requested market participants did not trade TASER, and the Merrill Lynch records show that 109 of the Merrill Lynch-requested market participants did not trade TASER. Several of the requested market participants are not even customers of BAS or Merrill Lynch.

Although BAS and Merrill Lynch have repeatedly asked Plaintiffs to provide information about these market participants that would establish the relevance of the documents Plaintiffs seek—such as specific trades or trading patterns that appear to be manipulative based on Plaintiffs' review of the trading data that Defendants have produced —Plaintiffs have refused.  Instead they contend that BAS and Merrill Lynch are required to produce these documents simply because Plaintiffs have asked for them.  But under Federal Rule of Civil Procedure 26, Plaintiffs are entitled only to discover *relevant* evidence, the requests must be *reasonably calculated*, and the likely *benefit* from the discovery must at least match the *burden*.  Plaintiffs have made none of these showings in

requesting ESI from sales personnel associated with these hundreds of market participants.

Plaintiffs' request for an ESI collection from BAS's and Merrill Lynch's proprietary traders fares no better.  Neither BAS nor Merrill Lynch engaged in any proprietary trading that is relevant to Plaintiffs' claims.  Plaintiffs speculate that Defendants *might have* taken large short positions in TASER and then had an incentive to drive down TASER's stock price.  But they fail to point to any of the Defendants' records substantiating this theory.  And during the relevant period two of the combined-four proprietary trading desks took no material short positions in TASER.  While one Merrill Lynch trading desk and one BAS trading desk did short sell TASER, they are quantitative arbitrage desks with trading strategies and trading records that do not support Plaintiffs' theory and make it highly unlikely that an ESI collection would yield any relevant evidence.

Plaintiffs' motion to compel interrogatory responses should also be denied. Under the parties' August 12 agreement, BAS and Merrill Lynch are not required to provide Plaintiffs with the additional information requested until Plaintiffs have "reviewed trading and other data" and identified "specific trades, traders, trading and/or sales personnel, trading accounts, trading desks, or trading time frames." Plaintiffs acknowledge this obligation in the Motion to Compel but do not explain

how they have met this condition precedent.  Plaintiffs identify no specific trades,

no specific trading desk, no specific time frame, and no specific trading accounts—

the requested "market participants" have thousands of accounts.  And the only

"trading and/or sales personnel" they identify are John Panichi and Frank Laino at

Merrill Lynch, about whom Merrill Lynch has already provided Plaintiffs with

information.[1]  Accordingly, Plaintiffs' motion to compel interrogatory responses

should be denied.

## BACKGROUND

### A.  Plaintiffs requested that BAS and Merrill Lynch conduct burdensome ESI searches for traders and sales personnel.

Plaintiffs have served four sets of document requests on Defendants that

they contend call for the production of documents from traders and sales personnel.

(*See* Pls.' Br. in Supp. of Mot. to Compel ("Mem.") at 4–5; Pls.' Exs. B–E.[2])  BAS

and Merrill Lynch objected to the specific document requests Plaintiffs cite as

supporting their current ESI request on a variety of grounds, including that they are

overbroad, unduly burdensome, vague, and ambiguous.  (*See* Pls.' Exs. I, J, L, M,

O, P, R, S.)  After a series of meet and confers, the parties agreed on a phased

---

[1] Plaintiffs also "identify" Kevin Sharkey at BAS, but he is neither a trader nor a sales person.

[2] "Pls.' Ex." refers to the exhibits attached to the Motion to Compel.

approach to discovery whereby the Defendants would first produce TASER trading data and conduct an ESI collection from compliance and other personnel likely to possess relevant information.  (Ex. 1.[3])  The parties negotiated search terms and a list of relevant custodians, and BAS and Merrill Lynch collected and produced approximately *22 million* pages of e-mails and other ESI.  (Elias Decl. ¶ 8–9.)  The parties agreed that the issue of collecting ESI from traders and sales personnel would be addressed during a later phase of discovery.  (*See* Ex. 2.)  In agreeing to put the issue on hold, however, BAS and Merrill Lynch did not waive any of their objections to Plaintiffs' document requests.

