# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

TASER INTERNATIONAL, INC.,
*et al.*,

      Plaintiffs,

v.

MORGAN STANLEY & CO. INC.,
*et al.*,

      Defendants.

Civil Case No.
1: 10-cv-03108

## DEFENDANT MORGAN STANLEY & CO. INCORPORATED'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL A RESPONSE TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS FROM <u>TRADERS AND SALES PERSONNEL</u>

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..............................................................................1

FACTUAL BACKGROUND .................................................................................3

LEGAL STANDARD ...........................................................................................8

ARGUMENT ........................................................................................................9

I.      PLAINTIFFS' REQUEST FOR INFORMATION AND DOCUMENTS
        FROM ALL TRADERS WHO FACILITATED, EXECUTED OR
        CLEARED TRADES IN TASER IS IMPROPER .........................................9

        A.      Plaintiffs' Request for Information and Documents from All
                Traders Violates the Parties' August 12, 2009 Agreement..................9

        B.      The Extraordinary Burden and Expense of Collecting, Reviewing
                and Producing Documents from Any Trader Who Facilitated a
                TASER Transaction over a Six-and-a-Half-Year Period Far
                Outweighs the Relevance of these Documents to Plaintiffs' Claims .10

II.     PLAINTIFFS' REQUEST FOR INFORMATION AND DOCUMENTS
        FROM PETER MULLER AND TRADERS ASSOCIATED WITH
        CERTAIN CODES OR MARKET PARTICIPANTS ..................................12

        A.      The Parties' August 12, 2009 Agreement Does Not Require
                Defendants to Produce Documents .....................................................12

        B.      The Custodians That Plaintiffs Have Identified Are Unlikely to
                Have Responsive Documents..............................................................13

        C.      MSCO Cannot Identify the Traders Associated with the Trading
                Numbers Identified by Plaintiffs Because They Are Not Assigned
                to Specific Traders.............................................................................15

i

D.    MSCO's Proposal Is Reasonably Designed to Limit the Burden of
      Discovery While Producing Any Relevant Documents......................16

III.   PLAINTIFFS' WAIVER ARGUMENTS LACK MERIT ...........................17

IV.   SANCTIONS ARE INAPPROPRIATE.......................................................20

CONCLUSION ..................................................................................................22

Defendant Morgan Stanley & Co. Incorporated ("MSCO") respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Compel Defendants Banc of America Securities, LLC; Merrill Lynch, Pierce, Fenner & Smith, Inc; and Morgan Stanley & Co. Inc. to Respond to Interrogatories and Produce Documents from Traders and Sales Personnel.

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs move to compel production by MSCO of documents from any of its traders who were involved in any trade of TASER stock over a six-year period of time.  Plaintiffs' demand would impose undue burden on MSCO and force MSCO to search for and produce a vast quantity of ultimately irrelevant material. MSCO has already produced extensive trading records and data that would easily enable Plaintiffs to formulate significantly more tailored and relevant requests. Not only would satisfying Plaintiffs' current demand impose an enormous—and needless—burden on MSCO, but it would also contravene the Plaintiffs' August 21, 2009 express agreement to provide MSCO with the "specific trades, traders, trading and/or sales personnel, trading accounts, trading desks, or time frames" for which they seek such information. (August 12, 2009 agreement at 5, 6, 8, Interrogatory Nos. 1(3), 1(4), 2(3), 2(4) and 5(4).)

