# EXHIBIT 2

**From:** Steven J. Rosenwasser [mailto:rosenwasser@bmelaw.com]
**Sent:** Thursday, June 17, 2010 2:06 PM
**To:** Aoyagi, Melissa T.; Elizabeth G. Eager
**Cc:** Wise, Jr., Robert F.
**Subject:** RE: Morgan Stanley June 10 Phone Call Follow Up

Melissa,

Thank you for your response below.  Our comments are below yours in all capital letters.

Steven

**From:** Aoyagi, Melissa T. [mailto:melissa.aoyagi@davispolk.com]
**Sent:** Wednesday, June 16, 2010 6:25 PM
**To:** Elizabeth G. Eager; Steven J. Rosenwasser
**Cc:** Wise, Jr., Robert F.
**Subject:** RE: Morgan Stanley June 10 Phone Call Follow Up

Liz and Steven,

Thank you for your e-mail.  We agree with your summary, subject to the modifications and
additional points set out in the annotated copy below.

Have a good evening,
Melissa


**Melissa T. Aoyagi**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

212 450 4729   tel
212 701 5729   fax
melissa.aoyagi@davispolk.com

**DavisPolk**

Confidentiality Note: This email is intended only for the person or entity to which it is addressed and may contain information
that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this email or the
information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message
to the intended recipient, is prohibited. If you have received this email in error, please notify the sender immediately and destroy
the original message and all copies.

**From:** Elizabeth G. Eager [mailto:eager@bmelaw.com]
**Sent:** Friday, June 11, 2010 3:19 PM
**To:** Wise, Jr., Robert F.; Aoyagi, Melissa T.
**Cc:** Steven J. Rosenwasser
**Subject:** Morgan Stanley June 10 Phone Call Follow Up

Bob and Melissa,

I am emailing to follow up on our telephone call of yesterday.  This email is to serve as a summary of our discussion.  Please let us know if you disagree with the substance of our summary.

On the phone we described the following topics:  (1) Traders; (2) Data questions; (3) 3rd interrogatories and 4th Requests for Production; (4) 30b6 Deposition Notice regarding investigations and inquiries; (5) Amended Second Interrogatory response; (6) Evaluations; (7) Requests for Admissions; (8) Profit and Loss Data; (9) Position documents; (10) Lobbyists; (11) 30b6 on ESI.

*(1) TRADERS*

Plaintiffs have identified certain numbers and asked you to identify the traders associated with those codes.  You say the codes we have identified are tied to systems and/or trading desks.  We asked you to provide us more information about the systems and desks that are associated with the trading desks to see if we can get you more information to identify the traders we are interested in.  You agreed.

You stated that there would be traders at the NASDAQ trading desk and at proprietary trading desks who handled TASER trades.  You agreed to use reasonable efforts to identify those traders.

For the proprietary trading desks, there are two types of prop traders:  (1) algorithmic/ quant traders and (2) stock pickers.  You indicated that most proprietary traders do trading through individual accounts that are tied to the specific proprietary trader.  You agreed to use reasonable efforts to identify those traders.

You indicated that algorithmic/ quant traders are unlikely to have responsive ESI because the trades they make are based on computer formulas that look at market data, not at specific stocks.  Steven explained that Plaintiffs have seen instances where algorithmic/ quant traders violated Regulation SHO because, among other things, they failed to use locates.  Plaintiffs request that you identify these traders.  Steven explained we can still negotiate on keywords and limit the time frame based on when the traders were engage in TASER transactions.

For the second group of prop traders who you described as "stock pickers," you are working on identifying the proprietary traders who traded in TASER accounts.  Plaintiffs request you identify these traders.

For the sake of clarity, we note that notwithstanding that the stipulation agreed to last year requires Plaintiffs to identify particular trades or groups of trades in TASER as to which we will seek to identify the associated MSCO traders, as an accommodation and to move the process forward, MSCO is in the process of attempting to identify discretionary proprietary traders (as contrasted with those traders engaged in program-based trading). We continue to disagree about program traders and do not accept that the possibility of missing locates with respect to TASER, as to which there is no evidence in this case concerning MSCO of which we are aware, justifies a full e-mail search for such traders. Finally, as to the NASDAQ traders who handled customer orders, we have no way of identifying all the individuals over a six-and-one-half year period who executed customer trades in TASER. Consistent with the agreement reached last year, Plaintiffs must narrow the time period to permit us to attempt to conduct the research that would be required to identify any such traders.

