# EXHIBIT A

**The Attached Exhibit A Is a Redacted Copy to Protect Confidential Information. An Unredacted Copy Will Be Included in the Motion To Seal as filed with the Clerk.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | |
| Plaintiffs, | Civil Case No. |
| v. | 1:10-CV-03108-JEC |
| MORGAN STANLEY & CO., INC., *et al.*, | |
| Defendants. | |

**DEFENDANT MERRILL LYNCH PROFESSIONAL CLEARING CORP.'S
REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

# ARGUMENT[1]

ML Pro showed in its opening papers that exercising jurisdiction over ML Pro would not comport with the Due Process Clause.[2]  Plaintiffs respond with irrelevant (and inaccurate) allegations and unsupported legal arguments.  First, Plaintiffs' assertion that ML Pro consented to personal jurisdiction in Georgia by registering as a broker-dealer has been rejected by numerous courts and is not supported by the registration form's plain language.  Second, ML Pro's provision of clearing services to Introduced Customers in Georgia is too indirect and insignificant to satisfy the high threshold of "continuous and systematic" contacts necessary for general jurisdiction.  Third, specific jurisdiction fails because Plaintiffs have not alleged that ML Pro—or any other alleged co-conspirator—directed its allegedly tortious conduct at Georgia.

## I.   ML Pro Has Not Consented to Personal Jurisdiction in Georgia.

Plaintiffs assert that ML Pro is not entitled to due process protection because

---

[1] Defined terms have the same meaning as in Merrill Pro's opening memorandum.  Plaintiffs' opposition is cited as "Opp."  "Pls.' Ex." refers to the exhibits filed with the Opp.  All other exhibits are attached to the January 11, 2010 Reply Declaration of Brad M. Elias (cited as "Elias Reply Decl.").  And unless otherwise noted, this memorandum omits internal quotation marks and citations and adds any emphasis reflected in quoted passages.

[2] ML Pro rests on the arguments in its opening memorandum concerning the Georgia long-arm statute.

it registered in Georgia as a broker-dealer by filing FINRA's Form BD.  (*See* Opp.

at 15–18.)  But no court has ever found that this decades-old standardized form

constitutes consent to personal jurisdiction.  In fact, courts have rejected this

argument and held that Form BD's consent clause only concerns appointing an

agent for service of process, which Plaintiffs concede is insufficient under well-

established Eleventh Circuit precedent to establish personal jurisdiction.  (*See* Opp.

at 16.)  *See also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th

Cir. 2000) (rejecting "argument that appointing a registered agent is sufficient to

establish general personal jurisdiction over a corporation").  In *Braintree Labs.,*

*Inc. v. Citigroup Global Mkts., Inc.*, for example, the court observed that:

> **[Form BD] merely appoints the Secretary of the Commonwealth as [defendant's] agent for receipt of service of process.**  Plaintiffs mistakenly rely on the following provision to support their argument:  "the applicant … consents that any such action or proceeding against the applicant may be commenced in any court of competent jurisdiction and proper venue within [the state] by service of process upon said appointee . . ."  **That language, however, concerns only service of process and pertains to courts "of competent jurisdiction and proper venue."**

671 F. Supp. 2d 202, 206 (D. Mass. 2009).  Similarly, in *Pearl Invs., LLC v. Std.*

*I/O, Inc.*, the court held that it lacked personal jurisdiction despite the fact that the

defendant was registered as a broker-dealer in the state (and thus had filed Form

BD) and had approximately 30 customers there.  *See* 224 F. Supp. 2d 277, 282 (D.

Me. 2002).  And in *Pieczenik v. Dyax Corp.*, a New York court found that it lacked

personal jurisdiction over a defendant registered in New York as a broker-dealer

(and thus a Form BD filer).  265 F.3d 1329, 1331 (Fed. Cir. 2001).[3]

These decisions are supported by Form BD's plain language, which

preserves objections to personal jurisdiction by specifying that judicial proceedings

may only be commenced in courts of "competent jurisdiction."  (Ex. 1 ¶ 5.)

