IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TASER INTERNATIONAL, INC., *et al.*,

    Plaintiffs,

    v.

MORGAN STANLEY & CO., INC., *et al.*,

    Defendants.

Civil Case No.
1:10-CV-03108-JEC

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT MERRILL LYNCH PROFESSIONAL
<u>CLEARING CORP.'S MOTION FOR RECONSIDERATION</u>**

Merrill Pro established in its opening memorandum that the Court's decision to deny Merrill Pro a discovery stay was based on a misunderstanding of material facts that was caused by key omissions and misstatements in Plaintiffs' opposition to the stay—to which Merrill Pro was given no opportunity to reply.  In opposing the Motion for Reconsideration, Plaintiffs do not really dispute that fact and offer only a half-hearted defense of their actions.  For example, Plaintiffs now admit that they were prohibited under a State Court Stipulation and Order from making the argument they made when they opposed the stay—and on which the Court appears to have relied—that Merrill Lynch's production of Merrill Pro's trading data constituted a concession that Merrill Pro-related discovery materials are relevant.  Similarly, Plaintiffs admit that their argument that Merrill Pro is taking offensive discovery—on which the Court also appears to have relied—is based on them *demanding* that Merrill Pro appear at depositions.

Unable to deny these facts, Plaintiffs fall back on the argument that discovery would proceed against Merrill Pro even after its motion to dismiss is granted.  But Plaintiffs cannot dispute that, upon grant of the motion to dismiss, discovery could proceed against Merrill Pro only under Federal Rule of Civil Procedure 45, which would protect Merrill Pro from the great burden and expense Plaintiffs seek to impose on it.  Merrill Pro should not be required to spend

hundreds of thousands of dollars responding to discovery until this Court determines whether it even has jurisdiction.  The Court should reconsider the Order and grant Merrill Pro's motion to stay non-jurisdictional discovery pending a decision on the motion to dismiss for lack of personal jurisdiction.

## ARGUMENT[1]

### I. The Court Denied the Motion to Stay Based on the Plaintiffs' Incomplete and Misleading Statements in Their Opposition.

Plaintiffs' argument in opposition to Merrill Pro's request for a discovery stay was that the Merrill Pro information would have to be produced by Merrill Lynch whether or not Merrill Pro remained as a defendant.  But as Merrill Pro explained in its opening memorandum, Plaintiffs had to add Merrill Pro as a defendant two years into this litigation precisely because that is not the case.  (*See* Mem. at 2.)  The Court was led to err in denying the Motion to Stay on the basis of the Plaintiffs' incomplete and incorrect arguments, and the Court should have granted the motion.

---

[1] Defined terms have the same meaning as in Merrill Pro's opening memorandum (cited as "Mem."). Plaintiffs' opposition to Merrill Pro's motion for reconsideration is cited as "Recons. Opp."  The Court's December 17, 2010 order (Dkt. 139) is cited as "Order."  Plaintiffs' opposition to Merrill Pro's motion to stay non-jurisdictional discovery (Dkt. 113) is cited as "Stay Opp."

### A. Merrill Pro Employees

In denying the Motion to Stay, the Court relied (*see* Order at 10) on Plaintiffs' representation that Merrill Lynch had previously identified several Merrill Pro employees "as having information relevant to Plaintiffs' claims against Merrill Lynch." (Stay Opp. at 10.) Plaintiffs made this representation to argue that discovery from Merrill Pro is relevant to their claims against Merrill Lynch, and therefore discovery against Merrill Pro would proceed regardless of whether it remained a defendant here. (*Id.*) But Plaintiffs now admit that the "Merrill Pro employees" they referred to were in fact also *Merrill Lynch* employees. (*See* Recons. Opp. at 4.) Plaintiffs should have given the Court the complete information, and excluding this fact gave an incorrect impression (as Plaintiffs clearly intended) that Merrill Lynch believed that Merrill Pro's documents are relevant to Plaintiffs' claims against Merrill Lynch. But as explained in Merrill Pro's opening memorandum, Merrill Lynch thought only that these *Merrill Lynch* employees might have information relevant to Plaintiffs' claims against *Merrill Lynch*.

