IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>MORGAN STANLEY & CO., INC., *et al.*,<br><br>　　Defendants. | Civil Case No.<br><br>1:10-CV-03108-JEC |

**DEFENDANT MERRILL LYNCH PROFESSIONAL CLEARING CORP.'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ML PRO TO IDENTIFY CERTAIN EMPLOYEES LIKELY TO HAVE RESPONSIVE INFORMATION AND TO PRODUCE DOCUMENTS FROM A LIMITED SET OF CUSTODIANS**

At the Special Master's direction, Merrill Lynch Professional Clearing Corp. ("Merrill Pro") submits this sur-reply in opposition to Plaintiffs' Motion to Compel ML Pro to Identify Certain Employees Likely to Have Responsive Information and to Produce Documents from a Limited Set of Custodians.

## ARGUMENT

**I.   The Court Should Reject Plaintiffs' Attempt to Minimize Merrill Pro's Burden with Unsupported and Inaccurate Speculation.**

Merrill Pro established in its Opposition that the ESI collection and review requested by Plaintiffs would cost approximately **$1 million in vendor fees alone**—despite the fact that Plaintiffs represented to the Court that permitting discovery to proceed against Merrill Pro would impose "little, if any, burden." Merrill Pro supported this estimate with a sworn employee declaration setting forth actual discovery costs incurred during the course of this litigation. In reply, Plaintiffs speculate that Merrill Pro's cost estimate is "inflated" (Reply at 2), but offer no evidence to support this claim. Instead, Plaintiffs provide a reduced per-custodian cost estimate based on the assumption that such costs are directly proportional to the number of proposed search terms. (*Id.* at 11.) Plaintiffs' methodology is, however, both inaccurate and overly simplistic.

First, much of the per-custodian vendor cost is fixed and does not vary

according to the number of search terms.[1]  This is because all of each custodian's e-mails must be retrieved and loaded into an electronic database before running *any* search terms.  The process can take weeks, and the significant costs associated with it remain the same regardless of how many search terms are eventually applied to those e-mails.  Similarly, many of the costs associated with exporting the documents and preparing them for production do not vary significantly with fewer search terms because the vendor's employees must go through the same quality-control steps regardless of the total number of documents being produced.

Second, Plaintiffs' reduced estimate is also based on the assumption that proposing fewer search terms necessarily generates a proportionally smaller number of hits.  But as a matter of logic that is not accurate—the number of hits depends on the number of search terms *and the breadth* of those terms.  Here Plaintiffs' proposed terms are very broad (including terms like "flex*") and are likely to generate more hits than the more narrow terms used in past searches.  While Plaintiffs attempt to demonstrate that the term "flex*" is not overbroad by running it against documents that Merrill Lynch previously produced  (*see id.* at 13), that analysis is logically and statistically flawed.  Merrill Lynch produced responsive documents that relate in

---

[1] This is of course not the case for attorney-review costs, which do increase with more search terms.  But as we have explained repeatedly, the $1 million estimate is just the vendor cost of preparing the e-mails for attorney review.

some way to Plaintiffs' claims, and the millions of irrelevant false hits from a broad term like "flexible" or "flexing" were culled out before production. As a result, the e-mails in Plaintiffs' possession do not constitute a representative sample of all the different types of e-mails that custodians typically receive. Running the proposed search terms against this narrow category of documents would therefore reveal little about the number of hits they would generate under real-world conditions.[2]

Accordingly, even if the proposed search terms might generate fewer hits, Merrill Pro's vendor costs for processing ESI for at least 32 custodians would still remain in the $1 million range. And notably, this figure does not include the significant attorneys' fees associated with reviewing the documents for responsiveness and privilege, which would push the total cost far higher. This means that if Plaintiffs' motion were granted, Merrill Pro would be required to spend at least $1 million producing these documents.

## II. The Court Should Reject Plaintiffs' Attempt to Support Their Relevancy Argument with a Series of Half-Truths.

In arguing that the documents that they seek are relevant to their claims, Plaintiffs again take liberties with the facts they disclose. Each of the following statements paints, at best, a misleading factual picture:

---

[2] In fact, Plaintiffs' analysis shows precisely why "flex*" is an unnecessary search term—it rarely appears in the relevant documents.

| **Plaintiffs' Assertion** | **The Missing Facts** |
|---|---|
| "ML Pro conceded the relevancy of the information Plaintiffs request by agreeing to search for emails of six of the ten requested custodians." (Reply at 2.) | Merrill Pro never conceded the relevancy of any custodian's documents. Rather, Merrill Pro offered Plaintiffs a *good faith compromise* in which it would search the e-mails of five custodians in order to resolve this discovery dispute.[3] |
| "ML Pro contends that it did not believe that [the "do not flip"] policy was illegal, even though it has discontinued the practice." (*Id.* at 6.) | The process was not illegal. Plaintiffs conveniently omit that the practice was discontinued in 2008, when the SEC amended Reg SHO to dramatically alter its delivery requirements. |
| "Steve Wizniuk [was] one of only two of ML Pro's compliance officers." (*Id.* at 5.) | As Plaintiffs know from the testimony of Merrill Pro's former Chief Compliance Officer, Merrill Pro had up to *ten* compliance officers at one time. In fact, Plaintiffs have *already received ESI* from at least *three* Merrill Pro compliance officers.[4] |
| ML Pro produced "a limited set of documents previously produced in the course of an SEC investigation." (*Id.* at 1.) | In fact, Merrill Pro produced more than *2 million pages of documents* from the SEC investigation, many of which involve the same custodians that Plaintiffs have identified and cover the same issues presented here. |

---

[3] Plaintiffs' attempt to use this offer against Merrill Pro is particularly improper in light of the judicial policy favoring the private resolution of discovery disputes. Merrill Pro should not be punished for its willingness to compromise in order to avoid yet more motion practice.

