EXHIBIT

5

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 31464304
Date: Jun  4 2010  1:00PM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

|  |  |  |
|---|---|---|
| TASER INTERNATIONAL, INC., *et al.*, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION FILE NO.: 2008-EV-004739-B |
| v. | : : : | |
| MORGAN STANLEY & CO., INC., *et al.*, | : : : : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
TO PRODUCE DOCUMENTS RELATED TO THEIR
AFFIRMATIVE DEFENSE OF GOOD-FAITH RELIANCE OR,
IN THE ALTERNATIVE, TO STRIKE THAT DEFENSE**

Having refused to answer the basic question of whether, **as indicated in their Answers,** Defendants intend on asserting good faith reliance on legal counsel as an affirmative defense, Plaintiffs are left with no choice but to yet again seek Court intervention.  Unless and until Defendants answer that question, Plaintiffs are materially prejudiced in their ability to conduct discovery and prepare for trial.

It is well settled that "reliance on an attorney's advice as an element of a claim or defense, **such as the assertion of a good faith defense**…places otherwise privileged attorney-client communications at issue and implicitly waives the privilege." *Morande Auto. Group v. Metropolitan Group, Inc.*, 2009 WL 650444, at *3 (D. Conn. Mar. 12, 2009).  Consequently, when a good faith reliance

772024.1

affirmative defense is asserted, Plaintiffs are entitled to seek discovery relating to Defendants' knowledge of the law and the basis for their reliance on legal counsel. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994).

Here, Defendants are trying to have it both ways: they are attempting to preserve their right to assert a good faith reliance defense while at the same time **refusing to allow Plaintiffs to conduct <u>any</u> discovery into that defense.** Defendants cannot wait and later "spring [the defense] upon plaintiffs in the midst of trial for the sake of obtaining a tactical advantage." *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 530 (N.D. Cal. 1988).  It would be patently unfair to permit Defendants to wait until summary judgment or trial to decide whether to rely on a good faith defense because, at that late-time, Plaintiffs will have lost the opportunity to obtain discovery necessary to rebut it.  Defendants first raised this affirmative defense in their Answers more than two years ago, and have had more than adequate time to decide whether they are pursuing it or not.  Plaintiffs ask the Court to require Defendants to either permit discovery into their good faith defense or strike that defense and preclude Defendants from offering any evidence relating to or supporting it.

## I.      Background.

From the outset of this litigation, Defendants have asserted a "good faith" defense, claiming that they are neither liable nor subject to punitive damages

because they "acted in good faith in conformity with the rules, regulations and pronouncements of the SEC and the National Association of Securities Dealers."[1] But, Defendants are intentionally vague as to what they mean by their good-faith reliance defense, and they have refused to clarify whether they are invoking a good faith defense based upon reliance on the advice of counsel or something else.  For example, in an effort to understand the nature of Defendants' "good faith" defense, Plaintiffs wrote Defendants and asked:

1.   Do you agree that you will never (including at summary judgment and trial) raise through documents, testimony or otherwise reliance on any statements, advice or other information you received from any attorney, including in-house counsel, attorneys in the compliance department or outside counsel?

2.   Do you agree that you will never (including at summary judgment and trial) contend that you acted in good faith reliance on any advice, input or other information you received from any in-house attorney or outside counsel?

3.   Do you agree that to the extent you intend on raising a good faith defense in this case, such defense will never include any references to or evidence/testimony involving any advice, input

---

[1]   *See* UBS's Answer to Sixth Am. Compl. at 24 ("[Defendant] is not subject to liability under Georgia law because it acted in good faith in conformity with the rules, regulations and pronouncements of the SEC and the National Association of Securities Dealers . . . ."); Bear Stearns' Answer to Sixth Am. Compl. at 25 (same); Credit Suisse's Answer to Sixth Am. Compl. at 24 (same); Merrill Lynch's Answer to Sixth Am. Compl. at 24 (same); Goldman Sachs' Answer to Sixth Am. Compl. at 24 (same); Deutsche Bank's Answer to Sixth Am. Compl. at 19 (same); Banc of America's Answer to Sixth Am. Compl. at 24 (same); Morgan Stanley's Answer to Sixth Am. Compl. at 21 (same).

or other information you received from any in-house attorney or outside counsel?[2]

Defendants refused to engage in any conferral and declined to answer these questions, claiming that they are "premature."[3]  But these questions are most certainly timely because they play a material role in the scope of discovery and the validity of Defendants' privilege claims.   If Defendants claim reliance on counsel, then under well-established law, Plaintiffs are entitled to discover their relevant "attorney client communications [and] documents relied upon or considered by counsel in rendering the opinions relied upon." *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1092-93 (D. Nev. 2003) (gathering cases).  Such discovery is particularly important in this case.  Each of the Defendants maintains extensive compliance offices, staffed with large numbers of lawyers.  And each also has significant numbers of outside counsel.  It appears, from a cursory review of Defendants' privilege logs, that both in-house compliance departments and outside counsel provide each of the Defendants with advice regarding whether their conduct is in good faith compliance with the relevant laws.  Accordingly, it would be unfair for Defendants to claim that they relied in good faith on their

---

[2] *See* May 20, 2010 Letter from S. Rosenwasser to Defense Counsel, attached hereto as Exhibit A.

[3] *See* June 2, 2010 Email from J. Gould to S. Rosenwasser, attached hereto as Exhibit B.

counsels' advice, but then hide any documents that either support or disprove their claim.

