# EXHIBIT J

**State Court of Fulton County**
**\*\*\*EFILED\*\*\***
LexisNexis Transaction ID: 32424508
Date: Jul 30 2010 4:52PM
Mark Harper, Clerk

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| TASER INTERNATIONAL, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MORGAN STANLEY & CO., INC., *et al.*, <br><br> Defendants. | Civil Case No. <br> 2008-EV-004739-B <br><br> \*\*\* FILED UNDER SEAL \*\*\* |

## DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO ANSWER INTERROGATORY NOS. 1, 2, AND 4 IN DEFENDANTS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS AND OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' MOTION TO COMPEL AND FOR FEES

Defendants hereby reply to Plaintiffs' Opposition to Defendants' Motion to Compel Plaintiffs to Answer Interrogatory Nos. 1, 2, and 4 in Defendants' Second Set of Interrogatories to Plaintiffs, and oppose Plaintiffs' "motion to strike." Plaintiffs' memorandum is filled with abusive rhetoric, charging that Defendants' motion is "knowingly false" and that Defendants "knowing[ly] ... violated at least two Court Orders." (Opp. at 1 (emphases omitted).) There is no basis at all for Plaintiffs' charges. Indeed, the last time Plaintiffs made such an assertion, Plaintiffs wound up withdrawing it. (7/22/10 Pls.' Notice of Am. to Pls.' Reply in Supp. of May 24, 2010 Omnibus Discovery Mot.) While Defendants cannot possibly respond to every factually incorrect assertion in Plaintiffs' opposition—and in Plaintiffs' curiously styled "motion to strike"[1]—Defendants set forth below the reasons why Defendants' motion to compel is entirely appropriate.

---

[1]  Plaintiffs' purported "motion to strike" is nothing more than an argument in opposition to Defendants' motion, and therefore appears to be a thinly veiled procedural tactic designed to grant Plaintiffs the last word in briefing

## INTRODUCTION

**Plaintiffs' Response To Interrogatory No. 1 Is Inadequate.** Interrogatory No. 1 asks Plaintiffs to identify the transactions in TASER securities in which they suffered *losses*. Yet Plaintiffs respond merely by pointing to Plaintiffs' brokerage statements. But these brokerage statements do not, as Plaintiffs (erroneously) claim, even disclose all of Plaintiffs' transactions in TASER securities: certain transactions appear to be missing, including transactions disclosed in certain TASER SEC filings. Moreover, it appears—through piecing together the missing transactions along with what can be gleaned from Plaintiffs' brokerage statements—that virtually all of the Plaintiffs *profited* from their transactions in TASER securities, which of course would make their claims under the Georgia securities laws barred as a matter of law. *See Cohen v. Stevanovich*, 2010 WL 2670865, at *10 (S.D.N.Y. July 1, 2010); *Newitt v. First Union Nat. Bank*, 270 Ga. App. 538, 543, 607 S.E.2d 188, 194 (2004).

**Plaintiffs' Response To Interrogatory No. 2 Is Inadequate.** Interrogatory No. 2 asks Plaintiffs to "identify ... each trading day" and "each transaction where [Plaintiffs] believe that Defendant participated in 'illegal short selling,'" as that term is used in the Complaint. The simple fact is that Plaintiffs have *not* identified *any* short selling transactions in TASER that Plaintiffs can in good faith allege were executed with "*the purpose of driving down*" TASER's stock price, which is what the Complaint alleges to be the heart of this case. Instead, Plaintiffs try to conceal the absence of any such illegal short selling transactions in an onslaught of "illustrative examples" of a wide-ranging variety of conduct that does not meet their own definition of illegal short selling, including: (i) alleged violations of Regulation SHO (the federal short selling regulation) for which there is no private right of action, (ii) failures to

on Defendants' motion. Defendants respectfully request that the Court not entertain any effort by Plaintiffs to file what would amount to nothing more than a sur-reply in response to this reply.

2

deliver TASER stock in a short sale transaction on a particular day (which does not, in and of itself, even violate Regulation SHO), (iii) short selling transactions (naked or otherwise) that may have been unintentionally mismarked long, (iv) failures to locate TASER stock before facilitating a short sale transaction (which again does not, in and of itself, violate Regulation SHO, let alone meet the standard of "illegal short selling" set forth in the Complaint, and (v) irrelevant discussions about, *inter alia*, allegedly fraudulent tax shelters and the Madoff investigation.

