# EXHIBIT K

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 32671872
Date: Aug 13 2010  8:57PM
Mark Harper, Clerk

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., | : | |
| *et al.*, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | FILE NO.: 2008-EV-004739-B |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MORGAN STANLEY & CO., INC., | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' JUNE 10, 2010 DISCOVERY

### AND

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO PREVENT PLAINTIFFS FROM TAKING ADDITIONAL DISCOVERY WITHOUT COURT ORDER

## I.     INTRODUCTION

Setting aside their rhetoric, Defendants present no compelling reason why they are entitled to an order from this Court relieving them of their obligation to answer **one interrogatory** consisting of six subparts and 27 requests for admission asking them simply to admit or deny whether they are currently aware of any instances in which they have violated **three** regulatory rules or their own policies or procedures by engaging in the very specific types of conduct at issue in this case.  Similarly, Defendants fail to explain why they should not be sanctioned for their violation of the Court's February 10, 2010 Order, in which the Court resolved the very same objections the Defendants raise here, when the Court ordered the Defendants to produce evidence of "same or similar conduct" with respect to securities other than TASER.

Instead, Defendants attempt to misdirect the Court's attention away from the straightforward issues presented by the limited discovery at issue. Rather than discussing their actual objections to Plaintiffs' June 10 discovery requests, Defendants devote many more pages to reciting a misleading history of the discovery in this case to date, which is both inaccurate and irrelevant.  Contrary to the impression Defendants try to create, in fact, **Defendants have served far more discovery requests and**

**deposition notices on Plaintiffs than Plaintiffs have served on**

**Defendants** -- even though, in a case involving complex securities

transactions like this one, Defendants, not Plaintiffs, would have in their

possession most of the discoverable information.

The relief Defendants seek – that they not only be exempted from

responding to the one Interrogatory and handful of Requests for Admission

actually at issue here, but also that the Plaintiffs be prohibited from serving

**any** additional discovery without a Court order – is utterly unsupported by

the facts and the law.  Such an order would place a tremendous burden on

the parties and the Court by forcing Plaintiffs to file a motion, await a

response from Defendants, and get a ruling from the Court before engaging

in any written discovery.  The Court should reject this transparent attempt to

shut down Plaintiffs' fact discovery more than **seven months** before the

discovery period is set to end under this Court's Scheduling Order.

## II.    BACKGROUND

Defendants' description of the history of discovery is inaccurate and

misleading.  As an initial matter, Defendants have served far more discovery

requests on Plaintiffs than Plaintiffs have on Defendants:

786774.1

|  | **Number of Requests Served By 8 Defendants Collectively** | **Number of Requests Served by 41 Plaintiffs Collectively** |
|---|---|---|
| Requests for Admission[1] | 397 | 194 |
| Requests for Production | 176 | 124 |
| Interrogatories (with subparts)[2] | 20 | 51 |
| **Total** | **593** | **369** |

These numbers do not take into account the fact that the individual Plaintiffs had to respond separately to the 181 requests for admission served on them by the Defendants, meaning that Plaintiffs had to provide more than **7500 individual responses** to Defendants' requests for admission.

---

[1] On March 1, 2010 Plaintiffs served **Amended** Second Requests for Admission to Defendants, totaling 73 requests, which are not included in the total number of Requests served.

[2] In calculating these numbers, Plaintiffs have counted all subparts as separate requests.  They have included all requests to all parties.

786774.1

Further, combining all interrogatories served by all Plaintiffs (including subparts), the more than 40 Plaintiffs have collectively served a total of 51 interrogatories. But with more than 40 different plaintiffs, at 50 interrogatories per party as permitted by O.C.G.A. § 9-11-33, Plaintiffs collectively would be entitled to more than 2000 interrogatories.[3] While Plaintiffs have no intention of serving any where near that many interrogatories, their availability under the Civil Practice Act reveals Defendant's overstatement in suggesting that Plaintiffs have served excessive discovery requests in this case.

## III. ARGUMENT AND CITATION OF AUTHORITIES

### A. The Discovery Requests Are Entirely Proportionate and Appropriate Under the Civil Practice Act.

#### 1. Defendants Misrepresent Plaintiffs' Damages.

Defendants' argument that the Plaintiffs' discovery requests are somehow disproportionate to the damages at issue in this case and therefore objectionable is wrong, both factually and legally. As Defendants well know, Plaintiffs' claims are not limited to out of pocket damages or to damages under the Georgia securities laws but, instead, Plaintiffs are seeking damages based on, *inter alia*, their contentions that the Defendants'

---

[3] The Civil Practice Act recognizes that more than 50 interrogatories per party may be justified in "complex litigation." O.C.G.A. § 9-11-33(a)(1).

