# EXHIBIT L

## SULLIVAN & CROMWELL

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE

March 25, 2011

Via E-mail and U.S. Mail

Steven J. Rosenwasser, Esq.,
  Bondurant, Mixson & Elmore, LLP,
    3900 One Atlantic Center,
      1201 West Peachtree Street, N.W.,
        Atlanta, GA 30309-3400.

                    Re:    *Taser International, et al. v. Morgan Stanley & Co., et al.*

Dear Steven:

As discussed during our March 14 telephone call, I write on behalf of all Defendants concerning the numerous deficiencies in Plaintiffs' Fourth Amended Responses to Defendants' Second Set of Interrogatories ("the Fourth Responses"). As described in detail below, we do not believe that the Fourth Responses comply with the Special Master's February 7, 2011 Order (the "Order"), which directed Plaintiffs to "provide specific, responsive answers to Interrogatory Nos. 1, 2, and 4." We therefore request that Plaintiffs agree to serve amended responses that comply with the Order by addressing the below-identified deficiencies. Otherwise we will have no choice but to make an appropriate motion with the Special Master.

### Interrogatory No. 1

Interrogatory 1(a): *For each Plaintiff, please identify (a) each transaction in TASER stock engaged in during the Relevant Time Period in which that Plaintiff alleges it suffered losses as a result of any Defendant's 'illegal short selling,' as that term is used in Paragraph 2 of the Complaint, specifically identifying for each such transaction the number of shares sold, the price at which they were sold, the price paid for, or cost basis of such shares, and the loss incurred in connection with each such transaction...*

After a lengthy set of objections, Plaintiffs respond to Interrogatory 1(a) simply by stating that they "suffered losses as a result of Defendants' illegal conduct *each time they sold stock during the Damage Period.*" (Fourth Responses at 9 (emphasis in

Steven J. Rosenwasser, Esq.                                                                                    -2-

original)) Plaintiffs then reference the production numbers of thousands of pages of account statements produced by Plaintiffs without distinguishing or identifying any specific transactions or losses. (Fourth Responses at 10-11) In this regard, Plaintiffs' amended response to Interrogatory 1(a) is nearly identical in substance to Plaintiffs' prior response that the Special Master has already determined did "not answer the questions presented." (Order at 13)

As a threshold matter, Plaintiffs fail to identify the basic information requested by Interrogatory 1(a), such as the specific number of shares sold, the prices at which such shares were purchased or sold, the cost basis of such shares, and any losses incurred in connection with each such transaction. Indeed, Plaintiffs effectively refuse to provide any of the information requested by Interrogatory 1(a). Plaintiffs' continued refusal to provide a response to this Interrogatory is unjustified given the Special Master's ruling.

Moreover, Plaintiffs fail to identify with specificity, on an individualized basis, the time period during which the alleged damages arose. Plaintiffs' generic contention that they suffered losses "beginning at some point in 2004 and continuing until at least April of 2008" is not an adequate response to Interrogatory 1(a). (Fourth Responses at 9) Plaintiffs' contention that the time period during which their alleged damages arose "is the subject of expert testimony and opinion, which is not required to be provided at this time" (*id.* at 8-9) is inconsistent with the Special Master's ruling. In his Order, the Special Master acknowledged that "Plaintiffs have requested and received substantial discovery from Defendants during more than three years of litigation in this case, and it is only reasonable for Plaintiffs to provide Defendants with specific answers." (Order at 13) By granting Defendants' motion to compel, the Special Master rejected Plaintiffs' argument that they are not required to provide any information concerning their individual damages until expert discovery. Notwithstanding that ruling, Plaintiffs continue to adhere to their rejected position.

Interrogatory 1(b) and 1(c): *For each Plaintiff please identify…(b) the amount of monetary loss that each Plaintiff claims to have incurred in connection with its holdings of TASER stock as a result of such 'illegal short selling' and (c) the amount of damages that each Plaintiff believes it suffered as a result of such 'illegal short selling,' regardless of whether that Plaintiff believes it suffered an actual monetary loss.*

Plaintiffs' revised responses to Interrogatory 1(b) and (c) provide no information regarding the specific amount of monetary loss or damages that each Plaintiff claims to have incurred. Instead, Plaintiffs offer a list of sixteen ways in which "Defendants' conduct *potentially* caused Plaintiffs harm." (Fourth Responses at 12-16 (emphasis added)) The sixteen-item list is not responsive to Interrogatory 1(b) or (c) because it says nothing about the amount of monetary loss or damages Plaintiffs allegedly suffered.

