# EXHIBIT A

```
                                                                   1
 1             IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION
 3
 4   TASER INTERNATIONAL, INC., et al., )
                                        )
 5             Plaintiffs,              )
                                        )
 6        vs.                           )  CIVIL ACTION
                                        )    FILE NO.:
 7                                      )  1:10-CV-03108-JOF
     MORGAN STANLEY & CO., INC., et al.,)
 8                                      )
               Defendants.              )
 9
10
11             VIDEOTAPED DEPOSITION OF
                    DAVID BATCHELOR
12               NOVEMBER 18, 2010
                    10:00 A.M.
13
14            BONDURANT, MIXSON & ELMORE
             1201 WEST PEACHTREE STREET, NW
15                   SUITE 3900
                  ATLANTA, GEORGIA
16
17         CONTAINS CONFIDENTIAL PORTIONS
           PURSUANT TO PROTECTIVE ORDER
18
19
20
21
22
23   REPORTED BY:
            STEVEN S. HUSEBY, RPR
24               CCR-B-1372
25
```

## 134

1  possibility of filing a lawsuit in connection   02:17:34
2  with TASER?   02:17:37
3     A.  Not to my knowledge.   02:17:40
4     Q.  How much have you spent on attorney's   02:17:43
5  fees to date in this litigation?   02:17:56
6        MR. ASHE:  Hold on.  I'll instruct   02:17:58
7  you not to answer that question on the grounds   02:18:00
8  that it's privileged, specifically I'm   02:18:02
9  claiming attorney-client privilege.   02:18:06
10 BY MR. ELIAS:   02:18:09
11    Q.  Do your attorneys have a contingency   02:18:09
12 fee arrangement with you?   02:18:12
13       MR. ASHE:  I would also instruct   02:18:13
14 you not to answer that question on the same   02:18:14
15 grounds.   02:18:17
16       MR. ELIAS:  I just won't -- can   02:18:18
17 you be clear for the record --   02:18:19
18       MR. ASHE:  I am instructing the   02:18:21
19 witness not to answer the question of whether   02:18:22
20 he has a contingency fee contract with his   02:18:24
21 attorneys in this action on the basis of   02:18:27
22 attorney-client privilege.   02:18:29
23       MR. ELIAS:  Thank you.   02:18:30
24       MS. JONES:  Actually I want to be   02:18:31
25 clear about something.  Plaintiffs are seeking   02:18:32

## 135

1  attorney's fees in this case, aren't they?   02:18:35
2        MR. ELIAS:  That was going to be   02:18:36
3  my next question.   02:18:38
4        MR. ASHE:  You're asking me?  It   02:18:39
5  is one of the claims for damages.   02:18:40
6        MS. JONES:  But you're asserting   02:18:42
7  the attorney-client privilege over the amount   02:18:44
8  of fees that the witness has paid to date in   02:18:46
9  this case?   02:18:48
10       MR. ASHE:  Yes.   02:18:49
11 BY MR. ELIAS:   02:18:49
12    Q.  Other than the meeting you had with   02:18:57
13 your attorneys on Friday to prepare for this   02:18:59
14 deposition, were there any other instances in   02:19:01
15 which you've met with any of your attorneys in   02:19:04
16 person?   02:19:07
17    A.  Not to my knowledge.   02:19:09
18    Q.  So you've had one meeting with your   02:19:11
19 attorneys; is that correct?   02:19:13
20    A.  To the best of my knowledge.   02:19:15
21    Q.  Who was present --   02:19:18
22    A.  In person.   02:19:19
23    Q.  Who was present at that meeting?   02:19:20
24    A.  Robbie, Natalie, my wife, and myself.   02:19:21
25    Q.  How many telephone calls do you   02:19:27

## 136

1  believe you've had with your attorneys?   02:19:30
2     A.  I don't recall.   02:19:32
3        MR. ELIAS:  Let's go off the   02:19:41
4  record for five minutes and then I'll finish.   02:19:43
5  I just want to make sure I didn't miss   02:19:45
6  anything, but think I'm done.   02:19:46
7        MR. ASHE:  Not a problem.   02:19:48
8        THE VIDEOGRAPHER:  The time is   02:19:49
9  2:20 p.m.  We're now off the record.   02:19:51
10       (Brief recess.)   02:19:53
11       THE VIDEOGRAPHER:  The time is   02:33:48
12 2:34 p.m.  We're back on the record.   02:33:53
13 BY MR. ELIAS:   02:33:53
14    Q.  Mr. Batchelor, just a few things I   02:33:56
15 wanted to clarify.  First, you testified   02:33:58
16 earlier that you currently have an account   02:34:00
17 with Merrill Lynch; is that correct?   02:34:02
18    A.  Yes.   02:34:03
19    Q.  Is it accurate to say that you're not   02:34:04
20 seeking any damages in connection with trading   02:34:06
21 that's been done in that Merrill Lynch   02:34:08
22 account?   02:34:09
23    A.  Correct.   02:34:10
24    Q.  Now, I want to just briefly talk about   02:34:10
25 your wife's trading.  Am I correct that your   02:34:15

## 137

1  wife also had GMS and Delta accounts?   02:34:18
2     A.  The same accounts.   02:34:21
3     Q.  What do you mean when you say the same   02:34:25
4  accounts?   02:34:27
5     A.  If I had a Delta account, she had a   02:34:28
6  Delta.  If I had a GMS, she had a GMS.   02:34:32
7     Q.  But it is a separate account; is that   02:34:34
8  correct?   02:34:37
9     A.  That's correct.   02:34:37
10    Q.  And are you aware that there were   02:34:37
11 TASER trades executed in your wife's account   02:34:39
12 at GMS?   02:34:42
13    A.  Yes.   02:34:43
14    Q.  Yes?   02:34:44
15    A.  Yes.   02:34:44
16    Q.  Did you direct the trading in your   02:34:45
17 wife's GMS and Delta accounts?   02:34:47
18    A.  Yes.   02:34:50
19    Q.  Do you recall purchasing 2,000 shares   02:34:54
20 in your wife's account at the same time you   02:34:56
21 purchased shares in your GMS account?   02:34:58
22    A.  I do not recall.   02:35:00
23       MR. ASHE:  For the sake of   02:35:03
24 clarity, if I may, maybe make it easier, is   02:35:12
25 your lack of recollection based on not   02:35:14