## B.  BAS rejected Plaintiffs' burdensome request for ESI from traders and sales personnel.

On April 20, 2010, Plaintiffs came back to BAS with additional ESI requests.  Plaintiffs asked BAS to collect and produce ESI from employee Kevin Sharkey and the traders associated with three trading codes.  (*See* Pls.' Ex. G-13.) The parties then began the meet and confer process.  They did not agree to any additional document collections, in part because BAS said it would not conduct piecemeal searches.  (*See* Pls.' Ex. G-14.)  On July 30, 2010, Plaintiffs provided BAS a list of 20 hedge funds for which they sought ESI from the responsible trader

---

[3] "Ex." refers to the exhibits attached to the December 27, 2010 Declaration of Brad M. Elias, submitted concurrently herewith (the "Elias Declaration").

or sales representative.  (Pls.' Ex. G-15.)  The parties then again met and conferred

but could not reach agreement on the need for this search.

### C.  Merrill Lynch rejected Plaintiffs' burdensome request for ESI from traders and sales personnel.

On April 20, 2010, Plaintiffs contacted Merrill Lynch and asked that it

collect and produce ESI from nine traders.  (*See* Pls.' Ex. G-3 at 1.)  The parties

thereafter met and conferred, causing Plaintiffs to limit the search to periods where

the TASER trading was more than "de minimis."  (Pls.' Ex. G-6 at 1.)  On

September 17, Plaintiffs demanded that Merrill Lynch collect and review ESI from

the sales personnel responsible for more than 125 different "market participants."

(*Id.* at 3–6.)  The parties again met and conferred, but could not reach agreement

on the need for another broad and expensive search.

### D.  The parties reach agreement on Plaintiffs' interrogatories.

Plaintiffs served their first set of interrogatories on all Defendants on

May 27, 2008.  (*See* Pls.' Ex. F.)  Defendants objected to those interrogatories on a

variety of grounds, and the parties reached a compromise on August 12, 2009.

(*See* Pls.' Ex. G-1.)  As part of this compromise, Plaintiffs agreed that Defendants

would not be required to provide information about traders or sales personnel until

Plaintiffs narrowed their interrogatory requests by "inform[ing] Defendants of

specific trades, traders, trading and/or sales personnel, trading accounts, trading desks, or trading time frames for which they seek information as to traders." (*Id.*)

While Plaintiffs assert that "[t]he [August 12, 2009] Agreement covered both the document production and the identification of traders and sales personnel," Plaintiffs cite nothing to support this statement. (*See* Mem. at 7.) And they could not do so because the agreement was about interrogatory responses and makes no mention of document requests or ESI. For this reason, numerous Defendants have told Plaintiffs over the past year that the August 12 agreement has nothing to do with document requests and does not govern the terms of any such production. For example, Merrill Lynch's former counsel informed Plaintiffs in May that "the August 12, 2009 stipulation referenced in your email only addressed the identification of traders, not the production of documents." (Pls.' Ex. G-4 at 1.) BAS's counsel similarly informed Plaintiffs in May that "the August 12, 2009 stipulation referenced in your email only addressed the identification of traders, not the production of documents." (Ex. 3 at 1.) Bear Stearns's counsel also told Plaintiffs that "[t]he August 12, 2009 stipulation referenced in your email . . . only addressed the identification of traders, not the production of documents." (Ex. 4.) In fact, Plaintiffs themselves have acknowledged their agreement concerning the *identification* of traders and *disavowed* an agreement concerning ESI searches:

> **We simply agree to withhold requesting that you identify individual traders** at this point in time.  **We never agreed to withhold any requests to search individuals** that are reasonably likely to possess responsive information, including traders.

(Ex. 5 ¶ 7 (emphasis added).)

Accordingly, the August 12 agreement is relevant to the Motion to Compel only to the extent that it seeks to compel interrogatory responses.  The agreement does not govern or affect Plaintiffs' request for an ESI production.