Unwilling to narrow their search, Plaintiffs now request that MSCO be ordered to produce documents from "all traders who facilitated, executed, and/or cleared trades in TASER securities" on behalf of MSCO proprietary accounts or market participants.  (Brief in Support of Plaintiffs' Motion to Compel Defendants Banc of America Securities, LLC; Merrill Lynch, Pierce, Fenner & Smith, Inc; and Morgan Stanley & Co. Inc. to Respond to Interrogatories and Produce Documents from Traders and Sales Personnel ("Pls. Mot.") 23-24 (emphasis supplied).) Plaintiffs advance two arguments:  first, that the August 12, 2009 agreement does not obligate them to identify specific trades, traders or time periods, and that they are entitled to "information regarding *any* of the following topics with no precondition other than they first receive and review trading data:  'specific trades, traders, trading and/or sales personnel, trading accounts, trading desks or trading time frames'" (*id.* 22.) (emphasis in original); and, second, the paradoxical argument that they already have—in September and October of 2010—identified specific traders in compliance with the August 12, 2009 agreement, and that MSCO has somehow waived its right to resist answering those allegedly much narrower interrogatories.  (*Id.* 13 ("[p]ursuant to the Agreement, Plaintiffs identified certain traders or sales personnel").)

2

Because Plaintiffs have never complied with their obligation under the August 12, 2009 Agreement, Plaintiffs' Motion to Compel should be denied and, instead, Plaintiffs should be directed to do as they have already promised:  identify those specific trades, traders, trading desks, trading accounts or time periods that Plaintiffs reasonably believe are connected to the alleged market manipulation.

## **FACTUAL BACKGROUND**

Plaintiffs' First Set of Interrogatories in 2009 demanded that Defendants identify a wide variety of individuals with varying responsibilities during the January 1, 2003 through May 31, 2009 time period, which Plaintiffs claim is the relevant time period.  (Plaintiffs' First Interrogatories to Each Defendant, attached as Exhibit F to the Eager Aff.)  Defendants, including MSCO, objected to Plaintiffs' sweeping requests, and the parties had a number of meetings in an attempt to resolve the scope of the interrogatories.  Those conferrals resulted in an agreement on August 12, 2009, which among other things narrowed the interrogatories with respect to traders and sales personnel:

> To the extent this interrogatory seeks identification of traders or any trading and/or sales personnel, Plaintiffs and Defendants agree that Defendants are not required to identify such persons at this time.  Instead, after Plaintiffs have received and reviewed trading and other data, Plaintiffs will inform Defendants of specific trades, traders, trading and/or sales personnel, trading

accounts, trading desks, or time frames for which they seek information as to traders.

(August 12, 2009 agreement at 5, 6, 8, Interrogatory Nos. 1(3), 1(4), 2(3), 2(4) and 5(4).)  The point of the agreement was that rather than attempt to identify every trader over a six-and-a-half-year period who might have traded TASER stock, Plaintiffs would review the trade data and specify traders that engaged in or time periods that involved allegedly manipulative or otherwise improper trading. Defendants would then determine whether Plaintiffs' requests should be narrowed due to relevancy and burden.

On April 20, 2010, months after receiving MSCO's trading records and email productions, Plaintiffs requested that MSCO (1) "identify and produce responsive documents from the individuals associated with the following trading numbers and/or identifiers: 00003, 00388, 03319, 03420, 3, 1441, 3319, ftsconp and msssiusr" and (2) produce responsive documents from Peter Muller.  (Email from Elizabeth G. Eager to Robert F. Wise, Jr. & Melissa T. Aoyagi, dated April 20, 2010, attached as Exhibit 8 to the Eager Aff.)  Plaintiffs further indicated that their request was only "a partial list," which they would likely supplement with additional traders in the future.  (*Id.*)

4

On May 5, 2010, MSCO responded that certain of the identified codes referred to systems or groups within MSCO, and not to specific traders. (Email from Melissa T. Aoyagi to Elizabeth G. Eager and Steven J. Rosenwasser, dated May 5, 2010, attached as Exhibit 1 to the Declaration of Melissa T. Aoyagi ("Aoyagi Decl."))  MSCO also objected to conducting repeated ESI searches and advised that it would undertake an electronic search only after Plaintiffs finalized their list of proposed custodians. (*Id.*)  Finally, MSCO explained that Peter Muller was employed in the process driven trading group (PDT), which engages exclusively in systematic trading driven by computer algorithms, as opposed to, for example, investment decisions by human traders. (*Id.*)  Accordingly, MSCO responded that it was "unclear as to what responsive ESI you believe Mr. Muller possesses; however, to the extent that you identify a specific time frame during which you allege that Mr. Muller engaged in trading likely to generate responsive ESI, we are willing to discuss with you the possibility of searching his documents." (*Id.*)  Finally, during a subsequent phone call between the parties on May 12, 2010, MSCO reiterated its position that it was willing to produce ESI from traders provided Plaintiffs narrowed their requests to appropriate custodians and/or time-