WE APPRECIATE YOU INQUIRING INTO DISCRETIONARY PROPRIETARY TRADERS. DO YOU HAVE ANY EXPECTATION AS TO WHEN YOU WILL DISCLOSE THEM?

WHILE WE APPRECIATE YOUR EFFORTS WITH RESPECT TO PROPRIETARY TRADERS, WE STILL NEED YOU TO PLEASE PROVIDE THE INFORMATION WE REQUESTED WITH RESPECT TO THE TRADERS AND TRADE NUMBERS WE IDENTIFIED IN OUR APRIL 20 EMAIL. THIS INCLUDES, BUT IS NOT LIMITED TO: (A) IDENTIFYING THE PERSONS INVOLVED WITH THE SYSTEMS WHO TRADED TASER; (B) THE PERSONS WE IDENTIFIED WITH NUMBERS 3, 388, 3420, 1441 AND 3319; AND (C) AGREE TO PRODUCE TRADER EMAILS FOR MR. MULLER. AS TO MULLER, AS I INDICATED, WE HAVE REASON TO BELIEVE THAT DEFENDANTS FAILED TO CONDUCT PROPER LOCATES AND OTHER VIOLATIONS WITH RESPECT TO PROGRAM TRADING, AND EMAILS SHOWING KNOWLEDGE OF THOSE VIOLATIONS ARE RELEVANT TO THIS CASE.

PLEASE NOTE THAT TRADER EMAILS ARE RELEVANT TO OUR IDENTIFICATION OF UNLAWFUL TRADES, AND THUS WE ASK AGAIN THAT YOU IMMEDIATELY BEGIN SEARCHING FOR TRADER EMAILS AND HARD COPY DOCUMENTS FOR THE PEOPLE WE IDENTIFIED. WE ARE GLAD TO DISCUSS KEYWORDS IF YOU WANT TO UTILIZE THAT APPROACH (AND ASSUMING YOU AGREE THAT PLAINTIFFS ARE ALSO PERMITTED TO USE KEYWORDS TO SEARCH FOR THE DOCUMENTS YOU REQUESTED AS WE NEED MUTUALITY).

*(2) DATA QUESTIONS*
You will give us written answers on these questions. We specifically addressed issues related to MSSI and blue sheets/ trade runs for listed options.

During our meet and confer, you also agreed to review the MSSSI Loanet reports that MSCO produced to you last Fall to determine whether those documents resolved the issues to which you alluded. To the extent that they do not resolve those issues, you agreed to identify particular questions for us. Further, you indicated that you were missing trade runs for listed options from MSCO; we responded that we produced trade runs covering listed options in Taser last fall and you agreed to review those data.

3

*(3) THIRD INTERROGATORIES/ FOURTH REQUESTS FOR PRODUCTION*
You object to identifying all individuals involved in the investigations or
inquiries.  Steven explained that the interrogatory does not ask you to identify every
individual who ever worked on an investigation or inquiry.  Your obligation is instead to
identify those who "actively participated."  We are not asking you to identify individuals
who were only tangentially involved.  We agreed to address this issue in conjunction
with the 30b6 notice on investigations (see below).

We requested that you please go through our notice and inform us of those topics and
subtopics you object to, partially object to and consent to.  You agreed that you would
do this and would get us a response by next Friday.  We agreed to postpone the
deposition while we conferred in good faith.  Though, we reserved the right to provide a
new date for the deposition at any time (though, providing you with the same period of
time you had between yesterday and the original deposition date).

> You agreed to review our production and specify which fines and sanctions
> proceedings that you are interested in (which you have done).  With respect to
> those proceedings, we agreed to provide you with an annotated copy of the
> exhibit noting what we objected to and what we would provide.  We agreed to
> do so by June 18.

*(4) AMENDED SECOND INTERROGATORIES*
We discussed a few of your responses.
For topic 5c, you indicated you did not find any violations.
For topic 5d, you are not currently aware of any violations.  TASER may have been
identified in certain reports, but you would have to do an "audit' to know if there was a
violation.  Because the parties agreed you were not required to do an audit, you are not
currently aware of any violations.
For topic 5m, we discussed your limitation that excluded unintentional
mismarkings.  You take the position that you cannot tell us if someone identified
unintentional mismarkings without doing a massive investigation and/or audit.  You
explained there are instances of Morgan Stanley surveillance reports that relate to
inconsistencies in markings.  To the extent these documents were sent to or from
custodians, they would be part of ESI.

> MSCO's position as to these interrogatories is set forth in its responses, and need not be
> repeated here.