Although Plaintiffs assert that this language "obviously refers" only to subject

matter jurisdiction (Opp. at 16), the Eleventh Circuit has acknowledged that

"competent jurisdiction" can "connote[] personal jurisdiction as well."  *IAL*

*Aircraft Holding, Inc. v. FAA*, 206 F.3d 1042, 1046 (11th Cir. 2000), *vacated on*

*other grounds*, 216 F.3d 1304, 1306–07 (11th Cir. 2000).  Other circuit courts have

reached the same conclusion.  *See Pirelli Armstrong Tire Corp. Retiree Med.*

*Benefits Trust v. Raines*, 534 F.3d 779, 785 (D.C. Cir. 2008) ("The words of

---

[3] Plaintiffs' cases, which do not even mention Form BD, are not to the contrary.  In *Gorman v. Ameritrade Holding Corp.*, the court held that the defendant broker-dealer licensed to do business in the forum had *not* waived its due process rights.  *See* 293 F.3d 506, 512–13 (D.C. Cir. 2002).  The *Grady* and *Allyn* courts implied consent to personal jurisdiction from non-Georgia registration statutes.  *See Grady v. Stoever*, 968 F. Supp. 334, 336 (S.D. Tex. 1997) (applying Texas Securities Act Article 581-16); *Allyn v. Dually*, 725 So. 2d 94, 98 (Miss. 1998) (applying Mississippi Code Section 75-71-301).  Georgia's registration statute, in contrast, only requires broker-dealers to appoint an agent for service of process, not to consent to personal jurisdiction.  *See* O.C.G.A. § 10-5-35.

*competent jurisdiction* help clarify that . . . litigants, whether in federal or state court, must establish that court's *personal jurisdiction* over the parties."); *Steel v. United States*, 813 F.2d 1545, 1553 n.5 (9th Cir. 1987) (interpreting statutory phrase "court of competent jurisdiction" to mean "both personal jurisdiction and subject-matter jurisdiction").[4]

Interpreting the phrase "competent jurisdiction" to include personal jurisdiction does not, as Plaintiffs assert (*see* Opp. at 15–16), render the consent-to-service provision meaningless. The relevant portion of the consent provision reads in full: "the applicant hereby consents that any such action or proceeding . . . may be commenced in any court of competent jurisdiction and proper venue within said State(s) by service of process upon said appointee . . . ." (Ex. 1 ¶ 5.) Plaintiffs omit from their quote the phrase "by service of process upon said appointee" so they can argue that it would be meaningless to consent to commencement of an action in a court with subject matter jurisdiction, personal jurisdiction, and venue (since no "consent" to such a venue would be required). (*See* Opp. at 15–16.) But any contractual clause can be rendered meaningless by omitting key words. And

---

[4] Plaintiffs cite only one case to support their contention that "competent jurisdiction" refers *only* to "subject matter competence." (*See* Opp. at 16 (*citing Grady*, 968 F. Supp. 334 at 336).) But *Grady* addresses the phrase "proper court" and does not mention "competent jurisdiction." *See* 968 F. Supp. 334 at 336.

when read in full the clause has real meaning—it provides consent to commence an action "by service of process upon [the Georgia Securities Commissioner]." (Ex. 1 ¶ 5.) It does not need to be a due process waiver to be "meaningful."