### B. Merrill Pro Trading Data

The Court likewise relied (*see* Order at 10) on Plaintiffs' argument that Merrill Lynch conceded that Merrill Pro discovery is relevant to Plaintiffs' claims

3

against Merrill Lynch by producing Merrill Pro trading data. (*See* Stay Opp. at 2.) But as described in Merrill Pro's opening memorandum, Plaintiffs agreed in a Stipulation and Order submitted to the State Court that they would not make this argument. (*See* Mem. at 6.) Plaintiffs now admit this fact, but contend that their argument was limited to Merrill Pro (really, Merrill Lynch) employees' documents and that Plaintiffs "do not and did not contend that Merrill Lynch made any concession regarding the relevance of Merrill Pro material by producing these trading records." (Recons. Opp. at 7.) Plaintiffs are being as disingenuous now as they were with the grounds previously urged in opposing the Motion to Stay, when they argued:

> Merrill Lynch . . . identified ML Pro employees, documents *and data* as relevant to this case long before ML Pro was added as defendant, thereby acknowledging that ML Pro has information relevant to the claims against Merrill Lynch.

(Stay Opp. at 3 (emphasis added).)

Plaintiffs also attempt to explain away this violation of the Stipulation and Order by contending that they only relied on Merrill Lynch's production of Merrill Pro's trading data to show that Merrill Pro would not be burdened if discovery were permitted to proceed. (Recons. Opp. at 7.) But as just shown, that is simply not what Plaintiffs said. They argued that by producing "Merrill Pro . . . data," Merrill Lynch had conceded the *relevance* of Merrill Pro-related materials. In any

event, Plaintiffs' new burden argument is no better. Whether Merrill Lynch produced Merrill Pro's trading data is completely unrelated to the issue of whether the far more extensive discovery Plaintiffs now demand from Merrill Pro— including 28 interrogatories (including sub-parts), 314 requests for admission, and e-mail searches of more than 20 employees—unduly burdens a Defendant whose motion to dismiss for lack of personal jurisdiction is pending before the Court.[2] Plaintiffs' requested discovery would cost Merrill Pro hundreds of thousands of dollars, and the fact that Merrill Lynch already produced Merrill Pro's trading data does nothing to change that.

### C. Merrill Pro E-mails

The Court also relied (*see* Order at 10) on Plaintiffs' argument that Merrill Lynch's production of e-mails relating to Merrill Pro demonstrates that discovery from Merrill Pro is relevant to their claims against Merrill Lynch. But as Merrill Pro explained in its Motion for Reconsideration, it would have been prohibitively expensive and time-consuming to investigate each of the more than 1 million e-mails that Merrill Lynch collected and reviewed for Plaintiffs in order to

---

[2] These extensive discovery requests demonstrate that Plaintiffs were also being untruthful when they opposed the stay by arguing that "ML Pro will suffer no prejudice if merits discovery is permitted. The discovery that ML Pro seeks to halt presents little, if any, burden." (Stay Opp. at 2.)

determine whether they related only to ML Pro or its customers.  (*See* Mem. at 5.) Plaintiffs now contend that "the fact that the operations of Merrill Lynch and Merrill Pro are so related that Merrill Lynch finds it 'impossible' to determine whether a document relates to one entity or another supports Plaintiffs' position." (Recons. Opp. at 6.)  This argument fails for several reasons.  First, Merrill Lynch never asserted that it would be "impossible" in all instances to determine whether an e-mail related to Merrill Pro or Merrill Lynch.  Rather, it stated that making such a determination for more than 1 million e-mails would have been prohibitively time-consuming and expensive.  Second, the mere fact that certain e-mails may be too vague or generalized to determine to which corporate entity they relate (or whether they relate to both) does not establish that additional discovery from Merrill Pro is relevant to Plaintiffs' claims against Merrill Lynch.