[4] These officers include Linda Messinger, Peter Dorenbos, and Joe Mastrianni.

4

| | |
|---|---|
| "Dennis Rowe, Lisa Burke, Steve Wizniuk, and Mark Bowie . . . were high-ranking ML Pro employees." (*Id.* at 4.) | Plaintiffs apparently believe that every Merrill Pro employee is a "high-ranking employee." Lisa Burke is a vice-president[5] in client services and Mark Bowie and Dennis Rowe are merely back-office clerks in the risk/margin and operations departments. |
| "Plaintiffs request that ML Pro search a total of only ten custodians . . . as well as identify and search the employees who oversaw the clearing activities of nine ML Pro customers." (*Id.* at 10.) | Plaintiffs cannot even describe their own demand accurately to the Court. Plaintiffs request that Merrill Pro search *fourteen named* custodians plus an unknown number of other custodians, which total at least 32 custodians. |
| "The [SEC's] search for these documents did not capture electronic correspondence concerning other non-customer activities, such as proprietary trading." (*Id.* at 8.) | This is a red herring. Plaintiffs are well-aware that Merrill Pro is a clearing firm that did not engage in any relevant proprietary trading. Indeed, Plaintiffs' proposed search terms are not aimed in any way at identifying communications about proprietary trading. |

Plaintiffs must shade the truth to support their claim that the document production they seek from Merrill Pro is likely to yield sufficient benefit to justify the extreme burden. The Court should reject this gamesmanship.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion should be denied.

---

[5] While vice-president might sound "high-ranking," Plaintiffs know from the testimony of Merrill Pro's former president that it is actually a low-level title at a bank. Indeed, most banks have hundreds, if not thousands, of "vice-presidents."

5

Dated: February 4, 2011

/s/ Abby F. Rudzin
Andrew J. Frackman
Abby F. Rudzin
Brad M. Elias
Admitted *Pro Hac Vice*

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Phone:  212-326-2000
Fax:  212-326-2061

Richard H. Sinkfield
Georgia Bar No. 649100
RSinkfield@rh-law.com

ROGERS & HARDIN LLP
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
Tel.:  404-522-4700
Fax:  404-525-2224

*Attorneys for Defendant Merrill Lynch Professional Clearing Corp.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> MORGAN STANLEY & CO., INC., *et al.* <br><br> Defendants. | CIVIL ACTION NUMBER: <br> 1:10-CV-03108-JEC |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2011, I caused a copy of the foregoing *Defendant Merrill Lynch Professional Clearing Corp.'s Sur-Reply in Opposition to Plaintiffs' Motion to Compel ML Pro to Identify Certain Employees Likely to Have Responsive Information and to Produce Documents from a Limited Set of Custodians* to be filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

> John E. Floyd, Esq.
> floyd@bmelaw.com
>
> Steven J. Rosenwasser, Esq.
> rosenwasser@bmelaw.com

>Nicole G. Iannarone, Esq.
>iannarone@bmelaw.com
>
>Jill A. Pryor, Esq.
>pryor@bmelaw.com
>
>Robert L. Ashe, III, Esq.
>ashe@bmelaw.com
>
>Michael A. Caplan, Esq.
>caplan@bmelaw.com
>
>Elizabeth G. Eager
>eager@bmelaw.com

and that I have caused a copy to be served by U.S. Mail on the following attorneys

of record:

>James W. Christian, Esq.
>CHRISTIAN, SMITH & JEWELL LLP
>2302 Fannin, Suite 500
>Houston, TX  77002
>
>Robert F. Wise, Jr., Esq.
>Melissa Aoyagi, Esq.
>DAVIS POLK & WARDWELL LLP
>450 Lexington Avenue
>New York, NY  10017

Richard H. Klapper, Esq.
Richard C. Pepperman, II, Esq.
Tracy Richelle High, Esq.
Robin L. Nunn, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498

Stephen L. Ratner, Esq.
Brian L. Friedman, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036

Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Peter J. Isajiw, Esq.
Heather L. Fesnak, Esq.
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY 10281

Fraser L. Hunter, Jr., Esq.
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY 10022

Andrew J. Frackman, Esq.
Abby F. Rudzin, Esq.
Brad M. Elias, Esq.
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036

Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Jeffrey M. Gould, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005

/*s*/ Richard H. Sinkfield

Richard H. Sinkfield
Georgia Bar No. 649100
rsinkfield@rh-law.com