If Defendants intend on claiming good faith reliance on counsel, Plaintiffs are at least entitled to discovery into: (1) the documents showing exactly what advice or information from counsel they allegedly relied upon and when (*i.e.*, discovery into whether they did, in fact, rely on counsel); (2) documents showing whether their counsel indicated that the conduct was lawful and whether that position ever changed (*i.e.*, discovery into whether their actions were, in fact, conducted with a good faith belief that they were in accordance with the law); and (3) depositions into when the supposedly relied up advice was received, what the advice was and whether there was any countervailing advice. *Infra* at 6-11.  To date, however, Defendants have refused to permit discovery into **any** of these areas and have instead withheld thousands of allegedly-privileged documents, which directly relate to the defense.[4]  Moreover, in some instances, **Defendants have refused to <u>even identify</u> in-house compliance attorneys with knowledge (let alone search for their documents), despite the fact that those very attorneys (and their documents) may ultimately form the basis of Defendants' good-**

---

[4] For example, Defendants may argue good faith reliance on counsel with respect to their compliance with Regulation SHO.  Yet, they are refusing to produce documents "regarding Reg SHO requirements and the implementation of compliance procedures."  *See* Exhibit C at 3 (May 17, 2010 Letter from P. Eckles to S. Rosenwasser).

**faith defense.** Indeed, just recently, UBS and Bear Stearns refused to provide that information:

> Regarding the names of the people who actively assisted in the response to the inquiry…because most, if not all, of the UBS individuals who work on such regulatory inquiries and investigations are attorneys, it is not likely to lead to the discovery of admissible evidence. UBS maintains its objection to providing this information.

*See* Exhibit D (May 18, 2010 Letter from J. Gould to S. Rosenwasser at 3); *see also Id.* (May 18, 2010 Letter from B. Friedman to S. Rosenwasser at 1-2 containing identical objection).

Defendants cannot deprive Plaintiffs of necessary discovery by waiting until the end of discovery to invoke a good faith defense. If Defendants intend to raise that defense, Plaintiffs must have the opportunity now, during the discovery period, to request documents and testimony bearing on it. "To deny the plaintiffs this opportunity would result in a one-sided account and prejudice the plaintiffs' ability to litigate their claim." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971, at *6 (S.D.N.Y. Oct. 11, 1995).

## II.    Argument and Citation of Authority

It is well settled that the attorney-client privilege is waived "when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982). Indeed, asserting a

good faith defense makes all information related to that defense discoverable and

relevant to the case:

> [A] client's reliance on an attorney's advice as an element of a claim
> or defense, **such as the assertion of a good faith defense...**places
> otherwise privileged attorney-client communications at issue and
> implicitly waives the privilege.  Because a fact finder would be unable
> to evaluate the merits of the good faith defense without evidence of
> what legal advice the defendant relied on – a jury *could not* evaluate
> the defense *without* the protected information – the privilege must
> give way. **When the individual asserts his good faith defense, he
> squarely places at issue otherwise protected legal advice, and
> affirmatively waives the attorney-client privilege.**

*Morande*, 2009 WL 650444, at *3 (emphasis added).

The reason for this rule is obvious: a party cannot claim a defense while at

the same time refusing to permit his opponent to test the veracity of that defense.

To allow a litigant to assert such a defense and simultaneously "to allow the

privilege to protect against disclosure of such information would [be] manifestly

unfair to the opposing party." *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447

(S.D. Fla. 1980).  Simply put, "a litigant cannot at one and the same time make use

of those privileged communications which support his position while hoping to

maintain the privilege as those communications which undercut his legal position."

*In re Human Tissue Products Liab. Litig.*, 255 F.R.D. 151, 158 (D.N.J. 2008).

Courts have consistently held that a defendant must state **in discovery**

whether it is asserting a good faith reliance-on-counsel defense so that the plaintiff

may take appropriate discovery .  For example, like Defendants here, the defendant

772024.1

7

in *American Int'l Airways, Inc. v. American Int'l Group, Inc.*, 1991 WL 255661, at *1 (E.D. Pa. Nov. 14, 1991), asserted an ambiguous defense suggesting only that it *might* assert reliance on counsel as an affirmative defense at trial. During the discovery period, the plaintiff moved to compel the defendant to produce attorney-client communications bearing on the subject matter of the litigation, and the court agreed with plaintiff's position: "It is unfair and contrary to the purpose underlying the discovery rules to allow defendant to assert a privilege in refusing to comply with discovery requests for information and then to rely on this same information at trial, preventing any effective preparation by opposing counsel." *Id.* at *2. Thus, the court held that the defendant had to either affirmatively abandon its good faith reliance-on-counsel defense or produce the relevant documents, holding that: "If this defense encompasses reliance on counsel's advice, the presentation of evidence of counsel's good faith belief in the merits of the underlying action effectively waives the privilege." *Id.* It ordered that defendants produce the relevant attorney-client documents or affirmatively assert within ten days that it was not relying on that defense. *Id.*

Courts require parties to disclose reliance upon a good faith defense early because it materially impacts the scope of discovery, particularly including the right to discover attorney-client communications, which are no longer privileged once the good faith defense is asserted. For example, in *United States v. Exxon*

*Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981),[5] the movant sought to compel the production certain documents because the defendant had waived the attorney-client privilege by asserting an affirmative defense of good faith reliance on the government's regulations and communications (precisely the defense Defendants raise here).  The court ordered the production of the documents because the only way the government could assess the validity of the affirmative defenses would be "to investigate attorney-client communications where Exxon's interpretation of various DOE policies and directives was established and where Exxon expressed its intentions regarding compliance with those policies and directives."  Moreover, the court held that the defenses "do not solely relate to the 'objective' representations of DOE, but directly concern Exxon's subjective interpretation of understanding of those regulations; i.e., Exxon's corporate state of mind."  *Id.*

Similarly, in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), the defendant asserted a good faith defense, claiming that he "thought his actions complied with the securities laws."  That defense, which is nearly identical to the one asserted by Defendants here, "put [defendant's] knowledge of the law and his basis for his understanding of what the law required in issue.  [Thus], his conversations with counsel regarding the legality of his schemes would have been