If this response is all that Plaintiffs can muster after more than a year of discovery, then their claims should be dismissed. If Plaintiffs intend to offer at trial instances where Defendants allegedly engaged in illegal short selling in TASER that caused Plaintiffs to incur cognizable losses under, *inter alia*, the Georgia securities laws, Defendants respectfully request that this Court compel them to identify promptly those instances (if any) in response to Defendants' interrogatories.

**Plaintiffs' Response To Interrogatory No. 4 Is Inadequate.** In their opposition brief, Plaintiffs barely defend their response to Interrogatory No. 4, which asks Plaintiffs to identify the facts demonstrating that Defendants' alleged illegal short selling constitutes criminal, predicate acts that directly caused Plaintiffs' alleged losses. Plaintiffs do little more than incorporate their inadequate responses to Interrogatories No. 1 and 2. They do not even attempt to explain how a Defendant's failure to deliver, or even a Regulation SHO violation related to another customer's account, could "directly injure" the dozens of Plaintiffs who collectively profited by hundreds of millions of dollars from their TASER transactions, much less constitute a criminal act.

**Plaintiffs Have No Basis For Filing A Motion To Strike.** Plaintiffs tack on to their opposition a "motion to strike" Defendants' motion, in which Plaintiffs resort once again to

3

improperly claiming that Defendants violated stipulated Orders of the Court. But the very Orders that Plaintiffs selectively quote leave no doubt that Defendants have properly moved to compel responses based on data or documents produced *more than* 60 days prior to the motion being filed (*i.e.*, April 11, 2010). Notably, the Orders explicitly require Plaintiffs to "partially answer discovery requests" and prohibit them from "withhold[ing] [discovery] responses pending any supplementation that may depend on a review or analysis of any such data or documents." (Defs.' Mot., Gould Aff., Ex. D (12/17/09 Stipulation & Order ¶ 13), Ex. E (1/11/10 Stipulation & Order ¶ 12.) While Plaintiffs complain that they "did not have *all* of the data or documents necessary to respond to the interrogatories 'either at all or in the sixty days prior to the motion being filed'" (Opp. at 25 (citing stipulated Order) (emphasis added)), the Orders plainly do not condone Plaintiffs' attempt to avoid responding to Defendants' discovery requests at all until after Defendants have produced every last iota of information that Plaintiffs have requested.[2] Plaintiffs must at least partially answer Defendants' interrogatories.

In fact, Defendants substantially completed their document production relating to *TASER* well more than 60 days before filing this motion. Plaintiffs complain instead that certain Defendants did not complete some portions of their *non*-TASER document productions in time, and they posit a hypothetical non-TASER email that they claim "may reveal" evidence of "illegal short sales" in TASER securities.[3]  (Opp. at 27.)  As noted, however, nothing in this

---

[2]  Plaintiffs also claim that Defendants violated the May 12, 2010 Order. While this Order incorporates the December 17, 2009 and January 11, 2010 Orders, it (i) does not even apply to 5 of the 8 Defendants; (ii) does not impose any additional restrictions on Defendants' filing of motions to compel discovery responses, and (iii) addresses only the production of documents not relating to TASER.

[3]  Plaintiffs also complain that UBS only produced its trade blotter data and an affiliate's trading data in June 2010. But again, they do not identify any "illegal short selling" transaction that they have discovered from UBS's trade blotter data (which they have now possessed for almost two months) or affiliate data (which they have possessed for more than a month). Moreover, if the data provides any information not already disclosed to Plaintiffs for more than 60 days (in the form of, *inter alia*, duplicative blue sheets, stock records and order management system data that Plaintiffs have had for months), it falls outside the scope of Defendants' motion.

Court's Orders permits Plaintiffs to avoid their own discovery obligations until after Defendants complete their document productions. But even putting this aside, Plaintiffs have not identified any *non-hypothetical* document or piece of data produced as part of the *non*-TASER document production that in any way relates to Defendants' interrogatories about TASER securities.

Indeed, in various amendments, including those submitted *after* Defendants were compelled to file their motion, Plaintiffs have repeatedly relied on documents and/or data produced long before April 11, 2010 to add so-called "illustrative" examples to their responses. Although these new "illustrative" examples are just as deficient as the prior ones, they plainly are based on information that was produced long ago, and their late identification merely compounds the problems with Plaintiffs' deficient responses.