4

pattern of unlawful conduct artificially deflated the price of TASER stock, so that the Plaintiffs were injured **regardless** of whether they sold their stock for a price higher than that at which they bought it (*e.g.*, if a plaintiff bought stock at $10, and later sold it for $20, the fact that the Plaintiff made $10 does not preclude damages if the Plaintiff would have been able to sell the stock at $30 (instead of $20) but for the Defendants' conduct). Thus, the fact -- oft repeated by Defendants -- that some Plaintiffs "profited" from their sales of TASER shares is irrelevant.

Perhaps more importantly, by basing their argument on their assertion that Plaintiffs have not yet produced any "evidence" of their damages, Defendants are attempting to turn this Court's Scheduling Order on its head. The Scheduling Order provides for a period of expert discovery to follow fact discovery, beginning in March of 2011 -- more than seven months away. Defendants know, because Plaintiffs repeatedly told them, that Plaintiffs' damages will be the subject of expert opinion testimony. While Plaintiffs' experts are presently working on calculating Plaintiffs' damages, the experts have not, nor are they required to have, finalized their opinions at this stage of the case. But even at this early stage, Plaintiffs can state with confidence that they expect they will be able to prove damages that are more than **100 million dollars,** without automatic trebling (under RICO) and

786774.1

5

punitive damages. Because the whole premise behind Defendants'

argument, that Plaintiffs' damages are very low, is incorrect, the Court need

look no further to conclude that Defendants' entire argument fails.

### 2. Defendants Fail to Meet Their Burden for A Protective Order.

The legal standard applied to motions for protective order under

Georgia law is stringent, and Defendants have failed to meet it. *See, e.g.,*

*Deloitte Haskins & Sells v. Green*, 187 Ga. App. 376, 376 (1988). Absent a

showing of a need to protect a party from harassment or oppression, a trial

court abuses its discretion in restricting the broad use of discovery. *See, e.g.,*

*Osborne v. Bank of Delight*, 173 Ga. App. 322, 324 (1985). Indeed, "until

such time as the court is satisfied by **substantial evidence** that **bad faith or**

**harassment motivates the [discoverer's] action**, the court should not

intervene to limit [or prohibit] the scope of pre-trial discovery." *Id.*

The party moving for the protective order has the burden of

demonstrating "good cause" for the order's issuance. O.C.G.A § 9-11-26(c);

*see, e.g., Munn v. Munn*, 116 Ga. App. 297, 299 (1967) ("The burden of

persuasion is on the objecting party to show that the interrogatories should

not be answered."). Good cause must be "clearly demonstrated," *Young v.*

*Jones*, 149 Ga. App. 819, 824 (1979), and supported by "substantial

evidence." *Bridges v. 20th Century Travel, Inc*., 149 Ga. App. 837, 839

786774.1

6

(1979). "It is contemplated that the trial judge will exercise a sound and legal discretion in the grant or denial of protective orders. **Such are intended to be protective -- not prohibitive** -- and, until such time as the court is satisfied by **substantial evidence that bad faith or harassment motivates the (discoveror's) action**, the court should not intervene to limit (or prohibit) the scope of pretrial discovery." *Id.* (emphasis in original).

As Plaintiffs demonstrated in their Motion to Compel, and as this Court has already ruled, evidence of Defendants' "same or similar conduct" with respect to other securities is highly relevant to the claims in this action. *See* Pls.' Mot. to Compel, dated July 19, 2010 at 1-5, 17-21. Further, Defendants have failed to demonstrate "substantial evidence that bad faith or harassment motivates the [Plaintiffs'] action" (*Munn*, 116 Ga. App. at 299) in serving the one interrogatory and 27 requests for admission at issue here.

The Georgia cases Defendants cite in their Motion are inapplicable. Most are distinguishable because they are cases in which the court granted an order protecting a party from having to produce its **income tax information**, which requires a heightened showing to be discoverable under Georgia law. *See Borenstein v. Blumenfeld*, 151 Ga. App. 420, 421 (1979) (cited in Defs.' Mot. at 10); *S. Outdoor Promotions v. Nat'l Banner Co.*, 215 Ga. App. 133, 135 (1994) (cited in Defs.' Mot. at 10).