Steven J. Rosenwasser, Esq.                                                                                      -3-

       Plaintiffs once again contend that "the amount of damages each Plaintiff suffered as a result of Defendants' conduct. . . is the subject of expert testimony and will be addressed during expert discovery." (*Id.* at 16-17) Such a statement flies in the face of the Special Master's ruling and is a deliberate attempt to avoid Plaintiffs' discovery obligations. This attempt is particularly inexcusable because you have frequently told counsel for the Defendants that you have already calculated Plaintiffs' alleged damages at an amount you place in the hundreds of millions of dollars.

**Interrogatory No. 2**

Interrogatory 2(a): *For each Defendant, please identify each trading day during the Relevant Time Period where You believe that Defendant participated in 'illegal short selling,' as that term is used in Paragraph 2 of the Complaint, with respect to TASER stock.*

       Plaintiffs respond to this interrogatory with the blanket assertion that "*Defendants* engaged in a pattern of unlawful and/or manipulative activity, including abusive naked short selling . . . with respect to TASER stock during *each trading day* beginning in *some point in 2004* and continuing *at least through April 30, 2008.*" (Fourth Responses at 19-20 (emphasis added)) Given that we are three months away from the close of fact discovery, this generic response is woefully inadequate.

       *First*, Plaintiffs' response utterly fails to identify, for *each specific Defendant*, on which trading days Plaintiffs believe each Defendant participated in "illegal short selling" with respect to TASER common stock. Instead, Plaintiffs offer only a general, undifferentiated response that Defendants as a group allegedly engaged in manipulative trading generally "each trading day" starting at "some point in 2004" and continuing "at least through April 30, 2008." This sweeping assertion does not differentiate among the different Defendants, does not answer the question specifically with respect to TASER common stock, and is not sufficiently particular to respond to any of the questions posed by this interrogatory.

       *Second*, Plaintiffs' contention that a response "can only be provided after reviewing the materials produced by the Defendants, many of which have not been entirely produced," and that Plaintiffs "may not be able to currently understand or appreciate the significance" of the information already provided "where a Defendant has not provided all of the data responsive to Plaintiffs' document requests" (Fourth Responses at 17) is a hollow excuse at this late stage of fact discovery. This contention also is inconsistent with the Special Master's ruling, which noted that "Plaintiffs have requested and received substantial discovery from Defendants during more than three years of litigation in this case." (Order at 13)

Steven J. Rosenwasser, Esq.                                                                                          -4-

        Plaintiffs' inability to respond to the straightforward questions posed by Interrogatory 2(a) says more about the lack of merit of Plaintiffs' claims than it does the status of discovery from Defendants. To date, Plaintiffs have received from Defendants literally millions of pages of documents, as well as responses to in excess of 200 Requests for Admission and sixteen Interrogatories. In fact, Defendants' document productions are substantially complete, as evidenced by the fact that we discussed earlier this week a proposed end date for Defendants' productions. In this light, Plaintiffs' failure to provide even one specific example of illegal short selling with respect to TASER common stock in response to this interrogatory is both telling and inexcusable.

Interrogatory 2(b): *For each Defendant, please identify… each transaction during the Relevant Time Period where You believe that Defendant participated in 'illegal short selling,' as that term is used in Paragraph 2 of the Complaint, with respect to TASER stock.*

        Plaintiffs' revised response to Interrogatory 2(b) suffers from many of the same deficiencies as their revised response to Interrogatory 2(a). Moreover, rather than identify for "*each defendant… each transaction*" that Plaintiffs believe constitutes illegal short selling with respect to TASER common stock, Plaintiffs expressly state on numerous occasions that their answer to Interrogatory 2(b) is not exhaustive or complete. Such a response cannot be reconciled with the Special Master's Order requiring Plaintiffs to "provide specific, responsive answers" to Interrogatory No. 2. (Order at 13) Notwithstanding the Special Master's ruling, Plaintiffs argue that "the identification of improper transactions involving or relating to naked short selling requires expert analyses and information, which is not required at this time under the Scheduling Order," and that Plaintiffs "cannot be expected to . . .write down each fact . . showing Defendants' liability and thus limit their response to "a general summary" with a handful of examples of allegedly illegal transactions. (*See* Fourth Responses at 18-21) With fact discovery nearing completion, Defendants are entitled to more than a general summary and a handful of examples.

        More fundamentally, Plaintiffs ignore the Special Master's directive entirely. Plaintiffs refer to transactions in only the most general terms without giving Defendants sufficient information to identify the transactions to which Plaintiffs intend to refer. Even where "examples" are provided, Plaintiffs consistently fail to provide basic identifying information about the transactions (such as the date on which they occurred, the number of shares involved, or the parties or accounts involved). For example:

> - Plaintiffs identify a long list of conversion transactions (*id*. at 30-38) without ever stating whether Plaintiffs take the position that each and every one of those transactions constitutes "illegal short selling" as that term is used in Plaintiffs' complaint.