## ARGUMENT

I.  **The Motion to Compel an ESI production should be denied because the burden and expense of the proposed discovery far outweighs its likely benefit.**

Federal Rule of Civil Procedure 26(b)(2)(C) provides that "the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit . . . ."  Fed. R. Civ. P. 26(b)(2)(C).  Here, the staggering expense of the ESI collection proposed by Plaintiffs far outweighs any likely benefit, and the Motion to Compel should therefore be denied.

A.  **The proposed ESI collection would cost BAS and Merrill Lynch millions of dollars.**

Plaintiffs seek an order requiring BAS and Merrill Lynch to each collect and review ESI from sales personnel associated with more than 125 "market

9

participants" and from proprietary traders that engaged in more than "de minimis" TASER transactions.  (Mem. at 16–17.)  BAS estimates that such a search would encompass approximately 60 custodians, and Merrill Lynch estimates that it would encompass approximately 100 custodians.  (Elias Decl. ¶ 10.)  Plaintiffs also seek an order requiring BAS and Merrill Lynch to employ broad search terms, including "violat*" and "flex*," that would collect a large number of irrelevant documents. (*See* Mem. at 17–18.)

BAS estimates that an ESI collection and review using Plaintiffs' proposed parameters would cost BAS approximately $1.9 million in vendor fees *alone*. (Elias Decl. ¶ 11.)  Merrill Lynch estimates that the proposed ESI collection would cost it approximately $3.2 million in vendor fees.  (*Id.*)  And the attorney review would in addition cost BAS and Merrill Lynch hundreds of thousands of dollars. (*Id.*)  This extraordinary expense, standing alone, constitutes an undue burden and warrants denial of Plaintiffs' Motion to Compel.

**B.  Plaintiffs have failed to establish any likely benefit from the proposed discovery.**

1.  Plaintiffs have made no showing that communications with the market participants Plaintiffs identify are relevant to their claims.

Plaintiffs ask the Court to order BAS and Merrill Lynch to *each* collect and review ESI from the sales personnel associated with more than 125 different

"market participants."  (*See* Mem. at 16–17; Pls.' Exs. G-17, G-18.)  But Plaintiffs

have provided neither Defendants nor the Court with any explanation as to how

these market participants are relevant to their claims.  Although BAS and Merrill

Lynch have each asked Plaintiffs several times to provide information about these

entities that would justify the burden and expense of an ESI production—such as

specific trades or trading patterns that appear to be manipulative—Plaintiffs have

refused to provide any information to support their request.[4]  Instead, they contend

that BAS and Merrill Lynch are required to produce documents relating to these

market participants simply because Plaintiffs have asked for them.

But that is not how discovery works.  Plaintiffs cannot simply name

hundreds of market participants and demand an expensive and burdensome ESI

collection and review.  They must present some *reasonable basis* for concluding

that the discovery sought is likely to lead to admissible evidence.  They must also

show that the likely benefit of that evidence outweighs the cost of discovery.  The

Motion to Compel is silent on these topics.  Indeed, the only justification Plaintiffs

provide for their proposed ESI review is that several allegations in the complaint

"specifically implicate[] . . . sales personnel who facilitated orders on behalf of

---

[4] Plaintiffs have pointed BAS to their responses to Defendants' Second
Interrogatories, but those responses mention only a handful of the market
participants for whom Plaintiffs now seek to collect ESI.

customers." (Mem. at 4.) But this conclusory statement says nothing about the numerous market participants for whom Plaintiffs now seek additional discovery. Absent (i) any indication of how Plaintiffs assembled this list and (ii) a concrete showing that an ESI collection is highly likely to yield important evidence, BAS and Merrill Lynch cannot in good conscience be required to spend more than *$5 million* on additional discovery.

    2.   Plaintiffs have made no showing that BAS and Merrill Lynch's traders' communications are relevant to their claims.

Plaintiffs contend that they are entitled to an ESI collection from BAS and Merrill Lynch traders because if they took a short position in TASER Defendants would have a motive to drive down its stock price. (*See* Mem. at 3–4.) But as explained below, neither BAS nor Merrill Lynch engaged in any proprietary trading that would provide such a motive. There is therefore no justification for the burdensome ESI collection Plaintiffs seek.