periods.  (*See* Email from Elizabeth G. Eager to Robert F. Wise, Jr., dated May 13, 2010, attached as Exhibit 9 to the Eager Aff.)

Over the next few months, the parties exchanged a series of emails in which Plaintiffs persisted in their refusal to narrow the scope of their document requests and, moreover, insisted that MSCO utilize such patently overbroad search terms as "loan," "locate," "borrow," "hard," and "compliance."  (*Id.* ("Plaintiffs have reviewed the data and . . . cannot narrow the date range for data requested from traders."); Email from Elizabeth G. Eager to Robert F. Wise, Jr. & Melissa T. Aoyagi, dated June 11, 2010, attached as Exhibit 10 to the Eager Aff. (listing keywords).)  MSCO nonetheless agreed to attempt to identify those discretionary proprietary traders who had executed trades in TASER during the six-and-a-half-year time period (*see* Email from Melissa T. Aoyagi to Elizabeth G. Eager and Steven J. Rosenwasser, dated June 16, 2010, attached as Exhibit 2 to the Aoyagi Decl.)  and in August 2010, MSCO sampled and reviewed over 30,000 rows of data in response.  MSCO informed Plaintiffs that it was prepared to search the emails of those proprietary traders identified from this sample if the parties could agree on more limited and relevant keywords.

Despite these concessions by MSCO, on September 17, 2010, Plaintiffs suddenly expanded their requests to include documents from all traders responsible for the accounts of some one hundred ninety-five different customers.  (*See* Email from Elizabeth G. Eager to Robert F. Wise, Jr. & Melissa T. Aoyagi, dated September 17, 2010, attached as Exhibit 11 to the Eager Aff.)  Negotiations stalled as a result of this expanded and clearly overbroad request.

On September 28, 2010, the case was removed by a co-defendant to federal court, and both parties agreed to halt discovery temporarily pending the parties' Fed. R. Civ. P. 26(f) conference on October 8, 2010 and their submission of a Joint Preliminary Report and Discovery Plan.  (*See* Email from Steven J. Rosenwasser to Andrew Frackman, dated October 4, 2010, attached as Exhibit 3 to the Aoyagi Decl.)  A Rule 26(f) conference was held on October 8, 2010, and the parties agreed to a schedule for completion of their responses to certain then-pending discovery requests that had been served before the removal.  The email correspondence regarding trader discovery was not specifically addressed in the Rule 26(f) report or the discussions among counsel.  On December 7, 2010, Plaintiffs filed the instant motion to compel the production of documents from traders and/or sales personnel.

7

## **LEGAL STANDARD**

Discovery may be limited where the burden or expense of the proposed discovery outweighs its likely benefit given the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving those issues.  Fed. R. Civ. P. 26(b)(2)(c); *see also Hill v. Emory Univ.*, 346 F. App'x 390, 392 (11th Cir. 2009); *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1205 (11th Cir. 2003) ("the information sought must be relevant and not overly burdensome to the responding party").  In addition, the burden of proposed discovery should not be evaluated in isolation, but rather should be considered within the context of the total cost of discovery to date.  *See, e.g.*, *Jones v. Goord*, No. 95 Civ. 8026, 2002 U.S. Dist. LEXIS 8707, at *43-44 (S.D.N.Y. May 15, 2002).