>     AS WE INDICATED IN OUR CALL, WE NEED TO HAVE A COMPLETE
RECORD.  THUS, PLEASE ACKNOWLEDGE THE ABOVE STATEMENTS ARE TRUE OR WE
NEED TO MEET AND CONFER AGAIN.

*(5) EVALUATION DOCUMENTS*
We will discuss this issue on a group call.

**(6) SECOND & THIRD REQUESTS FOR ADMISSIONS**

We discussed the following specific responses in the Second Requests for Admission:

- Requests # 9, 16, 19, 20, 70.  Your denial is substantive as to customers who trade in normal margin account.  You are relying on your burden objection as to customers who trade through the Enhanced Financing Program.
- Request # 35, you agreed to look back at your response as it applies to voting.
- Request # 37, you agreed to look back at your response and to provide any clarification that you think is necessary.
- Requests ## 64-67, your position is that you denied the requests because you cannot tell the obligations of any specific client.  That is, you contend that Morgan Stanley cannot tell which particular clients or accounts have a fail to deliver or receive.  We are expressly relying on that representation now and in discovery moving forward.
- Requests ## 68, 69 you take the position that there is no obligation with respect to buy-ins of failures to receive, and if there is an obligation to buy-in, it would be an obligation to seek a buy-in from NSCC.

With respect to your first bullet point, to the extent that you are suggesting that we agreed that any denials were not "substantive," we disagree; however, we did agree to revisit MSCO's responses to RFA Nos. 9, 16, 19 and 20, to the extent possible (notwithstanding the burden associated with this review) and insofar as such responses relate specifically to the enhanced financing program within the requested time period.  RFA No. 70 is unclear as worded, as is reflected in MSCO's response and objections.

With respect to RFA Nos. 64 and 67, to be clear, we noted that the Firm's position at DTC are calculated on a net basis; accordingly, there almost never exists a one-to-one correlation between a particular trade, such as a short sale, and a Firm failure to deliver to the CNS system.  We expressly noted that this was our understanding with respect to the CNS system.  We noted that outside of the CNS system, with respect to ex-clearing transactions, generally speaking, MSCO can determine which trades (and which clients and/or accounts) have resulted in a failure to deliver to or receive from the counterparty to the transaction.  To the extent any of the foregoing is still not clear to you, please let us know and we would be happy to discuss further.

TO BE CLEAR, IT IS YOUR POSITION THAT MSCO CANNOT TELL WHICH PARTICULAR ACCOUNT OR CLIENT FAILED TO DELIVER/RECEIVE SHARES WITH RESPECT TO CNS FAILS?

With respect to RFA Nos. 68 and 69, we requested that you provide us with statutory or regulatory authority for your assertion that a participant in the CNS system is legally obligated to close out failures to receive from the CNS system.  You did not provide authority for that proposition.  We further noted that it is our understanding that with respect to transactions settling through the CNS system, participants face a central counterparty, NSCC, rather than other participants directly.  Accordingly, to the extent that a buy-in notice is issued, it is directed to NSCC, which, in turn, determines how to allocate the buy-in.  Finally, we noted that with respect to transactions settling outside of the CNS system, MSCO reviewed the data and responded to these RFAs accordingly.

WE WILL FOLLOW UP ON THIS.

We discussed the following specific responses in the Third Requests for Admission:

- Requests ## 9-12, 17, 21, 41, 46, and 48.  Your denial is a straight denial and is not based on an objection.
- Request # 31.  Your denial is based on your position because except for ex-clearing trades you do not deliver the stock to a buyer but instead deliver to CNS.
- Requests # 32, 40.  You agreed to look back at your response.
- Request # 43.  You denied the request because you take the position that a clearing broker does not engage in short sales but instead provides settlement on T+3.

> We are unclear what a "straight" denial is and MSCO continues to assert its denials and objections with respect to all RFAs.  Additionally, we stated that it is not our understanding that a clearing broker (as contrasted with an "executing broker," which is covered by a number of your other requests) "engages" in short sales and as such, the question is nonsensical.  For this reason, where your requests (as with RFA No. 43) incorporate this phrasing, MSCO's position is clearly set forth in the objections.