Comparison to Form U-2, also used by state securities administrators, further shows that the Form BD provision is only consent to service on the Georgia Securities Commissioner, not consent to personal jurisdiction. That is because the two forms contain identical language,[5] even though the *title* of Form U-2 is "Uniform Consent to Service of Process" and it has been interpreted as only that. *See, e.g.*, *Ex parte Dill*, 866 So. 2d 519, 533 (Ala. 2003) (finding no personal jurisdiction even though defendant filed Form U-2). Consent to service of process—not consent to jurisdiction—is all the Georgia legislature requires of broker-dealers wanting to do business in the state. *See* O.C.G.A § 10-5-35. The Court should not read the Form BD clause more broadly than either the identical Form U-2 clause or Georgia law requires. *See Harrington v. C.H. Nickerson & Co.*, 2010 U.S. Dist. LEXIS 88535 (D.R.I. 8/25/10) ("[T]his Court will not presume that Defendant consented to personal jurisdiction where there is no

---

[5] Form U-2 states that "the undersigned does hereby consent that any such action or proceeding against it **may be commenced in any court of competent jurisdiction and proper venue within the States** so designated hereunder by service of process upon the officers so designated with the same effect as if the undersigned was organized or created under the laws of that State . . . ." (Ex. 2.)

indication that either the . . . legislature, or Defendant itself, intended that corporate registration would serve as consent to personal jurisdiction . . . .").

Reading Form BD as consent to general jurisdiction would have far-reaching consequences because it is common for broker-dealers to file Form BD in all fifty states.[6]  Making broker-dealers subject to general personal jurisdiction in every state, regardless of their contacts with that state, would "violate the concept of fair play inherent in any personal jurisdiction inquiry." *Landreville v. Joe Brown Co.*, 2008 U.S. Dist. LEXIS 26405, at *15 n.9 (E.D. Pa. 4/1/08) (rejecting notion that nationwide registration constitutes consent to nationwide jurisdiction).  And it would be "extremely conducive to forum shopping because many companies have registered to do business and appointed an agent for service of process in numerous states." *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 551 (E.D. Va. 2004); *see also Mednet, MPC Corp. v. United Healthcare, Inc.*, 1996 U.S. Dist. LEXIS 22338, at *18–19 (D. Conn. 8/14/96) (rejecting personal jurisdiction based on state registration form because it would "punish large corporations like [defendant] who, in good faith, comply with domestication statutes on the premise that they might conduct business within the forum state in

---

[6] *See* Melz Tr., Ex. 3, at 96:7–96:10 ("[W]e are registered to do business in 50 states, as is every other major broker/dealer on the street; it's just understood.").

6

the future"). These exact concerns are implicated here, where ML Pro did not have a single customer in Georgia for almost the entire relevant period (2003 through 2008), but now faces claims in Georgia bearing no connection to the State.

It would also be fundamentally unfair to interpret Form BD as a consent to jurisdiction because, unlike contractual forum selection clauses, this state-required form is not the result of arm's-length negotiations. Indeed, Plaintiffs concede that ML Pro is *required* to register with the Georgia Securities Commissioner and file a Form BD in order to transact *any* business with the State, no matter how minimal. (*See* Opp. at 7.) *See also* O.C.G.A. § 10-5-30; Ex. 4. And as one court observed:

> The idea that a foreign corporation consents to jurisdiction in [the forum state] by completing a state-required form, without having Contact with [the forum state], is entirely fictional. ***Due process is central to consent; it is not waived lightly. A waiver through consent must be willful, thoughtful, and fair***. Extorted actual consent and equally unwilling implied consent are not the stuff of due process.

*Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993). Here, Plaintiffs are not asserting jurisdiction based on ML Pro's specific contacts with Georgia, but rather on the filing of a state-required form. It would be unfair and inequitable to interpret that form as ML Pro's consent to jurisdiction in Georgia for claims arising solely out of ML Pro's conduct in New York.

Accordingly, if the Court were to find that Form BD contains a consent-to-

7

jurisdiction provision, that provision should be interpreted narrowly to constitute

consent only for claims arising out of or relating to the defendant's forum-related

activities.  *See generally S.C. Food Servs. v. Magic Wok Int'l*, 1996 U.S. Dist.