Moreover, neither Merrill Lynch nor Merrill Pro has ever disputed that Merrill Pro is Merrill Lynch's wholly owned subsidiary or that they had a contractual relationship through which they provided professional services to each other.  But discovery from a contractual counter-party is hardly the usual course. And "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal

6

quotation marks omitted).  If Plaintiffs seek to hold Merrill Lynch liable for Merrill Pro's conduct, they must meet the heavy burden of piercing the corporate veil. *See, e.g.*, *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 757 (S.D.N.Y. 2008) ("The corporate form protects a parent shareholder from the liabilities of its subsidiaries . . . .  The only exception to this bedrock principle is if there is a reason to pierce the corporate veil.").  And the mere fact that Merrill Lynch and Merrill Pro have dual employees or share compliance personnel is far from sufficient to satisfy this burden.  *See Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007) (concluding that sharing employees, offices, and ownership was insufficient to justify piercing corporate veil).  Nor are Plaintiffs' generalized allegations that Merrill Lynch and Merrill Pro are "intertwined" sufficient.  *See id*.

### D.  Merrill Pro's Alleged Offensive Discovery

In denying the Motion to Stay, the Court relied on Plaintiffs' argument that Merrill Pro should not be protected from discovery because it had itself taken discovery by appearing at several depositions.  (Order at 10.)  But as explained in Merrill Pro's opening memorandum, Plaintiffs failed to inform the Court that Merrill Pro refused to enter an appearance at the first deposition after filing the motion, and it was *Plaintiffs'* counsel who objected to that position.  (Mem. at 10–11.)  Plaintiffs make no effort to justify this omission.  Nor do they make any effort

7

to show that Merrill Pro's forced appearance at later depositions had any effect on discovery. They do not identify a single question relating to Merrill Pro or any discovery topics that applied only to Merrill Pro. Rather, Plaintiffs now contend that "Merrill Pro's decision to participate in discovery was its own choice and at its own peril." (Recons. Opp. at 10.) This shows that Plaintiffs are simply engaging in a game of "gotcha." Plaintiffs' argument was misplaced and incorrect when it was first made, and it remains so.

## II.     Federal Rule of Civil Procedure 45 Will Protect Merrill Pro Once Its Motion to Dismiss Is Granted.

In its Motion for Reconsideration, Merrill Pro demonstrated that if it were dismissed from this action, Plaintiffs would have to use Federal Rule of Civil Procedure 45 to procure discovery from Merrill Pro. In that circumstance Merrill Pro would be more protected from the undue burden Plaintiffs seek to impose and would shift the significant cost to Plaintiffs. (*See* Mem. at 7–8.) And while Plaintiffs contend that Merrill Pro "relies upon inapplicable cases involving subpoenas served upon non-parties" (Recon. Opp. at 7), Merrill Pro *would be a non-party* if its motion to dismiss were granted. Rule 45 would therefore govern any discovery that Plaintiffs sought to pursue from Merrill Pro.[3]

---

[3] Plaintiffs also make the odd argument that "[a] motion to stay is not the proper vehicle to seek limitations on specific requests, to claim that specific requests are

8

Moreover, Plaintiffs' implication that Rule 45 would not apply if Merrill Pro's motion were granted because the limitations imposed by Rule 45 do not apply to non-parties with "a relationship to the litigation" is made without citation to any legal authority.  (Recons. Opp. at 8.)  And Rule 45 explicitly provides that any court order compelling compliance with a document subpoena "must protect a person *who is neither a party nor a party's officer* from significant expense resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii) (emphasis added).  Rule 45 does not contain an exception for non-parties that Plaintiffs believe have "a dog in this fight."  (Recons. Opp. at 9.)