---

[5] "[T]here is no case authority for the proposition that the privilege applies differently in criminal and civil cases . . . ."  *Swidler & Berlin v. United States*, 524 U.S. 399, 408–409 (1998).

directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.* at 1292. Moreover, the court also noted that "a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Id.*[6]

Here, as in *Exxon, Bilzerian* and the litany of other cases cited above, since Defendants contend that they acted with a good faith belief that their conduct was in accordance with federal and SEC laws, rules and regulations, then Plaintiffs are entitled to discovery into whether that claim is true. This includes the right to all communications, including privileged communications, relating to the subject matter:

---

[6] There are scores of cases throughout the country similarly holding that asserting a good faith reliance defense waives the attorney-client privilege. *See, e.g., Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) (Having gone beyond mere denial, affirmatively to assert good faith, [the defendant] injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege."); *Anderson v. Nixon*, 444 F.Supp. 1195, 1200 (D.D.C. 1978) (party "waives his attorney-client privilege when he brings suit or raises an affirmative defense that makes his intent and knowledge of the law relevant."); *Village Bd. Of Village of Pleasantville v. Rattner*, 130 A.2d 654, 655 (N.Y. App. 1987) ("attorney-client privilege has been waived by the client by his raising a defense regarding his own good faith, the validity of which can only be tested by invasion of the attorney-client privilege"); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V.*, No. 94 CIV. 4725(CSH)(SEG), 1997 WL 272405, at *5 (S.D.N.Y. May 21, 1997) (good faith defense waives attorney-client privilege); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916 (N.D. Ill. 1989) *Regents v. University of California v. Micro Theraputics, Inc.*, 2007 WL 2069946 (N.D. Cal. 2007) (same); *Mendoza v. McDonald's Corp.*, 213 P.3d 288, 303-04 (2009).

> Fundamental fairness compels the conclusion that a litigant may not use reliance on advice of counsel to support a claim or defense as a sword in litigation, and also deprive the opposing party the opportunity to test the legitimacy of that claim by asserting the attorney-client privilege or work-product doctrine as a shield. This court joins those courts that have held that the defendant, having waived the privilege by asserting the advice of counsel defense, must produce not only attorney-client communications, **but also all documents relied upon or considered by counsel in rendering the opinions relied upon.**

*Aspex Eyewear*, 276 F. Supp. 2d at 1092–1093.

In *Bank Brussels Lambert*, 1995 WL 598971, at *6, for example, Credit Lyonnais (Suisse) raised reliance on counsel as a defense to a federal RICO conspiracy and fraud claim.  Although Credit Lyonnais (Suisse) acknowledged its responsibility to produce some relevant attorney-client communications, it only selectively produced the communications that presented it as "blindly following" the advice of counsel. *Id.*  But it refused to produce additional communications with counsel that bore on the same subject matter.  The court granted the plaintiff's motion to compel, concluding that Credit Lyonnais (Suisse) had waived its attorney-client privilege as to the entire subject matter of the plaintiffs' claims: "To deny the plaintiffs this opportunity would result in a one-sided account and prejudice the plaintiffs' ability to litigate their claim." *Id.* at *5-*6.

In the event Defendants refuse to disclose their attorney-client communications in discovery, they should be prohibited from relying on the defense of good faith and it should be stricken.  Courts across the country have

772024.1

11

followed this view, requiring that the party asserting the defense make a choice early in discovery: either produce the privileged communications or abandon the defense. Thus, in *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1012 (N.D. Ill. 1993), where the defendant refused to provide discovery and answer questions concerning its attorney-client communications during several depositions, but, after the close of discovery, sought to assert a good faith defense, the defendant was barred from using the defense:

> The Defendants cannot have it both ways; they cannot seek refuge in consultation with counsel as evidence of their good faith yet prevent [the plaintiff] from discovering the contents of the communication. Whether or not defendants acted in good faith depends on what legal advice they received and whether they followed that legal advice. . . .**Thus, defendants must have disclosed the advice of counsel or they are precluded from raising the fact of legal consultation as part of their good faith argument.**

*Id.* (emphasis added).

At bottom, Defendants need to make a choice **now**. They can either: (1) confirm that they are asserting the good faith reliance defense and permit Plaintiffs to obtain discovery with respect thereto or (2) agree to amend their Answers to withdraw that defense permanently from this case, and further agree that they never introduce any evidence/testimony involving any reliance upon or advice, input or other information from any in-house attorney (including their Compliance departments) or outside counsel.

772024.1

Finally, Plaintiffs note that they have a pending Motion to Compel with respect to other privileged matters, which requests that the Court appoint a Special Master to review allegedly privileged documents *in camera* to prevent the Court from having to manually review thousands of pages of documents for privilege assertions.[7]  While Plaintiffs continue to believe that appointment of a Special Master *for the limited task* of reviewing thousands allegedly privileged documents is appropriate, **the Court** must resolve this broader, threshold motion because it relates to defenses which will be permitted in this action.  Indeed, the resolution of this motion will govern whether documents are ever even included on a privilege log.[8]

## III.   Conclusion

Plaintiffs request that enter an Order that:

---

[7] *See* May 24, 2010, Plaintiffs' Motion to Compel Production of Documents Improperly Withheld as Privileged or Alternatively, to Appoint A Special Master to Conduct An *In Camera* Review.

[8] Moreover, if the Court appoints a Special Master to address this question, and the Special Master rules in Plaintiffs' favor, it is a virtual certainty that Defendants will appeal that ruling to this Court.  As a result, the parties will have to brief the issue twice, and the issue will remain unresolved for many months.  That, in turn, will materially prejudice Plaintiffs in discovery, because Plaintiffs will not have access to critical documents and testimony relating to any good faith reliance defense, including documents that would likely be used in depositions that will be taken in the near future.