**Defendants' Motion Is Not Premature.**  Plaintiffs also argue that Defendants improperly filed their motion without waiting for Plaintiffs to amend their response for a fifth time. (Opp. at 12.) Not so. Even though Georgia's good-faith conferral rule requires a moving party to make only "one attempt to resolve the discovery matter" before moving to compel, *Mansell 400 Assocs., L.P. v. Entex Info. Servs., Inc.*, 239 Ga. App. 477, 481 (1999); *see also* Ga. Uniform Sup. Ct. R. 6.4(B), Defendants conferred with Plaintiffs about the deficiencies in their interrogatory responses on numerous occasions for two-and-a-half months—all to no avail. In each conferral, Plaintiffs refused to acknowledge the deficiency of their responses, and they continued to serve entirely unresponsive amendments. Plaintiffs cannot preclude Defendants from seeking relief from this Court, particularly on an issue so fundamental to Defendants' ability to defend themselves, through improper requests for additional conferrals. In any event, as discussed further below, Plaintiffs' most recent amendment merely compounds the problems of their deficient responses by providing additional purported "examples" that for the most part

5

do not even rise to the level of a regulatory violation, let alone an "illegal short sale" that caused

Plaintiffs any cognizable losses.

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT ADEQUATELY IDENTIFIED THE TRANSACTIONS IN WHICH PLAINTIFFS ALLEGEDLY SUFFERED MONETARY LOSSES CAUSED BY DEFENDANTS' CONDUCT, AND THEY FAIL TO IDENTIFY THEIR LOSSES (INTERROGATORY NO. 1).

Plaintiffs argue that they have adequately identified the "amount of monetary loss" for

each TASER transaction in which they allegedly suffered losses, as Interrogatory No. 1 requests,

because they stated that Plaintiffs suffered losses in *each instance* in which any Plaintiff sold

TASER securities since no later than 2004, and they pointed to "the brokerage statements

showing every transaction in which they sold TASER securities." (Opp. at 16-17 (emphasis

omitted).)[4]   Plaintiffs' argument is without merit.

Neither Plaintiffs' brokerage statements nor the full record—which includes SEC filings

that disclose additional TASER transactions that Plaintiffs failed to identify—show that

Plaintiffs suffered *losses*.  Rather, as the chart below shows, *38 of the 42 Plaintiffs realized net*

*gains on their TASER transactions*, with some of them making tens of millions of dollars:

---

[4]   Plaintiffs' assertion that they have disclosed in their brokerage statements *every* transaction in which they sold TASER securities is simply not true.  They have produced incomplete brokerage statements, and certain transactions appear to be missing from the statements that Plaintiffs have produced, including transactions disclosed in certain TASER SEC filings.

6

**Summary of TASER Plaintiffs'**
**Estimated Gains and Losses**

| Plaintiff Name | Estimated Gain (Loss) | Plaintiff Name | Estimated Gain (Loss) |
|---|---|---|---|
| Smith, Phillips and Patricia | $54,383,652 | Haskell, Richard Jr. and Amy | $333,616 |
| Smith, Patrick | $37,433,781 | Almeroth, Richard and Constance | $313,026 |
| Smith, Thomas and Deanna | $31,971,170 | Batchelor, Natalie | $281,642 |
| Culver, Bruce and Donna | $23,867,429 | Lisenby, Stephen and Patricia | $265,035 |
| Baker, James | $23,480,517 | Dunagin, Emily | $167,117 |
| Baker, Robert | $12,433,909 | Scott, John | $166,510 |
| Haskell, Susan | $10,047,423 | Dunagin, James | $164,305 |
| Connelly, James | $6,879,909 | Boyer, Michael | $137,419 |
| Faires, Charles and Sandra | $4,550,766 | Stucker, Mary Rose | $95,694 |
| Haskell, Richard | $1,782,374 | Scott, Chester | $81,440 |
| Burnside, William | $1,110,951 | Richardson, Mary | $45,766 |
| Collentine, Thomas and Judith | $1,065,801 | Roche, Margaret | $35,782 |
| Connelly, Dorothy | $823,909 | Scott, Paula | $24,306 |
| Batchelor, David | $752,615 | Kelley, Masaji | $5,107 |
| Maj, Jane | $674,575 | Scott, Peter and Michelle | $2,400 |
| Zelten, Anne | $524,623 | Haskell, Kelly Anne | -- |
| Lewis, Pamela | $508,887 | Faires, Charles | ($1,527) |
| Burnside, William and Kellie | $460,133 | Miller, Craig | ($40,318) |
| Scott, Peter | $414,934 | Burnside, William and Helen | ($380,496) |
| Southeast Eye Surgery Clinic | $368,923 | | |

It is difficult to understand how Plaintiffs can claim to have identified "monetary loss[es]" when they point to brokerage statements that disclose *gains* of this magnitude.