786774.1

7

Defendants' reliance on *Miller v. Mutual Of Omaha Ins. Co.*, 1977

U.S. Dist. LEXIS 16349 is unavailing and, in fact, supports Plaintiffs. In

*Miller* the court **compelled** the defendant to answer the following

interrogatory: "12. Identify by name and address all [policyholders] who

have filed a complaint, either with your company or with the Insurance

Department of the State of Kansas, concerning any fraud or

misrepresentation on the part of your agent, Franklin E. Bailey." *Id.* at *16.

The court held:

> [W]e believe that these interrogatories must be answered. The
> state of the record indicates that these requests constitute no
> mere 'fishing expedition." This information is available to
> defendant either from its own records or from Bailey himself,
> who is defendant's agent. Defendant has presented no
> persuasive reason to support its objections to these
> interrogatories.

*Id.* Indeed, the court rejected the defendant's objection that "the

interrogatories are too vague, because [defendant] does not know what is

meant by the terms 'substantially similar.'" *Id.* at *11. The court noted that

"[i]n oral argument, plaintiff indicated that he was concerned with situations

in which, as here, the filing of a suit followed defendant's denial of coverage

due to an inaccurate health history. We believe that the interrogatories are

clear enough that defendant can, if it exercises good faith, provide

reasonable answers." *Id.* Likewise, in this case, the Plaintiffs have indicated

786774.1

8

precisely the conduct by Defendants that they are concerned with. The Defendants should be compelled to respond.

Finally, the Defendants argue that the Plaintiffs' RICO claims do not justify the requested discovery. But, in both of the cases Defendants cite, the requested discovery concerned an "as yet unasserted RICO claim," *Palumbo v. Shulman*, 1998 U.S. Dist. LEXIS 11467, at \*15; *see id.* at \*11 (plaintiffs "seek this discovery to aid them in determining whether their complaint can be amended to include a RICO claim."); *see Koch v. Koch Indus.*, No. 85-1636-C, 1991 U.S. Dist. LEXIS 16068, at \*7 (D. Kan. Oct. 24, 1991 (court denied leave to amend to add RICO claims). These cases are in stark contrast to the fully pleaded, detailed RICO claims in this case. And, as discussed in detail in Plaintiffs' Motion to Compel, this argument has already been rejected by this Court in its February 12, 2010 Order compelling Defendants to produce documents pertaining to the "same or similar" conduct with respect to securities other than TASER.

## B. The June 10 Discovery Requests Are Narrowly Tailored.

Defendants complain that the June 10 Discovery Requests are overly expansive and duplicative of prior discovery requests. First, Defendants charge that Plaintiffs have refused to "limit" or "narrow" the Requests. Of course, Plaintiffs are not obligated to do so because the Requests are proper

under O.C.G.A. § 9-11-26. Yet, despite no obligation to do so, in response
to Defendants' complaints during the conferral process, Plaintiffs agreed to
narrow the Interrogatories by limiting the Interrogatory asking about Reg
SHO violations to some of the particular types of conduct that are at issue in
this case (though all Reg SHO violations are relevant). *See* Ex. 4 to Pls.'
Mot. to Compel, Tab 2 at 2-4.

        Defendants next complain that the Discovery Requests cover topics
that "have already been covered by Plaintiffs' prior discovery requests."
Defs.' Mot. at 16. That is incorrect (and, if true, would belie Defendants
claim of burden since they presumably would have already obtained the
answers they now contend are too difficult to obtain). While it is true that
Plaintiffs have previously requested information relating to third party
regulatory investigations of Defendants, the Interrogatories at issue are
different from Plaintiffs' previous discovery, which sought the identification
of all regulatory investigations where a Defendant was sanctioned, settled or
received some sort of governmental penalty regarding a regulatory inquiry.
For example, the Interrogatories at issue seek to identify actual violations of
which the Defendants are aware that the regulatory agencies did not catch—
information to which Plaintiffs are clearly entitled. *See* Pls.' Mot. to
Compel, section III.B. Further, the interrogatories at issue here relate to

786774.1

10

conduct that differs from prior discovery, such as instances when Defendants engaged in short sales without first locating stock they can borrow.

But even if there is some overlap with prior discovery, this does not make the Discovery Requests improper because they seek more specificity and also expand upon prior requests. For example, in *Munn*, 116 Ga. App. at 299, the Court of Appeals reversed the trial court's sustaining of defendant's objection to interrogatories: "While many of the questions contained in the second interrogatories cover ground similar to that of the first, they seek more particularity or expansion of the areas delved into by the first interrogatories. The inquiries seek greater detail and to encompass areas not probed in the former interrogatories. … In short, the second interrogatories sought to plug "loopholes" in the first."