Steven J. Rosenwasser, Esq.                                                                     -5-

- In support of a broad assertion that "Defendants Failed to Comply with the Locate Requirement," Plaintiffs copy and paste wholesale Goldman Sachs's locate log, without identifying *one transaction* to which these charts relate. (*Id.* at 79-110)

- In support of a broad assertion that "Defendants did not require affirmative determinations prior to executing Short sales," Plaintiffs cite a FINRA letter discussing Goldman Sachs's systems from January 2005 through January 29, 2009 but do not identify *a single transaction* at issue. (*Id.* at 117-19)

- Plaintiffs assert that "[t]here were additional failures outside of the NSCC system, including broker-to-broker and ex-clearing fails," but do not identify any of these "additional failures." (*Id.* at 144)

- Plaintiffs state that "Merrill Lynch (Pierce and Pro) knowingly and intentionally permitted certain customers to intentionally fail to borrow and deliver TASER and other securities in order to avoid borrowing costs," but they do not identify any specific instances in which Merrill Lynch allegedly engaged in this conduct. (*Id.* at 155)

- Plaintiffs broadly state that "Defendants charged clients, customers, banks or others fees, commissions and/or interest for 'loaning' TASER or other securities that Defendants never loaned" and "for opening or maintaining a short position and/or borrowing securities to effectuate a short transaction in instances where the broker failed to borrow the stock for the short transaction and/or open short position," but they do not identify any specific instance in which a Defendant engaged in this alleged conduct. (*Id.* at 155-56)

## Interrogatory No. 4

Interrogatory 4: *For each Plaintiff, please describe (including date, place, and person, where applicable) each fact that You believe supports the allegation that the Plaintiff was directly injured by a predicate act allegedly committed by each Defendant under the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-15-1 et seq.*

       In response to Interrogatory 4, Plaintiffs once again contend that they "cannot be expected to, and are not required to, write down each fact (including date, person and place) showing Defendants' liability, particularly when such evidence is contained within the millions of documents and items of data Defendants have

Steven J. Rosenwasser, Esq.                                                                 -6-

produced." (*Id.* at 163) After this attempt to punt their obligation to respond to this interrogatory, Plaintiffs then allege the following violations (*id.* at 163-64):

> Defendants' predicate acts include, but are not limited to, violations of the Georgia Securities Act, theft by taking under O.C.G.A. § 16-8-2, theft by deception under O.C.G.A. § 16-8-3, violations of the Georgia Computer Systems Protection Act under O.C.G.A. § 16-9-93, acts involving theft and dealing in securities defined as racketeering activity by O.C.G.A. § 16-14-3(9)(B) and false swearing and perjury under O.C.G.A. §§ 16-10-70 and 16-10-71.

Plaintiffs also provide a list of alleged predicate acts by Defendants involving conduct with regard to securities other than TASER.

Significantly, however, Plaintiffs fail to state *any* fact that demonstrates a causal link between a Defendant's alleged conduct and the RICO injury allegedly suffered by any Plaintiff, as required by this interrogatory. Plaintiffs' failure to identify how they were injured by Defendants' alleged predicate disregards the Special Master's ruling.

## Verification

Plaintiffs' Fourth Responses are not verified as required by Georgia law. Please provide each Plaintiff's verification along with the amended responses.

\*        \*        \*

The purpose of this letter is to identify the fundamental and overarching deficiencies in Plaintiffs' Fourth Responses. It is not meant to raise concerns regarding deficiencies or inaccuracies in Plaintiffs' Fourth Responses with respect to specific individual Defendants. To that end, each Defendant, including Goldman Sachs, reserves its right to raise additional deficiencies in the Fourth Responses at a later date.

Obviously we are concerned that Plaintiffs appear to have disregarded the Special Master's ruling. Like their prior responses, Plaintiffs' amended interrogatory responses are "lengthy and difficult to comprehend." (Order at 13) "While Plaintiffs have conveyed a great deal of information in their Answers to Interrogatory Nos. 1, 2, and 4, the responses do not answer the questions presented in the Interrogatories." (*Id.*) As we approach the end of fact discovery, Defendants are entitled to the answers to the basic and fundamental questions posed by these interrogatories. If Plaintiffs still cannot answer these questions in a direct, easy-to-comprehend fashion, one has to question why

Steven J. Rosenwasser, Esq. -7-

Defendants should be required to spend large sums of money responding to your broad discovery demands.

Sincerely,

Richard Pepperman, II/MC

Richard C. Pepperman, II