During the relevant time period, BAS had only two proprietary trading desks: (i) a statistical arbitrage desk and (i) an index arbitrage desk. There is no evidence that the statistical arbitrage desk traded TASER securities at all during the relevant period. And there is no evidence that the index arbitrage desk took

unhedged short positions in TASER stock.[5]  Moreover, these trading desks traded

based on quantitative computer models that identify statistical mispricings of

securities.  Index arbitrage, for example, is "[a]n investment strategy that takes

advantage of the price discrepancies between [a group of stocks] and an index

futures contract on the [group of stocks]."  David L. Scott, *Wall Street Words: An*

*Essential A to Z Guide for Today's Investor*, 184 (2d ed. 1997).  This is done by

simultaneously buying (or selling) a stock index future while selling (or buying)

the stocks in that index.  Plaintiffs can provide no explanation as to how these

statistical trading strategies could support their motive theory.[6]

Merrill Lynch likewise had two proprietary trading groups during the

relevant period:  (i) the Quantitative Strategies Automation ("QSA") group, and

(ii) the Strategic Investment Group ("SIG").  Like BAS's arbitrage desks, QSA

trades based on quantitative computer models.  Its traders are therefore not likely

to have e-mails relevant to Plaintiffs' claims for the reasons just explained.  And

while SIG does engage in non-quantitative trading, the records show that SIG had

---

[5] Plaintiffs have BAS's TASER trading and position data and could point to any such evidence.

[6] Plaintiffs contend that they are entitled to documents even from traders using algorithms "because these traders developed the algorithms . . . ."  (Mem. at 16.) Plaintiffs do not, and cannot, explain how the e-mails of a trader that developed an arbitrage algorithm could possibly be relevant to Plaintiffs' claims.

no material TASER trades.  One SIG trader *bought* 2500 TASER shares in March 2005, undermining Plaintiffs' theory that Defendants sold the stock short in their proprietary accounts to profit from the stock's decline.  (Elias Decl. ¶ 12.)  Another SIG trader engaged in some TASER transactions (totaling less than 4500 shares) for an eight-day period in January 2007.  (*Id.*)  That is all the TASER trading SIG conducted.  It certainly cannot show a motive to intentionally drive down TASER's stock price over a six-year period.  There is therefore no reason to collect ESI from SIG traders.

Plaintiffs' request for an ESI collection from specific BAS and Merrill Lynch traders (*see* Mem. at 24) should also be denied.  First, Kevin Sharkey was not a trader, or even a sales representative, at BAS.  (Elias Decl. ¶ 13.)  He was a "Senior Middle Office Manager," who handled operational matters.  (*Id.*)  BAS does not know—and Plaintiffs have not suggested—any basis for concluding that he is reasonably likely to have potentially relevant information.  Second, Plaintiffs have presented no evidence in the trading records that either John Panichi or Frank Laino traded, or facilitated trades in, TASER securities.  Again there is no reason to believe that either has relevant documents.

3.  There is no reasonable basis for asking BAS to conduct any additional
    ESI collections.

Plaintiffs' core allegation in this action is that Defendants facilitated "naked short selling" in TASER common stock (*i.e.*, short selling without determining that the stock can be borrowed and delivered by the settlement date) by intentionally failing to borrow and deliver TASER shares to the DTCC.  (*See* Compl. ¶¶ 1–7.) These "failures to deliver" allegedly created millions of "counterfeit" shares that flooded the market and reduced the value of Plaintiffs' "legitimate" TASER shares.  (*Id.* ¶¶ 1–4, 14.)  Indeed, all of Plaintiffs' claims are essentially derived from the following allegation:

> In those instances **where a short seller <u>fails to deliver</u> shares to the DTCC** (*i.e.*, engaged in a naked short sale), it has, in effect, created and sold unauthorized, artificial and/or counterfeit shares.