Discovery is also not to be used as a "fishing expedition."  *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).  While standards for discovery are liberal, parties making requests must have some reasonable basis to believe that their requests will result in relevant evidence.  Courts furthermore require that parties exercise self-discipline in the service of even unambiguously relevant discovery requests, and courts have applied this principle to intervene in cases where the

8

issues are complex and the right to liberal discovery unquestioned. *See, e.g.*, *In re U.S. Fin. Sec. Litig.*, 74 F.R.D. 497, 498 (S.D. Cal. 1975) (holding, in securities class action, that despite court's belief in "unfettered discovery of all materials relevant to the case . . . and that discovery need not be limited to facts admissible at trial," discovery requests still need to be "calculated to discover important facts rather than numerous and minor evidentiary details").

## ARGUMENT

### I.   PLAINTIFFS' REQUEST FOR INFORMATION AND DOCUMENTS FROM ALL TRADERS WHO FACILITATED, EXECUTED OR CLEARED TRADES IN TASER IS IMPROPER

#### A.   Plaintiffs' Request for Information and Documents from All Traders Violates the Parties' August 12, 2009 Agreement

As noted above, Plaintiffs advance two alternative arguments.  Plaintiffs first claim that the August 12, 2009 agreement does not require that they identify "specific trades, traders, trading and/or sales personnel, trading accounts, trading desks or trading time frames" (Pls. Mot 22.) and, accordingly, request that the Court "[o]rder Defendants to identify <u>all</u> traders who facilitated, executed and/or cleared transactions in TASER securities" for both proprietary accounts and on behalf of market participants.  (*Id.* at 24 (emphasis supplied).)  Similarly, Plaintiffs request that the Court order the production of documents "from <u>all</u> traders who

9

facilitated, executed and/or cleared trades in TASER securities" for proprietary accounts and on behalf of certain market participants. (*Id.* at 23-24 (emphasis supplied).)

This position contravenes the plain terms of the August 12, 2009 agreement, which requires that Plaintiffs "inform Defendants of <u>specific</u> trades, traders, trading and/or sales personnel, trading accounts, trading desks, or time frames for which they seek information as to traders." (August 12, 2009 agreement at 5, 6, 8, Interrogatory Nos. 1(3), 1(4), 2(3), 2(4) and 5(4) (emphasis supplied).)

**B.     The Extraordinary Burden and Expense of Collecting, Reviewing and Producing Documents from Any Trader Who Facilitated a TASER Transaction over a Six-and-a-Half-Year Period Far Outweighs the Relevance of these Documents to Plaintiffs' Claims**

MSCO has repeatedly indicated that it is willing to produce emails from those traders who Plaintiffs allege manipulated the price of TASER during the relevant period. However, Plaintiffs ask this Court to order MSCO to collect, review, and produce documents "from all traders who facilitated, executed or cleared transactions in TASER securities" in MSCO's proprietary accounts or on behalf of a list of one hundred ninety-five market participants over a six-and-a-half-year period. (Pls. Mot. 23-24.) This request implicates hundreds of potential

custodians.  At any given time, numerous trading personnel may be involved in trading an equity security, such as TASER.  Identifying which traders at an equity trading desk as large as that at MSCO were involved in TASER trades on even one given trading date would be a substantial task.  And to undertake this analysis for six-and-a-half-years, each of which has approximately 250 trading days, would impose an enormous and unwarranted burden on MSCO.  Surely, Plaintiffs are not claiming that every TASER trade executed by MSCO over the entire period was done with manipulative intent.

Furthermore, the extremely common search terms Plaintiffs propose to use will require MSCO to review countless irrelevant documents including any document mentioning Reg* Sho, Violat*, conversion*, fail* to deliver and fail* to receive.[1]  The extraordinary burden of this search clearly outweighs the value of the limited number of relevant documents it could produce.

As discussed above, the burden of discovery should not be assessed in isolation but rather should be viewed in the context of both the total cost of discovery to date and the amount in controversy.  *See, e.g.*, *Jones*, 2002 U.S. Dist.