AS WE INDICATED DURING OUR CALL, BECAUSE OF THE STRUCTURE YOU CHOOSE TO USE FOR YOUR RESPONSES, IT IS SOMETIMES UNCLEAR WHETHER A "DENIAL" IS A DENIAL OF THE FACT IN THE REQUEST OR A "DENIAL" BASED SOLELY ON AN OBJECTION.  DURING OUR CALL, YOU DISTINGUISHED BETWEEN THE TWO AS MEMORIALIZED ABOVE.  IF YOUR POSITION HAS CHANGED, PLEASE LET US KNOW IN WRITING.

You made a general objection and excluded DVP/ RVP accounts from your response.  You take the position that DVP/ RVP accounts are not typically used for short sales, making them not relevant to the claims so you did not undertake to review data associated with DVP/ RVP accounts.  Plaintiffs believe that there are fails in these accounts, and you have an obligation to include them in your response.

> You agreed to ask your experts whether DVP/RVP accounts are typically used for short sales by customers and indicated that you would let us know.  It is not our understanding that short sales are typically undertaken by customers in such accounts.  We believe that it would be unduly burdensome for MSCO to analyze six-and-one half years of data associated with such accounts in connection with these requests, absent sufficient justification.

WE HAVE PROVIDED INFORMATION.  PLEASE LET US KNOW YOUR RESPONSE.  ALSO, PLEASE DESCRIBE THE BURDEN IN TELLING US THE NUMBER OF FAILS IN THIS LIMITED SUBSET OF ACCOUNTS.

**(7) PROFIT & LOSS DATA**
You indicated that you have no objection to producing already existing reports that go to profit and loss and that relate to TASER. Plaintiffs explained that they asked you to produce these reports several months after a different conferral call and request that you produce them.   Please let us know when we can expect the documents.

> We indicated that we would review your previously submitted request and evaluate what MSCO reasonably could provide to you as a sample or otherwise. We will endeavor to do so as soon as reasonably possible. We reiterated that the problem remains that MSCO does not generally keep reports or data compilations that provide the revenue and profit information about trading in TASR specifically, although we may be able to locate certain records, such as fees received in connection with open short positions in TASR. You indicated that you could not specify with any greater particularity the information that you are seeking (other than the three-page bullet-point list), and as a further accommodation, we agreed to identify for you or give you a sampling of reports that are available.

WE DID NOT SAY IT WAS IMPOSSIBLE TO FURTHER SPECIFY, BUT RATHER SAID WE WILL AWAIT YOUR INFORMATION AND PROCEED FROM THERE.

**(8) DEFENDANTS' POSITION DOCUMENTS**
We sent an email on this earlier today.

> While we are deeply disappointed that you decided against sharing your views on this issue with us before sending your e-mail and thereafter did not provide us with an opportunity meaningfully to respond to your e-mail, instead filing papers with the Court setting forth those views, we will, consistent with your actions, respond to such arguments in our opposition to your motion for sanctions.

**(9) LOBBYING**
You indicated that you had no information about lobbying of state legislators. As to federal agencies, you take the position that only the SEC is relevant and that Plaintiffs have already asked for documents relating to these communications. Plaintiffs requested you revisit your interrogatory response. Please let us know your position.

> To clarify, in an attempt to resolve this dispute cooperatively, we indicated that we would consider removing the words "by the United States Congress" from the response and amending as necessary. We are willing to do so. Further, we note that you also quoted at length from a statute that you claimed MSCO cited in its response and we wished to clarify with you that MSCO did not cite to or rely on a federal statute in its response.

**(10) 30b6 ON ROLLING PRODUCTION**
You explained that your response to Plaintiffs' motion is due on July 2 and that the deposition is currently scheduled for July 15. Plaintiffs indicated that if you move for a protective order between July 2 and July 15, we will not take the position that you should have moved for a protective order in the time between being served with the deposition notice and July 2. If you do move for a protective order in July, Plaintiffs will cooperate in trying to schedule an emergency hearing, but we will not postpone the deposition for a hearing.

To clarify, we discussed with you the fact that your deposition topics and our opposition to your sanctions motion are closely related.  Accordingly, you indicated that you were likely to revise your deposition topics based upon the content of MSCO's opposition papers, which are due on July 2.  You stated that (1) you would endeavor to provide such revised topics as soon as possible (possibly within 24 hours of your receipt of our brief) (2) if MSCO moved for a protective order with respect to the revised topics, you would not make any objection based on timeliness; and (3) you would cooperate with us in requesting a prompt hearing on any motion we might make for a protective order so as to get a ruling in advance of the deposition date and make yourself available for an emergency hearing, as necessary.  Finally, you indicated that you might, although you did not commit to doing so, adjourn the deposition by a few days, if necessary.

Thanks,
Liz