LEXIS 6961, at *8 (E.D. Pa. 5/16/96) ("Jurisdiction based upon consent is only

appropriate to the extent authorized by the consent.").  This limitation is supported

by the clause's language, which requires consent to service "[f]or the purposes of

complying with the laws of [Georgia] relating to either the offer or sale of

securities or commodities."  (Ex. 1 ¶ 5.)  Because Georgia state securities laws

apply only to transactions occurring in Georgia, this provision could not have been

intended to give Georgia courts jurisdiction over transactions occurring entirely

outside its borders, as is the case here.  *See, e.g.*, *Edgar v. Mite Corp.*, 457 U.S.

624, 641 (1982) ("The Court's rationale for upholding blue-sky laws was that they

only regulated transactions occurring within the regulating States.").  Indeed, the

danger of a broad interpretation is demonstrated by this case, where Plaintiff

TASER International, Inc. and 29 of the 39 individual plaintiffs are not Georgia

residents but are suing ML Pro in a Georgia court for activities that occurred in

New York.  That cannot be the intended purpose of Form BD.

## II.  Plaintiffs Have Not Established General Jurisdiction.

Plaintiffs acknowledge that general jurisdiction requires "continuous" and

"systematic" contacts with the state (Opp. at 23) and point to four alleged contacts

between ML Pro and Georgia that they contend qualify.  As explained below, these

contacts do not come close to establishing general jurisdiction.

### A.   Registration to do Business and Appointment of an Agent

As explained in ML Pro's Supplemental Memorandum in Further Support of

Its Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 96), ML Pro's

registration as a broker-dealer in Georgia, which required ML Pro to appoint an

agent for service of process, is insufficient to establish general jurisdiction.

### B.   One Direct and ▇ Introduced Customers

Providing clearing services to "Introduced Customers" in Georgia is both

irrelevant to the jurisdictional inquiry ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇  Introduced Customers are customers of *other* broker-dealers who are

clients of ML Pro.  These broker-dealers, known as "Introducing Brokers," hire

ML Pro to provide back-office services, such as sending monthly account

statements to customers.  (*See* Pls.' Ex. A-5, at 2.)[7]  The Introducing Broker

handles all customer contact, including accepting orders to buy or sell stock (*id.* at

2, 13), and such acts therefore do not constitute jurisdictional "contacts" between

---

[7] For a general description of the relationship between Introducing Brokers and
clearing brokers, *see* Henry F. Minnerop, *Clearing Arrangements*, 58 Bus. Law.
917, 918–25 (2003) (Ex. 5).

ML Pro and the Introduced Customers.  *See Bill Rea Ins. Assoc. v. Nat'l Fin. Serv. Corp.*, 860 F. Supp. 1181, 1185 (W.D. Tex. 1994).  In *Bill Rea* the defendant moved to dismiss for lack of personal jurisdiction in a state where it had provided services to Introduced Customers.  *Id.* at 1183–84.  As ML Pro does, the defendant there received payments from and distributed monthly account statements to Introduced Customers.  *Id.* at 1183.  The court held that these indirect contacts, initiated by the Introducing Brokers and their customers, are insufficient to establish general jurisdiction.  *Id.* at 1185–86; *see also SIAI Ins. Co. (RRG), Ltd. v. AON Risk Servs.*, 2003 U.S. Dist. LEXIS 25581, at *15 (N.D. Tex. 12/19/03) (finding no general jurisdiction where defendant routinely invoiced plaintiff's customers in Texas).

     An identical result is warranted here.  ML Pro does not initiate contact with the Introduced Customers in Georgia, has no office in Georgia, no bank accounts in Georgia, and does not clear securities transactions or perform any of its business operations in Georgia.  (Ex. 6 ¶¶ 4–7.)[8]  ML Pro's *only* contacts with these

---

[8] While Plaintiffs contend that some ML Pro customers, including certain Introduced Brokers, maintain satellite offices in Georgia (Opp. at 10), Plaintiffs fail to even allege that ML Pro knew about or communicated with these offices. These satellite offices do not appear in ML Pro's account records (which have been provided to Plaintiffs) and the relevant ML Pro sales personnel have never spoken to anyone at these offices.  (*See* Elias Reply Decl. ¶ 10.)  Thus, even if these satellite offices exist, they cannot create a "contact" between ML Pro and Georgia.