### III.   The Other Defendants Are Irrelevant to Merrill Pro's Stay Request.

Plaintiffs contend for the first time in opposition to this motion that a stay is not warranted when resolution of the pending motion "will not dispose of the entire case."  (Recons. Opp. at 2–3 (citing *Feldman v. Flood*, 176 F.R.D. 651, 653 (M.D. Fla. 1997).)  But here, Merrill Pro's motion to dismiss *would* dispose of the entire case against Merrill Pro.  There is no suggestion in *Feldman* that a stay should be denied merely because the case would proceed against *other parties*.  And in *Lugo v. Alvarado*, 819 F.2d 5 (1st Cir. 1987), on which Plaintiffs also rely, the court

---

irrelevant, or to claim that the cost of the discovery is overly burdensome." (Recons. Opp. at 8.)  But the Motion to Stay did not argue about any particular request, seeking a stay of *all* discovery until its motion is decided.

9

refused to stay discovery because the defendant's summary judgment motion would have resolved the plaintiffs' damages claims but not their equitable claims. *See* 819 F.2d at 7. The court reasoned that a stay would "delay[] the case unnecessarily, because sooner or later the parties will have the right to engage in discovery as to the equitable claims." *Id.* Here, in contrast, Merrill Pro's motion to dismiss would dispose of all of Plaintiffs' claims against Merrill Pro, and Plaintiffs could not engage in further discovery without resorting to a non-party subpoena. Thus, a stay is entirely appropriate.

## CONCLUSION

For the foregoing reasons, Merrill Pro requests that the Court reconsider the Order and grant Merrill Pro's Motion to Stay merits discovery pending a decision on its motion to dismiss for lack of personal jurisdiction.

Dated:  January 24, 2011

/*s*/ Richard H. Sinkfield

Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

Dan F. Laney III
Georgia Bar No. 435290
DLaney@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:  404-522-4700
Fax:  404-525-2224

Abby F. Rudzin
Andrew J. Frackman
Abby F. Rudzin
Brad M. Elias
Admitted *Pro Hac Vice*

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Tel.:  212-326-2000
Fax:  212-326-2061

*Attorneys for Defendant Merrill Lynch Professional Clearing Corp.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MERRILL LYNCH PROFESSIONAL CLEARING CORP.'S MOTION FOR RECONSIDERATION** has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1B.

/*s*/ Richard H. Sinkfield
Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*<br><br>   Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY & CO., INC., *et al.*<br><br>   Defendants. | CIVIL ACTION NUMBER:<br>1:10-CV-03108-JEC |

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2011, I caused a copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MERRILL LYNCH PROFESSIONAL CLEARING CORP.'S MOTION FOR RECONSIDERATION** to be filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

        John E. Floyd, Esq.
        Steven J. Rosenwasser, Esq.
        Nicole G. Iannarone, Esq.
        Jill A. Pryor, Esq.
        Robert L. Ashe, III, Esq.
        Michael A. Caplan, Esq.
        Elizabeth G. Eager, Esq.
        BONDURANT, MIXON & ELMORE LLP
        3900 One Atlantic Center
        1201 West Peachtree Street, N.W.
        Atlanta, Georgia 30309

and that I have caused a copy to be served by U.S. Mail on the following attorneys

of record:

        James W. Christian, Esq.
        CHRISTIAN, SMITH & JEWELL LLP
        2302 Fannin, Suite 500
        Houston, TX  77002

        Robert F. Wise, Jr., Esq.
        Melissa Aoyagi, Esq.
        DAVIS POLK & WARDWELL LLP
        450 Lexington Avenue
        New York, NY  10017

        Richard H. Klapper, Esq.
        Richard C. Pepperman, II, Esq.
        Tracy Richelle High, Esq.
        SULLIVAN & CROMWELL LLP
        125 Broad Street
        New York, NY  10004-2498

Stephen L. Ratner, Esq.
Brian L. Friedman, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036

Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Peter J. Isajiw, Esq.
Heather L. Fesnak, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281

Fraser L. Hunter, Jr., Esq.
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY  10022

Andrew J. Frackman, Esq.
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY  10036

Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Jeffrey M. Gould, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005

3

/*s*/ Richard H. Sinkfield

Richard H. Sinkfield
Georgia Bar No. 649100
rsinkfield@rh-law.com

4