(1)    Requires Defendants to certify to the Court within 10 days whether

they will assert the good faith reliance defense; and;

(2)    If Defendants withdraw the defense, prevents Defendants from ever

introducing any evidence or testimony involving any reliance upon or

advice, input or other information from any in-house attorney

(including within their Compliance departments) or outside counsel.

Respectfully submitted, this 4th day of June, 2010.

        /s/ Steven J. Rosenwasser
        John E. Floyd
        Georgia Bar No. 266413
        Steven J. Rosenwasser
        Georgia Bar No. 614908
        Nicole G. Iannarone
        Georgia Bar No. 382510
        Bondurant, Mixson & Elmore, LLP
        3900 One Atlantic Center
        1201 West Peachtree Street, N.W.
        Atlanta, Georgia  30309-3417
        (404) 881-4100 Tel.

        James W. Christian
        State Bar No. 04228700
        Gary M. Jewell
        State Bar No. 10664800
        Scott R. Link
        State Bar No. 12390900
        Christian, Smith, & Jewell, LLP
        2302 Fannin, Suite 500
        Houston, Texas  77002
        (admitted pro hac vice)

        *ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the foregoing

PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE

DOCUMENTS RELATED TO THEIR AFFIRMATIVE DEFENSE OF GOOD-

FAITH RELIANCE OR, IN THE ALTERNATIVE, TO STRIKE THAT

DEFENSE was served on the following counsel of record electronically via Lexis

File & Serve:

**Attorneys for Defendants:**
Richard H. Sinkfield, Esq.
Rogers & Hardin
2700 International Tower, Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA  30303-1601

**Attorneys for Banc of America Securities, LLC:**
Andrew J. Frackman, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036

**Attorneys for Morgan Stanley & Co. Incorporated:**
Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa T. Aoyagi, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017

772024.1

15

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Goldman USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

**Attorneys for Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
Paul M. Eckles, Esq.
Shepard Goldfein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036

Richard S. Horvath, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center
Suite 3800
San Francisco, CA 94111-4144

This 4th day of June, 2010.

/s/ Steven J. Rosenwasser
Steven J. Rosenwasser
Georgia Bar No. 614908

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3417
Telephone (404) 881-4100
Facsimile (404) 881-4111

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 31464304
Date: Jun  4 2010  1:00PM
Mark Harper, Clerk

# EXHIBIT

# A

**Steven J. Rosenwasser**

| | |
|---|---|
| **From:** | Steven J. Rosenwasser |
| **Sent:** | Thursday, May 20, 2010 11:19 AM |
| **To:** | 'BLFriedman@proskauer.com'; 'Elias, Brad'; 'Hunter, Fraser'; 'martin.seidel@cwt.com'; 'peppermann@sullcrom.com'; 'Paul.Eckles@skadden.com'; 'jlandis@kirkland.com'; 'Wise, Jr., Robert F.' |
| **Cc:** | Nicole G. Iannarone; Elizabeth G. Eager |
| **Subject:** | Conferral |

All:

Good morning.   We would appreciate it if each of you would please provide a "yes" or "no" answer to each of the following questions.

1.       Do you agree that you will never (including at summary judgment and trial) raise through documents, testimony or otherwise reliance on any statements, advice or other information you received from any attorney, including in-house counsel, attorneys in the compliance department or outside counsel?

2.       Do you agree that you will never (including at summary judgment and trial) contend that you acted in good faith reliance on any advice, input or other information you received from any in-house attorney or outside counsel?

3.       Do you agree that to the extent you intend on raising a good faith defense in this case, such defense will never include any references to or evidence/testimony involving any advice, input or other information you received from any in-house attorney or outside counsel?

We would appreciate a response by early next week.

Steven

1

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 31464304
Date: Jun 4 2010 1:00PM
Mark Harper, Clerk

EXHIBIT

B

## Steven J. Rosenwasser

| | |
|---|---|
| **From:** | Jeffrey Gould [jgould@kirkland.com] |
| **Sent:** | Wednesday, June 02, 2010 9:01 PM |
| **To:** | Steven J. Rosenwasser; Elizabeth G. Eager; Nicole G. Iannarone |
| **Cc:** | Andrew Clubok; Jeffrey Landis |
| **Subject:** | RE: Conferral |

Steven,

We have discussed this issue with members of our defense group and believe that your questions are premature. We are, of course, willing to discuss issues such as this at the appropriate time.

Thanks,
Jeff

Jeffrey M. Gould
Kirkland & Ellis LLP
655 15th St., NW | Suite 1200
Washington, DC 20005
(Direct) 202-879-5138
(FAX) 202-879-5200

| | |
|---|---|
| "Steven J. Rosenwasser" <rosenwasser@bmelaw.com> | To "Jeffrey Gould" <jgould@kirkland.com>, "Elizabeth G. Eager" <eager@bmelaw.com>, "Nicole G. Iannarone" <iannarone@bmelaw.com> |
| 05/27/2010 02:54 PM | cc "Andrew Clubok" <aclubok@kirkland.com>, "Jeffrey Landis" <JLandis@kirkland.com> |
| | Subject RE: Fw: Conferral |

To clarify, I indicated that the answers generally impact the scope of discovery, including, but not limited to, whether or not we are entitled to documents sent to/received from counsel, testimony from individuals for whom you may contend you relied on their advice, and issues relating to any claims of privilege.

**From:** Jeffrey Gould [mailto:jgould@kirkland.com]
**Sent:** Thursday, May 27, 2010 2:52 PM
**To:** Steven J. Rosenwasser; Elizabeth G. Eager; Nicole G. Iannarone
**Cc:** Andrew Clubok; Jeffrey Landis
**Subject:** Re: Fw: Conferral

Steven,

I write in response to your conferral email below and to follow-up on our conversation about this matter earlier today. We asked you why you wanted UBS (and other defendants) to answer these questions. You stated that these questions pertain to the scope of discovery. Specifically, you stated that if UBS (or any of the defendants) are relying on, or intend to rely on, advice of counsel in this case, then you may seek discovery from attorneys.