Plaintiffs try to gloss over this serious flaw in their case by asserting in a footnote that "courts have repeatedly held that the fact that a plaintiff made a profit on a sale does **not** mean that he suffered no damage." (Opp. at 17 n.8.) Not surprisingly, Plaintiffs offer no support for this assertion. Indeed, the law is just the opposite. Plaintiffs cannot maintain a securities fraud claim without identifying actual losses. *See Cohen*, 2010 WL 2670865, at *10 (dismissing securities fraud claim based on allegedly illegal short selling where plaintiffs failed to allege, *inter alia*, that shares were sold at a loss); *Newitt v. First Union Nat. Bank*, 270 Ga. App. 538,

7

543, 607 S.E.2d 188, 194 (2004) (holding that plaintiffs could not bring securities fraud claims where they had net profits); *see also Miller v. Asensio & Co.*, 364 F.3d 223, 230 (4th Cir. 2004) ("Requiring plaintiffs to demonstrate the fact of proximately caused damage to establish 10b-5 liability precludes wholly speculative claims and claims by plaintiffs who ultimately profit from, or experience no economic pinch as a result of, the challenged transaction.").

Plaintiffs' assertion also makes no sense. If the TASER stock price was deflated for the entire time period at issue, as Plaintiffs contend, then Plaintiffs bought the stock at a bargain price and, by definition, *benefited* from buying at that artificially depressed price. *See Cohen*, 2010 WL 2670865, at \*10 n.8 (recognizing that plaintiffs who bought stock after it was allegedly artificially depressed may have benefited by purchasing their shares at a "bargain price"). And even if Plaintiffs' theory were sound (it is not), Plaintiffs certainly cannot claim damages for days on which a single Plaintiff bought and sold shares of TASER,[5] or days on which one Plaintiff bought and another Plaintiff sold TASER shares.[6] Even if the law did not foreclose Plaintiffs' effort to claim damages when no losses have been suffered because supposedly they could have profited more, Plaintiffs cannot take the benefit of purchasing TASER stock at a bargain price, but then seek damages for selling TASER stock at the same allegedly deflated price.

Plaintiffs struggle for a back-up plan. In apparent recognition of the fact that they have not suffered monetary damages, Plaintiffs also offer examples of purported *non*-monetary losses. (Opp., Ex. 1 (6/24/10 Am. Resp. at 15 (citing as damages to TASER, "dilution, reputation damage, failure to receive payment for the new 'shares' and failure to maintain all rights"); *id.* at

---

[5]   According to documents produced by Plaintiffs, on November 19, 2004, Plaintiff Peter Scott purchased a total of 15,000 shares but also sold a total of 5,000 shares. (Aff. of Jeffrey M. Gould, Esq. ("Gould Aff.") Ex. A.)

[6]   According to documents produced by Plaintiffs, on April 20, 2004, Plaintiff Robert M. Baker purchased a total of 5,000 shares. On the same date, Plaintiff Chester Scott, Sr. sold a total of 2,225 shares. (Gould Aff., Ex. B.)

16-17 (citing as damages to "Plaintiffs," *inter alia*, the "potential[]" harms of "dilut[ion of] Plaintiffs' voting rights" and "creat[ion of] artificial impediments to TASER's stock price appreciation")).) But these supposed losses are entirely speculative. For example, Plaintiffs state that "TASER has suffered harm in that, *if it endeavored to try and buy the artificially created securities entitlements* out of the market, it would have to assume the cost of those purchases." (*Id.* at 15 (emphasis added); *see also* Opp. at 20.) Plaintiffs also state that "Defendants' conduct *potentially* caused Plaintiffs harm in at least the additional following ways...." (Opp., Ex. 1 (6/24/10 Am. Resp. at 16) (emphasis added).) But Defendants do not seek to discover whether Plaintiffs might have "endeavored to try and buy" TASER securities, nor do Defendants seek to discover what conduct "potentially" caused Plaintiffs harm. Such speculative information is plainly insufficient to identify the specific facts and losses at issue.

## II. PLAINTIFFS HAVE FAILED TO IDENTIFY ANY "ILLEGAL SHORT SELLING" TRANSACTIONS AS THAT TERM IS USED IN THE COMPLAINT (INTERROGATORY NO. 2).