Defendants again assert that the burden of the discovery outweighs its benefits. This argument, which is debunked generally in section III.A above, is ludicrous when applied to the specific limited Discovery Requests at issue. The Interrogatories request Defendants to identify violations, of which they are "currently aware[]," relating to **three** specific regulatory rules identified by name or their own policies and procedures. *See* Ex. 1 to Pls.' Mot. to Compel at 4-5.

786774.1

The Requests for Admission are similarly limited but not duplicative of the Interrogatories. Most ask the Defendants to admit that for each year during the relevant time period, 2005-2009, they engaged in "at least one" violation or instance of the particular types of conduct about which the Plaintiffs are complaining in this case. *See* Ex. 3 to Pls.' Mot. to Compel at 3-7. Given that the Requests are limited to **known violations**, the Defendants should be subjected to no burden in answering these 27 requests. Either they know they have at least one violation, or they do not. If they do, they must admit it.[4]

Defendants also contend that the Requests are inconsistent with Plaintiffs' representations in connection with Plaintiffs' first motion to compel, which resulted in the February 12, 2010 Order. Defendants state: "Plaintiffs expressly represented to this Court that expanding discovery to capture 'same or similar' conduct would not increase the burden on Defendants because any such relief would be limited to Defendants' review

---

[4] *Collins v. JC Penney Life Ins. Co.*, 2003 U.S. Dist. LEXIS 8455, is distinguishable. In that case, the court held, "Collins does not demonstrate how 'statistical' data will provide evidence that JC Penney 'regularly denied *legitimate* claims.' …To establish the legitimacy of any claim and any claim denial, the particular facts and circumstances surrounding each claim would have to be individually examined." *Id.* at *6 (emphasis in original). Here, in contrast, no such qualitative examination is required. The Requests seek the identification and admission of "currently known" "violations," a term used by Defendants in their own documents. *See* Pls.' Mot. to Compel at 2.

of documents that they had already agreed to review." Defs.' Mot. at 17.

This representation is true. If Defendants fulfilled their obligations with

respect to identifying and locating responsive documents, they should have

already located the documents that will provide them with the answers to

Plaintiffs' discovery. To the extent Defendants may need to ask a limited

number of persons in their Compliance Departments about any other known

violations, that is far from an undue burden.

Quoting portions of the instructions to the Discovery Requests out of

context, Defendants argue that that the Requests do require them to conduct

an "audit," even though the Requests expressly disclaim such an obligation:

> Plaintiffs request that Defendants answer these interrogatories
> to the extent they are currently aware of responsive information.
> … **For purposes of defining current awareness, Defendants
> are not required to conduct an audit or investigation of
> trades that have not previously been investigated by the
> relevant groups or personnel in Defendants' compliance
> departments.**

Ex. 1 to Pls.' Mot. to Compel at 3-4 (emphasis added). All the Defendants

have to do is simply take the Plaintiffs at their word. This objection by

Defendants is unreasonable and cannot have been made in good faith.

Defendants also imply that the Discovery Requests seek to discover

every violation of **any** regulatory rule or procedure. *See* Defs.' Mot. at 17

("There are many rules and procedures that pertain to trading and short sales

786774.1

13

….") This is untrue. The Requests seek identification of violations of only three specific rules: NASD Rule 3370, UPC 71 and Regulation SHO.

Finally, Defendants pretend that their production of documents means they should not have to answer the Requests at issue, presumably because Plaintiff themselves should be able to find the answers in the documents. *See* Defs.' Mot. at 19-20. Having produced "over 50 million pages of documents," *id.* at 19, over 14 million pages of which were (in violation of Stipulations and Orders) dumped on the Plaintiffs between June 1 and June 30, Defendants would like nothing better than to shift the burden to Plaintiffs to analyze and find all of the relevant and useful information in those documents. But their document production does not relieve Defendants from having to answer targeted interrogatories and requests for admission to which the Defendants already know the answers. That information is not equally available to both sides. For one, the discovery seeks Defendants positions, and Plaintiffs cannot run the risk that Defendants will later agree that their positions differs from the documents. Moreover, Defendants may have knowledge of violations that are not contained in the documents. Further, Plaintiffs' RFA are binding on Defendants in a materially different way from a produced document. Indeed, Defendants fail to cite a single case holding that a broad production of a large amount of documents means a

786774.1

14

party does not have to answer interrogatories about its own knowledge.  This
is not a proper ground for objecting or seeking a protective order.