(*Id.* ¶ 73 (emphasis added).)  Notably, this is the only method of creating counterfeit shares alleged in the Complaint.

Discovery has shown, and Plaintiffs themselves admit, that during the six-year discovery period BAS *never* had a TASER failure to deliver position at the DTCC that lasted for more than eight consecutive days.  (*See* Pls.' First RFA Resp., Ex. 6, at 10–11.)  This is five days *fewer* than the 13 days *permitted* by the federal securities laws.  *See* 17 C.F.R. 242.203(b)(3).  Plaintiffs also admit that

BAS had only two TASER failure to deliver positions at the DTCC that lasted for more than four settlement days.  (Ex. 6 at 13.)[7]  These statistics conclusively demonstrate that Plaintiffs' most important allegations are meritless as against BAS.  Nonetheless, Plaintiffs continue to seek unnecessary discovery, including the ESI search at issue here, in order to impose additional litigation costs on BAS.

BAS has repeatedly raised its lack of failures to deliver with Plaintiffs during the meet and confer process, and Plaintiffs' response has been that they are not required to debate the merits of a case when seeking additional discovery.  But Plaintiffs are incorrect.  Under Rule 26(b)(2)(C), the likely benefit of the proposed discovery is critical to assessing whether it should be permitted.  And where Plaintiffs have already admitted that their most important allegations have no factual support, there is little likelihood that additional discovery would have a significant benefit.  Indeed, there is no legitimate reason to spend $1.9 million on additional discovery into what BAS clients may or may not have spoken to their

_____

[7] Plaintiffs also admit that BAS was in a failure to deliver position in TASER for less than 3% of the more than 1500 settlement days in the relevant period.  (*See* Ex. 6, at 7–10.)  Most of these failures to deliver were resolved within two days.

sales representatives about when there is *no evidence* that those clients' short sales were not being delivered to the DTCC in accordance with federal law.[8]

## II.   The Motion to Compel interrogatory responses should be denied because Plaintiffs have not satisfied the conditions set forth in the August 12 Agreement.

The parties' August 12, 2009 agreement provides that "after Plaintiffs have received and reviewed trading and other data, Plaintiffs will inform Defendants of specific trades, traders, trading and/or sales personnel, trading accounts, trading desks, or trading time frames for which they seek information as to traders." (Pls.' Ex. G-1 at 5.)  While Plaintiffs acknowledge this requirement in the Motion to Compel, they do not explain how they have satisfied it.  Although Plaintiffs have had the relevant trading data for more than a year, they have not provided BAS or Merrill Lynch with specific trades, trading accounts, trading desks, or trading time frames.[9]  Instead they have presented a list of more than 125 "market participants,"

---

[8] Plaintiffs may attempt to rely on their allegation that BAS had failures to deliver outside the DTCC, but nowhere does the complaint allege that these failures to deliver created counterfeit shares.  Indeed, the mechanism that allegedly creates counterfeit shares is the fact that the "DTCC still electronically transfers to the buyer the stock it purchased even if the seller fails to deliver the shares it 'owes' to the DTCC . . . ." (Compl. ¶ 4.)

[9] While Plaintiffs have identified Kevin Sharkey, as explained above he is not a trader.  The only "trading and/or sales personnel" Plaintiffs identify are John Panichi and Frank Laino at Merrill Lynch.  But Merrill Lynch has already provided Plaintiffs with relevant information about them.  (*See* Ex. 5 at 3.)

with thousands of trading accounts, for which they seek the names of sales personnel.  (Pls.' Ex. G-6.)  There is no basis for such a request in the August 12 agreement.

As the agreement makes clear, the parties postponed the Defendants' interrogatory responses so that Plaintiffs could "review[] trading and other data" and narrow the scope of their inquiry.  If Plaintiffs conducted such a review and identified potentially manipulative conduct by these market participants, then they should simply identify the trading accounts and trading time frames in which those trades occurred.  BAS and Merrill Lynch could then, in accordance with the terms of the August 12 agreement, provide information about the relevant sales representative.  But BAS and Merrill Lynch should not be required to provide this information for the hundreds of sales representatives working with the hundreds of requested customers over a six-and-a-half-year period.  This is particularly true given that 109 of the market participants on the Merrill Lynch-requested list and 36 of the market participants on the BAS-requested list do not appear on their TASER trading records.  (Elias Decl. ¶ 15.)  Such a request is unduly burdensome, unlikely to lead to admissible evidence, and a violation of the August 12 agreement.