---

[1] The * indicates a root expander, which retrieves documents containing words with all possible variant endings.  For example, fail* would retrieve documents containing the words fails, failure, failures, failed and failing.

11

Lexis 8707, at *44.  MSCO has already spent an extraordinary amount of time and millions of dollars responding to Plaintiffs' numerous discovery requests.[2]  The burden of now collecting, reviewing and producing the emails of hundreds of traders over a six-and-a-half-year period clearly outweighs the limited relevance of any documents that will be discovered.

## II.   PLAINTIFFS' REQUEST FOR INFORMATION AND DOCUMENTS FROM PETER MULLER AND TRADERS ASSOCIATED WITH CERTAIN CODES OR MARKET PARTICIPANTS

### A.   The Parties' August 12, 2009 Agreement Does Not Require Defendants to Produce Documents

Plaintiffs' alternative argument—that they have identified specific traders and are entitled to documents from these traders on Plaintiffs' terms—is also unavailing.  As an initial matter, the August 12, 2009 agreement does not require the Defendants to produce the documents now sought by Plaintiffs.  Rather, the agreement concerns Defendants' response to Plaintiffs' interrogatories, and the production of much narrower categories of documents than Plaintiffs now seek. (*See* August 12, 2009 agreement at 5, 6 Interrogatory Nos. 1(2) and 2(2) (each Defendant will "produce as many organization charts as it reasonably locates"),

---

[2] To date, MSCO has searched ESI for 82 custodians and produced over 140,000 files, spanning over 3 million pages.

Interrogatory Nos. 1(5) and 2(5) (requiring Defendants to "[i]dentify and provide samples of exception reports").)  In particular, the agreement does <u>not</u> govern the ultimate scope or timing of any ESI production concerning traders, but rather establishes a protocol pursuant to which Defendants would answer Plaintiffs' interrogatories.

### B.     The Custodians That Plaintiffs Have Identified Are Unlikely to Have Responsive Documents

Plaintiffs claim to have "identified certain traders or sales personnel and asked Defendants to produce their documents." (Pls. Mot. 13.)  Yet the only trader that Plaintiffs have specifically identified is Peter Muller.  (*See id.* n.27; *see also, id.* at 14 (table listing identified traders).)  He is what is often referred to as a program trader—one who relies on a computer program to identify which stocks to buy or sell and in what quantities at which times.  Manipulation requires intent.  It is common knowledge that computers do not have intent, at least none that humans can discern.  Plaintiffs' demand for information about program trading is, in the context of the allegations here, totally unwarranted.  There is no reason to believe that Mr. Muller would possess responsive documents.

Plaintiffs also demand that MSCO search the emails of those "traders" assigned to the accounts of one hundred ninety-five entities, mostly hedge funds or

13

other institutional investors, some of which were MSCO prime brokerage customers. This supposed limitation does not significantly reduce the burden for MSCO. Traders are generally not assigned to customer accounts, and many prime brokerage customers directed their own trades, including in TASER, through an electronic direct market access (DMA) system. There are customer service representatives assigned to cover customer accounts, including being available to answer customer questions, negotiate rates, deal with technical problems and otherwise service the account. They do not execute trades. Consequently, until and unless Plaintiffs can identify particular trades or defined time periods in which they believe there may have been manipulative trading, it is difficult for MSCO to identify relevant and responsive traders and customer service representatives.

In short, after nearly a year and a half of discovery, Plaintiffs point to nothing that suggests that Peter Muller, an algorithmic trader, or the client service representatives responsible for servicing the accounts of the one hundred ninety-five market participants they identify, would possess documents relevant to Plaintiffs' claims. Accordingly, Plaintiffs' motion should be denied.