Introduced Customers are (i) sending account statements and confirmations to Georgia, (ii) debiting or crediting their accounts *in New York*, and (iii) sending or receiving wire transfers from Georgia to fund their accounts in New York.  (*See* Pls.' Ex. A-5, at 2.)  These activities do not constitute a continuous and systematic presence in the State.[9]

Moreover, even were these Introduced Customers considered in the jurisdictional analysis, they are not sufficient to establish general jurisdiction

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████.[10]

---

[9] *See Harris v. Lloyds TSP Bank, PLC*, 281 Fed. Appx. 489, 493 (6th Cir. 2008) ("[C]ustomer-initiated bank-to-bank wire transfers do not establish the continuous and systematic purposeful presence necessary to establish personal jurisdiction . . . ."); *Flagstar Bank v. Freestar Bank, N.A.*, 2008 U.S. Dist. LEXIS 78602, at *8 (E.D. Mich. 10/7/08) (holding that mailing account statements does not constitute purposeful availment where bank does not initiate customer contact in the state).

[10] *See Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) ("General jurisdiction has been found lacking even where a company . . . derived more than 26% of its income from the forum."); *Driscoll v. Matt Blatt Auto Sales*, 1996 U.S. Dist. LEXIS 4153, at *12–16 (E.D. Pa. 4/3/96) (finding no general jurisdiction where one to three percent of defendant's sales came from forum); *Reynolds & Reynolds Holdings*, 301 F. Supp. 2d at 552 (finding no general jurisdiction where defendant complied with forum's registration statute, appointed an agent for service of process in forum, and made 0.4% of its sales in forum).

11

For the same reason, ML Pro's single direct customer in Georgia, ██████████ ████████████ adds nothing. ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ This hardly constitutes significant contact.

## C.  The PAX Division's Website

A website accessible worldwide does not constitute purposeful availment of Georgia law, especially given that PAX had no Georgia customers (direct or Introduced).  (*See* Melz Tr. Ex. 7, at 89:10–89:17.)  Indeed, "[t]o hold the existence of an internet website . . .  constitutes continuous and systematic contact with any location from which the site can be accessed would turn the notion of federal personal jurisdiction on its head, eliminating the protections that jurisdictional requirements were designed to safeguard." *Adstep v. Freeman Decorating Co.*, 2003 U.S. Dist. LEXIS 25728, at *21 (M.D. Fla. 9/16/03); *see also Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367, 1371, 1374 (N.D. Ga. 2009) (website operator with more than 1,700 active users in Georgia did not have

systemic and continuous contacts sufficient for general jurisdiction).  Plaintiffs cite

*Gorman v. Ameritrade Holding Corp.* for the proposition that such a website is

relevant (Opp. at 24 n.14), but that case is both legally and factually

distinguishable.  In *Gorman*, the court posited that Ameritrade might be doing

business in the District of Columbia because it sold securities through its website

to customers residing there.  *See* 293 F.3d at 510–13.  PAX, in contrast, did not

have a single customer in Georgia and derived no revenue from the State.  In any

event, the Eleventh Circuit has rejected *Gorman*'s reasoning.  *See Oldfield v.*

*Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n. 26 (11th Cir. 2009)

(criticizing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa.

1997), on which *Gorman* relied, and describing stricter approach).

**D.   ML Pro's Advertisement in National Trade Publications**

"[M]erely advertising in magazines of national circulation that are read in

the forum state is not a significant contact for jurisdictional purposes."  *Lawson*

*Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 Fed. Appx. 140, 143 (11th

Cir. 2005).  *See also Web.com, Inc. v. Go Daddy Group, Inc.*, 2007 U.S. Dist.