Please confirm that this accurately reflects your position, and we will continue to consider your requests.

Thanks,
Jeff

Jeffrey M. Gould
Kirkland & Ellis LLP

1

655 15th St., NW | Suite 1200
Washington, DC 20005
(Direct) 202-879-5138
(FAX) 202-879-5200


----- Forwarded by Jeffrey Landis/Washington DC/Kirkland-Ellis on 05/20/2010 11:20 AM -----

"Steven J. Rosenwasser"
<rosenwasser@bmelaw.com>

05/20/2010 11:18 AM

To <BLFriedman@proskauer.com>, "Elias, Brad" <belias@OMM.com>, "Hunter, Fraser"
    <Fraser.Hunter@wilmerhale.com>, <martin.seidel@cwt.com>, <peppermanr@sullcrom.com>,
    <Paul.Eckles@skadden.com>, <jlandis@kirkland.com>, "Wise, Jr., Robert F." <robert.wise@davispolk.com>

cc "Nicole G. Iannarone" <iannarone@bmelaw.com>, "Elizabeth G. Eager" <eager@bmelaw.com>

Subject Conferral


All:

Good morning.   We would appreciate it if each of you would please provide a "yes" or "no" answer to each of the following questions.

1.      Do you agree that you will never (including at summary judgment and trial) raise through documents, testimony or otherwise reliance on any statements, advice or other information you received from any attorney, including in-house counsel, attorneys in the compliance department or outside counsel?

2.      Do you agree that you will never (including at summary judgment and trial) contend that you acted in good faith reliance on any advice, input or other information you received from any in-house attorney or outside counsel?

3.      Do you agree that to the extent you intend on raising a good faith defense in this case, such defense will never include any references to or evidence/testimony involving any advice, input or other information you received from any in-house attorney or outside counsel?

We would appreciate a response by early next week.

Steven


**********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
**********************************************************

```
************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************************
```

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 31464304
Date: Jun 4 2010 1:00PM
Mark Harper, Clerk

EXHIBIT

C

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE
NEW YORK 10036-6522
————
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-2578
DIRECT FAX
(917) 777-2578
EMAIL ADDRESS
PAUL.ECKLES@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 17, 2010

**By Email and FedEx**

Steven J. Rosenwasser, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309

RE:   *TASER International, Inc., et al. v. Morgan Stanley &
Co., Inc., et al.*, Civil Case No. 2008-EV-004739-B

Dear Steven:

I write on behalf of Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") in response to your February 4, 2010 and April 20, 2010 e-mails regarding Merrill Lynch's privilege log.

Your initial e-mail to Richard Horvath on February 4, 2010 identified 41 entries on Merrill Lynch's privilege log that you wished to discuss. On February 24, 2010, you and I engaged in an extended Meet & Confer on various discovery topics, including Merrill Lynch's privilege log. During that conversation, you articulated the reasons behind your requests. For 14 of those documents (Nos. 52-57, 64-70 and 113), you stated that your concern was not about the specific documents listed on the privilege log, but rather whether Merrill Lynch had produced any responsive, non-privileged documents relating to the inquiries or investigations that were the subject of the documents listed in the privilege log. Indeed, you acknowledged that we had included all the information we could reasonably be expected to provide regarding those documents without actually revealing the substance of privileged material. You instead asked us to look into whether the

Steven J. Rosenwasser, Esq.
May 17, 2010
Page 2

investigation and/or inquiry referenced in those documents related to Taser securities.[1]  After further investigation, we can now confirm that they did not.[2]

        Also on the February 24, 2010 call, you stated that your main concern as to the remaining set of documents was that no attorney appeared as an author or recipient for those particular e-mails.  Entries 3, 4, 5, 7, 36, 138 and 139 all contain an in-house attorney (designated by the asterisk) as a recipient.  Entries 9, 11, 16, 20-23, 30, 84, 97-100, 130, 131, 136 and 137 have attorney(s) as author(s) and/or recipient(s) on e-mails that appear earlier in the string.  In all those cases, the earlier e-mails on which attorneys are authors and/or recipients contain legal advice or request information necessary to provide legal advice.  The descriptions of the subsequent e-mails (the ones cited in the privilege log) indicate as much.  While we do not believe it necessary, below is a chart that lists the attorneys or persons working on their behalf appearing as authors and/or recipients in e-mail strings in Entries 9, 11, 16, 20-23, 30, 84, 97-100, 130, 131, 136 and 137.

| Entry | Attorney(s) |
|---|---|
| 9 | Moschetta, Luciano (OGC)*, Mazzone, Lucy (OGC)*, Tiedemann, Thomas (OGC)*, Gilmartin, Sean (OGC)*, Aasland, Morten (OGC)* |
| 11 | Willis, Mark (OGC)* |
| 16 | Moynihan, Kevin (OGC)*, Willis, Mark (OGC)* |
| 20 | Willis, Mark (OGC)* |
| 21 | Willis, Mark (OGC)* |
| 22 | Willis, Mark (OGC)* |
| 23 | Willis, Mark (OGC)* |
| 30 | Willis, Mark (OGC)* |
| 84 | Ingrassia, Lisa (OGC)*, Desimone, Lisa (OGC)* |
| 97 | Algaze, Adam (OGC)*, Olmedo, Jonelle (OGC)* |
| 98 | Algaze, Adam (OGC)*, Olmedo, Jonelle (OGC)* |
| 99 | Algaze, Adam (OGC)*, Olmedo, Jonelle (OGC)* |

---

[1]    With the exception of Entry No. 113, each of these documents contains multiple e-mails directly between Merrill Lynch employees and either its in-house attorneys or outside counsel.  For Entries 52, 56, 57, and 64 through 70, the top e-mail in the string falls into that category.  For Entries 53, 54, and 55, although the top e-mail is between Merrill Lynch employees only, multiple e-mails to and from Michael D. Mann and Kevin J. Campion, both outside counsel to Merrill Lynch, are also contained in the e-mail string.  For these entries, the top e-mail is the continuation of a discussion with outside counsel where Linda Messinger and Steve Wizniuk, Merrill Lynch employees, are discussing the legal advice given to them by outside counsel in previous e-mails.