Plaintiffs insist that they have adequately responded to Interrogatory No. 2 by identifying "scores of specific illegal transactions," as well as the time frame during which Defendants' alleged unlawful conduct "became persistent." (Opp. at 7, 12.) They also object to having to provide any response at all. In Plaintiffs' view, a request for specific transactions "misses the point" because this case concerns "a pattern of illegal and manipulative conduct relating to, *inter alia*, short selling with respect to TASER and many other stocks." (*Id.* at 6.) Both assertions are without merit. Plaintiffs have not identified any instances of "illegal short selling" as that term is defined in the Complaint, *i.e.*, manipulative trading activity in TASER that caused them harm under the Georgia securities laws. Indeed, the "illustrative" examples of supposed "illegal short selling" that they identify would not, for the most part, even qualify as regulatory violations. It is, moreover, difficult to understand Plaintiffs' complaint that Defendants should not be

requesting information about specific transactions.  Even if Plaintiffs allege a "pattern" of unlawful conduct, Plaintiffs are required to identify the constituent transactions that make up that alleged pattern.

**"Illegal Short Selling."**  Interrogatory No. 2 specifically requests that Plaintiffs identify each transaction that constitutes "illegal short selling" *as that term is used in the Complaint.*  The Complaint defines the term "illegal short selling" by reference to the SEC's definition:  "'selling stock short and failing to deliver shares at the time of settlement with the purpose of driving down [a] security's price' constitutes a 'manipulative activity' that 'in general, would violate various securities laws.'"  (Compl. ¶ 75 (quoting DIVISION OF MARKET REGULATION: KEY POINTS       ABOUT       REGULATION       SHO       (2005),       available       at http://www.sec.gov/spotlight/keyregshoissues.htm).)  And Plaintiffs allege that this "illegal short selling" has caused them harm as TASER shareholders.  (*Id.* ¶ 91.)

It is therefore insufficient for Plaintiffs to identify "illustrative" examples of what are, at most, regulatory violations, along with examples of transactions that are permitted under the regulations.  As an initial matter, Regulation SHO (the relevant federal short selling regulation) provides no basis for Plaintiffs to recover because it provides no private right of action.  Accordingly, Plaintiffs did not even attempt to bring a claim under Regulation SHO.  Rather, Plaintiffs allege that Defendants' "illegal short selling" violated, *inter alia*, the Georgia securities laws.  To prove that claim, Plaintiffs must at least identify the "illegal short selling" that they allege amounts to "manipulative trading practices" that proximately caused them injury in violation of the securities laws. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 158-59 (2008); *GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc.*, 245 Ga. App. 460, 463-64, 537 S.E.2d 677, 681-82 (2000).  Indeed, in arguing to this Court in 2009 that

10

their claims should not be dismissed, Plaintiffs conceded that Defendants would need to know more details regarding the trading practices on which their claims are based, but they insisted that "the proper method for seeking more detail . . . is . . . to *conduct discovery*." (Pls.' Resp. to Defs.' Mot. to Dismiss at 21 (Jan. 9, 2009) (emphasis in original).) Defendants now have properly requested that Plaintiffs identify the "illegal short selling" transactions on which Plaintiffs base their Complaint, yet Plaintiffs fail to identify a single such transaction. Instead, Plaintiffs identify conduct that , at most, would constitute a violation of Regulation SHO, which is not (and could not be) the subject of a private action, and certainly would not constitute a violation of the Georgia securities laws, let alone Georgia's RICO statute.

**Plaintiffs' "Illustrative" Examples.** While Plaintiffs assert that they have identified numerous "illegal short selling" transactions, most of the transactions they describe, such as the failure to deliver or locate TASER securities, are not even regulatory violations, let alone a violation of the securities laws for which Plaintiffs can recover damages. As a general matter, Regulation SHO does not prohibit a failure to deliver securities. Rather, it requires that a broker-dealer "close out" any fail to deliver position only after thirteen consecutive days, and only if the security is a "threshold security." *See* 17 C.F.R. § 242.203(b)(3) (2008); *see also* DIVISION OF MARKET REGULATION: KEY POINTS ABOUT REGULATION SHO (2005), available at http://www.sec.gov/spotlight/keyregshoissues.htm) ("Regulation SHO does not require a broker or dealer to close-out the open fail position until a security appears on a threshold list for 13 consecutive settlement days and an open fail position for such security exists for each of those days."). Regulation SHO also does not require that a broker locate a security before executing a short sale. Rather, the broker need only have "[r]easonable grounds to believe that the security

can be borrowed so that it can be delivered on the date delivery is due." 7 C.F.R. § 242.203(b)(1)(ii) (2008).

Thus, for example, Plaintiffs' latest amendment identifies transactions that appeared on an internal report that UBS used to monitor regulatory compliance for short sales in threshold securities for which there was an existing failure to deliver. (*Id.* at 51.) But the existence of a failure to deliver in a threshold security tells nothing about the propriety of a short sale because even threshold securities need not be settled on day one. And Plaintiffs do not assert that any of the transactions identified on these reports had failures to deliver in a threshold security for more than thirteen days.