### C.    Defendants' Motion for An Order Preventing Plaintiffs from Serving Further Discovery Lacks Any Justification.

Defendants have not come close to meeting their burden of showing
that a protective order is justified on the June 10 Discovery Requests, let
alone such an order prohibiting **all** written discovery before it is even
propounded.  Indeed, given that Defendants have served more discovery
than Plaintiffs, it is difficult to see how they can legitimately represent to
this Court that the amount of discovery Plaintiffs have served is excessive.

Regardless, Defendants cite no authority in which a court has imposed
the sweeping prohibition on discovery Defendants request, and it would
likely be reversible error if one did.  Such an order would be contrary to
intent behind the discovery provisions of Civil Practice Act, which permit a
party, within reason, to choose the discovery format best suited to obtaining
the desired information; the order would force the plaintiffs to obtain all
discovery information by deposition.  Moreover, such an order would place
a tremendous and unprecedented burden on the parties and the Court by
forcing Plaintiffs, before serving **any** written discovery request, to file a
motion, await a response from Defendants, and obtain a ruling from the
Court.  As the Defendants well know, such an order would essentially bring

786774.1

all written fact discovery to a halt more than seven months early, and

therefore would be contrary to this Court's Scheduling Order.  For all these

reasons, the motion should be denied.

Respectfully submitted, this 13th day of August, 2010.

/s/ Steven J. Rosenwasser
John E. Floyd
Georgia Bar No. 266413
Steven J. Rosenwasser
Georgia Bar No. 614908
Nicole G. Iannarone
Georgia Bar No. 382510
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309-3417
(404) 881-4100 Tel.
(404) 881-4111 Fax

James W. Christian
State Bar No. 04228700
Gary M. Jewell
State Bar No. 10664800
Scott R. Link
State Bar No. 12390900
Christian, Smith, & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas  77002
(713) 659-7617 Tel.
(713) 659-7641 Fax
(admitted pro hac vice)

***ATTORNEYS FOR PLAINTIFFS***

786774.1

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a true and correct copy of the

foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

**REGARDING PLAINTIFFS' JUNE 10, 2010 DISCOVERY AND**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**

**MOTION TO PREVENT PLAINTIFFS FROM TAKING**

**ADDITIONAL DISCOVERY WITHOUT COURT ORDER** was

electronically filed with the Clerk of Court using the Court's electronic filing

system which will automatically send an email notification of such filing to

the following attorneys of record who are registered participants in the

Court's electronic notice and filing system:

> **Attorneys for Defendants:**
> Richard H. Sinkfield, Esq.
> Rogers & Hardin
> 2700 International Tower, Peachtree Center
> 229 Peachtree Street, N.E.
> Atlanta, GA 30303-1601
>
> **Attorneys for Banc of America Securities, LLC and**
> **Merrill Lynch, Pierce, Fenner & Smith, Inc.:**
> Andrew J. Frackman, Esq.
> O'Melveny & Myers LLP
> 7 Times Square
> New York, NY 10036

786774.1

**Attorneys for Morgan Stanley & Co. Incorporated:**
Robert F. Wise, Jr., Esq.
William J. Fenrich, Esq.
Melissa T. Aoyagi, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017

**Attorneys for Bear Stearns:**
Stephen L. Ratner, Esq.
Harry Frischer, Esq.
Brian L. Friedman, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036

**Attorneys for The Goldman Sachs Group, Inc.:**
Richard C. Pepperman II, Esq.
Richard H. Klapper, Esq.
Tracy Richelle High, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004

**Attorneys for Deutsche Bank Securities Inc.:**
Heather L. Fesnak, Esq.
Peter J. Isajiw, Esq.
Gregory A. Markel, Esq.
Martin L. Seidel, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

**Attorneys for UBS Securities, LLC:**
Andrew B. Clubok, Esq.
Jeffrey G. Landis, Esq.
Daniel Gomez, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC  20005-5793

Maria Ginzburg, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611

**Attorneys for Credit Suisse USA, Inc.:**
Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY  10022

This 13th day of August, 2010.

/s/ Steven J. Rosenwasser
Steven J. Rosenwasser
Georgia Bar No. 614908

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA  30309-3417
Telephone (404) 881-4100
Facsimile (404) 881-4111

786774.1

19