## CONCLUSION

For the foregoing reasons, BAS and Merrill Lynch request that the Court

deny the Motion to Compel.

Dated:  December 27, 2010

                         */s/* Richard H. Sinkfield
                         Richard H. Sinkfield
                         Georgia Bar No. 649100
                         RSinkfield@rh-law.com

                         Dan F. Laney III
                         Georgia Bar No. 435290
                         DLaney@rh-law.com

                         ROGERS & HARDIN LLP
                         229 Peachtree Street, N.E.
                         2700 International Tower
                         Atlanta, Georgia  30303
                         Tel.:  404-522-4700
                         Fax:  404-525-2224

                         Andrew J. Frackman
                         Abby F. Rudzin
                         Brad M. Elias
                         Admitted *Pro Hac Vice*

                         O'MELVENY & MYERS LLP
                         7 Times Square
                         New York, New York  10036
                         Tel.:  212-326-2000
                         Fax:  212-326-2061

                         *Attorneys for Defendants Banc of*
                         *America Securities LLC and Merrill*
                         *Lynch, Pierce, Fenner & Smith*
                         *Incorporated*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

DEFENDANTS BANC OF AMERICA SECURITIES LLC'S AND MERRILL

LYNCH, PIERCE, FENNER & SMITH INCORPORATED'S OPPOSITION TO

PLAINTIFFS' MOTION TO COMPEL A RESPONSE TO INTERROGATORIES

AND PRODUCTION OF DOCUMENTS FROM TRADERS AND SALES

PERSONNEL has been prepared in Times New Roman, 14-point font, as

permitted by Local Rule 5.1(C).

/s/Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2010, I caused a copy of the foregoing DEFENDANTS BANC OF AMERICA SECURITIES LLC'S AND MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL A RESPONSE TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS FROM TRADERS AND SALES PERSONNEL to be filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

John E. Floyd, Esq.
floyd@bmelaw.com

Steven J. Rosenwasser, Esq.
rosenwasser@bmelaw.com

Nicole G. Iannarone, Esq.
iannarone@bmelaw.com

Jill A. Pryor, Esq.
pryor@bmelaw.com

Robert L. Ashe, III, Esq.
ashe@bmelaw.com

Michael A. Caplan, Esq.
caplan@bmelaw.com

Elizabeth G. Eager
eager@bmelaw.com

and that I have caused a copy to be served by U.S. Mail on the following attorneys

of record:

> James W. Christian, Esq.
> CHRISTIAN, SMITH & JEWELL LLP
> 2302 Fannin, Suite 500
> Houston, TX  77002
>
> Robert F. Wise, Jr., Esq.
> Melissa Aoyagi, Esq.
> DAVIS POLK & WARDWELL LLP
> 450 Lexington Avenue
> New York, NY  10017
>
> Richard H. Klapper, Esq.
> Richard C. Pepperman, II, Esq.
> Tracy Richelle High, Esq.
> SULLIVAN & CROMWELL LLP
> 125 Broad Street
> New York, NY  10004-2498
>
> Stephen L. Ratner, Esq.
> Brian L. Friedman, Esq.
> PROSKAUER ROSE LLP
> 1585 Broadway
> New York, NY  10036

Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Peter J. Isajiw, Esq.
Heather L. Fesnak, Esq.
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY  10281

Fraser L. Hunter, Jr., Esq.
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY  10022

Andrew J. Frackman, Esq.
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036

Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Jeffrey M. Gould, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005

_/s/_ James W. Cobb
_____

James W. Cobb
Georgia Bar No. 420133
rsinkfield@rh-law.com