**C.     MSCO Cannot Identify the Traders Associated with the Trading Numbers Identified by Plaintiffs Because They Are Not Assigned to Specific Traders**

Plaintiffs also request that MSCO identify and provide responsive documents from the individuals associated with the registered representative numbers:  00003, 00388, 03319, 03420, 3, 1441 and 3319.  As has been explained to Plaintiffs, with the exception of 03420[3], the numbers identified by Plaintiffs are unassigned and were utilized either for certain types of trades[4] or by large groups of traders including the "Hedgefunds Away Trades group" and the "New York Electronic Trading Services group."  MSCO is willing to identify the traders that used these numbers during specific time periods, but it would be extremely burdensome for MSCO to identify and produce documents from all of the employees who utilized these unassigned reference numbers over the six-and-a-half-year period at issue.

---

[3] The number 03420 is assigned to Fiona Nicole Mackenzie; MSCO is willing to search the documents of Ms. Mackenzie, if the parties can reach an agreement regarding proper keywords.

[4] The number 1441, for example, was used for transactions involving MS International Plc's customers.

Plaintiffs also seek documents from the individuals associated with the terms "ftsconp" and "msssiusr."  Again, MSCO has explained to Plaintiffs that the terms "ftsconp" and "msssiusr" are not associated with traders, but rather designate systems utilized by the Securities Lending department.  The production of documents from the Securities Lending department was the subject of an entirely separate agreement that MSCO has already fully satisfied with its productions on December 31, 2009 and June 1, 2010.  (*See, e.g.*, Email from Melissa T. Aoyagi to Steven J. Rosenwasser, attached as Exhibit 2 to the Eager Aff.; December 17, 2009 Stipulation and Order, attached as Exhibit H to the Eager Aff.)

## D.   MSCO's Proposal Is Reasonably Designed to Limit the Burden of Discovery While Producing Any Relevant Documents

Throughout the parties' negotiations, MSCO has expressed a willingness to produce documents from those proprietary traders who Plaintiffs allege were involved in market manipulation.  In addition, MSCO has analyzed a sampling of the trading data for the six-and-a-half-year period and identified those traders who were frequently involved in executing trades in TASER.  MSCO is willing to search the emails of these traders or of a select group of traders identified by Plaintiffs provided Plaintiffs narrowly tailor their search terms to capture relevant

16

and responsive materials.[5]  Both of MSCO's proposed solutions limit, to some

degree, the substantial cost of this discovery, while also accommodating Plaintiffs'

desire for documents from traders.  Accordingly, MSCO respectfully requests that

the Court limit Plaintiffs' discovery requests by restricting the keywords to those

reasonably targeted to produce relevant documents and limiting the number of

custodians based on either of MSCO's two proposals.

## III.   PLAINTIFFS' WAIVER ARGUMENTS LACK MERIT

Plaintiffs make two final arguments regarding MSCO's alleged failure to

answer Plaintiffs' interrogatories:  they claim MSCO waived its right to challenge

Plaintiffs' interrogatories by asserting only general objections and by failing to

object to the interrogatories in a timely manner.  Both positions lack merit.  First,

Plaintiffs advance the argument that MSCO only asserted general objections to

Plaintiffs' interrogatories; that such objections provide a legally "insufficient basis

upon which to withhold a response;" and that "[b]ecause Defendants have not

---

[5] MSCO would propose the following key terms are likely to identify almost all of the relevant documents:  (1) TASER, (2) TASR, (3) TASRE, (4) 87651B104, (5) "reg sho," (6) "regulation sho," (7) "reg short," (8) "regulation short," and (9) "short w/20 (naked or abusive)." Several of Plaintiffs' proposed terms including "flex," "conversion," "violat*," "(borrow or fail) w/20 negative," and "(without or fail*) w/5 (locat* or deliv* or receiv*) will generate a large number of irrelevant documents.

asserted any specific objection to the interrogatories, each must answer." (Pls. Mot. 21.)