LEXIS 99061, at *11 (N.D. Ga. 8/3/07) ("[N]ationwide advertising which is not

targeted in any way to the forum state does not subject a defendant to personal

jurisdiction.").  To hold otherwise would mean that "a business that advertised in a

national magazine would be subject to jurisdiction in virtually every state."

*Lawson*, 139 Fed. Appx. at 143.

## III.  Plaintiffs Have Not Established Specific Jurisdiction.

To establish specific jurisdiction, Plaintiffs must show that (i) ML Pro

purposefully directed its activities at Georgia and (ii) this litigation results from

alleged injuries arising out of or relating to those activities.  *Diamond Crystal*

*Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1267 (11th Cir. 2010).  Plaintiffs

have shown neither.  While this litigation is about Plaintiffs' alleged injuries as

TASER shareholders, they have not identified a single TASER-related transaction

or act by ML Pro that was directed at or connected to Georgia.  Nor could they



### A.  Government Contacts

██████ *See* SEC Release No. 34−44494, 66 Fed. Reg. 35,836.  Second, it is legally

untenable given the "government contacts" doctrine, which "prevents a court from

exercising jurisdiction based solely on a defendant's contact with a federal

instrumentality" in the forum.  *Lamb v. Turbine Designs, Inc.*, 41 F. Supp. 2d

1362, 1365 (N.D. Ga. 1999) (dismissing for lack of personal jurisdiction despite

claims that defendant submitted materials to and met with Federal Aviation

Administration in Atlanta), *aff'd*, 240 F.3d 1316 (11th Cir. 2001).

### B.   Conspiracy Jurisdiction

Plaintiffs' conspiracy jurisdiction argument also fails.[12]  Plaintiffs rely

almost exclusively on *Rudo v. Stubbs*, a case in which each of the defendants

individually "targeted [] one or more Georgia residents specifically."  472 S.E.2d

515, 517 (Ga. Ct. App. 1996).  But Plaintiffs omit this critical element of

conspiracy jurisdiction that the *Rudo* court repeatedly invoked:  *one of the alleged*

*conspirators must deliberately target Georgia*.  Indeed, this requirement is the

basis on which *Rudo* distinguished *Coopers & Lybrand v. Cocklereece*, 276 S.E.2d

845 (Ga. Ct. App. 1981), which reversed a lower court's assertion of conspiracy

---

[12] Plaintiffs first assert that "ML Pro was responsible for, and failed to require, Merrill compliance with Reg SHO and other authorities . . . ."  (Opp. at 20.)  The lack of any citation for this claim is unsurprising, however, because as a wholly owned subsidiary of Merrill Lynch, ML Pro does not direct or control its activities.

jurisdiction over a non-resident that allegedly facilitated a nationwide scheme to defraud investors. *See* 472 S.E.2d at 517 ("We rejected the exercise of jurisdiction based on the in-state actions of co-conspirators in [*Coopers & Lybrand*], since there was no evidence that the non-resident defendants knew or should have known the audit would be used in Georgia."). Conspiracy jurisdiction in Georgia thus requires the plaintiff to furnish "implicit or explicit evidence of purposefully sought activity with or in Georgia." *Coopers & Lybrand,* 276 S.E.2d at 850.[13]

Plaintiffs' other conspiracy jurisdiction cases depend on the same holding. *See Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC*, 699 S.E.2d 456, 467–68 (2010) (finding conspiracy jurisdiction only upon evidence that non-resident defendants "each purposefully directed their activities toward Georgia" by corresponding with *Georgian* to create and distribute fraudulent investment documents *in Georgia*); *Earthlink, Inc. v. Pope*, 2006 U.S. Dist. LEXIS 66596, at *18 (N.D. Ga. 8/31/06) (concluding that "purpose of [the] conspiracy [was] to commit an intentional tort against Georgia"). Indeed, without requiring the alleged co-conspirator to intentionally target Georgia and that ML Pro knew or should

---

[13] *See also Sky Shots Aerial Photography v. Franks*, 551 S.E.2d 805, 808 (Ga. Ct. App. 2001) (no conspiracy jurisdiction where "[t]here is no evidence . . . that [nonresident defendant] targeted a Georgian in a conspiracy to defraud"); *Metzler v. Love*, 428 S.E.2d 384, 385 (Ga. Ct. App. 1993) (no conspiracy jurisdiction "in the absence of evidence of purposeful activity within Georgia by the nonresident").

have known about it, "there would be no due process limitation on this state's extraterritorial power over non-residents." *Coopers & Lybrand*, 276 S.E.2d at 850.