[2]    While we note that the applicable Georgia statues and case law do not in any case require Merrill Lynch to provide you with this information, we have done so in this instance as a measure of good faith.

Steven J. Rosenwasser, Esq.
May 17, 2010
Page 3

| 100 | Algaze, Adam (OGC)*, Olmedo, Jonelle (OGC)* |
| 130 | Woo, Amy (OGC)*, Dennis, Martha (OGC)* |
| 131 | Woo, Amy (OGC)*, Dennis, Martha (OGC)* |
| 136 | Moynihan, Kevin (OGC)* |
| 137 | Moynihan, Kevin (OGC)* |

   The remaining entries (Nos. 2, 17, 29, and 113) do not have an attorney in the e-mail string. With regard to Entries 29 and 113, after further review, we are willing to produce these documents. They will be included in our next production. For Entries 2 and 17, the chart below contains more detailed descriptions of these documents and any attachments. We believe that this information is more than sufficient to satisfy our obligations under applicable Georgia law as to our privilege designation.

| Entry | Subject Matter |
|-------|----------------|
| 2 | This e-mail string contains communications among business people. These e-mails were sent and received in the months immediately preceding the implementation of Reg SHO. Attached to these e-mails is a document containing legal advice and analysis regarding Reg SHO requirements and the implementation of compliance procedures. The e-mail references the content of that attachment. |
| 17 | This e-mail string contains communications among business people. These e-mails were sent and received in the months immediately preceding the implementation of Reg SHO. The e-mail itself contains an agenda for a meeting between these business people and Mark Willis, a Merrill Lynch attorney. Attached to these e-mails is a document containing legal analysis regarding Reg SHO requirements and compliance efforts. The e-mail references the content of that attachment. |

   This letter has addressed and responded to the issues you raised in your February 4, 2010 e-mail and during our February 24, 2010 Meet & Confer. We are aware that you sent a subsequent e-mail on April 20, 2010 regarding Merrill Lynch's privilege log. That e-mail requests a tremendous amount of information for virtually *every single entry* on Merrill Lynch's initial and supplemental privilege logs, almost all of which is completely unnecessary to assess Merrill Lynch's privilege assertions. Among other things, the letter requests information about the "stocks involved" in regulatory inquiries cited in "Subject Matter" descriptions, "why each of the recipients needed to know the information" and confirmation that "the information provided [in an e-mail] was never conveyed on a broader scale." There is simply no basis in Georgia law for these painfully broad and virtually unanswerable requests. Needless to say, the requests contained in this second e-mail

Steven J. Rosenwasser, Esq.
May 17, 2010
Page 4

differed substantially from those in your initial e-mail and are inconsistent with the positions you took during our Meet & Confer.

Common sense dictates that Merrill Lynch view this letter in the context and timeframe in which it was received. Only days earlier, Merrill Lynch and the other Defendants declined Plaintiffs' request to submit all privilege issues to a Special Master. Having been denied this request, Plaintiffs then endeavored, through this letter, to harass Merrill Lynch to such a degree as to make the Meet & Confer process on privilege issues so utterly frivolous and unmanageable as to coerce its consent for the appointment of a Special Master. There is simply no other explanation for why your initial list of straightforward and generally reasonable requests was followed 75 days later by a 4,400-word "conferral" on the same subject.

Merrill Lynch has chosen to respond to your initial requests, as conveyed in your February 4, 2010 e-mail and the February 24, 2010 Meet & Confer, as it believes these to be your only well-founded concerns regarding Merrill Lynch's privilege log. It views those communications as the only ones on this subject that have been in good faith and without ulterior motive.

Merrill Lynch does not believe there is any Georgia statute or case law that requires disclosure of the further information you now request. Therefore, Merrill Lynch is currently unwilling to provide such information. If you believe otherwise, please let me know.

Please feel free to contact me if you have any questions.

Very truly yours,

Paul M. Eckles

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 31464304
Date:  Jun  4 2010  1:00PM
Mark Harper, Clerk

EXHIBIT

D

# KIRKLAND & ELLIS LLP
#### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Jeffrey M. Gould
To Call Writer Directly:
(202) 879-5138
jeffrey.gould@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

May 18, 2010

**VIA ELECTRONIC MAIL**

Steven Rosenwasser, Esq.
Bondurant, Mixon & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3400

Re:   *Taser International, et al. v. Morgan Stanley & Co., et al.*

Dear Steven:

We write on behalf of UBS Securities, LLC ("UBS") in response to your May 11, 2010 email concerning UBS's Objections and Responses to Plaintiff TASER International's Fourth Set of Interrogatories to UBS, and Fourth Requests for the Production of Documents to All Defendants (together, "the Requests").

As an initial matter, we object to your attempt to impose an arbitrary and self-selected deadline for responding to your email. Your unilateral demand that within 5 days UBS supplement its response to the Requests and answer dozens of questions from your email is neither reasonable nor appropriate. This demand is particularly unreasonable in a case as large and complex as this one, and in light of the enormous discovery you have elected to seek. As we have done throughout this litigation, we will analyze the issues you have raised and reply in good faith within a reasonable period of time.