Despite their accusations, Plaintiffs seem to recognize that Interrogatory No. 2 asks for, not alleged regulatory violations, but "unlawful and manipulative abusive naked short sales of TASER securities." (Opp., Ex. 1 (6/24/10 Am. Resp. at 28).) And Plaintiffs seem to recognize that conduct such as "[failures] to locate ..., mismarked tickets, failure to conduct buy ins" is distinct from "unlawful short sales." (*Id.*) In fact, their Amended Responses to Defendants' Interrogatories repeatedly describe the examples identified as "*components*" of "abusive naked short selling," as "*improper*" behavior or "*improper*" transactions, or as "violations of the law *or regulations*." (*Id.* at 25, 35, 44, 45 (emphases added).) At the least, if Plaintiffs plan to identify "components" of "illegal short selling" transactions, they must identify *all* the components of each TASER transaction that they claim add up to an illegal short sale in violation of the Georgia securities laws. *Cf. Cohen v. Stevanovich*, No. 09 Civ 4003, 2010 WL 2670865, at *4 (S.D.N.Y. July 1, 2010) ("allegations of failures to deliver, without more, are insufficient to state a claim for market manipulation").

At bottom, Plaintiffs have not identified any instances where Defendants engaged in the practice of "selling stock short and failing to deliver shares at the time of settlement with the purpose of driving down [a] security's price.'" (Compl. ¶ 75 (quoting DIVISION OF MARKET REGULATION: KEY POINTS ABOUT REGULATION SHO (2005), available at http://www.sec.gov/spotlight/keyregshoissues.htm).[7]

**Timeframe.** Plaintiffs also identify a five-year time period during which Defendants allegedly participated in illegal short selling. (Opp. at 12-13.) To be precise, Plaintiffs claim that "'the pattern of improper conduct *and/or the harm it caused* became persistent in 2004/05,'" and "'continued until at least the filing of this lawsuit in April of 2008.'" (Opp. at 12 (citation omitted; emphasis added).) Such responses provide Defendants with no meaningful guidance as to how to defend against Plaintiffs' claims. At this point in discovery, Plaintiffs must have the information they need to focus their claims on a limited universe of specific transactions. *See Gropper v. STO Corp.*, 276 Ga. App. 272, 273-74, 623 S.E.2d 175, 178 (2005) (ordering, prior to dismissal of complaint, that plaintiff "re-cast and succinctly and directly respond to" discovery requests where responses, as argued by defendants, were "so absurdly overbroad as to make some of them virtually meaningless").

For example, Plaintiffs allege that Defendants had net fails to deliver or receive TASER securities on an average of 161 trading days in 2006. (Opp., Ex. 1 (6/24/10 Am. Resp. at 29-31).) To begin with, this assertion is meaningless, given that Plaintiffs refer to trading days where Defendants had either a net failure to deliver or a failure to receive: a failure to receive on

---

[7] Indeed, for some of the examples that Plaintiffs identify, the price of TASER securities went *up* on the day that Defendants allegedly engaged in illegal short selling. (Opp. at 10 (describing the mere appearance of TASER on a UBS monitoring report on March 30, 2007 and May 6, 2008 as "illegal short selling" that harmed Plaintiffs, even though the price of TASER securities went up on both days).) Moreover, even if Defendants had engaged in illegal short selling during that time period (which they did not), it is difficult to understand what *losses* Plaintiffs suffered from what would have been a failed effort to drive down the security's price.

13

one day, without more, discloses nothing about the propriety of any particular short transaction. Moreover, Plaintiffs refuse even to identify which specific days are at issue for each Defendant, and they refuse to concede that either the conduct or damages in this case are limited to those days. Documents produced by Defendants in this case show that various Defendants went months at a time with no fails to deliver in TASER common stock to CNS (which would not constitute a regulatory violation in any event). For example, Banc of America Securities did not have a single such fail to deliver from January 1, 2004 through July 20, 2004, July 1, 2005 through December 20, 2005, December 28, 2005 through September 29, 2006, and August 9, 2007 through January 14, 2008. Similarly, Credit Suisse Securities did not have a single such fail to deliver from July 10, 2006 through March 15, 2007, November 16, 2005 through March 9, 2006, August 14, 2007 through December 23, 2007, and September 19, 2008 through May 31, 2009.[8] And UBS had no such fails to deliver on 82.4 percent of trading days during the relevant Time Period, which Plaintiffs have defined as January 1, 2003 through May 31, 2009. Likewise, Bear Stearns had no such fails to deliver on 86% of trading days during the Time Period. At a minimum, therefore, under Plaintiffs' own allegations, the transactions in the months during which Defendants had no fails to deliver in TASER common stock to CNS do not and cannot constitute illegal short selling, and those months should be eliminated from the time period Plaintiffs allege to be relevant.