Plaintiffs' first argument is based on a faulty factual premise. In reality, MSCO provided detailed responses to Plaintiffs' interrogatories describing the individuals responsible for overseeing MSCO's adherence to the relevant regulations and laws in the Regulatory Control Group, the Securities Lending group, the ISG-Settlements Group, the OCC Options Clearance group and the ISG Compliance Americans group including its Institutional Securities Oversight sub-group, its Institutional Equities Sales and Trading sub-group, its Securities Lending subgroup and its Operations subgroup. (*See* Morgan Stanley & Co. Incorporated's Responses to Plaintiffs' First Interrogatories to Each Defendant at 14, 17, 28, attached as Exhibit U to the Eager Aff.) With respect to the specific request to identify traders, MSCO also responded that "[t]o the extent this interrogatory seeks identification of traders or any trading and/or sales personnel, MSCO will respond in accordance with the parties' agreement." (*Id.*) As previously discussed, the parties' August 12, 2009 agreement unmistakably indicated "to the extent this interrogatory seeks identification of traders . . . Defendants are not required to identify such persons at this time" and, accordingly, MSCO's response was

18

consistent with the parties' previous agreement.  (August 12, 2009 agreement

regarding Interrogatory Nos. 1(3) and 2(3) at 5, 6, attached as Exhibit 1 to the

Eager Aff.)

Plaintiffs' next claim that MSCO effectively waived its right to resist

document production because it did not respond to interrogatory requests within

thirty days as required under the August 12, 2009 agreement is likewise without

merit.  (Pls. Mot. 22.)  In support of its theory, Plaintiffs cite a September 2010

email—which demanded the production of ESI to which Plaintiffs are not entitled

under the August 12, 2009 agreement or any agreement or order—to which MSCO

allegedly did not respond.  (Pls. Mot. 11 n.19.)[6]

The email cited by Plaintiffs was sent on September 17, 2010.  On

September 28, 2010, this case was removed from Georgia State Court to the United

States District Court.  At the time, both parties agreed that all discovery not court

ordered was temporarily halted pending the Fed. R. Civ. P. 26(f) conference.  After

---

[6] Plaintiffs' September 17, 2010 email greatly expanded Plaintiffs' prior request for ESI traders, demanding that MSCO search ESI for not only proprietary traders, but for all traders responsible for the accounts of some one hundred ninety-five different customers.  (*See* Email from Elizabeth G. Eager to Robert F. Wise, Jr. & Melissa T. Aoyagi, dated September 17, 2010, attached as Exhibit 11 to the Eager Aff.)

19

the Rule 26(f) conference on October 8, 2010, the parties resumed discovery, but there was never any agreement with respect to Plaintiffs' informal email demands regarding traders' documents, which as outlined above were not within the scope of the August 12, 2009 agreement regarding interrogatory answers or any other formal discovery requests.

MSCO is not required to accept document demands and time schedules unilaterally imposed by Plaintiffs in random emails, and its refusal to do so is not a waiver of its objections or rights.  Plaintiffs' contention in their present motion that MSCO has waived its rights under the August 2009 agreement because it did not respond to email demands made shortly before and after the removal is clearly an after-the-fact argument concocted to circumvent Plaintiffs' failure to do what the August 2009 agreement required them to do.

## IV.  SANCTIONS ARE INAPPROPRIATE

Plaintiffs' request for their costs and expenses associated with this motion should be denied.  Courts do not award sanctions under Rule 37(a)(5)(B) when the motion or opposition "was substantially justified" or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5); *Kelly v. Old Dominion Freight Line, Inc.*, 376 F. App'x 909, 913 (11th Cir. 2010); *Hill v. Emory Univ.*,

346 F. App'x 390, 392 (11th Cir. 2009).  "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997) (*citing Pierce v. Underwood*, 487 U.S. 552, 556 (1988)); *Mohawk Indus., Inc. v. Interface, Inc.*, No. 4:07-cv-0212 (HLM), 2008 WL 5210420 at *5 (N.D. Ga. Dec. 03, 2008); *Morgan v. Georgia Power Co.*, No. 7:06-cv-50 (HL), 2007 WL 1129337 at *1 (M.D. Ga. Apr. 16, 2007) ("[A] party's objection to a discovery request is substantially justified if the objection raises an issue about which there is a genuine dispute or if reasonable people could differ as to the appropriateness of the discovery request.").  As discussed above, in response to Plaintiffs' discovery requests, MSCO met and conferred with Plaintiffs in good faith and repeatedly offered to undertake the substantial expense of searching for, retrieving and producing documents if and when Plaintiffs would narrow their requests so as to reduce the burden on MSCO.  It is clear that MSCO's position was "substantially justified."[7]