Plaintiffs' failure to acknowledge this requirement is not surprising given their inability to produce evidence—or even allege—that ML Pro or any supposed co-conspirators deliberately targeted Georgia. Instead, Plaintiffs point only to paragraph 59 of their Complaint, falsely claiming that it contains allegations that Defendants "targeted . . . and harmed Plaintiffs in Georgia." (Opp. at 22.) But paragraph 59 makes no such allegation, focusing on the *impact* of Defendants' alleged activities but omitting any claim that those activities *targeted* Georgia or were *directed* at Georgia Plaintiffs. Nor could Plaintiffs make such a claim where, as in *Coopers & Lybrand*, the crux of their theory is an alleged "general conspiracy to defraud potential investors." *Rudo*, 472 S.E.2d at 517 (describing *Coopers & Lybrand*). Plaintiffs contend that Defendants conspired to profit from trading activity in TASER, a Delaware company with its principal place of business in Arizona. (*See* Compl. ¶¶ 1, 17.) Plaintiffs do not claim that Defendants targeted them as TASER shareholders residing in Georgia, but rather that the alleged conspiracy impacted all TASER shareholders nationwide. (*Id.* ¶ 97.) *Coopers & Lybrand* is therefore squarely on point, and it mandates that the Court reject plaintiffs' flawed theory of conspiracy jurisdiction.

17

**IV.  Plaintiffs' Request for Additional Discovery Should Be Denied.**

Plaintiffs have received substantial jurisdictional discovery, including documents, responses to requests for admissions, and a deposition of ML Pro's President.  Plaintiffs now ask for additional discovery, without any proffer of the additional information they seek or its relevance.  Plaintiffs' mere hope that they might turn up more Georgia contacts is insufficient to warrant additional jurisdictional discovery.  *See, e.g.*, *Med. Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1142 (Fed. Cir. 2008) (affirming denial of request for additional jurisdictional discovery where plaintiff failed to show that it would help establish personal jurisdiction); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of request for jurisdictional discovery that "was based on little more than a hunch that it might yield jurisdictionally relevant facts"); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C. 2009) ("Jurisdictional discovery . . . is justified only if the plaintiff reasonably demonstrates that it can supplement its jurisdictional allegations through discovery. Mere conjecture or speculation is not enough.").

## CONCLUSION

For all the foregoing reasons, ML Pro asks that its motion to dismiss be granted or that this case be transferred to the Southern District of New York.

18

Dated:  January 11, 2010          /s/ Richard H. Sinkfield
                                  Richard H. Sinkfield
                                  Georgia Bar No. 649100
                                  RSinkfield@rh-law.com

                                  Dan F. Laney III
                                  Georgia Bar No. 435290
                                  DLaney@rh-law.com

                                  ROGERS & HARDIN LLP
                                  229 Peachtree Street, N.E.
                                  2700 International Tower
                                  Atlanta, GA 30303
                                  Tel.:  404-522-4700
                                  Fax:   404-525-2224

                                  Andrew J. Frackman (admitted *pro hac vice*)
                                  Abby F. Rudzin (admitted *pro hac vice*)
                                  Brad M. Elias (admitted *pro hac vice*)

                                  O'MELVENY & MYERS LLP
                                  7 Times Square
                                  New York, NY 10036
                                  Tel.:  212-326-2000
                                  Fax:  212-326-2061

                                  *Attorneys for Defendant Merrill Lynch*
                                  *Professional Clearing Corp.*

19