We also take issue with your inflammatory statement that "Defendants have engaged in a pattern of using the meet and confer process as a means of granting themselves a unilateral extension to discovery deadlines." This self-serving statement is false on its face and apparently intended to discourage defendants from exercising their rights. That you may disagree with defendants' position on a particular issue does mean that defendants are improperly using meet and confers to unilaterally grant themselves extensions. Indeed, defendants have repeatedly demonstrated a willingness to meet and confer with you in good faith, and we have successfully resolved numerous disputes without the need to waste judicial resources. Such a process is the inevitable result of your overly broad and unduly burdensome discovery demands. To the extent

Chicago     Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai

Steven Rosenwasser, Esq.
May 18, 2010
Page 2

you wish to avoid future meet and confers or disputes about your discovery demands, we suggest you more reasonably tailor them in the first instance.

As to the substance of your email, we disagree with your assertion that UBS's objections are improper and that UBS has not properly responded to the Requests. You requested that UBS identify every formal or information examination, inquiry or investigation relating to conduct at issue in this case, regardless of the outcome, over a six-and-a-half year period, as well as identify a host of specific details about each event. UBS responded in good faith, in a timely manner, and consistent with its objections that your Requests are overly broad, unduly burdensome and not reasonably calculated to lead the discovery of admissible evidence. UBS limited its response to inquiries and investigations relating to the execution and/or clearing of short sales that resulted in a settlement, fine, sanction, censure, or NASD/FINRA Letter of Caution or Cautionary Action during the relevant time period primarily based on its burden and scope objections. UBS receives hundreds if not thousands of regulatory examinations and inquiries each year, the vast majority of which are routine and result in no action by the regulator. Many such examinations and inquiries are nothing more than a single request for information, with no follow-up by a regulator, and no notice to UBS that such examination or inquiry has closed. Not only is such information irrelevant to this case, but it would be unduly burdensome (and extraordinarily costly) to locate and review thousands of irrelevant regulatory requests spanning a six-and-a-half-year period that never reached a final disposition.

Regarding the scope of the Requests, as you know, the "conduct at issue" definition in Exhibit A to the May 6 Stipulation was part of a negotiation designed to identify the types of documents to be produced in connection with the ongoing ESI review, not discovery in general. We never agreed that all discovery was subject to your expansive definition concerning activity in all securities or that UBS cannot object to requests for information about securities other than TASER on burden or other grounds. Indeed, it is the exact opposite. Our position is consistent with your previous statements concerning the impact of your definition of "same or similar conduct" on Defendants' discovery obligations. Plaintiffs' reply on the motion to compel specifically stated that "**If the Court grants Plaintiffs' Motion, the Defendants will not be required to review a single document beyond what they already agreed to review**. The only question presented here is whether documents identified in that review that pertain to improper short selling of non-TASER securities will be placed in the 'produce' pile or the 'nonresponsive' pile." (Emphasis in the original.) Needless to say, we intend to hold you to the representation you made to the Court, and, quite frankly, would be surprised if you would now try to disavow it in any way. At any rate, to the extent your requests for documents or information about non-TASER securities are overly broad, unduly burdensome or otherwise objectionable, UBS absolutely has the right to object to such requests. We would hope that such objections could be resolved through a proper meet and confer.

Steven Rosenwasser, Esq.
May 18, 2010
Page 3

You further take issue with UBS's reservation of its right to produce additional information during the course of its continuing review and production. As we are currently engaged in a review of email that relates, in part, to this issue, UBS properly reserved its right to disclose additional information, if any, discovered in the course of its review. There is nothing improper about such limitation. You have insisted on propounding discovery with the full knowledge that responsive information may be contained in the ongoing email review, which is not scheduled to be completed until after the response date to the Requests. It is improper for you now to object to the fact that UBS reserved its right to supplement its responses with information that is later discovered. You cannot have it both ways.

UBS also objected to your definition of "identify" in Interrogatory 1, which purports to require UBS to identify the regulatory body involved, the securities at issue in each inquiry, the dates of the inquiry, the names of outside counsel that worked on each inquiry, and the names of all individuals that worked on the inquiry in any manner. Most of this information, including the regulatory body involved, securities at issue and dates of the investigation, can be discerned from the materials UBS produced and referred to in its response. As for outside counsel, it is our understanding that this matter was handled internally, and that outside counsel was not involved in this matter. Notwithstanding that you already have this information, we are happy to amend our response to include it therein if you feel that would somehow help you. Please let us know if you would like us to do so.

Regarding the names of the people who actively assisted in the response to the inquiry, UBS objected to the interrogatory on the grounds that your definition of "identify," in that context, is overly broad, unduly burdensome and seeks irrelevant information. Moreover, because most, if not all, of the UBS individuals who work on such regulatory inquiries and investigations are attorneys, it is not likely to lead to the discovery of admissible evidence. UBS maintains its objection to providing this information.

As for your concern about UBS's production of documents related to these Requests, UBS maintains the objections set forth in its response. I can confirm, however, that we will produce additional responsive, non-privileged documents, if any, relating to the materials disclosed in response to Interrogatory 1. Thank you for reminding us that we must provide a verification to Interrogatory 1. We are working on obtaining it and will provide it to you soon.

Sincerely,

Jeffrey M. Gould

Steven Rosenwasser, Esq.
May 18, 2010
Page 4


Enclosure

cc:    Andrew B. Clubok
       All defense counsel



Proskauer Rose LLP   1585 Broadway   New York, NY 10036-8299

Brian L. Friedman
Attorney at Law
d 212.969.3256
f 212.969.2900
blfriedman@proskauer.com
www.proskauer.com

May 18, 2010

**BY EMAIL**

Steven J. Rosenwasser, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309-3400

Re:   *Taser International, et al. v. Morgan Stanley & Co., et al.*

Dear Steven:

We represent Bear, Stearns & Co. Inc. ("BSCO") and Bear, Stearns Securities Corp. ("BSSC") (collectively, "Bear Stearns") and I write in response to your email dated May 11, 2010 concerning Bear Stearns' responses and objections to Plaintiffs' Third Set of Interrogatories and Fourth Request for the Production of Documents (the "Requests"). We disagree with your assertion that Bear Stearns' objections are improper and that Bear Stearns has not properly responded to the Requests. As Bear Stearns stated in its response, the Requests are overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence, especially to the extent that they seek information about examinations, inquiries or investigations that did not result in some formal determination (*i.e.* fine, sanction, letter of caution etc.) Accordingly, Bear Stearns limited its response to such circumstances and objected to the Requests to the extent they seek information outside such circumstances.