---

[8] Additionally, Credit Suisse Securities had only a single such fail to deliver during each of the following extended periods: August 25, 2004 through December 14, 2004; September 1, 2005 through March 9, 2006; November 16, 2005 through April 24, 2006; June 5, 2006 through March 15, 2007; August 14, 2007 through February 26, 2008; and September 8, 2008 through May 31, 2009.

## III. PLAINTIFFS HAVE FAILED TO DESCRIBE THE FACTS SUPPORTING THEIR ALLEGATION THAT EACH DEFENDANT COMMITTED A PREDICATE ACT THAT DIRECTLY INJURED EACH PLAINTIFF (INTERROGATORY NO. 4).

Plaintiffs contend that they have adequately answered Defendants' Interrogatory No. 4 by incorporating their responses to Interrogatories Nos. 1 and 2 and by providing a "general summary" of the facts supporting their allegations. (Opp. at 21-22 & n.14.) But even if such incorporation were proper, nothing in their responses to Interrogatories Nos. 1 and 2 responds to Interrogatory No. 4's request for facts demonstrating that each Plaintiff was directly injured by a predicate act allegedly committed by a Defendant under RICO.

As an element of their RICO claim, Plaintiffs must prove that their respective injuries were "directly" caused by Defendants' alleged RICO violations. *See, e.g., Intermodal Logistics, Inc. v. D.J. Powers Co.*, 251 Ga. App. 865, 872, 555 S.E.2d 478, 484 (2001); *Longino v. Bank of Ellijay*, 228 Ga. App. 37, 40-41, 491 S.E.2d 81, 85-86 (1997) ("a private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts" which "means that, when the alleged predicate act is violative of OCGA § 10-5-12, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme"). Indeed, Plaintiffs must establish that they were directly injured by *criminal* conduct. *See* O.C.G.A. § 16-14-3(9)(A); *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 284 Ga. App. 387, 388, 643 S.E.2d 864, 867 (2007) (recognizing that Georgia RICO claims require that plaintiff show "two separate and distinct, ***criminal*** 'predicate acts' committed by [defendant]") (emphasis added).

It is insufficient for Plaintiffs merely to identify statutes and state that Defendants violated them; instead, they must explain what alleged predicate acts committed by Defendants caused them direct injury. *See, e.g., Maddox v. S. Eng'g Co.*, 231 Ga. App. 802, 805, 500 S.E.

15

2d 591, 594 (1998) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir. 1991) ("A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act.")); *Pappas v. Passias*, 887 F. Supp. 465, 472 (E.D.N.Y. 1995) (regarding Plaintiff's "conclusory allegations of injury to pecuniary interest to be insufficient to withstand a motion to dismiss").

Yet as explained above, the information that Plaintiffs have identified amounts to, at worst, alleged regulatory and administrative violations that are not criminal conduct and have no apparent connection to Plaintiffs at all. Plaintiffs do not even attempt to explain how a Defendant's failure to deliver, or even a Regulation SHO account violation for another customer or in another security, could "directly injure" a Plaintiff who profited from a TASER transaction, much less how such regulatory violations constitute criminal conduct for purposes of RICO. This response to Interrogatory No. 4 is meaningless and amounts to no response at all.

## CONCLUSION

In view of the foregoing, Defendants respectfully ask the Court to enter an order (1) compelling Plaintiffs to provide within fifteen days complete and responsive answers to Interrogatories Nos. 1, 2, and 4 in Defendants' Second Set of Interrogatories to Plaintiffs; (2) granting any other relief as the Court deems proper; and (3) denying Plaintiffs' motion to strike. In light of Plaintiffs' unreasonable and unjustified refusal to provide complete and responsive answers to Defendants' interrogatories, Defendants also ask that the Court order Plaintiffs to pay "the reasonable expenses incurred in obtaining" an order compelling this relief, including attorney's fees. *See* O.C.G.A. § 9-11-37(a)(4).