---

[7] MSCO respectfully requests that if this Court grants Plaintiffs' motion, it decline to award Plaintiffs their costs and expenses.

21

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion to

Compel MSCO to produce emails and documents from MSCO's traders and sales

personnel.[8]

Dated:  December 27, 2010

                                      /s/ Richard H. Sinkfield

                                      Richard H. Sinkfield
                                        Georgia Bar No. 649100
                                        RSinkfield@rh-law.com

                                        ROGERS & HARDIN LLP
                                        229 Peachtree Street, N.E.
                                        2700 International Tower
                                        Atlanta, Georgia 30303
                                        Tel.: 404-522-4700

                                        Robert F. Wise, Jr.
                                        Melissa T. Aoyagi
                                        DAVIS POLK & WARDWELL LLP
                                        450 Lexington Avenue
                                        New York, New York  10017
                                        Tel: (212) 450-4000
                                        *Attorneys for Defendant Morgan*
                                        *Stanley & Co. Incorporated*

---

[8] If the Court grants Plaintiffs' motion, MSCO respectfully requests that the Court require Plaintiffs to reasonably limit their requests to those traders and time periods connected with the alleged market manipulation and give MSCO at least sixty days to produce these documents.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

DEFENDANT MORGAN STANLEY & CO. INCORPORATED'S

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO

COMPEL A RESPONSE TO INTERROGATORIES AND PRODUCTION OF

DOCUMENTS FROM TRADERS AND SALES PERSONNEL has been prepared

in Times New Roman, 14-point font, as permitted by Local Rule 5.1(C).

/s/Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2010, I caused a copy of the foregoing

DEFENDANT MORGAN STANLEY & CO. INCORPORATED'S

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO

COMPEL A RESPONSE TO INTERROGATORIES AND PRODUCTION OF

DOCUMENTS FROM TRADERS AND SALES PERSONNEL to be filed with

the Clerk of Court using the CM/ECF system, which will automatically send e-

mail notification of such filing to the following attorneys of record:

> John E. Floyd, Esq.
> floyd@bmelaw.com
>
> Steven J. Rosenwasser, Esq.
> rosenwasser@bmelaw.com
>
> Nicole G. Iannarone, Esq.
> iannarone@bmelaw.com
>
> Jill A. Pryor, Esq.
> pryor@bmelaw.com
>
> Robert L. Ashe, III, Esq.
> ashe@bmelaw.com
>
> Michael A. Caplan, Esq.
> caplan@bmelaw.com
>
> Elizabeth G. Eager

eager@bmelaw.com

and that I have caused a copy to be served by U.S. Mail on the following attorneys
of record:

James W. Christian, Esq.
CHRISTIAN, SMITH & JEWELL LLP
2302 Fannin, Suite 500
Houston, TX  77002

Robert F. Wise, Jr., Esq.
Melissa Aoyagi, Esq.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017

Richard H. Klapper, Esq.
Richard C. Pepperman, II, Esq.
Tracy Richelle High, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498

Stephen L. Ratner, Esq.
Brian L. Friedman, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036

2

Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Peter J. Isajiw, Esq.
Heather L. Fesnak, Esq.
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY  10281

Fraser L. Hunter, Jr., Esq.
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY  10022

Andrew J. Frackman, Esq.
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036

Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Jeffrey M. Gould, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005

/s/ James W. Cobb
_____

James W. Cobb
Georgia Bar No. 420133
rsinkfield@rh-law.com

3