Turning specifically to the response to the interrogatory, the documents referenced in Bear Stearns' response provide the information requested other than the names of the people who actively assisted in the investigation and, in the case of the letter of caution, the securities involved. As to the securities involved in the inquiry that led to the letter of caution, enclosed is the initial NASD correspondence regarding that inquiry, Bates stamped BEAR-T01222683-6, which identifies the securities involved. Please note that this document was located during the ongoing document review.

Regarding the names of the people who actively assisted in the response to the inquiry, Bear Stearns objected to the interrogatory on the grounds that such phrase was vague and ambiguous as well as that the instruction to identify, in that context, is overly broad, unduly burdensome and seeks irrelevant information. Moreover, because most, if not all, of the Bear Stearns individuals who work on such regulatory inquiries and investigations are attorneys, it is not likely to lead to

Proskauer≫

Steven J. Rosenwasser, Esq.
May 18, 2010
Page 2

the discovery of admissible evidence.  Bear Stearns maintains its objection to providing this information.  Bear Stearns confirms, however, that outside counsel was not involved in the response to the inquiries identified in its response.

In response to your question about the completeness of Bear Stearns' response, Bear Stearns has identified all of the inquiries or investigations concerning the execution or clearance of short sales that resulted in a formal determination that have been located after a diligent search of the areas reasonably likely to have responsive information.  However, as we are currently engaged in a review of email that relates, in part, to this issue, Bear Stearns reserved its right to disclose additional information should it be discovered.  There is nothing improper about such response.  You have insisted on propounding discovery with the full knowledge that responsive information may be contained in the ongoing email review, which is not scheduled to be completed until after the response date to the Requests.  It is improper for you now to object to the fact that Bear Stearns reserved its right to supplement its responses with information that is later discovered.  You cannot have it both ways.

Regarding the scope of the Requests, as we discussed yesterday and as set forth below, Bear Stearns' limitation of the Requests to issues concerning the execution or clearance of short sales instead of using the definition of "conduct at issue" contained in Exhibit A to the May 6, 2010 stipulation is not material in regard to the interrogatory response.  Additionally, as the negotiation over Exhibit A concluded only days before our response to the interrogatory was due, it is unreasonable to expect that Exhibit A was the operative definition for the response to the interrogatory.  In any event, the last bullet point of Exhibit A specifically requests information concerning violations of "securities laws or SEC, NYSE, NASDAQ or FINRA rules, regulations or procedures related to short selling."  That is exactly what we agreed to provide in response to the requests.  In fact, the majority of the items on Exhibit A relate to the execution or clearance of short sales (i.e. compliance with Regulation SHO and the mechanics of short sales) and any violation of the rules and regulation governing short sales is subsumed in the last bullet point on Exhibit A.  Thus, this is not a substantive dispute but rather one of semantics.  If there are particular aspects of Exhibit A that you wish to discuss further, please identify them.

Further, as you know, the "conduct at issue" definition in Exhibit A was part of a negotiation designed to identify the types of documents to be produced in connection with the ongoing ESI review, not discovery in general.  To avoid any misunderstanding, we never agreed that all discovery was subject to your expansive definition concerning activity in all securities or that Bear Stearns cannot object to requests for information about securities other than TASER on burden or other grounds.  Indeed, it is the exact opposite.  Our position is consistent with your previous statements concerning the impact of your definition of "same or similar conduct" on Defendants' discovery obligations.  Plaintiffs' reply on the motion to compel specifically stated that "**If the Court grants Plaintiffs' Motion, the Defendants will not be required to review a single document beyond what they already agreed to review.**  The only question presented here is whether documents identified in that review that pertain to improper short selling of non-TASER securities will be placed in the 'produce' pile or the 'nonresponsive' pile." (Emphasis in

Proskauer»

Steven J. Rosenwasser, Esq.
May 18, 2010
Page 3

the original.)  To the extent your requests for documents or information about non-TASER securities are overly broad, unduly burdensome or otherwise objectionable, Bear Stearns absolutely has the right to object to such requests.  We would hope that such objections could be resolved through a proper meet and confer.

Lastly, we address a few additional general points raised by your email.  First, we object to your attempt to impose an arbitrary and self-selected five day deadline for responding to your email. This is a large case and will take some time to resolve.  Attempting to impose such deadlines will not accelerate the resolution of this case, the schedule of which is largely dictated by the enormous discovery you have elected to seek.  As we have done throughout this litigation, we will analyze the issues you have raised and reply in good faith within a reasonable period of time.

We also take issue with your statement that "Defendants have engaged in a pattern of using the meet and confer process as a means of granting themselves a unilateral extension to discovery deadlines."  This statement is false and apparently intended to discourage defendants from exercising their rights.  That you may disagree with defendants' position on a particular issue does not mean that defendants are improperly using meet and confers to unilaterally grant themselves extensions or that defendants cannot object to discovery that is overly broad, unduly burdensome or irrelevant.  Indeed, defendants have repeatedly demonstrated a willingness to meet and confer with you in good faith, and we have successfully resolved numerous disputes without the need to waste judicial resources.

As always, we are happy to meet and confer with you to address any legitimate questions or concerns about the nature of Bear Stearns' responses and objections.

Very truly yours,

Brian Friedman

Brian L. Friedman

Enclosure