16

Dated: July 30, 2010

Richard H. Sinkfield
Georgia Bar No. 649100
Dan F. Laney, III
Georgia Bar No. 435290
*Attorneys for Defendants Morgan Stanley &*
*Co. Incorporated; Goldman, Sachs & Co.;*
*Goldman Sachs Execution & Clearing, L.P.;*
*Bear, Stearns & Co. Inc. k/n/a/ JP Morgan*
*Securities, Inc.; Bear Stearns Securities Corp.*
*k/n/a/ JP Morgan Clearing Corp.; Merrill*
*Lynch, Pierce, Fenner & Smith, Inc.; Deutsche*
*Bank Securities Inc.; Credit Suisse Securities*
*(USA) LLC; Banc of America Securities LLC;*
*and UBS Securities, LLC*

ROGERS & HARDIN LLP
2700 International Tower
 Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA 30303-1601
Phone: 404-522-4700
Fax: 404-525-2224

Robert F. Wise, Jr.
Admitted Pro Hac Vice
William J. Fenrich
Admitted Pro Hac Vice
Melissa Aoyagi
Admitted Pro Hac Vice

*Attorneys for Defendant Morgan Stanley & Co.*
*Incorporated.*

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
Phone: 212-450-4000
Fax: 212-450-3800

Richard H. Klapper
Admitted Pro Hac Vice
Richard C. Pepperman, II
Admitted Pro Hac Vice
Tracy Richelle High
Admitted Pro Hac Vice

*Attorneys for Defendants Goldman, Sachs &*
*Co. and Goldman Sachs Execution &*
SULLIVAN & CROMWELL LLP          *Clearing, L.P.*

17

125 Broad Street
New York, NY 10004-2498
Phone: 212-558-4000
Fax: 212-558-3588

Stephen L. Ratner
Admitted Pro Hac Vice
Brian L. Friedman
Admitted Pro Hac Vice

*Attorneys Defendants Bear, Stearns & Co.,
Inc. k/n/a/ JP Morgan Securities, Inc. and Bear
Stearns Securities Corp. k/n/a/ JP Morgan
Clearing Corp.*

PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Phone: 212-969-3000
Fax: 212-969-2900

Gregory A. Markel
Admitted Pro Hac Vice
Martin L. Seidel
Admitted Pro Hac Vice
Peter J. Isajiw
Admitted Pro Hac Vice
Heather L. Fesnak
Admitted Pro Hac Vice

*Attorneys for Defendant Deutsche Bank
Securities Inc.*

CADWALADER, WICKERSHAM &
  TAFT LLP
One World Financial Center
New York, NY 10281
Phone: 212-504-6000
Fax: 212-504-6666

Fraser L. Hunter, Jr.
Admitted Pro Hac Vice

*Attorney for Defendant Credit Suisse (USA)
Inc.*

WILMER CUTLER PICKERING HALE
  AND DORR LLP
399 Park Avenue
New York, NY 10022

18

Phone: 212-230-8800
Fax: 212-230-8888

Andrew J. Frackman
Admitted Pro Hac Vice

*Attorneys for Defendant Banc of America
Securities LLC and Defendant Merrill Lynch,
Pierce, Fenner & Smith, Inc.*

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Phone: 212-326-2000
Fax: 212-326-2061

Andrew B. Clubok
Admitted Pro Hac Vice
Jeffrey G. Landis
Admitted Pro Hac Vice
Jeffrey M. Gould
Admitted Pro Hac Vice

*Attorneys for Defendant UBS Securities, LLC*

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Phone: 202-879-5000
Fax: 202-879-5200

19

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| TASER INTERNATIONAL, INC.,<br>*et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CIVIL ACTION FILE NO. |
| | )<br>) 2008-EV-004739-B |
| MORGAN STANLEY & CO., INC.,<br>*et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2010, a true and correct copy of the

foregoing DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO

COMPEL PLAINTIFFS TO ANSWER INTERROGATORY NOS. 1, 2, AND 4 IN

DEFENDANTS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS AND

OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' MOTION TO

COMPEL AND FOR FEES, and the Affidavit of Jeffrey M. Gould in Support of the Reply, were

served via electronic filing with the Clerk of Court using the Court's electronic filing system,

which will automatically send an e-mail notification of such filing to the following attorneys of

record, who are registered participants in the Court's electronic filing system:

John E. Floyd, Esq.
Steven J. Rosenwasser, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309;

and via U.S. Mail postage prepaid and addressed to the following attorney of record:

James W. Christian, Esq.
Christian, Smith & Jewell LLP

2302 Fannin, Suite 500
Houston, Texas 77002

This 30th day of July, 2010.

Dan F. Laney, III
Georgia Bar No. 435290

ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303-1601
Tel.   (404) 522-4700
Fax    (404) 525-2224

2